# No.  24-01163

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

**In re:  U LOCK INC.,**

**Debtor.**

**CHRISTINE BIROS,**

**Movant-Appellee,**

**v.**

**GEORGE SNYDER,**

**Respondent-Appellant**

Appeal from the Judgment Order of the US District Court for the Western District of Pennsylvania, 23-cv-691 (Hon. Cathy Bissoon, U.S.Dist. Judge), affirming the Order of the United States Bankruptcy Court for the Western District of Pennsylvania at 22-bk-20823 (Hon. Gregory Taddonio, Chief U.S.Bk. Judge)

### GEORGE SNYDER'S INFORMAL APPENDIX THING

**GEORGE SNYDER**
**PO BOX 15**
**IRWIN PA  15642**
**(412) 979-9999**
**georgecsnyder@pm.me**

**APPELLANT**

## TABLE OF APPENDIX DOCUMENTS

| Date | Bk. Entry | Description | Vol | Page |
|---|---|---|---|---|
| 1/17/24 | D.C. 17 | Notice of Appeal to Third Circuit | I | 001 |
| 4/24/23 | 372 | Notice of Appeal to District Court | I | 002 |
| 12/19/23 | D.C. 13 | Memorandum and Order | I | 003 |
| 12/19/23 | D.C. 14 | Judgment Order | I | 009 |
| 4/14/23 | 366 | Order Denying Bankruptcy Claim | | |
| | | **VOLUME II** | | |
| 6/11/24 | | District Court Docket Sheet | II | 004 |
| 6/11/24 | | Bankruptcy Court Docket Sheet | II | 008 |
| 8/26/22 | POC 5 | George Snyder Proof of Claim | II | 071 |
| 5/9/22 | 7 | Amended Involuntary Bankruptcy | II | 074 |
| 6/17/22 | 42 | Order for Relief Under Chapter 7 | II | 077 |
| 7/5/22 | 59 | Summary of U Lock's Schedules | II | 078 |
| 7/5/22 | 60 | Schedule A/B Assets | II | 079 |
| 7/5/22 | 61 | Schedule D  Secured Creditors | II | 090 |
| 7/5/22 | 62 | Schedule E/F Unsecured Creditors | II | 091 |
| 7/5/22 | 63 | Schedule G  Executory Leases | II | 095 |
| 7/5/22 | 64 | Schedule H  Codebtors | II | 100 |
| 7/5/22 | 65 | Statement of Financial Affairs | II | 101 |
| 7/6/22 | 66 | Declaration re Schedules | II | 120 |
| 7/15/22 | 86 | U Lock's Notice of Non-Compliance | II | 121 |
| 7/15/22 | 87 | Declaration of George Snyder | II | 127 |
| 8/4/22 | 102 | Exhibits in Support of Motion to Convert Case | II | 132 |

| 8/8/22 | 108 | Declaration of George Snyder | II | 150 |
|---|---|---|---|---|
| 8/15/22 | 115 | Transcript of Hearing August 9 2022 | II | 167 |
| 8/31/22 | 139 | Transcript of Hearing August 25, 2022 | II | 139 |
| 12/02/22 | 233 | Declaration of George Snyder | II | 223 |
| 12/02/22 | 234 | Supplemental Declaration of George Snyder | II | 227 |
| 12/28/22 | 264 | Transcript of Hearing December 15, 2022 | II | 232 |
| 1/6/23 | 278 | Amended Order to Show Cause | II | 276 |
| 1/17/23 | 293 | Memorandum Opinion | II | 278 |
| 1/17/23 | 294 | Order to Show Cause | II | 288 |
| 1/21/23 | 299 | U Lock's Reply to Biros Response to Order to Show Cause | II | 290 |
| 2/1/23 | 316 | Transcript of February 1, 2023 | II | 293 |
| 2/24/23 | 337 | Biros Objection to George Snyder's Claim Number 5 | II | 394 |
| 2/24/23 | 337-1 | Transcript of Meeting of Creditors September 9, 2022 | II | 405 |
| 2/24/23 | 337-2 | Transcript of Meeting of Creditors January 17, 2022 | II | 529 |
| 2/24/23 | 337-3 | Declaration of George Snyder | II | 569 |
| 2/24/23 | 338 | Notice of Non-Evidentiary Hearing | II | 571 |
| 3/2/23 | 349 | Order Rescheduling Hearting | II | 573 |
| 3/28/23 | 358 | Response to Objection to Claim | II | 574 |
| 3/28/23 | 359 | Declaration of George Snyder | II | 576 |
| 4/24/23 | 377 | Transcript of April 13, 2023 | II | 580 |
| 7/13/23 | 477 | Trustee's Status Report | II | 632 |
| 8/4/23 | 494 | Order of Court re Interim Compensation | II | 633 |
| 1/10/24 | 524 | Transcript of January 4, 2024 | II | 634 |

# U.S. District Court
## Western District of Pennsylvania (Pittsburgh)
## CIVIL DOCKET FOR CASE #: 2:23-cv-00691-CB

SNYDER v. BIROS
Assigned to: Judge Cathy Bissoon
Case in other court: PAWB, 22-20823-GLT
            Third Circuit, 24-01163
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 04/25/2023
Date Terminated: 12/19/2023
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal
(801)
Jurisdiction: Federal Question

**Appellant**

**George Snyder**

        represented by   **George Snyder**
Box 15
Irwin, PA 15642
412-979-9999
Email: georgecsnyder@pm.me
PRO SE

V.

**Appellee**

**CHRISTINE BIROS**

        represented by   **Robert S. Bernstein**
Bernstein-Burkley, P.C.
601 Grant Street
Ste 9th Floor
Pittsburgh, PA 15219
412-456-8101
Fax: 412-456-8135
Email: rbernstein@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                            **Sarah Elizabeth Wenrich**
Whiteford, Taylor & Preston, LLP
11 Stanwix St
Suite 1400
Pittsburgh, PA 15222
412-286-1697
Email: swenrich@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                            **Stuart C. Gaul , Jr.**
Bernstein-Burkley, P.C.
601 Grant Street
Ste 9th Floor
Pittsburgh, PA 15219

412-456-8139
Fax: 412-456-8135
Email: sgaul@bernsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/25/2023 | 1 | Partial Notice of APPEAL FROM BANKRUPTCY COURT, filed by GEORGE SNYDER re USBC #: 22-20823-GLT, document numbers 366,373,374. File received. FILING FEE NOT PAID, filed by GEORGE SNYDER. (Attachments: # 1 Notice recipients, # 2 Letter to parties, # 3 Notice recipients, # 4 Order of Court, # 5 Notice Recipients, # 6 Letter to Appellant, # 7 Transmittal Letter, # 8 Docket Sheet) (bjw) (Entered: 04/27/2023) |
| 06/12/2023 | 2 | Supplemental Record from Bankruptcy Court Received re USBC #: *22-20823-GLT*, document number(s) Proof of Claim 5-1, document numbers 7,42,59-66, 86, 108, 115,139,233,234,265,278,293,294,299,317,337,358,366,372. Parties are hereby advised that briefing will be in accordance with Bankruptcy Rule 8018, unless otherwise ordered by the assigned Judge. Appellant Brief due by 7/12/2023 (Attachments: # 1 completed appeal) (keh) (Entered: 06/13/2023) |
| 06/12/2023 | 3 | TRANSCRIPT of Bankruptcy Proceedings. Release of Transcript Restriction set for 7/24/2023. (keh) (Entered: 06/13/2023) |
| 06/14/2023 | 4 | ORDER REASSIGNING CASE. The Clerk of Court is directed to reassign this case to another member of the court for all further proceedings. Judge David S. Cercone no longer assigned to case. Signed by Judge David S. Cercone on 6/14/23. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (mwm) (Entered: 06/14/2023) |
| 06/14/2023 |  | Judge Cathy Bissoon added as Presider. (bjw) (Entered: 06/14/2023) |
| 06/15/2023 | 5 | ORDER Appellant's Brief is due by 7/14/2023. Otherwise, briefing in this case will be governed by Federal Bankruptcy Rule 8018. Signed by Judge Cathy Bissoon on 6/15/2023. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (ahm) (Entered: 06/15/2023) |
| 06/22/2023 | 6 | NOTICE of Appearance by Sarah Elizabeth Wenrich on behalf of CHRISTINE BIROS. (Wenrich, Sarah) (Entered: 06/22/2023) |
| 07/14/2023 | 7 | MOTION for Extension of Time to File by George Snyder. (Attachments: # 1 Proposed Order, # 2 Certificate of Service) (Snyder, George) (Entered: 07/14/2023) |
| 07/31/2023 | 8 | Appellant's BRIEF by George Snyder. filed by George Snyder. Appellee Brief due by 8/30/2023 (Snyder, George) (Entered: 07/31/2023) |
| 07/31/2023 | 9 | Appendix to 8 Appellant's Brief by George Snyder. (Snyder, George) (Entered: 07/31/2023) |

| | | |
|---|---|---|
| 08/01/2023 | 10 | ORDER granting 7 Appellant's Motion for extension, nunc pro tunc. Appellant's filings on 7/31/23 are deemed timely. Appellee's response now is due by 8/30/23, and otherwise Federal Bankruptcy Rule 8018 controls. Signed by Judge Cathy Bissoon on 8/1/23. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (dcd) (Entered: 08/01/2023) |
| 08/30/2023 | 11 | Appellee's BRIEF by CHRISTINE BIROS. filed by CHRISTINE BIROS. Appellant Reply Brief due by 9/13/2023 (Bernstein, Robert) (Entered: 08/30/2023) |
| 08/30/2023 | 12 | Appendix to 11 Appellee's Brief by CHRISTINE BIROS. (Bernstein, Robert) (Entered: 08/30/2023) |
| 12/19/2023 | 13 | MEMORANDUM & ORDER. The ruling of Bankruptcy Judge Gregory L. Taddonio, as memorialized in his decision and Order dated 4/14/23, hereby is AFFIRMED. A Rule 58 judgment order will be entered contemporaneously herewith, and this case will be marked closed. Signed by Judge Cathy Bissoon on 12/19/23. (tgl) (Entered: 12/19/2023) |
| 12/19/2023 | 14 | FINAL JUDGMENT hereby is entered pursuant to Rule 58 of the Federal Rules of Civil Procedure. This case has been marked closed. Signed by Judge Cathy Bissoon on 12/19/23. (tgl) (Entered: 12/19/2023) |
| 01/17/2024 | 15 | NOTICE *of Appeal to Third Circuit (NOTE: No events under Appeal Documents allow upload this event was the only method to file)* by George Snyder re 13 Order, 14 Rule 58 Judgment (Snyder, George) Document removed from public view and refiled at 17 as Notice of Appeal. Modified text on 1/25/2024. (keh) (Entered: 01/17/2024) |
| 01/17/2024 | 17 | NOTICE OF APPEAL as to 13 Order, 14 Rule 58 Judgment by George Snyder. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (keh) (Entered: 01/25/2024) |
| 01/19/2024 | 16 | NOTICE of Appearance by Stuart C. Gaul, Jr on behalf of CHRISTINE BIROS. (Gaul, Stuart) (Entered: 01/19/2024) |
| 01/29/2024 | 18 | USCA Case Number 24-1163 for 17 Notice of Appeal, filed by George Snyder. USCA Case Manager Stephanie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (pdb3) (Entered: 01/29/2024) |
| 02/28/2024 | 19 | ORDER of USCA as to 17 Notice of Appeal, filed by George Snyder (sb3c) Dismissed for failure to timely prosecute. Modified text on 2/29/2024. (keh) (Entered: 02/28/2024) |
| 03/14/2024 | 20 | ORDER of USCA as to 17 Notice of Appeal, filed by George Snyder Motion by Appellant George Snyder to Reconsider Order datedFebruary 28, 2024, dismissing case for failure to pay the filing fee is granted. Action on the foregoing motion, which seeks to reinstate the appeal, is hereby deferred. Appellant must first pay the $605 filing fee to the District Court before this Court can rule on the pending motion. Once the fee has been paid to the District Court, Appellant should file a supplement to the above motion, advising this Court of the date payment was made. Appellants motion will then be sent to the Court for consideration.Filing a new notice of appeal is not required. A copy of this order will be sent to the District Court Clerks Office for their information. Appellant should also provide a copy of this order to the District Court when he pays the $605 filing fee in that Court. (sb3c) (Entered: 03/14/2024) |
| 03/19/2024 | 21 | Filing fee: $605, receipt number 200008359 (jkn) (Entered: 03/19/2024) |

**Appendix Vol. II, Page 006**

| 03/19/2024 | | NOTIFICATION TO THIRD CIRCUIT COURT OF APPEALS re 21 Filing Fee Received (jkn) (Entered: 03/19/2024) |
| --- | --- | --- |

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF PENNSYLVANIA (Pittsburgh)**
**Bankruptcy Petition #: 22-20823-GLT**

|  |  |
|---|---|
| *Date filed:* | 04/27/2022 |
| *341 meeting:* | 01/06/2023 |
| *Deadline for filing claims:* | 08/26/2022 |
| *Deadline for filing claims (govt.):* | 12/14/2022 |

*Assigned to:* Chief Bankruptcy Jud Gregory L
Taddonio
Chapter 7
Involuntary
Asset

*Debtor*
**U LOCK INC**
14140 U.S. Route 30
N. Huntingdon, PA 15642
WESTMORELAND-PA
Tax ID / EIN: 47-4994911
*aka* **U-LOCK INC.**

represented by **J. Allen Roth**
805 S Alexandria Street
Latrobe, PA 15650
724-537-0939
Email: lawmatters@yahoo.com

*Petitioning Creditor*
**Shanni Snyder**
14390 Route 30
Unit H
North Huntingdon, PA 15642
SSN / ITIN: xxx-xx-6136

represented by **David L. Fuchs**
Fuchs Law Office, LLC
554 Washington Ave., First Floor
Carnegie, PA 15106
412-223-5404
Fax : 412-223-5406
Email: dfuchs@fuchslawoffice.com

**John Patrick Lacher**
The Lynch Law Group LLCC
501 Smith Drive
Suite 3
Cranberry Twp, PA 16066
724-776-8000
Fax : 724-776-8001
Email: attorneylacher@yahoo.com

*Trustee*
**Robert H. Slone, Trustee**
223 South Maple Avenue
Greensburg, PA 15601
724-834-2990

represented by **Robert H. Slone, Trustee**
223 South Maple Avenue
Greensburg, PA 15601
724-834-2990
Email: robertslone223@gmail.com

*U.S. Trustee*
**Office of the United States Trustee**
1000 Liberty Avenue
Suite 1316
Pittsburgh, PA 15222
412-644-4756

| Filing Date | # | Docket Text |
|---|---|---|
| 04/27/2022 | <u>1</u> | Chapter 7 Involuntary Petition. Receipt Number O, Fee Amount $338 Re: U LOCK INC Filed by Petitioning Creditor(s): Shanni Sue Snyder . (mgut) Additional attachment(s) added on 4/28/2022 (mgut). Modified on 4/29/2022 (mgut). (Entered: 04/28/2022) |
| 04/27/2022 | 5 | Receipt Number 17761, Fee Amount $ 338.00 (RE: related document(s): <u>1</u> Involuntary Petition Chapter 7 filed by Petitioning Creditor Shanni Snyder, Debtor U LOCK INC). (lkat) (Entered: 04/29/2022) |
| 04/28/2022 | 2 | Judge Judge unknown added to case (Entered: 04/28/2022) |
| 04/29/2022 | 3 | Notice To File Proofs of Claim. (adiuser) CORRECTIVE ENTRY: DOCKETED BY ADI IN ERROR. NO NOTICE WILL BE SENT. Modified on 4/29/2022 (mgut). (Entered: 04/29/2022) |
| 04/29/2022 | <u>4</u> | Order Signed on 4/29/2022. It is hereby ORDERED, ADJUDGED, and DECREED that:1. On or before May 6, 2022, Petitioning Creditor shall file an amended involuntary petition in compliance with the Bankruptcy Code, this Order and Local Rules of this Court. 2. If the Petitioning Creditor fails to comply, the Involuntary Petition will be dismissed. (RE: related document(s): <u>1</u> Involuntary Petition Chapter 7). (aala) (Entered: 04/29/2022) |
| 05/01/2022 | <u>6</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>4</u> Order - Non-motion related-). Notice Date 05/01/2022. (Admin.) (Entered: 05/02/2022) |
| 05/04/2022 | 13 | Receipt Number 17785, Fee Amount $ 338.00 (RE: related document(s): <u>1</u> Involuntary Petition Chapter 7 filed by Petitioning Creditor Shanni Snyder, Debtor U LOCK INC, 5 Receipt Number and Filing Fee). This payment replaces the one at Doc. # 5 above. (lkat) (Entered: 05/17/2022) |
| 05/09/2022 | <u>7</u> | Amended Involuntary Petition Against a Non-Individual filed by Shanni Snyder (RE: related document(s): <u>4</u> Order -Non-motion related-). (aala) (Entered: 05/09/2022) |
| 05/10/2022 | <u>8</u> | One Involuntary Summons Issued on Shanni Snyder. Issued 05/10/2022 (Attachments: # <u>1</u> Instructions to Petitioner-Involuntary Cases) (aala) (Entered: 05/10/2022) |
| 05/10/2022 | <u>9</u> | Order Designating Principal Operating Officer of Alleged Corporation Debtor or Managing General Partner. George Snyder, and Kash Snyder Designated as Principal Operating Officer or Managing General Partner. Signed on 5/10/2022. (aala) (Entered: 05/10/2022) |
| 05/10/2022 | <u>10</u> | BNC PDF Notice - Documents were sent through the BNC to Shanni Snyder (Attachments: # <u>1</u> Instructions to Petitioner # <u>2</u> Order Designating Officer) (aala) (Entered: 05/10/2022) |
| 05/12/2022 | <u>11</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>9</u> Order Designating Principal Operating Officer/General Partner). Notice Date 05/12/2022. (Admin.) (Entered: 05/13/2022) |

| | | |
|---|---|---|
| 05/12/2022 | 12 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 10 BNC PDF Notice). Notice Date 05/12/2022. (Admin.) (Entered: 05/13/2022) |
| 05/20/2022 | 14 | Expedited Motion to Dismiss Case , in addition to Motion For Sanctions *Against Petitioning Creditor*, or in the alternative Motion for Relief from Stay. Fee Amount $188., or in the alternative Motion to Abandon *the Movant's Property*. Fee Amount $ 188., in addition to Motion to Expedite Hearing Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order # 2 Exhibit A # 3 Exhibit B # 4 Exhibit C # 5 Exhibit D # 6 Exhibit E # 7 Exhibit F # 8 Exhibit G # 9 Exhibit H # 10 Exhibit I # 11 Exhibit J # 12 Exhibit K # 13 Exhibit L # 14 Exhibit M # 15 Exhibit N) (Wenrich, Sarah) (Entered: 05/20/2022) |
| 05/20/2022 | 15 | Receipt of Motion for Relief From Stay( 22-20823-GLT) [motion,mrlfsty] ( 188.00) filing fee. Receipt number A15927869, amount $ 188.00. (U.S. Treasury) (Entered: 05/20/2022) |
| 05/20/2022 | 16 | Receipt of Motion to Abandon( 22-20823-GLT) [motion,mabn] ( 188.00) filing fee. Receipt number A15927869, amount $ 188.00. (U.S. Treasury) (Entered: 05/20/2022) |
| 05/20/2022 | 17 | Order Setting Hearing on (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 6/2/2022 at 09:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 5/31/2022 by 12 PM. (jhel) (Entered: 05/20/2022) |
| 05/20/2022 | 18 | Exhibit *I (Amended)* Filed by Creditor Christine Biros (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 17 Order Scheduling a Hearing). (Attachments: # 1 Amended Exhibit I - Transcript) (Wenrich, Sarah) (Entered: 05/20/2022) |
| 05/20/2022 | 19 | Certificate of Service Regarding the Hearing on 6/2/2022. Filed by Creditor Christine Biros (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 17 Order Scheduling a Hearing, 18 Exhibit filed by Creditor Christine Biros). (Wenrich, Sarah) (Entered: 05/20/2022) |
| 05/27/2022 | 20 | Summons Service Executed in an Involuntary Case on George Snyder. Service Executed on: 5/23/2022, Answer Due on: 6/13/2022. Add 3 days to the answer due date if service was made through the mail. Filed by Renee' E. Basista, Managing General Partner George Snyder (aala) (Entered: 05/27/2022) |
| 05/30/2022 | 21 | Notice of Appearance and Request for Notice by J. Allen Roth Filed by Debtor U LOCK INC (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 05/30/2022) |
| 05/31/2022 | 22 | Opposition Response Regarding the Hearing on 06/02/2022. Filed by U LOCK INC (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 05/31/2022) |

| | 23 | Exhibit *A in Opposition to Motion* Filed by Debtor U LOCK INC (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 22 Response filed by Debtor U LOCK INC). (Roth, J.) (Entered: 05/31/2022) |
|---|---|---|
| 05/31/2022 | | |
| 05/31/2022 | 24 | Opposition Response Regarding the Hearing on 6/2/2022. Filed by Shanni Snyder (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (aala) (Entered: 05/31/2022) |
| 05/31/2022 | 25 | Declaration Under Penalty of Perjury for Non-individual Debtors *in Response to the Emergency Motion filed by Christine Biros for hearing on June 2, 2022 at 9 a.m.* Filed by Debtor U LOCK INC (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 05/31/2022) |
| 06/01/2022 | 26 | Exhibit Filed by Debtor U LOCK INC (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 22 Response filed by Debtor U LOCK INC). (Attachments: # 1 Exhibit Correspondence of June 1 2022 sent from counsel for Christine Biros to state court judge advising him that filings are made that cast his actions "in a negative light" # 2 Certificate of Service) (Roth, J.) (Entered: 06/01/2022) |
| 06/02/2022 | 27 | Exhibit *Disclosing Police Report Regarding Garbage Truck Fire* Filed by Debtor U LOCK INC (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # 1 Exhibit Police Report Regarding Garbage Truck Fire # 2 Certificate of Service) (Roth, J.) (Entered: 06/02/2022) |
| 06/03/2022 | 28 | Notice Regarding NOTICE OF PARTIAL NON-OBJECTION TO LIMITED RELIEF FROM THE STAY. *(not consent)* Filed by Debtor U LOCK INC (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (Attachments: # 1 Exhibit Trailers that are property of family of Christine Biros # 2 Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | 29 | Response *TO NOTICE OF PARTIAL NON-OBJECTION TO LIMITED RELIEF FROM THE STAY* Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 22 Response filed by Debtor U LOCK INC, 28 Notice filed by Debtor U LOCK INC). (Attachments: # 1 Exhibit A - Proposed Order # 2 Certificate of Service) (Wenrich, Sarah) (Entered: 06/03/2022) |
| 06/03/2022 | 30 | TEXT ORDER: On June 2, 2022, the Court held a hearing on the Expedited Motion to Dismiss Case, in addition to Motion for Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14]. Based upon statements made on the record at the June 2 hearing, it is hereby ORDERED that the Expedited Motion to Dismiss Case, in addition to Motion for Sanctions Against |

| | | |
|---|---|---|
| | | Petitioning Creditor, or in thealternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14] isCONTINUED to July 6, 2022 at 11 a.m. Judge Taddonio Signed on 6/3/2022. (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 7/6/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 06/03/2022) |
| 06/03/2022 | 31 | TEXT ORDER: On June 2, 2022, the Court held a hearing on the Expedited Motion to Dismiss Case, in addition to Motion for Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movant's Property [Dkt. No. 14]. Based upon statements made on the record at the June 2 hearing, it is hereby ORDERED that On or before June 3, 2022 at 4 p.m., the parties shall file, under certification of counsel, an order granting limited stay relief to Christine Biros for the purpose of initiating environmental remediation. (RE: related document(s): 14 Motion to Dismiss Case, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (hthu) (Entered: 06/03/2022) |
| 06/03/2022 | 32 | Reply *to the Response to the Statement of Non-Objection* Regarding the Hearing on under advisement. Filed by U LOCK INC (RE: related document(s): 29 Response filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | 33 | Proposed Order RE: *(non consent) Limited Relief from Stay* Filed by Debtor U LOCK INC (RE: related document(s): 31 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 06/03/2022) |
| 06/03/2022 | 34 | Hearing Held on 6/2/2022 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). 1. [Text Order] 2. [Text Order] (aala) (Entered: 06/03/2022) |
| 06/03/2022 | 35 | 3-Day Transcript Requested by Christine Biros regarding hearing held 06/02/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 06/08/2022. (RE: related document(s): 34 Hearing Held). (hsmi) (Entered: 06/03/2022) |
| 06/03/2022 | 36 | Order Granting Christine Biros Limited Relief from the Stay. Signed on 6/3/2022. (RE: related document(s): 14 Motion to Dismiss Case, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 22 Response, 28 Notice). (hthu) (Entered: 06/03/2022) |
| 06/05/2022 | 37 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 36 Order -Non-motion related-). Notice Date 06/05/2022. (Admin.) (Entered: 06/06/2022) |

| | | |
|---|---|---|
| 06/08/2022 | [38](#) | Transcript regarding Hearing Held 06/02/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) [35](#) Transcript Request). Notice of Intent to Request Redaction due 6/15/2022. Redaction Request due 6/29/2022. Redacted Transcript Submission due 7/11/2022. Remote electronic access to the transcript is restricted through 9/6/2022. (hsmi) (Entered: 06/08/2022) |
| 06/08/2022 | [39](#) | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 06/02/2022 on Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay Fee Amount, or in the alternative Motion to Abandon the Movants Property filed by Christine Biros; Amended Exhibit I has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): [38](#) Transcript). (hsmi) (Entered: 06/08/2022) |
| 06/10/2022 | [40](#) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [39](#) Notice of Filing of Transcript). Notice Date 06/10/2022. (Admin.) (Entered: 06/11/2022) |
| 06/17/2022 | [41](#) | Notice of Appointment of Trustee. (aala) (Entered: 06/17/2022) |
| 06/17/2022 | [42](#) | Order for Relief Signed on 6/17/2022. Incomplete Filings due by 7/1/2022. Statement of Current Monthly Income FR 122A due by 7/1/2022. List of all Creditors due 6/24/2022. Proofs of Claims due by 8/26/2022. Government Proof of Claim due by 12/14/2022. (aala) Modified on 6/21/2022 (aala). CORRECTIVE ENTRY: THE DEADLINE FOR THE STATEMENT OF CURRENT MONTHLY INCOME FR 122A IS DUE BY 7/5/2022 AND INCOMPLETE FILINGS ARE DUE BY 7/5/2022. THE 7/1/2022 DEADLINE WAS TERMINATED. (Entered: 06/17/2022) |
| 06/17/2022 | [43](#) | ORDER AND NOTICE REGARDING INVOLUNTARY CHAPTER 7 PETITION. Signed on 6/17/2022. (RE: related document(s): [1](#) Involuntary Petition Chapter 7). IT IS FURTHER ORDERED that if the documents are not filed pursuant to this Order by July 5, 2022, a Rule to Show Cause hearing is to be held on 7/7/2022 at 11:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. cm: All Interested Parties (aala) (Entered: 06/17/2022) |
| 06/19/2022 | [44](#) | BNC Certificate of Mailing. (RE: related document(s): [41](#) Notice Appointing Trustee). Notice Date 06/19/2022. (Admin.) (Entered: 06/20/2022) |
| 06/19/2022 | [45](#) | BNC Certificate of Mailing - PDF Document. (RE: related document(s): [42](#) Order for Relief -Ch.7-). Notice Date 06/19/2022. (Admin.) (Entered: 06/20/2022) |
| 06/21/2022 | 46 | Deadlines Updated (RE: related document(s): [42](#) Order for Relief -Ch.7-). Statement of Current Monthly Income FR 122A due by 7/5/2022. Incomplete Filings due by 7/5/2022. (aala) (Entered: 06/21/2022) |
| 06/21/2022 | 47 | Corrective Entry: THE DEADLINE FOR THE STATEMENT OF CURRENT MONTHLY INCOME FR 122A IS DUE BY 7/5/2022 AND INCOMPLETE FILINGS ARE DUE BY 7/5/2022. THE 7/1/2022 DEADLINE WAS TERMINATED. (RE: related document(s): [42](#) Order for Relief -Ch.7-). (aala) |

| | | |
|---|---|---|
| | | (Entered: 06/21/2022) |
| 06/22/2022 | 48 | Rejection of Appointment by the Trustee. I, Charles O. Zebley, Jr., hereby reject the Appointment of Trustee in the above captioned case for the following reason(s) *Conflict of Interest*. Filed by Charles O. Zebley Jr.. (Zebley, Charles) (Entered: 06/22/2022) |
| 06/22/2022 | 49 | Notice of Appointment of Trustee. (aala) (Entered: 06/22/2022) |
| 06/23/2022 | 50 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 43 Order -Non-motion related-). Notice Date 06/23/2022. (Admin.) (Entered: 06/24/2022) |
| 06/24/2022 | 51 | BNC Certificate of Mailing. (RE: related document(s): 49 Notice Appointing Trustee). Notice Date 06/24/2022. (Admin.) (Entered: 06/25/2022) |
| 06/30/2022 | 52 | Text Order Rescheduling Hearing: The Court previously issued an order scheduling a show cause hearing for July 7, 2022 at 11am if the debtor failed to complete the petition by July 5, 2022. The continued hearing on the expedited Motion to Dismiss Case [Dkt. NO. 14] is scheduled for July 6, 2022 at 11 am. Therefore, in an effort to efficiently hear both matters on the same day, it is hereby ORDERED that the in-person Show Cause Hearing scheduled for July 7, 2022 is RESCHEDULED to July 6, 2022 at 11 am in Courtroom A 54th Floor U.S. Steel Tower, 600 Grant St., Pittsburgh, PA. Judge Taddonio signed on 6/30/2022. (RE: related document(s): 43 Order -Non-motion related-, Order to Show Cause). Hearing scheduled for 7/6/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 06/30/2022) |
| 07/01/2022 | 53 | Motion to Convert Case from Chapter 7 to 11 . Fee Amount $922 Filed by Debtor U LOCK INC. (Attachments: # 1 Notice of Hearing and Deadline to Respond # 2 Proposed Order Proposed Order # 3 Certificate of Service) (Roth, J.) (Entered: 07/01/2022) |
| 07/01/2022 | 54 | Receipt of Motion to Convert Case from Chapter 7 to 11( 22-20823-GLT) [motion,mcn7to11] ( 922.00) filing fee. Receipt number A15972573, amount $ 922.00. (U.S. Treasury) (Entered: 07/01/2022) |
| 07/05/2022 | 55 | Status Report *Relating to Remediation Relief from Stay* Filed by Debtor U LOCK INC (RE: related document(s): 36 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 56 | Statement of Attorney *Pursuant to F.R.Bk. 2106* Filed by Debtor U LOCK INC (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 57 | Text Order re: (53 Motion to Convert Case from Chapter 7 to 11). Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE NOTICE OF HEARING IS TO BE FILED AS A SEPARATE ENTRY UNDER BANKRUPTCY/MISC./HEARING ON A JUDGE TADDONIO CASE FILED BY AN ATTORNEY OR TRUSTEE. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/5/2022. (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11). Required corrective action due on or before 7/13/2022. (aala) (Entered: 07/05/2022) |

**Appendix Vol. II, Page 014**

| | | |
|---|---|---|
| 07/05/2022 | 58 | Hearing on NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING MOTION OF U LOCK INC. TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11 Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). Hearing scheduled for 8/9/2022 at 02:00 PM (check with court for location). Responses due by 7/19/2022. (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 59 | Summary of Assets and Liabilities Schedules for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/05/2022) |
| 07/05/2022 | 60 | Schedule A/B: Property for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/05/2022) |
| 07/06/2022 | 61 | Schedule D: Creditors Having Claims Secured by Property Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 62 | Schedule E/F: Creditors Who Have Unsecured Claims for Non-Individual Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 63 | Schedule G: Executory Contracts and Unexpired Leases Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 64 | Schedule H: Non-Individual- Codebtors *to the extent U Lock acted since 2015 in the capacity as a trustee* Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 65 | Statement of Financial Affairs Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 66 | Declaration re: *Under Penalty of Perjury for Non-Individual Debtors* Filed by Debtor U LOCK INC (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 67 | Mailing Matrix Filed by Debtor U LOCK INC (Attachments: # 1 Verification of Creditor Matrix) (Roth, J.) (Entered: 07/06/2022) |
| 07/06/2022 | 68 | Text Order re: (58 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE LOCATION OF THE HEARING MUST BE REFLECTED IN THE DOCKET TEXT. MUST BE REFILED. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): 58 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Required corrective action due on or before 7/14/2022. (aala) (Entered: 07/06/2022) |
| 07/06/2022 | 69 | Hearing on MOTION OF U LOCK INC. TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11 Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). Hearing scheduled for 8/9/2022 at 02:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/19/2022. (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 07/06/2022) |

**Appendix Vol. II, Page 015**

| | | |
|---|---|---|
| 07/06/2022 | 70 | Text Order re: (53 Motion to Convert Case from Chapter 7 to 11, 69 Hearing on a Judge Taddonio Case Set by Attorney or Trustee).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: Counsel shall serve the motion and notice of hearing on all parties listed on the Clerk's office mailing matrix. Counsel shall file amended proof of service in compliance with W.PA.LBR 2002-1 and 5005-6(b). Specifically, the Filing User's name, address, telephone number, email address and state bar registration number should be included in the signature block. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11, 69 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). Required corrective action due on or before 7/14/2022. (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | 71 | Application to Employ Robert H. Slone as Counsel to Chapter 7 Trustee Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 07/06/2022) |
| 07/06/2022 | 72 | Hearing Held on 7/6/22 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | 73 | Order denying without prejudice the Expedited Motion [Dkt No.14] to the extent it seeks to dismiss the bankruptcy case. Order continuing hearing on the Expedited Motion [Dkt. No.14] to August 9, 2022 at 2pm to the extent it seeks stay relief. On or before the close of business on July 7, 2022, the Debtor shall file the declaration re: electronic filing. Judge Taddonio Signed on 7/6/2022. (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). Hearing scheduled for 8/9/2022 at 02:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Parties may participate in the hearing via Zoom video conference in compliance with Judge Taddonio's Procedures (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | 74 | Exhibit A submitted at July 6, 2022 hearing by Debtor U LOCK INC (RE: related document(s): 72 Hearing Held). (hthu) (Entered: 07/06/2022) |
| 07/06/2022 | 75 | Amended Certificate of Service Regarding the Hearing on 8/9/2022. Filed by U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11, 69 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 70 Order Fixing Deadline to Deny a Motion). (Roth, J.) (Entered: 07/06/2022) |
| 07/07/2022 | 76 | Declaration re: *Electronic Filing of Schedules and Statements* Filed by Debtor U LOCK INC (Roth, J.) Modified on 7/7/2022 (aala). CORRECTIVE ENTRY: THE DECLARATION OF ELECTRONIC FILING IS NOT TO BE FILED ELECTRONICALLY. THE EIN NUMBER IS REQUIRED ON THE DOCUMENT. MUST BE REFILED THROUGH THE EDSS SYSTEM PER JUDGE TADDONIO'S SIGNED ORDER 7/6/2022 AT DOCUMENT # 73. (Entered: 07/07/2022) |
| 07/07/2022 | 77 | Corrective Entry: THE DECLARATION OF ELECTRONIC FILING IS NOT TO BE FILED ELECTRONICALLY. THE EIN NUMBER IS REQUIRED ON THE DOCUMENT. MUST BE REFILED THROUGH THE EDSS SYSTEM |

| | | |
|---|---|---|
| | | PER JUDGE TADDONIO'S SIGNED ORDER 7/6/2022 AT DOCUMENT # 73. (RE: related document(s): 76 Declaration filed by Debtor U LOCK INC). (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 78 | Order Granting Application to Employ Robert H. Slone, Esq. as Counsel for the Chapter 7 Trustee. (Related Doc # 71) Signed on 7/7/2022. (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 79 | Declaration Re: Electronic Filing (aala) (Entered: 07/07/2022) |
| 07/07/2022 | 80 | Meeting of Creditors 341(a) meeting to be held on 09/09/2022 at 09:00 AM at 341 telephonic hearing. Proofs of Claims due by 8/26/2022. Government Proof of Claim due by 12/14/2022. (aala) (Entered: 07/07/2022) |
| 07/08/2022 | 81 | Certificate of Service *for Order Granting Application to Employ Robert H. Slone, Esq. as Counsel for the Chapter 7 Trustee* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 78 Order on Application to Employ). (Slone, Trustee, Robert) (Entered: 07/08/2022) |
| 07/09/2022 | 82 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s): 80 Meeting of Creditors Chapter 7 Asset Business/Corporation). Notice Date 07/09/2022. (Admin.) (Entered: 07/10/2022) |
| 07/09/2022 | 83 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 78 Order on Application to Employ). Notice Date 07/09/2022. (Admin.) (Entered: 07/10/2022) |
| 07/12/2022 | 84 | Trustee's Notice of Assets & Request for Notice to Creditors Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 07/12/2022) |
| 07/12/2022 | 85 | Three-Day Transcript Requested by U LOCK INC regarding hearing held on 07/06/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 07/18/2022. (RE: related document(s): 72 Hearing Held). (aolo) (Entered: 07/12/2022) |
| 07/15/2022 | 86 | Notice Regarding of Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36. Filed by Debtor U LOCK INC (RE: related document(s): 36 Order - Non-motion related-). (Attachments: # 1 Exhibit Cease and Desist from North Huntingdon Township # 2 Declaration of George Snyder) (Roth, J.) (Entered: 07/15/2022) |
| 07/15/2022 | 87 | Certificate of Service *of Notice of Non-Compliance* Filed by U LOCK INC (RE: related document(s): 86 Notice). (Attachments: # 1 Mailing Matrix of Persons Served)(Roth, J.) (Entered: 07/15/2022) |
| 07/18/2022 | 88 | Transcript regarding Hearing Held 07/06/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's/Transcriber's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 85 Transcript Request). Notice of Intent to Request Redaction due 7/25/2022. Redaction Request due 8/8/2022. Redacted Transcript Submission due 8/18/2022. Remote electronic access to the transcript is restricted through 10/17/2022. (hsmi) (Entered: 07/18/2022) |

| | | |
|---|---|---|
| 07/18/2022 | <u>89</u> | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 07/06/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay Fee Amount, or in the alternative Motion to Abandon the Movant's Property; Order to Show Cause has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): <u>88</u> Transcript). (hsmi) (Entered: 07/18/2022) |
| 07/18/2022 | <u>90</u> | This matter is before the Court upon the filing of the Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36 [Dkt. No.86] (the Notice) filed by U LOCK INC. It is hereby ORDERED, ADJUDGED AND DECREED that:(1) Any response to the Notice shall be filed on or before July 25, 2022. Order Signed on 7/18/2022. (RE: related document(s): <u>86</u> Notice). (aala) (Entered: 07/18/2022) |
| 07/19/2022 | <u>91</u> | Response *In Opposition* Regarding the Hearing on 08/09/22. Filed by Christine Biros (RE: related document(s): <u>53</u> Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Certificate of Service # <u>4</u> Mailing Matrix) (Wenrich, Sarah) (Entered: 07/19/2022) |
| 07/19/2022 | <u>92</u> | Response *to Motion to Convert Case from Chapter 7 to 11* Regarding the Hearing on 08/09/22. Filed by Robert H. Slone, Trustee (RE: related document(s): <u>53</u> Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC, <u>69</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # <u>1</u> Proposed Order) (Slone, Trustee, Robert) (Entered: 07/19/2022) |
| 07/20/2022 | <u>93</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>89</u> Notice of Filing of Transcript). Notice Date 07/20/2022. (Admin.) (Entered: 07/21/2022) |
| 07/20/2022 | <u>94</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>90</u> Order -Non-motion related-). Notice Date 07/20/2022. (Admin.) (Entered: 07/21/2022) |
| 07/22/2022 | <u>95</u> | Motion to Compel William Otto to File Appearance. Filed by Petitioning Creditor Shanni Snyder. (Attachments: # <u>1</u> Proposed Order) (mgut) (Entered: 07/22/2022) |
| 07/25/2022 | <u>96</u> | Response *to Debtor U Lock's Notice of Non-Compliance* Regarding the Hearing on no hearing date scheduled. Filed by Robert H. Slone, Trustee (RE: related document(s): <u>86</u> Notice filed by Debtor U LOCK INC). (Slone, Trustee, Robert) (Entered: 07/25/2022) |
| 07/25/2022 | <u>97</u> | Response *to Debtor U Locks notice of Non-Compliance* Regarding the Hearing on 08/09/2022. Filed by Christine Biros (RE: related document(s): <u>36</u> Order -Non-motion related-, <u>86</u> Notice filed by Debtor U LOCK INC). (Attachments: # <u>1</u> Exhibit A # <u>2</u> Certificate of Service # <u>3</u> Exhibit Creditor's Mail Matrix) (Wenrich, Sarah) (Entered: 07/25/2022) |
| 07/28/2022 | <u>98</u> | Order Signed on 7/28/2022. ORDERED, ADJUDGED, and DECREED that the Motion will be dismissed on August 5, 2022, without prejudice unless the Movant takes the following corrective action:... (RE: related document(s): <u>95</u> |

| | | Motion to Compel William Otto to file an Appearance). (lfin) (Entered: 07/28/2022) |
|---|---|---|
| 07/30/2022 | 99 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 98 Order -Non-motion related-). Notice Date 07/30/2022. (Admin.) (Entered: 07/31/2022) |
| 08/01/2022 | 104 | Adversary case 22-2048. Complaint Pursuant to 11 USC 105(a) and 362(k) and by U LOCK INC against Christine Biros. Fee Amount $ 350. (Attachments: # 1 Exhibit A -- Contract between U Lock and Biros # 2 Exhibit B -- Decision of Court of Common Pleas # 3 Exhibit C -- Superior Court Opinion # 4 Exhibit D(1) -- State Court Docket Sheet #1 # 5 Exhibit D(2) -- State Court docket sheet pt 2 # 6 Exhibit Superior Court docket sheet # 7 Exhibit F -- Supreme Court of Pennsylvania docket sheet # 8 Exhibit G -- Unilateral Order of January 20 2022 # 9 Exhibit H-- January 25 2022 deed # 10 Exhibit I -- U Lock motion to stay remand of record # 11 Exhibit J -- Biros response to motion to stay # 12 Exhibit K-- March 16 2022 Order of Supreme Court of Pennsylvania # 13 Exhibit L -- U Lock motion to vacate unilateral order # 14 Exhibit M -- April 16 2022 Petition for Writ of Possession (never filed) # 15 Exhibit N -- Motion for Sanctions (never filed) # 16 Exhibit O -- U Lock preliminary objections to petition for possession # 17 Exhibit P -- Transcript of April 22 2022 hearing # 18 Exhibit Q -- May 13 2022 Order Granting Possession and Levy # 19 Exhibit R -- May 13 2022 Order Denying Motion to Vacate Unilateral Order # 20 Exhibit S May 18 2022 Letter from Christine Biros to state judge # 21 Exhibit T -- Transcript May 20 2022 state court hearing # 22 Exhibit U -- May 24 2022 letter from Christine Biros to state judge # 23 Exhibit V -- June 1 2022 letter from Christine Biros to state court judge # 24 Exhibit W -- Letter to state court judge May 5 2022) Nature of Suit: (91 (Declaratory judgment)),(14 (Recovery of money/property - other)) (Roth, J.) (Attachments: # 1 Exhibits A-N # 2 Exhibits O-W) (dpas) (Attachment 1 replaced on 8/5/2022) (dpas). (Attachment 2 replaced on 8/5/2022) (dpas). (Entered: 08/05/2022) |
| 08/03/2022 | 100 | Declaration re: *Notice of Non-Compliance (Docket Entry 86)* Filed by Debtor U LOCK INC (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 08/03/2022) |
| 08/03/2022 | 101 | NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING MOTION OF SHANNI OTTO TO COMPEL WILLIAM OTTO TO FILE APPEARANCE (RE: related document(s): 95 Motion to Compel filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 9/9/2022 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 8/21/2022. Filed by Shanni Snyder (aala) (Entered: 08/03/2022) |
| 08/04/2022 | 102 | Exhibit *s to be referenced at hearing on August 9, 2022* Filed by Debtor U LOCK INC (RE: related document(s): 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC). (Attachments: # 1 Certificate of Service) (Roth, J.) (Entered: 08/04/2022) |
| 08/04/2022 | 103 | Order Denying Motion To Compel William Otto to File Appearance - The hearing scheduled for September 9, 2022 is CANCELLED. (Related Doc # 95) Signed on 8/4/2022. (aala) (Entered: 08/04/2022) |
| 08/05/2022 | 105 | Adversary case 22-02052. Complaint by Shanni Snyder against U LOCK INC. , Biros Irrevocable Life Insurance Trust , Christine Biros , Robert H. Slone , Charles O. Zebley Jr.. Receipt Number NFP, Fee Amount $ 350 . (Attachments: # 1 Letter) Nature of Suit: (91 (Declaratory judgment)) ,(21 (Validity, priority or |

| | | extent of lien or other interest in property)) (aala) (Entered: 08/05/2022) |
|---|---|---|
| 08/05/2022 | 106 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 101 Order Scheduling Hearing). Notice Date 08/05/2022. (Admin.) (Entered: 08/06/2022) |
| 08/06/2022 | 107 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 103 Order on Motion to Compel). Notice Date 08/06/2022. (Admin.) (Entered: 08/07/2022) |
| 08/08/2022 | 108 | DECLARATION OF GEORGE SNYDER IN REFERENCE TO CERTAIN EQUIPMENT Filed by Managing General Partner George Snyder (Attachments: # 1 Exhibit # 2 Certificate of Service) (aala) (Entered: 08/08/2022) |
| 08/10/2022 | 109 | Hearing Held on 8/9/2022 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing, 36 Order -Non-motion related-, 53 Motion to Convert Case from Chapter 7 to 11 filed by Debtor U LOCK INC, 102 Exhibit filed by Debtor U LOCK INC). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 110 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the Motion to Convert Case from Chapter 7 to 11 [Dkt. No. 53] ("Motion"). It is hereby ORDERED, ADJUDGED, and DECREED that the Motion is DENIED for the reasons stated on the record. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022. (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 111 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36 [Dkt. No. 86] ("Notice"). It is hereby ORDERED, ADJUDGED, and DECREED that the Notice is DENIED as WITHDRAWN. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022. (RE: related document(s): 86 Notice). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 112 | TEXT ORDER: On August 9, 2022, a hearing was conducted on Adversary Proceeding (22-2048-GLT) [Dkt. No. 104] ("Adversary"). It is hereby ORDRED, ADJUDGED, and DECREED, that the Adversary is DISMISSED prejudice for the reasons stated on the record. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022.. (RE: related document(s): 104 Entry). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 113 | TEXT ORDER: On August 9, 2022, a hearing was conducted on the continued Expedited Motion to Dismiss Case, in addition Motion for Sanctions, Motion to Abandon the Movants Property Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movants Property ("Motion"). It is hereby ORDRED, ADJUDGED, and DECREED, that: (1) The Motion is CONTINUED to August 25, 2022, at 11:30 a.m. before Judge Gregory L. Taddonio in Courtroom A, 54th Floor U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania. (2) On or before August 23, 2022, the Trustee shall file a status report. (3) Parties that wish to participate in the hearing via Zoom video conference shall comply with Judge Taddonio's Procedures. If the parties already have registered for the hearing, there is no need to re-register for this time change. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 8/10/2022 (RE: |

| | | |
|---|---|---|
| | | related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). (jhel) (Entered: 08/10/2022) |
| 08/10/2022 | 114 | 3-Day Transcript Requested by U LOCK INC regarding hearing held 08/09/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 08/15/2022. (RE: related document(s): 109 Hearing Held). (hsmi) (Entered: 08/10/2022) |
| 08/15/2022 | 115 | Transcript regarding Hearing Held 08/09/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 114 Transcript Request). Notice of Intent to Request Redaction due 8/22/2022. Redaction Request due 9/6/2022. Redacted Transcript Submission due 9/15/2022. Remote electronic access to the transcript is restricted through 11/14/2022. (hsmi) (Entered: 08/15/2022) |
| 08/15/2022 | 116 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 08/09/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movants Property; Order Granting Christine Biros Limited Relief from the Stay; Notice Regarding Non-Compliance as Directed by Paragraph 12 of the Order at Entry 36; Motion to Convert Case from Chapter 7 to 11; Exhibits to be referenced at hearing on 8/9/22 has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 115 Transcript). (hsmi) (Entered: 08/15/2022) |
| 08/17/2022 | 117 | Application to Employ Eric E. Bononi, Esq., CPA as Accountant for the Trustee Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 08/17/2022) |
| 08/17/2022 | 118 | Hearing on Trustee's Motion to Employ Accountant Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 117 Application to Employ filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 9/22/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/6/2022. (Slone, Trustee, Robert) (Entered: 08/17/2022) |
| 08/17/2022 | 119 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 116 Notice of Filing of Transcript). Notice Date 08/17/2022. (Admin.) (Entered: 08/18/2022) |
| 08/22/2022 | 120 | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 113 Hearing Continued). (Slone, Trustee, Robert) (Entered: 08/22/2022) |
| 08/23/2022 | 121 | Notice of Appeal *from Order Denying Motion to Convert*. Fee Amount $ 298. Filed by U LOCK INC (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11). Appellant Designation due by 09/6/2022 for 110 ,. (Roth, J.) (Entered: 08/23/2022) |

| | | |
|---|---|---|
| 08/23/2022 | 122 | Receipt of Notice of Appeal( 22-20823-GLT) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16028443, amount $ 298.00. (U.S. Treasury) (Entered: 08/23/2022) |
| 08/24/2022 | 123 | Letter Requesting Appeal Cover Sheet sent to J. Allen Roth, Esq. (mgut) (Entered: 08/24/2022) |
| 08/24/2022 | 124 | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm: Debtor, J. Allen Roth, Esq., Robert Slone, Esq., Christine Biros, Sarah E. Wenrich, Esq., Shanni Snyder (RE: related document(s): 121 Notice of Appeal filed by Debtor U LOCK INC, 123 Letter Requesting Appeal Cover Sheet). (mgut) (Entered: 08/24/2022) |
| 08/24/2022 | 125 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11, 121 Notice of Appeal filed by Debtor U LOCK INC, 123 Letter Requesting Appeal Cover Sheet, 124 Letter Regarding Filing Designations). (mgut) (Entered: 08/24/2022) |
| 08/25/2022 | 126 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01218. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): 121 Notice of Appeal filed by Debtor U LOCK INC). (aala) (Entered: 08/25/2022) |
| 08/26/2022 | 127 | Hearing Held on 8/25/2022 (RE: related document(s): 14 Motion to Dismiss Case filed by Creditor Christine Biros, Motion for Sanctions, Motion for Relief From Stay, Motion to Abandon, Motion to Expedite Hearing). 1. [Text Order] 2. [Text Order] 3. [Chambers to Issue] (aala) (Entered: 08/26/2022) |
| 08/26/2022 | 128 | TEXT ORDER: On August 25, 2022, the Court held a continued hearing on the Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movants Property [Dkt. No. 14]. Based upon statements made on the record at the August 25 hearing, it is hereby ORDERED that the Expedited Motion [Dkt. No. 14] is DENIED without prejudice with respect to any request for additional relief beyond the Order entered on June 3, 2022 at Dkt. No. 36. Judge Taddonio Signed on 8/26/2022. (RE: related document(s): 14 Expedited Motion to Dismiss Case, Motion for Sanctions Against Petitioning Creditor, Motion for Relief from Stay. Fee Amount $188., Motion to Abandon the Movant's Property. Fee Amount $ 188., Motion to Expedite Hearing. (hthu) (Entered: 08/26/2022) |
| 08/26/2022 | 129 | TEXT ORDER: On August 25, 2022, the Court held a continued hearing on the Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay or in the alternative Motion to Abandon the Movants Property [Dkt. No. 14]. Based upon statements made on the record at the August 25 hearing, it is hereby ORDERED that on or before September 26, 2022, the trustee is directed to review the various alleged stay violations by the parties and determinewhether to file any appropriate causes of action. Judge Taddonio Signed on 8/26/2022. (hthu) (Entered: 08/26/2022) |

| | | |
|---|---|---|
| 08/26/2022 | <u>130</u> | 3-Day Transcript Requested by U LOCK INC regarding hearing held 8/25/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 8/31/2022. (RE: related document(s): <u>127</u> Hearing Held). (aolo) (Entered: 08/26/2022) |
| 08/26/2022 | 131 | The upcoming 341(a) meeting is scheduled to be held by phone. Call 1-866-687-2935 and use access code 3684723 to join the meeting. (Slone, Trustee, Robert) (Entered: 08/26/2022) |
| 08/26/2022 | <u>132</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>121</u> Notice of Appeal filed by Debtor U LOCK INC). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/26/2022 | <u>133</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>124</u> Letter Regarding Filing Designations). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/26/2022 | <u>134</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>125</u> Letter of Transmission to District Court). Notice Date 08/26/2022. (Admin.) (Entered: 08/27/2022) |
| 08/30/2022 | <u>135</u> | Motion For Sale of Property under Section 363(b) *(Rights of the Chapter 7 Trustee Regarding Property Located at 14140 U.S. Route 30, North Huntingdon, PA)* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # <u>1</u> Proposed Order) (Slone, Trustee, Robert) (Entered: 08/30/2022) |
| 08/30/2022 | <u>136</u> | Hearing on Motion to Sell Property of the Estate--Rights of the Chapter 7 Trustee Regarding Property Located at 14140 U.S. Route 30, N. Huntingdon, PA Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>135</u> Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 10/6/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/19/2022. (Slone, Trustee, Robert) (Entered: 08/30/2022) |
| 08/31/2022 | <u>137</u> | Motion For Sale of Property under Section 363(b) Filed by Trustee Robert H. Slone, Trustee. (Attachments: # <u>1</u> Exhibit # <u>2</u> Proposed Order) (Slone, Trustee, Robert) (Entered: 08/31/2022) |
| 08/31/2022 | <u>138</u> | Hearing on Trustee's Motion to Sell Personal Property of the Estate Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>137</u> Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 10/6/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 9/19/2022. (Slone, Trustee, Robert) (Entered: 08/31/2022) |
| 08/31/2022 | <u>139</u> | Transcript regarding Hearing Held 08/25/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) <u>130</u> Transcript Request filed by Debtor U LOCK INC). Notice of Intent to Request Redaction due 9/7/2022. Redaction Request due 9/21/2022. Redacted Transcript Submission due 10/3/2022. Remote electronic access to the transcript is restricted through 11/29/2022. (hsmi) (Entered: 08/31/2022) |

**Appendix Vol. II, Page 023**

| | | |
|---|---|---|
| 08/31/2022 | <u>140</u> | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 08/25/2022 on Continued Expedited Motion to Dismiss Case, in addition to Motion For Sanctions Against Petitioning Creditor, or in the alternative Motion for Relief from Stay, or in the alternative Motion to Abandon the Movants Property and Order Granting Christine Biros Limited Relief from the Stay has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): <u>139</u> Transcript). (hsmi) (Entered: 08/31/2022) |
| 09/01/2022 | <u>141</u> | Appeal Cover Sheet Filed by U LOCK INC (RE: related document(s): <u>121</u> Notice of Appeal). (Roth, J.) (Entered: 09/01/2022) |
| 09/01/2022 | <u>142</u> | Statement of Issues on Appeal, Filed by U LOCK INC (RE: related document(s): <u>121</u> Notice of Appeal, <u>141</u> Appeal Cover Sheet). (Roth, J.) (Entered: 09/01/2022) |
| 09/01/2022 | <u>143</u> | Order Signed on 9/1/2022. It is hereby ORDERED, ADJUDGED, and DECREED that:1. The State Courts Writ of Possession Order is deemed VOID. (RE: related document(s): <u>1</u> Involuntary Petition Chapter 7). <u>14</u> Motion to Dismiss (aala) (Entered: 09/01/2022) |
| 09/02/2022 | <u>144</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>140</u> Notice of Filing of Transcript). Notice Date 09/02/2022. (Admin.) (Entered: 09/03/2022) |
| 09/03/2022 | <u>145</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>143</u> Order -Non-motion related-). Notice Date 09/03/2022. (Admin.) (Entered: 09/04/2022) |
| 09/06/2022 | <u>148</u> | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by Shanni Snyder (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11. Appellant Designation due by 9/20/2022 for 110 and for 110 , . (aala) (Entered: 09/07/2022) |
| 09/06/2022 | <u>149</u> | Appeal Cover Sheet Filed by Shanni Snyder (RE: related document(s): <u>148</u> Notice of Appeal). (aala) (Entered: 09/07/2022) |
| 09/07/2022 | <u>146</u> | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by U LOCK INC (RE: related document(s): <u>121</u> Notice of Appeal, <u>141</u> Appeal Cover Sheet, <u>142</u> Statement of Issues on Appeal). Appellee designation due by 09/21/2022 for <u>142</u> and for <u>141</u> and for <u>121</u>,. Transmission of Designation Due by 10/7/2022 for <u>142</u> and for <u>141</u> and for <u>121</u>,. (Roth, J.) (Entered: 09/07/2022) |
| 09/07/2022 | <u>147</u> | Certificate of No Objection Regarding the Hearing on 9/22/2022. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): <u>117</u> Application to Employ filed by Trustee Robert H. Slone, Trustee, <u>118</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/07/2022) |
| 09/07/2022 | <u>150</u> | Letter Requesting Appeal Cover Sheet (aala) (Entered: 09/07/2022) |
| 09/07/2022 | <u>151</u> | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm: All Interested Parties (RE: related document(s): <u>148</u> Notice of Appeal filed by |

| | | |
|---|---|---|
| | | Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/07/2022) |
| 09/07/2022 | 152 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 110 Order on Motion to Convert Case from Chapter 7 to Chapter 11, 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/07/2022) |
| 09/09/2022 | 153 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | 154 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 149 Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | 155 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 150 Letter Requesting Appeal Cover Sheet). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | 156 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 151 Letter Regarding Filing Designations). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/09/2022 | 157 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 152 Letter of Transmission to District Court). Notice Date 09/09/2022. (Admin.) (Entered: 09/10/2022) |
| 09/12/2022 | 158 | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 137 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 138 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
| 09/12/2022 | 159 | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 136 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
| 09/12/2022 | 160 | Trustee Certification of Services Rendered Under 11 U.S.C. Section 330(e). I rendered the following service in the case and am eligible for payment under 11 U.S.C. Section 330(e): Filed a Notice of Assets. I declare under penalty of perjury that the foregoing is true and correct. (Executed on 9/12/2022). Filed by Robert H. Slone, Trustee (RE: related document(s): 84 Notice of Assets & Request for Notice to Creditors). (Slone, Trustee, Robert) (Entered: 09/12/2022) |
| 09/14/2022 | 161 | Default Order Granting Application to Employ Eric E. Bononi, Esq. as Accountant for the Trustee. (Related Doc 117) Signed on 9/14/2022. (aala) (Entered: 09/15/2022) |
| 09/17/2022 | 162 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 161 Order on Application to Employ). Notice Date 09/17/2022. (Admin.) (Entered: 09/18/2022) |

| | | |
|---|---|---|
| 09/20/2022 | 163 | Motion to Withdraw/Dismiss Document *(Motions to Sell Property of the Estate)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property under Section 363(b), 136 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 137 Motion for Sale of Property under Section 363(b), 138 Hearing on a Judge Taddonio Case Set by Attorney or Trustee). (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/20/2022) |
| 09/20/2022 | 164 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-1284. District Court Document No. 148. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 09/20/2022) |
| 09/21/2022 | 165 | Notice of Intention to Transmit Partial Appeal. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). Partial Appeal Document Completion Due Date: 10/5/2022. cm: All Interested Parties (aala) (Entered: 09/21/2022) |
| 09/21/2022 | 166 | Text Order re: (163 Motion to Withdraw/Dismiss Document -bk-).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: The motion appears to be incomplete. Counsel shall refile the motion and proposed order.. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 9/21/2022. (RE: related document(s): 163 Motion to Withdraw/Dismiss Document -bk-). Required corrective action due on or before 9/29/2022. (hthu) (Entered: 09/21/2022) |
| 09/22/2022 | 167 | Motion to Withdraw/Dismiss Document *(refiled per corrective entry)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property under Section 363(b), 136 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 137 Motion for Sale of Property under Section 363(b), 138 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 163 Motion to Withdraw/Dismiss Document -bk-, 166 Order Fixing Deadline to Deny a Motion). (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/22/2022) |
| 09/22/2022 | 168 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 121 Notice of Appeal filed by Debtor U LOCK INC, 141 Appeal Cover Sheet filed by Debtor U LOCK INC, 142 Statement of Issues on Appeal filed by Debtor U LOCK INC, 146 Appellant Designation filed by Debtor U LOCK INC). (aala) (Entered: 09/22/2022) |
| 09/22/2022 | 169 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01218. District Court Document No. 5. Name of Judge: Robert J. Colville. (RE: related document(s): 121 Notice of Appeal filed by Debtor U LOCK INC). (aala) (Entered: 09/22/2022) |
| 09/23/2022 | 170 | Amended Motion to Withdraw/Dismiss Document Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 135 Motion for Sale of Property under Section 363(b), 136 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 137 Motion for Sale of Property under Section 363(b), 138 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 167 Motion to Withdraw/ |

| | | |
|---|---|---|
| | | Dismiss Document -bk-). (Attachments: # 1 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/23/2022) |
| 09/23/2022 | 171 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 165 Notice of Intention to Transmit Partial Appeal). Notice Date 09/23/2022. (Admin.) (Entered: 09/24/2022) |
| 09/24/2022 | 172 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 168 Letter of Transmission to District Court). Notice Date 09/24/2022. (Admin.) (Entered: 09/25/2022) |
| 09/27/2022 | 173 | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 129 Order -Non-motion related-). (Slone, Trustee, Robert) (Entered: 09/27/2022) |
| 09/27/2022 | 174 | Order Withdrawing Motion For Sale of Property under Section 363(b) (Related Doc # 135), and Withdrawing Motion For Sale of Property under Section 363(b) (Related Doc # 137),and Granting Motion to Withdraw/Dismiss Document (Related Doc # 170) Hearings scheduled for October 6, 2022 at 10:30 AM are cancelled. Signed on 9/27/2022. (aala) (Entered: 09/27/2022) |
| 09/28/2022 | 175 | Motion For Sale of Property under Section 363(b) *Tangible and Intangible Personal Property of the Estate* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 09/28/2022) |
| 09/28/2022 | 176 | Hearing on Motion for Sale of Property-Tangible and Intangible Personal Property of the Estate Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee. Hearing scheduled for 11/10/2022 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 10/17/2022. (Slone, Trustee, Robert) (Entered: 09/28/2022) |
| 09/29/2022 | 177 | Statement of Issues on Appeal, Filed by Shanni Snyder (RE: related document(s): 148 Notice of Appeal). (aala) (Entered: 09/29/2022) |
| 09/29/2022 | 178 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 174 Order on Motion for Sale of Property under Section 363(b)). Notice Date 09/29/2022. (Admin.) (Entered: 09/30/2022) |
| 10/05/2022 | 179 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Shanni Snyder (RE: related document(s): 148 Notice of Appeal). Appellee designation due by 10/19/2022 for 148, . Transmission of Designation Due by 11/4/2022 for 148, . (aala) (Entered: 10/05/2022) |
| 10/07/2022 | 180 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). Notice Date 10/07/2022. (Admin.) (Entered: 10/08/2022) |

| | | |
|---|---|---|
| 10/10/2022 | 181 | Proof of Publication of Notice of Sale *(Tribune Review)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 176 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 10/10/2022) |
| 10/10/2022 | 182 | Proof of Publication of Notice of Sale *(Westmoreland Law Journal)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 176 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 10/10/2022) |
| 10/17/2022 | 183 | Objection *to the Motion for Sale of Assets* Regarding the Hearing on 11/10/2022. Filed by U LOCK INC (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (Attachments: # 1 Proposed Order # 2 Certificate of Service # 3 Certificate of Service Attachment to Certificate of Service) (Roth, J.) (Entered: 10/17/2022) |
| 10/17/2022 | 184 | Objection *To The Motion For Sale* Regarding the Hearing on 11/10/2022. Filed by Shanni Snyder (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 10/18/2022) |
| 10/18/2022 | 185 | Objection *To Motion for Sale* Regarding the Hearing on 11/10/2022. Filed by George Snyder (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 10/18/2022) |
| 10/20/2022 | 186 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 177 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/20/2022) |
| 10/21/2022 | 187 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01284. District Court Document No. 6. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 177 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/21/2022) |
| 10/22/2022 | 188 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 186 Letter of Transmission to District Court). Notice Date 10/22/2022. (Admin.) (Entered: 10/23/2022) |
| 10/25/2022 | 189 | Certification of Counsel Regarding *Stipulated Order for Relief From Stay* Filed by Creditor Christine Biros (Attachments: # 1 Stipulated Order) (Wenrich, Sarah) (Entered: 10/25/2022) |
| 10/27/2022 | 190 | Order Setting Hearing on (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). Hearing scheduled for 11/2/2022 at 03:00 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due at the time of the hearing. (hthu) (Entered: 10/27/2022) |

| | | |
|---|---|---|
| 10/27/2022 | 191 | Certificate of Service Regarding the Hearing on 11/2/2022. Filed by Creditor Christine Biros (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros, 190 Order Scheduling a Hearing). (Attachments: # 1 Matrix) (Wenrich, Sarah) (Entered: 10/27/2022) |
| 10/28/2022 | 192 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:22-cv-01485. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): 148 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (aala) (Entered: 10/28/2022) |
| 10/28/2022 | 193 | Motion to Continue/Reschedule Hearing On *November 2, 2022* Filed by Debtor U LOCK INC (RE: related document(s): 189 Certification of Counsel Regarding, 190 Order Scheduling a Hearing). (Attachments: # 1 Proposed Order) (Roth, J.) (Entered: 10/28/2022) |
| 10/28/2022 | 194 | Text Order Rescheduling Hearing TIME ONLY: It is hereby ORDERED that the hearing on the Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee [Dkt. No. 175] scheduled for November 10, 2022 at 10:30 am is RESCHEDULED to November 10, 2022 at 11:30 am. This text only entry constitutes the Court's Order and Notice in this matter.Judge Taddonio signed on 10/28/2022. Hearing Scheduled for 11/10/2022 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 10/28/2022) |
| 10/28/2022 | 195 | Order Granting Motion To Continue/Reschedule Hearing On (Related Doc # 193) Signed on 10/28/2022. Hearing rescheduled for 11/10/2022 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (RE: related document(s): 189 Certification of Counsel Regarding). (aala) (Entered: 10/28/2022) |
| 10/30/2022 | 196 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 195 Order on Motion to Continue/Reschedule Hearing). Notice Date 10/30/2022. (Admin.) (Entered: 10/31/2022) |
| 11/03/2022 | 197 | Verified Statement *Disclosure of Connections in Relation to the Proposed Sale [Doc. No. 175]* Filed by Creditor Christine Biros (Wenrich, Sarah) (Entered: 11/03/2022) |
| 11/03/2022 | 198 | Verification of Connections for Shanni Snyder in Relation to Proposed Sale. Filed by Petitioning Creditor Shanni Snyder. (mgut) (Entered: 11/04/2022) |
| 11/07/2022 | 199 | Certification of Counsel Regarding *Designation of Debtor's Tax Return Responsibilities* Filed by Trustee Robert H. Slone, Trustee (Attachments: # 1 Stipulation and Consent Order) (Slone, Trustee, Robert) (Entered: 11/07/2022) |
| 11/08/2022 | 200 | Objection *to the Certification Relating to Stipulated Order* Regarding the Hearing on 11/10/2022. Filed by Debtor U LOCK INC (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). (Roth, J.) (Entered: 11/08/2022) |
| 11/08/2022 | 201 | Text Order re: (200 Objection to the Certification Relating to Stipulated Order).. Without further notice or hearing, this pleading will be denied without prejudice |

| | | |
|---|---|---|
| | | if the following action is not taken: THE PROPOSED ORDER OF COURT SHOULD BE FILED AS AN ATTACHMENT; PLEASE RE-FILE UNDER EVENT CODE PROPOSED ORDER FOUND UNDER BANKRUPTCY/ MISCELLANEOUS; LINK TO RELATED DOCUMENT. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 11/8/2022. (RE: related document(s): 200 Objection -Non-motion related-). Required corrective action due on or before 11/16/2022. (lfin) (Entered: 11/08/2022) |
| 11/09/2022 | 202 | Reply *TO OBJECTIONS TO SALE MOTION AND TO VERIFICATION OF CONNECTIONS OF SHANNI SNYDER* Regarding the Hearing on 11/10/22. Filed by Christine Biros (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by Debtor U LOCK INC, 184 Objection filed by Petitioning Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder, 198 Verified Statement filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Exhibit A - Amended Schedules I & J) (Wenrich, Sarah) (Entered: 11/09/2022) |
| 11/09/2022 | 203 | Consent Order Regarding the Designation of Debtor's Tax Return Responsibilities to George Snyder Signed on 11/9/2022. (RE: related document(s): 199 Certification of Counsel Regarding). (dpas) (Entered: 11/09/2022) |
| 11/09/2022 | 205 | Petitioning Creditor's Objection to the Consent Order Regarding the Hearing on 11/10/2022. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). (mgut) (Entered: 11/10/2022) |
| 11/09/2022 | 206 | Objections of George Snyder to Consent Order Regarding the Hearing on 11/10/2022. Filed by Managing General Partner George Snyder (RE: related document(s): 189 Certification of Counsel Regarding filed by Creditor Christine Biros). (Attachments: # 1 Exhibit) (mgut) (Entered: 11/10/2022) |
| 11/10/2022 | 204 | Proposed Order RE: *Objections to Settlement and Certification of Counsel Regarding Stipulated Order* Filed by Debtor U LOCK INC (RE: related document(s): 200 Objection -Non-motion related- filed by Debtor U LOCK INC). (Roth, J.) (Entered: 11/10/2022) |
| 11/10/2022 | 207 | Notice of Appearance and Request for Notice by John B. Joyce Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Certificate of Service) (Joyce, John) (Entered: 11/10/2022) |
| 11/10/2022 | 208 | Notice of Appearance and Request for Notice by Jeremy J Kobeski Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Certificate of Service) (Kobeski, Jeremy) (Entered: 11/10/2022) |
| 11/11/2022 | 209 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 203 Order -Non-motion related-). Notice Date 11/11/2022. (Admin.) (Entered: 11/12/2022) |
| 11/14/2022 | 210 | Order Scheduling Hearing (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by Debtor U LOCK INC, 184 Objection filed by Petitioning |

| | | |
|---|---|---|
| | | Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder). Auction at Sale Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 11/30/2022. The trustee is directed to file an amended sale motion and notice of sale. Except as otherwise provided in this Order, all other objections to the Motion or the proposed sale are OVERRULED. (bsil) (Entered: 11/14/2022) |
| 11/14/2022 | 211 | Order Denying Stipulated Order for Relief from Stay Signed on 11/14/2022. (RE: related document(s): 189 Certification of Counsel Regarding, 200 Objection -Non-motion related-, 205 Objection -Non-motion related-, 206 Objection -Non-motion related-). (bsil) (Entered: 11/14/2022) |
| 11/15/2022 | 212 | Hearing Held on 11/10/2022 (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 189 Certification of Counsel Regarding filed by Creditor Christine Biros). 1. [Chambers to Prepare] 2. [Chambers to Prepare] (aala) (Entered: 11/15/2022) |
| 11/15/2022 | 213 | Amended Order Scheduling Hearing on (RE: related document(s): 175 Motion for Sale of Property under Section 363(b) filed by Trustee Robert H. Slone, Trustee, 183 Objection filed by Debtor U LOCK INC, 184 Objection filed by Petitioning Creditor Shanni Snyder, 185 Objection filed by Managing General Partner George Snyder). Sale Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due no later than 4 p.m on 11/30/2022. Except as otherwise provided in this Order, all other objections to the Motion or the proposed sale are OVERRULED. (aala) (Entered: 11/15/2022) |
| 11/15/2022 | 214 | Meeting of Creditors Rescheduled by Trustee Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 11/15/2022) |
| 11/16/2022 | 215 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 210 Order Scheduling Hearing). Notice Date 11/16/2022. (Admin.) (Entered: 11/17/2022) |
| 11/16/2022 | 216 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 211 Order -Non-motion related-). Notice Date 11/16/2022. (Admin.) (Entered: 11/17/2022) |
| 11/17/2022 | 217 | Motion to Sell Property Free and Clear of Liens under Section 363(f) . Re: Tangible and Intangible Personal Property of the Estate. Fee Amount $188 Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Proposed Order # 2 Exhibit) (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 218 | Amended Hearing on Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of all Liens, Claims and Encumbrances Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 12/1/2022 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 11/30/2022. (Attachments: # 1 Exhibit) (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 219 | The undersigned trustee hereby requests postponement of the fee required for filing Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of all Liens, |

| | | |
|---|---|---|
| | | Claims and Encumbrances. The fee will be paid at a later date, if there are assets available in the debtor's estate. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 220 | Certificate of Service Regarding the Hearing on 12/1/2022. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 213 Order Scheduling Hearing, 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 218 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 221 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 213 Order Scheduling Hearing). Notice Date 11/17/2022. (Admin.) (Entered: 11/18/2022) |
| 11/18/2022 | 222 | Receipt of Motion to Sell Property Free and Clear of Liens Under Section 363(f)( 22-20823-GLT) [motion,msell] ( 0.00) filing fee. Receipt number POSTPONEMENT REQUESTED, amount $ 0.00. (lkat) Modified on 11/18/2022 (lkat). (Entered: 11/18/2022) |
| 11/28/2022 | 223 | Proof of Publication of Notice of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 218 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 11/28/2022) |
| 11/30/2022 | 224 | Notice Regarding Notice of Qualified Bids Regarding Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and Clear of Liens, Claims and Encumbrances. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 213 Order Scheduling Hearing, 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 218 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Attachments: # 1 Exhibit) (Slone, Trustee, Robert) (Entered: 11/30/2022) |
| 11/30/2022 | 225 | Objection *of George Snyder To Motion For Sale* Regarding the Hearing on 12/01/2022. Filed by George Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (aala) (Entered: 11/30/2022) |
| 11/30/2022 | 226 | Response *in Opposition (Objection)* Regarding the Hearing on 12/1/2022. Filed by U LOCK INC (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 218 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Roth, J.) (Entered: 11/30/2022) |
| 11/30/2022 | 227 | Objection *to the Trustees Amended Motion for Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and clear of All Liens, Claims and Encumbrances* Regarding the Hearing on 12/01/22. Filed by Shanni Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 11/30/2022) |

| | | |
|---|---|---|
| 12/01/2022 | 228 | Stipulation By Shanni Snyder and Between Charles O. Zebley, Jr., Chapter 7 Trustee, and Robert H. Slone, Chapter 7 Trustee,. Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Exhibit A # 2 Proposed Order # 3 Certificate of Service) (Joyce, John) (Entered: 12/01/2022) |
| 12/01/2022 | 229 | The upcoming 341(a) meeting is scheduled to be held by phone. Call *1-866-687-2935* and use access code *3684723* to join the meeting. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/01/2022) |
| 12/02/2022 | 230 | Affidavit Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Joyce, John) (Entered: 12/02/2022) |
| 12/02/2022 | 231 | Affidavit *(Verification of Christine Biros)* Filed by Creditor Christine Biros (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Wenrich, Sarah) (Entered: 12/02/2022) |
| 12/02/2022 | 232 | Hearing Held on 12/01/2022 (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). 1. [Text Order] 2. [Chambers to Prepare] (aala) (Entered: 12/02/2022) |
| 12/02/2022 | 233 | Declaration of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | 234 | Supplemental Declaration Of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | 235 | Declaration Of George Snyder In Reference To Certain Equipment filed by George Snyder (aala) (Entered: 12/02/2022) |
| 12/02/2022 | 236 | Status Report *With Address for Site Meeting* Filed by Creditor Christine Biros (RE: related document(s): 231 Affidavit filed by Creditor Christine Biros). (Wenrich, Sarah) (Entered: 12/02/2022) |
| 12/02/2022 | 237 | TEXT ORDER: It is hereby ORDERED that on or before December 2, 2022 at 10 a.m., George Snyder, Shanni Snyder, and Christine Biros shall each file a sworn affidavit signed under penalty of perjury pursuant to 28 U.S.C Section 1746 detailing the location of the assets listed on the Debtor's schedules and exhibits to the Amended Notice if Hearing dated November 17, 2022. Each party shall affirm that either: (a) they have not removed any property from the Debtor's place of business at 14140 Route 30, North Huntingdon PA; or (b) that, to the extent that they did not remove any property from the Debtor's place of business, where those assets are currently located and under what authority they were removed from the business premises. Judge Taddonio Signed on 12/2/2022. (RE: related document(s): 232 Hearing Held). (hthu) (Entered: 12/02/2022) |
| 12/07/2022 | 238 | Notice of Appearance and Request for Notice by Robert S. Bernstein Filed by Creditor Christine Biros (Bernstein, Robert) (Entered: 12/07/2022) |
| 12/07/2022 | 239 | Order Continuing Evidentiary Hearing (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). Evidentiary hearing Continued to 12/15/2022 at 10:00 |

| | | AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (dpas) (Entered: 12/07/2022) |
|---|---|---|
| 12/08/2022 | 240 | Meeting of Creditors Rescheduled by Trustee Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/08/2022) |
| 12/08/2022 | 241 | The upcoming 341(a) meeting is scheduled to be held by phone. Call *1-866-687-2935* and use access code *3684723* to join the meeting. Filed by Robert H. Slone, Trustee. (Slone, Trustee, Robert) (Entered: 12/08/2022) |
| 12/09/2022 | 242 | Update Meeting of Creditors (RE: related document(s): 80 Meeting of Creditors Chapter 7 Asset Business/Corporation). 341(a) meeting to be held on 1/6/2023 at 11:00 AM at 341 telephonic hearing. (aala) (Entered: 12/09/2022) |
| 12/09/2022 | 243 | Notice of Appearance and Request for Notice by Daniel McArdle Booker Filed by Creditor Christine Biros (Booker, Daniel) (Entered: 12/09/2022) |
| 12/09/2022 | 244 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 239 Order Scheduling Hearing). Notice Date 12/09/2022. (Admin.) (Entered: 12/10/2022) |
| 12/15/2022 | 245 | Proposed Order RE: Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). (Joyce, John) (Entered: 12/15/2022) |
| 12/15/2022 | 246 | Order Setting Hearing on (RE: related document(s): 228 Stipulation filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 1/20/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/3/2023. (hthu) (Entered: 12/15/2022) |
| 12/15/2022 | 247 | TEXT ORDER: Highest and best bid for the tangible and intangible property is $70,000 made by Shanni Snyder. Backup bid for tangible and intangible property is $65,000 made by Christine Biros ($55,000 in cash and $10,000 credit). For the reasons stated on the record at the December 15, 2022 hearing, parties shall submit a proposed form of sale order approving the sale under certification of counsel before 5 p.m. on December 16, 2022. Judge Taddonio Signed on 12/15/2022. (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f)). (hthu) (Entered: 12/15/2022) |
| 12/15/2022 | 248 | Hearing Held on 12/15/2022 (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee). [Text Order] (aala) (Entered: 12/15/2022) |
| 12/16/2022 | 249 | Order To Show Cause (RE: related document(s): 230 Affidavit filed by Petitioning Creditor Shanni Snyder, 231 Affidavit filed by Creditor Christine Biros, 233 Document filed by Managing General Partner George Snyder, 234 Document filed by Managing General Partner George Snyder, 235 Document filed by Managing General Partner George Snyder, 236 Status Report filed by Creditor Christine Biros). A Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (aala) (Entered: 12/16/2022) |

**Appendix Vol. II, Page 034**

| | | |
|---|---|---|
| 12/16/2022 | 250 | Proposed Order RE: *Proposed Order - Snyder Redline* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 247 Order -Non-motion related-). (Attachments: # 1 Proposed Order Biros Redline) (Joyce, John) (Entered: 12/16/2022) |
| 12/17/2022 | 251 | BNC Certificate of Mailing. (RE: related document(s): 246 Order Scheduling a Hearing). Notice Date 12/17/2022. (Admin.) (Entered: 12/18/2022) |
| 12/18/2022 | 252 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 249 Order Scheduling Hearing). Notice Date 12/18/2022. (Admin.) (Entered: 12/19/2022) |
| 12/20/2022 | 253 | Certificate of Service Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 228 Stipulation filed by Petitioning Creditor Shanni Snyder, 246 Order Scheduling a Hearing). (Joyce, John) (Entered: 12/20/2022) |
| 12/20/2022 | 254 | ORDER CONFIRMING SALE OF TANGIBLE AND INTANGIBLE PERSONAL PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(f), FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES Order Signed on 12/20/2022. (RE: related document(s): 213 Order Scheduling Hearing, 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f)). (aala) (Entered: 12/20/2022) |
| 12/22/2022 | 255 | Motion for Relief from Stay. Fee Amount $188. Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Proposed Order) (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 256 | Receipt of Motion for Relief From Stay( 22-20823-GLT) [motion,mrlfsty] ( 188.00) filing fee. Receipt number A16165741, amount $ 188.00. (U.S. Treasury) (Entered: 12/22/2022) |
| 12/22/2022 | 257 | Hearing on Motion for Relief from Stay Filed by Creditor Christine Biros (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). Hearing scheduled for 1/20/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/9/2023. (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 258 | Application for Administrative Expenses *Pursuant to 11 U.S.C. §503(b)(1)* Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order) (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 259 | Hearing on Motion for Administrative Expense Claim Filed by Creditor Christine Biros (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). Hearing scheduled for 1/20/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/9/2023. (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 260 | The upcoming 341(a) meeting is scheduled to be held by phone. Call 1-866-687-2935 and use access code 3684723 to join the meeting. (Slone, Trustee, Robert) (Entered: 12/22/2022) |

| | | |
|---|---|---|
| 12/22/2022 | 261 | Certificate of Service Regarding the Hearing on 1/20/2023. Filed by Creditor Christine Biros (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros, 257 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, 258 Application for Administrative Expenses filed by Creditor Christine Biros, 259 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Creditor Matrix) (Bernstein, Robert) (Entered: 12/22/2022) |
| 12/22/2022 | 262 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 254 Order -Non-motion related-). Notice Date 12/22/2022. (Admin.) (Entered: 12/23/2022) |
| 12/23/2022 | 263 | Three-Day Transcript Requested by Christine Biros regarding hearing held 12/15/2022. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 12/28/2022. (RE: related document(s): 248 Hearing Held). (hsmi) (Entered: 12/23/2022) |
| 12/28/2022 | 264 | Transcript regarding Hearing Held 12/15/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 263 Transcript Request). Notice of Intent to Request Redaction due 1/4/2023. Redaction Request due 1/18/2023. Redacted Transcript Submission due 1/30/2023. Remote electronic access to the transcript is restricted through 3/28/2023. (hsmi) (Entered: 12/28/2022) |
| 12/28/2022 | 265 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 12/15/2022 on Evidentiary Hearing on Amended Motion to Sell Property Free and Clear of Liens under Section 363(f). Re: Tangible and Intangible Personal Property of the Estate has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 264 Transcript). (hsmi) (Entered: 12/28/2022) |
| 12/30/2022 | 266 | Report of Sale Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 217 Motion to Sell Property Free and Clear of Liens Under Section 363(f) filed by Trustee Robert H. Slone, Trustee, 218 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee, 232 Hearing Held, 254 Order -Non-motion related-). (Attachments: # 1 Exhibit) (Slone, Trustee, Robert) (Entered: 12/30/2022) |
| 12/31/2022 | 267 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 265 Notice of Filing of Transcript). Notice Date 12/31/2022. (Admin.) (Entered: 01/01/2023) |
| 01/03/2023 | 268 | Response *in Opposition and Reservation of Rights* Regarding the Hearing on 01/20/23. Filed by Christine Biros (RE: related document(s): 228 Stipulation filed by Petitioning Creditor Shanni Snyder, 246 Order Scheduling a Hearing). (Attachments: # 1 Exhibit A # 2 Certificate of Service) (Bernstein, Robert) (Entered: 01/03/2023) |
| 01/03/2023 | 269 | Notice of Appeal *from Order of December 20 2022*. Fee Amount $ 298. Filed by U LOCK INC (RE: related document(s): 254 Order -Non-motion related-). |

**Appendix Vol. II, Page 036**

| | | Appellant Designation due by 01/17/2023 for 254,. (Roth, J.) (Entered: 01/03/2023) |
|---|---|---|
| 01/03/2023 | 270 | Receipt of Notice of Appeal( 22-20823-GLT ) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16174384, amount $ 298.00. (U.S. Treasury) (Entered: 01/03/2023) |
| 01/04/2023 | 271 | Letter Requesting Appeal Cover Sheet sent to J. Allen Roth, Esq. (mgut) (Entered: 01/04/2023) |
| 01/04/2023 | 272 | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm:Debtor, J. Allen Roth, Esq., Robert Slone, Esq., Christine Biros, Sarah E. Wenrich, Esq., Shanni Snyder (RE: related document(s): 269 Notice of Appeal filed by Debtor U LOCK INC, 271 Letter Requesting Appeal Cover Sheet). (mgut) (Entered: 01/04/2023) |
| 01/04/2023 | 273 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 254 Order -Non-motion related-, 269 Notice of Appeal filed by Debtor U LOCK INC, 271 Letter Requesting Appeal Cover Sheet, 272 Letter Regarding Filing Designations). (mgut) (Entered: 01/04/2023) |
| 01/05/2023 | 274 | Motion to Enforce *Order Confirming Sale of Tangible and Intangible Personal Property of the Estate Under 11 U.S.C. Section 363(f) Free and clear of All Liens, Claims and Encumbrances* Filed by Petitioning Creditor Shanni Snyder. (Attachments: # 1 Exhibit 1 - Complaint & Docket # 2 Proposed Order # 3 Certificate of Service) (Joyce, John) (Entered: 01/05/2023) |
| 01/05/2023 | 275 | Hearing on Shanni Snyder vs. Christine Biros, et al. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 274 Motion to Enforce filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 2/2/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/23/2023. (Joyce, John) (Entered: 01/05/2023) |
| 01/06/2023 | 276 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00010-CB. District Court Document No. 1. Name of Judge: Judge Cathy Bissoon. (RE: related document(s): 269 Notice of Appeal filed by Debtor U LOCK INC). (mgut) (Entered: 01/06/2023) |
| 01/06/2023 | 277 | Response *of Trustee to Christine Biros' Motion for Allowance of Administrative Expense Claim* Regarding the Hearing on 1/20/2023. Filed by Robert H. Slone, Trustee (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros, 259 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 01/06/2023) |
| 01/06/2023 | 278 | Amended Order to Show Cause Signed on 1/6/2023. (RE: related document(s): 249 Order Scheduling Hearing). Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh, with Christine Biros and George Snyder to appear in person. On or before 1/20/2023 Christine Biros and George Snyder shall file written Responses to this Order to Show Cause. (nsha) (Entered: 01/06/2023) |

**Appendix Vol. II, Page 037**

| | | |
|---|---|---|
| 01/06/2023 | 279 | TEXT ORDER: AND NOW this 6th day of January, 2023, it is hereby ORDERED, ADJUDGED, and DECREED that the hearing on the Stipulation by Shann Snyder and Between Charles O. Zebley, Jr., Chapter 7 Trustee and Robert Slone, Chapter 7 Trustee [Dkt. No. 28] is RESCHEDULED to 1/27/2023 at 10 a.m. via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Judge Taddonio Signed on 1/6/2023. (RE: related document(s): 228 Stipulation filed by Petitioning Creditor Shanni Snyder). (jhel) (Entered: 01/06/2023) |
| 01/06/2023 | 280 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 269 Notice of Appeal filed by Debtor U LOCK INC). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |
| 01/06/2023 | 281 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 272 Letter Regarding Filing Designations). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |
| 01/06/2023 | 282 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 273 Letter of Transmission to District Court). Notice Date 01/06/2023. (Admin.) (Entered: 01/07/2023) |
| 01/08/2023 | 283 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 278 Order Scheduling Hearing). Notice Date 01/08/2023. (Admin.) (Entered: 01/09/2023) |
| 01/09/2023 | 284 | Objection *to Christine Biros Motion for Relief from the Automatic Stay* Regarding the Hearing on 01/20/2023. Filed by Shanni Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 01/09/2023) |
| 01/09/2023 | 285 | Objection *to Christine Biros Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)* Regarding the Hearing on 01/20/2023. Filed by Shanni Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 01/09/2023) |
| 01/09/2023 | 291 | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (nsha) (Entered: 01/11/2023) |
| 01/09/2023 | 292 | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (nsha) (Entered: 01/11/2023) |
| 01/10/2023 | 286 | TEXT ORDER: It is hereby ORDERED that the hearing on the Motion for Relief from Stay [Dkt. No. 255] scheduled for January 20, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023. (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). Hearing scheduled for 1/27/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) |

**Appendix Vol. II, Page 038**

| | | | |
|---|---|---|---|
| 01/10/2023 | 287 | TEXT ORDER: It is hereby ORDERED that the hearing on the Application for Administrative Expenses [Dkt. No. 258] scheduled for January 20, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023. (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). Hearing scheduled for 1/27/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) | |
| 01/10/2023 | 288 | TEXT ORDER: It is hereby ORDERED that the hearing on the Motion to Enforce [Dkt. No. 274] scheduled for February 2, 2023 is RESCHEDULED to January 27, 2023 at 10 am. Parties that wish to participate in the hearing via Zoom Video Conference may do so in compliance with Judge Taddonio's Procedures. Judge Taddonio Signed on 1/10/2023.(RE: related document(s): 274 Motion to Enforce filed by Petitioning Creditor Shanni Snyder). Hearing scheduled for 1/27/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (hthu) (Entered: 01/10/2023) | |
| 01/10/2023 | 289 | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 255 Motion for Relief From Stay filed by Creditor Christine Biros). (nsha) CORRECTIVE ENTRY: THIS OBJECTION WAS ORIGINALLY DOCKETED WITH AN INCORRECT DATE/TIME STAMP AND WAS RE-DOCKETED AT DOC. NO. 292 TO REFLECT THE CORRECT DATE/TIME IT WAS RECEIVED. Modified on 1/11/2023 (nsha). (Entered: 01/10/2023) | |
| 01/10/2023 | 290 | Objection Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros). (nsha)CORRECTIVE ENTRY: THIS OBJECTION WAS ORIGINALLY DOCKETED WITH AN INCORRECT DATE/TIME STAMP AND WAS RE-DOCKETED AT DOC. NO. 291 TO REFLECT THE CORRECT DATE/TIME IT WAS RECEIVED Modified on 1/11/2023 (nsha). (Entered: 01/10/2023) | |
| 01/17/2023 | 293 | Memorandum Opinion Signed on 1/17/2023. (RE: related document(s): 258 Application for Administrative Expenses, 277 Response, 285 Objection, 291 Objection). cm: Christine Biros, Robert Bernstein, Esq. (nsha) (Entered: 01/17/2023) | |
| 01/17/2023 | 294 | Order to Show Cause signed on 1/17/2023. (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros, 293 Memorandum Opinion). Show Cause hearing to be held on 1/27/2023 at 10:00 AM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 4:00 PM on 1/25/2023. (nsha) (Entered: 01/17/2023) | |
| 01/19/2023 | 295 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 293 Memorandum Opinion). Notice Date 01/19/2023. (Admin.) (Entered: 01/20/2023) | |
| 01/19/2023 | 296 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 294 Order Scheduling Hearing). Notice Date 01/19/2023. (Admin.) (Entered: 01/20/2023) | |

| | | |
|---|---|---|
| 01/20/2023 | 297 | Notice of Intention to Transmit Partial Appeal. cm: J. Allen Roth, Shanni Snyder, Christine Biros, Sarah Weinrich, Robert Slone (RE: related document(s): 269 Notice of Appeal filed by Debtor U LOCK INC). Partial Appeal Document Completion Due Date: 2/3/2023. (nsha) (Entered: 01/20/2023) |
| 01/20/2023 | 298 | Response *to Amended Order to Show Cause* Regarding the Hearing on 01/27/2023. Filed by Christine Biros (RE: related document(s): 278 Order Scheduling Hearing). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Certificate of Service) (Bernstein, Robert) (Entered: 01/20/2023) |
| 01/20/2023 | 301 | Response Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 278 Order Scheduling Hearing). (nsha) (Entered: 01/23/2023) |
| 01/21/2023 | 299 | Reply *by Debtor to Response of Christine Biros* Regarding the Hearing on 1/27/2023. Filed by U LOCK INC (RE: related document(s): 298 Response filed by Creditor Christine Biros). (Attachments: # 1 Exhibit Copies of Money Orders given to Trustee for Recycled Cars) (Roth, J.) (Entered: 01/21/2023) |
| 01/22/2023 | 300 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 297 Notice of Intention to Transmit Partial Appeal). Notice Date 01/22/2023. (Admin.) (Entered: 01/23/2023) |
| 01/23/2023 | 302 | Objection Regarding the Hearing on 1/27/23. Filed by Christine Biros (RE: related document(s): 274 Motion to Enforce filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 01/23/2023) |
| 01/24/2023 | 303 | Reply *to the Response re: Show Cause* Regarding the Hearing on 1/27/2023. Filed by George Snyder (RE: related document(s): 298 Response filed by Creditor Christine Biros). (nsha) (Entered: 01/24/2023) |
| 01/25/2023 | 304 | Response *of Christine Biros and Robert S. Bernstein, Esq to Order to Show Cause* Regarding the Hearing on 1/27/23. Filed by Christine Biros (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros, 259 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, 293 Memorandum Opinion, 294 Order Scheduling Hearing). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 01/25/2023) |
| 01/27/2023 | 305 | Order Approving Stipulation Signed on 1/27/2023. (RE: related document(s): 228 Stipulation). (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | 306 | Order Granting Motion For Relief From Stay (Related Doc # 255) Signed on 1/27/2023. (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | 307 | Amended Order Granting Motion For Relief From Stay (Related Doc # 255) Signed on 1/27/2023. (nsha) (Entered: 01/27/2023) |
| 01/27/2023 | 308 | Bench Exhibits From 1/27/2023 Proceeding (nsha) (Entered: 01/27/2023) |

| | | |
|---|---|---|
| 01/29/2023 | 309 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 305 Order -Non-motion related-). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/29/2023 | 310 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 306 Order on Motion For Relief From Stay). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/29/2023 | 311 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 307 Order on Motion For Relief From Stay). Notice Date 01/29/2023. (Admin.) (Entered: 01/30/2023) |
| 01/30/2023 | 312 | Hearing Held on 1/27/2023 (RE: related document(s): 278 Order Scheduling Hearing). [Amended Order to Show Cause is taken under Advisement] [Chambers to Prepare] (nsha) (Entered: 01/30/2023) |
| 01/30/2023 | 313 | Daily Transcript Requested by Christine Biros regarding hearing held 01/27/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 02/01/2023. (RE: related document(s): 312 Hearing Held). (hsmi) (Entered: 01/30/2023) |
| 01/30/2023 | 314 | Order Regarding Order to Show Cause and Request for Administrative Expense Signed on 1/30/2023. (RE: related document(s): 293 Memorandum Opinion, 294 Order Scheduling Hearing, 304 Response). The Order to Show Cause is continued generally. The Oral Motion to Extend Time to File a Motion Seeking Reconsideration of the Memorandum Opinion is GRANTED and shall be filed on or before 3/1/2023. On or before 3/1/2023, Ms. Biros shall file a Renewed or Amended Application for Expense Claim shall be filed on or before 3/1/2023. (nsha) (Entered: 01/30/2023) |
| 01/30/2023 | 315 | Order Denying Motion to Enforce (Related Doc # 274) Signed on 1/30/2023. (hthu) (Entered: 01/30/2023) |
| 02/01/2023 | 316 | Transcript regarding Hearing Held 01/27/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 313 Transcript Request). Notice of Intent to Request Redaction due 2/8/2023. Redaction Request due 2/22/2023. Redacted Transcript Submission due 3/6/2023. Remote electronic access to the transcript is restricted through 5/2/2023. (hsmi) (Entered: 02/01/2023) |
| 02/01/2023 | 317 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 01/27/2023 on Order to Show Cause; Stipulation by Shanni Snyder; Motion for Relief from Stay and Motion to Enforce Order has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 316 Transcript). (hsmi) (Entered: 02/01/2023) |
| 02/01/2023 | 318 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 314 Order -Non-motion related-). Notice Date 02/01/2023. (Admin.) (Entered: 02/02/2023) |

| | | |
|---|---|---|
| 02/01/2023 | 319 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 315 Order on Motion to Enforce). Notice Date 02/01/2023. (Admin.) (Entered: 02/02/2023) |
| 02/02/2023 | 320 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 315 Order on Motion to Enforce). Notice Date 02/02/2023. (Admin.) (Entered: 02/03/2023) |
| 02/03/2023 | 321 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 317 Notice of Filing of Transcript). Notice Date 02/03/2023. (Admin.) (Entered: 02/04/2023) |
| 02/06/2023 | 322 | Transmittal of Partial Record on Appeal to U.S. District Court in re: 2:23-cv-00010-CB (RE: related document(s): 146 Appellant Designation filed by Debtor U LOCK INC, 179 Appellant Designation filed by Petitioning Creditor Shanni Snyder, 269 Notice of Appeal filed by Debtor U LOCK INC, 297 Notice of Intention to Transmit Partial Appeal). (mgut) (Entered: 02/06/2023) |
| 02/06/2023 | 323 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania (RE: related document(s): 322 Transmittal of Partial Record on Appeal to U.S. District Court). Miscellaneous/Civil Action No. 2:23-cv-00010. District Court Document No. 3. Name of Judge: Cathy Bissoon. (culy) (Entered: 02/07/2023) |
| 02/07/2023 | 324 | Notice Regarding FILING OF AFFIDAVIT OF WILLIAM E. OTTO, ESQ. PURSUANT TO 28 U.S.C. § 1746. Filed by Creditor Christine Biros (RE: related document(s): 315 Order on Motion to Enforce). (Attachments: # 1 Affidavit of William Otto # 2 Exhibit A # 3 Exhibit B-1 # 4 Exhibit B-2 # 5 Exhibit B-3 # 6 Exhibit B-4 # 7 Exhibit B-5 # 8 Exhibit B-6 # 9 Exhibit B-7 # 10 Exhibit B-8 # 11 Exhibit B-9 # 12 Exhibit B-10 # 13 Exhibit B-11 # 14 Exhibit B-12 # 15 Exhibit B-13 # 16 Exhibit B-14 # 17 Exhibit B-15 # 18 Exhibit B-16 # 19 Exhibit B-17 # 20 Exhibit B-18 # 21 Exhibit B-19 # 22 Exhibit B-20 # 23 Exhibit B-21 # 24 Exhibit C-1 # 25 Exhibit C-2 # 26 Exhibit C-3 # 27 Exhibit C-4 # 28 Exhibit C-5 # 29 Exhibit D-1 # 30 Exhibit D-2 # 31 Exhibit D-3 # 32 Exhibit D-4 # 33 Exhibit E) (Bernstein, Robert) (Entered: 02/07/2023) |
| 02/08/2023 | 325 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 322 Transmittal of Partial Record on Appeal to U.S. District Court). Notice Date 02/08/2023. (Admin.) (Entered: 02/09/2023) |
| 02/10/2023 | 326 | Notice of Appearance and Request for Notice *and Service of Papers* by John Patrick Lacher Filed by Petitioning Creditor Shanni Snyder (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 02/10/2023) |
| 02/10/2023 | 327 | Notice of Appearance and Request for Notice by David L. Fuchs Filed by Petitioning Creditor Shanni Snyder (Fuchs, David) (Entered: 02/10/2023) |
| 02/10/2023 | 328 | Declaration of Shanni Snyder Filed by Petitioning Creditor Shanni Snyder. (nsha) Modified on 2/13/2023 (mgut). (Entered: 02/10/2023) |
| 02/10/2023 | 329 | Declaration Under Penalty of Perjury for Non-individual Debtors *as Directed by Order of Entry 315* Filed by Debtor U LOCK INC (Attachments: # 1 Exhibit Order May 13 2022 Order re Caption # 2 Exhibit Order May 13 2022 granting |

possession # 3 Exhibit Order May 13 2022 denying reconsideration and nunc pro tunc appeal # 4 Exhibit Motion May 19 2022 to correct the caption # 5 Exhibit May 19 2022 Notice of Bankruptcy # 6 May 19 2022 Objections to Exhibits # 7 Exhibit May 23 2022 Notice of Appeal from January 23 2022 Order # 8 Exhibit May 23 2022 appeal from May 13 2022 possession order and denial reconsideration # 9 Exhibit May 23 2022 Order Directing U Lock to Submit Issues for Appeal # 10 Exhibit Appeal Docket Sheet re Appeal by Mark Mycka # 11 Exhibit Appeal Docket Sheet U Lock Appeal # 12 Certified Mail Receipt Appeal Docket Sheet U Lock Appeal # 13 Certified Mail Receipt Appeal Docket Sheet appeal of Shanni Snyder # 14 Exhibit June 23 2022 Notice of Bankruptcy Filed in All Appeals # 15 Certified Mail Receipt August 2 2022 Response to Show Cause Order from Appeals Court) (Roth, J.) (Entered: 02/10/2023)

| | | |
|---|---|---|
| 02/10/2023 | 330 | Declaration re: Filed by George Snyder (nsha) (Entered: 02/13/2023) |
| 02/13/2023 | 331 | Motion to Withdraw as Attorney Filed by Petitioning Creditor Shanni Snyder. (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 02/13/2023) |
| 02/14/2023 | 332 | Text Order re: (331 Motion to Withdraw as Attorney).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: MOTION AND PROPOSED ORDER TO BE REFILED WITH A COMPLETE CAPTION NAMING A MOVANT AND ANY RESPONDENT(S) IN ACCORDANCE WITH W.PA.LBR 9004-1. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 2/14/2023. (RE: related document(s): 331 Motion to Withdraw as Attorney). Required corrective action due on or before 2/22/2023. (nsha) (Entered: 02/14/2023) |
| 02/14/2023 | 333 | Motion to Withdraw as Attorney Filed by Petitioning Creditor Shanni Snyder. (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Joyce, John) (Entered: 02/14/2023) |
| 02/14/2023 | 334 | Order Granting Motion To Withdraw As Attorney John B. Joyce, Esq. & Jeremy J. Kobeski, Esq. on behalf of Shanni Snyder(Related Doc # 333) Signed on 2/14/2023. (nsha) (Entered: 02/15/2023) |
| 02/16/2023 | 335 | Disposition of Adversary, Adversary Case 2:22-ap-2081 Closed. (dkam) (Entered: 02/16/2023) |
| 02/17/2023 | 336 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 334 Order on Motion to Withdraw as Attorney). Notice Date 02/17/2023. (Admin.) (Entered: 02/18/2023) |
| 02/24/2023 | 337 | Objection to Claim of George Snyder. At claim number 5. Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Proposed Order) (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | 338 | Hearing on Objection to Claim of George Snyder. At claim number 5 with Response Deadline Filed by Creditor Christine Biros (RE: related document(s): 337 Objection to Claim filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/27/2023. (Bernstein, Robert) (Entered: 02/24/2023) |

| | | |
|---|---|---|
| 02/24/2023 | <u>339</u> | Certificate of Service *Objection to Claim of George Snyder at claim number 5 and the Notice of Hearing with Response Deadline* Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): <u>337</u> Objection to Claim filed by Creditor Christine Biros, <u>338</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | <u>340</u> | Objection to Claim of Shanni Snyder. At claim number 1. Filed by Creditor Christine Biros. (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Exhibit C # <u>4</u> Exhibit D # <u>5</u> Exhibit E # <u>6</u> Proposed Order) (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | <u>341</u> | Hearing on Objection to Claim of Shanni Snyder at claim number 1 with Response Deadline Filed by Creditor Christine Biros (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/27/2023. (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/24/2023 | <u>342</u> | Certificate of Service *of the Objection to Claim of Shanni Snyder at claim number 1 and the Notice of Hearing with Respone Deadline* Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros, <u>341</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/24/2023) |
| 02/28/2023 | <u>343</u> | Adversary case 23-02020. Complaint by Shanni Snyder against Christine Biros, Biros Irrevocable Life Insurance Trust. Fee Amount $ 350. (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Proposed Order) Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)),(12 (Recovery of money/property - 547 preference)),(14 (Recovery of money/property - other)) (Fuchs, David) (Entered: 02/28/2023) |
| 03/01/2023 | <u>344</u> | Amended Application for Administrative Expenses *Pursuant to 11 U.S.C. § 503(b)(1) and/or for Payment of Adequate Protection* Filed by Creditor Christine Biros. (Attachments: # <u>1</u> Proposed Order) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | <u>345</u> | Consent Motion to Approve Compromise under Rule 9019 Filed by Creditor Christine Biros. (Attachments: # <u>1</u> Exhibit A - Settlement Agreement # <u>2</u> Proposed Order) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | <u>346</u> | Hearing on Consent Motion to Approve Settlement Filed by Creditor Christine Biros (RE: related document(s): <u>345</u> Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). Hearing scheduled for 4/13/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 3/17/2023. (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/01/2023 | <u>347</u> | Certificate of Service Filed by Creditor Christine Biros (RE: related document(s): <u>344</u> Application for Administrative Expenses filed by Creditor Christine Biros). (Attachments: # <u>1</u> Creditor Matrix) (Bernstein, Robert) (Entered: 03/01/2023) |

**Appendix Vol. II, Page 044**

| | | |
|---|---|---|
| 03/01/2023 | 348 | Certificate of Service Regarding the Hearing on 4/13/2023. Filed by Creditor Christine Biros (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, 346 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # 1 Creditor Matrix) (Bernstein, Robert) (Entered: 03/01/2023) |
| 03/02/2023 | 349 | Order of Court Rescheduling Hearings Signed on 3/2/2023. (RE: related document(s): 294 Order Scheduling Hearing, 337 Objection to Claim filed by Creditor Christine Biros, 340 Objection to Claim filed by Creditor Christine Biros, 344 Application for Administrative Expenses filed by Creditor Christine Biros, 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros. Hearings scheduled for 4/13/2023 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Show Cause hearing to be held on 4/13/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 03/02/2023) |
| 03/03/2023 | 350 | Proposed Order RE: *(Revised)* Filed by Creditor Christine Biros (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (Martin, Lara) (Entered: 03/03/2023) |
| 03/04/2023 | 351 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 349 Hearing Rescheduled). Notice Date 03/04/2023. (Admin.) (Entered: 03/05/2023) |
| 03/16/2023 | 352 | Objection *to Consent Motion to Approve Settlement Agreement Purusnat to Rule 9019 of the Federal Rules of Bankruptcy Procedure* Regarding the Hearing on 04/13/23. Filed by Shanni Snyder (RE: related document(s): 258 Application for Administrative Expenses filed by Creditor Christine Biros, 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Lacher, John) (Entered: 03/16/2023) |
| 03/17/2023 | 354 | Objection Regarding the Hearing on no Hearing Date Scheduled. Filed by George Snyder (RE: related document(s): 344 Application for Administrative Expenses filed by Creditor Christine Biros). (nsha) Modified on 3/20/2023 (nsha) (Entered: 03/20/2023) |
| 03/17/2023 | 355 | Objection Regarding the Hearing on 4/13/2023. Filed by George Snyder (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros). (nsha) (Entered: 03/20/2023) |
| 03/20/2023 | 353 | Disposition of Adversary, Adversary Case 2:23-ap-2022 Closed. (dkam) (Entered: 03/20/2023) |
| 03/20/2023 | 356 | Response *to Consent Motion to Approve Settlement Agreement* Regarding the Hearing on 4/13/2023. Filed by Robert H. Slone, Trustee (RE: related document(s): 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, 346 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Slone, Trustee, Robert) (Entered: 03/20/2023) |
| 03/27/2023 | 357 | Response *to Objection to Claim Number 1 Filed by Shanni Snyder* Regarding the Hearing on 04/13/23. Filed by Shanni Snyder (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 341 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). |

| | | |
|---|---|---|
| | | (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Lacher, John) (Entered: 03/27/2023) |
| 03/28/2023 | 358 | Response Regarding the Hearing on 4/13/2023. Filed by George Snyder (RE: related document(s): 337 Objection to Claim filed by Creditor Christine Biros). (nsha) (Entered: 03/28/2023) |
| 03/28/2023 | 359 | Declaration re: Filed by George Snyder (nsha) (Entered: 03/28/2023) |
| 03/31/2023 | 360 | Order Signed on 3/31/2023 (RE: related document(s): 278 Order Scheduling Show Cause Hearing). Status Conference to be held on 4/13/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 03/31/2023) |
| 04/02/2023 | 361 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 360 Order Scheduling Hearing). Notice Date 04/02/2023. (Admin.) (Entered: 04/03/2023) |
| 04/04/2023 | 362 | Motion for Extension of Time Nunc Pro Tunc as to Docket Entries 358 and 359 Filed by Managing General Partner George Snyder. (Attachments: # 1 Proposed Order) (nsha) (Entered: 04/04/2023) |
| 04/05/2023 | 363 | Order of Court Granting Motion to Extend Time. It is hereby ORDERED that the documents at Entry 358 and 359 are considered timely and will be considered by the Court. (Related Doc # 362) Signed on 4/5/2023. (nsha) (Entered: 04/06/2023) |
| 04/08/2023 | 364 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 363 Order on Motion to Extend Time). Notice Date 04/08/2023. (Admin.) (Entered: 04/09/2023) |
| 04/14/2023 | 365 | Hearing Held on 4/13/2023 (RE: related document(s): 278 Order Scheduling Hearing, 294 Order Scheduling Hearing, 337 Objection to Claim filed by Creditor Christine Biros, 340 Objection to Claim filed by Creditor Christine Biros, 344 Application for Administrative Expenses filed by Creditor Christine Biros, 345 Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros. 1) For the reasons stated on the record, the Objection to Claim Number 5 Filed by George Snyder [Dkt. No. 337] 1) For the reasons stated on the record, the Objection to Claim Number 5 Filed by George Snyder [Dkt. No. 337] is SUSTAINED, andClaim Number 5 submitted by George Snyder is DISALLOWED. [HT to enter proposed order at Dkt. No. 337].2) For the reasons stated on the record, the Objection to Claim Number 1 Filed by Shanni Snyder [Dkt. No. 340] is continued to evidentiary hearing on July 14, 2023 at 1:30 p.m. Parties shall have 60 days for discovery. [Chambers to prepare]. 3) For the reasons stated on the record, the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 [Dkt. No. 345] and the Amended Motion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C.§ 503(b)(1) and/or for Payment of Adequate Protection [Dkt.No. 344] are continued pending further Court order. [Text order].4) For the reasons stated on the record, the Order to Show Cause dated 1/17/2023 [Dkt. No. 294] is resolved. [Chambers to prepare]. 5) For the reasons stated on the record, the Amended Order to Show Cause dated 1/6/2023 [Dkt. No. 278] is taken under advisement. [Taken under advisement]. (nsha) (Entered: 04/14/2023) |

| | | |
|---|---|---|
| 04/14/2023 | 366 | Order of Court Granting Objection to Claim (Related Doc # 337) Signed on 4/14/2023. (nsha) (Entered: 04/14/2023) |
| 04/14/2023 | 367 | TEXT ORDER: For the reasons stated on the record, the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 [Dkt. No. 345] and the Amended M otion for Allowance and Payment of Administrative Expenses Pursuant to 11 U.S.C.§ 503(b)(1) and/or for Payment of Adequate Protection [Dkt.No. 344] are continued pending further Court order. Judge Taddonio Signed on 4/14/2023. (RE: related document(s): 344 Application for Administrative Expenses, 345 Motion to Approve Compromise under Rule 9019). (hthu) (Entered: 04/14/2023) |
| 04/14/2023 | 368 | Order of Court Scheduling Evidentiary Hearing signed on 4/14/2023 (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros). Evidentiary hearing scheduled for 7/14/2023 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/7/2023. Discovery due by 6/14/2023. (nsha) (Entered: 04/14/2023) |
| 04/16/2023 | 369 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 366 Order on Objection to Claim). Notice Date 04/16/2023. (Admin.) (Entered: 04/17/2023) |
| 04/16/2023 | 370 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 368 Order Scheduling Hearing). Notice Date 04/16/2023. (Admin.) (Entered: 04/17/2023) |
| 04/17/2023 | 371 | Expedited Transcript Requested by Christine Biros regarding hearing held 04/13/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 04/24/2023. (RE: related document(s): 365 Hearing Held). (hsmi) (Entered: 04/17/2023) |
| 04/24/2023 | 372 | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by George Snyder (RE: related document(s): 366 Order on Objection to Claim). Appellant Designation due by 5/8/2023 for 366, . (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 373 | Letter Requesting Appeal Cover Sheet and Filing Fee (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 374 | Letter to All Parties Regarding Filing Designations of Record on Appeal. cm:All Parties (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 375 | BNC PDF Notice of Form 17f-D (Letter Requesting Appeal Cover Sheet and Filing Fee, Doc.No.373) sent to George Snyder (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 376 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 372 Notice of Appeal filed by George Snyder). (nsha) (Entered: 04/24/2023) |
| 04/24/2023 | 377 | Transcript regarding Hearing Held 04/13/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related |

| | | |
|---|---|---|
| | | document(s) 371 Transcript Request). Notice of Intent to Request Redaction due 5/1/2023. Redaction Request due 5/15/2023. Redacted Transcript Submission due 5/25/2023. Remote electronic access to the transcript is restricted through 7/24/2023. (hsmi) (Entered: 04/24/2023) |
| 04/24/2023 | 378 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 04/13/2023 on #294 Continued Order to Show Cause; #278 Continued Amended Order to Show Cause; #345 Consent Motion to Approve Compromise under Rule 9019; #340 Objection to Claim of Shanni Snyder at claim number 1; #337 Objection to Claim of George Snyder at claim number 5 and #344 Amended Application for Administrative Expenses Pursuant to 11 U.S.C. 503(b)(1) and/or for Payment of Adequate Protection has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 377 Transcript). (hsmi) (Entered: 04/24/2023) |
| 04/26/2023 | 379 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | 380 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 374 Letter Regarding Filing Designations). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | 381 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 375 BNC PDF Notice). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/26/2023 | 382 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 376 Letter of Transmission to District Court). Notice Date 04/26/2023. (Admin.) (Entered: 04/27/2023) |
| 04/27/2023 | 383 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 378 Notice of Filing of Transcript). Notice Date 04/27/2023. (Admin.) (Entered: 04/28/2023) |
| 04/27/2023 | 384 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00691-DSC. District Court Document No. 1. Name of Judge: Judge David Stewart Cercone. (RE: related document(s): 376 Transmittal of Record on Appeal to U.S. District Court). (nsha) (Entered: 05/02/2023) |
| 05/01/2023 | 385 | Appeal Cover Sheet Filed by George Snyder (RE: related document(s): 372 Notice of Appeal, 373 Letter Requesting Appeal Cover Sheet). (nsha) (Entered: 05/02/2023) |
| 05/04/2023 | 386 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 385 Appeal Cover Sheet filed by Managing General Partner George Snyder). Notice Date 05/04/2023. (Admin.) (Entered: 05/05/2023) |
| 05/11/2023 | 387 | Notice of Intention to Transmit Partial Appeal. cm: George Snyder, Christine Biros, Robert Bernstein (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). Partial Appeal Document Completion Due Date: 5/25/2023. (nsha) (Entered: 05/11/2023) |

**Appendix Vol. II, Page 048**

| | | |
|---|---|---|
| 05/13/2023 | 388 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 387 Notice of Intention to Transmit Partial Appeal). Notice Date 05/13/2023. (Admin.) (Entered: 05/14/2023) |
| 05/19/2023 | 389 | Motion for Withdrawal of Reference *PURSUANT TO 28 USC 157(d) AND FED. R. Bk. PROC. 5011(a) AS TO THE OBJECTION TO CLAIM NUMBER 1*. Fee Amount $ 188. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 340 Objection to Claim, 341 Hearing on a Judge Taddonio Case Set by Attorney or Trustee, 357 Response, 365 Hearing Held, 368 Order Scheduling Hearing, 378 Notice of Filing of Transcript). (Attachments: # 1 Certificate of Service # 2 Exhibit A # 3 Proposed Order) (Lacher, John) (Entered: 05/19/2023) |
| 05/19/2023 | 390 | Receipt of Motion for Withdrawal of Reference( 22-20823-GLT) [motion,mwdref] ( 188.00) filing fee. Receipt number A16325330, amount $ 188.00. (U.S. Treasury) (Entered: 05/19/2023) |
| 05/23/2023 | 391 | Order Setting Deadlines For Filing Of Designation of The Record and Supplemental Designation Of The Record Signed on 5/23/2023. (RE: related document(s): 389 Motion for Withdrawal of Reference). (dkam) (Entered: 05/23/2023) |
| 05/25/2023 | 392 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 391 Order -Non-motion related-). Notice Date 05/25/2023. (Admin.) (Entered: 05/26/2023) |
| 05/25/2023 | 393 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by George Snyder (RE: related document(s): 372 Notice of Appeal, 385 Appeal Cover Sheet). Appellee designation due by 6/8/2023 for 385 and for 372, . Transmission of Designation Due by 6/09/2023 for 385 and for 372, . (dkam) (Entered: 05/26/2023) |
| 05/26/2023 | 394 | Notice of Appearance and Request for Notice by Michael F. Santicola Filed by Interested Party USAAG Systems Co. (Santicola, Michael) (Entered: 05/26/2023) |
| 05/26/2023 | 395 | Emergency Motion to Quash *Subpoena or to Specify Conditions of Subpoena and to Direct Disclosure of prior Subpoena* Filed by Interested Party USAAG Systems Co.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Certificate of Service # 6 Proposed Order) (Santicola, Michael) (Entered: 05/26/2023) |
| 05/28/2023 | 396 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 393 Appellant Designation filed by Managing General Partner George Snyder). Notice Date 05/28/2023. (Admin.) (Entered: 05/29/2023) |
| 05/30/2023 | 397 | Text Order denying pleading without prejudice for failure to comply with the Federal Rules of Bankruptcy Procedure and Local Rules of this Court. The Motion fails to comply with W.PA.LBR 5005-6, W.PA.LBR 5005-13(d) and W.PA.LBR 9013-2(e). This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 5/30/2023. (RE: related document(s): 395 Motion to Quash). (hthu) (Entered: 05/30/2023) |
| 05/31/2023 | 398 | Emergency Motion *TO STAY SUBPOENA HEARING OR REQUEST FOR EXPEDITED HEARING* Filed by Interested Party USAAG Systems Co.. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit 1 Subpoena # 2 Exhibit 2 Transcript Excerpts # 3 Exhibit 3 ORDER FINDING GOOD FAITH # 4 Exhibit 4 ORDER LIMITING SUBJECT MATTER OF HEARING # 5 Proposed Order PROPOSED ORDER - HEARING ORDER AND STAY ORDER # 6 Proposed Order PROPOSED ORDER QUASH # 7 Certificate of Service CERTIFICATE OF SERVICE) (Santicola, Michael) (Entered: 05/31/2023) |
| 05/31/2023 | 399 | Designation of Record for Withdrawal of the Reference. Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 05/31/2023) |
| 05/31/2023 | 400 | Order Setting EXPEDITED Hearing on (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co.). Hearing scheduled for 6/5/2023 at 11:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 6/2/2023 BY 4PM. (hthu) (Entered: 05/31/2023) |
| 06/01/2023 | 401 | Certificate of Service *of Expedited Hearing Order and Related Motion* Regarding the Hearing on 6/5/2023. Filed by Interested Party USAAG Systems Co. (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co.). (Attachments: # 1 Notice of Hearing Notice and Order Setting Hearing on an Expedited Basis) (Santicola, Michael) (Entered: 06/01/2023) |
| 06/02/2023 | 402 | Notice of Appearance and Request for Notice by Stuart C. Gaul Jr. Filed by Creditor Christine Biros (Gaul, Stuart) (Entered: 06/02/2023) |
| 06/02/2023 | 403 | Response *in Opposition to Motion to Withdraw Reference* Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 06/02/2023) |
| 06/02/2023 | 404 | Designation of Record for Withdrawal of the Reference. *(Designation of Additional Items to be Included in the Record)* Filed by Creditor Christine Biros (RE: related document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (Bernstein, Robert) (Entered: 06/02/2023) |
| 06/02/2023 | 405 | Response *and Joinder to USAAG Systems Co.'s REquest for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing; MOtion for a PRotective ORder; Motion to Quash Subpoena; or, in the alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena* Regarding the Hearing on 06/05/2023. Filed by Shanni Snyder (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing). (Attachments: # 1 Proposed Order) (Fuchs, David) (Entered: 06/02/2023) |
| 06/02/2023 | 406 | Response *In Opposition to USAAG Systems Co.'s Expedited Motoion to Quash Subpoena* Regarding the Hearing on 06/05/23. Filed by Christine Biros (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Certificate of Service) (Gaul, Stuart) (Entered: 06/02/2023) |

| | | |
|---|---|---|
| 06/02/2023 | 414 | Motion to Expedite Hearing , Motion to Quash Filed by Interested Party Emanuel Snyder . (Attachments: # 1 Exhibit # 2 Notice of Hearing # 3 Proposed Order) (nsha) CORRECTIVE ENTRY: THIS MOTION WAS REFILED VIA CM/ECF AT DOC.NO 409. Modified on 6/6/2023 (nsha). (Entered: 06/06/2023) |
| 06/04/2023 | 407 | Reply *in Support of Request for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing; Motion for a Protective Order; Motion to Quash Subpoena; or, in the alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena* Regarding the Hearing on 06/05/23. Filed by USAAG Systems Co. (RE: related document(s): 403 Response filed by Creditor Christine Biros, 406 Response filed by Creditor Christine Biros). (Attachments: # 1 Certificate of Service) (Santicola, Michael) (Entered: 06/04/2023) |
| 06/04/2023 | 408 | Reply *to Christine Biros Response to the Motion to Stay or Quash Subpoena* Regarding the Hearing on 6/5/2023. Filed by U LOCK INC (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co., 400 Order Scheduling a Hearing, 406 Response filed by Creditor Christine Biros). (Roth, J.) (Entered: 06/04/2023) |
| 06/05/2023 | 409 | First Motion to Expedite Hearing , Motion to Quash Filed by Emanuel Snyder (Attachments: # 1 expedited hearing # 2 Subpoena # 3 Proposed Order Expedited Hearing Order # 4 Proposed Order Order of Court) (Berger, Leonard) (Entered: 06/05/2023) |
| 06/05/2023 | 410 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (nsha) (Entered: 06/05/2023) |
| 06/05/2023 | 416 | Hearing Held on 6/5/2023 (RE: related document(s): 398 Motion filed by Interested Party USAAG Systems Co.). 1) For the reasons stated on the record, Request for Expedited Hearing or Emergency Motion to Stay Subpoena Pending Hearing;Motion for a Protective Order; Motion to Quash Subpoena; or, in the Alternative, Motion to Specify Conditions of Subpoena; and, Motion to Direct Disclosure of Prior Subpoena[Dkt. No. 398] is GRANTED and the subpoena QUASHED. The Court shall issue an appropriate protective order. [Chambers to prepare]. 2) For the reasons stated on the record, on or before June 12, 2023, Christine Biros or her counsel shall disclose any/all subpoenas she has issued in this bankruptcy case. [Text order]. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 411 | Motion *for Clarification of Order of January 27 2023 Entry 307* Filed by Debtor U LOCK INC. (Attachments: # 1 Exhibit Request from Superior Court to Clarify # 2 Exhibit January 27 2023 relief from stay # 3 Exhibit January 20 2022 Order transferring deeds to Christine Biros # 4 Exhibit Order May 13 2022 Denying Motion to Strike January 20 2022 Order # 5 Exhibit Response of Shanni Snyder to Superior Court Show Cause # 6 Proposed Order) (Roth, J.) CORRECTIVE ENTRY: COUNSEL SHALL FILE PROOF OF SERVICE. Modified on 6/6/2023 (hthu). (Entered: 06/06/2023) |
| 06/06/2023 | 412 | Hearing on Motion for Clarification*of Order Entered January 27 2023 at Entry 307* Filed by Debtor U LOCK INC (RE: related document(s): 411 Motion filed by Debtor U LOCK INC). Hearing scheduled for 7/7/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 6/23/2023. (Roth, J.) (Entered: 06/06/2023) |

| | | |
|---|---|---|
| 06/06/2023 | 413 | CORRECTIVE ENTRY: COUNSEL SHALL FILE PROOF OF SERVICE. (RE: related document(s): 411 Motion filed by Debtor U LOCK INC, 412 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (hthu) (Entered: 06/06/2023) |
| 06/06/2023 | 415 | CORRECTIVE ENTRY: THIS MOTION WAS REFILED VIA CM/ECF AT DOC.NO 409. (RE: related document(s): 414 Motion to Expedite Hearing filed by Interested Party Emanuel Snyder, Motion to Quash). (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 417 | Order Requiring Payment of Processing Fee and Sanction of Attorney Leonard J. Berger Jr Signed on 6/6/2023. (RE: related document(s): 414 Motion to Expedite Hearing, Motion to Quash). Processing Fee and Sanction due 6/20/2023. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 418 | TEXT ORDER: For the reasons stated on the record at the June 5, 2023 hearing, it is hereby ORDERED that on or before June 12, 2023, Christine Biros or her counsel shall disclose any/all subpoenas she has issued in this bankruptcy case. Judge Taddonio Signed on 6/6/2023. (RE: related document(s): 398 Motion). (hthu) (Entered: 06/06/2023) |
| 06/06/2023 | 419 | Order of Court Signed on 6/6/2023. (RE: related document(s): 398 Emergency Motion TO STAY SUBPOENA HEARING OR REQUEST FOR EXPEDITED HEARING).On or before June 20, 2023, a copy of the prior subpoena shall be provided to the parties. On or before June 20, 2023, all records obtained from the prior subpoena shall be returned to counsel for USAAG Systems Co., and the parties shall not maintain copies of them. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 420 | Order of Court Signed on 6/6/2023. (RE: related document(s): 409 Motion to Expedite Hearing, Motion to Quash). To the extent Christine Biros believes the subpoena should not be quashed, the Court grants her leave to file an appropriate response requesting reinstatement of the subpoena on or before June 20, 2023. (nsha) (Entered: 06/06/2023) |
| 06/06/2023 | 421 | Response Regarding the Hearing on no hearing date scheduled. Filed by Christine Biros (RE: related document(s): 409 Motion to Expedite Hearing filed by Interested Party Emanuel Snyder, Motion to Quash, 420 Order -Non-motion related-). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Certificate of Service) (Gaul, Stuart) (Entered: 06/06/2023) |
| 06/06/2023 | 422 | TEXT ORDER: It is hereby ORDERED that Emanuel Snyder or his counsel shall serve this Order[Dkt. No. 420] on the Catholic School System, Greensburg Catholic Diocese, and file a corresponding certificate of service within 3 business days. Judge Taddonio Signed on 6/6/2023. (RE: related document(s): 420 Order -Non-motion related-). (hthu) (Entered: 06/06/2023) |
| 06/07/2023 | 423 | Certificate of Service Regarding the Hearing on 7/7/2023. Filed by Debtor U LOCK INC (RE: related document(s): 411 Motion filed by Debtor U LOCK INC). (Attachments: # 1 Exhibit matrix) (Roth, J.) (Entered: 06/07/2023) |
| 06/07/2023 | 424 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 410 Letter of Transmission to District Court). Notice Date 06/07/2023. (Admin.) (Entered: 06/08/2023) |

| | | |
|---|---|---|
| 06/08/2023 | 425 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 372 Notice of Appeal, 385 Appeal Cover Sheet, 393 Appellant Designation). (Bernstein, Robert) (Entered: 06/08/2023) |
| 06/08/2023 | 426 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 419 Order -Non-motion related-). Notice Date 06/08/2023. (Admin.) (Entered: 06/12/2023) |
| 06/08/2023 | 427 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 420 Order -Non-motion related-). Notice Date 06/08/2023. (Admin.) (Entered: 06/12/2023) |
| 06/12/2023 | 428 | First Certificate of Service Filed by Interested Party Emanuel Snyder (RE: related document(s): 422 Order -Non-motion related-). (Berger, Leonard) (Entered: 06/12/2023) |
| 06/12/2023 | 429 | Receipt Number 18267, Fine Amount $ 150.00 (RE: related document(s): 417 Order Requiring Payment of Processing Fee and Sanction). (nsha) (Entered: 06/12/2023) |
| 06/12/2023 | 430 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 06/12/2023) |
| 06/12/2023 | 431 | Notice Regarding Subpoena's Issued. Filed by Creditor Christine Biros (RE: related document(s): 418 Order -Non-motion related-). (Gaul, Stuart) (Entered: 06/12/2023) |
| 06/12/2023 | 432 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 1. Name of Judge: Robert J. Colville. (RE: related document(s): 389 Motion for Withdrawal of Reference filed by Petitioning Creditor Shanni Snyder). (nsha) (Entered: 06/13/2023) |
| 06/13/2023 | 433 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv:00691. District Court Document No. 2. Name of Judge: David Stewart Cercone. (RE: related document(s): 372 Notice of Appeal filed by Managing General Partner George Snyder). (nsha) (Entered: 06/14/2023) |
| 06/14/2023 | 434 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 376 Letter of Transmission to District Court). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/14/2023 | 435 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 385 Appeal Cover Sheet filed by Managing General Partner George Snyder). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |
| 06/14/2023 | 436 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 430 Letter of Transmission to District Court). Notice Date 06/14/2023. (Admin.) (Entered: 06/15/2023) |

| | | |
|---|---|---|
| 06/21/2023 | 438 | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1284, ORDER: upon consideration of the Appeal filed by Shanni Snyder at Civil A. No. 22-1222 and the Cross Appeal filed by U Lock Inc. at Civil A. No. 22-1284, the August 10, 2022 Orders of the Honorable Gregory J. are AFFIRMED; the Clerk of Court shall mark Civil Action Nos. 22-1222 and 22-1284 CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023. (RE: related document(s): 148 Notice of Appeal). (nsha) (Entered: 06/22/2023) |
| 06/21/2023 | 439 | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1485, ORDER granting 9 Motion to Dismiss; appeal is DISMISSED. The Clerk of Court shall mark this case CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023. (RE: related document(s): 148 Notice of Appeal). (nsha) (Entered: 06/22/2023) |
| 06/21/2023 | 440 | Final Order By District Court Judge Nora Barry Fischer, on Civil Action Number: 2:22-cv-1218, ORDER granting 18 Motion to Dismiss; appeal is DISMISSED. The Clerk of Court shall mark this case CLOSED. Signed by Judge Nora Barry Fischer on 6/21/2023.(RE: related document(s): 121 Notice of Appeal). (nsha) (Entered: 06/22/2023) |
| 06/22/2023 | 437 | Daily Transcript Requested by U LOCK INC regarding hearing held 6/5/2023. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 6/23/2023. (RE: related document(s): 416 Hearing Held). (hsmi) (Entered: 06/22/2023) |
| 06/23/2023 | 441 | Response Regarding the Hearing on 07/07/23. Filed by Christine Biros (RE: related document(s): 411 Motion filed by Debtor U LOCK INC, 412 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 06/23/2023) |
| 06/23/2023 | 442 | Response *to Motion for Clarification* Regarding the Hearing on 07/07/23. Filed by Shanni Snyder (RE: related document(s): 411 Motion filed by Debtor U LOCK INC, 412 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Debtor U LOCK INC). (Attachments: # 1 Certificate of Service # 2 Proposed Order) (Lacher, John) (Entered: 06/23/2023) |
| 06/23/2023 | 443 | Transcript regarding Hearing Held 06/05/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 437 Transcript Request). Notice of Intent to Request Redaction due 6/30/2023. Redaction Request due 7/14/2023. Redacted Transcript Submission due 7/24/2023. Remote electronic access to the transcript is restricted through 9/21/2023. (hsmi) (Entered: 06/23/2023) |
| 06/23/2023 | 444 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 06/05/2023 on Emergency Motion to Stay Subpoena Hearing or Request for Expedited Hearing filed by USAAG Systems Co. has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 443 Transcript). (hsmi) (Entered: 06/23/2023) |

**Appendix Vol. II, Page 054**

| | | |
|---|---|---|
| 06/24/2023 | 445 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 438 Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/24/2023 | 446 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 439 Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/24/2023 | 447 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 440 Final Order by District Court Judge). Notice Date 06/24/2023. (Admin.) (Entered: 06/25/2023) |
| 06/25/2023 | 448 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 444 Notice of Filing of Transcript). Notice Date 06/25/2023. (Admin.) (Entered: 06/26/2023) |
| 07/06/2023 | 449 | Emergency Motion to Compel *ANSWERS AND RESPONSES OF CLAIMANT, SHANNI SNYDER, TO DISCOVERY REQUESTS* Filed by Creditor Christine Biros. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit N # 15 Exhibit O # 16 Proposed Order) (Gaul, Stuart) (Entered: 07/06/2023) |
| 07/07/2023 | 450 | Pre-Trial Statement *of Respondent Shanni Snyder* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 07/07/2023) |
| 07/07/2023 | 451 | Order Signed on 7/7/2023. (RE: related document(s): 340 Objection to Claim, 345 Motion to Approve Compromise under Rule 9019, 352 Objection, 355 Objection, 356 Response, 357 Response). It is hereby ORDERED, ADJUDGED, and DECREED that: On or before July 13, 2023, the chapter 7 trustee shall file a status report indicating :a. The estimated fees incurred by the chapter 7 trustee to date; b. The amount of estate funds currently on hand; and c. Whether the chapter 7 trustee believes any claims still exist that might result in a recovery for the estate and, if possible, their estimated value. 2. To the extent desirable, the chapter 7 trustee may file an interim application for compensation. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 452 | Hearing Held on 7/7/2023 (RE: related document(s): 411 Motion filed by Debtor U LOCK INC). 1) For the reasons stated on the record, the Motion for Clarification [Dkt. No. 411] is GRANTED subject to modification. [HT to enterproposed order at dkt. no. 411 with modifications].2) For the reasons stated on the record, Christine Biros and Shanni Snyder shall submit a status report regarding the Emergency Motionof Christine Biros to Compel Answers and Responses of Claimant Shanni Snyder to Discovery Requests [Dkt. No. 449] by noon onJuly 10, 2023. Thereafter, the Court shall schedule a hearing if necessary. [Text order]. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 453 | Modified Order signed 7/7/2023 (Related Doc # 411 Motion for Clarification of Order of January 27 2023 Entry 307) Signed on 7/7/2023. (nsha) (Entered: 07/07/2023) |

| | | |
|---|---|---|
| 07/07/2023 | 454 | Pre-Trial Statement Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing). (Attachments: # 1 Exhibit List) (Gaul, Stuart) (Entered: 07/07/2023) |
| 07/07/2023 | 455 | Exhibit *and Witness List* Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing). (Gaul, Stuart) (Entered: 07/07/2023) |
| 07/07/2023 | 456 | TEXT ORDER: For the reasons stated on the record, Christine Biros and Shanni Snyder shall submit a status report regarding the Emergency Motion of Christine Biros to Compel Answers and Responses of Claimant Shanni Snyder to Discovery Requests [Dkt. No. 449] by noon on July 10, 2023. Thereafter, the Court shall schedule a hearing if necessary. Judge Taddonio Signed on 7/7/2023. (RE: related document(s): 449 Motion to Compel). (hthu) (Entered: 07/07/2023) |
| 07/07/2023 | 457 | Order Signed on 7/7/2023. (RE: related document(s): 450 Pre-Trial Statement). It is hereby ORDERED, ADJUDGED, and DECREED that: On or before July 11, 2023, Ms. Snyder shall file a trial brief citing legalauthority for her contention that:a. The Court lacks jurisdiction to decide this contested matter because itarises from a final, default judgment entered by the District Court.b. A final, default judgment entered by the District Court is entitled topreclusive effect against a subsequent claim objection in the bankruptcy court.2. Ms. Biros may, but need not, file any response by July 13, 2023 at 12 p.m. (nsha) (Entered: 07/07/2023) |
| 07/07/2023 | 458 | TEXT ORDER: Upon consideration of the Exhibit Lists attached to the Joint Pretrial Statement/Stipulation filed on July 7, 2023, and the numerous objections identified therein, it is hereby ORDERED, ADJUDGED, and DECREED that the Ms. Biros and Ms. Snyder shall meet and confer in an attempt to resolve these objections in good faith, failing which, the parties shall file by 12 p.m. on July 11, 2023, a joint statement articulating the basis for each objection and any response. Judge Taddonio Signed on 7/7/2023. (RE: related document(s): 450 Pre-Trial Statement, 454 Pre-Trial Statement). (hthu) (Entered: 07/07/2023) |
| 07/09/2023 | 459 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 451 Order -Non-motion related-). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/09/2023 | 460 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 453 Order). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/09/2023 | 461 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 457 Order -Non-motion related-). Notice Date 07/09/2023. (Admin.) (Entered: 07/10/2023) |
| 07/10/2023 | 462 | Certification of Counsel Regarding *Emergency Motion of Christine Biros to Compel Answers and Responses of Claimant, Shanni Snyder, to Discovery Requests* Filed by Creditor Christine Biros (RE: related document(s): 449 Motion to Compel filed by Creditor Christine Biros, 456 Order -Non-motion related-). (Attachments: # 1 Joint Status Report) (Gaul, Stuart) (Entered: 07/10/2023) |

| | | |
|---|---|---|
| 07/10/2023 | 463 | George Snyder's Motion for Allowance and Payment of Administrative Expense Pursuant to 11 U.S.C. 503 (b) (1), 11 USC 507 (a) (2), or any other Statute Filed by George Snyder. (Attachments: # 1 Proposed Order # 2 Certificate of Service) (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 464 | Notice of Hearing on Motion for Allowance and Payment of Administrative Expense filed by George Snyder (RE: related document(s): 463 Application for Administrative Expenses filed by Managing General Partner George Snyder). Hearing scheduled for 8/17/2023 at 10:30 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/28/2023. (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 465 | Consent Order on Joint Status Report Regarding Emergency Motion to Compel Answers and Responses to Discovery Requests Signed on 7/10/2023. (RE: related document(s): 449 Motion to Compel, 462 Certification of Counsel Regarding). (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 466 | Order Rescheduling Hearing TIME ONLY Signed on 7/10/2023. (RE: related document(s): 463 Application for Administrative Expenses filed by Managing General Partner George Snyder and 464). Hearing rescheduled for 8/17/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 07/10/2023) |
| 07/10/2023 | 467 | Emergency Motion to Seal Certain Documents Filed With This Court (RE: related document(s)449 Motion to Compel. Filed by Creditor Christine Biros (RE: related document(s): 449 Motion to Compel). (Attachments: # 1 Exhibit A # 2 Exhibit B) (culy) (Entered: 07/10/2023) |
| 07/10/2023 | 468 | Order: On or before July 17, 2023, Christine Biros shall electronically re-file the Restricted Documents in Compliance with Fed.R.Bankr.P.9037(a)...Judge Taddonio Signed on 7/10/2023. (RE: related document(s): 467 Motion to Seal Document). (hthu) (Entered: 07/10/2023) |
| 07/11/2023 | 469 | Brief/Memorandum *Regarding Bankruptcy Court Jurisdiction Over Contested Matter as to Validity of Shanni Snyder Claim* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 450 Pre-Trial Statement filed by Petitioning Creditor Shanni Snyder, 457 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 07/11/2023) |
| 07/12/2023 | 470 | Joint Report *Statement Regarding Objections to Exhibits* Filed by Creditor Christine Biros (RE: related document(s): 450 Pre-Trial Statement filed by Petitioning Creditor Shanni Snyder, 454 Pre-Trial Statement filed by Creditor Christine Biros, 458 Order -Non-motion related-). (Gaul, Stuart) (Entered: 07/12/2023) |
| 07/12/2023 | 471 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 464 Order Scheduling Hearing). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/12/2023 | 472 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 465 Order -Non-motion related-). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |

| | | |
|---|---|---|
| 07/12/2023 | 473 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 466 Hearing Rescheduled). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/12/2023 | 474 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 468 Order -Non-motion related-). Notice Date 07/12/2023. (Admin.) (Entered: 07/13/2023) |
| 07/13/2023 | 475 | Interim Application for Compensation for Robert H. Slone, Trustee, Trustee's Attorney, Period: 7/7/2022 to 6/22/2023, Fee: $31,620.00, Expenses: $0.00. Filed by Attorney Robert H. Slone, Trustee. (Attachments: # 1 Summary Cover # 2 Exhibit # 3 Proposed Order) (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | 476 | Hearing on Application of Counsel to Chapter 7 Trustee for Allowance of Interim Compensation Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 451 Order -Non-motion related-, 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee). Hearing scheduled for 8/11/2023 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 7/31/2023. (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | 477 | Status Report Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 451 Order -Non-motion related-). (Attachments: # 1 Exhibit) (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | 478 | Reply *Brief in Opposition to Shann Snyder's Brief Regarding Bankruptcy Court Jurisdiction Over Contested Matter as to Validity of Shanni Snyder Claim Regarding the Hearing on 07/14/23.* Filed by Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 368 Order Scheduling Hearing, 454 Pre-Trial Statement filed by Creditor Christine Biros, 457 Order -Non-motion related-, 469 Brief/Memorandum filed by Petitioning Creditor Shanni Snyder). (Attachments: # 1 Certificate of Service) (Gaul, Stuart) (Entered: 07/13/2023) |
| 07/13/2023 | 479 | Text Order re: (475 Application for Compensation).. Without further notice or hearing, this pleading will be denied without prejudice if the following action is not taken: THE INCORRECT CASE NUMBER IS LISTED IN THE CAPTION OF THE SUMMARY OF FEES/NOTICE AND MUST BE REFILED WITH THE CORRECT CASE NUMBER LISTED. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 7/13/2023. (RE: related document(s): 475 Application for Compensation). Required corrective action due on or before 7/21/2023. (nsha) (Entered: 07/13/2023) |
| 07/13/2023 | 480 | Exhibit *(Summary Cover Sheet)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee, 479 Order Fixing Deadline to Deny a Motion). (Slone, Trustee, Robert) (Entered: 07/13/2023) |
| 07/13/2023 | 481 | Exhibit *Summary Cover Sheet (refiled to correct case number and judge)* Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee, 479 Order Fixing Deadline to Deny a Motion). (Slone, Trustee, Robert) (Entered: 07/13/2023) |

| | | |
|---|---|---|
| 07/13/2023 | <u>482</u> | Supplement/Addendum to *Exhibit and Witness List* Filed by Creditor Christine Biros (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros, <u>357</u> Response filed by Petitioning Creditor Shanni Snyder, <u>368</u> Order Scheduling Hearing, <u>454</u> Pre-Trial Statement filed by Creditor Christine Biros, <u>455</u> Exhibit filed by Creditor Christine Biros). (Attachments: # <u>1</u> Certificate of Service) (Gaul, Stuart) (Entered: 07/13/2023) |
| 07/14/2023 | <u>483</u> | Evidentiary Hearing Held 7/14/2023. (RE: related document(s): <u>340</u> Objection to Claim filed by Creditor Christine Biros). (hthu) (Entered: 07/14/2023) |
| 07/14/2023 | 484 | TEXT ORDER: Evidentiary hearing concluded. For the reasons stated on the record, it is hereby Ordered that on or before August 14, 2023, the parties shall submit posttrial briefs. Judge Taddonio Signed on 7/14/2023. (RE: related document(s): <u>340</u> Objection to Claim). (hthu) (Entered: 07/14/2023) |
| 07/17/2023 | <u>485</u> | Exhibit *(Replacement Exhibits B, C, D & E)* Filed by Creditor Christine Biros (RE: related document(s): <u>449</u> Motion to Compel filed by Creditor Christine Biros, <u>467</u> Motion to Seal Document filed by Creditor Christine Biros, <u>468</u> Order -Non-motion related-). (Attachments: # <u>1</u> Exhibit B # <u>2</u> Exhibit C # <u>3</u> Exhibit D # <u>4</u> Exhibit E) (Gaul, Stuart) (Entered: 07/17/2023) |
| 07/18/2023 | <u>486</u> | Expedited Transcript Requested by Christine Biros regarding hearing held 7/14/2023. Transcript is being prepared by J&J Court Transcribers, Inc. The estimated completion for this transcript is 7/25/2023. (RE: related document(s): <u>483</u> Hearing Held). (hsmi) (Entered: 07/18/2023) |
| 07/25/2023 | 487 | Disposition of Adversary, Adversary Case 2:22-ap-2052 Closed. (dkam) (Entered: 07/25/2023) |
| 07/26/2023 | <u>488</u> | Transcript regarding Hearing Held 07/14/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) <u>486</u> Transcript Request). Notice of Intent to Request Redaction due 8/2/2023. Redaction Request due 8/16/2023. Redacted Transcript Submission due 8/28/2023. Remote electronic access to the transcript is restricted through 10/24/2023. (hsmi) (Entered: 07/26/2023) |
| 07/26/2023 | <u>489</u> | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 07/14/2023 on Evidentiary Hearing on Objection to Claim #1 of Shanni Snyder filed by Creditor Christine Biros has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): <u>488</u> Transcript). (hsmi) (Entered: 07/26/2023) |
| 07/28/2023 | <u>490</u> | BNC Certificate of Mailing - PDF Document. (RE: related document(s): <u>489</u> Notice of Filing of Transcript). Notice Date 07/28/2023. (Admin.) (Entered: 07/29/2023) |
| 07/31/2023 | <u>491</u> | Certificate of No Objection Filed by Managing General Partner George Snyder (RE: related document(s): <u>463</u> Application for Administrative Expenses filed by Managing General Partner George Snyder). (nsha) (Entered: 08/01/2023) |

| | | |
|---|---|---|
| 08/02/2023 | 492 | Default Order Granting Application For Administrative Expenses (Related Doc # 463) Signed on 8/2/2023. (nsha) (Entered: 08/02/2023) |
| 08/02/2023 | 493 | Certificate of No Objection *to Application of Counsel to the Chapter 7 Trustee for Allowance of Interim Compensation* Regarding the Hearing on 8/11/2023. Filed by Trustee Robert H. Slone, Trustee (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee, 476 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Trustee Robert H. Slone, Trustee). (Slone, Trustee, Robert) (Entered: 08/02/2023) |
| 08/04/2023 | 494 | Default Order of Court Approving Interim Compensation For Counsel to the Chapter 7 Trustee and Scheduling Status Conference signed on 8/4/2023. (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee). Status Conference scheduled for 8/17/2023 at 11:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. (nsha) (Entered: 08/04/2023) |
| 08/04/2023 | 495 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 492 Order on Application for Administrative Expenses). Notice Date 08/04/2023. (Admin.) (Entered: 08/05/2023) |
| 08/06/2023 | 496 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 494 Order Scheduling Hearing). Notice Date 08/06/2023. (Admin.) (Entered: 08/07/2023) |
| 08/14/2023 | 497 | Brief/Memorandum *Regarding Shanni Snyder Claim and the Objection Thereto* Filed by Petitioning Creditor Shanni Snyder (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 357 Response filed by Petitioning Creditor Shanni Snyder, 365 Hearing Held, 368 Order Scheduling Hearing, 454 Pre-Trial Statement filed by Creditor Christine Biros, 455 Exhibit filed by Creditor Christine Biros, 483 Hearing Held, 484 Order -Non-motion related-). (Attachments: # 1 Certificate of Service) (Lacher, John) (Entered: 08/14/2023) |
| 08/14/2023 | 498 | Brief/Memorandum *(Post Trial Brief in Support of Christine Biros' Objection to the Claim of Shanni Snyder)* Filed by Creditor Christine Biros (RE: related document(s): 340 Objection to Claim filed by Creditor Christine Biros, 484 Order -Non-motion related-). (Gaul, Stuart) (Entered: 08/14/2023) |
| 08/17/2023 | 499 | Hearing Held on 8/17/2023 (RE: related document(s): 475 Application for Compensation filed by Trustee Robert H. Slone, Trustee). 1) Status conference concluded. On or before September 5,2023, counsel for Christine Biros shall let the chapter 7 trustee know in writing if she intends to make an offer for the chapter 7 trustee's claims against George Snyder. If nothing is communicated in writing by September 5, 2023, the Court shall assume that she is not pursuing the claims and the chapter 7 trustee has exhausted all other options. [Text order]. (nsha) (Entered: 08/17/2023) |
| 08/17/2023 | 500 | TEXT ORDER: Status conference concluded. It is hereby ORDERED that on or before September 5,2023, counsel for Christine Biros shall let the chapter 7 trustee know in writing if she intends to make an offer for the chapter 7 trustee's claims against George Snyder. If nothing is communicated in writing by September 5, 2023, the Court shall assume that she is not pursuing the claims and the chapter 7 trustee has exhausted all other options. Judge Taddonio Signed on |

| | | |
|---|---|---|
| | | 8/17/2023. (RE: related document(s): <u>475</u> Application for Compensation). (hthu) (Entered: 08/17/2023) |
| 11/29/2023 | <u>501</u> | Motion to Continue/Reschedule Hearing On *the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345]* Filed by Creditor Christine Biros (RE: related document(s): <u>344</u> Application for Administrative Expenses, <u>345</u> Motion to Approve Compromise under Rule 9019, <u>346</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee, <u>349</u> Hearing Rescheduled, <u>365</u> Hearing Held, 367 Order -Non-motion related-). (Attachments: # <u>1</u> Proposed Order) (Bernstein, Robert) (Entered: 11/29/2023) |
| 12/01/2023 | 502 | Text Order re: (<u>501</u> Motion to Continue/Reschedule Hearing).. Without further notice or hearing, this pleading will be stricken without prejudice if the following action is not taken: Counsel shall file and serve a notice of hearing and self-schedule the matter in compliance with W.PA.LBR 9013-5 and Judge Taddonio's Procedures. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 12/1/2023. (RE: related document(s): <u>501</u> Motion to Continue/Reschedule Hearing). Required corrective action due on or before 12/11/2023. (hthu) (Entered: 12/01/2023) |
| 12/04/2023 | <u>503</u> | Hearing on Motion to Reset/Reschedule Hearing on Consent Motion to Approve Settlement Filed by Creditor Christine Biros (RE: related document(s): <u>501</u> Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, 502 Order Fixing Deadline to Deny a Motion). Hearing scheduled for 1/4/2024 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 12/21/2023. (Bernstein, Robert) (Entered: 12/04/2023) |
| 12/04/2023 | <u>504</u> | Certificate of Service Regarding the Hearing on 1/4/2024. Filed by Creditor Christine Biros (RE: related document(s): <u>501</u> Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, <u>503</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 12/04/2023) |
| 12/19/2023 | <u>505</u> | Final Memorandum and Order By District Court Judge Cathy Bissoon, on Civil Action Number: 2:23-cv-00691 Signed on 12/19/2023. The Bankruptcy Court's decision, dated 4/14/2023, and the Order entered contemporaneously therewith, are AFFIRMED. (RE: related document(s): <u>366</u> Order on Objection to Claim, <u>372</u> Notice of Appeal). (Attachments: # <u>1</u> Order)(culy) (Entered: 12/20/2023) |
| 12/21/2023 | <u>506</u> | Response *to Motion to Reset the Hearing on Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* Regarding the Hearing on 01/04/24. Filed by Shanni Snyder (RE: related document(s): <u>344</u> Application for Administrative Expenses filed by Creditor Christine Biros, <u>345</u> Motion to Approve Compromise under Rule 9019 filed by Creditor Christine Biros, <u>352</u> Objection filed by Petitioning Creditor Shanni Snyder, <u>356</u> Response filed by Trustee Robert H. Slone, Trustee, <u>365</u> Hearing Held, 367 Order -Non-motion related-, <u>501</u> Motion to Continue/Reschedule Hearing filed by Creditor Christine Biros, <u>503</u> Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Attachments: # <u>1</u> Certificate of Service # <u>2</u> Proposed Order) (Lacher, John) (Entered: 12/21/2023) |

| | | |
|---|---|---|
| 12/21/2023 | 507 | Response *to Motion to Reset Hearing* Regarding the Hearing on 1/4/2024. Filed by George Snyder (RE: related document(s): 501 Motion to Continue/ Reschedule Hearing filed by Creditor Christine Biros). (culy) (Entered: 12/22/2023) |
| 12/22/2023 | 508 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 505 Final Order by District Court Judge). Notice Date 12/22/2023. (Admin.) (Entered: 12/23/2023) |
| 01/03/2024 | 509 | Objection to Claim of Christine Biros at Claim Number 2. Filed by Managing General Partner George Snyder . (culy) Additional attachment(s) added on 1/3/2024 (culy). (Entered: 01/03/2024) |
| 01/03/2024 | 510 | Corrective Entry: The Proposed Order was added by a member of the Clerk's staff. (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 511 | Notice of Hearing on (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder). Hearing scheduled for 3/28/2024 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 512 | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): 509 Objection to Claim No. 2 of Christine Biros filed by Managing General Partner George Snyder, 511 Order Scheduling Hearing). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 513 | Objection to Claim of Christine Biros at Claim Number 3. Filed by Managing General Partner George Snyder . (Attachments: # 1 Proposed Order) (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 514 | Notice of Hearing on (RE: related document(s): 513 Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). Hearing scheduled for 3/28/2024 at 01:30 PM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 515 | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): 513 Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder, 514 Notice of Hearing). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 516 | Notice Re: Nonconforming Document (RE: related document(s): 513 Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/03/2024) |
| 01/03/2024 | 517 | Objection to Claim of Christine Biros at Claim Number 4. Filed by Managing General Partner George Snyder . (Attachments: # 1 Proposed Order) (culy) (Entered: 01/04/2024) |
| 01/03/2024 | 518 | Notice of Hearing on (RE: related document(s): 517 Objection to Claim No. 4 of Christine Biros filed by Managing General Partner George Snyder). Hearing |

| | | |
|---|---|---|
| | | scheduled for 3/28/2024 at 01:30 PM at p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 1/22/2024. (culy) (Entered: 01/04/2024) |
| 01/03/2024 | 519 | Certificate of Service Regarding the Hearing on 3/28/2024. Filed by Managing General Partner George Snyder (RE: related document(s): 517 Objection to Claim No. 4 of Christine Biros filed by Managing General Partner George Snyder, 518 Notice of Hearing). (culy) (Entered: 01/04/2024) |
| 01/04/2024 | 520 | Hearing Held on 1/4/2024 (RE: related document(s): 501 Motion to Continue/ Reschedule Hearing the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 345] filed by Creditor Christine Biros). Order to issue. (culy) (Entered: 01/04/2024) |
| 01/04/2024 | 521 | 3-Day transcript requested by Shanni Snyder regarding hearing held 1/4/2024. Transcript is being prepared by J&J Court Transcribers, Inc. Estimated completion date is 1/9/2024. (RE: related document(s): 520 Hearing Held). (hsmi) (Entered: 01/04/2024) |
| 01/05/2024 | 522 | BNC Certificate of Mailing. (RE: related document(s): 516 Notice Regarding Nonconforming Document). Notice Date 01/05/2024. (Admin.) (Entered: 01/06/2024) |
| 01/08/2024 | 523 | Order Granting Motion to Reschedule Hearing and Granting in Part Motion to Approve Compromise under Rule 9019 (Related Doc # 345, 501) Signed on 1/8/2024. (Related Doc # 345, 501) (culy) (Entered: 01/08/2024) |
| 01/10/2024 | 524 | Transcript regarding Hearing Held 01/04/2024. The transcript may be viewed at the Bankruptcy Court Clerk's Office. For information about how to contact the transcriber, call the Clerk's Office or contact the Court Reporter/Transcriber J&J Court Transcribers, Inc., Telephone number 609-586-2311. (RE: related document(s) 521 Transcript Request). Notice of Intent to Request Redaction due 1/22/2024. Redaction Request due 1/31/2024. Redacted Transcript Submission due 2/12/2024. Remote electronic access to the transcript is restricted through 4/9/2024. (hsmi) (Entered: 01/10/2024) |
| 01/10/2024 | 525 | Notice of Filing of Transcript. Notice is hereby given that a transcript of the hearing held on 01/04/2024 on Motion to Continue/Reschedule Hearing On the Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (Doc. No. 345) has been filed. Transcripts are available for inspection only at the Clerk's Office or may be purchased from the Court Transcriber during the 90 day restriction period. (RE: related document(s): 524 Transcript). (hsmi) (Entered: 01/10/2024) |
| 01/10/2024 | 526 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 523 Order on Motion to Approve Compromise under Rule 9019). Notice Date 01/10/2024. (Admin.) (Entered: 01/11/2024) |
| 01/11/2024 | 527 | Corrected Proposed Order RE: Filed by Managing General Partner George Snyder (RE: related document(s): 513 Objection to Claim No. 3 of Christine Biros filed by Managing General Partner George Snyder). (culy) (Entered: 01/11/2024) |

| 01/12/2024 | 528 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 525 Notice of Filing of Transcript). Notice Date 01/12/2024. (Admin.) (Entered: 01/13/2024) |
|---|---|---|
| 01/17/2024 | 538 | Notice of Appeal to the U.S. Third Circuit Court of Appeals Re: Memorandum and Order and Final Judgment By District Court Judge Cathy Bissoon, on Civil Action Number: 2:23-cv-00691 Signed on 12/19/2023 Filed by Managing General Partner George Snyder (RE: related document(s): 505 Final Order by District Court Judge). USCA Case Number 24-1163 (culy) Modified on 1/29/2024 (culy). (Entered: 01/25/2024) |
| 01/22/2024 | 529 | Response *(Limited Response and Reservation of Rights)* Regarding the Hearing on 03/28/24. Filed by Christine Biros (RE: related document(s): 509 Objection to Claim filed by Managing General Partner George Snyder, 511 Order Scheduling Hearing, 513 Objection to Claim filed by Managing General Partner George Snyder, 514 Order Scheduling Hearing, 517 Objection to Claim filed by Managing General Partner George Snyder, 518 Order Scheduling Hearing). (Attachments: # 1 Certificate of Service) (Bernstein, Robert) (Entered: 01/22/2024) |
| 01/22/2024 | 530 | Motion to Withdraw/Dismiss Document *Claim Numbers 2, 3, & 4* Filed by Creditor Christine Biros. (Attachments: # 1 Proposed Order) (Bernstein, Robert) (Entered: 01/22/2024) |
| 01/22/2024 | 531 | Corrective Entry: Counsel shall file proof of service. Hearing on Motion to Withdraw Claim Numbers 2, 3, & 4 Filed by Creditor Christine Biros (RE: related document(s): 530 Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros). Hearing scheduled for 2/22/2024 at 10:00 AM via p01 Courtroom A, 54th Floor, U.S. Steel Tower, Pittsburgh. Responses due by 2/8/2024. (Bernstein, Robert) Modified on 1/23/2024 (hthu). (Entered: 01/22/2024) |
| 01/22/2024 | 532 | Notice of Appeal . Receipt Number NFP,Fee Amount $ 298. Filed by George Snyder (RE: related document(s): 523 Order on Motion to Approve Compromise under Rule 9019). Appellant Designation due by 2/5/2024 for 523. (culy) (Entered: 01/23/2024) |
| 01/23/2024 | 533 | Letter Requesting Appeal Cover Sheet & Filing Fee. (Related Doc. No. 532) cm: George Snyder (culy). (Entered: 01/23/2024) |
| 01/23/2024 | 534 | Request for Revised Notice of Appeal. (RE: related document(s): 532 Notice of Appeal filed by Managing General Partner George Snyder). cm: George Snyder (culy) (Entered: 01/23/2024) |
| 01/23/2024 | 535 | Corrective Entry: Counsel shall file proof of service. (RE: related document(s): 530 Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, 531 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (hthu) (Entered: 01/23/2024) |

| | | |
|---|---|---|
| 01/24/2024 | 536 | Certificate of Service Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): 530 Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, 531 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 01/24/2024) |
| 01/24/2024 | 537 | Amended Certificate of Service *(Amended to include Mailing List)* Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): 530 Motion to Withdraw/Dismiss Document -bk- filed by Creditor Christine Biros, 531 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros, 536 Certificate of Service filed by Creditor Christine Biros). (Attachments: # 1 Creditor Matrix) (Bernstein, Robert) (Entered: 01/24/2024) |
| 01/25/2024 | 539 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 532 Notice of Appeal filed by Managing General Partner George Snyder). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/25/2024 | 540 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 533 Letter Requesting Appeal Cover Sheet). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/25/2024 | 541 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 534 Request for Revised Notice of Appeal). Notice Date 01/25/2024. (Admin.) (Entered: 01/26/2024) |
| 01/31/2024 | 542 | Revised Notice of Appeal. Filed by George Snyder (RE: related document(s): 523 Order on Motion to Approve Compromise under Rule 9019, 532 Notice of Appeal, 534 Request for Revised Notice of Appeal). (culy) (Entered: 01/31/2024) |
| 01/31/2024 | 543 | Letter to All Parties Regarding Filing Designations of Record on Appeal. (RE: related document(s): 542 Revised Notice of Appeal filed by George Snyder). cm: George Snyder; Christine Biros; Robert Bernstein, Esq.; Robert Slone, Esq. (culy) (Entered: 01/31/2024) |
| 01/31/2024 | 544 | BNC PDF Notice - Doc. No. 542 Revised Notice of Appeal sent to George Snyder; Christine Biros; Robert Bernstein, Esq.; Robert Slone, Esq.; Office of the U.S. Trustee (culy) (Entered: 01/31/2024) |
| 01/31/2024 | 545 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 523 Order on Motion to Approve Compromise under Rule 9019, Order on Motion to Continue/Reschedule Hearing, 532 Notice of Appeal filed by George Snyder, 533 Letter Requesting Appeal Cover Sheet, 534 Request for Revised Notice of Appeal, 542 Revised Notice of Appeal filed by George Snyder, 543 Letter Regarding Filing Designations). (culy) (Entered: 01/31/2024) |
| 02/02/2024 | 546 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00135-CB. District Court Document No. 1. Name of Judge: Hon. Cathy Bissoon. (RE: related document(s): 542 Revised Notice of Appeal filed by George Snyder, 545 Letter of Transmission to District Court). (culy) (Entered: 02/02/2024) |

| | | |
|---|---|---|
| 02/02/2024 | 547 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 543 Letter Regarding Filing Designations). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/02/2024 | 548 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 544 BNC PDF Notice). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/02/2024 | 549 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 545 Letter of Transmission to District Court). Notice Date 02/02/2024. (Admin.) (Entered: 02/03/2024) |
| 02/09/2024 | 550 | Certificate of No Objection Regarding the Hearing on 2/22/2024. Filed by Creditor Christine Biros (RE: related document(s): 530 Motion to Withdraw/ Dismiss Document -bk- filed by Creditor Christine Biros, 531 Hearing on a Judge Taddonio Case Set by Attorney or Trustee filed by Creditor Christine Biros). (Bernstein, Robert) (Entered: 02/09/2024) |
| 02/09/2024 | 551 | Appellant Designation of Contents For Inclusion in Record On Appeal and Statement of Issues on Appeal Filed by George Snyder (RE: related document(s): 532 Notice of Appeal, 542 Revised Notice of Appeal). Appellee designation due by 2/23/2024 for 542 and for 532. Transmission of Designation Due by 3/11/2024 for 542 and for 532. (culy) (Entered: 02/09/2024) |
| 02/09/2024 | 552 | Default Order Granting Motion to Withdraw Claims 2, 3 and 4 without prejudice (Related Doc # 530) Signed on 2/9/2024. (culy) (Entered: 02/09/2024) |
| 02/09/2024 | 553 | Claim Status Correction- Claims 2, 3 and 4 of Christine Biros withdrawn w/o prejudice per Order dated 2/9/2024. (RE: related document(s): 552 Default Order on Motion to Withdraw Document). (culy) (Entered: 02/09/2024) |
| 02/11/2024 | 554 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 552 Order on Motion to Withdraw/Dismiss Document). Notice Date 02/11/2024. (Admin.) (Entered: 02/12/2024) |
| 02/22/2024 | 555 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 542 Revised Notice of Appeal, 551 Appellant Designation, Statement of Issues on Appeal). (Gaul, Stuart) (Entered: 02/22/2024) |
| 02/26/2024 | 556 | Letter of Transmission to District Court Re: 2:24-cv-00135-CB. Documents Delivered to District Court. (RE: related document(s): 551 Appellant Designation filed by Managing General Partner George Snyder, Statement of Issues on Appeal, 555 Appellee Designation filed by Creditor Christine Biros). (culy) (Entered: 02/26/2024) |
| 02/28/2024 | 557 | Receipt of Electronic Notification of Supplemental Record from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00135-CMB. District Court Document No. 3. Name of Judge: Hon. Cathy Bissoon. (RE: related document(s): 556 Letter of Transmission to District Court). (culy) (Entered: 02/28/2024) |
| 02/28/2024 | 558 | Order from Circuit Court Re: Appeal on Appellate Case Number: 24-1163, It is Ordered that the above-captioned case is hereby dismissed for faiure to timely |

| | | |
|---|---|---|
| | | prosecute insofar as appellant failed to pay the requisite fee as directed. Signed on 2/28/2024. (RE: related document(s): 538 Notice of Appeal to Third Circuit Court of Appeals. Also related to: 372 Notice of Appeal, 505 Final Order by District Court Judge on Appeal at 2:23-cv-00691) (culy) (Entered: 02/29/2024) |
| 02/29/2024 | 559 | Memorandum Opinion Signed on 2/29/2024. (RE: related document(s): 340 Christine Biros' Objection to Claim No. 1 of Shanni Snyder). (culy) (Entered: 02/29/2024) |
| 02/29/2024 | 560 | Order Signed on 2/29/2024. The Objection to Claim is sustained. Claim No. 1 filed by Shanni Snyder is disallowed. (RE: related document(s): 559 Memorandum Opinion). (culy) (Entered: 02/29/2024) |
| 02/29/2024 | 561 | Order Show Cause Signed on 2/29/2024. Ms. Snyder shall file a written response to this Order to Show Cause no later than 14 days after the Court's order disallowing her claim becomes final. (RE: related document(s): 340 Objection to Claim). (culy) (Entered: 02/29/2024) |
| 02/29/2024 | 562 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 556 Letter of Transmission to District Court). Notice Date 02/29/2024. (Admin.) (Entered: 03/01/2024) |
| 03/02/2024 | 563 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 558 Order from Circuit Court). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | 564 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 559 Memorandum Opinion). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | 565 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 560 Order -Non-motion related-). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/02/2024 | 566 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 561 Order to Show Cause). Notice Date 03/02/2024. (Admin.) (Entered: 03/03/2024) |
| 03/05/2024 | 567 | Final Order By District Court Judge Robert J. Colville, on Civil Action Number: 2:23-cv-00979-RJC, ORDER dismissing Plaintiff's motion to withdraw reference 1 as moot. A bankruptcy court order dismissing an adversary proceeding moots a motion to withdraw the refence as to that adversary proceeding. In re Garden Fresh Restaurants, LLC, 21-CV-1440, 2022 WL 410942, at *1 (S.D. Cal. Feb. 10, 2022) (citing In re Lear Corp., 418 B.R. 46, 48 (S.D.N.Y. 2009)). Here, because a final order was entered by Judge Taddonio in the adversary proceeding (see 2:22-bk-20823), the motion to withdraw reference is denied as moot. The Clerk of Courts shall mark this case as CLOSED. Signed by Judge Robert J. Colville on 3/5/24. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. Signed on 3/5/2024. (RE: related document(s): 389 Motion for Withdrawal of Reference). (culy) (Entered: 03/05/2024) |
| 03/14/2024 | 568 | Notice of Appeal . Fee Amount $ 298. Filed by Shanni Snyder (RE: related document(s): 559 Memorandum Opinion, 560 Order -Non-motion related-). Appellant Designation due by 03/28/2024 for 559 and for 560,. (Attachments: # |

| | | |
|---|---|---|
| | | 1 Certificate of Service # 2 Exhibit A)(Lacher, John) (Entered: 03/14/2024) |
| 03/14/2024 | 569 | Receipt of Notice of Appeal( 22-20823-GLT) [appeal,ntcapl] ( 298.00) filing fee. Receipt number A16667272, amount $ 298.00. (U.S. Treasury) (Entered: 03/14/2024) |
| 03/14/2024 | 570 | Appeal Cover Sheet Filed by Shanni Snyder (RE: related document(s): 568 Notice of Appeal). (Lacher, John) (Entered: 03/14/2024) |
| 03/15/2024 | 571 | Request for Revised Notice of Appeal. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/15/2024) |
| 03/19/2024 | 572 | Application *for Unpaid Administrative Fees per Order to Show Cause* Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit # 2 Proposed Order) (Slone, Trustee, Robert) THIS APPLICATION HAS BEEN REFILED AT DOCUMENT NO. 583 PER THE TEXT ORDER AT DOCUMENT NO. 574 . Modified on 3/27/2024 (culy). (Entered: 03/19/2024) |
| 03/19/2024 | 573 | Text Order re: (572 Application). Without further notice or hearing, this pleading will be stricken without prejudice if the following action is not taken: COUNSEL SHALL REFILE THIS DOCUMENT USING CM/ECF EVENT: "BANKRUPTCY>MOTIONS/APPLICATIONS>ADMINISTRATIVE EXPENSE." IN ADDITION, COUNSEL SHALL FILE A SELF-SCHEDULED HEARING NOTICE AND CERTIFICATE OF SERVICE IN COMPLIANCE WITH JUDGE TADDONIO'S SELF-SCHEDULING PROCEDURES. This text-only entry constitutes the Court's order and notice on this matter. Judge Taddonio Signed on 3/19/2024. (RE: related document(s): 572 Application). Required corrective action due on or before 3/27/2024. (culy) (Entered: 03/19/2024) |
| 03/19/2024 | 574 | TEXT ORDER: The Text Order dated 3/19/2024 was issued in error and requires amendment. Therefore it is hereby ORDERED that on or before March 27, 2024, Counsel shall refile the Application [Dkt. No. 572] using CM/ECF event: "BANKRUPTCY>MOTIONS/APPLICATIONS>ADMINISTRATIVE EXPENSE." COUNSEL IS NOT REQUIRED TO SELF-SCHEDULE THE MATTER. Judge Taddonio Signed on 3/19/2024. (RE: related document(s): 573 Order Fixing Deadline to Deny a Motion). (hthu) (Entered: 03/19/2024) |
| 03/21/2024 | 575 | Revised Notice of Appeal. Filed by Shanni Snyder (RE: related document(s): 559 Memorandum Opinion, 560 Order -Non-motion related-, 571 Request for Revised Notice of Appeal). (Attachments: # 1 Exhibit Exhibit A # 2 Certificate of Service)(Lacher, John) (Entered: 03/21/2024) |
| 03/21/2024 | 576 | Order CANCELLING 3/28/2024 HEARING and Mooting George Snyder's Objection to Claim No. 2 filed by Christine Biros (Related Doc # 509), Mooting George Snyder's Objection to Claim No. 3 filed by Christine Biros (Related Doc # 513), Mooting George Snyder's Objection to Claim No. 4 filed by Christine Biros (Related Doc # 517) Signed on 3/21/2024. (culy) (Entered: 03/21/2024) |
| 03/21/2024 | 577 | Letter to All Parties Regarding Filing Designations of Record on Revised Appeal. (RE: related document(s): 570 Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/21/2024) |

**Appendix Vol. II, Page 068**

| | | |
|---|---|---|
| 03/21/2024 | 578 | BNC PDF Notice - Revised Notice of Appeal at Doc. No. 575 sent to John P. Lacher, Esq.; David Fuchs, Esq.; Stuart C. Gaul, Jr., Esq.; Sarah E. Wenrich, Esq. and the Office of the U.S. Trustee (culy) (Entered: 03/21/2024) |
| 03/21/2024 | 579 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 570 Appeal Cover Sheet filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (culy) (Entered: 03/21/2024) |
| 03/23/2024 | 580 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 576 Order on Objection to Claim). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |
| 03/23/2024 | 581 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 578 BNC PDF Notice). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |
| 03/23/2024 | 582 | BNC Certificate of Mailing - PDF Document. (RE: related document(s): 579 Letter of Transmission to District Court). Notice Date 03/23/2024. (Admin.) (Entered: 03/24/2024) |
| 03/26/2024 | 583 | Application for Administrative Expenses Filed by Trustee Robert H. Slone, Trustee. (Attachments: # 1 Exhibit Trustee Time Summary # 2 Proposed Order) (Slone, Trustee, Robert) (Entered: 03/26/2024) |
| 03/28/2024 | 584 | Appellant Designation of Contents For Inclusion in Record On Appeal *and Statement of Issues to be Presented* Filed by Shanni Snyder (RE: related document(s): 568 Notice of Appeal, 570 Appeal Cover Sheet, 575 Revised Notice of Appeal). Appellee designation due by 04/11/2024 for 575 and for 568 and for 570,. Transmission of Designation Due by 04/29/2024 for 575 and for 568 and for 570,. (Attachments: # 1 Certificate of Service)(Lacher, John) (Entered: 03/28/2024) |
| 03/28/2024 | 585 | Supplemental Statement of Issues on Appeal, Filed by Shanni Snyder (RE: related document(s): 575 Revised Notice of Appeal, 584 Appellant Designation). (culy) (Entered: 03/29/2024) |
| 03/29/2024 | 586 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00478-NBF. District Court Document No. 1. Name of Judge: Hon. Nora Barry Fischer. (RE: related document(s): 568 Notice of Appeal filed by Petitioning Creditor Shanni Snyder, 575 Revised Notice of Appeal filed by Petitioning Creditor Shanni Snyder). (mgut) (Entered: 04/01/2024) |
| 04/02/2024 | 587 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 9. Name of Judge: Robert J. Colvile. MOTION to Alter Judgement, MOTION for Reconsideration, and MOTION to Vacate filed on 4/2/24. (RE: related document(s): 567 Final Order by District Court Judge). (obro) Additional attachment(s) added on 4/3/2024 (obro). (Entered: 04/03/2024) |

| | 588 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:23-cv-00979-RJC. District Court Document No. 11. Name of Judge: Robert J. Colville. ORDER on Plaintiffs pro se Motion to Alter, Amend, Reconsider, or Vacate the Courts Order of March 5, 2024. Plaintiff is directed not to file pro se documents with the Court [because i]t is inappropriate for a party who is represented by counsel to make h[er] own filings with the Court. Rose v. Mahoning Township, No. 3:07cv1305, 2011 WL 13349404, at *3 (M.D. Pa. Aug. 30, 2011). For this reason, the Court will remove Plaintiff from the list of attorneys on the ECF system. Further, the Motion is denied on the merits for the reasons asserted by the Court in its March 5, 2024 Order dismissing Plaintiffs Motion to Withdraw Reference as moot. Signed by Judge Robert J. Colville on 4/3/24. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (RE: related document(s): 567 Final Order by District Court Judge, 587 Receipt of Electronic Notification from District Court). (dkam) Modified on 4/3/2024 (mgut). (Entered: 04/03/2024) |
| 04/03/2024 | | |
| 04/09/2024 | 589 | Appellee Designation of Contents for Inclusion in Record of Appeal Filed by Christine Biros (RE: related document(s): 575 Revised Notice of Appeal, 584 Appellant Designation). (Attachments: # 1 Exhibit A # 2 Exhibit 1 # 3 Exhibit 2 # 4 Exhibit 3 # 5 Exhibit 4 # 6 Exhibit 5 # 7 Exhibit 6 # 8 Exhibit 7 # 9 Exhibit 8 # 10 Exhibit 9 # 11 Exhibit 10 # 12 Exhibit 11 # 13 Exhibit 12 # 14 Exhibit 13 # 15 Exhibit 14 # 16 Exhibit 15 # 17 Exhibit 16 # 18 Exhibit 17 # 19 Exhibit 18 # 20 Exhibit 19 # 21 Exhibit 20 # 22 Exhibit 21 # 23 Exhibit 22 # 24 Exhibit 23 # 25 Exhibit 24 # 26 Certificate of Service)(Gaul, Stuart) (Entered: 04/09/2024) |
| 04/11/2024 | 590 | Letter of Transmission to District Court. Documents Delivered to District Court. (RE: related document(s): 584 Appellant Designation filed by Petitioning Creditor Shanni Snyder, 585 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 589 Appellee Designation filed by Creditor Christine Biros). (dkam) (Entered: 04/23/2024) |
| 05/01/2024 | 591 | Notice of Appeal to the Third Circuit as to 8 Order, Order for Administrative Case Closing, 11 Order on Motion to Alter Judgment, Order on Motion for Reconsideration, Order on Motion to Vacate, by SHANNI SNYDER. Filing fee $605, receipt number BPAWDC-8244829. Motion for IFP n/a. Certificate of Appealability n/a. Court Reporter(s): n/a. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. The Transcript Purchase Order form will NOT be mailed to the parties. The form is available on the Court's internet site. (Snyder, Shanni)(RE: related document(s): 432 Receipt of Electronic Notification from District Court, 567 Final Order by District Court Judge, 587 Receipt of Electronic Notification from District Court, 588 Receipt of Electronic Notification from District Court). (mgut) (Entered: 05/01/2024) |
| 05/02/2024 | 592 | Receipt of Electronic Notification from The United States District Court in the Western District of Pennsylvania. Miscellaneous/Civil Action No. 2:24-cv-00478-NBF. District Court Document No. 2. Name of Judge: Nora Barry Fischer. (RE: related document(s): 584 Appellant Designation filed by Petitioning Creditor Shanni Snyder, 585 Statement of Issues on Appeal filed by Petitioning Creditor Shanni Snyder, 589 Appellee Designation filed by Creditor Christine Biros, 590 Letter of Transmission to District Court). (dkam) (Entered: 05/02/2024) |

FILED

U.S. Bankruptcy Court
WESTERN DISTRICT OF
PENNSYLVANIA

8/26/2022

Michael R. Rhodes, Clerk

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | U LOCK INC |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **WESTERN DISTRICT OF PENNSYLVANIA** |
| Case number: | **22-20823** |

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | George Snyder |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | George Snyder | |
| | Name | Name |
| | Box 15<br>Irwin, PA 15642 | |
| | Contact phone | Contact phone |
| | Contact email<br>snyder4judge@yahoo.com | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

**Appendix Vol. II, Page 071**

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ 99000.00     **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>wage, fair labor standards. |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ _____<br>**Amount of the claim that is secured:**   $ _____<br>**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410        Proof of Claim        page 2

**Appendix Vol. II, Page 072**

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    8/26/2022
                    MM / DD / YYYY

/s/ George Snyder

Signature

Print the name of the person who is completing and signing this claim:

Name                George Snyder

                    First name    Middle name    Last name

Title

Company

                    Identify the corporate servicer as the company if the authorized agent is a servicer

Address             Box 15

                    Number  Street
                    Iriwn, PA 15642

                    City  State  ZIP Code

Contact phone    _____    Email    snyder4judge@yahoo.com

---

Official Form 410                    Proof of Claim                    page 3

**Appendix Vol. II, Page 073**

Fill in this information to identify the case:

United States Bankruptcy Court for the:

WESTERN _____ District of PENNSYLVANIA
                                (State)

Case number (If known): 22-20822 ___0___   Chapter __7__

22-20823
(AKL)

**RECEIVED**

MAY 0 9 2022

CLERK, U.S. BANKRUPTCY COURT
WEST DIST OF PENNSYLANIA

☒ Check if this is an
amended filing
Amending Involuntary Petition
placed in court mailbox on
4/25/2022.

Official Form 205                    ~~Amended~~                                    12/15

# Involuntary Petition Against a Non-Individual

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

## Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| | | |
|---|---|---|
| 1. **Chapter of the Bankruptcy Code** | *Check one:*<br>☒ Chapter 7<br>☐ Chapter 11 | **1a. Debtor has fewer than 12 eligible claim holders.**<br><br>**1b. Statement per W.Pa.LBR 1003-1:** Petitioning Creditor declares under the penalty for perjury that she does not know the precise share structure, identity of the Board of Directors, or the official officers of the Debtor. Based on information, there are between three and five officers and/or Board Members. Two managing control persons appear to be George Snyder and Kash Snyder. There also appears to be closely affiliated control creditors, but the total number of creditors are less than 12. _____ |

## Part 2:   Identify the Debtor

| | | |
|---|---|---|
| 2. **Debtor's name** | U LOCK INC | |
| 3. **Other names you know the debtor has used in the last 8 years**<br><br>Include any assumed names, trade names, or *doing business as* names. | U-LOCK INC.<br>_____<br>_____<br>_____ | |
| 4. **Debtor's federal Employer Identification Number (EIN)** | ☐ Unknown<br><br>4  7 – 4  9  9  4  9  1  1<br>EIN | |

5. **Debtor's address**

| Principal place of business | Mailing address, if different |
|---|---|
| 14140  U.S. Route 30<br>Number        Street | Number        Street<br>_____<br><br>P.O. Box |
| N Huntingdon        PA    15642<br>City                   State    ZIP Code | City                   State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Westmoreland<br>County | Number        Street<br>_____<br>_____<br>City                   State    ZIP Code |

**Appendix Vol. II, Page 074**

22 20822

22- 20833

| Debtor | U LOCK INC a/k/a U-LOCK INC. | Case number (if known) |
|--------|------------------------------|------------------------|
| | Name | |

**6.** Debtor's website (URL) _____

**7.** Type of debtor

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other type of debtor. Specify: _____

**8.** Type of debtor's business

*Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the types of business listed.

☐ Unknown type of business.

**9.** To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?

☒ No

☐ Yes. Debtor _____ Relationship _____

District _____ Date filed _____ Case number, if known _____
MM / DD / YYYY

Debtor _____ Relationship _____

District _____ Date filed _____ Case number, if known _____
MM / DD / YYYY

---

**Part 3:** **Report About the Case**

**10.** Venue

*Check one:*

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11.** Allegations

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☒ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12.** Has there been a transfer of any claim against the debtor by or to any petitioner?

☒ No

☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

**Appendix Vol. II, Page 075**

22 20822

22-20823

| Debtor | U LOCK INC. a/k/a U-Lock Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Shanni Snyder | unpaid wages + liq damage | $ 262,000 |
| | retaliation under FLSA | $ 100,000 |
| | interest | $ 13,100 |
| | | $ |

**Single creditor case.**

Total of petitioners' claims $ 375,100

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.

---

**Part 4:   Request for Relief**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**

**Attorneys**

**Name and mailing address of petitioner**

Shanni Snyder
Name

14140 US Route 30
Number   Street

North Huntingdon          PA          15642
City                      State       ZIP Code

Printed name

Firm name, if any

Number   Street

City                 State      ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number   Street

City              State      ZIP Code

Contact phone _____   Email _____

Bar number _____

State _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
MM / DD / YYYY    05/03/2022

✗ _____
Signature of petitioner or representative, including representative's title

✗ _____
Signature of attorney

Date signed _____
MM / DD / YYYY

**Appendix Vol. II, Page 076**

FILED
6/17/22 4:30 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                        :     Case No. 22-20823-GLT
                                              :     Chapter 7
**U LOCK INC,**                               :
                                              :     Related Dkt. No. 1
      *Debtor.*                               :
                                              :

## ORDER FOR RELIEF UNDER CHAPTER 7

On April 27, 2022, petitioning creditor, Shanni Sue Snyder, commenced this case by filing an involuntary petition for chapter 7 bankruptcy relief against U LOCK INC.[1]  After reviewing the docket in this matter, the Court finds that the summons and involuntary petition were duly served and U LOCK INC has not filed a timely response, despite having appeared before the Court on June 2, 2022 when the response date was specifically discussed.[2]  Based on the foregoing, and pursuant to 11 U.S.C. § 303(h), the Court hereby grants the involuntary petition and issues this Order for Relief under chapter 7 of title 11 of the United State Code.

Dated:  June 17, 2022

                                        _____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
U LOCK INC
J. Allen Roth, Esq.
Office of the United States Trustee

---

[1]      Dkt. No. 1.
[2]      Dkt. No. 34.

**Appendix Vol. II, Page 077**

**Fill in this information to identify the case:**

Debtor name ___U Lock Inc_____

United States Bankruptcy Court for the: ___Western District of Pennsylvania___

(State)

Case number (If known): ___22-20823_____

☐ Check if this is an
amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

---

**Part 1:** Summary of Assets

---

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B* .................................................................

   $ 1,900,000.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*..............................................................

   $ 144,611.30

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B* ...............................................................

   $ 2,044,611.30

---

**Part 2:** Summary of Liabilities

---

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D* ...............................

   $ 0.00

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 6a of *Schedule E/F*.......................................................

   $ 0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 6b of *Schedule E/F* ...............................

   +$ 912,060.63

4. **Total liabilities** ...............................................................................
   Lines 2 + 3a + 3b

   $ 912,060.63

---

**Appendix Vol. II, Page 078**

**Fill in this information to identify the case:**

Debtor name ___U Lock Inc___

United States Bankruptcy Court for the: ___Western District of Pennsylvan___ia

Case number (If known): ___22-20823___

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on **Schedule G: Executory Contracts and Unexpired Leases** (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |

2. **Cash on hand** — $ 1,115.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1. | Citizens Bank | Checking | 3  8  0  2 | $ 266.30 |
| 3.2. | Citizens Bank (second account under $100, dormant) | Checking | 9  9  9  9 | $ Unknown |

4. **Other cash equivalents** *(Identify all)*

| | | |
| --- | --- | --- |
| 4.1. | Check 2017 from Clawson Unit 11 | $ 60.00 |
| 4.2. | See continuation sheet | $ 435.00 |

5. **Total of Part 1** — $ 1,876.30

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and prepayments |
| --- | --- |

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
| --- | --- |

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

| | | |
| --- | --- | --- |
| 7.1. | West Penn Power -- Electric Deposit | $ Unknown |
| 7.2. | | $ |

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. _____    $ _____

8.2. _____    $ _____

**9. Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.    $ 0.00

---

**Part 3:    Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

**11. Accounts receivable**

11a. 90 days old or less: _____ – _____ = ........➔    $ _____
                         face amount      doubtful or uncollectible accounts

11b. Over 90 days old: _____ – _____ = ........➔    $ _____
                        face amount      doubtful or uncollectible accounts

**12. Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.    $ _____

---

**Part 4:    Investments**

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____    _____    $ _____

14.2. _____    _____    $ _____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                                % of ownership:

15.1. _____    _____%    _____    $ _____

15.2. _____    _____%    _____    $ _____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1. _____    _____    $ _____

16.2. _____    _____    $ _____

**17. Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.    $ _____

Debtor    U Lock Inc
     Name

Case number *(if known)*___22-20823___

## Part 5: Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** 20 pound propane tank | 07/01/2022 MM / DD / YYYY | $_____ | estimation | 20.00 $_____ |

23. **Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$ 17,535.00

24. **Is any of the property listed in Part 5 perishable?**

☑ No

☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes. Book value _____ Valuation method_____ Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | $_____ | _____ | $_____ |
| **29. Farm animals** *Examples*: Livestock, poultry, farm-raised fish | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | $_____ | | $_____ |

Debtor    U Lock Inc
          Name

Case number (*if known*) 22-20823

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$_____

**34. Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____ Valuation method _____ Current value $_____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

| **Part 7:** | Office furniture, fixtures, and equipment; and collectibles |
| --- | --- |

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |
| **39. Office furniture** | $_____ | _____ | $_____ |
| **40. Office fixtures** | $_____ | _____ | $_____ |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | $_____ | _____ | $_____ |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1_____ | $_____ | _____ | $_____ |
| 42.2_____ | $_____ | _____ | $_____ |
| 42.3_____ | $_____ | _____ | · $_____ |

**43. Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$_____

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

Official Form 206A/B    Schedule A/B: Assets — Real and Personal Property    page 4

**Appendix Vol. II, Page 082**

Debtor    U Lock Inc
_____
Name

Case number *(if known)*   22-20823
_____

---

### Part 8:    Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

☑ Yes. Fill in the information below.

| General description | Net book value of | Valuation method used | Current value of |
| | debtor's interest | for current value | debtor's interest |
|---|---|---|---|
| Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | (Where available) | | |

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | | | |
|---|---|---|---|
| 47.1  Blue Ford with Snow Plow | $_____ | unknown | $ Unknown |
| 47.2  Ford F250 Custom Green and Red | $_____ | estimation of scrap | $ 100.00 |
| 47.3  GMC Flatbed | $ 0.00 | scrap estimation | $ 100.00 |
| 47.4  _____ | $_____ | | $_____ |

48. **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

| | | | |
|---|---|---|---|
| 48.1 _____ | $_____ | | $_____ |
| 48.2 _____ | $_____ | | $_____ |

49. **Aircraft and accessories**

| | | | |
|---|---|---|---|
| 49.1 _____ | $_____ | | $_____ |
| 49.2 _____ | $_____ | | $_____ |

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**
See continuation sheet

| | | | |
|---|---|---|---|
| | $ 0.00 | | $ 21,000.00 |

51. **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$ 21,200.00

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No

☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

Official Form 206A/B    Schedule A/B: Assets — Real and Personal Property    page 5

Appendix Vol. II, Page 083

Debtor    U Lock Inc
_____
Name

Case number (*if known*)_____

---

| **Part 9:** | **Real property** |
|---|---|

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 14140 U.S. Route 30, North Huntingdon, Pennsylvania.  Westmoreland County TAX Map. 54-03-10-0-103. | See attached. | $_____325,000.00 | estimation | $_____1,900,000.00 |
| 55.2 | | $_____ | _____ | $_____ |
| 55.3 | | $_____ | _____ | $_____ |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

| $ 1,900,000.00 |
|---|

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

| **Part 10:** | **Intangibles and intellectual property** |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | $_____ | _____ | $_____ |
| 61. **Internet domain names and websites** | $_____ | _____ | $_____ |
| 62. **Licenses, franchises, and royalties** | $_____ | _____ | $_____ |
| 63. **Customer lists, mailing lists, or other compilations** | $_____ | _____ | $_____ |
| 64. **Other intangibles, or intellectual property** | $_____ | _____ | $_____ |
| 65. **Goodwill** | $_____ | _____ | $_____ |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

| $_____ |
|---|

---

**Appendix Vol. II, Page 084**

Debtor    U Lock Inc
_____
Name

Case number *(if known)* 22-20823
_____

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☐ No

☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No

☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No

☐ Yes

**Part 11:   All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.

☑ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

_____   _____ – _____ = ➡   $_____
                                    Total face amount   doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____   Tax year _____   $_____
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

_____   $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

  See continuation sheet
_____   $ 104,000.00

**Nature of claim**   _____

**Amount requested**   $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____   $_____

**Nature of claim**   _____

**Amount requested**   $_____

76. **Trusts, equitable or future interests in property**

_____   $_____

77. **Other property of any kind not already listed**   *Examples:* Season tickets, country club membership

_____   $_____
_____   $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.   $ 104,000.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 1,876.30 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 17,535.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 21,200.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ......➔ | | $ 1,900,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 104,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........91a. | $ 144,611.30 | + 91b. $ 1,900,000.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ...........  2,044,611.30          $ 2,044,611.30

Debtor 1    U Lock Inc              Case number *(if known)*_____

First Name    Middle Name    Last Name

## Continuation Sheet for Official Form 206 A/B

**4) Other cash equivalents**

| | |
|---|---|
| Check 1515 United Steelworkers of America | $65.00 |
| Check 242   McCance July Aug Rent | $120.00 |
| Check 2095 Peters Painting | $250.00 |

**50) Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | | |
|---|---|---|
| Ohio Body Mfg Trailer AXEV-1498 | estimation | 2,000.00 |
| 977 Cat Trxcavator 53A6822 | Estimation | 5,000.00 |
| Vintage Drott Skid Shovel Model6K3 | estimation | 5,000.00 |
| 4 Trailers | estimation | 2,000.00 |
| Tractor Trailer 201 | estimate | 1,000.00 |
| Case 880C Excvator | estimation | 3,000.00 |
| Michigan 85iii front end loader | estimation | 3,000.00 |

**74) Causes of action against third parties (whether or not a lawsuit has been filed)**

| | | | |
|---|---|---|---|
| Glenn Mowry   524 8th Street Irwin PA  15642 | Unpaid rent from July 2015 to present taking up multiple trailers and storage units with unknown items. | 84,000.00 | 84,000.00 |
| Robert Biros d/b/a Biros Mobile Home Park  1 Biros Hill Way   White Oak PA  15131 | Unpaid rent for2 trailers placed on U Lock property in or around 2017. | 20,000.00 | 20,000.00 |
| Christine Biros | Action to recover costs and fees for improvements to U Lock property while acting as trustee including road work, blacktop, maintenance | 200,000.00 | Unknown |
| Christine Biros | Action in money paid by mistake or unjust enrichment | 33,000.00 | Unknown |

**Appendix Vol. II, Page 087**

22-20823

Debtor 1    U Lock Inc _____    Case number (*if known*)_____

First Name    Middle Name    Last Name

## Continuation Sheet for Official Form 206 A/B

for payment of

property taxes to
the extent debtor
does not own 14140
Route 30, N
Huntingdon

| | | | |
|---|---|---|---|
| Christine Biros<br>435 Millers Lane<br>Plum Borough PA<br>15239 | 11 USC Section<br>362(k)(1) Wilful<br>violations of the<br>bankruptcy<br>automatic stay<br>including actual<br>and punitive<br>damages | 29,950.00 | Unknown |

ATTACHMENT TO SCHEDULE A/B AS TO REAL PROPERTY

U Lock Inc. believes that it maintains a claim to the real property at 14140 U.S. Route 30, North Huntingdon, Pennsylvania, because:

1.   To the extent Christine Biros owns it pursuant to a constructive trust, said trust constitutes an unsecured claim.

2.  While the Court released a deed pursuant to an ex parte Order filed on January 26, 2022, with the Westmoreland Recorder of Deeds, said deed merely states that the 2015 deeds were void ab initio.  Both the Court of Common Pleas and the Superior Court of Pennsylvania affirmed the validity of the deeds to U Lock issued in 2018 and advised that said deeds transferred the property to U Lock.  The deeds filed did not extinguish those deeds in any manner.

    In other words, there are three sets of deeds with the Westmoreland Recorder of Deeds:  The 2018 deeds to U Lock that were declared valid.  The 2015 deeds to U Lock declared invalid.  The 2022 filed deed to Christine Biros that purports to be based on the void 2015 deed but does not mention and cannot mention the valid 2018 deeds.

3.  The Court of Common Pleas lacked jurisdiction to render its ex parte Order in January 2022 because the Supreme Court of Pennsylvania and the Superior Court of Pennsylvania did not remit the record.  In Pennsylvania, jurisdiction does not return to the Court of Common Pleas until the judgment of the Superior Court is remitted and filed on the docket.  This did not occur.  Christine Biros' attorney's paralegal called the judge's law clerk in January 2022 and misrepresented the procedural posture.

4.  U Lock has a pending challenge to the judgment from January 2022 with the Superior Court of Pennsylvania.  This challenge is stayed due to the bankruptcy.

5.  U Lock will be filing an adversary proceeding once the case is transferred to Chapter 11 where it will seek to challenge the conveyance of the deed, declare it a preference, declare the constructive trust an unsecured creditor, and to raise a claim to reverse the involuntary conveyance as a result of Christine Biros' knowledge that U Lock was insolvent and she sought priority.

6.  U Lock maintains the available financing to return all of Christine Biros' money along with Pennsylvania's statutory interest that she is entitled to.

**Fill in this information to identify the case:**

Debtor name ___U Lock Inc_____

United States Bankruptcy Court for the: ___Western District of Pennsylvania___

Case number (If known): ___22-20823_____

☐ Check if this is an
amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

**12/15**

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☒ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

|  | *Column A* Amount of claim Do not deduct the value of collateral. | *Column B* Value of collateral that supports this claim |
| --- | --- | --- |

**2.1** Creditor's name

_____

Describe debtor's property that is subject to a lien

$_____    $_____

Creditor's mailing address

_____
_____

Describe the lien

Creditor's email address, if known

_____

_____

Is the creditor an insider or related party?
☐ No
☐ Yes

Date debt was incurred _____

Last 4 digits of account number _____

Is anyone else liable on this claim?
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

Do multiple creditors have an interest in the same property?
☐ No
☐ Yes. Specify each creditor, including this creditor,

_____

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**2.2** Creditor's name

_____

Describe debtor's property that is subject to a lien

$_____    $_____

Creditor's mailing address

_____
_____

Describe the lien

Creditor's email address, if known

_____

_____

Is the creditor an insider or related party?
☐ No
☐ Yes

Date debt was incurred _____

Last 4 digits of account number _____

Is anyone else liable on this claim?
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

Do multiple creditors have an interest in the same property?
☐ No
☐ Yes. Have you already specified the relative priority?
   ☐ No. Specify each creditor, including this creditor, and its relative priority.

_____

☐ Yes. The relative priority of creditors is specified on lines _____

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**

$_____

**Appendix Vol. II, Page 090**

**Fill in this information to identify the case:**

Debtor _____ U Lock Inc _____

United States Bankruptcy Court for the: ___ Western District of Pennsylvania ___

Case number _____ 22-20823 _____
(if known)

☐ Check if this is an
amended filing

<u>Official Form 206E/F</u>

# Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

## Part 1:   List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☑ No. Go to Part 2.
   ☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|

**2.1** Priority creditor's name and mailing address

As of the petition filing date, the claim is: $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Date or dates debt was incurred

_____

Last 4 digits of account number _____

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____)

Total claim $_____    Priority amount $_____

**2.2** Priority creditor's name and mailing address

As of the petition filing date, the claim is: $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Date or dates debt was incurred

_____

Last 4 digits of account number _____

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____)

Total claim $_____    Priority amount $_____

**2.3** Priority creditor's name and mailing address

As of the petition filing date, the claim is: $_____
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Date or dates debt was incurred

_____

Last 4 digits of account number _____

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (____)

Total claim $_____    Priority amount $_____

**Part 2:**   List All Creditors with **NONPRIORITY** Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | Amount of claim |
|---|---|

**3.1** **Nonpriority creditor's name and mailing address**
Christine Biros
435 Millers Road
Pittsburgh, PA, 15239

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Monies Loaned / Advanced

$ 325,000.00

Date or dates debt was incurred   07/09/2015
Last 4 digits of account number   9999

Is the claim subject to offset?
☑ No
☐ Yes

**3.2** **Nonpriority creditor's name and mailing address**
Christine Biros
435 Millers Road
Pittsburgh, PA, 15239

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Claims she is owed attorney fees.

$ Unknown

Date or dates debt was incurred   01/01/2021
Last 4 digits of account number   9999

Is the claim subject to offset?
☑ No
☐ Yes

**3.3** **Nonpriority creditor's name and mailing address**
JAR Coal Company
1985 Lincoln Way
STE 23-333
White Oak, PA

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Based on information, JAR Coal Company, an unincorporated a

$ 325,000.00

Date or dates debt was incurred   07/09/2015
Last 4 digits of account number   9999

Is the claim subject to offset?
☑ No
☐ Yes

**3.4** **Nonpriority creditor's name and mailing address**
PA Turnpike Toll by Plate
PO Box 645631
Irwin, PA, 15642

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ 16.90

Date or dates debt was incurred   09/27/2021
Last 4 digits of account number   0615

Is the claim subject to offset?
☑ No
☐ Yes

**3.5** **Nonpriority creditor's name and mailing address**
Shanni Snyder and/or Trustee of the Shanni
Snyder Bankruptcy Estate
14390 Route 30
Irwin, PA, 15642

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ 262,000.00

Date or dates debt was incurred
Last 4 digits of account number   9999

Is the claim subject to offset?
☑ No
☐ Yes

**3.6** **Nonpriority creditor's name and mailing address**
West Penn Power
76 South Main Street
Akron, OH, 44308

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** Utility Services

$ 43.73

Date or dates debt was incurred   04/21/2022
Last 4 digits of account number   0618

Is the claim subject to offset?
☑ No
☐ Yes

**Appendix Vol. II, Page 092**

| **Part 2:** | **Additional Page** |
| --- | --- |

| Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page. | **Amount of claim** |
| --- | --- |

**3.**⁷ **Nonpriority creditor's name and mailing address**

Westmoreland County Tax Claim Bureau
2 North Main Street
Ste 109
Greensburg, PA, 15601

**As of the petition filing date, the claim is:**
_Check all that apply._
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Property Taxes

$ __Undetermined__

Date or dates debt was incurred    __12/31/2021__

Last 4 digits of account number    _____

**Is the claim subject to offset?**
☑ No
☐ Yes

---

**3.** _____ **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ _____

Date or dates debt was incurred    _____

Last 4 digits of account number    _____

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.** _____ **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ _____

Date or dates debt was incurred    _____

Last 4 digits of account number    _____

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.** _____ **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ _____

Date or dates debt was incurred    _____

Last 4 digits of account number    _____

**Is the claim subject to offset?**
☐ No
☐ Yes

---

**3.** _____ **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$ _____

Date or dates debt was incurred    _____

Last 4 digits of account number    _____

**Is the claim subject to offset?**
☐ No
☐ Yes

**Appendix Vol. II, Page 093**

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

**5. Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | $ 0.00 |
| 5b. **Total claims from Part 2** | 5b. **+** | $ 912,060.63 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 912,060.63 |

**Appendix Vol. II, Page 094**

Fill in this information to identify the case:

Debtor name __U Lock Inc__

United States Bankruptcy Court for the: __Western District of Pennsylvania__

Case number (If known): __22-20823__    Chapter __7__

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | Maintains possession of units 1, 2, 6, 9, 17, and various parked machines.<br>Lessor | Glenn Mowry<br>524 8th Street<br>Irwin, PA, 15642 |
| | State the term remaining | unknown | |
| | List the contract number of any government contract | | |
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | Leases unit 8 at U Lock<br>Lessor | Sharon McCance<br>PO Box 185<br>Irwin, PA, 15642 |
| | State the term remaining | unknown | |
| | List the contract number of any government contract | | |
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | Leases unit 10 at U Lock<br>Lessor | Chuck Wargo<br>address unknwon |
| | State the term remaining | 0 | |
| | List the contract number of any government contract | | |
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | Tony Noll possesses unit 21 at U Lock.  He has not paid rent for 2 years.<br>Lessor | Terry Noll<br>1257 Colt<br>Irwin, PA, 15642 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| **2.5** | State what the contract or lease is for and the nature of the debtor's interest | Possesses unit 19 at U Lock<br>Lessor | Stephen Chapas<br>273 Shasta Drive<br>Pittsburgh, PA, 15239 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

## Appendix Vol. II, Page 095

Debtor __U Lock Inc_____  Case number (*if known*) __22-20823_____
           Name

 **Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.**6** | State what the contract or lease is for and the nature of the debtor's interest | unit 18 | Denny & John Dull<br>120 Kline Avenue<br>North Versailles, PA, 15137 |
| | State the term remaining | 12 | |
| | List the contract number o any government contract | | |
| 2.**7** | State what the contract or lease is for and the nature of the debtor's interest | Lease on unit 3<br>Lessor | Sara Stumme<br>2705 Bowman Avenue<br>McKeesport, PA, 15132 |
| | State the term remaining | unknown | |
| | List the contract number of any government contract | | |
| 2.**8** | State what the contract or lease is for and the nature of the debtor's interest | rent vacant space<br>Lessor | 11585274 Canada Inc<br>663 Ave Orly<br>Durval QC  H9P1G1 Canada, H9P1G1 |
| | State the term remaining | 5 | |
| | List the contract number of any government contract | | |
| 2.**9** | State what the contract or lease is for and the nature of the debtor's interest | Rents Unit 11 at U Lock<br>Lessor | James Clawson<br>2437 Saunders Station Road<br>Monroeville, PA, 15146 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.**10** | State what the contract or lease is for and the nature of the debtor's interest | Possesses unit at U Lock<br>Lessee | Jeffrey Shaw<br>140 Carriage Drive<br>Irwin, PA, 15642 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.**11** | State what the contract or lease is for and the nature of the debtor's interest | lease on unit 15 | ESq Holding<br>Attn M Jiminez<br>114A-3000<br>600 W Santa Ana Blvd |
| | State the term remaining | 22 | |
| | List the contract number of any government contract | | |
| 2.**12** | State what the contract or lease is for and the nature of the debtor's interest | outside land space<br>Lessor | Ricoberto Negrete Galeno<br>3048 Norland Street<br>Carnegie, PA, 15106 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

**Appendix Vol. II, Page 096**

Official Form 206G          Schedule G: Executory Contracts and Unexpired Leases          page __2__ of __5__

| Debtor | U Lock Inc | Case number (if known) | 22-20823 |
|--------|-----------|------------------------|----------|
| | Name | | |

 **Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.13 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number o any government contract | Maintains possession of Unit 12 of U Lock<br>Lessor | Jennifer Verrico<br>16 Goldstrom Avenue<br>Dravosburg, PA, 15034 |
| 2.14 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | Possesses unit 14 of U Lock<br>Lessor | United Steelworkers<br>Attn James Hill<br>386 Toura Drive<br>Pittsburgh, PA, 15236 |
| 2.15 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | Possesses unit 16 at U Lock | David Perla<br>550 Beatty Drive<br>Irwin, PA, 15642 |
| 2.16 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | Possesses unit 4 ulock<br>Lessor<br><br>24 month | R J Abreu<br>39 1/2 Wedgewood Drive 1009<br>Jewett City, CT, 06351 |
| 2.17 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | possesses trailer<br><br>28 months | INW<br>800 E Wishkah Street #1003<br>Aberdeen, WA, 98520 |
| 2.18 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | Possesses unit 25 at ulock | Lynda & Greg Warnick<br>ADDRESS UNKNOWN<br>CITY, PA, 00000 |
| 2.19 | State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | trailer<br>Lessor<br><br>4 months | RSS Attn: Bawani<br>5307 Victoria Drive #185<br>Vancouver BC  CANADA, V5P3V6 |

**Appendix Vol. II, Page 097**

| Debtor | U Lock Inc | | Case number *(if known)* | 22-20823 |
|---|---|---|---|---|
| | Name | | | |

 **Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.**20** | State what the contract or lease is for and the nature of the debtor's interest | outside<br>Lessor | Peters Painting<br>14354 Overholt Drive<br>Irwin, PA, 15642 |
| | State the term remaining | | |
| | List the contract number o any government contract | | |
| 2.**21** | State what the contract or lease is for and the nature of the debtor's interest | possesses unit 6 ulock<br>Lessor | Tony Davis<br>6 Liberty Square<br>Boston, MA, 02109 |
| | State the term remaining | 18 | |
| | List the contract number of any government contract | | |
| 2.**22** | State what the contract or lease is for and the nature of the debtor's interest | Tractor trailer ssk | R Woodall<br>Apartado 10199<br>San Jose  Costa Rica, 00000 |
| | State the term remaining | 19 | |
| | List the contract number of any government contract | | |
| 2.**23** | State what the contract or lease is for and the nature of the debtor's interest | rents vacant space to store boat<br>Lessor | Shelly & Ben Chabande<br>799 Brownstone Road<br>Larimer, PA, 15647 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.**24** | State what the contract or lease is for and the nature of the debtor's interest | unit 23<br>Lessor | Fred Banks<br>52 S 8th<br>Pittsburgh, PA, 15203 |
| | State the term remaining | 12 | |
| | List the contract number of any government contract | | |
| 2.**25** | State what the contract or lease is for and the nature of the debtor's interest | half garage<br>Lessor | Mark Myka<br>5148 Peach St 401<br>Erie, PA, 16509 |
| | State the term remaining | 7 months | |
| | List the contract number of any government contract | | |
| 2.**26** | State what the contract or lease is for and the nature of the debtor's interest | Unit 22 | Artie Leddon<br>DECEASED |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

**Appendix Vol. II, Page 098**

| Debtor | U Lock Inc | Case number (if known) | 22-20823 |
|--------|------------|------------------------|----------|
| | Name | | |

**Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

2.27 **State what the contract or lease is for and the nature of the debtor's interest**

half garage
Lessor

Gary Cheripka
123 Catskill Avenue
Pittsburgh, PA, 15227

**State the term remaining**   6 months

**List the contract number o any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

2.___ **State what the contract or lease is for and the nature of the debtor's interest**

**State the term remaining**

**List the contract number of any government contract**

**Appendix Vol. II, Page 099**

Official Form 206G    Schedule G: Executory Contracts and Unexpired Leases    page 5 of 5

Fill in this information to identify the case:

Debtor name __U Lock Inc__

United States Bankruptcy Court for the: __Western District of Pennsylvania__

Case number (If known): __22-20823__

☐ Check if this is an amended filing

## Official Form 206H

## Schedule H: Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | Check all schedules that apply: |
| 2.1 Christine Biros (to the extent U Lock acted as her trustee) | Christine Biros (to the extent U Lock acted as her trustee) 435 Miller Lane Pittsburgh, PA 15239 | Shanni Snyder and/or Trustee of the Shanni Snyder Bankruptcy Estate | ☐ D ☑ E/F ☐ G |
| 2.2 Christine Biros (to the | Christine Biros (to the extent U Lock acted as her trustee) 435 Miller Lane Pittsburgh, PA 15239 | PA Turnpike Toll by Plate | ☐ D ☑ E/F ☐ G |
| 2.3 Christine Biros (to the | Christine Biros (to the extent U Lock acted as her trustee) 435 Miller Lane Pittsburgh, PA 15239 | Westmoreland County Tax | ☐ D ☑ E/F ☐ G |
| 2.4 Christine Biros (to the | Christine Biros (to the extent U Lock acted as her trustee) 435 Miller Lane Pittsburgh, PA 15239 | West Penn Power | ☐ D ☑ E/F ☐ G |
| 2.5 | | | ☐ D ☐ E/F ☐ G |
| 2.6 | | | ☐ D ☐ E/F ☐ G |

**Appendix Vol. II, Page 100**

**Fill in this information to identify the case:**

Debtor name ___U Lock Inc_____

United States Bankruptcy Court for the: Western District of Pennsylvania

Case number (If known): ___22-20823_____

☐ Check if this is an
amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

| Part 1: | Income |
| --- | --- |

1. **Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
| --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2022 to Filing date<br>MM / DD / YYYY | ☑ Operating a business<br>☑ Other | $ 8,400.00 |
| **For prior year:** | From 01/01/2021 to 12/31/2021<br>MM / DD / YYYY      MM / DD / YYYY | ☑ Operating a business<br>☐ Other | $ 13,200.00 |
| **For the year before that:** | From 01/01/2020 to 12/31/2020<br>MM / DD / YYYY      MM / DD / YYYY | ☑ Operating a business<br>☐ Other | $ 12,000.00 |

2. **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
| --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2022 to Filing date<br>MM / DD / YYYY | storage rentals and scrap | $ 975.00 |
| **For prior year:** | From 01/01/2021 to 12/31/2021<br>MM / DD / YYYY      MM / DD / YYYY | | $ 0.00 |
| **For the year before that:** | From 01/01/2020 to 12/31/2020<br>MM / DD / YYYY      MM / DD / YYYY | | $ 0.00 |

**Appendix Vol. II, Page 101**

Debtor    U Lock Inc
        Name                                                   Case number *(if known)* 22-20823

---

**Part 2:**   **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**

   List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/23 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☑ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.1. | _____<br>Creditor's name | | $_____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| 3.2. | _____<br>Creditor's name | | $_____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | Christine Biros<br>Insider's name<br>435 Millers Lane<br>Pittsburgh, PA 15239 | 01/25/2022 | $ 0.00 | Transfer, or partial transfer, of 14140 Route 30 property, Westmoreland County tax map 54-03-10-0-103 , on January 25, 2022.<br><br>See attached explanation of insider status of Christine Biros. |
| | Relationship to debtor<br>insider, affiliate, and person in control of corp | | | |
| 4.2. | BIROS IRREVOCABLE LIFE INSURANCE T<br>Insider's name<br>3001 Jacks Run Road<br>McKeesport, PA 15131 | 02/11/2022 | $ Unknown | Biros Irrevocable Life Insurance Trust placed a mortgage lien on 14140 U.S. Route 30 property without consideration. |
| | Relationship to debtor<br>Insider, Affiliate, Person in Control | | | |

**Appendix Vol. II, Page 102**

Debtor    U Lock Inc
　　　　　Name

Case number (*if known*)  22-20823

---

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☐ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1. | Christine Biros | | _____ | $ 1,900,000.00 |
| | Creditor's name | | | |
| | 435 Miller | | | |
| | Pittsburgh, PA 15239 | | | |
| 5.2. | _____ | | _____ | $_____ |
| | Creditor's name | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____ | | _____ | $_____ |
| Creditor's name | | | |
| | Last 4 digits of account number: XXXX– _____ | | |

---

**Part 3:    Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | Shanni Snyder v. U Lock Inc et al | Writ of summons and lis pendens related to 14140 U.S. Route 30, North Huntingdon PA 15642 | Court of Common Pleas of Westmoreland County | ☑ Pending ☐ On appeal ☐ Concluded |
| | **Case number** | | 2 North Main Street Greensburg, PA 15601 | |
| | 22 CJ 00928 | | | |
| 7.2. | **Case title** Christine Biros v. U Lock Inc. | | **Court or agency's name and address** Court of Common Pleas of Westmoreland County | ☑ Pending ☐ On appeal ☐ Concluded |
| | **Case number** | Creditor prosecuted a petition se | 2 North Main Street Greensburg, PA 15601 | |
| | 17 CJ 4886 | | | |

---

**Appendix Vol. II, Page 103**

Debtor    U Lock Inc
_____     Case number (*if known*) 22-20823
          Name

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | _____ | $_____ |
| Custodian's name | **Case title** | **Court name and address** |
| | _____ | _____ |
| | | Name |
| | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
|---|---|

**9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | | | _____ | $_____ |
| | Recipient's name | | _____ | $_____ |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |
| 9.2. | | | _____ | $_____ |
| | Recipient's name | | _____ | $_____ |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |

---

| **Part 5:** | **Certain Losses** |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. | | |
| | List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | | |
| | _____ | _____ | $_____ |

**Appendix Vol. II, Page 104**

Debtor    U Lock Inc
_____    Case number (*if known*) 22-20823
Name

| **Part 6:** | **Certain Payments or Transfers** |

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | _____ | | _____ | $_____ |
| | **Address** | | | |
| | | | | |
| | **Email or website address** | | | |
| | _____ | | | |
| | **Who made the payment, if not debtor?** | | | |
| | _____ | | | |

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.2. | _____ | | _____ | $_____ |
| | **Address** | | | |
| | | | | |
| | **Email or website address** | | | |
| | _____ | | | |
| | **Who made the payment, if not debtor?** | | | |
| | _____ | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| | Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|---|
| | _____ | | _____ | $_____ |
| | **Trustee** | | | |
| | _____ | | | |

**Appendix Vol. II, Page 105**

Debtor    U Lock Inc _____    Case number (if known) 22-20823
          Name

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1. | _____ | | _____ | $_____ |
| | **Address** | | | |
| | **Relationship to debtor** | | | |
| | _____ | | | |
| 13.2. | **Who received transfer?** | | _____ | $_____ |
| | _____ | | | |
| | **Address** | | | |
| | **Relationship to debtor** | | | |
| | _____ | | | |

| Part 7: | **Previous Locations** |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| | Address | Dates of occupancy |
|---|---|---|
| 14.1. | | From _____  To _____ |
| 14.2. | | From _____  To _____ |

**Appendix Vol. II, Page 106**

Debtor    U Lock Inc
_____    Case number (if known) 22-20823
Name

---

| **Part 8:** | **Health Care Bankruptcies** |

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

— diagnosing or treating injury, deformity, or disease, or

— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1. _____<br>Facility name | | _____ |
| | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept?<br><br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |
| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
| 15.2. _____<br>Facility name | | _____ |
| | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider. | How are records kept?<br><br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |

---

| **Part 9:** | **Personally Identifiable Information** |

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained. name, address, telephone number

Does the debtor have a privacy policy about that information?

☑ No

☐ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: _____ |

Has the plan been terminated?

☐ No

☐ Yes

---

**Appendix Vol. II, Page 107**

Debtor    U Lock Inc
         _____          Case number (if known) 22-20823
         Name

---

**Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1. _____<br>Name | XXXX–_____ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |
| 18.2. _____<br>Name | XXXX–_____ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other_____ | _____ | $_____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Name<br><br>Address | | | ☐ No<br>☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____<br>Name<br><br>Address | | | ☐ No<br>☐ Yes |

---

**Appendix Vol. II, Page 108**

Debtor ___U Lock Inc_____     Case number (*if known*)_22-20823_____
       Name

---

<table>
<tr><td>**Part 11:**</td><td>**Property the Debtor Holds or Controls That the Debtor Does Not Own**</td></tr>
</table>

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list property leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $_____ |
| _____ | | | |
| Name | | | |

---

<table>
<tr><td>**Part 12:**</td><td>**Details About Environmental Information**</td></tr>
</table>

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | | | ☐ Pending |
| **Case number** | Name | | ☐ On appeal |
| _____ | | | ☐ Concluded |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | | _____ |
| Name | Name | | |

---

**Appendix Vol. II, Page 109**

Debtor    U Lock Inc
_____    Case number (*if known*) 22-20823
          Name                                                                    _____

---

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ Name | _____ Name | | _____ |

---

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

|  | Business name and address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1. | _____ Name | | EIN: _____ |
|  |  |  | **Dates business existed** |
|  |  |  | From _____ To _____ |
| 25.2. | _____ Name | | EIN: _____ |
|  |  |  | **Dates business existed** |
|  |  |  | From _____ To _____ |
| 25.3. | _____ Name | | EIN: _____ |
|  |  |  | **Dates business existed** |
|  |  |  | From _____ To _____ |

---

**Appendix Vol. II, Page 110**

| Debtor | U Lock Inc | | Case number (*if known*) | 22-20823 |
|---|---|---|---|---|
| | Name | | | |

---

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☑ None

| Name and address | | Dates of service |
|---|---|---|
| 26a.1. | _____ Name | From _____  To _____ |

| Name and address | | Dates of service |
|---|---|---|
| 26a.2. | _____ Name | From _____  To _____ |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☑ None

| Name and address | | Dates of service |
|---|---|---|
| 26b.1. | _____ Name | From _____  To _____ |

| Name and address | | Dates of service |
|---|---|---|
| 26b.2. | _____ Name | From _____  To _____ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

| Name and address | | If any books of account and records are unavailable, explain why |
|---|---|---|
| 26c.1. | _____ Name | |

---

Debtor    U Lock Inc _____    Case number (*if known*) 22-20823 _____
          Name

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.2. _____ |  |
| Name |  |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
|---|
| 26d.1. _____ |
| Name |

| Name and address |
|---|
| 26d.2. _____ |
| Name |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $_____ |

| Name and address of the person who has possession of inventory records |
|---|
| 27.1. _____ |
| Name |

**Appendix Vol. II, Page 112**

Debtor ___U Lock Inc_____    Case number (if known)___22-20823_____
 　　　　Name

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $_____ |

| Name and address of the person who has possession of inventory records |
|---|

27.2.   _____
　　　　Name

---

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| John Biros | 1 Biros Hill Way, McKeesport, PA 15131 | silent partner from inception | 25 |

---

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Christine Biros | 435 Miller Lane   Pittsburgh PA 15239 | See attached, silent partner of business | 07/09/2015___ To _____ |
| | | | _____ To _____ |
| | | | _____ To _____ |
| | | | _____ To _____ |

---

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1.   _____
　　　　Name | _____ | _____ | |
| | | _____ | |
| | | _____ | |
| Relationship to debtor | | | |
| _____ | | | |

**Appendix Vol. II, Page 113**

Debtor ___U Lock Inc_____    Case number *(if known)*__22-20823_____
         Name

| | Name and address of recipient | | _____ _____ |
|---|---|---|---|
| 30.2 | _____ | | _____ |
| | Name | | _____ |
| | | | _____ |
| | Relationship to debtor | | _____ |
| | _____ | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| _____ | EIN: _____ |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| _____ | EIN: _____ |

---

| **Part 14:** | **Signature and Declaration** |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___07/06/2022___
              MM  / DD  / YYYY

✖ /s/ George Snyder                                    Printed name __George Snyder_____
Signature of individual signing on behalf of the debtor

Position or relationship to debtor __Director_____

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No
☑ Yes

Debtor Name ___U Lock Inc_____     Case number *(if known)*___22-20823_____

### Continuation Sheet for Official Form 207

**7) Legal Actions**

**Christine Biros v. U Lock**

Supreme Court petition for leave to appeal.  While denied, the court did not
remit the record because it extended the time and this bankruptcy stayed the
case.

**Supreme Court of Pennsylvania**

**Pending**

-------

**Christine Biros v. U Lock**

**1841 WDA 2019**

This is the appeal from the decision awarding Christine Biros a constructive
trust.  It is still active because the Court never remitted the record due to
the pending status in the PA Supreme Court.

**Superior Court of Pennsylvania**

**Pending**

-------

**Shanni Snyder v. U Lock**

**21 JU 4758**

Creditor filed federal judgment with Court of Common Pleas to register the
judgment as a lien on all property.

**Court of Common Pleas of Westmoreland County**

**2 North Main Street, Greensburg, PA 15601**

**Concluded**

-------

**Christine Biros v. U Lock**

**17 CJ 04886**

Creditor filed a Petition for Possession BUT NEVER FILED IT WITH THE
PROTHONOTARY.  Court issued Order May 17 2022 awarding possession.

**Court of Common Pleas**

**2 North Main Street, Greensburg, PA 15601**

**Pending**

-------

**Biros v. U Lock  Shanni Snyder Appellant**

Official Form 207          Statement of Financial Affairs for Non-Individuals

Debtor Name ___U Lock Inc_____        Case number *(if known)*___22-20823___

## <u>Continuation Sheet for Official Form 207</u>

**607 WDA 2022**

**Shanni Snyder appeals the levy on U Lock's personal property asserting it interfered with her judgment**

**Superior Court of Pennsylvania**

**Pending**

-------

**Christine Biros v. U Lock**

**615 WDA 2022**

**U Lock appeals an ex parte order releasing a deed to Christine Biros prior to the court regaining jurisdiction.**

**Superior Court of Pennsylvania**

**Pending**

-------

**Christine Biros v. U Lock**

**617 WDA 2022**

**U Lock appeals a writ of possession that was filed notwithstanding no action in ejectment ever having been filed against it.**

**Superior Court of Pennsylvania**

**Pending**

-------

**Christine Biros v U Lock    Mark Mycka Appellant**

**650 WD 2022**

**Tenant appeals the writ of possession awarded to Christine Biros without notice to the persons occupying the property.**

**Superior Court of Pennsylvania**

**Pending**

-------

INSIDER STATUS OF CHRISTINE BIROS, JOHN BIROS, and BIROS IRREVOCABLE INSURANCE TRUST

The following information is provided to show the insider status of Christine Biros and the Biros, i.e., that she constitutes a person in control of or an affiliate of U Lock Inc. equivalent to, or similar to, a silent officer or shareholder. U Lock is not alleging that Christine Biros or the Biros Irrevocable Life Insurance Trust engaged in any form of criminal activity or that the funds came from unlawful activity. (Based on information, the source of the funds were actually an unincorporated association).

If the transfer of the property, and all interest in the property was actually transferred (see attachment to Schedule A/B part 9, and attachment thereto), it constitutes an involuntary transfer of assets to an insider unsecured creditor. Specifically, the Court of Common Pleas of Westmoreland County, Pennsylvania, specifically found that deeds issued in 2018 to U Lock conveyed ownership of the property. However, because of U Lock's insolvency, the Court created a constructive trust to assure that Christine Biros receives her unsecured loan returned to her. The Superior Court of Pennsylvania affirmed the decision.

Christine Biros, John Biros, and the Biros Irrevocable Life Insurance Trust (collectively "Biros Family") constitute insiders because they maintained indirect control over U Lock Inc.

Specifically, the formation of U Lock Inc. occurred as a result of a plan between George Snyder, Kash Snyder, Christine Biros, and John Biros to purchase an extremely undervalued piece of real estate on Route 30. They intended to work with Colony Holdings, a retail shopping center developer, to create a shopping plaza.

While the business had a self-storage business on it, that business only made a small amount per month (under $2000). In other words, when providing the money for the purchase of the property, Christine and John Biros necessarily knew that there was not sufficient income to make payments on any loan. Christine and John Biros knew that George Snyder and Kash Snyder had minimal savings and were reliant on the Biros' to provide additional funding to develop the property.

Prior to the formation of U Lock, Christine Biros and John Biros participated in multiple meetings with George and sometimes Kash Snyder relating to the property. Meetings occurred at least once a week with John Biros, and sometimes with Christine Biros.

Immediately prior to the purchase of the U Lock property in 2015, discussions occurred as to what names should be on the corporate papers. This was near the time that agents of the Attorney General of Pennsylvania raided the home of Robert Biros and seized a large sum of cash. Christine Biros and John Biros advised George Snyder that they did not want their names on the corporate papers until that investigation was complete.

It was not until the day of the purchase of the property in July 2015 that Christine Biros had Kash Snyder write on a piece of paper that the payment constituted a loan and that terms and conditions of the loan would be set thereafter. Christine Biros advised Kash Snyder that she needed something to show her loan but did not want a public document showing any involvement.

From the purchase of the property in July 2015 through mid-2017, weekly "board-type" meetings occurred between George Snyder and Christine Snyder discussing the progress of the project, etc.  George Snyder repeatedly advised that he thought the property should be developed, but Christine Biros and John Biros directed that the property not be developed until the matters with the Attorney General of Pennsylvania were settled.

During 2015 and 2016, John Biros on behalf of himself and Christine Biros, paid a couple thousand dollars per month towards equipment and fuel that was used to make improvements on the property (roadwork, parking, and grading).

During some meetings, a discussion of taxes occurred.  Christine Biros conveyed to George Snyder that federal taxes should not be filed if they would need to list her or John Biros as an owner of the property until after the Attorney General matter closed.

In or around 2017, when discussions occurred as to possibly removing Christine Biros and John Biros from corporate involvement and simply returning the money because George Snyder located an investor who wanted to partner for developing the property (C. Dull), Christine Biros voiced an objection and stated that she wanted her brother John Biros to remain a partner.

During 2017 when an unsigned demand letter was provided (authored by William Otto, but with Christine Biros listed as the writer, but no signature), both John Biros and Christine Biros informed George Snyder that they had to provide the letter because Robert Biros found out about the transaction and that they would have discussions with him to try to alleviate the situation.   John Biros specifically told George Snyder not to sign the letter.

During 2017, Christine Biros allowed her father, Robert Biros, to place two large trailers on the property that he removed from a trailer park they operate.  Those trailers remain.

Even after Christine Biros filed her lawsuit, additional meetings occurred between the Biros' and U Lock's officers.   When the Biros family was criminally charged in July 2018, John Biros met with George Snyder and advised that he was charged and that Christine Biros was too busy to deal with the lawsuit.  At that time, Christine Biros did indeed pause her lawsuit, but the pause was short lived.

From 2015 through late 2021, John Biros provided his vehicle to U Lock to act as a company vehicle.

CLARIFICATION AS TO FILING AND BANKRUPTCY FEES

1.   This was an involuntary petition.  The filing fees were paid by the Petitioner.

2.   Prior to the bankruptcy, no attorney fees were paid.

3.   Because of the abrupt notice of the bankruptcy, counsel for the debtor appeared without securing payment.  Therefore, counsel waived pre "Order for Relief" fees associated with this case.

4.   Counsel has filed the post-Order for Relief statement advising of the fees that will be billed or attempted to be billed.

5.   The filing fee for the motion to convert were paid by the officer of the corporation through his personal funds.  Funds from the estate were not used to pay the filing fee.

**Fill in this information to identify the case and this filing:**

Debtor Name ___U Lock Inc___

United States Bankruptcy Court for the: __Western District of Pennsylvania__

Case number (*If known*): ___22-20823___

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☒ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☒ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☒ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☒ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☒ *Schedule H: Codebtors* (Official Form 206H)

☒ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

❑ Amended *Schedule ____*

❑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration_____Statement of Financial Affairs_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___07/06/2022___            ✖ /s/ George Snyder
        MM / DD / YYYY                    Signature of individual signing on behalf of debtor

                                          George Snyder
                                          Printed name

                                          Director
                                          Position or relationship to debtor

**Appendix Vol. II, Page 120**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | )        Bank. 22-20823-GLT | |
| | ) | |
| Debtor. | )        Chapter 7 | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | | |
| CHRISTINE BIROS, | ) | |
| | )    RE:  Order at Entry 36 | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANNI SNYDER, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**DEBTOR U LOCK'S NOTICE OF NON-COMPLIANCE**</u>

Alleged Debtor U Lock Inc. ("U Lock"), by and through its undersigned

counsel, files this Notice of Non-Compliance as this Court directed::

1. Pursuant to paragraph 12 of the Order Granting Christine Biros Limited Relief

   from the Stay, Docket Entry 36, Debtor U Lock advises this Court of the stop

   work notification from North Huntingdon Township, the destruction of

   scheduled property, and the apparent non-compliance by Ms. Biros and her

   family members as to the intent of this Court's limited relief from the stay.

2. At the hearing on June 2, 2022, counsel for Ms. Biros represented to the

   Court that the ground at U Lock had PCB contamination, *see* transcript at

   page 6, and that there existed "evidence of hydrocarbon contamination in the

   soil," see transcript at page 13.

3. According to counsel for Ms. Biros, the "initial plan is to do a Phase 1 site

   assessment to make sure we can characterize the entire situation in detail,

   and then our long range plan is to clean the site up so that it can be used as a

**Appendix Vol. II, Page 121**

commercial site and not as a junkyard." *See* transcript at 13.

4. U Lock consented to limited relief.  This Court rendered a specific Order.

5. The Order provided that Ms. Biros, on 48 hours notice, could enter the

   property with licensed contractors to conduct a *bona fide* environmental

   testing and/or to create plans for remediation.  Order at par. 9

6. U Lock is not aware of any testing or creation of remediation plans.

7. On June 14, 2022, counsel for Christine Biros, William Otto, wrote to counsel

   for U Lock Inc. and stated:

   Mr. Roth:  In accordance with Judge Taddonio's June 3, 2022 Order, this
   email is intended to give your client 48 hours advanced notice that   Christine
   Biros will begin remediation efforts on the property owned by Ms. Biros and
   located at 14140 US Route 30, North Huntingdon   Township, PA  on or after
   6:00 a.m., Friday, June 17, 2022.

   This effort will be in compliance with the Judge's Order.   If you have any
   questions, please contact me.      Very truly yours,   William E. Otto, Esq.

8. On June 21, 2022, the undersigned wrote to counsel for Christine Biros:

   Dear Mr. Otto:

   Can you elaborate on the scheduling and details of the remediation and what
   it consists of?  Mr. George Snyder advises that the only activities seem to be
   surveillance related (such as parking across the street monitoring him).  U
   Lock believes that the intent of the Order was normal business hours;
   however, if there are actual, real needs for 6:00 a.m., he is willing to
   cooperate but the information provided was very vague.

   Attached is the list of tenants as required.  Mr. Snyder is going to go over it
   this week to make sure there are no historic occupiers that are not listed or
   people who abandoned their tenancy.  U Lock advises that there are some
   unknown occupants that had items on hand since 2015.  Once that happens,
   your office will be provided an updated list.    /s/ From the office of J. Allen
   Roth, Esq.

9. On June 30, 2022, counsel for U Lock received a telephone call from the

   trustee advising that Christine Biros claimed that U Lock blocked the facility or

   the entrance.

**Appendix Vol. II, Page 122**

10. Counsel for U Lock emailed the trustee a copy of the June 21, 2022, communication to counsel for Christine Biros and provided pictures of the entrances and the facility.

11. The trustee emailed the communication to Attorney Otto.  Attorney Otto responded:

> Mr. Slone – I didn't respond to him for several reasons:  1.  He no longer represents U Lock, only George Snyder. I will be happy to answer any questions you may have.  2.  The tenant list provided was laughable.  He should be providing a rent roll, including real names and addresses, cross-referenced to locker numbers and monthly rental.  Since this is the end of the month, I assume that money belongs to you in trust.  3.  There never was a requirement that we lay out our remediation plan to the Snyders.  4.  As I understand it, they don't even have the right to be on the property, since they are not employees, but only shareholders.  My client is more than willing to cooperate with you, but the only interest of George Snyder is to delay the inevitable.  Best regards, Bill Otto.

12. Starting on or about July 12, Ms. Biros invited companies affiliated with her to bring tons of waste soil and rock and dump the items onto the U Lock property, specifically in areas that impeded access to the client trailers, etc.

13. In addition, in violation of paragraph 8 of the Order, without notice to U Lock, utilized the equipment to damage scheduled property belonging to U Lock including destroying equipment, damaging a trailer, and destroying  an unused tank.[1]

14. On July 13, 2022, George Snyder had a discussion with North Huntington Township and was verbally told that the dumping of rock must stop and that it required plans and a permit.  Mr. Snyder advised the trustee of the conversation.

15. On July 14, 2022, relatives of Christine Biros appeared on the property and

---

[1] U Lock did not remove said tank because the trustee advised George Snyder not to.  If Ms. Biros believed it to be waste, then according to paragraph 8, she needed to provide 48 hours notice to U Lock.  Had she done that, U Lock would have obtained permission to move the tank from the trustee.

began using their excavation equipment to move around soil, mixing it.

16. Problematic is if the soil and ground are contaminated as counsel for Ms.

    Biros represented to this Court, covering it or mixing it does not "remediate it

    but simply conceals or aggravates the environmental concerns.  It would

    constitute a brazen criminal act to know that soil is contaminated and then to

    try to cover or conceal the contamination. On the other hand, if no

    contamination existed, then the whole need to immediately remediate

    constituted a ruse.

17. On July 14,, 2022, North Huntingdon Township provided a formal cease and

    desist to U Lock.  *See* Exhibit A.

18. In the afternoon of July 14, 2022, three more trucks full of rock appeared on

    the property.

19. Mr. Snyder politely advised the drivers that there existed a cease and desist.

    The drivers asked Mr. Snyder for permission to dump the three trucks full of

    rock because they had nowhere else to take it.   Mr. Snyder stated that he

    could neither tell them to dump the rock or not to dump the rock, but reiterated

    that a cease and desist notice was provided directing that no dumping occur.

20. Thereafter, counsel for Ms. Biros contacted the trustee and wrote, "Mr. Slone:

    I am informed that Mr. George Snyder has been interfering with Ms. Biros'

    remediation efforts. *As you know, we have authorization from both Judge

    Taddonio and you to place soil on the site.*  We are not aware of any 'stop

    work order' as Mr. Snyder alludes to, and the fact that U Lock is in bankruptcy

    does not mean that the property is subject to litigation which would limit Ms.

    Biro's efforts.  If Mr. Snyder interferes in any way with the remediation effort, it

    will be necessary to take further action against Mr. Snyder.   William E. Otto,

Esq."

21. U Lock notes that in some cases, remediation does indeed involve removing contaminated soil, performing tests, then replacing it with clean soil..  In this case, there appears to be just a mixing of soil and the placement of hundreds of large boulders.

22. More problematic is that this work is being done by family members of Ms. Biros, not professionally licensed contractors, and none of these individuals are wearing safety gear or protection from the dust from what Ms. Biros states is contaminated soil.

WHEREFORE, U Lock respectfully requests that this Court take appropriate action.

Respectfully submitted,

*/s/ J. Allen Roth, Esq.*
J. Allen Roth, Esq.
805 S. Alexander Street
Latrobe PA  15650
lawmatters@yahoo.com
(724) 537-0939

COUNSEL FOR U LOCK INC



July 14, 2022

Christine Biros & Ulock Inc.
14140 State Route 30
McKeesport, PA  15131

**Commissioners**

Zachary J. Haigis
President

Ronald Zona
Vice President

Jason L. Atwood

Eric Gass

Richard Gray

Virginia Stump

Lyndsay Wengrzyn

**Re: Grading Activity – 14140 State Route 30, Tax ID 54-03-10-0-103**

Dear Ms. Biros:

It has come to my attention that you are conducting grading/filling activities on the above referenced site.  Please be advised that all work must cease and desist immediately and may not resume until you submit a grading plan and permit application for review and approval of the Township.

Sincerely,

*Robert R. Robinson*

Robert R. Robinson, P.E.
Interim Township Engineer

Cc:    Tom McGuire, Building Inspector
        Josh Andrykovitch, Code Enforcement Officer

---

North Huntingdon Township  |  11279 Center Highway  |  North Huntingdon, PA  15642
p. 724-863-3806  |  f. 724-863-9590  |  info@nhtwp.org  |  www.nhtwp.us

**Appendix Vol. II, Page 126**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Bankruptcy 22-20823-GLT |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| —------------------------------------------------ | ) | |
| CHRISTINE BIROS, | ) | |
| | ) | RE:  Order at Entry 36 |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHANNI SNYDER, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**DECLARATION OF GEORGE SNYDER**</u>

I, George Snyder, declare and state under the penalty for perjury that the

following is true and correct (28 USC 1746):

1.  On Saturday, July 9, 2022, I noted a large Big's Waste dumpster on the property.  Notably, Big's is the company that caused the garbage truck fire and which the Biros family insinuated I orchestrated.

2.  On July 12, 2022, I appeared at the U Lock location.  I noticed a backhoe (Case 580 Super L) that belongs to Robert Biros.  I saw that tracks existed and that a trailer (one I mentioned at the hearing when I testified) was moved. It was not moved "from" the fire site, but actually onto the fire site. There were divots in the asphalt millings, so it became clear to me that they moved it in a reckless manner.  I then inspected the unit.  They bent the landing gear and punctured the walls.  They moved this trailer without advanced notice.

3.  On July 12, 2022, at about 12:30 p.m., a triaxle appeared on the property and dumped large boulders in the front parking lot.  Trucks then started coming one after another.

4.  About an hour later, Robert Biros, who is Christine Biros' 87 year old father, was running the backhoe and pushing all of the items U Lock temporarily placed outside into a pile with dirt, grass, and asphalt millings.

5.  There were several pallets with certain items stacked neatly for storage, such as shelving with an estimated value of about $12,000 and  vintage wood work and some items that belonged to me personally.

6. Christine Biros' brother, Andy, was assisting Robert from the ground. Christine Biros and her son Scotty were also present.

7. More triaxles of large boulders began coming in one after another. They Dumped well over 100 tons of huge boulders right in front of tractor trailers with items stored in them, making it impossible to access or remove anything.

8. Robert Biros also pushed dozens of tons of boulders onto the access road to the storage lockers from the right hand side.

9. The trustee, Mr. Slone showed up while this was going on.  I mentioned to him that this doesn't appear to be remediation and that the court order stated they weren't to interfere with U Lock's operation. The trustee stated that it was not clear to him what the judge meant in the Order.

10. Shortly after 3:00 p.m., Robert Biros was ramming his equipment into another tractor trailer attempting to move it. He was not  successful in moving it, but he did damage the trailer.

11. On the morning of July 13, 2022, North Huntingdon Township Interim Engineer Robert Robinson met with me and gave me a verbal stop work order.  He asked me to email him the property owner information which I did along with a second email asking him if the activities relating to the large rocks were authorized.

12. At around 1:30 p.m.,  Andy Biros  was loading up the back hoe with final drives for excavators and a wood burner.

13. At around 2:15 p.m., I called the trustee and told him things on the schedule were being removed from U Lock.

14. At 2:17p.m., Robert  and Andy Biros along with Glenn Mowry, a squatter at the storage facility that has not paid fees for years, were with Hunter towing who was removing a forklift that was on the U Lock schedule along with a diesel fuel tank that was also on the schedule.  I did not receive any advanced notice of this.

15. At 2:19pm Glenn Mowry informed me that someone ruined tens of thousands of dollars of his stuff. He also told me that Mr. Slone told him that he can remove his belongings from the property. I told him that I had no say so and to continue to go through Mr. Slone.

16. At 3:52pm, Andy Biros was with Hunter Towing removing a snow plow truck for Glenn Mowry.

17. At some point I called Mr. Slone and told him that there was a verbal stop work order and that Mr. Robinson would be issuing a written one the next day. He said that he would notify Otto.

18. On July 14, 2022, at 9:45am, there were three trucks dumping boulders. I told

them that there was a cease and desist in place. They asked if they could dump there because they had nowhere else to dump. They told me that the big boulders are hard to get rid of because nobody wants to take them. They asked me if they could at least dump those 3 truckloads. I told them that I had no authority to permit them or to deny them. They informed me that they were going to dump them anyway. At that point I left.

19. At 1:34pm Andy Biros was Operating CAT high lift while Bob Biros sat in a white ford transit. Andy Biros was pushing rock and blocking the asphalt road. The tracks on the heavy machine chewed up the asphalt roadway.

20. Throughout the day, the Biros' were using the back hoe and the highlift to scrape and grade the parking lot. They appeared to randomly scrape back and forth and all around displacing any contaminated soil from the fire and spreading and mixing it throughout the rest of the front area and throughout a couple acres of area.

21. Attached is a picture I took of the boulders and dirt that the Biros' brought in to remediate.

22. Also below is a schedule of items damaged by the Biros family.

Dated this 15th day of July 2022.

*/s/ George Snyder*

SCHEDULE OF ITEMS DAMAGED, DESTROYED, OR DISCARDED WITHOUT NOTICE

I.    Items listed on the bankruptcy schedules

1.  *Barrels*
2.  *10 Rv tanks*
3.  *600 Gallon Tank*

II.  Items Belonging Personally to George Snyder

1.  A few pallets of eagle shelving belonging to George Snyder. Valued at $1,200 each times 8.
2.  Pallet of Weight equipment accessories
3.  (3) 10 speed bicycles
4.  Fiberglass shower surround
5.  Vanity mirrored medicine cabinet
6.  Store Shelving
7.  Bay window
8.  Fitness equipment hanging ab straps
9.  Washing machine
10. Pallets of brick and stone
11. Building materials
12. Garbage cans
13. Set of Forks for forklifts
14. 2 propane grills

III. Items belonging to third-parties present on the premises

1.  *Motorcycle belonging to tenant*
2.  *Tractor belonging to tenant*
3.  *Truck Rack*
4.  *Vintage chalk/music board*
5.  *Vintage podium*
6.  *(12) Vintage custom wooden radiator covers*
7.  *(8) Vintage solid wooden doors*
8.  *(12) Baseboard hot water heaters*
9.  *Truck fender*
10. *Truck core support*
11. *Antique custom table with decorative steel base*
12. *Building materials*
13. *Wheel barrow*
14. *Reel lawn mower*
15. *Ceiling fans*
16. *Cooler*
17. *Transmission*
18. *File cabinet*

SOME OF THE BOULDERS AND DIRT BROUGHT BY THE BIROS FAMILY AND

DUMPED MAKING ACCESS DIFFICULT



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a )
U-LOCK INC. )        Bankruptcy 22-20823-GLT
)
                    Debtor. )        Chapter 7
)
—-------------------------------------------- )

<u>EXHIBITS IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 11,
SUBPART V</u>

The attached exhibits will be referenced at the hearing on the Motionto

Convert from Chapter 7 to 11, Subpart V and other matters scheduled for

August 9, 2022.  These exhibits are being provided in advance pursuant to

Paragraph 11 of the General Procedures Established for Cases Assigned to

Judge Gregory L. Taddonio.

Respectfully submitted,

*/s/ J. Allen Roth, Esq.*

_____
J. Allen Roth, Esq. (PA ID 30348)
805 S. Alexandria Street
Latrobe PA  15650
(724) 537-0939
lawmatters@yahoo.com

COUNSEL FOR DEBTOR U LOCK INC.

# COMMERCIAL LINES COMMON POLICY DECLARATIONS

**INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BY AN "X":** Stock Company

☐ **PENN-AMERICA INSURANCE COMPANY**

☐ **PENN-STAR INSURANCE COMPANY**

☒ **PENN PATRIOT INSURANCE COMPANY**     -- **State Control Number**

**Bala Cynwyd, Pennsylvania  19004**

**NEW**

Renewal of Number

Rewrite of Number

**POLICY NUMBER:** PAV0389594

1. **NAMED INSURED:** ULOCK INC
   **DBA:**

   **MAILING ADDRESS:** 14140 STATE ROUTE 30

   North Huntingdon, PA  15642

2. **POLICY PERIOD:** From ___July 22, 2022___ To ___July 22, 2023___ at 12:01 A.M. Standard Time at your mailing address shown above.

3. **FORM OF BUSINESS:** Corporation     **OTHER DESC:**

4. **BUSINESS DESCRIPTION:** MINI-WAREHOUSES

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

5. **THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $ 891.00 |
| Commercial Property Coverage Part | $ 1,836.00 |
| Commercial Crime Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Professional Liability Coverage Part | $ NOT COVERED |
| Liquor Liability Coverage Part | $ NOT COVERED |
| Commercial Umbrella Coverage Part | $ NOT COVERED |
| Owners Contractors Protective Coverage Part | $ NOT COVERED |
| TRIA | $ NOT COVERED |

6. | **TOTAL PREMIUM PAYABLE AT INCEPTION** | $ 2,727.00 |
|---|---|
| Policy Fee | $ 150.00 |
| Surplus Lines Tax | $ 80.13 |
| Inspection Fee | $ 150.00 |
| Stamping Fee | $ 20.00 |
| | $ |
| | $ |
| Other: | $ |
| **TOTAL** | $ 3,127.13 |

7. **FORM(S) AND ENDORSEMENT(S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:***

   ___AS PER FORM S1007 (12/2000) SCHEDULE OF FORMS AND ENDORSEMENTS ATTACHED___

   *Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

**THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

**Agency Code:** 02714
USG Insurance Services, Inc. - Canonsburg
1000 Town Center Way
Canonsburg, PA  15317
ak          07/25/2022

**By**          **Authorized Representative**

**Appendix Vol. II, Page 133**

**COMMERCIAL LINES COMMON POLICY DECLARATIONS**
**SCHEDULE OF FORMS AND ENDORSEMENTS**

| POLICY NUMBER: | NAMED INSURED: |
|---|---|
| PAV0389594 | ULOCK INC |

<u>Form / Endorsement No. / Edition Date</u>

```
COMMON POLICY

NAA105    [05-22]          GLOBAL INDEMNITY PRIVACY NOTICE
NAA238    [05-22]          IMPORTANT NOTICE FOR POLICYHOLDERS REGARDING
                           PUBLIC HEALTH EMERGENCY
NAA169    [05-22]          CLAIMS REPORTING PROCEDURES
S1100     [09-16]          PENN-AMERICA COMMON POLICY DECLARATIONS
IL0017    [11-98]          COMMON POLICY CONDITIONS
IL0021    [09-08]          NUCLEAR ENERGY LIABILITY EXCLUSION
                           ENDORSEMENT
IL0120    [10-13]          PA CHANGES - DEFENSE COSTS
IL0910    [07-02]          PA NOTICE
EAA204    [02-15]          PA SERVICE OF SUIT
EAA100    [01-12]          IN WITNESS CLAUSE
EAA146    [12-09]          TERRORISM EXCLUSION
S1003     [08-91]          MINIMUM EARNED PREMIUM
S2003     [08-02]          PA COMBINED PROVISIONS ENDORSEMENT
PA01230   [04-90]          ASBESTOS EXCLUSION
IL0003    [09-08]          CALCULATION OF PREMIUM
IL0985    [12-20]          DISCLOSURE PURSUANT TO TERRORISM RISK
                           INSURANCE ACT
EPA1739   [06-15]          CHANGES - ACTUAL CASH VALUE

COMMERCIAL GENERAL LIABILITY

S2000     [06-01]          GL COVERAGE PART DECLARATIONS
CG0001    [04-13]          CGL COVERAGE FORM
CG2107    [05-14]          EXCLUSION - ACCESS OR DISCLOSURE OF
                           CONFIDENTIAL OR PERSONAL INFORMATION AND
                           DATA-RELATED LIABILITY - LIMITED BODILY
                           INJURY EXCEPTION NOT INCLUDED
CG2109    [06-15]          EXCLUSION - UNMANNED AIRCRAFT
CG2147    [12-07]          EMPLOYMENT RELATED PRACTICES EXCL
CG2155    [09-99]          TOTAL POLLUTION EXCLUSION WITH A HOSTILE
                           FIRE EXCEPTION
CG2132    [05-09]          COMMUNICABLE DISEASE EXCLUSION
CG2167    [12-04]          FUNGI OR BACTERIA EXCLUSION
CG2196    [03-05]          SILICA OR SILICA-RELATED DUST EXCLUSION
CG2229    [11-85]          EXCL - PROPERTY ENTRUSTED
CG2426    [04-13]          AMENDMENT OF INSURED CONTRACT DEFINITION
EPA1631   [01-18]          TOTAL EXCLUSION - PROFESSIONAL SERVICES
EPA1691   [09-12]          ANTI-STACKING ENDORSEMENT
EPA1833   [01-18]          NONCOOPERATION WITH AUDIT
EPA2016   [03-22]          EXCLUSION - CYBER AND DATA LIABILITY
CG4014    [12-19]          CANNABIS EXCLUSION

COMMERCIAL PROPERTY

S3000     [08-09]          COMMERCIAL PROPERTY COVERAGE PART
```

**Appendix Vol. II, Page 134**

**COMMERCIAL LINES COMMON POLICY DECLARATIONS**
**SCHEDULE OF FORMS AND ENDORSEMENTS**

| POLICY NUMBER: | NAMED INSURED: |
|---|---|
| PAV0389594 | ULOCK INC |

<u>Form / Endorsement No. / Edition Date</u>

```
                                        DECLARATIONS
CP0010     [10-12]                      BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CP0090     [07-88]                      COMMERCIAL PROPERTY CONDITIONS
CP0140     [07-06]                      EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
CP1030     [09-17]                      CAUSE OF LOSS - SPECIAL FORM
CP1033     [10-12]                      THEFT EXCLUSION
CP1075     [12-20]                      CYBER INCIDENT EXCLUSION
CP9903     [12-19]                      CANNABIS EXCLUSION
EPA1925    [12-18]                      SINKHOLE COLLAPSE EXCLUSION
```

**Appendix Vol. II, Page 135**

RESOLUTION OF U LOCK INC.

At a meeting of the shareholders on June 30, 2022, in Westmoreland County, Pennsylvania:

WHEREAS, Shanni Snyder commenced an involuntary bankruptcy under Chapter 7 of the Bankruptcy Court which, because of a lack of defense to the allegation of insolvency, it did not answer, and as the Corporation is insolvent and unable to pay its debts when due,

and WHEREAS, the Corporation and its creditors would best be served by reorganization of the Corporation under Chapter 11 of the Bankruptcy Code, Subchapter V, Small Business Reorganization, considering that benefit to the creditors and the Company would be best had by invoking the Pennsylvania Uniform Voidable Transactions Act or similar avoidance and preferential transfer laws available under the bankruptcy code and federal law to void the purported involuntary transfer of U Lock's property, obtain available financing, and pay the creditors in full, it is hereby:

RESOLVED, that the Corporation authorizes as soon as practicable counsel J Allen Roth to convert the case to reorganization pursuant to Chapter 11 of the Bankruptcy Code, Subchapter V, Small Business Reorganization.  The Corporation consents to reorganization.

Present:    George Snyder    345,000,000 outstanding shares
            Kash Snyder       75,000,000 outstanding shares (telephonically)

Quorum:  98.82% of shareholders voting for resolution.  1.18% not present.

The undersigned hereby certifies that he is  the custodian of the books and records of U Lock Inc., a corporation duly formed pursuant to the laws of the Commonwealth of Pennsylvania, and that the foregoing is a true record of a resolution duly adopted at a meeting of the shareholders with a quorum present exceeding 98.82% of the outstanding share of U Lock's stock and that said resolution is now in full force and effect without modification or rescission.

_____
George Snyder
Majority shareholder

J. MICHAEL LEVESQUE

July 23, 2022

USAAG Systems

██████████████

Glastonbury, CT  06033

J. Allen Roth, Esq.
805 S. Alexandria
Latrobe, PA  15650

Robert Slone, Esq.
223 South Maple Avenue
Greensburg, PA  15601

      In re:  U Lock, No. 22-20823 (Bk. W.D. Pa.)

Gentlemen,

I have visited the U Lock site several times over the past few years and am familiar with the location and property.

I am aware that USAAG has tentatively agreed to inject sufficient capital into U Lock Inc. to allow it to pay off all of its creditors the amounts they are due in full pursuant to a prospective bankruptcy plan.

In the event the United States Bankruptcy Court for the Western District of Pennsylvania allows U Lock Inc. to reorganize and to secure its assets lien free, I will accept the position as President of U Lock Inc.

Through my experience as a former Mayor of West Warwick, Rhode Island, a town with almost the exact population as North Huntingdon, Pennsylvania, along with other governmental and real estate experience, I believe U Lock can become prosperous fairly quickly.  Under my guidance and direction, U Lock will be debt free, supervised, compliant, and profitable.

Yours truly,

J. Michael Levesque

WARWICK    RHODE ISLAND    ██████    USA

**Appendix Vol. II, Page 137**

## J. Michael Levesque



Warwick, RI
USA

**PERSONAL**

Born ███████, 1953
Kent County Memorial Hospital – Warwick, RI
Son of Arthur A. and Gloria (Paull) Levesque (Deceased)
Married to the former Celeste A. Vanasse and father of three children: Lindsay-Mae; July 1, 1977, Zachary Paull; August 11, 1980 and Aubrey Elizabeth; July 28, 1989

**EDUCATION**

| | | |
|---|---|---|
| 1975 | Bachelor of Arts Degree – Political Science | |
| | St. Michael's College, Colchester, Vermont | |
| 1971 | High School Diploma – College Preparatory | |
| | Bishop Hendricken High School, Warwick, RI   02886 | |
| 1967 | Grammar School | |
| | St. James School, West Warwick, RI   02893 | |

**ORGANIZATIONS**

Involved in a wide range of civic organizations as well as fundraising activities for community-based organizations.
Licensed Real Estate Agent
Notary Public
Newspaper columnist and Associate Publisher of The Rhode Island Echo
Political Analyst for WJAR-TV on occasion

**POLITICAL AND GOVERNMENTAL OFFICES AND AFFILIATIONS**

| | | |
|---|---|---|
| 2020+ | BOARD MEMBER | RI Heritage Hall of Fame |
| 2015 | BOARD MEMBER | NE Group Foundation |
| 2015 | MEMBER | Station Fire Advisory Committee |
| 2013 | CO-CHAIRMAN | West Warwick Centennial Ball |
| 1998-2006 | CO-FOUNDER | Narragansett Indian Casino Drive |
| 1998-2002 | CO-CHAIR | West Warwick 2000 |
| 1990-1992 | MEMBER | Children's Crusade Board |
| 1986-1992 | MEMBER | Industry-Education-Labor Council of RI |
| 1986-1987 | MEMBER | RI Adult Education Literacy Council |
| 1986-1987 | MEMBER | RI Strike Force for Literacy |
| 1979-1998 | MEMBER | West Warwick GOP Committee |
| 1986-1988 | MEMBER | Republican National Committee |
| 1986 | DELEGATE | White House Conference on Business |
| 1985-1986 | CHAIRMAN | West Warwick Charter Commission |

| 1982-1984 | MEMBER | West Warwick Town Council |
| 1980 | MEMBER | Davies Vocational School Advisory |
| 1980 | CHAIRMAN | RIGOP Energy Commission |
| 1979 | CHAIRMAN | West Warwick Alternate Tax Committee |
| 1977 | MEMBER | West Warwick Charter Review Committee |

## SPECIAL AWARDS

| 1991-1992 | PRESIDENTIAL APPOINTMENT |
| | Reappointed by President Bush to the National Commission for Employment Policy |
| 1990 | PRESIDENTIAL APPOINTMENT |
| | Appointed by President Bush to the United States Presidential Observer Delegation to the National elections in Haiti |
| 1989-1991 | PRESIDENTIAL APPOINTMENT |
| | Appointed by President Reagan to the National Commission for Employment Policy |
| 1986 | PRESIDENTIAL APPOINTMENT |
| | Appointed by President Reagan as a Presidential Delegate (100 Nationwide) to the White House Conference on Small Business |

## AWARDS/HONORS

Various awards and honors from a variety of professional, governmental and civic organizations.

## EMPLOYMENT

2012-Present    PRINCIPAL
XM AMERICAS MANAGEMENT, LLC.
378 Main Street, East Greenwich, RI 02818
A principal in this company that is contracted to expand a major money remittance company based in the Middle East into the Americas and the Caribbean.

2007-Present    PRINCIPAL
CHURCHILL LINCOLN INTERNATIONAL, LLC.
378 Main Street, East Greenwich, RI 02818
A principal in this company that brings a wide range of companies, in a cross section of fields, to do business in the Middle East and North Africa.
Clients include major entertainment, construction related and financial companies, as well as North American companies in the energy business.

2003-Present    PRINCIPAL
THE LINCOLN GROUP, LLC.
461 Main Street, East Greenwich, RI 02818
Business consultant for various companies in a wide variety of fields.

Clients include companies involved in gaming, energy, solid waste management, construction, manufacturing, and government service, both domestically and internationally.

| | |
|---|---|
| 2001-2005 | DIRECTOR OF BUSINESS DEVELOPMENT<br>O. AHLBORG & SONS, INC.<br>48 Molter Street, Cranston, RI 02910<br>Responsible for all business development and public affairs for this large Rhode Island based construction company. |
| 1996-1998 | VICE PRESIDENT<br>CARDINAL INTERNATIONAL TRADE, LTD.<br>17 Industrial Drive, Smithfield, RI 02917<br>Involved in all areas of this international trade company whose main focus was on the manufacture, sale and distribution of Nicaraguan cigars. Duties included extensive travel throughout Latin America. |
| 1993-1996 | PRESIDENT<br>LEVESQUE ASSOCIATES, LTD.<br>920 Main Street, Coventry, RI 02816<br>A small consulting firm with an emphasis on privatization programs for developing countries in Latin America and the Pacific Rim. |
| 1988-1992 | MAYOR<br>TOWN OF WEST WARWICK, RHODE ISLAND<br>Was the first Mayor elected in the Town's history. Served two terms before accepting the Party's nomination to be a candidate for the office of Governor. |
| 1987-1988 | CHAIRMAN<br>RHODE ISLAND REPUBLICAN PARTY<br>Elected unanimously by the Rhode Island Republican State Central Committee to oversee Party activities. |
| 1987 | DIRECTOR<br>RHODE ISLAND DIVISION OF JOB DEVELOPMENT AND TRAINING/STATE JTPA LIASON<br>Responsible for the administration of all areas of the federally funded Job Training Partnership Act for the State of Rhode Island. Served also as liaison to the United States Department of Labor. |
| 1977-1985 | VICE PRESIDENT<br>CRYSTALITE EMBEDMENTS, INC.<br>6 Industrial Drive, Smithfield, RI 02917<br>Concerned with all areas of this plastic manufacturing corporation. Duties included extensive travel throughout the US and Canada. |



July 23, 2022


J. Allen Roth, Esq.
805 S. Alexandria
Latrobe, PA  15650

Robert Slone, Esq.
223 South Maple Avenue
Greensburg, PA 15601

      In re:  U Lock, No. 22-20823 (Bk. W.D.Pa.)

Dear Mr. Roth and Mr. Slone:

In the event U Lock Inc. was able to reorganize and regain control of its assets through payment in full to its creditors, I would be pleased to participate on the Board of Directors of the reorganized enterprise.

I did visit U Lock Inc. in Pennsylvania, met with George Snyder, and familiarized myself with the area and potential development opportunities.  Through my experience and understanding of real estate, I can assist U Lock in its successful development.


Very truly yours,

*DP*

Don Parsons


cc:    USAAG

# DON PARSONS



don@98co...

**PROFILE**
With the ability to make unbiased decisions, manage numbers, and keep healthy percentage of profit for each company, Don has proven his ability to multi-task and complete the task at hand

**EXPERIENCE**

**Designated Broker/Owner, Cullinan Real Estate, Newport, RI — 2020-Present**
Cullinan burst onto the luxury marketplace in 2020 and has proven to become a threat to real estate agencies with more than 100 years of experience. Cullinan is a luxury real estate brand created to market and sell the most exclusive homes throughout the country. Currently preparing listings in RI, CA, CT, NY, PA, and WV, this company is destined to become the top luxury brand in country. Cullinan Real Estate has already acquired a portfolio of listings from top real estate developers throughout the country.

**Owner, Anytime Realty, Johnston, RI — 2014-Present**
Within seven years of its conception, Anytime Realty has gown to one of the top real estate firms in the state and specializes in residential and commercial brokerage with a staff of twenty plus seasoned agents. A healthy percentage of profit margin, and the ability to think on the fly and adjust with the changing market has allowed Anytime Realty to continue to be ranked highly in sales and customer service statistics.

**Owner, Moe's Moving & Storage, Smithfield, RI — 2020- Present**
Since its conception, Moe's Moving has grown from a single crew operation to a robust fleet of top of the line moving vehicles, and crew. Moe's Moving has swiftly become the exclusive mover of many professional athletes, celebrities and top producing real estate agents, and has successfully completed long distance and local moves for thousands of clients. Currently holding licenses throughout the US and in RI, MA, CT, NH, and FL, Moe's Moving has the ability to grow. Moe's operates a state of the art warehouse facility and with the current staff and crew in place, Moe's Moving has over 30 years of combined experience and expertise in the moving and storage industry.

**Owner, Pure Water Transport, Coventry, RI — 2021-Present**
Acquired with 50 years of business knowledge and experience as the top water transport company within the state of Rhode Island, Pure Water

Transport is currently operating in RI, MA and CT.  With new management and an updated fleet of trucks, Pure Water Transport is poised to be the exclusive water transport company in the tri-state area.

**Keynote Speaker, Bryant University and Providence College — Present**
Over the last decade, Don has been an honored guest at some of the most prestigious business colleges throughout Rhode Island as a keynote speaker. With a passion for education and entrepreneurship, his speeches have inspired and lead young business professionals to greatness.  As a mentor, Don has taken a serious role in the education of up and coming entrepreneurs.

**EDUCATION AND ACCOLADES**
**Greater Providence Board of REALTORS — President, 2020**
**Greater Providence Board of REALTORS — REALTOR of the year, 2017**
**Rhode Island Association of REALTORS- Board of Directors**
**Greater Providence Board of REALTORS — Board of Directors**
**Make-A-Wish Board of Directors**
**Bryant University, Leadership Excellence Certificate Program, 2019**
**National Association of REALTORS — Certified Instructor**
**Rhode Island Association of REALTORS — Certified Instructor**

**SKILLS**
Don brings to the table the ability to take a hand's on approach in the management of multiple businesses.  He also possesses a large network of connections including politicians, business owners, and entrepreneurs.  With extensive experience in marketing and negotiations, he is able to lead a company to success.  The ability to adapt with movement in the markets has allowed Don to grow each business substantially.  He possesses an international reach with contacts in the Middle East, and throughout the country including major key cities such as Boston, New York, Miami, Los Angeles, Aspen and Houston.



**USAAG SYSTEMS CO**

**GLASTONBURY CT**

July 12, 2022

J. Allen Roth, Esq.
805 S. Alexandria Street
Latrobe PA  15650

In re:          Confidential Letter of Intent
                 14140 U.S. 30, North Huntingdon, Pennsylvania

Dear Mr. Roth:

USAAG Systems Co. is an accredited investor.  It has fully reviewed the *U Lock* bankruptcy matter along with certain lawsuits filed in the Court of Common Pleas of Westmoreland County.

USAAG Systems Co. is willing to infuse the capital necessary for U Lock to either emerge from bankruptcy or have its bankruptcy dismissed,, satisfy the unsecured loan Ms. Biros provided to U Lock Inc. along with fair interest.  We would  provide the seed money and assistance for U Lock to either develop the property or enter into a joint venture to develop the property.  USAAG Systems Co. would expect to receive at least a seventy-five percent (75%) equity stake in U Lock Inc. to do so.

Alternatively, USAAG Systems Co. is willing to provide U Lock a mortgage to pay Ms. Biros the funds along with interest.  USAAG would provide terms and guidance for U Lock to enable U Lock to develop the property.

However, as USAAG Systems Co. must be able to provide U Lock with seed capital and cover other expenses, this Letter of Intent is contingent upon Ms. Biros receiving no more than the actual amount she provided,any property taxes she paid between 2015 and present, along with the capped Pennsylvania simple interest rate of six percent (6%).   *Furthermore, we cannot consider compensation to Ms. Biros for the current remediation activities without first evaluating a site plan.*

Finally, we note our extreme concern relating to the dumping or development activities occurring on the property.  If it is found that these current activities caused significant environmental damage or would materially increase the costs of simple remediation, we reserve the right to modify or rescind this offer.

The funds earmarked for this project are liquid, deposited in an FDIC insured bank, and ready to be transmitted to escrow or the bankruptcy trustee forthwith.

Very truly yours,

Dave Carter
Vice President

---Allen and George:
    This plan is flexible.  We could infuse the entire amount owed to all creditors including the Christine Biros unsecured loan and the Shanni Snyder judgment so long as its capped at what they are entitled to-- federal prejudgment or post-judgment.  In this case, based on calculations, we'd ask for 80% of the reorganized enterprise and the existing shareholders receive 20%.  We'd guide the reorganized company to develop nicely with Mike Levesque and Don Parsons on board.
                              --Dave

 **Citizens**™

US702 | BR002
ROP 450
P.O. Box 7000
Providence, RI 02940

**Savings Account Statement**

**Page 1 of 3**

Beginning July 01, 2022
through July 31, 2022

**Questions? Contact us today:**

📞 **CALL:**
Savings Account Customer Service
1-800-922-9999

🖥 **VISIT:**
Access your account online:
citizensbank.com

✉ **MAIL:**
Citizens
Customer Service Center
P.O. Box 42001
Providence, RI 02940-2001

USA AG SYSTEMS CO
████████████████████
GLASTONBURY CT ███████

**USA AG SYSTEMS CO**


**Business Savings for** ████████████████

| Balance Calculation | | |
| --- | --- | --- |
| Previous Balance | | 850,808.47 |
| Withdrawals & Debits | - | 499.00 |
| Deposits & Credit | + | .00 |
| Interest Paid | + | 7.22 |
| **Current Balance** | = | 850,316.69 |

| Balance | |
| --- | --- |
| Average Daily Balance | 850,373.85 |
| **Interest** | |
| Current Interest Rate | .01% |
| Annual Percentage Yield Earned | .01% |
| Number of Days Interest Earned | 31 |
| Interest Earned | 7.22 |
| Interest Paid This Year | 19.97 |

You can waive the monthly maintenance fee of $4.99 by maintaining a minimum daily balance of $500 in your account.
    Your minimum daily balance used to qualify this statement period is: $850,309
A New Account waiver is active on your account so monthly maintenance fees are not currently being assessed. Your first four monthly maintenance fees will be waived as a courtesy.

**TRANSACTION DETAILS FOR SAVINGS ACCOUNT ENDING 6498**

| Date | Amount | Description | Previous Balance |
| --- | --- | --- | --- |
| | | | **850,808.47** |
| 07/05 | 499.00 | ONLINE TRANSFER TO CHECKING 0024996386 | |
| 07/29 | 7.22 | Interest | |
| | | | **Total Transactions** |
| | | | - 491.78 |

Please See Additional Information on Next Page

Member FDIC ⌂ Equal Housing Lender

**Appendix Vol. II, Page 145**

## Business Savings

**Daily Balance**

| Date | Balance | Date | Balance | Date | Balance | | Current Balance |
|------|---------|------|---------|------|---------|---|----------------|
| 07/05 | 850,309.47 | 07/29 | 850,316.69 | | | = | **850,316.69** |

## NEWS FROM CITIZENS

Why wait for a statement to see your banking activity? Download our Mobile Banking App* today to see your account info when it is convenient for you. Plus, better manage your money with personalized insights in the app to better balance spending and saving.
*Wireless carrier charges may apply.





GARBAGE PUSHED IN MANHOLE



PILE CREATED DURING SO-CALLED REMEDIATION PROCESS (STILL THERE)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | |

<u>**DECLARATION OF GEORGE SNYDER IN REFERENCE TO CERTAIN
EQUIPMENT**</u>

I, George Snyder, declare and state under the penalty for perjury that the following is true and correct to the best of my knowledge, information and belief (28 USC 1746):

1.   My name is George Snyder.  I am the majority shareholder of U Lock Inc.

2.   I am providing this declaration to provide my knowledge to the Court, the Trustee, the creditors, and the parties as to certain information regarding a conflict between the schedules and a claim by creditor Glenn Mowry.

3.   As a way of background, my brother Kash Snyder assisted me with U Lock Inc.  He had been in an in-patient medical program for over the last month (and he is still in the in-patient program)  and my access to him has been extremely limited.  I have been trying to provide complete information and locate files on my own, which is difficult.

4.   On July 12, 2022, Trustee Robert Slone emailed U Lock's attorney, J. Allen Roth, Esq., and provided a list of items he noted during a walkthrough of the property with me and a third-party auctioneer.  Certain things were noticed that were not on the schedules and I advised Mr. Slone that they should be added.  Mr. Slone asked Attorney Roth to have me amend the schedules.  A copy of Mr. Slone's list is attached hereto as Exhibit A.

5.   While these items are not extremely valuable, I am working on an amendment, but I do not want to file several amendments, and have been waiting for more access to

**Appendix Vol. II, Page 150**

Kash Snyder to make sure I do not miss anything. I do not think any amendment will

materially alter the value of the physical items U Lock has an interest in. I am

addressing most of the items below.

6. On August 4, 2022, the Trustee provided a notarized claim by Glenn Mowry stating

that he owned certain items on the U Lock property. *See* Exhibit B.

7. Mr. Mowry's list contains similar language and order as to some items. *Compare*

Exhibits A to B. For instance,the last five items on both Mr. Mowry's list and the

Trustee's list are in the exact same order. It seems very clear to me that someone

provided Mr. Mowry with the list of items from the Trustee that is not contained on

the public record. While making the list public is not a problem to me, the order of

Mr. Mowry's list, especially the final five items, makes it seem like he just copied the

list from the Trustee. Ordinarily, a person claiming property would know what the

property is without someone providing them a list.

8. When U Lock purchased the property, these items were on said property. We were

informed by the sellers and their relatives that all items on the property would belong

to the purchaser.

9. Except as stated in the table below, at no time did Mr. Mowry claim the items or seek

to remove them. On the contrary, about three years ago, Mr. Mowry advised me

verbally that the only items he was seeking that were not in the rented spaces were

"final drives." After advising me of that, Mr. Mowry never returned about said "final

drives." However, on July 13, 2022, Andy Biros used a back hoe bucket and loaded

the final drives. Mr. Mowry asked me about the drives on July 13 as well. Later that

day, the final drives were no longer on the property. I did not witness the final drives

being removed, so I do not know if they were provided to Mr. Mowry or if Andy

Biros did something with them, or if they removed them together.

| TRUSTEE LIST AND NOTES EXHIBIT A | GLENN MOWRY LIST EXHIBIT B |
|---|---|
| | *1.    Ohio Body Mfg Trailer*<br><br>This item is listed on U Lock's schedules.  It has been present since 2015 and utilized. At no time did Mr. Mowry make any claim to this item. |
| | *2.   977 CAT Traxcavator 54A6822*<br><br>This item is listed on U Lock's schedules.  It has been present since 2015.. At no time did Mr. Mowry make any claim to this item. |
| | *3.    Drott Skid Shovel Model 16K3*<br><br>This item is listed on U Lock's schedules.  It has been present since 2015.. At no time did Mr. Mowry make any claim to this item. |
| *"4 trailers are listed:  are they mobile homes, box storage trailers, tag a long trailers (unclear description)"*<br><br>. | *4.  4 storage trailers"*<br><br>Mr. Mowry does not identify the "4 storage trailers." I believe it appears Mr. Mowry either simply copied the 4 trailers from the trustee's list or plans to identify the best 4 trailers as his. |
| | *5. Tractor trailer 201*<br><br>This item is listed on U Lock's schedules.  It has been present since 2015 and utilized. At no time did Mr. Mowry make any claim to this item. |
| *4 mobile homes (as is)*<br><br>The four mobile homes belong to U Lock. There are two mobile homes in the back that Robert Biros brought to the property in 2017 and placed there without paying rent. | |
| | |

**Appendix Vol. II, Page 152**

| | |
|---|---|
| | **6. Case 880C Excavator**<br><br>This item is listed on U Lock's schedules. It has been present since 2015. At no time did Mr. Mowry make any claim to this item. |
| | **7. Michigan 85 Front end Loader**<br><br>This item is listed on U Lock's schedules. It has been present since 2015. At no time did Mr. Mowry make any claim to this item. |
| *Red drop deck beaver tail lowboy trailer*<br><br>This trailer was on the property at the time U Lock acquired it. No claim was ever made to the trailer. We did not schedule it, although we would have lien rights pursuant to Section 4 of the Self-Service Storage Facility Act. | **8. Red Drop Deck Beaver tail low Boy Trailer**<br><br>I understand that type of trailer ordinarily has a title. If Mr. Mowry owns the trailer, he should be able to produce a title. Mr. Mowry should produce the title or request a duplicate. |
| *Cat 941 (no motor)* | **9. Cat High Lift 941 with no motor**<br><br>This machine was on the property at the time U Lock purchased it. |
| *2 boats on trailers*<br><br>These items are my personal boats and trailers. I bought one from a cab company in Pittsburgh and the other from Mr. Mowry during an auction he had before the purchase of the property. | |
| *55 gallon drums*<br><br>I will send Kash Snyder pictures of the drums to confirm if any belong to the estate. I believe many of the drums originated with Mr. Mowry along with his tires. | |
| *Clark pneumatic fork truck* | **10. Clark Pneumatic fork Truck**<br><br>Despite U Lock's lien on the items Mr. Mowry placed there, this item was removed by a tow truck on or about July 14, 2022 |

| | with Andy Biros and Mr. Mowry present. |
|---|---|
| *Red tri axle, no hood, no radiator, parts (last inspected 1999)* | *11. Red Tri Axle Diamond Rio with no hood/radiator parts*<br><br>This vehicle should have a registered title. I believe this vehicle is located on a property owned by a third-party (beyond U Lock's property line). |
| *1 lot misc. scrap* | *12. 1 lot misc scrap*<br><br>I am aware that Mr. Mowry had certain scrap on the premises. I also, and some other clients, had scrap there as well. It appears that Mr. Mowry simply copied the Trustee's list when making this claim. Without Mr. Mowry identifying his scrap, I cannot advise if it belongs to him, another client, U Lock, or myself. |
| *Ford F150 blue plow truck 49-302B21 (as is)* | *13. Ford F150 4x4 plow truck 49-302B21*<br><br>Obviously, all Ford F150s would have a title. On July 14, 2022, Mr. Mowry and Andy Biros removed this vehicle from the premises notwithstanding U Lock's lien. |
| *Grove? Mobile crane (as is)* | *14. Grove American Mobile Crane*<br><br>This was at U Lock's facility at the time of purchase. It was omitted from the schedule as an error. At no time prior to Mr. Mowry's August 4, 2022 notarized document did he claim this item. |

10. While I have no personal interest in withholding items that cannot be administered by U Lock's from lawful third-party owners, I have a personal interest in the "scrap" materials which I may or may not own. The description of "scrap" was taken directly from the trustee's list rather than Mr. Mowry providing information about what the scrap he owns is, so I cannot make a determination as to could plausibly belong to Mr. Mowry.

11.  I am also perplexed why Mr. Mowry kept these items on the property outside of his rented spaces for seven years without paying U Lock, specifically disavowed an interest in the items several years ago, and never claimed them previously..

12.  Finally, I believe that proper notice should be given to all of the interested parties and that lists of property should be provided to all of the creditors especially the storage customers, not just to Mr. Mowry.

Dated this 8th day of August, 2022.


_____

George Snyder

*7/12/22 — Visit to 14/40 us Rt. 30*

Additional items not on list at U Lock Rt 30 N. Huntingdon PA:

4 trailers are listed: are they mobile homes, box storage trailers, tag a long trailers????
(unclear description)

4 mobile homes (as is)

Red drop deck beaver tail lowboy trailer

Cat 941 (No Motor)

2 boats on trailers

55 gallon drums

Clark pneumatic fork truck

Red tri axle, no hood, no radiator, parts (last inspected 1999)

1 lot misc. scrap

Ford F150 blue plow truck 49-302B21 (as is)

Grove?  Mobile crane (as is)

EXHIBIT A -- List from the Trustee on July 12, 2022

I Glen Mowry, claim Trucks, Equipment and Trailers Located at
U lock Property at route 30 North Huntingdon, PA as my property.

1. Ohio Body Mfg Trailer  AXEV-1498
2. 977 CAT  Traxcavator  53A6822
3. Drott Skid Shovel Model 16K3
4. 4 storage Trailers
5. Tractor Trailer 201
6. Case 880C Excavator
7. Michigan 85 Front end Loader
8. Red Drop Deck Beaver tail low Boy Trailer
9. CAT High Lift 941 with no motor
10.    Clark Pneumatic fork Truck
11.    Red Tri Axle Diamond Rio with no hood/Radiator Parts
12.    1 lot Misc Scrap
13.    Ford F150  4 X 4 plow truck 49-302B21
14.    Grove American Mobile Crane

_____    8-4-22

_____
Notary

Commonwealth of Pennsylvania - Notary Seal
Marion Rayman, Notary Public
Westmoreland County
My commission expires September 8, 2022
Commission number 1134623
Member, Pennsylvania Association of Notaries

Exhibit B -- Claim from Glen Mowry

## ASSIGNMENT OF LEASES AND RIGHTS TO PERSONAL PROPERTY

**HENRY LEE MOORE AND SUSAN STANO, Co-Administrators,**
**Estate of Nicholas A. Schur;  CYNTHIA SARRIS, Administratrix,**
**Estate of Anne Sarris; DENISE SCHUR, Executrix, Estate of Alex Schur; and**
**KATHLEEN WALKER, Executrix, Estate of Michael Schur,**

**Assignors,** in consideration of one dollar ($1.00) and other good and valuable consideration paid by **U LOCK, INC.**, **Assignee,** hereby assign unto Assignee, their heirs, executors, administrators, successors, and assigns, all the right, title, and interest of Assignors in and to all leases concerning the buildings and storage and other structures, mobile homes, equipment, vehicles and other personal property located upon the real estate commonly known as 14140 Route 30, North Huntingdon Township, Westmoreland County, Pennsylvania 15642, and being more particularly described on the attached Exhibit "A":

TO HAVE AND TO HOLD the same unto Assignee from the date of this Assignment, subject to the rents, covenants, conditions, and provisions of any leases or rights of lessees or other owners, if any.

ASSIGNEE HEREBY ASSUMES the performance of all the terms covenants, and provisions of any leases, if any, hereby assigned, and will well and truly perform all the terms, covenants, and conditions of the said lease herein assigned; all with the same full force and effect as if Assignee had signed any lease originally as tenant named therein.

ASSIGNEE hereby agrees that Assignee will well and truly indemnify and save harmless the Assignor from all manner of suit, actions, damages, charges and expense including attorney and counsel fees, that Assignor may sustain by reason of Assignee's failure to so perform any lease or by reason of Assignee's breach of any of the terms, covenants, or conditions of any lease hereby assigned from and after the date of this Assignment.

IN WITNESS WHEREOF, Assignor and Assignee have caused these presents to be duly executed, intending to be legally bound hereby this _____14th_____ day of July, 2015.

WITNESS:                          ASSIGNORS:
                                 **HENRY LEE MOORE AND SUSAN STANO**
                                 **Co-Administrators,**
                                 **ESTATE OF NICHOLAS A. SCHUR**

_____          _____

_____          _____

EXHIBIT C -- Assignments of Leases

Exhibit "A"

**ALL** that certain parcel of land situate in North Huntingdon Township, Westmoreland County, Pennsylvania, bounded and described according to a property survey for Nick Schur, prepared by Barry E. Sakal, Land Surveyor, dated December, 1986, as follows, to wit:

Beginning at a point in the centerline of U.S. Route 30, at the dividing line between property now or formerly of Oddo-Keddie, Inc., and property herein described; thence S 24 degrees 0 minutes E, 335.11 feet to a point; thence S 63 degrees 26 minutes W, 175.60 feet to a point;  thence S 14 degrees 50 minutes E, 265.17 feet to a point; thence S 25 degrees 17 minutes E, 250 feet to a point; thence S 64 degrees 43 minutes W, 26.95 feet to a point; thence S 25 degrees 17 minutes E, 86.59 feet to a point; thence S 69 degrees 06 minutes W, 149.27 feet to a point; thence S 25 degrees 17 minutes E, 200 feet to a point; thence S 69 degrees 06 minutes W, 542.81 feet to a point; thence N 34 degrees 0 minutes W, 1,093.47 feet to a point; thence N 64 degrees 35 minutes E, 1,113.59 feet to a point, the place of beginning;

EXCEPTING AND RESERVING the out sale of property on February 27, 1989, described and recorded on March 14, 1989, in Deed Book Volume 2864, Pages 315 to 317, from Nicholas Schur, Margaret Schur, Ann Sarris, Alex Schur and Mildred Schur, his wife, and Michael Schur and Anne Schur, his wife, to James S. Whelan.

The premises hereby conveyed are subject to the following exceptions:

1. Unrecorded easements, discrepancies, or conflicts in boundary lines, shortages in areas or in encroachments, which an accurate survey would disclose.
2. Under and subject to conditions, restrictions, rights-of-way, and easements of record.
3. All previously conveyed or transferred oil, gas, coal, hydrocarbons and mining rights, and other leases and rights of way of record pertaining thereto.

**ALSO EXCEPTING AND RESERVING unto the Grantor, all of Grantors' interest in the coal, gas, oil, and all hydrocarbons  and all other minerals underlying the above-described land, whatever that interest may be.**

**BEING** Tax Map Number **54-03-10-0-103.**

_____                    _____
                                             **CYNTHIA SARRIS, Administratrix,**
                                             **Estate of Anne Sarris**

                                             _____
_____                    **DENISE SCHUR, Executrix,**
WILLIAM F. ROSS                              **Estate of Alex Schur**


_____                    _____
                                             **KATHLEEN S. WALTER, Executrix,**
                                             **Estate of Michael Schur**



                                             ASSIGNEE:

                                             **U LOCK, INC.**

                                             _____
                                                                      President


Attest:


_____
                  Secretary

## ASSIGNMENT OF LEASES AND RIGHTS TO PERSONAL PROPERTY

**HENRY LEE MOORE AND SUSAN STANO, Co-Administrators,**
**Estate of Nicholas A. Schur;  CYNTHIA SARRIS, Administratrix,**
**Estate of Anne Sarris; DENISE SCHUR, Executrix, Estate of Alex Schur; and**
**KATHLEEN WALKER, Executrix, Estate of Michael Schur,**

**Assignors,** in consideration of one dollar ($1.00) and other good and valuable consideration paid by **U LOCK, INC.**, **Assignee**, hereby assign unto Assignee, their heirs, executors, administrators, successors, and assigns, all the right, title, and interest of Assignors in and to all leases concerning the buildings and storage and other structures, mobile homes, equipment, vehicles and other personal property located upon the real estate commonly known as 14140 Route 30, North Huntingdon Township, Westmoreland County, Pennsylvania 15642, and being more particularly described on the attached Exhibit "A":

TO HAVE AND TO HOLD the same unto Assignee from the date of this Assignment, subject to the rents, covenants, conditions, and provisions of any leases or rights of lessees or other owners, if any.

ASSIGNEE HEREBY ASSUMES the performance of all the terms covenants, and provisions of any leases, if any, hereby assigned, and will well and truly perform all the terms, covenants, and conditions of the said lease herein assigned; all with the same full force and effect as if Assignee had signed any lease originally as tenant named therein.

ASSIGNEE hereby agrees that Assignee will well and truly indemnify and save harmless the Assignor from all manner of suit, actions, damages, charges and expense including attorney and counsel fees, that Assignor may sustain by reason of Assignee's failure to so perform any lease or by reason of Assignee's breach of any of the terms, covenants, or conditions of any lease hereby assigned from and after the date of this Assignment.

IN WITNESS WHEREOF, Assignor and Assignee have caused these presents to be duly executed, intending to be legally bound hereby this _____ day of July, 2015.

WITNESS:                    ASSIGNORS:
                            **HENRY LEE MOORE AND SUSAN STANO**
                            **Co-Administrators,**
                            **ESTATE OF NICHOLAS A. SCHUR**

_____      _____


_____      _____

**Appendix Vol. II, Page 161**

Exhibit "A"

**ALL** that certain parcel of land situate in North Huntingdon Township, Westmoreland County, Pennsylvania, bounded and described according to a property survey for Nick Schur, prepared by Barry E. Sakal, Land Surveyor, dated December, 1986, as follows, to wit:

Beginning at a point in the centerline of U.S. Route 30, at the dividing line between property now or formerly of Oddo-Keddie, Inc., and property herein described; thence S 24 degrees 0 minutes E, 335.11 feet to a point; thence S 63 degrees 26 minutes W, 175.60 feet to a point; thence S 14 degrees 50 minutes E, 265.17 feet to a point; thence S 25 degrees 17 minutes E, 250 feet to a point; thence S 64 degrees 43 minutes W, 26.95 feet to a point; thence S 25 degrees 17 minutes E, 86.59 feet to a point; thence S 69 degrees 06 minutes W, 149.27 feet to a point; thence S 25 degrees 17 minutes E, 200 feet to a point; thence S 69 degrees 06 minutes W, 542.81 feet to a point; thence N 34 degrees 0 minutes W, 1,093.47 feet to a point; thence N 64 degrees 35 minutes E, 1,113.59 feet to a point, the place of beginning;

EXCEPTING AND RESERVING the out sale of property on February 27, 1989, described and recorded on March 14, 1989, in Deed Book Volume 2864, Pages 315 to 317, from Nicholas Schur, Margaret Schur, Ann Sarris, Alex Schur and Mildred Schur, his wife, and Michael Schur and Anne Schur, his wife, to James S. Whelan.

The premises hereby conveyed are subject to the following exceptions:

1. Unrecorded easements, discrepancies, or conflicts in boundary lines, shortages in areas or in encroachments, which an accurate survey would disclose.
2. Under and subject to conditions, restrictions, rights-of-way, and easements of record.
3. All previously conveyed or transferred oil, gas, coal, hydrocarbons and mining rights, and other leases and rights of way of record pertaining thereto.

**ALSO EXCEPTING AND RESERVING** unto the Grantor, all of Grantors' interest in the coal, gas, oil, and all hydrocarbons and all other minerals underlying the above-described land, whatever that interest may be.

**BEING** Tax Map Number **54-03-10-0-103.**

_____      **CYNTHIA SARRIS, Administratrix,**
                             **Estate of Anne Sarris**


_____      **DENISE SCHUR, Executrix,**
                             **Estate of Alex Schur**

*7-15-2015*  *Kathleen S Walter, Executrix*
                             **KATHLEEN S. WALTER, Executrix,**
                             **Estate of Michael Schur**



                             ASSIGNEE:

                             **U LOCK, INC.**


                             _____
                                                       President


Attest:

_____
                   Secretary

## ASSIGNMENT OF LEASES AND RIGHTS TO PERSONAL PROPERTY

**HENRY LEE MOORE AND SUSAN STANO, Co-Administrators,
Estate of Nicholas A. Schur; CYNTHIA SARRIS, Administratrix,
Estate of Anne Sarris; DENISE SCHUR, Executrix, Estate of Alex Schur; and
KATHLEEN WALKER, Executrix, Estate of Michael Schur,**

**Assignors,** in consideration of one dollar ($1.00) and other good and valuable
consideration paid by **U LOCK, INC., Assignee,** hereby assign unto Assignee, their
heirs, executors, administrators, successors, and assigns, all the right, title, and interest of
Assignors in and to all leases concerning the buildings and storage and other structures,
mobile homes, equipment, vehicles and other personal property located upon the real
estate commonly known as 14140 Route 30, North Huntingdon Township, Westmoreland
County, Pennsylvania 15642, and being more particularly described on the attached
Exhibit "A":

TO HAVE AND TO HOLD the same unto Assignee from the date of this
Assignment, subject to the rents, covenants, conditions, and provisions of any leases or
rights of lessees or other owners, if any.

ASSIGNEE HEREBY ASSUMES the performance of all the terms covenants,
and provisions of any leases, if any, hereby assigned, and will well and truly perform all
the terms, covenants, and conditions of the said lease herein assigned; all with the same
full force and effect as if Assignee had signed any lease originally as tenant named
therein.

ASSIGNEE hereby agrees that Assignee will well and truly indemnify and save
harmless the Assignor from all manner of suit, actions, damages, charges and expense
including attorney and counsel fees, that Assignor may sustain by reason of Assignee's
failure to so perform any lease or by reason of Assignee's breach of any of the terms,
covenants, or conditions of any lease hereby assigned from and after the date of this
Assignment.

IN WITNESS WHEREOF, Assignor and Assignee have caused these presents to
be duly executed, intending to be legally bound hereby this __JULY 16__ day of
July, 2015.

WITNESS:                          ASSIGNORS:
                                  **HENRY LEE MOORE AND SUSAN STANO
                                  Co-Administrators,
                                  ESTATE OF NICHOLAS A. SCHUR**

_____          _Henry Lee Moore_ CO-ADM

_____          _____

Exhibit "A"

**ALL** that certain parcel of land situate in North Huntingdon Township, Westmoreland County, Pennsylvania, bounded and described according to a property survey for Nick Schur, prepared by Barry E. Sakal, Land Surveyor, dated December, 1986, as follows, to wit:

Beginning at a point in the centerline of U.S. Route 30, at the dividing line between property now or formerly of Oddo-Keddie, Inc., and property herein described; thence S 24 degrees 0 minutes E, 335.11 feet to a point; thence S 63 degrees 26 minutes W, 175.60 feet to a point; thence S 14 degrees 50 minutes E, 265.17 feet to a point; thence S 25 degrees 17 minutes E, 250 feet to a point; thence S 64 degrees 43 minutes W, 26.95 feet to a point; thence S 25 degrees 17 minutes E, 86.59 feet to a point; thence S 69 degrees 06 minutes W, 149.27 feet to a point; thence S 25 degrees 17 minutes E, 200 feet to a point; thence S 69 degrees 06 minutes W, 542.81 feet to a point; thence N 34 degrees 0 minutes W, 1,093.47 feet to a point; thence N 64 degrees 35 minutes E, 1,113.59 feet to a point, the place of beginning;

EXCEPTING AND RESERVING the out sale of property on February 27, 1989, described and recorded on March 14, 1989, in Deed Book Volume 2864, Pages 315 to 317, from Nicholas Schur, Margaret Schur, Ann Sarris, Alex Schur and Mildred Schur, his wife, and Michael Schur and Anne Schur, his wife, to James S. Whelan.

The premises hereby conveyed are subject to the following exceptions:

1. Unrecorded easements, discrepancies, or conflicts in boundary lines, shortages in areas or in encroachments, which an accurate survey would disclose.
2. Under and subject to conditions, restrictions, rights-of-way, and easements of record.
3. All previously conveyed or transferred oil, gas, coal, hydrocarbons and mining rights, and other leases and rights of way of record pertaining thereto.

**ALSO EXCEPTING AND RESERVING unto the Grantor, all of Grantors' interest in the coal, gas, oil, and all hydrocarbons and all other minerals underlying the above-described land, whatever that interest may be.**

**BEING** Tax Map Number **54-03-10-0-103**.

**CYNTHIA SARRIS, Administratrix,**
**Estate of Anne Sarris**

_____

**DENISE SCHUR, Executrix,**
**Estate of Alex Schur**

_____

**KATHLEEN S. WALTER, Executrix,**
**Estate of Michael Schur**


ASSIGNEE:

**U LOCK, INC**.

_____
                                    President


Attest:

_____
                   Secretary

FILED
8/15/22 3:34 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                      .    Case No. 22-20823-GLT
                            .
                            .
U LOCK INC,                 .    5414 U.S. Steel Tower
                            .    600 Grant Street
                            .    Pittsburgh, PA 15219
          Debtor.          .
                            .    August 9, 2022
. . . . . . . . . . . . ..      2:14 p.m.

TRANSCRIPT OF [#14] CONTINUED EXPEDITED MOTION TO DISMISS CASE,
     IN ADDITION TO MOTION FOR SANCTIONS AGAINST PETITIONING
CREDITOR, OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY, OR
  IN THE ALTERNATIVE MOTION TO ABANDON THE MOVANTS PROPERTY;
  [#36] ORDER GRANTING CHRISTINE BIROS LIMITED RELIEF FROM THE
    STAY; [#86] NOTICE REGARDING NON-COMPLIANCE AS DIRECTED BY
PARAGRAPH 12 OF THE ORDER AT ENTRY 36; [#53] MOTION TO CONVERT
CASE FROM CHAPTER 7 TO 11; [#102] EXHIBITS TO BE REFERENCED AT
                     HEARING ON 8/9/22
          BEFORE HONORABLE GREGORY L. TADDONIO
          UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Law Office of J. Allen Roth
                         By:  J. ALLEN ROTH, ESQ.
                         805 S Alexandria Street
                         Latrobe, PA 15650

For Christine Biros:     Bernstein-Burkley, P.C.
                         By:  SARAH ELIZABETH WENRICH, ESQ.
                         601 Grant Street, 9th Floor
                         Pittsburgh, PA 15219


ECRO:                    Hayley Smith


 Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311      Fax No. (609) 587-3599

2

APPEARANCES (Cont'd):

For Christine Biros in          The Law Firm of William E. Otto
the State Court Action:         By:  WILLIAM E. OTTO, ESQ.
                                P.O. Box 701
                                Murrysville, PA 15668

For Shanni Snyder,              By:  SHANNI SNYDER, PRO SE
Petitioning Creditor:           14390 Route 30, Unit H
                                North Huntingdon, PA 15642

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:              Mahady & Mahady
                                By:  ROBERT H. SLONE, Trustee
                                223 South Maple Avenue
                                Greensburg, PA 15601

Chapter 7 Trustee for           Zebley Mehalov & White, P.C.
Shanni Snyder acting as         By:  CHARLES O. ZEBLEY, JR., ESQ.
Creditor:                       P.O. Box 2124
                                Uniontown, PA 15401

- - -

**Appendix Vol. II, Page 168**

3

1          THE COURT:  All right.  The next matter is Case

2    Number 22-20823, U LOCK INC.

3          I'm going to take appearances first here in the --

4    I'll start over here, appearances for the debtor.

5          MR. ROTH:  I'm sorry.

6          THE COURT:  Would you like to enter your appearance,

7    please?

8          MR. ROTH:  Allen Roth on behalf of debtor.  Good

9    afternoon.

10          THE COURT:  And this is Mr. Snyder?

11          MR. SNYDER:  Yes, it is.

12          THE COURT:  All right.  Good afternoon.

13          MS. SNYDER:  Shanni Snyder for myself.  Your Honor,

14    would you like us to keep masks on, or are they okay off?

15          THE COURT:  If you're comfortable, you can remove

16    them, as long as you're distant from everyone else.

17          MS. SNYDER:  Thank you, Your Honor.

18          THE COURT:  All right.  I'll take appearances over

19    here.

20          MS. WENRICH:  Hi, Your Honor.  Sarah Wenrich here on

21    behalf of Christine Biros.  I'm also here with Ms. Biros, as

22    well as William Otto.

23          THE COURT:  All right.  Good afternoon.  All right.

24    Let me take appearances by video, please.

25          MR. SLONE:  Robert Slone, Chapter 7 Trustee for

**Appendix Vol. II, Page 169**

1  U LOCK.

2         THE COURT:  Good afternoon.

3         MR. ZEBLEY:  Your Honor, Charles Zebley.  I'm the

4  Chapter 7 Trustee for Shanni Snyder.  We would be here as a

5  creditor.

6         THE COURT:  All right.  Good afternoon.  Any other

7  appearances on the Zoom call?

8                (No audible response)

9         THE COURT:  All right.  We are here on a number of

10 matters.  I have a continued hearing on the expedited motion to

11 dismiss the case, or in addition for sanctions against the

12 petitioning creditor, or a motion for relief from stay filed by

13 Christine Biros.

14        I have a notice regarding a non-compliance with my

15 order granting limited stay relief that was filed by U LOCK at

16 Docket Number 86.

17        In addition, this is also the time set for the

18 hearing on the motion to convert the case from Chapter 7 to

19 Chapter 11 filed by the debtor, U LOCK, and I have responses in

20 opposition by Christine Biros and Trustee Slone.

21        And last, but not least, I think it's worth noting

22 that I have two adversary proceedings that were filed, as well;

23 an Adversary Number 22-2048 by U LOCK against Christine Biros

24 for a stay violation, as well as an Adversary Number 22-2052,

25 which was by Shanni Snyder against U LOCK for a declaratory

1  judgment.  I also have a motion to intervene filed by Ms.

2  Snyder in Adversary 22-2048.

3         So, you have all kept yourselves quite busy since we

4  were last together, and I have a number of items to tend to,

5  and I think we will need to go through them with some care.

6  But let me first get an update from the Chapter 7 Trustee, Mr.

7  Slone, on where things are from his perspective, and then I

8  want to get into the notice of non-compliance.  Trustee Slone.

9         MR. SLONE:  Can you hear me?

10        THE COURT:  I can.

11        MR. SLONE:  Your Honor, so far I've received from the

12  debtor $1895.  That was the monies that they had from different

13  rents, et cetera, some sales.  That money has been deposited.

14        I also got all the bank statements for the January 1,

15  2022 to June 30, 2022, and it shows the gross deposits of

16  $2,610, and that's for the six-month period, Your Honor.

17        The bankruptcy schedule said that the gross revenue

18  was $8,400.  I don't know where the other money was, or is.

19  The -- also, the Official Form 207 reports the gross revenues

20  for 2021 at 13,200, and the year 2020 at 12,000.  So, it's not

21  a lot of business being handled in this case, Your Honor.

22        I've taken Mr. Mark Ferry, an auctioneer and

23  liquidator, down to the site.  We went through with George

24  Snyder, looked at all the assets.  The amount of assets that

25  are owned, or claimed to be owned, by U LOCK at this time is

**Appendix Vol. II, Page 171**

6

1  not a lot, Your Honor.  In fact, Mr. Ferry would not conduct an

2  auction down there, and he thought the best thing to do would

3  be to get a surplus guy down there to hunt for the metal.

4  There's not a lot of value there at this time, Your Honor.

5       In looking at a lot of the pleadings that were filed,

6  I've sent letters out to all the people that had rented down

7  there asking them to pay money, what monies that they owed,

8  which were according to the information I received from U LOCK.

9       Now, the one problem is, there are no leases, and

10  little or no records for me to enforce any of these.  So, I've

11  asked the people to pay.  I haven't received any monies over

12  the last three or four weeks from any of these people.  I don't

13  know how I would go about trying to prove my case, Your Honor,

14  at this point.

15       Basically, that's what's happened so far.  Also, no

16  tax returns have been filed since the company was formed in

17  2015.  So, that's another difficulty that we had.

18       THE COURT:  I received a declaration today that was

19  filed by Mr. Snyder that suggested that there was property

20  being removed from the site.  Are you aware of anything like

21  that?

22       MR. SLONE:  There may have -- I didn't receive that.

23  There was a -- I got a paper and met with George -- or Glenn

24  Mowry (phonetic) who had equipment down there.  I showed him

25  the list of what belonged to U LOCK, and he's debating whether

**Appendix Vol. II, Page 172**

1  some of that is his equipment or not, Your Honor.  I told him

2  that he would have to get me some type of proof to show what

3  was his, and told him not to take anything off the property,

4  Your Honor.

5         Some of the other people who rent may have taken some

6  of their items out of their lockers, Your Honor.

7         THE COURT:  Out of the storage lockers?

8         MR. SLONE:  Yes.

9         THE COURT:  Okay.  But what about debtor assets that

10  would have some value, have those been secured, or are they --

11  I mean, I guess you're telling me there is no assets with any

12  significant value?

13         MR. SLONE:  That's what Mr. Ferry concluded, Your

14  Honor.

15         THE COURT:  So, the -- some of these assets that are

16  listed in this declaration, excavator, or trailer, these items

17  don't have --

18         MR. SLONE:  All the items that were --

19         THE COURT:  -- a fork truck?

20         MR. SLONE:  All the items that were listed in their

21  schedules, plus the additional items that we looked over, most

22  are not in any type of operating condition, Your Honor, and Mr.

23  Ferry felt that they weren't worth a lot.  All these items were

24  out in the open, basically.  There's 20 some acres there.

25         THE COURT:  Okay.

1          MR. SLONE:  And they were spread over the -- over

2     those acreage.

3          THE COURT:  All right.  Thank you.  All right.  Well,

4     let me go back to this notice of non-compliance.  You know,

5     there's an allegation that there's been destruction of

6     scheduled property and a cease and desist letter.  Is there any

7     concerns that the Trustee wishes to raise to the Court that I

8     should be aware of in terms of what's going on with the

9     property there?

10          MR. SLONE:  Well, there are -- there were some

11     limited remediation efforts being taken by the Biros people as

12     per the prior order of Court.  Apparently, they needed

13     something from the Township to go forward, and I believe

14     they've gotten that permission from the Township, but the Biros

15     attorney could further address that, Your Honor, but I don't

16     believe there's any other issues.

17          THE COURT:  All right.  Well, let me go to Mr. Roth.

18     You filed this notice regarding non-compliance.  I've got a

19     Chapter 7 Trustee who's -- has oversight over the estate assets

20     at this point, has not indicated an issue with anything that's

21     gone on at this point.  Why should I consider anything over and

22     above that at this stage?

23          MR. ROTH:  I'm sorry.  I had trouble hearing the last

24     thing you said.

25          THE COURT:  What are you attempting to raise with the

1  Court at this point with respect to the notice of non-

2  compliance?

3          MR. ROTH:  Well, Your Honor, the non-compliance I

4  think had to do with what was going on in the court

5  proceedings, and they were continuing to try to collect even

6  after the bankruptcy was filed, and we believe that they

7  violated --

8          THE COURT:  Collect what?

9          MR. ROTH:  What's that?

10          THE COURT:  Collect what?

11          MR. ROTH:  Well, they went into court proceedings

12  asking to get funds and to get transfers made to them by the

13  State Court even after we filed this.

14          THE COURT:  Okay.  You're talking about your

15  adversary proceeding.  I'm talking about you filed a notice of

16  non-compliance suggesting that Ms. Biros was violating the stay

17  relief order with respect to the Phase I testing, and you

18  referenced a cease and desist letter that was issued by North

19  Huntingdon Township.  Is there any outstanding or remaining

20  issues that pertain to that at this point?

21          MR. ROTH:  Could I ask my client that?

22          THE COURT:  Well, I mean, you're counsel for the

23  debtor, and you're the one that filed it, so I'm assuming

24  you're up to speed on this.

25          MR. ROTH:  I understand.  At this point I don't think

**Appendix Vol. II, Page 175**

1  there's anything to argue there.

2          THE COURT:  All right.  All right.  Well, then I'm

3  going to consider the notice to be addressed and withdrawn at

4  this point.  If there is a further issue -- I mean, all the

5  issues raised in the notice of non-compliance are issues that

6  if they are a problem, I expect the Trustee to raise to my

7  attention as the estate fiduciary.

8          I'm satisfied with the report I received from Mr.

9  Slone today that he's on top of things, that he's examined the

10  property, he's found that there's nothing to secure at this

11  point.  But if there is something in the future, I expect him

12  to raise that with me at this point.  So, that's going to

13  address that item at this point.  Let's get into --

14          MS. SNYDER:  May I speak as a creditor, as well?

15          THE COURT:  Well, you did not file anything with

16  respect to the notice of non-compliance, so I don't know that

17  you have any standing to raise anything with that at this

18  point.

19          MS. SNYDER:  But the creditors -- there's no

20  transparency with the creditors because Ms. Biros is implying

21  that the Trustee granted her permission to destroy the

22  scheduled tanks, and I think a motion to abandon it should be

23  required first.

24          THE COURT:  Well, it may very well be that the

25  Trustee does file a motion to abandon, but at this point, if

11

1  you've got an issue with the way Mr. Slone is administering the

2  estate, you can raise that with me, but at this point I'm --

3  I've received the representation that he's examined the

4  property.  He does not find that there's anything there that is

5  worth protecting at this point, and he also -- I'm not hearing

6  anything of any substance to suggest that there is property

7  that's being destroyed to the point that that would have an

8  adverse impact on the estate.

9            MR. ROTH:  Judge, can I add something here?

10           THE COURT:  All right.  What is it?

11           MR. ROTH:  Well, under the guise of remediation, what

12  they were doing is, they were destroying things and destroying

13  items that could have some value to U LOCK, and that's what we

14  didn't want to see happening.

15           THE COURT:  All right.  Well, you heard Trustee Slone

16  say that he brought an expert onto the property.  He did not

17  find anyone -- anything there with any value, other than

18  perhaps scrap value.

19           MR. ROTH:  Okay.

20           THE COURT:  Do you have reason to believe that there

21  is an asset there that could be sold for more than what scrap

22  value would be?

23           MR. ROTH:  Well, my client tells me there is, but I'm

24  not sure what that is.  Could we have him testify?

25           THE COURT:  I'm not going to get into that today, but

**Appendix Vol. II, Page 177**

12

1  --

2          MR. ROTH:  Okay.

3          THE COURT:  -- I just need to get an overview on some

4  of this stuff because there's a number of issues that I need to

5  address.  I'm holding back right now on where I am on some of

6  this because I just -- I -- this is not going down the path

7  that it should be going down, and I am completely surprised at

8  the actions I've been seeing some of these parties taking here

9  in light of -- well, I'll leave it at that.

10         Let me hear about the motion to convert from a 7 to

11  11.  This is your motion, Mr. Roth -- I'm sorry.  Mr. Roth.

12         MR. ROTH:  I'm sorry.  I couldn't quite hear that

13  again.  I'm sorry.

14         THE COURT:  You can begin the presentation of your

15  motion to convert from Chapter 7 to Chapter 11.

16         MR. ROTH:  Motion to what?  I'm sorry.

17         THE COURT:  You filed a motion to convert.

18         MR. ROTH:  Right.  This property was purchased by

19  U LOCK in good faith because the company was reliant on -- and

20  because the company was reliant on Ms. Biros for its funding,

21  when the disputes arose it never had the opportunity to

22  develop.

23         So, we filed a motion to convert from Chapter 7 to

24  Chapter 11.  This allows for the Trustee to be in a limited

25  role to assist, but provides a small business entity to be in

**Appendix Vol. II, Page 178**

1  possession.

2        We believe that as a basis for the constructive trust

3  to Ms. Biros on her unsecured loan was U LOCK's insolvency.

4  Now, we believe that the constructive trusts are voidable under

5  the Pennsylvania constructive trust voidable law and under

6  bankruptcy law.  And we believe we have bankruptcy cases which

7  says that constructive trusts can be held to be voidable, and

8  what that does is, makes those people become unsecured

9  creditors that get constructive trust.

10        Our plan would be to invoke those laws and then allow

11  there to be an infusion of $850,000 to pay off all the

12  creditors in this case.  That would pay off Shanni Snyder, and

13  that would pay off Ms. Biros, and give them interest -- all

14  pre-judgment interest on all those items, and if we could have

15  that happen we believe that we could make this a viable

16  concern.

17        We have insurance on the property currently, and in

18  addition to that, we have an individual named John Michael

19  Levesque who is willing to become the president of the entity,

20  and to run this operation.

21        Now, Mr. Levesque is -- has extensive government and

22  business consulting in his history.  He was the mayor of a town

23  in Rhode Island, and that town was about the same size as North

24  Huntingdon, which is where U LOCK is located.

25        With regard to the taxes that are owed, we believe

14

1  that those taxes will all be cleaned up within 90 days, and we

2  can file a plan within 45 days and initiate the adversary to

3  reverse the 20 -- January '22 judgment, which is giving us the

4  problem here.

5          So, we believe -- and the other thing that will

6  happen then is that the investors in U LOCK would retain about

7  20 percent of U LOCK, but the rest of it would then be

8  distributed to the people who are helping them do all these

9  things.

10          So, we believe that this could be an ongoing and a

11  thriving concern, especially with the help of the individual,

12  and we therefore are asking that the case be transferred.

13          THE COURT:  All right.  Have you discussed with

14  Trustee Slone any cause of action that you claim might exist on

15  behalf of U LOCK to somehow void the constructive trust?

16          MR. ROTH:  Again, I don't believe we have discussed

17  that with him at this point.

18          THE COURT:  Is there a reason why you haven't?

19          MR. ROTH:  Well, I've had discussions with him, but

20  we never got to the point where we were discussing that

21  particular issue.

22          THE COURT:  And you believe that there is case law

23  that would suggest that you can collaterally attack the State

24  Court judgments?

25          MR. ROTH:  I believe, yes, we -- I believe we can do

**Appendix Vol. II, Page 180**

15

1  that, yes.

2          THE COURT:  That does not run afoul of <u>Rooker-Feldman</u>

3  or res judicata?

4          MR. ROTH:  I don't believe it does.

5          THE COURT:  Explain to me how that would work.  What

6  would be the basis to believe that there is an ability to

7  collaterally attack that?

8          MR. ROTH:  I couldn't quite hear that question again.

9          THE COURT:  What is the legal basis that you rely on

10 to suggest that there still is another method of attack on that

11 constructive trust?

12         MR. ROTH:  Well, we believe that the transfer is

13 voidable, okay, and that's what we would intend to pursue is

14 the claimant is voidable.

15         And that occurred on January 22nd, I believe, with an

16 order of court is what created the constructive trust.

17         THE COURT:  All right.  What about the business

18 itself?  Mr. Slone had suggested that at most there was $2600

19 deposited into the debtor's bank accounts in the first six

20 months of the year.

21         MR. ROTH:  Yes, we understand that.

22         THE COURT:  Are there any other funds that the debtor

23 has, or is that the sum and substance of the debtor's proceeds?

24         MR. ROTH:  Well, we understand that the company has

25 not been making a whole lot of money in the past, and we

Case 22-20823-JLT-163 Doc 105 Filed 08/15/22 Page: 182 Entered Date 15/22 10:51:52 2029 Desc Main
Document    Page 16 of 38

16

1 understand that there are not big dollars there, but with the

2 infusion of $850,000, which this firm is willing to do to help

3 this company move along, I believe that then it will become a

4 thriving business, especially with the help of Mr. Levesque to

5 help that happen.

6          THE COURT:  What kind of thriving business?  I mean,

7 are you talking about a self-storage business, or are you

8 talking about development of the property?

9          MR. ROTH:  Well, I think part of what they're

10 contending to do is to develop the property in better and more,

11 and better ways than the way it's been developed so far.

12          THE COURT:  Okay.  But right now there's no --

13 there's no real business there, is there not?

14          MR. ROTH:  Just some lockers and things that people

15 store in.

16          THE COURT:  Okay.  But Mr. -- I mean, do you have any

17 reason to dispute that Mr. Slone said that there's no leases,

18 and so there's no ability to enforce payment against somebody

19 who has items stored there?

20          MR. ROTH:  That's my understanding.

21          THE COURT:  Okay.  And so as a result, $2,000 in

22 revenue over the course of six months is probably the best this

23 business can hope for?

24          MR. ROTH:  Well, that -- so far, until we make

25 further development.

**Appendix Vol. II, Page 182**

Case 22-20823-24-T163 Doc Document Filed 08/15/22 Page: 188 Entered Date 15/28/10 15/15 2029 Desc Main
Document    Page 17 of 38

17

1          THE COURT:  Okay.  But what I'm trying to understand
2    is what would be the reorganizational purpose of converting
3    this to an 11?  It doesn't sound like there's a business there
4    to salvage.

5          So, to the extent that there are a bundle of rights
6    that the debtor has, why should I not just let the Trustee sell
7    those rights, and then either your client or somebody else can
8    buy them and do with them what they want?

9          MR. ROTH:  Well, I would suggest this, I'm not sure
10   this quite answers your question, but the property is worth a
11   good bit of money.  It's worth a lot more than the $300,000
12   that was put into it.  It's probably worth a couple of million
13   dollars, and we believe if we develop that site, that it could
14   serve to generate a good bit of money.

15         THE COURT:  Okay.  But if there was an actual claim
16   there to the property and it's viable, why wouldn't the Chapter
17   7 Trustee be in a position to bring that claim on behalf of the
18   estate?

19         MR. ROTH:  I'm sorry.  I had trouble hearing again.
20   I'm really sorry about that.

21         THE COURT:  If there is indeed a viable claim to
22   challenge the constructive trust, why is the Chapter 7 Trustee
23   not equipped to pursue that claim on behalf of the bankruptcy
24   estate?

25         MR. ROTH:  Well, they could, but we think that if it

**Appendix Vol. II, Page 183**

1  was transferred to an 11, then we could reorganize, and we

2  would have much more productive earnings in the future,

3  especially with the help of this gentleman with all the

4  experience with governmental and things.

5          THE COURT:  Okay.  Anything else at this point on the

6  motion to convert?

7          MR. ROTH:  Nothing further.

8          MS. SNYDER:  May I say something about the

9  reorganization?

10         THE COURT:  Well, again, Ms. Snyder, I don't think

11 you filed anything with respect to the motion to convert.  Did

12 you file a response to the motion to convert?

13         MS. SNYDER:  It was their motion.

14         THE COURT:  Right.  So, if you don't file a response,

15 that doesn't give you a ticket to say anything in the court.

16 You got to preserve your right.  So, that's what the response

17 is for.

18         All right.  Let me hear from the Trustee with respect

19 to the motion to convert.  Mr. Slone.  Oh, you're on mute.

20         MR. SLONE:  Okay.  Your Honor, first of all, I don't

21 believe converting will accomplish anything.  I don't even

22 think that U LOCK should be in bankruptcy at all.  I think the

23 case should be dismissed.

24         However, I had brought up the issue prior of selling

25 the right for any cause of action I might have.  If the U LOCK

1 people want to buy it and pursue those claims, that's fine.  I

2 don't think I'm going to be -- I don't think we have the

3 ability to overturn the lower court's decision, Your Honor, but

4 I'm willing to sell those rights, and they can pursue that,

5 Your Honor.

6          THE COURT:  All right.  Nothing --

7          MR. SLONE:  And if they have somebody that will fund

8 them for 800 and some thousand dollars, they should have enough

9 money to give a payment to me.

10          THE COURT:  All right.  Anything else?

11          MR. SLONE:  No, sir.

12          THE COURT:  All right.  Thank you.  All right.  Let

13 me hear from Ms. Biros with respect to the motion to convert.

14          MS. WENRICH:  Thank you, Your Honor.  So, my

15 pleadings say most of our argument, but I do want to address a

16 couple of things.

17          First off, with regard to the real property, at the

18 end of the day the real property as it stands is Ms. Biros',

19 and any claim that U LOCK has for a potential successful

20 reorganization relies on that property.  There is no lease to

21 be assumed.  They have no legal interest in the property.

22 There's just nothing there that would make a reorganization

23 make sense.

24          Additionally, with regard to the constructive trust,

25 it was actually created in 2019.  It goes back to the Court of

1  Common Pleas opinion where they said that the property was held

2  in constructive trust for the benefit of Ms. Biros at that

3  point, so it's, you know, January 2022 is just the date that

4  the deeds were released from escrow, but the constructive trust

5  happened way back in 2019.

6         As to the proposed exhibits that were filed by the

7  debtor in support of their motion, there's a big concern with

8  regard to authenticity of some of those documents.  We have no

9  one here to testify to authenticate them, and in particular the

10  entity with the alleged funding, the USAAG, done some research,

11  I cannot find any trace of this company in Connecticut, in

12  Pennsylvania, I can't find any evidence of -- I think that one

13  was maybe Dave Carter -- related to USAAG, I just -- I can't

14  find anything.  I'd like to think that I'm good at doing

15  research after three years of law school, but I came up empty.

16         And I just think right now there are so many

17  questions based upon items that have been in the pleading and

18  there has been truly utter lack of candor with the Court in

19  many of these pleadings.  And I don't think that putting the

20  debtor back in a position where they are running the company

21  will benefit any party in interest.

22         THE COURT:  All right.  Thank you.

23         All right, Mr. Roth, anything further from you?

24         MR. ROTH:  Nothing further.

25         THE COURT:  All right.  Well, presently before the

1  Court is the U LOCK motion to convert the case from Chapter 7

2  to Chapter 11 relying on Section 706(a) of the Bankruptcy Code.

3       I would note that this is not a mandatory provision.

4  The right to convert is not absolute, and despite that motions

5  under 706(a) are to be granted liberally with the presumption

6  that they are filed in good faith, but that is subject to

7  706(d) which provides that, quote, a case may not be converted

8  to a case under another chapter of this title unless the debtor

9  may be a debtor under such chapter.  And that was a provision

10 that the Supreme Court relied upon quite extensively when it

11 rendered its decision in <u>Marrama v. Citizens Bank of</u>

12 <u>Massachusetts</u>, 549 U.S. 365.  It's a Supreme Court case from

13 2007, where it found that debtor could not convert from a 7 to

14 a 13 as a matter of right when the debtor was not eligible to

15 be a Chapter 13 debtor due to actions that had occurred

16 previously.

17      So, I do find that the Court has discretion to deny a

18 Section 706(a) motion if there is a showing of bad faith, an

19 illegitimate purpose, or it would not further the best

20 interests of creditors of the estate.

21      And here I look at the record that I have in front of

22 me, I first note the debtor did not timely bring a motion to

23 convert, and the timing is somewhat prejudicial.  The

24 involuntary was filed on April 27th, 2022, the initial hearing

25 on Ms. Biros' motion to dismiss was on June 2nd, 2022, and the

22

1 answer to the involuntary petition was due on June 13th. And

2 in the absence of an answer, I issued an order for relief on

3 June 17th, 2022.

4       This motion to convert was not filed until July 1st,

5 17 days after the answer date, and after a Trustee was already

6 appointed.

7       There's no reason given for this delay and

8 furthermore, I note after looking at the motion to convert and

9 after listening to argument here today, I'm still not getting a

10 real substantive reason given for conversion.

11       This business is admittedly, quote, strapped

12 financially. That's based on Mr. Snyder's testimony in the

13 July 6th hearing, Docket Number 88 at Page 23. And I had no

14 explanation as to how the debtor will reorganize or what funds

15 it will utilize. I have representations of apparently some

16 additional funding that will come in if the debtor is given a

17 chance to reorganize, but as my questioning has alluded to and

18 I think Mr. Slone has also hit upon, it's not clear to me why

19 the debtor if it wished to go down that road could use that

20 funding to acquire assets from this bankruptcy estate through a

21 liquidation sale and then be on its way, and why there would be

22 a need to convert the case to an 11 and go through the cost,

23 expense and delay of doing a plan just to achieve the same

24 result. It would be much more efficient and better for all

25 involved, including creditors of the estate, to keep this in a

**Appendix Vol. II, Page 188**

1 | 7 for that basis.

2 | It also seems to me based on the discussions here

3 | today and at previous hearings that U LOCK's true purpose is to

4 | develop the property, not to engage in a self-storage business,

5 | which admittedly generates little to nominal value, $2600 in

6 | receipts for the first six months of the year.  Statement of

7 | financial affairs suggests revenues of no more then $1,000 a

8 | month, and as a result, I'm not convinced that there is a

9 | business to reorganize around.

10 | The Trustee only has $2,000 on hand.  Certainly not

11 | worthy of the expense necessary to do a Chapter 11 and the

12 | retention of all professionals that are necessary to get a

13 | Chapter 11 case up and running, and that's separate and apart

14 | from U.S. Trustee fees that would be accrued on that -- in that

15 | case while it's running.

16 | Furthermore, I think there are reasons to keep this

17 | in a Chapter 7.  Admittedly at the last hearing, the debtor

18 | indicated there was no insurance in place as of July 6th.

19 | There is a representation now in the record that there is

20 | insurance.  If I accept that as true, I still find that there

21 | is acknowledgment that the debtor has never filed tax returns

22 | dating back to its formation in at least 2015, which is

23 | problematic.  And I also have many reasons to believe and to

24 | want to have a Trustee in place.

25 | The docket here, the docket in the state court, is

Case 22-20823-JAD Doc 105 Filed 08/15/22 Entered 08/15/22 16:14:20 Desc Main
Case 23-21-T163 Document 1572 Page: 100 Date 5/23/105 Page 24 of 38
Document    Page 24 of 38

24

1  replete with contentious litigation.  Parties going at it on

2  every conceivable issue, and as a result, it would be helpful

3  to have a Trustee there as a buffer to look out for the best

4  interests of the estate, not necessarily of a particular party.

5        Furthermore, those parties have raised a new issue

6  with me every week and, quite frankly, I don't have a lot of

7  faith in the debtor's ability to self-manage here in the

8  Chapter 11.

9        Assuming that the debtor indeed did get insurance,

10  the debtor did not get that insurance until compelled to do so

11  through questioning in this court.  And then I have numerous

12  irregularities with the bankruptcy expectations here.  I've got

13  U LOCK commencing an adversary proceeding on behalf of the

14  debtor even though a Trustee has been appointed and before

15  conversion has been granted.

16        I have Shanni Snyder who seems to be acting as an

17  extension of U LOCK, and Ms. Snyder has brought her own claims

18  which seemingly would belong to her bankruptcy estate and

19  seemingly has done so without consulting her Chapter 7 Trustee

20  or seeking approval or the ability to do that on her own.

21        And, finally, I think the cost of a Chapter 11 estate

22  is just not worth the benefit that would be attained by

23  obtained by converting.  As I indicated before, my lack of

24  faith in the debtor's management at this point, in fact I think

25  I said this at a prior hearing, if I were to convert the case I

Appendix Vol. II, Page 190

1 was probably going to be inclined to want to appoint a Trustee,

2 and I just don't see the benefit of having a Chapter 11 Trustee

3 and that layer of administrative expense added onto the cost of

4 what's a very modest estate.

5 So, for that reason, I think the case is best served

6 in a 7. There's no business to be compromised while it's in a

7 7 because I'm not convinced that the self-storage business has

8 any great revenue stream and seems to be rather informal as it

9 is. So at best, this is a debtor who has claims, tenuous that

10 they may be to the real property, but that's really the nuts

11 and bolts of what this estate asset is. So, on that basis, I'm

12 going to deny the motion to convert.

13 So, what I want to do now go into is these adversary

14 proceedings and some of the actions of the parties. You know,

15 I've got this adversary that was filed on behalf of U LOCK, and

16 right now -- I thought it was pretty clear at the last hearing

17 that the Trustee stands in the shoes of U LOCK. So, it is only

18 the Trustee who can bring that adversary at this point.

19 So, Mr. Roth, what is the basis for me considering to

20 allow that adversary to proceed at this point given that the

21 Trustee is not the one bringing that action?

22 MR. ROTH: Well, Your Honor, if the Trustee is not

23 going along with it, then I guess we're kind of stuck with it.

24 THE COURT: Well, have you consulted with the Trustee

25 on that?

Appendix Vol. II, Page 191

1          MR. ROTH:  Pardon me?

2          THE COURT:  Have you consulted with the Trustee about

3  bringing that action?  I mean, just so we're clear -- and Mr.

4  Slone's on here.  I mean, the allegation is that there was a

5  stay violation by what happened in state court, and if the

6  Trustee is in agreement that there's an action to be brought

7  there, then the Trustee can bring it.

8          So, have you had a conversation with Mr. Slone about

9  that?

10          MR. ROTH:  We have not talked about that, Your Honor.

11          THE COURT:  All right.  Well that's problem number

12  one.  You cannot usurp the power of a Trustee and take

13  possession of an estate asset on your own.  Do you realize

14  that?

15          MR. ROTH:  Yes, Your Honor.

16          THE COURT:  That itself is a stay violation.  All

17  right, Mr. Slone, are you aware of the allegations in the

18  adversary?

19          MR. SLONE:  (No audible response).

20          THE COURT:  I didn't -- I don't know if you're on

21  mute again.

22          MR. SLONE:  Well, I've read what he wrote and I

23  called Mr. Roth and told him to withdraw it, Your Honor.  If --

24  like I said before, if they want to pursue these claims, you

25  know, they can buy them from me.  I'm not pursuing these

Appendix Vol. II, Page 192

1 claims, Your Honor.

2          THE COURT:  You're not pursuing a stay violation?

3          MR. SLONE:  Well, I don't know that there -- in fact

4 there was a stay violation, Your Honor.

5          THE COURT:  Well, I don't know, maybe there is a

6 difference of opinion there.  I -- based on what I've seen so

7 far, I think this is a curious case where I've got three

8 parties here, and all three of you have violated the stay.

9          I think Ms. Biros may have violated the stay by

10 asking the state court to issue a further court order while the

11 bankruptcy was pending.  I think I raised questions about that

12 the very first hearing.  I'm not sure what the explanation is

13 for that but yet, you know, again, that's my preliminary

14 observation, I'll give Ms. Biros an opportunity to be heard on

15 that.

16          Mr. Roth, I think you may have violated the stay by

17 taking possession of an asset and trying to pursue a claim on

18 behalf of U LOCK where there is a Chapter 7 Trustee involved.

19          And, Ms. Snyder, I think you did the very same thing.

20 You've got Mr. Zebley, who is the trustee of your personal

21 bankruptcy estate, who reopened the case to administer an

22 asset, and now you are trying to usurp his authority by

23 bringing an adversary action yourself.

24          MS. SNYDER:  I believe I have standing because I own

25 portion of it -- a portion of it.

**Appendix Vol. II, Page 193**

1            THE COURT:  You may have an ability to receive

2    proceeds of it, but that doesn't give you the ability to

3    control the asset.

4            MS. SNYDER:  Well, I --

5            THE COURT:  It is the Trustee's asset to administer.

6            MS. SNYDER:  I believed he would -- he would, and I

7    still had --

8            THE COURT:  Well, have you had discussion with Mr.

9    Zebley about bringing this adversary case?

10            MS. SNYDER:  We e-mailed and I e-mailed Mr. Slone, as

11    well.

12            THE COURT:  All right.  But did Mr. Zebley say that

13    you could proceed with this adversary on his behalf?

14            MS. SNYDER:  I'm not sure.

15            THE COURT:  All right.  I'll take that as a no.  So,

16    what I'm telling you is this --

17            MS. SNYDER:  Could we ask --

18            THE COURT:  -- I am -- I was very close to

19    considering dismissing this case because based on what Mr.

20    Slone has indicated there is no real value here.  Now, perhaps

21    if there is some value to be gained from the sale of the claims

22    or the sale of the residual assets, perhaps there's something

23    to be gained there.  But to me, the only benefit of keeping

24    this action open is to adjudicate what I see are perhaps three

25    separate stay violations.  This is something I've never seen

**Appendix Vol. II, Page 194**

29

1  before where every single party could have violated the stay.

2         MR. OTTO:  Pardon me, Your Honor.  May I speak?

3         THE COURT:  You may.

4         MR. OTTO:  Your Honor, I represented Ms. Biros in the

5  state court action.  If you look at the Court of Common Pleas

6  docket, what you will find is that the petition for writ of

7  possession and the issuance of the writ of possession were all

8  done prior to --

9         THE COURT:  Yes, that's a misapplication of the law.

10 I read what Judge Smail said about that and that's --

11 unfortunately I hate to disagree with a judicial colleague, but

12 once you put something --

13        MR. OTTO:  But, Your Honor, may I --

14        THE COURT:  -- in order -- just because you started

15 the process doesn't give you the ability to continue the

16 process.

17        MR. OTTO:  That's not my point, Your Honor.  My point

18 is that the notice of the bankruptcy was not filed until after

19 the writ of possession was issued, and no action was taken on

20 it.  It was mailed to me and I held it and did not take any

21 action on it.  All of that took place prior to the suggestion

22 of bankruptcy and filed in the state court action.

23        In other words, the -- Judge Smail, who issued the

24 writ of possession, did not have notice of the bankruptcy

25 filing until after that writ of possession was issued.

1          I'm not going to argue whether a stay was committed
2    -- or a violation of the stay was committed, you can look at
3    the calendar and determine that, but it was certainly not a
4    willful violation of the stay.

5          THE COURT:  All right.  Well, I have to look back and
6    I admit that it's been awhile since I looked at that
7    transcript, but I just recall that there was discussion on the
8    record in that transcript of there being a bankruptcy and what
9    actions the State Court could or could not do in light of that
10   bankruptcy.

11         MR. OTTO:  That was a motion that I filed for
12   sanctions against Mr. Roth and Mr. Snyder, not against U LOCK.
13   And the sanctions motion was related to actions that they had
14   both taken during the course of the trial and the appeal, but
15   it was not against U LOCK.  In fact, I specifically stated that
16   we were not attempting to take any action against U LOCK
17   because of the stay.

18         THE COURT:  All right.

19         MR. OTTO:  I'll be happy to provide whatever
20   information --

21         THE COURT:  Yes, I will give every party an
22   opportunity to respond to where we are at this point, so.  I'm
23   not making any determinations on that today.

24         All right.  So, again, you know, I said this the
25   first day, that I felt like this case is the wild, wild west,

1 and now it's been brought into my courtroom, where everyone's

2 just taking unilateral actions, and no one's paying attention

3 to what their obligations are, what their rights are and what

4 abilities they truly have.

5 All right. Let me hear -- let me ask this at this

6 point. At this point, I'm inclined to just outright deny

7 Adversary 22-2048, which is the stay violation brought by

8 U LOCK because it was not pursued by the Chapter 7 Trustee on

9 behalf of the U LOCK estate. So, any reason why I should keep

10 that adversary on my calendar at this point, Mr. Roth?

11 MR. ROTH: No. No, Your Honor.

12 THE COURT: All right. Very well. Then I'm going to

13 deny that adversary, and commensurate with that I will deny the

14 motion to intervene that was filed by Ms. Snyder.

15 Ms. Snyder, I'm inclined to deny your adversary on

16 the basis that you do not control the claim that belongs to

17 your bankruptcy estate, although you may have an interest in

18 the proceeds that the estate garners from that claim. So, is

19 there any reason why I should not dismiss your adversary at

20 this point?

21 MS. SNYDER: Because it was also post-bankruptcy.

22 THE COURT: All right. Because you filed the case

23 after the bankruptcy was closed?

24 MS. SNYDER: Well, the January of 2022 dates were

25 issued, and then the bankruptcy was filed, so my lien is still

Appendix Vol. II, Page 197

1    superior to her's -- to Ms. Biros'.

2           THE COURT:  All right.  Well, I'm not making any

3    determination on the nature and extent of priority of the lien

4    until I know that you are the one who actually possesses the

5    lien.

6           MS. SNYDER:  Okay.

7           THE COURT:  And right now I believe that that is an

8    asset of your estate --

9           MR. ZEBLEY:  Your Honor, can I speak --

10          THE COURT:  -- it wasn't disclosed.  All right, Mr.

11   Zebley.

12          MR. ZEBLEY:  Here's where we are with Ms. Snyder's

13   case.  There's a meeting of creditors on Friday.  I think Ms.

14   Snyder has a claim that arose prior to her filing of bankruptcy

15   against U LOCK for work she did for U LOCK, and that work

16   continued after she filed and after the case closed.  She

17   obtained a default judgment against U LOCK.

18          In her bankruptcy so far no creditors have filed any

19   claims, and we'll have to see what happens.  It's a Chapter 7

20   case.  I think the appropriate thing to do myself is to dismiss

21   her case now as premature.  She should in her own case file an

22   application for abandonment which would have brought the matter

23   before the Court and she could have asked the Court's

24   permission in her case to appear in the U LOCK case.

25          But that's where we are right now.  I have no intent

Case 22-02023-21-T163 Doc Document Filed 03/15/22 Page: Entered Date 15/22 10:51:45 2029 Desc Main
Document    Page 33 of 38

33

1  of -- as of today, of filing an action.  We'll see after the

2  meeting of creditors if my opinion changes.

3         THE COURT:  All right.  Ms. Snyder, anything further

4  from you?

5         MS. SNYDER:  No, thank you, Your Honor.

6         THE COURT:  All right.  Well, again, I'm going to

7  deny Adversary 22-2052 as that was commenced without the

8  requisite authority of the Chapter 7 Trustee who has control

9  over that asset at this point.

10        All right.  Well, that leaves me with the original

11  motion to dismiss and like I said, potential stay violations

12  involving the remaining parties here, so.

13        Mr. Slone, when do you intend to make a final

14  conclusion as to what you intend to do with respect to the

15  estate assets at this point?

16        MR. SLONE:  Your Honor, I will confer with Mr. Roth

17  -- Allen Roth and see if they want to purchase any causes of

18  action.  The other assets we either abandon or get a liquidator

19  in there for salvage value.  But I wanted to wait to see what

20  happened today, but I will contact Mr. Roth and see if we can

21  proceed there.  Otherwise, I'll just -- I can abandon and maybe

22  file this as a no distribution case, Your Honor.

23        THE COURT:  All right.  You can also discuss whether

24  there is a resolution of any stay violation between the estate

25  and Mr. Roth for commencing the adversary, as well.

34

1        MR. SLONE:  Okay.

2        THE COURT:  Related to that, Mr. Zebley, you can have

3   a discussion with Ms. Snyder about any resolution of any stay

4   violation that may have occurred with respect to her

5   commencement of the adversary proceeding.  Since that is a

6   Judge Bohm case, that would not be something for me to decide,

7   but it would be something to address in that case, but if the

8   parties can reach a resolution of that, you're welcome to do

9   so.

10       And then last, but not least, I will also deal with

11  and address whether there has been a stay violation with

12  respect to the conduct of Ms. Biros with respect to the state

13  court proceedings and these events which transpired prior to

14  the first motion to -- first hearing on the motion to dismiss

15  after the involuntary was started.

16       But at this point, if the Trustee wishes to broker a

17  sale of assets, he's welcome to do so.  If there is an

18  inability to reach a resolution, then I will consider

19  dismissing this case, reserving solely the jurisdiction on any

20  ancillary 362 motions that might need to be addressed for

21  willful violations of the stay.

22       All right.  Anything else that the parties wish to

23  address or raise at this point in these proceedings?

24       MS. WENRICH:  Your Honor, if I may, I know my motion

25  is pending with regard to relief from stay and abandonment.  I

**Appendix Vol. II, Page 200**

35

1  understand the way it's been teed up that it likely doesn't

2  make sense.  I know you're not inclined to abandon the property

3  at this time, but I do want to make clear that my client would

4  also like the opportunity to purchase any potential claims or

5  assets, as well, and I also just want to put on the record that

6  we reserve all rights if there is litigation commenced against

7  my client that's vexatious, we reserve the right to seek any

8  sanctions necessary.

9       THE COURT:  Well, I want everyone to think twice

10  about what they file in this court.  You know, we're not

11  shooting from the hip here.  There needs to be a sound legal

12  basis for any document that's filed with this court or any

13  request for relief, and you darn well better be sure that you

14  have the ability to bring the action that you proceed with.  It

15  does not belong to somebody else or some other estate.

16       With that said, I'm keeping the motion to dismiss

17  open because that is a vehicle upon which I will dismiss the

18  case if I find it reaches that point, but I certainly expect

19  too that if the Trustee is looking to liquidate or sell the

20  remaining assets including any bundle of rights or causes of

21  action that the estate may have, he will entertain offers from

22  all quarters and not necessarily just the parties in this room.

23  And I expect that Trustee Slone with his experience in dealing

24  with these types of estates will do that.

25       So, if there's nothing further then, I'll consider

**Appendix Vol. II, Page 201**

1 this matter to be concluded.  I'm sorry.  Is there something

2 else?

3          MS. WENRICH:  I'm sorry, Your Honor.  One more thing.

4 I -- there was a second notice regarding the compliance with

5 the relief from stay order that Mr. Roth filed on behalf of the

6 debtor.

7          THE COURT:  You said a second notice?

8          MS. WENRICH:  Yes.  I believe it was on August 3rd.

9          No, I'm sorry, Your Honor.  It may have just been the

10 declaration regarding additional issues alleging non-

11 compliance.  I'm just -- I wasn't sure how you wanted to handle

12 that.

13          THE COURT:  No, that looks like that was just a

14 declaration that was filed.  I'm viewing that in conjunction

15 with the notice of non-compliance --

16          MS. WENRICH:  Okay.

17          THE COURT:  -- which I'm deeming to be withdrawn at

18 this point.

19          MS. WENRICH:  Okay.  Thank you, Your Honor.  Sorry

20 about that.

21          MS. SNYDER:  Your Honor, may I just say one more

22 thing?

23          THE COURT:  Good ahead.

24          MS. SNYDER:  So I did believe that in excess of

25 80,000 belonged to me, so my apologies to the Court.  I just

1  wanted to file that to preserve my rights to their respect.

2          THE COURT:  Well, I understand that but again, I

3  thought we had a clear discussion about this before, that that

4  claim is not in your control at this point.  That is a claim

5  that belongs your estate, even if you have rights to a portion

6  of the proceeds.

7          MS. SNYDER:  Okay.

8          THE COURT:  And so, it's not something that you can

9  just unilaterally proceed with without prejudicing the

10  bankruptcy estate and without getting clearance or guidance

11  from Trustee Zebley.

12          I mean, the two you should be on the same team.

13          MS. SNYDER:  Yes.

14          THE COURT:  And it's -- that's not something that

15  sits well with me when I see that there is subversive actions

16  being taken to undercut the authority of a Chapter 7 Trustee.

17          MS. SNYDER:  Okay.  I apologize, Your Honor.

18          THE COURT:  All right.  Anything further from any of

19  the parties?

20          MR. ROTH:  Nothing further.

21          THE COURT:  All right.  Well, then I expect the

22  parties to straighten up here.  I've had enough of this and

23  it's detracting from, you know, resolving this matter and

24  seeing if there's anything here to be liquidated and to

25  preserve -- or to proceed with the expeditious resolution of

**Appendix Vol. II, Page 203**

38

1  this estate.

2          So, with that, I'll issue a bundle of orders for the

3  reasons I've stated on the record here today, and then I'll

4  wait to hear from Trustee Slone with respect to his further

5  efforts to liquidate the remaining assets of this estate.

6          With that, we'll consider this matter to be concluded

7  for now.  Thank you very much, everyone.

8          ALL ATTORNEYS:  Thank you, Your Honor.

9                      *  *  *  *  *

10

11          **C E R T I F I C A T I O N**

12          We, COLETTE MEHESKI and CINDY POST, court approved

13  transcribers, certify that the foregoing is a correct

14  transcript from the official electronic sound recording of the

15  proceedings in the above-entitled matter, and to the best of

16  our ability.

17

18  /s/ Colette Meheski

19  COLETTE MEHESKI

20

21  /s/ Cindy Post

22  CINDY POST

23  J&J COURT TRANSCRIBERS, INC.      DATE:  August 15, 2022

24

25

FILED
8/31/22 4:56 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                    .        Case No. 22-20823-GLT
                          .
                          .
U LOCK INC,               .        5414 U.S. Steel Tower
                          .        600 Grant Street
                          .        Pittsburgh, PA 15219
          Debtor.         .
                          .        August 25, 2022
. . . . . . . . . . . . . .        11:35 a.m.

TRANSCRIPT OF [#14] CONTINUED EXPEDITED MOTION TO DISMISS CASE,
   IN ADDITION TO MOTION FOR SANCTIONS AGAINST PETITIONING
CREDITOR, OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM STAY,
OR IN THE ALTERNATIVE MOTION TO ABANDON THE MOVANTS PROPERTY;[#36]
  ORDER GRANTING CHRISTINE BIROS LIMITED RELIEF FROM THE STAY
            BEFORE HONORABLE GREGORY L. TADDONIO
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:           Law Office of J. Allen Roth
                          By:  J. ALLEN ROTH, ESQ.
                          805 S Alexandria Street
                          Latrobe, PA 15650

For Christine Biros:      Bernstein-Burkley, P.C.
                          By:  SARAH ELIZABETH WENRICH, ESQ.
                          601 Grant Street, 9th Floor
                          Pittsburgh, PA 15219

For Christine Biros in    The Law Firm of William E. Otto
the State Court Action:   By:  WILLIAM E. OTTO, ESQ.
                          P.O. Box 701
                          Murrysville, PA 15668

ECRO:                     Hayley Smith

 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For Shanni Snyder,        By:  SHANNI SNYDER, PRO SE
Petitioning Creditor:     14390 Route 30
                          Unit H
                          North Huntingdon, PA  15642

TELEPHONIC APPEARANCE:

Chapter 7 Trustee:        Mahady & Mahady
                          By:  ROBERT H. SLONE, Trustee
                          223 South Maple Avenue
                          Greensburg, PA 15601


                        - - -

1          THE COURT:  All right.  The next matter is Case

2   Number 22-20823, U LOCK INC.  All right.  This is a continued

3   hearing on the Expedited Motion to Dismiss or in the

4   alternative Motion for Sanctions and Relief From Stay.  So, on

5   that basis, I'll take appearances first for the moving party

6   Christine Biros.

7          MS. WENRICH:  Good morning, Your Honor.  Sarah

8   Wenrich here on behalf of Christine Biros.  Also here with me

9   is William Otto.

10          THE COURT:  All right, good morning.  Now, I'll take

11   appearances for U LOCK.

12          MR. ROTH:  Allen Roth on behalf of U LOCK.

13          THE COURT:  All right, good morning.

14          MR. SNYDER:  George Snyder, Your Honor.

15          THE COURT:  All right, good morning.

16          MR. SNYDER:  Good morning.

17          THE COURT:  I'll take appearance from Ms. Snyder.

18          MS. SNYDER:  Shanni Snyder on behalf of myself.

19   Thank you.

20          THE COURT:  All right, good morning.

21          MS. SNYDER:  Good morning.

22          THE COURT:  And I'll take appearances by Zoom.  Do I

23   have the Chapter 7 Trustee?

24          MR. SLONE:  Robert Slone, Chapter 7 Trustee, Your

25   Honor.

4

1         THE COURT:  All right, good morning.  And, do I have

2  anyone else on the line who wishes to enter an appearance?

3                 (No audible response)

4         THE COURT:  All right, this is a continued hearing on

5  that motion to dismiss, as I referenced before.  Since that

6  time, I have received a status report from the trustee

7  indicating that he has explored the potential of selling the

8  debtor's remaining assets, which would include significantly a

9  bundle of claims that debtor's estate may have and there may

10  have been a purchase offer received.

11        So, why don't I start with that, Mr. Slone.  If you

12  can tell me where things are from the trustee's standpoint on

13  case administration, because that'll have a bearing on where I

14  come down on the motion and whether the case should continue.

15        MR. SLONE:  Your Honor, I did receive the offer, as

16  set out in my status report, to buy my cause of action

17  regarding the property at 14140 Route 30, North Huntingdon,

18  Pennsylvania.  Since I filed the status report, I've received

19  another offer, Your Honor.  This is for the tangible personal

20  property.  This offer was made by Christine Biros to buy up all

21  the tangible assets as outlined in her response or, I mean, in

22  her offer.  So, now I have two sales to tee up, Your Honor.

23        THE COURT:  All right, what's the time frame --

24        MR. SLONE:  And the amount on that sale would be the

25  offer of $20,000 plus the assumption of any property or real

1  estate taxes owed by U LOCK to Westmoreland County on the

2  property at 14140 Route 30.

3          THE COURT:  Okay.  And what's the time frame by which

4  you anticipate bringing those sale motions?

5          MR. SLONE:  I would probably have them in by the end

6  of next week, Your Honor.

7          THE COURT:  Okay.

8          MR. SLONE:  I'll try to, anyway.

9          THE COURT:  All right.  Anything else from the

10 trustee at this point?

11         MR. SLONE:  No, sir.

12         THE COURT:  All right.  Let me go to Ms. Biros'

13 counsel here.  In light of the fact that I've got two potential

14 sale motions, why should I not just deny the motion to dismiss

15 at this point because it seems like there's a benefit to

16 keeping the bankruptcy open and liquidating the estate at this

17 point?

18         MS. WENRICH:  Your Honor, I think with regard to the

19 motion there -- as you're aware, there are a number of

20 different areas of relief that are requested.  One of those is

21 relief from stay.  I understand that there is an offer to

22 purchase the bundle of rights that might relate to the real

23 property.  However, as far as has been made aware to the Court

24 or to us, there are no rights that relate to the property.  For

25 that reason, I think relief from stay is still appropriate to

6

1  proceed maybe with the state court action, get another order

2  for just possession of the property.  I know the other one had

3  been entered after the bankruptcy and had been voided by Your

4  Honor, so --

5       THE COURT:  Well, I don't know that I've done that

6  yet, so I guess that's my question.  Is there any reason why I

7  should not void or enter an order deeming that May 13th order

8  as void?

9       MS. WENRICH:  Yes, Your Honor.  I think that that May

10 13 order could be modified so that it does not violate the

11 stay.  I know that one provision in the order stated that Ms.

12 Biros could also collect and sell any personal property of the

13 debtor.  We understand that that violates the stay.  We are not

14 trying to do that, which is part of the reason why Ms. Biros

15 made an offer then to purchase that property.  What we would

16 like is just to be able to obtain rightful possession of that

17 property.  This has been going on for years.

18      THE COURT:  Well, have you had any further

19 discussions with the trustee if there is a need to expand the

20 existing stay relief order at this point?

21      MS. WENRICH:  We have had discussions with the

22 trustee multiple times a week just touching base on where

23 things are.  I know with the trustee, he's between a rock and a

24 hard place with the sale of the potential interest related to

25 the property.  My understanding is that the trustee does not

1  believe that the debtor has any interest in the property.  That

2  being said, when there's an offer to purchase any rights,

3  whether or not those exist, it's hard to look the other way.

4          THE COURT:  Well, I mean, I think that's the -- from

5  your client's perspective, the trustee is selling the Brooklyn

6  Bridge here, and, you know -- but if the trustee has got

7  someone that's willing to pay value for it, and this is an as

8  is where is sale then, you know, we'll entertain that.

9          But I guess getting back to the motion that's

10 pending, given that the trustee has relayed that there's two

11 offers for value, including one from your client, I'm not

12 seeing a basis to dismiss.  And, as to the stay relief, I'm not

13 really clear on what additional stay relief Ms. Biros is asking

14 for.

15         And if there is a basis for expanded stay relief,

16 what I would prefer to see is that you discuss it with the

17 trustee, and if the trustee is acceptable to it, it can be

18 proposed through a proposed form of order.  The other parties

19 have an opportunity to object before the Court enters that, but

20 at this point I'm comfortable that the trustee has the estate's

21 interest in mind and can be in a position to consent if it's

22 appropriate.

23         MR. OTTO:  Excuse me, Your Honor, if I can speak?

24         THE COURT:  Pull a microphone in front of you.

25         MR. OTTO:  One -- one of the -- excuse me.  One of

1    the issues is the potential existence of property of renters on

2    the property.  I know the trustee has given every renter 30

3    days to take their property.  There are still lockers on the

4    property with locks on them.  We've talked to the trustee about

5    going in and emptying all of those lockers and all of the

6    facilities and saving the -- those -- any property we find on

7    the site in a garage that exists on the site.  I know the

8    trustee was reluctant to do that without some authorization or

9    blessing from the Court.

10           But, one of the concerns that my client has is that

11   whatever we do is going to open her up for claims by those

12   renters that property was damaged and so forth.  So, that's one

13   concern that we have that would allow -- or that would be

14   furthered by the interest -- or by the continuing of the

15   bankruptcy for at least --

16           THE COURT:  Well, here's what my question is, and I'm

17   happy to have all parties weigh in on this.  The trustee

18   initially said he didn't see a lot of value here and had

19   previously indicated that he might have actually supported

20   dismissal.  That has changed based on these offers.

21           Nevertheless, he's indicated to me he's prepared to

22   do a sale motion for both properties in the next week.  We can

23   get those teed up and have those heard in 30 to 45 days.  Once

24   those sales are consummated, I'm not seeing any other reason to

25   have any further administration in this case, unless someone

1| tells me otherwise.  So, is there any reason to rush

2| disposition of third-party property at this point when it

3| actually may sort itself out once these sales are completed and

4| the case is able to close?

5|          MR. OTTO:  I think it would facilitate the --

6| resolving any claims by -- as third-party renters.  I mean,

7| they've had notice to get their stuff out.  They haven't done

8| that.  But, in any landlord-tenant action, if you take the

9| property of the tenant, then you expose yourself to claims of

10| property damage unless you safeguard the property, and there's

11| a period of time in which a tenant can still come back and

12| claim their property.  My client's concern, quite frankly, Your

13| Honor, especially with regards to this offer for, quote,

14| whatever rights U LOCK may have in the property, is that it is

15| only -- it -- only devised by some unnamed party to expose my

16| client to further senseless litigation.

17|          Every time something has been filed in this case, she

18| has had to respond to it with a net result that this has just

19| driven the cost of this for her up and up with no clear

20| justification from either U LOCK or Mr. Snyder.  The two

21| actions that were filed, adversary actions, that were filed by

22| Shanni Snyder and U LOCK, which this Court dismissed the last

23| time we were here, were done in violation of the stay.  There

24| have been actions appealed in the state court action.  There

25| are four appeals in the original case that were filed in

1  violation of the stay by both U LOCK and Ms. Snyder.

2        It's just -- that's the objection we have to the sale

3  of the rights.  I understand it's a Brooklyn Bridge situation,

4  but the problem is, somebody is going to go out and try and

5  enforce the sale of the Brooklyn Bridge.

6        THE COURT:  Well, but I mean, you know, your client

7  is free to purchase the claims, as well, and foreclose that

8  alternative if your client's the highest bidder for that

9  property.  So, I mean, what I'm left with is, if I've got

10 someone who's willing to pay money for a bundle of rights that

11 the trustee is holding, I have to make sure the trustee is

12 maximizing the value of the estate, no matter what it contains.

13        MS. WENRICH:  Your Honor, related to that, I

14 understand that the trustee is trying to sell a bundle of

15 rights regardless of what that contains, but I think that there

16 does need to be some clarification and potentially limitation

17 of that, particularly with regard to any causes of action that

18 are barred by res judicata.  I think that's our big concern.

19 This issue has been appealed up to the Pennsylvania Supreme

20 Court.  It was -- I think the record was stayed in the

21 Pennsylvania Supreme Court because the debtor wanted to appeal

22 to the Supreme Court of the United States.  That was not done

23 within the requisite time period.

24        We just -- there's no reason to not bar or include

25 any claims that go against res judicata, and I think that would

1  need to be clear or we would request that that be clear --

2        THE COURT:  But I think that goes to making a

3  representation or warranty by the trustee that trustees do not

4  do in these types of sales.  The trustee is just there to say

5  this is what I have, this is what I'm selling, I make no

6  representation as to what you can do with it, or whether it's

7  limited, or if it's expanded.  It is what it is.  And I don't

8  think the Court has any appetite of expanding further onto that

9  either.

10        So, you know, I think that's where we are at this

11  point.  Now, I can certainly appreciate your client's concerns

12  with respect to that but you know even before the bankruptcy

13  was filed, U LOCK and its counsel were going to try to make

14  similar types of arguments anyway, so I don't know that there's

15  anything out there as far as an insurance against future

16  litigation.  That's just how it works.

17        So all I can say is that if the trustee is going to

18  put this -- these assets on the market, it's open and available

19  for anyone to make an offer for, and anyone can come in and try

20  to acquire those assets.  All right, anything further from Ms.

21  Biros at this point?

22        MS. WENRICH:  Not with regard to the sale, no.

23        THE COURT:  All right.  Let me hear from U LOCK.

24        MR. ROTH:  Well, Your Honor, we think that we should

25  not allow the Biroses to take possession at this point, because

1  all those claims that could happen need to be resolved and we

2  don't believe that transferring possession to the Biroses would

3  facilitate that, and we would like to be able to defend those

4  actions and do what we need to do there.

5          THE COURT:  Okay.  Before I come back to Ms. Snyder,

6  Mr. Slone, did you have any further comment on the pending stay

7  relief motion at this point and whether the Court should

8  consider an expansion beyond what's already in its order

9  granting limited stay relief?

10         MR. SLONE:  I don't have any views on that, Your

11  Honor.  There is a limited stay.  The parties are still

12  bickering with each other over that, but I think it can work.

13  If the parties want to agree on some additional language,

14  that's fine with me.

15         THE COURT:  Let me come back to the purchase offer

16  you received for the claims.  So, you've received a $4,000

17  deposit at this point?

18         MR. SLONE:  I did receive a $4,000 deposit and put it

19  in my trustee account, Your Honor.

20         THE COURT:  And what would be the terms of closing on

21  this?  How soon would the closing occur?

22         MR. SLONE:  I believe it's 30 days after confirmation

23  of the sale, Your Honor.

24         THE COURT:  Okay.  All right, Ms. Snyder, anything

25  further from you at this point?

1          MS. SNYDER:  Just that what you said makes sense to
2    me that I still believe they're trying to get preference over
3    me, but I do have standing now.  I thought Mr. Zebley would be
4    here today, but there's really nothing more here for me today.
5          THE COURT:  Has there been a new development in that
6    case?
7          MS. SNYDER:  He just agreed with me that we would
8    work something out, that I had stand in $80,000.
9          THE COURT:  Okay.  All right, anything further from
10   the parties at this point?
11         MS. WENRICH:  Your Honor, we have I guess questions,
12   maybe comments, regarding the appeal.  I'm not sure if you want
13   to discuss that --
14         THE COURT:  No, I'm prepared to have everything on
15   the table at this point, but anything else on the pending
16   motion?
17                    (No audible response)
18         THE COURT:  Okay.  Well, on the motion as it stands,
19   I'm finding, as I indicated, there is no basis to dismiss the
20   case, as the trustee has conjured up value here based on the
21   two sale -- or the proposed sales that he intends to bring
22   within the next week, so I'm going to deny that portion of the
23   motion as it pertains to the request for dismissal.
24         As to the request for stay relief, I note that I did
25   previously enter an order at the very outset of this case

1  providing limited stay relief.  I haven't really heard a basis

2  that suggests to me that Ms. Biros is not adequately protected

3  to the extent that she needs additional stay relief beyond

4  what's been previously provided.

5          And, to the extent that there is a further request, I

6  think the best way to handle that is, as I indicated, an

7  attempt to work out something consensually with the Chapter 7

8  trustee so that, as long as it doesn't interfere with the

9  trustee's administration of the estate or the value of the

10 assets that he's attempting to liquidate, I would consider that

11 on consent, and that can be submitted without further motion.

12 We'll certainly have an opportunity for parties to be heard on

13 that.

14         But just right now, I'm not really clear on exactly

15 what it is above and beyond that would be requested, other than

16 a wholesale lifting of the stay, which I'm not prepared to do,

17 given that the trustee still has assets to liquidate.  So, I'm

18 going to deny the rest of that motion without prejudice to

19 bringing a consent motion or a consent order, I should say, in

20 the near future.

21         And then, as to the motion for sanctions, I will deny

22 that for now with prejudice -- without prejudice, pending the

23 resolution of this case because I do think that in the event

24 that that needs to be reassessed, that can better be viewed at

25 the lens of seeing how this case played itself out.  So, that

Case 22-20823-24-T163 Doc Document Filed 08/31/22 Page: 2 Entered Date Filed 06/14/2029 Desc Main
Document    Page 15 of 18

15

1  deals with that motion at this point.

2      One other item I do want to close the loop on is this

3  May 13th order, and, you know, we had had some prior

4  discussions about this at the last hearing.  I had indicated

5  before that I had concerns about stay violations amongst all of

6  the parties here.  And with respect to that, we have the

7  implication of the May 13th order issued by the State Court,

8  which from the Court's review appears to be void based on a

9  stay violation itself.

10     So, based on that, I do wish to have the trustee

11 investigate those issues and have 30 days that to the extent

12 that the trustee finds that there's, in his view, any 362(k)

13 violation by any party here, whether it be U LOCK, Ms. Snyder,

14 or Ms. Biros, that he bring an appropriate motion to address

15 that with the Court within that 30-day period.  Is that

16 understood, Mr. Slone?

17     MR. SLONE:  Yes, Your Honor.

18     THE COURT:  All right, thank you.  All right, so, Ms.

19 Wenrich, you wanted to ask a question or address something with

20 respect to the appeals?

21     MS. WENRICH:  Yes.  Thank you, Your Honor.  With

22 regard to the appeal, I guess, we question whether the debtor

23 has any standing to bring the appeal given that the trustee is

24 in control.  I think it runs afoul of Weintraub (phonetic), I

25 think it's problematic altogether and I think it also ignores

16

1  some of your comments at the last hearing that the trustee is

2  in control and  making decisions.  I'm not sure what authority

3  any officers or directors of the debtor would have to make

4  decisions to file an appeal at this time.

5         THE COURT:  Unfortunately, those issues are beyond my

6  control at this point, because once the appeal is filed, then

7  those issues are within the domain of the District Court.  So,

8  what I feel about it, and what my thoughts are, and what I'm

9  able to do about that is limited at this point.  So, unless

10 anyone else wanted to have a discussion on it, I don't know

11 that there's any further benefit to be gained by the

12 discussion.  Anything from Mr. Roth?

13         MR. ROTH:  Nothing further.  No.

14         MS. SNYDER:  Nothing furhter.

15         THE COURT:  All right, very well.  Okay, anything

16 else that the parties want to address at this point?

17                   (No audible response)

18         THE COURT:  Okay.  You know, the other thing I'm

19 going to tell the parties, I mean, you've all come down here

20 and personally appeared for all of these hearings, and I really

21 do appreciate that.  That tells me that everyone's got

22 dedication to the case,

23         But I also realize you're all coming in from

24 Westmoreland County, and as someone who does that commute every

25 day, you are welcome to participate by Zoom if you wish.  The

17

1  only time I'm going to have parties here in person is if we're

2  going to take evidence and we're going to have witnesses.  So,

3  I leave that open to you so that you can cut down on costs, and

4  time, and effort going forward if you wish to do so.  Now,

5  certainly, if I think things are going to get out of hand then

6  I'll want the parties to come back here.  But I just don't want

7  to continue driving up expenses for all involved in this

8  transaction in this case, so just make that note.

9         All right.  So, just in closing, I've issued my

10 ruling on the remnants of the Biros motion to dismiss.  And

11 I've also directed the trustee to have 30 days to investigate

12 any potential 362(k) action that may have occurred on behalf of

13 any of the parties to this matter at this point.

14        And last, but not least, I leave it out there as an

15 order to show cause to the parties as to why I should not just

16 render that May 13th, 2022 order void on its face.  So, with

17 that, we'll consider this matter to be concluded for now, and

18 I'll wait to see the trustee's sale motions next week.  Thank

19 you all for being here.

20        MS. WENRICH:  Thank you, Your Honor.

21        MS. SNYDER:  Thank you, Your Honor.

22        MR. ROTH:  Thank you, Your Honor.

23                  *  *  *  *  *

24

25

# C E R T I F I C A T I O N

I, WENDY ANTOSIEWICZ, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.


/s/ Wendy Antosiewicz

WENDY ANTOSIEWICZ

J&J COURT TRANSCRIBERS, INC.        DATE:  August 31, 2022

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | |

<u>**DECLARATION OF GEORGE SNYDER IN REFERENCE TO CERTAIN EQUIPMENT**</u>

I, George Snyder, declare and state under the penalty for perjury that the following is true

and correct to the best of my knowledge, information and belief (28 USC 1746):

1.  My name is George Snyder.  I am making this declaration as directed by the

Court to provide information as to property removed from the Estate.

2. On October 14, 2022, I was directed by Trustee Slone not to go onto the site.  The

email from the Trustee stated, "We've received complaints that George Snyder is

bothering the workers on the U Lock property and telling them that they are not

permitted to be there. Please have him refrain from being on the property at this

time."  Most items were removed subsequent to this time.

3. As to the items on the Trustee's sale list, I did not remove any of the items.  The

disposition is as follows:

| ITEM | DESCRIPTION | LOCATION | DATE/INCIDENT |
|---|---|---|---|
| A-1 | 20 pound propane tank | U Lock | n/a |
| A-2 | Ohio Body Mfg Trailer AXEC-1498 | U Lock | n/a |
| A-3 | 977 CAT Trxcavator 53A6822 | Biros Property | Unknown date of removal, removed in last 45 days |
| A-4 | Vintage Drott Skid Shovel | Biros Property | Unknown date of removal, removed in last 45 days |

| A-5 | 4 Trailers (same as item 1 on schedule B) | U Lock | n/a |
| A-6 | Tractor Trailer 201 | U Lock | n/a |
| A-7 | Case 880C Excavator | Biros property | Removed Thursday, November 10, 2022 |
| A-8 | Michigan 85iii front end loader | Biros property | Removed on unknown date in last 45 days. |
| A-9 | Blue Ford with Snow Plow | Unknown location | Removed by Andy Biros and Hunter Towing on July 13, 2022. |
| A-10 | Ford F-250 Custom Red and Green | Location unknown | Moved on unknown date |
| A-11 | GMC Flatbed | Location unknown | May still be at U Lock |
| B-1 | 4 mobile homes as is (same as A-5, above) | U Lock | n/a |
| B-2 | Red Beaver Tail drop deck low boy trailer | Unknown location | Removed October 22, 2022 |
| B-3 | CAT 941 Loader no motor | Biros property | Removed on unknown date in the past 45 days. |
| B-4 | 2 boats on trailers | Placed in dumpster at U-Lock. 1 Trailer remains at U Lock but was destroyed | Items placed in dumpster by Biros family and destroyed. |
| B-5 | Various 55 Gallon Drums | U Lock | n/a |
| B-6 | Clark Pneumatic Fork Truck | Location unknown | Removed in the last 45 days |
| B-7 | Red Diamond Rio Triaxle | Biros Property | Removed in the last 45 days |
| B-8 | Blue Ford F150 plow truck 49-302B21 | Unknown location | Removed on July 13, 2022, by Andy Biros and Hunter Towing |

| B-9 | American Mobile Crane | Biros Property | Removed in the last 45 days |
| B-10 | Lot of Misc. Scrap | Unknown location | Tons of metal scrap removed from the property. |

4. On or about October 10, 2022, a man with license plate LHJ 6221 and a dump truck with plate YMW 7659  stole some of my shelving from U Lock and installed a chain and post at the entrance for Christine Biros.

5. On November 20, 2022, Robert Biros and Andy Biros removed an auto trailer with an unknown person in a white truck with license plate ZKN 1034.  This trailer belonged to Marra's Landscape and was in my care to aid in moving items belonging to me or the tenants at their request.

6. I removed the following property that belongs to me except where I stated otherwise (the tanks).  The present location of the property is 150 Leger Road, North Huntingdon, Pennsylvania.  I have additional personal property that I own on the U Lock premises.  The trustee asked for rent in November 2022 and will not release other items to me without some unknown rent.  Prior to November 2022, the Trustee did not ask for rent:

   a.   **10 Shipping Containers:**  On December 5, 2021, before the bankruptcy, I removed a shipping container.  On June 2 and June 9, 2022, I removed 9 additional shipping containers.  U Lock does not own these containers.  I purchased them from Frances Jaquette and Nicholas Schur on various dates in  2001 for $500 each.

   b.   I removed two 10,000 gallon poly watertanks from U Lock's property on June 9, 2022.  These belong to U Lock.  I thought they were on the

schedules.  I moved them pursuant to this Court's limited relief from stay Order.

c.  On May 29, 2022, I moved a storage trailer (Southern Rail) to U Lock. On the morning of October 9, 2022, with notice and permission from the Trustee Mr. Slone, I removed it off the property.  This did not belong to U Lock and was not on the property at the time the bankruptcy was filed.  I purchased this trailer in 2008 from Scott Snyder and Trafford Corp for $100 in 2008.  (Ms. Biros wrote to Trustee Slone on October 10 stating that I removed this trailer.  Indeed, I did cause it to be removed).

d.  I moved a pallet of Unistrut that I bought for $50 from a liquidation sale in Wilkinsburg.  The never belonged to U Lock.

e.  I moved approximately six to eight pallens of shelving components I bought from a pet store liquidation sale in Monroeville, Pennsylvania, in 2017.

f.  I moved a pet scale I bought at the same liquidation sale.

7.  I walked the property with Trustee Slone and showed him the items omitted from the schedules due to what appears to be an error.  At the creditors meeting I promised to amend the schedules.  I have told Mr. Slone that I needed to take an inventory to give him a list of U Lock items and a list of my remaining personal items so that there would not be two amendments.  Mr. Slone has promised to give me a time to take the inventory, but he has not yet done so.

Dated this 1st day of December 2022.

_____
George Snyder

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | |

**SUPPLEMENTAL DECLARATION OF GEORGE SNYDER IN REFERENCE TO
CERTAIN EQUIPMENT**

I, George Snyder, declare and state under the penalty for perjury that the following is true and correct to the best of my knowledge, information and belief (28 USC 1746):

1.   My name is George Snyder.  I am making this declaration as directed by the Court to provide information as to property removed from the Estate.

2.   In my Declaration that I prepared yesterday and upload in the night, I forgot an item I removed that does not belong to the Estate.  I removed an old yellow tri-axle tilt bed trailer I purchased from a former tenant of U Lock, Vince (Last name unknown) for $100.  The present location of this item is 150 Leger Road, North Huntingdon, Pennsylvania.

3.   This is the vehicle used to remove the red low boy (Estate property) on October 22, 2022.  This same truck was hired by the Biros family to move several tractor trailers that were on the property from their location to a different place near the highway.

**Appendix Vol. II, Page 227**



4.  This is Robert Biros with an unknown individual on October 14 2022 taking U

Lock scrap metal and loading onto a truck.



5. On October 21, 2022, after the meeting with the Trustee,
   Robert Biros loaded up this guys truck with the excavator

track.



6. This is October 12 2022, Robert Biros and Andy Biros damaging
   storage unit doors that were temporarily removed from a unit.



Dated this 2nd day of December 2022.

George Snyder

FILED
12/28/22 10:39 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-20823-GLT |
| | . | |
| | . | |
| U LOCK INC, | . | 5414 U.S. Steel Tower |
| | . | 600 Grant Street |
| | . | Pittsburgh, PA 15219 |
| Debtor. | . | |
| | . | December 15, 2022 |
| . . . . . . . . . . . . . . | . | 10:04 a.m. |

TRANSCRIPT OF [#217] EVIDENTIARY HEARING ON AMENDED MOTION TO
SELL PROPERTY FREE AND CLEAR OF LIENS UNDER SECTION 363(f).
RE: TANGIBLE AND INTANGIBLE PERSONAL PROPERTY OF THE ESTATE
BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Law Office of J. Allen Roth |
| | By:  J. ALLEN ROTH, ESQ. |
| | 805 S Alexandria Street |
| | Latrobe, PA 15650 |
| | |
| For Christine Biros: | Bernstein-Burkley, P.C. |
| | By:   SARAH ELIZABETH WENRICH, ESQ. |
| | ROBERT S. BERNSTEIN, ESQ. |
| | 601 Grant Street, 9th Floor |
| | Pittsburgh, PA 15219 |
| | |
| For Christine Biros, Lead Counsel in the State Court Action: | The Law Firm of William E. Otto |
| | By:  WILLIAM E. OTTO, ESQ. |
| | 4027 Old William Penn Highway |
| | P.O. Box 701 |
| | Murrysville, PA 15668 |

| | |
|---|---|
| ECRO: | Hayley Smith |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

For Shanni Snyder,          Grenen & Birsic, P.C.
Petitioning Creditor:       By:  JOHN B. JOYCE, ESQ.
                                 JEREMY J. KOBESKI, ESQ.
                            One Gateway Center, Suite 9W
                            Pittsburgh, PA 15222

TELEPHONIC APPEARANCE:

Chapter 7 Trustee:          Mahady & Mahady
                            By:  ROBERT H. SLONE, ESQ.
                            223 South Maple Avenue
                            Greensburg, PA 15601


                            - - -

3

1    THE COURT:  All right, good morning everyone.  This

2  is the United States Bankruptcy Court for the Western District

3  of Pennsylvania, and this is the time set for the hearing on

4  Case Number 22-20823, U LOCK INC.  I'll begin by taking

5  appearances first from the Chapter 7 Trustee.

6    MR. SLONE:  Robert Slone, Chapter 7 Trustee, Your

7  Honor.

8    THE COURT:  All right, good morning.  I'll take

9  appearances for the debtor, please?

10    MR. ROTH:  Allen Roth on behalf of U LOCK.

11    THE COURT:  All right, good morning.

12    MR. SNYDER:  George Snyder.

13    THE COURT:  All right, Mr. Snyder.  Take appearances

14  --

15    MR. JOYCE:  Good morning.  May it please the court,

16  John Joyce on behalf of Ms. Shanni Snyder.

17    THE COURT:  All right.

18    MR. KOBESKI:  And, Your Honor, Jeremy Kobeski also on

19  behalf of Ms. Snyder.

20    THE COURT:  Good morning.

21    MR. JOYCE:  And Ms. Snyder is present in the

22  courtroom, Your Honor.

23    THE COURT:  All right, good morning to you all.  All

24  right, and over here?

25    MS. WENRICH:  Good morning, Your Honor, Sarah Wenrich

4

1  and Bob Bernstein, as well as William Otto on behalf of

2  Christine Biros.  Ms. Biros is here, as well.

3        THE COURT:  All right, good morning.  All right,

4  anyone else who wishes to enter an appearance in this case?

5              (No audible response)

6        THE COURT:  All right.  We are here on the Continued

7  Sale Hearing involving the Trustee's Motion to Sell Tangible

8  and Intangible Property of the Estate.  And, as I said, we've

9  had two prior Sale Hearings and then, more recently, a site

10  visit that occurred, which I think has been very helpful in

11  sorting through some of these issues, but let me get some

12  updates from everybody before we begin.  And I'll start first

13  with the Chapter 7 Trustee.

14        MR. SLONE:  Your Honor, we did go for the site visit

15  on December 2nd.  Glenn Mowry, after that time, came to my

16  office with his attorney, Larry Burns, and he gave us the list

17  of items that he thought he owned.  Also there were some titles

18  and other items that proved his ownership.  I have shared that

19  with all the parties, Your Honor, that were interested in

20  purchasing.

21        That would be -- it went to Mr. Joyce.  It went to

22  Mr. Bernstein, Sarah Wenrich, and Mr. Otto.  They're all aware

23  of what Mr. Mowry's claiming, Your Honor.  That's for the

24  Personal Property, for the Tangible Property.  As to the other

25  property, Mr. Joyce has prepared an Order that I have reviewed

5

 1  regarding the Sale, depending on what happens today, Your

 2  Honor.

 3          THE COURT:  Okay.  All right.  Anything else,

 4  housekeeping items from any of the parties before we get

 5  started?

 6          MR. ROTH:  Nothing further.

 7          THE COURT:  No?

 8          MR. JOYCE:  I just -- I guess the only thing I would

 9  add is as to the items provided by Mr. Slone to me and the

10  other counsel, I don't believe -- there were a couple titles in

11  there, but it didn't cover all the property, at least for the

12  proof or backup that is listed on the Schedules of this Chapter

13  7 Debtor.

14          So there were a -- Mr. Mowry's submission had a

15  couple titles that showed, and if the Court will recall, there

16  was List A and List B.  List A were the items that were on the

17  Schedules and List B were items that go back to an August 8th

18  Declaration by Mr. Snyder that he wanted to put on the

19  Schedules, but I don't know if they were ever put there.

20          So, there were a few vehicles there, one or two, that

21  Mr. Mowry provided a title to.  There were other items he's

22  just claiming an ownership interest in, without any backup or

23  support.

24          THE COURT:  All right, but what I want to make sure

25  we're clear on, because I think the site visit, at least in my

 1  mind sorted through these issues, is that there should be no

 2  dispute now, what we're talking about in terms of assets and

 3  where they're located at this point.  And, if Mr. Mowry has

 4  claims against those, then this is an as-is/where-is sale is

 5  subject to those claims, but I would note that Mr. Mowry has

 6  been given notice of these proceedings, and, at this point, has

 7  not inserted himself into these proceedings or otherwise filed

 8  any pleading asserting an interest.

 9          So, that is what it is at this point.  So, any other

10  questions on the Tangible Assets before we move forward?

11          MS. WENRICH:  I guess, Your Honor, not with regard to

12  specifically the Tangible Assets, but just a couple of

13  questions about the proceedings today, if that's okay?

14          THE COURT:  Mm-mm.

15          MS. WENRICH:  First, I want to confirm that there's

16  no need to repeat the arguments or discussions that were put on

17  the record two weeks ago, is that accurate?

18          THE COURT:  Yes.

19          MS. WENRICH:  Okay.

20          THE COURT:  The record is what the record is at this

21  point.  My sense is that -- to give the parties an overview of

22  what I intend to do, is I've heard the objections of the

23  parties.  I'm prepared to issue rulings with respect to some of

24  these objections.  I'm also prepared to move forward with

25  soliciting bids today.

1        Bottom line is, this is the third Sale Hearing on

2   these assets.  The total scheduled value of these assets is

3   less than $25,000 for the Tangible Property and approximate

4   value of 104,000 for the Causes of Action that are listed.

5        It makes no sense for us to have any further Sale

6   Hearings after this.  We've had attorney time and expense from

7   all parties, additional resources, and we need to keep sight of

8   what the value of the Estate is here.

9        And so, that's why we're going to move forward with

10  taking bids today.  I just want to make sure that there's

11  clarifications at this point, so everyone is on the same page

12  going forward before we begin that process.

13       MR. JOYCE:  May I just --

14       MR. BERNSTEIN:  Your Honor, just to follow up on --

15       THE COURT:  Well, let me finish over here and then

16  we'll go.

17       MR. BERNSTEIN:  And I apologize for what may be back

18  and forth since Ms. Wenrich was not able to be here at the last

19  Hearing and some of this discussion happened at the last

20  Hearing.  The only point that I'd like to just protect for

21  discussion is the question of possession that I raised last

22  time as that the Intangible Sale should not transfer any right

23  of possession to the Intangible Buyer, especially if there is

24  Tangible Property still on the premises and the Trustee has to

25  administer it.  So, I'd like an opportunity to argue that if

1  the Court hasn't already decided it.

2         The second thing with regard to Tangibles and

3  Intangibles is that the Proposed Order, and I know we're not

4  there yet, the Proposed Order that Mr. Joyce has submitted, in

5  our view, confuses the Intangibles and the Tangibles and

6  changes the lots that were in the original Motion.  Very

7  simply, the original Offer and the original Motion included in

8  the Tangible Property shipping containers that were -- that are

9  across the street, apparently on Mr. Snyder's property.  Those

10  are in the Tangible Property in our offer.

11         The way we read Mr. Joyce's Proposed Order, the right

12  to recover those specific items would be transferred with the

13  Intangibles, and we'd just like clarification on that.  So,

14  those are the only two points that I wanted to raise, Your

15  Honor.

16         THE COURT:  So let me get clarification on the Order

17  that we're talking about.  Is that the Order that was uploaded

18  this morning, or is this a different Order?

19         MR. JOYCE:  Yes, Your Honor.  That was the Order that

20  was uploaded this morning that we shared with Mr. Slone and he

21  was fine with.  And Mr. Bernstein and I talked in an effort to

22  try to resolve the issues that he's articulating.  Now, Mr.

23  Bernstein and I talked last evening and he did not have an

24  opportunity until this morning because we crafted the language

25  to try to address the concerns that he's raising, because I

1  think we're not -- I don't think we're talking -- I think we're

2  -- we could -- we can resolve this because we're not really

3  opposed.  It's just clarification.

4       So, let me explain.  The current possession, if Ms.

5  Snyder was successful in bidding today, she would not have

6  current possession.  So, to the extent that there's items still

7  left on the property, that's the Trustee's.

8       The language we included clarifies because -- that

9  we're purchasing, if she were to succeed, Claims of the Trustee

10 to the extent that the Trustee has them, relating to the real

11 property, which would include title and any possessory rights

12 that the Estate had up to the point of the sale.  So, for

13 example, if there was a possessory right that the Estate had up

14 to today, and there's a Claim that the Trustee could bring

15 against a party for some violation of the stay, for instance,

16 during the Trustee's possessory interest, then that would be a

17 claim purchased by Shanni Snyder.  So, it's not -- we're not

18 asking --

19      THE COURT:  Okay, well, we're not doing that.  I

20 mean, to the extent that there's stay violations, I'm still

21 handling that as part of the Estate.

22      MR. JOYCE:  Yes, you would, Your Honor.  You would.

23      THE COURT:  And that's not being included in the

24 sale.

25      MR. JOYCE:  Okay.  The -- so we're asking -- yeah,

1  but there could be other -- I mean, to the extent there's a --

2  that we're purchasing the General Intangibles, which includes

3  whatever rights the Trustee's -- whatever claims the Trustee

4  may have related to the property up -- and not -- up and to the

5  sale and then to the extent in the future if they're successful

6  in any of their litigation.

7       THE COURT:  How I want to frame it is that the Cause

8  of Action -- the main Cause of Action is the right to avoid the

9  transfer of the real property or the deed, okay --

10      MR. JOYCE:  That's one.

11      THE COURT:  -- and any possessory rights that flow

12  from that.  But, the Trustee's current possessory right, to the

13  extent the Estate has one, is not being included in the sale.

14      MR. JOYCE:  Okay, that's our -- you know, we would

15  object to that and I'll note that for the record.  I understand

16  the Court's position on that.  We believe that we're entitled

17  to purchase all the general Intangible Claim rights of the

18  Trustee, and to the extent there was one -- and I'm not -- if

19  any, and I noted that in my language, if any.

20      So, we're not asking for actual possession, so

21  there's no issue, as Mr. Bernstein indicates, that, you know,

22  we're -- the Trustee currently has possession.  There are

23  items, not many, there, but they're there, and he's going to

24  have that tomorrow.  We're not trying to assert a current

25  actual possessory right at this moment.  We're just asking for

1 a clarification that to the extent actions occur, we're hearing

2 about environmental things that occurred, during the time that

3 that's a big issue here.

4        So, we have this issue of did some environmental

5 activities occur that could impair the property.  And we

6 learned that in September Biros did something to impact the

7 environmental aspect of this property, and there's -- and that

8 was when the Trustee had a possessory interest.  To the extent

9 that there's a cause of action or claim, Ms. Snyder would be

10 purchasing that.

11        And that's all we're asking the Court, is to make

12 sure that our general Intangible Rights of Claims includes

13 that, what I'll call, pre-sale possessory right -- possessory

14 interest, if any, that the Trustee had, because if they did

15 something to impair the property and she buys the claims, I

16 think she should be able to pursue that, and I don't want to

17 hear later on, well, you only bought prospectively you didn't

18 buy --

19        THE COURT:  Well, I mean, that's the way this was

20 teed up by the Trustee, is that this was any Claims Causes of

21 Action or assets that belong to the Estate as of the petition

22 date.  Any post-petition Causes of Action are a separate

23 matter.  I didn't understand the sale to include that, and I

24 wouldn't expect that to be the case.  That would be something

25 that the Trustee has the ability to pursue if he wishes to do

12

1  so.  Mr. Slone, let me --

2          MR. JOYCE:  I read the order to be --

3          THE COURT:  -- let me ask if there's any further

4  clarification that you want to provide to me on that, as far as

5  what you are structuring as part of this sale?

6          MR. JOYCE:  On that issue?

7          THE COURT:  I want to hear from Mr. Slone on that.

8          MR. JOYCE:  Oh, I'm sorry.

9          MR. SLONE:  No -- excuse me, Your Honor.  No.  I was

10 just selling any right that I would have had at the time of a

11 Filing, Your Honor.

12         THE COURT:  Okay.  So, that's what's being sold here.

13         MR. JOYCE:  Yeah, I'm reading -- I'm looking at the

14 Order -- or the Motion, or at least an extract to the Motion.

15 I'm reading it as all rights, claims, demands, actions,

16 including -- I don't see as of the time of the Petition but --

17         THE COURT:  Well, we're clarifying that for the

18 record now.

19         MR. JOYCE:  Yeah, and that's important, Your Honor.

20 That's something I would need to make sure I confer with my

21 client on because that's something I think --

22         THE COURT:  Okay.

23         MR. JOYCE:  -- she would need to understand.

24         THE COURT:  Sure.

25         MR. JOYCE:  The only other thing, just while we're on

**Appendix Vol. II, Page 243**

1  this before I have a moment, if the Court would allow me, is

2  the -- Ms. Snyder, if she bids, may want to elect to bid on the

3  Tangibles, and I don't know if there's anybody else here, but

4  probably not.  I have a question, in light of the fact that the

5  lion's share of the equipment, if you will, is on the Biros'

6  property and was moved by the Biros under some impression that,

7  according to the Affidavit, that they were doing something for

8  the benefit of the Trustee.  How does a buyer, who is not a

9  Biros buyer, get that equipment and avoid issues there because

10 that's --

11         THE COURT:  Well, that will be part of the Court

12 Order that would authorize the buyer to have the same period of

13 time to remove the equipment from that location that it would

14 be from the U LOCK property.

15         MR. JOYCE:  Yeah, I mean, we objected because of the

16 fact that when we went there, there was nothing there, and then

17 we have to go all do a site visit, and we were in court, what,

18 November 17th and no one on the Biros family told us that they

19 moved it.

20         THE COURT:  No, I'm treating it as if that property

21 was still located on the U LOCK property.  I mean, that's an

22 issue for another day to understand why it was moved and, you

23 know, the Court will look into that later on.  That's not a

24 matter for today.

25         But I'm treating it that that is U LOCK property.  We

14

1 will treat it the same as if it was located on the Route 30

2 property, and so any successful bidder for the asset would have

3 the same rights to remove it from that property as they would

4 if it was located off of Route 30.  Okay?

5         MR. BERNSTEIN:  Your Honor, our understanding is that

6 the Biros' bid that was made that teed up this sale would

7 comply with what the Court has said with respect to timing, and

8 so we have no problem with that.

9         As far as access to the property to -- for another

10 buyer who buys the property, that's fine as long as it works

11 with all three locations, including the shipping containers

12 which are specifically called out as part of the personal --

13 Tangible Personal Property in our offer.

14         THE COURT:  Okay.

15         MR. BERNSTEIN:  Thank you.

16         THE COURT:  All right.  Yes?

17         MR. ROTH:  I would point out the shipping containers

18 were property that belonged to George Snyder and not to U LOCK.

19         MS. WENRICH:  Is there any proof of that?

20         MR. SNYDER:  Those are my personal --

21         MR. JOYCE:  I don't think the land and sea containers

22 are even in the current Motion for Sale.  Yeah, maybe --

23         MS. WENRICH:  represented (indiscernible).

24         MR. BERNSTEIN:  They absolutely are --

25         MR. JOYCE:  Oh, okay.  Are they on Exhibit B then?

15

1          MS. WENRICH:  They're in the Motion, Paragraph

2   5.c.ii.

3          MR. JOYCE:  Okay.  Just because I just want to make

4   clarification whether they are or aren't.  I mean, so I'm not

5   concerned about them --

6          MS. WENRICH:  They're there.

7          MR. JOYCE:  I'm just making clarification.

8          THE COURT:  And, Mr. Slone, do you want to confirm

9   the Trustee's position with respect to the shipping containers?

10          MR. SLONE:  Your Honor, they were in the original

11   offer in the original Motion.

12          THE COURT:  They were?

13          MR. SLONE:  Yes, whatever interest -- again, whatever

14   interest I had.

15          THE COURT:  Okay.

16          MR. JOYCE:  I see, Your Honor.  They were moved into

17   the catch-all, so they were itemized in the earlier Sale Motion

18   as a separate item and then moved into the catch-all.  Yeah,

19   but they are there.

20          THE COURT:  All right, so it is similar to the Glenn

21   Mowry issue, which is, you know, purchaser acquires that,

22   subject to whatever ownership claims that someone else may

23   have, but we have the record as to who has made claims at this

24   point and we'll go from there.

25          All right.  I've heard from everyone.  Any other

1 preliminary comments at this point?

2                    (No audible response)

3          THE COURT:  So, what I have right now are two bids.

4  I have the Snyder bid for 63,500, which is just for the

5  Intangible.  I think at the part -- at the last hearing, there

6  was no interest in bidding on the Tangible because you had not

7  had an opportunity to see all of the assets at this point.  Mr.

8  Joyce, is Ms. Snyder offering a comprehensive bid, or is she

9  making a bid for just the Intangibles?

10         MR. JOYCE:  Can I have a moment --

11         THE COURT:  You may.

12         MR. JOYCE:  -- with her, Your Honor?  And, just for

13 one other clarification, and Mr. Slone can maybe answer this,

14 but I'll raise it with the Court, in my discussion with Mr.

15 Slone on the order yesterday and he said if nobody buys the

16 Tangibles, he was contemplating, and I'm not committing him,

17 but I'm asking if that's his -- he would abandon the Tangibles,

18 but I don't know if that's something he's committed to, but I'm

19 just -- he may want to respond.  If he would do -- if there was

20 no buyer for those.

21         May I have a moment, Your Honor?

22         THE COURT:  You may.

23                    (Pause)

24         MR. JOYCE:  Your Honor, we've had an opportunity --

25 if the Court's ready, I don't -- I didn't want to interrupt

Case 22-20823-JAD Doc 264 Filed 12/28/22 Page: 248 Entered 12/28/22 06:54:21 Desc Main
Case 23-21-T163 Document Page 17 of 43

17

1 Your Honor.  I saw you --

2          THE COURT:  I didn't see you come back in.  I'm

3 sorry.

4          MR. JOYCE:  Well, and I -- and you looked very, you

5 know, engrossed in what you were reading, and I didn't want to

6 interrupt you.  Okay.  So, is the Court going to allow separate

7 bid lots on the lots?  I mean, that's important for us to know.

8          THE COURT:  My preference would be no.  My preference

9 would be to do a comprehensive bid, but I want to -- I want to

10 hear what -- you know, is your client willing to provide a bid

11 for both the Tangibles and Intangibles?

12          MR. JOYCE:  Well, she is prepared to stay with her

13 bid on the general Intangibles, but if the Court is going to

14 require both then -- then she's going to have to bid on both,

15 but she prefers to just bid on the general Intangibles because

16 there's a lot of associated costs with moving the Tangibles,

17 and getting them off the Biros property, and given the history

18 of the parties, we don't want them claiming rent claims and

19 things like that.  So, she prefers to bid on the general

20 Intangibles with reserving the right to bid on both.

21          THE COURT:  Okay.

22          MR. JOYCE:  And if the Court's going to compel us to

23 stay within, you know, both -- inclusive of both, then I'll

24 have to -- we'll have to work from there.

25          THE COURT:  All right, well, let me -- let me ask

1  this question.  The property where -- that we went to first on

2  the site visit, the McKeesport property, is that a Biros

3  controlled property, or is that the property that belongs to

4  the salvage yard?

5      MS. WENRICH:  Your Honor, that's a Biros controlled

6  property.

7      THE COURT:  It is?  All right.  For clarification

8  though, we've already clarified on the record that any

9  successful bidder can remove the items from that property, so

10 long as they do so within the time frame set forth in my order.

11     I'm also operating under the -- the understanding

12 that since these should have been on the U LOCK property, there

13 is no rent charge or other charge to be assessed for the

14 removal of them from that site, if Ms. Biros is not the

15 successful bidder.  So, I think that should clarify two of your

16 concerns with respect to that.

17     MR. JOYCE:  One other extra clarification in the

18 purchase of her rights.  If she were the successful bidder,

19 would that include the Trustee's right to abandon the

20 Tangibles?

21     THE COURT:  No.  I mean, the Trustee has the right to

22 abandon, and if you choose to acquire the assets, then they're

23 you're assets, too.

24     MR. JOYCE:  Yeah.  I'm thinking under the general

25 Intangible acquisition, did that include the abandonment, is

1  the question.

2         THE COURT:  Well, I mean, I think my -- my bid

3  procedures order provided that if they were not removed within

4  a timely fashion, they were deemed to be abandoned, but it

5  still doesn't eliminate anything else that would result from

6  that for, you know, someone with title of those assets just

7  leaving them there on that third-party property, so that's --

8  that's not an issue for me to sort through, but that's how I'm

9  looking at it right now, which is if you buy the assets, you're

10 buying the assets.  You have that time frame to remove them,

11 and if you don't, they're deemed abandoned.  What comes from

12 that is up to the property owner and the buyer.

13        MR. JOYCE:  One more moment, Your Honor.

14                    (Pause)

15        MR. JOYCE:  Your Honor, she's prepared to amend her

16 bid to just include both lots, if you will.

17        THE COURT:  Okay.  So, we're talking about apples to

18 apples in terms --

19        MR. JOYCE:  Correct.

20  THE COURT:  -- of what's being conveyed.  Okay, so just to be

21   clear, we have the -- whatever rights the Estate has in the

22   assets that are listed on the Trustee's Notice of Sale, and

23   that includes any Intangible causes of action, but those are

24 causes of action that existed as of the petition date.  It does

25   not include any possessory rights separate from those that

1   would exist under the avoidance action, so the Estate's current
2    possessory interest remains with the Estate.  All other terms
3   of the sale would apply based on those that I've identified in
4   my November 15th order, which provided some clarity to what the
5    Trustee already included in his amended Sale Motion.  Again,
6           this is an as-is/where-is sale, and there are no
7      representations or warranties of any kind, but I have two
8     interested bidders who are going to make bids for both the
9   Tangible and Intangible Assets, as we've referred to them, and
10            so I guess we are prepared to begin.
11   Any questions from the Biros attorneys before we get started
12                    with the bidding?
13   MS. WENRICH:  Yes, Your Honor.  My question is with regard to
14    the administrative claim of Ms. Biros being used as a credit
15   bid, and we want to just get a hold of that, and an idea of --
16              THE COURT:  Sure.  Well --
17    MS. WENRICH:  -- and that issue, and I'm happy to make an
18                    argument --
19   THE COURT:  Here's where I am on the bidding and the non-cash
20    consideration.  I am placing the greatest emphasis on cash
21    offers.  That -- that is the old saying, cash is king.  As I
22   indicated at the last hearing, I didn't probably go into it in
23    detail, but the bond obligation for the remediation, at this
24   point I'm not finding that there is a need for that given that
25    this appears to be an environmental obligation, if any, that

1  would be an unsecured claim since it occurred during the gap

2  period and was not incurred in the ordinary course of business,

3      so I am not attributing any value to that in terms of

4                          evaluating the bids.

5  With respect to the administrative claim waiver, I do think

6   that there is certainly an expectation that there would be a

7    rent component for the Trustee's use and possession of the

8    property during this time period, and I believe it has been

9     listed as a $10,000 amount, which over the course of seven

10  months would be roughly $1500 a month, which I'm going to take

11     judicial notice, is a reasonable commercial lease amount.

12  MS. WENRICH:  Your Honor, may I clarify that waiver?  So, the

13     $10,000 amount was just a waiver of the first $10,000 of

14            distribution that Ms. Biros would receive.

15  THE COURT:  All right.  Well, this is the saying that "pigs get

16     fat and hogs get slaughtered."  I will give you a $10,000

17   credit.  If you choose to ask for more, then I'm not prepared

18    to do that on the record today, and if you want to present

19  additional evidence on that, you can, but I just -- I don't see

20          that as being a useful exercise at this point.

21   MS. WENRICH:  We would like to pursue that and be given the

22    opportunity, if you're willing to listen, as to why there

23    should be a higher amount provided for an admin claim that

24                      could be credit bid?

25  MR. JOYCE:  Your Honor, may I -- I'm going to object.  This is

1  premature.  We don't have a motion filed or proper opportunity

2  for notice for the parties to object as to the benefit of that

3  claim.  There's all kinds of questions about whether there were

4   environmental things done and who did what.  I -- I object to

5   any, on behalf of my client, to any allowance of that.  It's

6                         premature.

7   If they have a valid claim and they can prove a benefit to the

8  Estate, after this hearing they can come in and present it, and

9  if there's cash from this proceeding, if it's their own cash or

10  my client's cash, it's going to kind of flow right down to them

11  as a top priority administrative claim, and so money would come

12                  back to them if they were allowed.

13  I object to -- you know, I'm noting my objection to any of that

14  as premature at this point.  I'm even -- don't know what terms

15   they're arguing, other than some sort of right to allow the

16   Trustee general possession, so I object.  That's my point on

17                       that, Your Honor.

18   THE COURT:  All right.  Well, at this point, I'm willing to

19  provide a credit of $10,000 as an acknowledgment of what is the

20  reasonable rent for the waiver.  Beyond that, I -- I don't have

21   enough information at this point.  And, again, I think the

22  thing that everyone is losing sight of here is the true nature

23   of the value of this Estate.  I mean, you are litigating this

24  thing like this is <u>Enron</u>, and this is not <u>Enron</u>.  This is a --

25  basically, a half storage unit, half scrap yard area in North

1       Huntington.  And so, I know that there's animosity between

2   these parties, but that's what's generating these issues.  This

3   is not based on any cognizable appreciation of what the value

4    is of these assets.  This is just merely being done out of

5    spite to go back and forth, and so I'm trying to cut through

6   the nonsense.  I've got a Trustee who's in the middle of this,

7   and I think some common sense needs to prevail with respect to

8    this.  Unfortunately, there's a lack of common sense at this

9                                point.

10  So, right now what I have is, I have two bids.  I have a Biros

11          bid for $31,000 in cash, and a $10,000 credit for

12  administrative rent.  I have the Snyder bid that was originally

13  63,000 for Intangibles, and I understand you are amending that

14           bid to now include the Tangibles, as well.

15                  MR. JOYCE:  Correct, Your Honor.

16         THE COURT:  All right, and are you modifying the --

17               MR. SLONE:  Sixty-three five --

18           MR. JOYCE:  Sixty-three thousand five --

19  THE COURT:  Are you modifying the dollar amount to include the

20                            Tangibles?

21     MR. JOYCE:  I'm sorry, Your Honor.  Have we  allocated?

22  THE COURT:  Are you modifying the dollar amount, or is it still

23                            63,500?

24             MR. JOYCE:  No, $63,500 for --

25                  THE COURT:  Everything?

1      MR. JOYCE:  -- two -- yeah, both lots.  Everything.

2  THE COURT:  All right.  So, as I sit here now, I have the Biros

3  bid which I'm valuing at $41,000, and I have the amended Snyder

4  bid, which is being valued at 63,500.  So, I'm prepared to take

5     higher and better bids from this point on.  Any further

6  clarifications before we proceed?  Again, all other sale terms

7                    as previously explained.

8    THE COURT:  Okay. So, with that, the highest bid that I have

9                      right now is --

10                    MS. WENRICH:  Oh --

11   MR. BERNSTEIN:  I'm sorry, Your Honor.  Were you asking for

12                  more bids or clarification?

13      THE COURT:  I was asking if anyone wanted any other

14                      clarification?

15   All right, so at this point, the high bid is from Ms. Shanni

16  Snyder at 63,500.  Does the Biros team wish to make a higher or

17                better offer for the assets?

18   MS. WENRICH:  Yes, Your Honor.  Ms. Biros would like to bid

19  65,000, which would be the 55,000 cash, plus the $10,000 admin.

20    THE COURT:  Okay.  So, the current bid from Ms. Biros is

21  65,000, which includes 55,000 in cash.  Does Ms. Snyder wish to

22        make a higher or better offer for the assets?

23      MR. JOYCE:  Yes, Your Honor, $70,000.

24            THE COURT:  Seven zero?

25            MR. JOYCE:  Seven zero.

25

 1    THE COURT:  The current offer from Ms. Snyder is $70,000 for

 2     the assets.  Does Ms. Biros wish to make a higher or better

 3                                offer?

 4      MS. WENRICH:  One moment, Your Honor.  No further bids.

 5    THE COURT:  No further bids?  Okay.  So right now the high bid

 6     that I have is from Ms. Snyder is the amount of $70,000 for

 7     both the Intangible and Tangible Assets.  Do you wish to have

 8        Ms. Biros' bid of 65,000, 55,000 in cash and a $10,000

 9          administrative claim waiver list as the backup bid?

10                    MS. WENRICH:  Yes, Your Honor.

11    THE COURT:  All right.  Okay.  So, I find that the highest and

12     best bid, after competitive bidding, is Shanni Snyder in the

13     amount of $70,000.  I will register that as the highest bid,

14     and the backup bid of Ms. Biros at 65,000 as the backup bid.

15    In the event that the closing cannot occur on the Snyder's bid,

16      then the Trustee is authorized to proceed -- provided to go

17                    forward with the backup bid.

18    All right, so then going forward we have the sale order, unless

19     there's any other questions or issues that the parties wish to

20                    raise with respect to the bidding?

21                      (No audible response)

22        THE COURT:  Okay.  So, I now have the Sale Order,

23    which I have not had an opportunity to review, but I understand

24    there are some issues with respect to that.  So, let me come

25    back first to the Trustee.  Mr. Slone?

26

1          MR. SLONE:  Your Honor, a new sale order will have to

2   be prepared.  The sale order that Mr. Joyce had prepared did

3   not include the Tangible Assets.

4          THE COURT:  Okay.

5          MR. SLONE:  We'll have to provide a new sale order,

6   Your Honor.

7          THE COURT:  All right, very good.  But, any other

8   issues with the order that's been provided that I need to

9   address now to head off any potential issues going forward?

10          MR. JOYCE:  Your Honor, I would just note, in light

11  of the Court's further ruling, and we've noted our objection,

12  but we're not -- you know, we're beyond that.  But, I just --

13  for clarification, Mr. Bernstein, on behalf of the Biros, I

14  believe Item 5.c would have to be modified, at least the first

15  sentence may be modified or taken out.  The latter part of that

16  sentence, which states the order in no way limits or prejudices

17  the purchaser from asserting claims, causes of action regarding

18  future ownership or possessory rights of the real property, and

19  so on and so forth, I think is what the intent was as I heard

20  the Court earlier.  That's the litigation, if you will, Your

21  Honor, on the avoidance claims.

22          Otherwise, the language in the order substantially

23  follows what Mr. Slone had filed two -- two motions ago.  From

24  a historical perspective, the prior -- two motions ago for

25  sale, there was an order, it had a lot of the same language in

1   it.  For whatever reason, when Mr. Slone filed the most recent

2   Motion for Sale, he used the -- the form, general form, I think

3   he conveyed to me from some other sale, and -- because he had

4   read the Court's amended order that said -- I think your order

5   said the parties can work a sale order out afterwards.  He then

6   asked me if I had any comments to a proposed order, and I said,

7   well, let's go back and start with what you had two times ago

8   and then work it.  Of course we were working from an Intangible

9   standpoint.

10          So, I -- I mean, I don't -- we -- we had raised

11  objections to that sale order in our objection to the sale and

12  I believe, other than what we've just discussed about the

13  possessory interest after -- during the Trustee's whole time,

14  we would submit that with some tweaking this language should

15  remain.  Most importantly, 5.b.

16          THE COURT:  All right.  Well, you've already heard my

17  thoughts with respect to defining the cause of actions being

18  transferred and my thoughts on possessory rights.  But, I do --

19  and so you can incorporate those into the order based on the

20  events of today.  My expectation would be though that you would

21  provide me with a sale order no later than the close of

22  business tomorrow.

23          MR. JOYCE:  That's fine, Your Honor.

24          THE COURT:  Does that work?

25          MS. WENRICH:  Your Honor, we have a concern with the

28

1 Paragraph 3 in the proposed order with the good faith finding.

2 I believe Your Honor needs to make a finding of good faith and

3 I'm not sure -- in fact, I would assert that the verified

4 disclosure did not disclose much of anything, and that there is

5 not any kind of record of good faith as to Ms. Snyder in

6 bidding and participating in the sale.

7        THE COURT:  Is there an allegation that Ms. Snyder

8 has acted in bad faith with respect to the sale process?

9        MS. WENRICH:  Yes, Your Honor, and as a straw party,

10 in particular and potential collusion with other parties, as

11 well, who may have otherwise been here to bid on the assets.

12        THE COURT:  Well, I -- I've not had anyone present me

13 with anything in the record that would suggest that she has not

14 been a good faith purchaser at this point.  If we -- if we need

15 to get into that, I'll spend some time getting into it, but let

16 me hear from the Trustee first about his dealings with Ms.

17 Snyder.

18        MR. SLONE:  Your Honor, she did file -- she did file

19 her Affidavit.  The money is being held by Mr. Joyce in his law

20 firm.  I haven't put any allegations of bad faith at this

21 point, Your Honor.  If that happens, then we'll have to deal

22 with it.

23        THE COURT:  What -- what allegations are you raising

24 as to how that impacted the sale process, or the auction and

25 bidding?

1          MS. WENRICH:  So, Your Honor, with respect to the

2    auction, I think it has been verified or it's in her Affidavit

3    that the money is coming from a loan from USAAG, who was

4    originally a bidder, and had they not been working together

5    now, it's our position that perhaps Ms. Snyder and USAAG could

6    have bid against each other further than my client was willing

7    to bid, which would leave more money for the Estate, and also

8    provide a higher recovery to all admin claims, and perhaps a

9    higher recovery to general -- or any recovery to general

10   unsecured creditors, which based on the sale right now, is not

11   occurring.

12         THE COURT:  Okay.  Well, there's no -- there's no

13   prohibition from parties working together on a bid.

14         MS. WENRICH:  There's not a prohibition, but I think

15   in this case, given the relationship and given the fact that we

16   have not been given a full disclosure, I'm not sure that the

17   evidence on the record establishes any finding of good faith.

18   In fact, I think it questions a lot of the circumstances and

19   would indicate, at least a potential, a high potential of bad

20   faith or lack of good faith for 363(m) purposes.

21         THE COURT:  So, are you prepared to put on evidence

22   of how Ms. Snyder has not acted in good faith in this

23   proceeding here, with respect to the bid?

24         MS. WENRICH:  Yes, I'm -- I'm ready to call her and

25   examine her as to how she obtained the funds and the

1  circumstances surrounding her relationship with USAAG.

2      MR. JOYCE:  And I will note, Your Honor, that she --

3  we're responding -- Ms. Snyder is actually -- the ultimate sale

4  was proffered by them.  Although, USAAG at one time was

5  interested, the ultimate sale that we're responding to and we

6  outbid is the Biros' bid, so they set the terms and the process

7  here, and she's just bidding on funds that she's been loaned.

8      I don't see how there's any bad faith.  She didn't

9  set this up and try to structure it in any way that, you know,

10  slants it.  In fact, if anything, we felt the terms were

11  slanted against her and anybody else, and we raised those

12  objections.  But, I think her -- her Statement and Declaration,

13  under penalty of perjury and Affidavit, addresses very clearly

14  who she's getting the money from, and that it's a loan and, you

15  know, we can -- I mean, it's -- there's -- there's nothing more

16  to it than that.

17      THE COURT:  All right.  Well, here's what I'm going

18  to do first.  I want to give some clarification of where I am

19  on this.  I mean, I'm not sure that the parties are aware, but

20  I have a pretty high sensitivity to any funny business that

21  goes on in my 363 sales.  And as you may have seen, I wrote an

22  opinion on it about a year or two ago in the Primel case where

23  I found that a bidder did not act in good faith, and I actually

24  sanctioned that bidder for their actions.  So, I take that

25  seriously and I -- I certainly will delete a good faith finding

1  where I think it's appropriate.  But I can tell you, as I sit

2  here right now, I'm not seeing a colorable allegation that she

3  has acted in bad faith with respect to the auction process.

4        Again, I think this is coming back to trying to

5  litigate this case like it's a multi-million dollar enterprise

6  and this is, you know, raising issues and creating problems

7  that aren't there.  So, as I've gone through this process and

8  we've had three sale hearings and, you know, I've had my own

9  observations about, you know, Ms. Snyder's motivations by

10  commencing this case and what she's done with her own Chapter 7

11  case.

12        So, I mean, you know, I've made no bones about what

13  my thoughts are on some of those things.  But, as we are

14  dealing with the bidding process itself, I have not seen

15  anything to date that would suggest that she was not acting in

16  good faith in bidding for the asset or working with another

17  entity to obtain the funding to make that bid.  So, I'm not

18  really inclined to go down this road unless there is a there

19  there, because again we are wasting gobs of attorney time and

20  expense going through these issues for assets that have nominal

21  value here.  So --

22        MR. OTTO:  Your Honor?

23        THE COURT:  Yes?

24        MR. OTTO:  Pardon me.  Will you indulge me for a

25  moment?  I --

32

1          THE COURT:  I will, and I'll note for the record,
2    this is now a third attorney from Ms. Biros that has spoken at
3    this hearing today, which again underscores my problem with the
4    fact that this is being over lawyered and overmanaged.

5          MR. OTTO:  I understand that, Your Honor, and I
6    apologize for that, but if I -- if you'll indulge me for a
7    moment, I just want to bring a couple things to your attention.
8    First of all, in Ms. Snyder's 341 Hearing for her own
9    Bankruptcy Court, she has no assets, no hard assets.  She has
10   claims to different -- but she has no hard assets.  She has no
11   income.  She has no visible means of support.

12         She now has a 63,500 -- presumably she's going to get
13   enough money to close on the loan.  She has no way to pay that
14   loan, and so she would be in immediate default and USAAG would
15   have the right to come in and take it over.  Your order
16   required a full disclosure of all parties associated with it.
17   Nobody from USAAG is here.  Their mailing address is a drop box
18   in a small town in Connecticut.  We have not been able to find
19   them as an incorporated entity in any of the 50 states.
20   They're not authorized to do business in the Commonwealth of
21   Pennsylvania.

22         So, we have every reason to believe that the real
23   bidder here is not Shanni Snyder, but rather USAAG, and while
24   you can certainly make a decision to award it to Shanni Snyder,
25   what's going on is not necessarily a sale to Shanni Snyder,

1  ultimately.

2        And, in addition, Mr. Joyce has done a very good job

3  of dancing around the facts, but in point of fact, I've been

4  dealing with the Snyder family for five years in this case.  It

5  has not been a pleasant experience.  My client has expended a

6  tremendous amount in both my fees and Mr. Bernstein's firm's

7  fees.  The long and the short of it is, Mr. Roth has admitted

8  in open court that he hasn't been paid a dime for his service

9  to U LOCK.  If Shanni Snyder has no way to pay Mr. Joyce, then

10 he's either working for free, or he's being paid by somebody

11 else.  He doesn't have to disclose who he is being paid for,

12 and that's not a requirement, but the long and the short of it

13 is, this whole exercise is an exercise intended to force Ms.

14 Biros to continue to defend her property, and that makes this

15 bad faith, if not -- if not in strict construct to the

16 Bankruptcy Code, certainly in terms of reality.

17        MR. JOYCE:  Your Honor, may I reply?

18        MR. OTTO:  Thank you for your patience, Your Honor.

19        THE COURT:  Just a second.  I want to pull up the

20 verification.

21                    (Pause)

22        THE COURT:  All right.  Mr. Joyce?

23        MR. JOYCE:  Mr. Otto's statement on conjecture, the

24 funds are in my escrow account at my firm to consummate this

25 sale.  She has a loan with USAAG.  It has -- we have a note and

34

1  she has terms of that -- of that note that she's got to deal

2  with, but that's her private business, but you know if the

3  Court wanted more information on that, we could give the Court

4  more information on that, but --

5          THE COURT:  Well, who is USAAG?

6          MR. JOYCE:  USAAG is an investment company.  They are

7  -- I can -- I have -- I have a verified, certified under

8  penalty of perjury, certified statement from them if necessary

9  for the Court that I can provide the Court about them.  I can

10  summarize.  Mr. Rick Bowen is the Chief Financial Officer of

11  USAAG.  They maintain offices in Connecticut.  They have no

12  ownership interest in U LOCK.  They don't own stock in U LOCK,

13  and they don't -- they're not a creditor of U LOCK.  They don't

14  have any business activity with U LOCK other than, as the Court

15  knows, at one point they were interested in financing the

16  Chapter 11 and have an interest in developing the property, but

17  they don't have any relationship or affiliation with Ms.

18  Snyder, other than now Debtor-Creditor, or any of the other

19  parties here.

20          And then, you know, they learned about this property

21  back in 2008 from another -- 2018, I'm sorry.  I mean, I can

22  provide this to the Court, but it -- it addresses who they are,

23  and we also have a copy of the redacted note.  I don't want to

24  put the dollar amount in there because I don't want anybody to

25  know how much he had available for bidding, but I mean I think

 1 we're -- this goes back to the Court's initial comment, there's

 2 nothing colorable here.  This is Mr. Otto raising conjecture,

 3 and he has no evidence to the other.  I feel like I'm defending

 4 against something that he hasn't, you know, attacked with any

 5 concrete evidence.  I'm defending a negative.

 6           MR. OTTO:  Your Honor, just advise Your Honor --

 7           MR. JOYCE:  I can provide to the Court, Your Honor,

 8 under, you know, penalty of perjury, Mr. Rick Bowen, the CFO's

 9 statement, for the record.

10           THE COURT:  All right.  Mr. Otto?

11           MR. OTTO:  Your Honor, Mr. Joyce has said they're an

12 investment company.  Where are they?  Number one, why -- are

13 they incorporated anywhere?  Is it a fictitious name?  Are they

14 --

15           THE COURT:  What difference does it make?

16           MR. OTTO:  Because, Your Honor, this is a sham for

17 them not to show up in Court.  We don't know who USAAG is and

18 the fact of the matter is --

19           THE COURT:  Well --

20           MR. OTTO:  -- the way it's set up --

21           THE COURT:  -- if she got the money, though, from a

22 family member, it would be the same question I would have, is

23 what difference does it make?  How is it altering the bidding

24 process here?

25           MR. OTTO:  It would be nice to know who the real

36

1  parties in interest are, Your Honor, your order requires it.

2          MR. JOYCE:  The real party in interest is Ms. Shanni

3  Snyder, sitting right here, Your Honor.  And lenders, I

4  believe, don't even have to register in the State of

5  Pennsylvania if they're going to do lending.  I've dealt with

6  that issue in the past.  It's not -- I think Mr. Otto may be a

7  little bit off on that, but --

8          THE COURT:  I mean, the bottom line is, again, I have

9  concerns about how the involuntary petition was orchestrated

10  from the beginning, but as to this auction process, it's been

11  exposed to full and fair bidding.  We had the opportunity to

12  have other parties come in.  Your client had the opportunity to

13  bid.  Ms. Snyder had the opportunity to bid.  We exposed the

14  property.  I'm not seeing any collusion or something else that

15  would render this to be a not a good faith bidder based on

16  what's being proposed at this point.  You know, this is -- this

17  is an issue of understanding better more of where the funding

18  is coming from.  I've got disclosures on that, but a lot of

19  that's an issue for her case, as well.  So, I just -- I

20  struggle to see a there there, again.  So, anything else that

21  the parties want to raise at this point?

22                  (No audible response)

23          THE COURT:  All right.  I'm going to make some

24  additional findings for the record here.  First is -- I have an

25  objection from U LOCK that I indicated before that I wanted to

1  address, and I am finding that U LOCK does not have standing to

2  object to the sale process.

3      Standing in bankruptcy cases is narrower than an

4  Article III standing, and to have standing to object to a

5  Court's order a person must have, quote, a pecuniary interest

6  in the outcome of the bankruptcy proceedings; end quote.

7  That's from In re Cult Awareness Network, Inc. 151 F.3d 605,

8  Page 607 (7th Cir. 1998). Quote, only if a Chapter 7 Debtor's

9  assets are greater than necessary to pay the claims of

10 Creditors so that a Debtor has a reasonable chance of being

11 paid the surplus, will the Debtor have standing to object to

12 the State's administration? That's from In re Adams, 424 B.R.

13 434, Page 436, a Bankruptcy decision from the Northern District

14 of Illinois in 2010; also In re 60 East 80th Street Equities,

15 Inc., 218 F.3rd 109, Pages 115 to 16, which is a 2nd Circuit

16 Decision from 2000.

17     To qualify, a Debtor's pecuniary interest in a

18 potential surplus must be non-speculative, non-contingent, and

19 a direct benefit. That's from Friedberg v. Neier, 634 F. App'x

20 333, at Page 335, a 2nd Circuit decision from 2016.

21     In the present case there were substantial claims

22 against the Debtor. The Debtor has scheduled claims totaling

23 approximately $912,060, and to date claims totaling $787,742

24 have been filed. Included in this amount is a secured claim

25 asserted by Shanni Snyder in the amount of $263,100.

1    The Government claims bar date will not expire or

2  -- I'm sorry -- just expired yesterday, and administrative

3  claims are also accruing.  And to the extent that Biros is the

4  owner of property, she arguably has some claim for rent, as

5  well.  In contrast, the Debtor's assets appear to be minimal.

6  Debtor scheduled about $1800 in cash, which the Court

7  understands has increased insubstantially from some post-

8  petition rental payments, and the Debtor scheduled equipment

9  with an estimated value of roughly $20,000.  The ownership of

10 which has been disputed.

11    And, as an aside, I know yet again that Glenn Mowry

12 received notice of the sale with the exhibit identifying the

13 Trustee's intent to sell the disputed equipment, and has not

14 filed an objection or otherwise appeared in this Court.

15    Other Tangible Assets were simply given a de minimis

16 scrap value estimate, and the Intangible Assets have been

17 exposed to the market, and have generated two bids from already

18 interested parties far below the claims filed in this case.

19 So, this is true regardless of how the Court ultimately values

20 the various non-cash aspects of the bids.

21    So, based on those numbers, the Estate is willfully

22 insolvent, and to the extent that U LOCK asserts that the sale

23 price for the Intangible Assets is insufficient.  The Debtor's

24 argument appears premised on its belief that the development

25 rights to the real Estate, which the Debtor does not presently

1  own, is worth approximately 1.9 million.  And in order to
2  realize that benefit, an avoidance action would need to be
3  successfully brought against Ms. Biros, but the Estate lacks
4  funding to enable the Trustee to pursue this claim, and the
5  Debtor would have the same problem if granted derivative
6  standing.  And, even if there was, the claim appears
7  speculative, so there's no guarantee of any recovery for the
8  Estate.

9        Ultimately, we'll see what happens, but so far the
10 bids for this cause of action are not particularly high, which
11 is perhaps telling.  And assuming the property could be
12 recovered, there would still be sizeable impediments to
13 realizing the full developmental value.

14       First off, the Estate would suffer the administrative
15 cost of bringing the action to a final judgment, and the Court
16 is dubious of the Debtor's assertion that it could be done on
17 summary judgment, and it seems likely that whatever the outcome
18 the parties would insist on exhausting all appeals before the
19 judgment would become final.

20       And, second, a consequence of bringing real property
21 into the Estate would be that the pre-petition environmental
22 claims against U LOCK would become secured priority claims that
23 would need to be paid in full.  Again, there is no money in the
24 Estate to perform that remediation.  It is difficult to imagine
25 the Estate could receive a full developmental value when there

40

1  are presently environmental liabilities totaling over

2  $400,000, and according to the Debtor, the book value of the

3  property is only $325,000, which again is far below the

4  outstanding claims in the case.  So, in sum, I find that the

5  Debtor lacks standing to object to the sale.

6         With respect to the buyer's request for a $100,000

7  credit against the remediation bond, it was argued by Ms.

8  Snyder that those assumption of liabilities have no value to

9  the Estate and in support she supports -- she points to the

10 American Geoscience, Inc. Report, attached to Biros' proof of

11 claim Number 4, which is dated January 24, 2020, indicating

12 prior releases of hazardous substances or petroleum products

13 with a remediation cost estimate of $414,500.

14        A second report dated September 23rd, 2022 listing

15 the cost to remediate the soil contamination attributable to a

16 May 23rd, 2022 garbage truck fire is between 250 and $300,000.

17 Shanni Snyder thus contends that the environmental conditions

18 referenced in the second report were already in existence prior

19 to the June 17, 2022 order for relief, and as such they are

20 pre-petition claims.  Even liabilities from the May 23rd, 2022

21 garbage truck fire would seem to be a gap claim incurred not in

22 the ordinary course of business.

23        So, the Court finds that those observations are

24 compelling and support the reason for excluding the assumption

25 of the environmental liabilities and remediation bond is not

41

1  providing any actual value to the Estate and therefore no

2  attribution was given to that in the computation of the bids.

3         With respect to the waiver of the $10,000 rent claim,

4  I'll add onto the comments I made in Court earlier.  While it's

5  true that there is no written lease setting forth an amount for

6  the rent, it is equally true that the Estate has possession of

7  the property for the last seven months, and there's no question

8  that the Debtor's assets have remained on the property.

9  Admittedly, Biros has granted limited stay relief to begin

10 certain environmental remediation efforts and to secure the

11 property, but she has been repeatedly denied unfettered

12 control.

13        As such, Biros would be entitled to administrative

14 expense for her contribution to the preservation of the Estate,

15 and with that in mind, $10,000 credit would work out to, as I

16 indicated before, about $1500 a month, and for that purposes of

17 that estimation, I have no trouble concluding that the rent

18 waiver component of Biros' bid has some value, but anything

19 beyond that is difficult to quantify without a detailed record,

20 and already exceeds the scope of what we are looking at here

21 today in terms of the bid increments.

22        I think that covers the supplemental findings I'm

23 going to make at this point.  I will take another look at the

24 sale order once it's submitted and be prepared to view that by

25 the end of business tomorrow.  The expectation would be still

1  that closing would occur within ten days as indicated by the

2  Court's prior order scheduling the bid procedures in the

3  initial sale hearing.  With that, is there anything else the

4  parties wish to raise at this point?

5          MS. WENRICH:  Your Honor, I have a question just with

6  regard to procedure with the sale order.  Is that something

7  that you want us involved in, or is that reserved for --

8          THE COURT:  I would like the Trustee to circulate the

9  sale order to both bidders.  To the extent that there is a

10  consensus on the sale order, you can submit it.  I'm not going

11  to hold my breath.  And, so we will deal with what we did

12  before, which is if the parties can submit to me the order that

13  contains all the language that they agree to and then provide a

14  supplement of those provisions that are being challenged, and

15  then I will make a decision based on reviewing both the point,

16  counterpoint to which provisions I find are necessary to

17  include in the sale order.  So, again, similar to what I did

18  before when I granted the initial stay relief at the beginning

19  of the case.

20          MS. WENRICH:  Understood.  Thank you, Your Honor.

21          THE COURT:  All right, anything else?

22                  (No audible response)

23          THE COURT:  Okay.  Well, then I think that concludes

24  the matters presently set before the Court today.  The Court

25  will stand adjourned, and I will wait to receive the proposed

43

1  sale order, and we will move on from there.  Thank you.

2          MR. JOYCE:  Your Honor, thank you.

3          UNIDENTIFIED SPEAKER:  Thank you, Judge.

4                    * * * * *

5          **C E R T I F I C A T I O N**

6          I, WENDY ANTOSIEWICZ, court approved transcribers,

7  certify that the foregoing is a correct transcript from the

8  official electronic sound recording of the proceedings in the

9  above-entitled matter, and to the best of our ability.

10

11 /s/ Wendy Antosiewicz

12 WENDY ANTOSIEWICZ

13 J&J COURT TRANSCRIBERS, INC.      DATE:  December 28, 2022

14

15

16

17

18

19

20

21

22

23

24

25

FILED
1/6/23 3:45 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| U LOCK, INC., | : | |
| *Debtor*. | : | Related to Dkt. No. 249 |
| | : | |

## AMENDED[1] ORDER TO SHOW CAUSE

On December 1, 2022, the Court attempted to conduct a scheduled auction of the tangible and intangible assets of U Lock, Inc. ("Debtor") but was stymied by the revelation that much of the tangible assets to be sold had been removed from the Debtor's business premises. Even worse, the assets had allegedly disappeared prior to the Court-ordered on-site inspection window for prospective bidders to perform due diligence. And worse still, it was unclear what became of these assets as the various parties to this case accused each other of concealment or conversion.

To resolve all doubts as to the location of the tangible assets, the Court undertook two measures. First, it ordered the interested parties—George Snyder, the Debtor's principal; Christine Biros, the owner of U Lock's business premises; and Shanni Snyder, a creditor and qualified bidder—to file sworn affidavits signed under 28 U.S.C. § 1746 identifying: (1) any assets they removed from the Debtor's place of business; (2) the current location of any removed assets; and (3) the authority by which the assets were removed. Both George Snyder and Christine Biros filed affidavits admitting they were in possession of estate assets while Shanni Snyder swore that she was not.[2] Second, the Court conducted on-site inspections of each of disclosed locations of estate property with the interested parties to confirm the location and existence of the assets. During this view, there was a suggestion that Glen Mowry, who has asserted an interest in some of these

---

[1] The *Order to Show Cause* originally docketed on December 16, 2022 [Dkt. No. 249] neglected to set a deadline for written responses. That has been corrected herein by the addition of paragraph 6. This amended order is in all other respects identical to the original.

[2] See Dkt. Nos. 230, 231, 233-236.

assets, had removed items not found at any of the three locations visited.  It was also discovered that Christine Biros had failed to identify all assets that she re-located.

Now, in light of these affidavits, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.     A show cause hearing is scheduled for **January 27, 2023 at 10:00 a.m.** in Courtroom A, 54th Fl., U.S. Steel Tower, 600 Grant St., Pittsburgh, Pennsylvania, 15219.

2.     Christine Biros shall appear in person at the hearing and show cause why the Court should not impose sanctions against her, including but not limited to, monetary sanctions, for exercising control over property of the estate in violation of the automatic stay and interfering with the sale of estate assets pursuant to 11 U.S.C. § 363 in light of: (1) her admission that she removed estate assets from the Debtor's business premises; and (2) her failure disclose all estate assets in her possession in her sworn affidavit.

3.     George Snyder shall appear in person at the hearing and show cause why the Court should not impose sanctions against him, including but not limited to, monetary sanctions, for exercising control over property of the estate in violation of the automatic stay and interfering with the sale of estate assets pursuant to 11 U.S.C. § 363 in light of his admission that he removed estate assets from the Debtor's business premises.

4.     To the extent that Glen Mowry may have violated the automatic stay or interfered with the sale of estate assets, the chapter 7 trustee may, in his discretion, seek appropriate relief against him.

5.     In accordance with Judge Taddonio's procedures, parties other than Christine Biros and George Snyder may appear remotely by utilizing the Zoom video conference platform. Parties seeking to appear remotely must register for the hearing by submitting a registration form via the link published on Judge Taddonio's website (which can be found at: http://www.pawb.uscourts.gov/judge-taddonios-video-conference-hearing-information) by no later

than 4 p.m. on the business day prior to the scheduled hearing. All parties participating remotely shall comply with Judge Taddonio's General Procedures (which can be found at: http://www.pawb.uscourts.gov/sites/default/files/pdfs/glt-proc.pdf). **Parties who fail to timely register for remote participation will be expected to attend the hearing in person.**

      6.      On or before **January 20, 2023**, Christine Biros and George Snyder shall file written responses to this *Order to Show Cause*.

_____

Dated: January 6, 2023           GREGORY L. TADDONIO
                             CHIEF UNITED STATES BANKRUPTCY JUDGE

3

**Appendix Vol. II, Page 277**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re: | : Case No. 22-20823-GLT |
|  | : Chapter 7 |
| **U LOCK, INC.,** | : |
|  | : |
| *Debtor.* | : Related to Dkt. Nos. 258, 277, 285, 291 |
|  | : |

| | |
|---|---|
| Robert S. Bernstein, Esq. | John B. Joyce, Esq. |
| Lara S. Martin, Esq. | Jeremy J. Kobeski, Esq. |
| Bernstein Berkley, P.C. | Grenen & Birsic, P.C. |
| Pittsburgh, PA | Pittsburgh, PA |
| *Attorneys for Christine Biros* | *Attorneys for Shanni Snyder* |
| | |
| Robert H. Slone, Esq. | J. Allen Roth, Esq. |
| Mahady & Mahady | J. Allen Roth, Attorney at Law |
| Greensburg, PA | Latrobe, PA |
| *Chapter 7 trustee* | *Attorney for the Debtor* |

## MEMORANDUM OPINION

"Pigs get fat, hogs get slaughtered." Clichéd as it is, the adage thrives in bankruptcy circles precisely because it is a stark warning against the perils of overreach. Case in point: creditor Christine Biros filed a motion ("Motion") requesting an allowed administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code[1] arising from the chapter 7 estate's use and occupancy of her commercial property in North Huntingdon, Pennsylvania ("Property").[2] An expected and conceptually appropriate request. But the *Motion* obscenely demands a payment of $144,000—an amount more than twice the present value of the entire estate. Unsurprisingly, the *Motion* elicited universal derision from the parties in interest.[3]

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2] *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258.

[3] <u>See</u> *Trustee's Response to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant To 11 U.S.C. § 503(b)(1)*, Dkt. No. 277; *Shanni Snyder's Objections to Christine Biros' Motion*

Because the administrative expense claim as asserted is a fanciful nonstarter, the Court will deny the *Motion* without prejudice and cancel the self-scheduled hearing. Still, for the reasons below, the *Motion* is so plainly frivolous that the Court will require both Ms. Biros and her counsel, Attorney Robert S. Bernstein, to show cause why the Court should not impose sanctions under Bankruptcy Rule 9011.

## I.    BACKGROUND

The Property is essentially a junkyard on Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and inoperable vehicles. It contains two structures: a large, free-standing garage/warehouse and a rundown, single-story self-storage building. The Property is also subject to environmental contamination and was the site of a literal garbage fire post-petition.[4] Despite its present condition, the parties believe the Property is a "diamond in the rough" given its potential for commercial development. Indeed, the Debtor estimated the Property's value in 2022 as $1.9 million.[5] Frankly, the intense desire to reap those unrealized rewards has often driven the parties towards vitriol and litigation beyond all sense and reason for nominal, if not Pyrrhic, victories.

The Property was once owned by the Debtor and was its principal place of business. The Debtor purchased it in 2015 for $325,316 with funds advanced by Ms. Biros.[6] Though the Debtor operated a self-storage facility on the Property, the business and its minimal revenue (less than $1,500 per month) was incidental to the Debtor's aim to develop a retail plaza

---

*for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 285; *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)*, Dkt. No. 291.

[4]    See, e.g., *Claim No. 4.*

[5]    See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 6. Notably, no one has ever offered evidence in support of that valuation.

[6]    *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶ 14.

2

**Appendix Vol. II, Page 279**

on the site.[7]  Yet, after years of litigation, Ms. Biros obtained the exclusive deeds to the Property

through a final, non-appealable state court judgment in her favor.[8]  Then, creditor Shanni

Snyder[9] filed an involuntary chapter 7 petition against the Debtor in April 2022,[10] and a default

order for relief entered on June 17, 2022.[11]  As a result, the Debtor occupied the Property without

a lease agreement at the commencement of this case.

On the petition date, the Property housed the estate's tangible assets, which

consisted mostly of scrap of inconsequential value.[12]  For the last eight months, the estate

remained in possession of the Property pending a sale of those assets.  The process was

frustratingly protracted for two main reasons.  First, the sale of the tangibles became intwined

with the estate's far more alluring intangible assets, including the right to bring a speculative

avoidance action against Ms. Biros to recover the Property.  Second, many of the tangible assets

had disappeared from the Property by the initial sale hearing, prompting an investigation.

The estate's possession of the Property has been constant but not exclusive.  In

June 2022, Ms. Biros was granted limited stay relief to start environmental remediation activities

and has had effective control of the Property ever since.[13]  Her exercise of control has raised

concerns throughout this case.  For example, Ms. Biros allegedly barred the Debtor's tenants

---

[7]  See *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*, Dkt. No. 65 at 17.

[8]  See Biros v. U Lock, Inc., 255 A.3d 489 (Pa. Super. Ct. 2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022) (affirming trial court order directing conveyance of the property to Biros). On January 20, 2022, the Court of Common Pleas of Westmoreland County, Pennsylvania issued an order directing the release of deeds to the Real Property to Biros. See Biros v. U Lock, Inc., No. 17CJ04886 (Pa. Ct. Comm. Pl. January 20, 2022).

[9]  In addition to being a creditor, Shanni Snyder is the sister of the Debtor's director and majority shareholder, George Snyder.

[10]  *Involuntary Petition Against a Non-Individual*, Dkt. No. 1.

[11]  *Order for Relief under Chapter 7*, Dkt. No. 42.

[12]  See *Schedule A/B: Assets – Real and Personal Property*, Dkt. No. 60 at 1-10.

[13]  See *Order Granting Christine Biros Limited Relief from the Stay*, Dkt. No. 36.

3

from removing their personal property from the storage facility as directed by the trustee.[14]  It is

undisputed, however, that she removed estate assets from the Property to an undisclosed location

before the sale without informing the chapter 7 trustee.[15]  Whether her conduct violated the

automatic stay or improperly interfered with the sale of estate assets is the subject of a separate

*Order to Show Cause*.[16]  The point here is twofold: (1) the extent of the estate's possession of the

Property has been limited; and (2) Ms. Biros has seemingly extended the estate's possession by

delaying the expeditious resolution of this case.

A sale of the tangible and intangible assets for $70,000 closed on December 28,

2022.[17]  As a practical matter, the tangible assets—which again, consisted largely of scrap—

seemingly had only a modest impact on the ultimate sale price, as the prevailing bidder's initial

bid of $63,500 excluded them.[18]  This conclusion is also supported by the assessment of a

professional auctioneer who surveyed the tangible assets and declined to market them, as well as

the lack of interest from salvage dealers.  In any event, the sale proceeds currently represent the

only substantial asset of the estate, though the trustee collected some de minimis storage fees and

is examining potential avoidance actions against the Debtor's principle, George Snyder.[19]

Days after the sale order entered, Attorney Bernstein filed the *Motion* on behalf of

Ms. Biros.  As previewed, Ms. Biros asserts an administrative expense claim in the amount of

$144,000, arguing that the estate's benefit from the post-petition use of the Property is beyond

---

[14]    See, e.g., *Objections of George Snyder to Christine Biros' Motion for Allowance of Administrative Expense
        Claim Pursuant to 11 U.S.C. § 504(b)(1)*, Dkt. No. 291.

[15]    See *Verification of Christine Biros*, Dkt. No. 231.

[16]    See *Order to Show Cause*, Dkt. No. 249; *Amended Order to Show Cause*, Dkt. No. 278.

[17]    See *Report of Sale Regarding Tangible and Intangible Personal Property of the Estate*, Dkt. No. 266.

[18]    *Notice of Qualified Bids Regarding Sale of Tangible and Intangible Personal Property of the Estate under
        11 U.S.C. Section 363(f) Free and Clear of All Liens, Claims and Encumbrances*, Dkt. No. 224 at Ex. A.

[19]    The winning bid also provided a carve-out for the estate to share in any chapter 5 recovery. Id. While such
        a recovery is possible, it remains speculative as no avoidance actions have been filed or even articulated
        with any specificity.

4

**Appendix Vol. II, Page 281**

dispute.[20]   Employing a return-on-investment metric absent any lease, she contends that a reasonable value for the use of the Property is $18,000 per month.[21]   Although the *Motion* does not walk the Court through the arithmetic, it appears Ms. Biros assumes a return rate of 11.82% on a capital investment of $1.9 million.[22]

The *Motion* is particularly striking considering the Court's comments at the sale hearing.  As part of Ms. Biros' bid, the Court authorized a $10,000 administrative claim waiver, finding that roughly $1,500 a month was reasonable commercial rent.[23]   The Court subsequently refused to increase the credit bid, admonishing all parties for their "lack of common sense" in litigating without "any cognizable appreciation of what the value is of these assets."[24]   While the Court left determination of Ms. Biros' administrative claim for another day, the Court specifically cautioned her against making any hoggish demands.[25]

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

---

[20]   *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 39-42.

[21]   Id. at ¶¶ 20-22.

[22]   Id. at ¶¶ 23-30.

[23]   *Transcript of December 15, 2022 Hearing*, Dkt. No. 264 at 21:5-11.

[24]   Id. at 21:12-23:9.

[25]   Id. at 21:15-16.

**Appendix Vol. II, Page 282**

## III.    DISCUSSION

Section 503(b)(1)(A) of the Bankruptcy Code allows a first priority administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . . ."[26] To qualify for priority treatment under this subsection, the expense must arise from a "post-petition transaction between the claimant and the estate" and have "yielded a benefit to the estate."[27] Requiring a benefit to the estate is "merely a way of testing whether a particular expense was truly 'necessary.'"[28] Although the benefit need not be "readily calculable" in dollars and cents, it "must be *actual*, not hypothetical."[29]    Additionally, the "requested claims must be reasonable—as it is 'axiomatic that *unreasonable expenses . . . would never be necessary.*'"[30] Claimants "carry the heavy burden" of proving their entitlement to an administrative expense priority.[31]

The United States Court of Appeals for the Third Circuit has recognized that "the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."[32]    But this comes with an important caveat: "a debtor is generally required to pay only a *reasonable value* for the use and

---

[26]    11 U.S.C. § 503(b)(1)(A).

[27]    In re Energy Future Holdings Corp., 990 F.3d 728, 741 (3d Cir. 2021).

[28]    Id. (quoting Nabors Offshore Corp. v. Whistler Energy II, LLC (In re Whistler Energy II, LLC), 931 F.3d 432, 443 (5th Cir. 2019)) (internal quotation marks omitted).

[29]    Id. at 742 (emphasis in original); see also In re Marcal Paper Mills, Inc., 650 F.3d 311, 315 (3d Cir. 2011) ("By limiting priority to those claims that are actual and necessary, the Code prevents the estate from being consumed by administrative expenses, and preserves the estate for the benefit of the creditors.").

[30]    In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Express One Int'l, Inc., 217 B.R. 207, 211 (Bankr. E.D. Tex. 1998)) (emphasis added).

[31]    See In re Marcal Paper Mills, Inc., 650 F.3d at 315; In re Goody's Fam. Clothing Inc., 610 F.3d 812, 818 (3d Cir. 2010); Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999).

[32]    Zagata Fabricators, Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3d Cir. 1990).

**Appendix Vol. II, Page 283**

occupancy of the landlord's property."[33]  After all, an administrative expense is measured by the "benefit to the estate, *not* the loss to the creditor."[34]

From the outset, the Court notes that Ms. Biros is likely entitled to a reasonable administrative expense claim for the estate's post-petition use of the Property.  The tangible assets were (or at least should have been) kept at the Property while awaiting the sale.  They needed to be stored somewhere, and the estate enjoyed the added benefit of not having to move them.  This would appear to be a prototypical actual and necessary administrative expense under Third Circuit precedent.  Indeed, the Court authorized a $10,000 credit bid on account of Ms. Biros' prospective claim.  That said, an administrative expense claim in the amount of $144,000 is patently absurd.

The *Motion* suffers from a trifecta of problems.  First, a return-on-investment metric is obviously an inappropriate standard under section 503(b)(1)(A) because it ignores the actual fair market value of the benefit granted to the estate.  Instead, Ms. Biros simply demands a return on the alleged value of her investment.  This leads to the second issue: her calculation lacks a factual basis.  Ms. Biros' capital investment is $325,316, not the estimated $1.9 million, and the Property cannot be developed until she completes "costly" environmental remediation.[35]  Finally, the claimed amount is grossly unreasonable.  At $144,000, Ms. Biros' administrative expense claim is more than double the sale proceeds and likely the total value of the estate.  Even a single monthly payment of $18,000 greatly exceeds the value of the tangible assets that were

---

[33]     Id. (emphasis added); see also In re Goody's Fam. Clothing Inc., 610 F.3d at 819 (collecting cases recognizing that landlords are entitled to the fair market value of a debtor's use and occupation of premises).

[34]     In re Energy Future Holdings Corp., 990 F.3d at 742 (quoting In re Whistler Energy II, LLC, 931 F.3d at 443) (internal quotation marks omitted, emphasis added); see also Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A., 280 F.2d 119, 126 (2d Cir. 1960); In re C & L Country Mkt. of New Mkt., Inc., 52 B.R. 61, 63 (Bankr. E.D. Pa. 1985); In re Ram Mfg., Inc., 38 B.R. 252, 254 (Bankr. E.D. Pa. 1984).

[35]     See *Claim No. 4.*

7

stored at the Property.  In fact, the Debtor's annual revenues were less than $18,000 prepetition, to say nothing of the pittance the trustee's post-petition operation of the self-storage facility yielded to the estate.  Given these numbers, neither Ms. Biros nor Attorney Bernstein could have plausibly believed that $144,000 as requested by the *Motion* was an actual, necessary cost of preserving the estate.

There lies the bigger concern.  On its face, the *Motion* seemingly implicates several paragraphs of Bankruptcy Rule 9011(b).[36]  There was no basis in law for the return-on-investment standard urged,[37] which should have been apparent from the authority cited in the *Motion* itself.[38]  Nor was the calculation of the administrative expense well-grounded in fact.[39] And, most egregiously, the amount of the claim is so beyond the pale that the Court cannot fathom a proper, non-frivolous purpose to the *Motion*.[40]

Despite the Court's repeated warnings, the parties to these proceedings have continuously pushed the boundaries of reasonable conduct, needlessly complicating and delaying the administration of a modest estate.  The Court can only conclude that they have been

---

[36]     Bankruptcy Rule 9011(b) provides in relevant part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

[37]     See Fed. R. Bankr. P. 9011(b)(2).

[38]     *Christine Biros' Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)*, Dkt. No. 258 at ¶¶ 33-38.

[39]     See Fed. R. Bankr. P. 9011(b)(3).

[40]     See Fed. R. Bankr. P. 9011(b)(1).

8

**Appendix Vol. II, Page 285**

emboldened by the lack of real consequences to date.  No more.  The Court will not waste time

hearing a defective motion.  If Ms. Biros wants an administrative expense claim for the estate's

use of the Property, she can file a reasonable request that satisfies applicable law.  Meanwhile,

Ms. Biros and Attorney Bernstein will have to answer for the *Motion*.

## IV.    CONCLUSION

In light of the foregoing, the *Motion* will be denied without prejudice to the filing

of a reasonable request for an administrative expense claim.  Additionally, the Court will order

Ms. Biros and Attorney Bernstein to show cause why they should not be sanctioned under Fed.

R. Bankr. P. 9011(b).  This opinion constitutes the Court's findings of fact and conclusions of

law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent

with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: January 17, 2023

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Christine Biros
Robert Bernstein, Esq.

9

FILED
1/17/23 4:30 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Case No. 22-20823-GLT |
| | : | Chapter 7 |
| U LOCK, INC., | : | |
| *Debtor.* | : | Related to Dkt. No. 258 |
| | : | |

**ORDER TO SHOW CAUSE**

In accordance with the *Memorandum Opinion* of even date, it is hereby **ORDERED,**

**ADJUDGED,** and **DECREED** that:

1.    *Christine Biros' Motion for Allowance of Administrative Expense Claim*
*Pursuant to 11 U.S.C. § 503(b)(1)* [Dkt. No. 258] is **DENIED WITHOUT PREJUDICE** to the
filing of a reasonable request for an administrative expense claim.  The hearing scheduled for
January 27, 2023 with respect to this matter is **CANCELLED.**

2.    A show cause hearing is scheduled for **January 27, 2023 at 10:00 a.m.** in
Courtroom A, 54th Fl., U.S. Steel Tower, 600 Grant St., Pittsburgh, Pennsylvania, 15219.

3.    Christine Biros and Attorney Robert S. Bernstein shall each appear in person
at the hearing and show cause why the Court should not impose sanctions against either of them,
including but not limited to, monetary sanctions, for filing the *Motion* in violation of Fed. R. Bankr.
P. 9011(b)(1)-(3).

4.    On or before **January 25, 2023 at 4:00 p.m.,** Christine Biros and Attorney
Bernstein shall each file a written response to this *Order to Show Cause.*

5.    In accordance with Judge Taddonio's procedures, parties other than Christine
Biros and Robert S. Bernstein may appear remotely by utilizing the Zoom video conference
platform. Parties seeking to appear remotely must register for the hearing by submitting a
registration form via the link published on Judge Taddonio's website (which can
be found at: http://www.pawb.uscourts.gov/
'judge-taddonios-video-conference-hearing-information), by no later

than 4 p.m. on the business day prior to the scheduled hearing. All parties participating remotely shall comply with Judge Taddonio's General Procedures (which can be found at: http://www.pawb.uscourts.gov/sites/default/files/pdfs/glt-proc.pdf). **Parties who fail to timely register for remote participation will be expected to attend the hearing in person.**

Dated: January 17, 2023

_____
GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a     )
U-LOCK INC.                  )     Case. 22-20823-GLT
                             )
            Debtor.     )
                             )
—-------------------------------------- )

## <u>DEBTOR U LOCK'S REPLY TO THE RESPONSE OF CHRISTINE BIROS (ENTRY 298) TO THE AMENDED ORDER TO SHOW CAUSE</u>

Debtor U Lock Inc. ("U Lock"), by and through its undersigned counsel, files this Reply to the Response of Christine Biros (Entry 298) to the Amended Order to Show Cause:

1. Because Christine Biros maliciously attempts to impugn U Lock for doing what she specifically asked this Court to direct the Debtor to do and incredibly states she believed George Snyder "improperly removed assets and equipment from the site," U Lock files this Reply.

2. At Entry 298-1 and 298-2, which she marked as Exhibits A and B, Ms. Biros attaches pictures of a tow truck removing vehicles from U Lock during the beginning of this bankruptcy.

3. At page 7, paragraphs 11(a) and (b) of her Response, Ms. Biros proclaims that:

   Between June 8 and June 29, 2022, Biros believed George Snyder had improperly removed assets and equipment from the site.  On June 8, Biros observed a tow truck lifting a car from the site and she photographed the truck and car from across the road.  The tow truck driver confronted her about taking photographs.  When she asked what he was doing on the property, he said that he had permission from the owner, George Snyder.  [References Exhibit A].

   During that same period, members of the Biros family observed people engaged in what appeared to be disassembling and cutting up cars and taking the pieces away… . [References Exhibit B].

4. The Court should recall that Ms. Biros filed an "emergency" motion for relief from the automatic stay resulting in an Order entered June 3, 2022, that stated:

   U Lock shall remove all vehicles and trailers from the Property on or before the earlier of: (a) June 24, 2022… To the extent U Lock requires additional time, it may make a reasonable request for an extension from Ms. Biros that shall not be unreasonably denied.

5.  U Lock Inc. complied with this Order by having Mr. Snyder arrange for removal and recycling of the vehicles.

6.  Pursuant to the Court Order, the funds acquired for recycling the vehicles were retained in escrow by U Lock.

7.  In July 2022, U Lock took the funds it obtained and turned them over to the Trustee Robert Slone in the amount of $975.  *See* Attachment 1.

8.  As to paragraph 10(c) of Ms. Biros' Response, both she and her legal counsel know the difference between abandoned cars and the heavy salvageable equipment.  Ms. Biros and her legal counsel were present at the hearing and heard Mr. Snyder's testimony.  This Court viewed the equipment Ms. Biros moved during the site visit. Nobody in these proceedings can verily state that they believed that this Court's Order relating to abandoned cars referred to the heavy equipment she took.

9.  For the above reasons, the Debtor is perplexed by the argument that Mr. Snyder's complying with what Ms. Biros represented as a time sensitive emergency, and what this Court Ordered at her specific request, caused her to  move extremely heavy assets from the Estate nearly half a year later.

10. U Lock removed the abandoned cars per this Court's Order and gave the money to the Trustee.  Ms. Biros removed the assets of the estate for mysterious reasons still unexplained by her Response.

11. If Ms. Biros does not know the difference, and is unclear as to what she should do, she could have mentioned it during the hearings or at least asked one of her four attorneys what behavior is appropriate.

12. For this reason, U Lock takes exception and objects to the insinuations that its Officer, Mr. Snyder, did something wrong by moving cars in June 2022 per Ms. Biros' "emergency" request and this Court's Order.

Dated this 21st day of January, 2023.

Respectfully submitted,

U LOCK INC.

By:  */s/ J. Allen Roth, Esq.*

J. Allen Roth, Esq.
805 S. Alexandria St S
Latrobe PA  15650
(724) 537-0939
lawmatters@yahoo.com

COUNSEL FOR THE DEBTOR

FILED
2/1/23 4:24 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                          .    Case No. 22-20823-GLT
                                .
                                .
U LOCK INC,                     .    5414 U.S. Steel Tower
                                .    600 Grant Street
                                .    Pittsburgh, PA 15219
          Debtor.              .
                                .    January 27, 2023
. . . . . . . . . . . . ..           10:00 a.m.

TRANSCRIPT OF #249 AND #278 HEARING ON ORDER TO SHOW CAUSE:
# 230 - AFFIDAVIT FILED BY SHANNI SNYDER; #231 - AFFIDAVIT
FILED BY CHRISTINE BIROS; #233 - DECLARATION OF GEORGE SNYDER;
#234 - SUPPLEMENTAL DECLARATION OF GEORGE SNYDER; #235 -
DECLARATION OF GEORGE SNYDER; #236 - STATUS REPORT FILED BY
CHRISTINE BIROS; #294 HEARING ON ORDER TO SHOW CAUSE: #258
APPLICATION FOR ADMINISTRATIVE EXPENSES FILED BY
CREDITOR CHRISTINE BIROS; #228 STIPULATION BY SHANNI SNYDER AND
BETWEEN CHARLES O. ZEBLEY, JR., CHAPTER 7 TRUSTEE, AND
ROBERT H. SLONE, CHAPTER 7 TRUSTEE; #255 MOTION FOR RELIEF FROM
STAY FILED BY CHRISTINE BIROS; #274 MOTION TO ENFORCE ORDER
CONFIRMING SALE OF TANGIBLE AND INTANGIBLE PERSONAL PROPERTY OF
THE ESTATE UNDER 11 U.S.C. SECTION 363(F) FREE AND CLEAR OF ALL
LIENS, CLAIMS AND ENCUMBRANCES FILED BY SHANNI SNYDER
BEFORE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:           Law Office of J. Allen Roth
                          By:  J. ALLEN ROTH, ESQ.
                          805 S Alexandria Street
                          Latrobe, PA 15650


ECRO:                     Hayley Smith

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

For Shanni Snyder,           Grenen & Birsic, P.C.
Petitioning Creditor:        By:  JOHN B. JOYCE, ESQ.
                                  JEREMY J. KOBESKI, ESQ.
                             One Gateway Center, Suite 9W
                             Pittsburgh, PA 15222

For Christine Biros:         Bernstein-Burkley, P.C.
                             By:  ROBERT S. BERNSTEIN, ESQ.
                                  LARA S. MARTIN, ESQ.
                             601 Grant Street, 9th Floor
                             Pittsburgh, PA 15219

For Christine Biros,         The Law Firm of William E. Otto
Lead Counsel in the          By:  WILLIAM E. OTTO, ESQ.
State Court Action:          4027 Old William Penn Highway
                             P.O. Box 701
                             Murrysville, PA 15668

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:           Mahady & Mahady
                             By:  ROBERT H. SLONE, ESQ.
                             223 South Maple Avenue
                             Greensburg, PA 15601

Chapter 7 Trustee in         Zebley Mehalov & White, P.C.
Shanni Snyder case:          By:  CHARLES O. ZEBLEY, ESQ.
                             18 Mill Street Square
                             P.O. Box 2124
                             Uniontown, PA 15401


                        - - -

**Appendix Vol. II, Page 294**

## I N D E X

|                         |     | PAGE |
| ----------------------- | --- | ---- |
| **WITNESS STATEMENTS**  |     |      |
| GEORGE SNYDER           |     | 73   |
| ROBERT SLONE            |     | 75   |
| WILLIAM OTTO            |     | 82   |
| CHRISTINE BIROS         |     | 84   |

| **EXHIBITS**   | **ID.** | **EVD.** |
| -------------- | ------- | -------- |
| 1 through 7    | 89      | 92       |

**Appendix Vol. II, Page 295**

4

1          ECRO:  The Court may now come to order.  The

2   Honorable Gregory L. Taddonio presiding.

3          THE COURT:  All right.  Good morning, again,

4   everyone.  This is the United States Bankruptcy Court for the

5   Western District of Pennsylvania, and this is the time set for

6   the hearing on Case Number 22-20823, U LOCK INC.

7          I'll begin by taking appearances here in the

8   courtroom.  Start over here.

9          MR. ROTH:  Allen Roth on behalf of U LOCK.

10         THE COURT:  All right.  Good morning.

11         MR. SNYDER:  George Snyder.

12         THE COURT:  All right.  Good morning.

13         MR. JOYCE:  Good morning, Your Honor, John Joyce on

14  behalf of Ms. Shanni Snyder, and Ms. Snyder is present here in

15  the courtroom today.

16         MR. KOBESKI:  And good morning, Your Honor.  Jeremy

17  Kobeski as co-counsel with Mr. Joyce.

18         THE COURT:  All right.  Good morning.

19         MR. BERNSTEIN:  Good morning, Your Honor.  Robert

20  Bernstein, Bernstein-Burkley, on behalf of Christine Biros.

21  With me, attorney Martin.

22         THE COURT:  Okay.  Good morning.

23         MR. OTTO:  William Otto, counsel for Christine Biros.

24         THE COURT:  All right.  Good morning.

25         MR. BERNSTEIN:  And, Your Honor, Christine Biros is

**Appendix Vol. II, Page 296**

5

1 here in the courtroom.

2          THE COURT:  All right.  Good morning.

3          All right.  That covers all the appearances here in

4 the courtroom.  I'll take any additional appearances by Zoom.

5          MR. SLONE:  Robert Slone for the Chapter 7 Trustee,

6 Your Honor.

7          THE COURT:  All right.  Good morning.

8          MR. ZEBLEY:  Charles Zebley.  I'm Trustee in the

9 Shanni Snyder case.  Your Honor, I'm having trouble getting my

10 video to work.  I don't know if it's working for you, but I may

11 leave and re-enter the meeting.

12          THE COURT:  All right.  Well, I'll note your

13 appearance, and if you want to sort that out, you can do so

14 during the context of the hearing.

15          All right.  Any other appearances?

16                    (No audible response)

17          THE COURT:  All right.  We have several matters set

18 for the Court today.  I've got two Orders to Show Cause.  I

19 have a Proposed Stipulation between Shanni Snyder and the two

20 Chapter 7 Trustees involved in these cases.  I have a Motion

21 for Stay Relief filed by Christine Biros, and I have a Motion

22 to Enforce Sale Order filed by Shanni Snyder.

23          Before I begin, I thought it would be helpful to add

24 some preliminary comments for the parties and give you a road

25 map of where I intend to proceed and how I intend to proceed

**Appendix Vol. II, Page 297**

6

1  here today.  As you are all aware, sale of substantially all of

2  the Debtor's assets occurred, and it was reported to me that

3  that sale closed on December 28th, and the Bankruptcy Estate

4  received approximately $70,000 from that sale.

5       So, we are now entering a new phase for this case,

6  and so I want to set the table at this point as to what my

7  expectations are going forward so there can be no question and

8  no doubt in anyone's mind of what the expectations are going

9  forward.  At the outset of this case, it was apparent that

10 after years of State Court litigation, all of you had built an

11 extreme level of animosity and bitterness towards each other

12 and, unfortunately, that continued to spill over in this

13 bankruptcy case.

14      And a pattern has developed where consensus,

15 reasonableness and perspective was lost, and every minute issue

16 or detail was vigorously contested.  Each party claiming to be

17 the victim of the other party's actions and some of it was

18 justified, some of it seemingly not.  And during this time, it

19 seems that each side has been trying to play the -- trying to

20 game the system with what the Court has perceived as "gotcha,"

21 legal arguments and strategies that may have crossed the line

22 over permissive conduct.

23      And while it is expected that sometimes the parties

24 will be emotionally carried away with their cases, it is up to

25 the attorneys to be the tempering and calming influence,

**Appendix Vol. II, Page 298**

1  zealously representing their clients, but mindful as their role

2  as officers of the Court and subject to the rules of this Court

3  and the rules of professional conduct, they are held to a high

4  standard of conduct and doing so within the bounds of

5  professionalism, civility and the rule of law.  And despite the

6  Court's repeated admonitions and warnings, this activity has

7  not stopped, and to the contrary the litigation has

8  proliferated, and the arguments are becoming far more

9  irrelevant and tenuous.

10         And as I reflect back on the past six months of this

11  case, I question how we reached this point.  And as a judge, I

12  think you've found that I am not an excitable person,

13  and though through trying cases and hearings, and believe me

14  this one does qualify under that category, I try to maintain my

15  temperament with the parties.  And I'm not one to yell, scream

16  or raise my voice, but perhaps in not doing so, the parties

17  have gotten the wrong message, and, well, we are clearing that

18  up today.

19         I trust that you've all seen my Memorandum Opinion

20  from last week.  And the takeaway I'd like you to all have is

21  that my patience with this case has been exhausted.  And

22  Bankruptcy Rule 9011 is very much in play going forward.  And,

23  put simply, I'm done with the animosity.  I'm done with the

24  senseless vitriol, I'm done with the irrational tactics and I'm

25  done with the vexatious litigation.  And lest there be any

1 confusion, I'm talking to all parties here.  No one is being

2 singled out.  In the Court's view, there are no white hats in

3 this case, and make no mistake about it, I am completely done

4 with this nonsense.  Done.  And there will be consequences.

5       All right.  There are several matters pending before

6 the Court this morning.  And, historically, as you're all

7 well-aware, this case has had hearings that have been

8 needlessly long for three reasons.  First, a substantial part

9 of every hearing has been spent bickering about matters that

10 are tangential to what is before the Court.  And, indeed, even

11 today a number of the objections raised seemingly have little

12 to do with the actual relief requested.  And oral arguments

13 tend to devolve into nothing more than alternating accusations

14 and aspersions, and the parties are so wrapped up in their own

15 perspective that they hear what they want to hear instead of

16 listening to the Court.

17       So, to avoid these problems, I am adopting a

18 different tact for this hearing.  And rather than starting with

19 oral arguments for each matter, I am going to inform the

20 parties of my view, and indicate what I'm inclined to rule and

21 why.  And afterward, the relevant parties will have an

22 opportunity to respond to the Court's comments.  And if you

23 agree with my comments, I caution you to quit while you're

24 ahead, simply state your agreement and sit down.  And if the

25 arguments go in irrelevant directions, you can expect I'm going

**Appendix Vol. II, Page 300**

9

1  to shut it down.  I'm going to ask you to move on, or sit down.

2  And the Court will assume that any perceived attacks are

3  disputed, and discourage parties from rising to answer them.

4          So, those are our ground rules for today.  Everyone

5  understand?

6          MS. MARTIN:  Yes, sir.

7          MR. BERNSTEIN:  Yes, Your Honor.

8          MR. OTTO:  Yes.

9          THE COURT:  All right.  The first matter we have is

10  the Stipulation between Shanni Snyder, Trustee Slone and

11  Trustee Zebley.  And this is filed at Docket Number 228.  And

12  the background is that Trustee Zebley has reached an

13  arrangement that was filed in Shanni Snyder's personal

14  bankruptcy case in which he will receive the first 32,500 from

15  the U LOCK Estate distributions and convey standing to Shanni

16  Snyder to pursue any claims that the Estate might have against

17  U LOCK, her personal Estate.

18          The Stipulation, while filed in the case before Judge

19  Bohm is under consideration here because Trustee Slone entered

20  into it for the purpose of binding the U LOCK Estate, and it

21  contains representations addressing the treatment of Shanni

22  Snyder's claim, Claim Number 1-1.  And for the purposes of this

23  Estate, I do note a couple of provisions from there.  Quote,

24  Snyder acknowledges that the judgment claim she filed in the

25  U LOCK case is not secured in tangible and intangible assets of

10

1  U LOCK.  That's at Paragraphs 16 and 30.  And she did not

2  assert a lien on the assets being sold.

3        So, based on that, what I gather from the Stipulation

4  and the operation that we've used going through the sale

5  process is that Shanni Snyder has an unsecured claim, and that

6  was an alleged claim under Section 28 U.S.C. 3201.  At that

7  time the judgment was filed, U LOCK did not have title to the

8  real property.  And the sole response and objection to the

9  Stipulation I received was from Christine Biros.  She contends

10 that Shanni's claim against U LOCK is fraudulent and avoidable.

11 But I would note that in the eight plus months or so that this

12 case is active, no one has sought to object to Shanni Snyder's

13 claim.

14       And so as the parties are aware, I'm not sure --

15 well, the lawyers are aware, I'm not sure the parties are

16 aware, that under Section 502(a), the Court's hands are tied.

17 A claim is deemed allowed unless a party in interest objects.

18 So, as to the claim itself, the Court has not been shy about

19 expressing its concerns about the nature of the claim, but at

20 this point, no one has filed an objection to it.  So, that's

21 where we are at this point.

22       So, I am prepared, given that this Stipulation

23 cleared the way for some of the issues that were potentially

24 going to arise in the Sale Hearing, to approve the Stipulation

25 with a reservation of rights.  First off, that it makes no

Appendix Vol. II, Page 302

Case 22-20823-JAD Doc 306 Filed 02/01/23 Entered 02/01/23 16:34:02 Desc Main
Case 23-21 T-163 Document 406 Filed 18/01/23 Page: 306 Date Filed 06/30/2029
Document     Page 11 of 101

11

1  findings here that are binding on Judge Bohm or Shanni Snyder's

2  personal bankruptcy estate.  And, as an aside, I just want to

3  tell the parties, I am considering whether I should ask Judge

4  Bohm to transfer that case to me rather than have another Judge

5  get up to speed on the facts and circumstances of this case.

6       But, secondly, that approving the Stipulation would

7  not make any findings as to the propriety of Shanni's claim

8  against U LOCK, other than notwithstanding its designation as

9  secure that the claim will be treated as a general unsecured

10 claim in this bankruptcy case.  And, further, approval of a

11 Stipulation is without prejudice to any other rights, claims or

12 defenses to the Shanni Snyder claim.

13      So, based on that, I'll start with the objecting

14 party, Christine Biros, and ask if there is any issue with the

15 Court approving the Stipulation with those reservations?

16      MR. BERNSTEIN:  Thank you, Your Honor.  It's

17 important to us that this does not determine the validity of

18 the claim.  And I heard -- I'm pretty sure I heard Your Honor

19 say there's no finding as to the propriety of the claim.  Just

20 note for the Court that we have wanted to file an objection,

21 and we've hesitated because it's alleged that that claim is

22 property of the Shanni Snyder Estate.

23      We have a Motion pending before Judge Bohm to lift

24 the Stay to the extent the Stay would apply to that and allow

25 us to object to that claim here.  We expect before the hearing,

Appendix Vol. II, Page 303

1  the continued hearing on that on February 22nd, to have a

2  Stipulation with Trustee Zebley or an agreement with Trustee

3  Zebley that will allow that to go forward.  But that's an

4  explanation as to why, although we've maintained since the

5  beginning that the claim shouldn't be here, we have not filed

6  an objection because we didn't want to risk creating another

7  argument about the Stay.

8          THE COURT:  Okay.

9          MR. BERNSTEIN:  With the Court's comments then, we

10  would have no objection to the approval of the Stipulation.

11          THE COURT:  All right.  Thank you.

12          All right, Mr. Joyce, anything further from you?

13          MR. JOYCE:  Just a scrivener's error, Your Honor,

14  that I want to point out in the Stipulation so that everybody

15  is aware.  Beginning in Paragraph 24, the Stipulation that was

16  reached with Mr. Zebley when we cut and pasted over into here,

17  the word "Debtor" in Paragraph 24, the capitalized term Debtor,

18  I don't want that to be confused with the U LOCK Debtor.

19  That's the Snyder Debtor in her bankruptcy and that --

20  unfortunately, that scrivener's error carries over into

21  Paragraphs 26, 27, 28 and 29.

22          So, with that notation, I would just note that for

23  the record, and however the Court wants to handle that.  We

24  would be open to addressing it whatever way you feel is

25  appropriate.

13

1          THE COURT:  I'm satisfied with allowing the colloquy

2   on the Court record to stand as clarification of that.  But

3   that's certainly how I read the Stipulation, was that even

4   though it used the word Debtor it was referring to Shanni

5   Snyder as being the Debtor in her personal bankruptcy case, as

6   opposed to U LOCK.

7          Any issues with that, Mr Bernstein?

8          MR. BERNSTEIN:  No, Your Honor.

9          THE COURT:  All right.  Anything further from the two

10  Trustees with respect to the Stipulation?

11         MR. ZEBLEY:  Your Honor, Charles Zebley.  Nothing to

12  add.  I'm agreeable with what you proposed.

13         MR. SLONE:  Robert Slone.  I'm agreeable, Your Honor.

14         THE COURT:  All right.  Thank you.

15         All right.  Then I will approve the Stipulation with

16  those caveats.

17         All right.  The next matter on the agenda is the

18  Motion for Stay Relief.  And this is the Motion for Relief from

19  the Automatic Stay filed by Ms. Biros at Docket Number 255, and

20  I have objections filed by Shanni Snyder and George Snyder at

21  Docket -- it's Number 284 and 292.

22         So, my preliminary findings with respect to that

23  Motion is as follows.  While some of the allegations of the

24  Motion are questionable, particularly the Estate's continued

25  usage, is causing trash to accumulate or the real estate to

**Appendix Vol. II, Page 305**

1   depreciate in value which, by the way would seemingly cut

2   against claims made in other Motions.  Ms. Biros's entitlement

3   to Stay Relief would seem to be an easy call.

4         The Estate has remained in possession of the property

5   inasmuch as the tangible assets were, or they should have been

6   stored there pending their sale.  The Trustee also continued to

7   minimally operate the storage facility by collecting storage

8   fees and at this point the tangible assets have been sold and

9   are no longer the Estate's concern.  And the tenants have been

10  instructed to remove their property.

11        Moreover, Biros has not received any rental or

12  adequate protection payments from the Estate, and given its

13  limited resources, it does not have the financial wherewithal

14  to pay taxes or maintain insurance.  Accordingly, there is

15  cause for Stay Relief under 362(d)(1).  And, in addition, the

16  Court recognizes and acknowledges the State Court Orders which

17  determine that Biros is the owner of the real property.

18  Accordingly, U LOCK has no equity in the property, and given

19  that this is a Chapter 7 case, it is not necessary for a

20  reorganization.  So, relief under Section 362(d)(2) would also

21  seem to be appropriate.

22        Put simply, the Estate no longer has any need of the

23  property so there's no reason to prevent Ms. Biros from taking

24  full exclusive possession consistent with her rights as its

25  owner.

Appendix Vol. II, Page 306

1        As far as the objections, they seemingly ignore the

2    Estate's current lack of interest in or need for the property

3    and, instead, raise grievances about Ms. Biros's past conduct

4    and what she may do in the future.  And whether Ms. Biros has

5    violated Stay, or this Court's Orders, in the past has nothing

6    to do with whether Stay Relief should be granted today.  Nor

7    does granting Stay Relief prevent this Court or Judge Bohm from

8    addressing those matters in an appropriate procedural posture.

9    And to the extent that there is any question on that, I will

10   make that part of my findings here today.

11       Furthermore, granting Stay Relief does not

12   resuscitate the State Court's June 28, 2022 Order -- I'm sorry

13   -- the May 2022 Order which I previously found to have been

14   entered while the Stay was in effect.  Any amorphous concerns

15   about inappropriate actions Ms. Biros might undertake in the

16   future is not a basis to deny her Stay Relief today.

17   Similarly, if and when those concerns materialize into

18   something concrete that is within the Court's jurisdiction,

19   then it can be addressed through the appropriate procedural

20   mechanism.

21       Rest assured, while the Court is anxious to conclude

22   the administration of this Estate, it will retain jurisdiction

23   to address some of the conduct which has occurred in this case.

24   So, although the Court will expand upon this point later in the

25   context of the Motion to Enforce the Sale Order, Ms. Snyder's

Appendix Vol. II, Page 307

Case 22-20823-GLT Doc 306 Filed 02/01/23 Entered 02/01/23 16:34:02 Desc Main
Case 23-21-T16 Document 306 Page: 308 Date Filed 05/30/2024
Document    Page 16 of 101

16

1  acquisition of the Estate's rights to bring speculative

2  avoidance actions, which have yet to be filed, is not a basis

3  to prevent Ms. Biros from taking any and all actions consistent

4  with her rights as the property's owner.  Nor does the grant of

5  Stay Relief to Biros cut off Bankruptcy Court jurisdiction for

6  any claims Ms. Snyder allegedly acquired from the U LOCK

7  Estate.

8         To the extent that Ms. Snyder (sic) raises concerns

9  about the destruction or conversion of -- I'm sorry -- to the

10 extent George Snyder raises concerns about destruction or

11 conversion of his personal property, that would appear to be a

12 third-party dispute that can be resolved in another forum.

13        And, in addition, Shanni Snyder purchased whatever

14 rights U LOCK had to the assets on the property, and at 30 days

15 following the sale to remove them from their current locations.

16 And to the extent tenants have a Cause of Action against Biros

17 for restricting them from the property, that remains an option

18 in a viable forum, but it does not justify a denial of Stay

19 Relief under these circumstances.

20        To the extent Mr. Snyder asserts that there are

21 U LOCK business records at the property, those do need to be

22 turned over to the Trustee, and that shouldn't be complicated

23 to arrange.  Either Ms. Biros can collect them and turn them

24 over to Mr. Slone, or Mr. Slone can go there and get them

25 himself.

Appendix Vol. II, Page 308

17

1        But, in short, the Estate's use of the property is
2   not indefinite, and the time has now passed.  And so, for these
3   reasons, the Court is inclined to grant Stay Relief to Ms.
4   Biros subject to the release of the Debtor's business records
5   to Trustee Slone for the purpose of completing the Estate's tax
6   returns.
7        So, with that, I'll turn to the objecting parties to
8   tell me why that is not an appropriate finding with respect to
9   the Motion for Stay Relief.  So, I'll start with Mr. Joyce.
10       MR. JOYCE:  Kobeski will cover this.
11       THE COURT:  Kobeski.
12       MR. KOBESKI:  Your Honor, we're in agreement with
13   Your Honor's findings.  And we have no objection to what you've
14   proposed in regards to ruling on that Motion.
15       THE COURT:  Okay.  Thank you.
16       Mr. Snyder, you filed a response?
17       MR. SNYDER:  Yes.  A couple things.  I agree with you
18   for the most part.  My objection was some of the tenants that
19   needed to get their things.  One tenant is current still and
20   another tenant was only given nine days to get out.
21       The other thing I wanted to point out with the
22   business records there, there may not be a need for the
23   transfer.  I had access while they were working there.  The
24   place that the business records were, there was some -- we
25   recovered two boxes.  There was four boxes of flashdrives and

18

1  some files missing.  In the event, once we leave, they would

2  find something there that we overlooked, then if those could be

3  returned to us.

4          THE COURT:  Okay.  Thank you.

5          Mr. Bernstein, the business records -- you and your

6  client are consenting to turn those over to the extent that

7  they are still on the property at this point?

8          MR. BERNSTEIN:  Yes, Your Honor.  We have no

9  knowledge of business records, but we'll certainly cooperate

10 with the Trustee.  Our understanding is that at the end of the

11 day today, there is no reason for anybody, other than the

12 Trustee, to be on that property.  I'm a little bit concerned

13 that Mr. Snyder has talked about he took some records, but he

14 didn't take all the records.  It's confusing, but we will

15 cooperate with the Trustee.  When we go to the property later

16 today, presumably after the Court enters its Order, we will

17 explore whether we find any records, but we will certainly

18 cooperate with the Trustee if he wants to come and look for

19 records.

20         THE COURT:  All right.  Thank you.

21         MR. SNYDER:  I can maybe clear that up.

22         THE COURT:  What's that?

23         MR. SNYDER:  I can maybe clear that up.

24         THE COURT:  All right.

25         MR. SNYDER:  I don't believe there are any more

1   records there.  I don't think I have any need to get back on

2   the property.

3           THE COURT:  All right.  So, there are no further

4   records?  You have what you need to prepare the tax returns

5   then?

6           MR. SNYDER:  Well, there are some missing, but the

7   file drawers are empty, so I don't feel that they're anywhere

8   else on the property.

9           THE COURT:  Okay.  All right.  And, Mr. Slone, is

10  there anything further you wanted to address with respect to

11  the records or anything related to the Stay Relief Motion?

12          MR. SLONE:  No, sir.  I think it should be entered.

13          THE COURT:  All right.  Thank you.

14          All right.  Well, then, with the statements made on

15  the record and incorporating the Court's findings that I

16  indicated on a tentative basis, I will incorporate that into a

17  final ruling and grant Stay Relief for the reasons I've stated

18  on the record here today.

19          MR. BERNSTEIN:  I'm sorry, Your Honor, one question.

20  Does the Court have an intention with respect to when that is

21  effective because we are coming into the weekend and we want to

22  make sure that we begin to protect the property, get insurance

23  et cetera?

24          THE COURT:  I know that there was a request to waive

25  the 14-day period.  I didn't see anyone in the objections raise

1  an issue specifically to that, but given the passage of time

2  and also mindful of the fact that this Stay Relief Motion was

3  scheduled for a hearing last week and I pushed it to this week

4  to make it consistent, I have no issue waiving the 14-day Stay

5  and having the Order effective when it's entered today.

6      MR. JOYCE:  Your Honor, just for clarification, if I

7  may.  Ms. Snyder, under the Court's prior Order approving the

8  sale, has through today to remove all property, and she has

9  removed substantially everything she's purchased.  The only

10 thing she has is some dumpsters that she had to rent to put on

11 the site.  So, they're there today.  So, I just would note for

12 the Court, I believe she's permitted, pursuant to the Court's

13 prior Order, to complete her removal activities through today.

14     THE COURT:  Okay.

15     MR. BERNSTEIN:  No objection at all to that, Your

16 Honor, through today.

17     THE COURT:  All right.  Thank you.

18     MR. SNYDER:  Am I allowed to remove my -- I left two

19 trailers down there I was going to remove today.

20     THE COURT:  That's a separate issue between you and

21 Ms. Biros as to your personal property at this point.  As I

22 told you before, I'm concerned about where we are with the

23 Estate assets at this point.  Okay?

24     MR. SNYDER:  Because I could have those out by five

25 o'clock today if you would allow.

**Appendix Vol. II, Page 312**

1        THE COURT:  Well, again, I indicated before, Ms.

2   Snyder ostensibly bought whatever rights and interest the

3   Estate had in the property.  If that's inclusive of what you

4   might make a claim for, then that can be resolved that way.

5        But let me ask a clarifying question.  So, the

6   property that was on the third-party site in McKeesport, has

7   that been removed?

8        MS. SNYDER:  That's been removed.

9        MR. JACKSON:  There's one excavator I have to move

10  today.

11       THE COURT:  I'm sorry, is that --

12       MR. JOYCE:  Sir, if you may?  That's fine.  That is

13  Mr. Nicholas Jackson.  He was a contractor that Ms. Snyder

14  engaged to remove the property from both locations?

15       MS. SNYDER:  Yes.

16       MR. JOYCE:  Both locations, as well as another

17  contractor.  Mr. Jackson was able to do that, his part of the

18  job, but we were advised this morning that the one excavator

19  that had the tracks removed, if the Court remembers, down on

20  the McKeesport property, that is still on the Biros property.

21  So, Mr. Jackson is indicating that that's still there, but will

22  be removed today?

23       MR. JACKSON:  Yes.

24       MR. JOYCE:  So, yes.  The Court's question, I think,

25  was, is everything removed from the Biros/McKeesport property?

**Appendix Vol. II, Page 313**

22

1  And the answer is, yes, all but what I just said.

2          THE COURT:  All right.

3          MR. BERNSTEIN:  And, Your Honor, we have no objection

4  to that effort continuing through today.  We also have no

5  objection to Ms. Snyder taking whatever she thinks she bought

6  off of the U LOCK property.  And we would hope that, perhaps,

7  she and Mr. Snyder could cooperate, and if there are things

8  there that he claims, we don't really care about them.  We

9  would just as soon Ms. Snyder use her purchasing power to

10 remove them for Mr. Snyder today.

11         THE COURT:  Okay.  Does that give you sufficient

12 clarity, Mr. Snyder?

13         MR. SNYDER:  Sounds fair, Your Honor.

14         THE COURT:  All right.  So, today's the day to remove

15 whatever remaining assets exist, and then we move on from

16 there.  So, I think that's a clarification that nothing from

17 the Court's entry of this Stay Relief Order should impede the

18 continuation of the process of removing the assets today, and

19 then tomorrow it's a new set of circumstances.

20         THE COURT:  All right.  Very good.  Let's move

21 forward to the next item, then.  That is Shanni Snyder's Motion

22 to Enforce the Sale Order, which is at Docket Number 274.

23         This is her Motion to Enforce the Order that I

24 entered in December confirming the sale of the tangible and

25 intangible personal property of the Estate under 11 U.S.C.

1  Section 363(f), free and clear of all liens, claims and

2  encumbrances.

3           I have a pending objection to that filed by Ms. Biros

4  and, basically, this Motion was triggered by Ms. Biros filing

5  an Action to Quiet Title against Shanni Snyder in the Court of

6  Common Pleas of Westmoreland County.  The State Court action

7  seeks to strike a Lis Pendens filed against the property by Ms.

8  Snyder in April of 2022, and enjoin Ms. Snyder from claiming

9  any adverse right to the property.

10          Ms. Snyder subsequently removed the action to the

11 Bankruptcy Court, and I note that the matter has been docketed

12 as being related to the U LOCK Chapter 7, but I do have a query

13 whether it's more appropriately related to Ms. Snyder's Chapter

14 7 case.  But, again, if both matters are brought before this

15 Court, I don't know that that's a distinction with much of a

16 difference, other than how it's categorized and processed

17 moving forward.  But I'd also note that yesterday, Ms. Biros

18 has moved for entry of a default based on Ms. Snyder's failure

19 to answer or defend.

20          In any event, through the Motion, Ms. Snyder seeks an

21 Order enjoining Ms. Biros from asking for relief against her

22 relating to the property in the State Court.  And in broad

23 strokes, Ms. Biros denies that the Action to Quiet Title

24 violated the Stay and the Sale Order, and objects to the

25 breadth of relief Ms. Snyder requests.  She also contends that

1  this is yet another example of Ms. Snyder's vexatious

2  litigation practices.

3         In the Court's view, the Lis Pendens should be

4  withdrawn with consent.  The initial question is, what rights

5  did Shanni Snyder have as against the property as of April of

6  2022?  And to the extent the State Court ruled that U LOCK

7  never owned the property, Ms. Snyder's judgment against U LOCK

8  could not have attached to the property.  At best, she could

9  have attached to U LOCK's potential right to seek recovery of

10  the property, a right she now owns, but Shanni herself did not

11  acquire such rights until December of 2022.

12         Critically, however, Ms. Snyder acknowledged in

13  Paragraph 30 of the Stipulation that her judgment is not

14  secured by either the tangible or intangible assets of U LOCK,

15  and without any such security, there is no basis for the Lis

16  Pendens.

17         So, for those reasons, I'm inclined to strike that,

18  or authorize that to occur.  Although, procedurally, it's not

19  set before me, but I think in the spirit of turning over a new

20  leaf, that is one area where I think there should be

21  concessions made by the parties to narrow issues.

22         Beyond that, the Court is not yet convinced at this

23  time that Ms. Biros violated the Sale Order or Automatic Stay

24  with respect to the Quiet Title Action.  From the outset,

25  whether Ms. Biros violated Ms. Snyder's Automatic Stay would

Appendix Vol. II, Page 316

1  seem to be an issue for Judge Bohm, but, notably, Ms. Snyder

2  has been discharged, and the case was closed, albeit there is

3  an issue of the undisclosed asset and the reopening of the

4  case.  So, those are issues that would be set before Judge

5  Bohm.

6         With respect to the Sale Order, the fact that Ms.

7  Snyder can, potentially, bring an Avoidance Action against Ms.

8  Biros in this Court would not in and of itself bar Ms. Biros

9  from taking all actions against Ms. Snyder in the State Courts.

10 Although the Court cannot say for certain that Ms. Snyder's

11 Avoidance Action could be brought in the State Courts,

12 primarily because no one has articulated the basis for such a

13 claim with any specificity.

14         Ms. Biros is correct that the permissive language of

15 the Sale Order which says, quote, shall be permitted to bring,

16 end quote, neither bars litigation in any other Court, nor

17 deprives the State Courts of their jurisdiction to hear any

18 other matters.

19         To the extent that the action to Quiet Title fell

20 within the Bankruptcy Court's retained jurisdiction, it was

21 appropriately removed, and Ms. Snyder was not harmed.

22 Ultimately, like many other arguments today, the Motion

23 prioritizes a sideshow rather than advancing the main event.

24         Put differently, why hasn't the alleged Avoidance

25 Action been filed and, frankly, how can Ms. Biros interfere

**Appendix Vol. II, Page 317**

26

1    with rights that Ms. Snyder has not yet asserted, and may never

2    assert?  In fairness, the Court appreciates that Ms. Snyder's

3    concern that Ms. Biros would seek to undermine the rights that

4    she acquired from the Estate.

5         The Action to Quiet Title arguably sought to press

6    the issue in a different forum which, in a best case scenario,

7    does nothing but to multiply the litigation.  And although the

8    Court does not think much of the Lis Pendens, the timing of Ms.

9    Biros's Action to Quiet Title so soon after the sale of the

10   intangible assets is not lost on the Court.  But Ms. Snyder can

11   protect herself from these potential issues by commencing her

12   Avoidance Action, and once filed there will be little question

13   about what is before the Court and what actions inappropriately

14   interfered with it.

15        So, for all those reasons, the Court is inclined to

16   deny the Motion to Enforce the Sale Order.  Nevertheless, I do

17   have a question regarding the Quiet Title Action and its

18   reference to a June 28, 2022 State Court Order issued by the

19   Court of Common Pleas that held that, quote, all title held by

20   U LOCK had been in trust for the benefit of Christine Biros.

21        I'm not aware of when that Order was issued.  I'm not

22   aware of whether that Order has ever been referenced in these

23   proceedings.  In my review for today's proceedings, it appeared

24   to be something new, and that leads me to questions as to how

25   it came about and what prompted it.

**Appendix Vol. II, Page 318**

Case 22-20823-JAD Doc 306 Filed 02/01/23 Entered 02/01/23 16:34:02 Desc Main
Case 23-21163 Document Page: 319 Page 27 of 101 Date Filed 05/30/2024

27

1          MR. OTTO:  Your Honor --

2          THE COURT:  Well, I'll give you an opportunity.

3   That's ancillary to the Motion at hand on the Motion to Enforce

4   the Sale.

5          So, to the extent I deny this Motion to Enforce the

6   Sale Order, I would do so without prejudice.  And that the

7   Court would inquire further into the circumstances leading to

8   the State Court's entry of the June 28, 2022 Order.

9          So, let's get an explanation on that Order first and

10  then --

11         MR. BERNSTEIN:  Mr. Otto will do it.

12         MR. OTTO:  Your Honor, I have to confess, first of

13  all, I have not gone back and checked all the dates and all the

14  circumstances but, for your information, after the petition was

15  filed, both Shanni Snyder -- Ms. Snyder, and Mark Mycka entered

16  their appearances in the Biros versus U LOCK matter that had

17  already been decided by the Pennsylvania Supreme Court and was

18  back down before Judge Smail in Westmoreland County Court of

19  Common Pleas.  They then filed appeals to Superior Court, and

20  in Response to that Judge Smail issued a 1925 Order, or

21  Opinion, in which he said Ms. Shanni's -- or Ms. Biros's title

22  goes all the way back to 2015 in trust.  I don't have a copy of

23  the Order.  I'd be happy to provide it, but that was issued --

24         THE COURT:  Well, Judge Smail was aware of the

25  bankruptcy.

**Appendix Vol. II, Page 319**

1          MR. OTTO:  I'm sorry?

2          THE COURT:  Judge Smail was aware of the bankruptcy.

3          MR. OTTO:  Oh, yes, sir.

4          THE COURT:  And yet this Order was still issued and

5  it was prompted by the parties?

6          MR. OTTO:  It was prompted by the filing of both Mark

7  Mycka and Shanni Snyder post-petition.  They filed appeals to

8  Superior Court post-petition.

9          THE COURT:  Why did no one alert Judge Smail of the

10  fact that the Stay impacted that proceeding?

11          MR. OTTO:  First of all, Your Honor, he --

12          THE COURT:  That should have been put on ice.

13          MR. OTTO:  He knew about the bankruptcy, but he was

14  required by Superior Court to issue the Order.

15          THE COURT:  I want to give you a preview of coming

16  attractions here.  And maybe this is moot because I see that

17  there was the consent to entry of a final Order by Ms. Biros to

18  the removed action, but given what's happened in the State

19  Court, and I'm not -- don't take this as casting dispersions on

20  Judge Smail, but somewhere along the line there is a complete

21  misperception of how the Stay works, and I don't know what has

22  prompted that, but that gives me all the more reason for

23  wanting to have a lot of those issues resolved here than in

24  State Court.

25          I mean, that has not given me any confidence of

1  what's going on there and, quite frankly, it seems that the

2  decisions were already made well before this -- the decisions

3  that this Court needs to rely on in order to determine the

4  substantive State Court rights of the parties have already been

5  determined before this involuntary petition was even filed.

6      Mr. Otto?

7      MR. OTTO:  Just so you understand, I want to make it

8  very clear to the Court, the appearances that were entered by

9  both Ms. Snyder and Mr. Mycka, we never -- once this case

10  started, we did not object, or oppose, or take any action with

11  request of their entry.  They did not receive permission from

12  Judge Smail to enter the case, and we did not file anything

13  with respect to their appeals to Superior Court.  We've taken

14  no action with respect to that.  So, whatever has happened is

15  with Ms. Snyder, Mr. Mycka and the action of Superior Court and

16  Judge Smail, but we've had nothing to do with it, Your Honor.

17      THE COURT:  All right.  Well, again, this is an issue

18  that I need to delve into more deeply.  I don't want to spend

19  more time on it at this point given that it is extraneous to

20  the Motion at hand.  But with that said, I'm going to want a

21  copy filed, Mr. Otto, of the State Court docket of any entries

22  that occurred after April 27, 2022 when the involuntary

23  petition was filed and the Stay went into effect, and copies of

24  any pleadings that were filed.

25      In addition, I want each of the parties to provide me

Appendix Vol. II, Page 321

1  with an affidavit, certified under penalty of perjury,

2  identifying any and all communications that they may have had

3  with the State Court after April 27, 2022.  That includes

4  letters, e-mails, phone calls, whatever.  That's from either

5  attorney, staff members, whatever and I want those within 14

6  days.  Because from my view, there's way too much activity that

7  occurred in State Court.

8         And, furthermore, we had a long discussion about this

9  on June 2nd or 3rd -- I can't remember the date where I raised

10 these concerns.  I indicated that I thought the May 2022 Order

11 was void and I issued an Order to that effect subsequently.

12 But there's no basis that I am aware of at this point, and I'm

13 happy to be corrected on how the State Court could have

14 proceeded on this and, quite frankly, given my experience with

15 how other Courts deal with Stay issues, it would seem to me

16 that that would have only occurred if there was some prompting

17 or urging by any party.

18        So, 14 days for all parties to file an affidavit of

19 any communications that they had with the State Court after

20 April 27, 2022, and then I'm requiring Mr. Otto to also file a

21 copy of the State Court docket and any papers that were filed

22 in the State Court after April 27th.

23        MR. BERNSTEIN:  Your Honor, two clarifying questions

24 on the notice or the affidavit.  If there were no

25 communications, do you still want an affidavit?

1    THE COURT:  I want an affidavit saying there were no

2 communications.

3    MR. BERNSTEIN:  And I assume that you're talking

4 about communications with regard to the U LOCK matter that was

5 before that --

6    THE COURT:  Yes.  I'm sorry that I did not clarify

7 that, but that is specific, yes.  Any communications with the

8 State Court as to the U LOCK matter.  Obviously, lawyers

9 probably have many other cases.

10    All right.  Any questions on that before I turn back

11 to the Motion to Enforce the Sale Order?

12                (No audible response)

13    THE COURT:  Okay.  So, then, given the way I am in my

14 predetermination to deny the Motion to Enforce the Sale Order

15 and since that's filed by Shanni Snyder, Mr. Joyce or Mr.

16 Kobeski, wish to address that?

17    MR. KOBESKI:  Yes, Your Honor.  We have listened to

18 what Your Honor has indicated it's your position and your

19 suggestion regarding potential agreement to withdraw the Lis

20 Pendens which is something we will discuss with Ms. Snyder.

21 It's not something that we had considered prior to today.

22    And, you know, relative to Your Honor's statement

23 regarding the State Court Orders, you know, since any

24 determination of the Motion to Enforce would take those rulings

25 into account or potential resolutions, we understand Your

32

1   Honor's position on the Motion.  Our major concern was the

2   language included in the Quiet Title Action that sought to

3   permanently enjoin Ms. Snyder from asserting any claim against

4   the property.

5           And then the fact that a ruling to that effect could

6   somehow impact what she had purchased pursuant to the Trustee

7   sale in this case.  It's our understanding that Ms. Snyder

8   intends to proceed with pursuing the actions she purchased but

9   we don't have a timeline in terms of when that may be initiated

10  but we understand --

11          THE COURT:  Well, I mean, why isn't there a timeline?

12  I mean, you purchased the assets.  I'm not inclined to sit and

13  wait for this thing forever.  And while I indicated the

14  Bankruptcy Court would retain jurisdiction, that's not an open

15  book.  In fact, I'm thinking that I'm in a position that if you

16  want to use Bankruptcy Court jurisdiction to bring the

17  Avoidance Action, I'll give you 30 days to file it.  And if

18  it's not filed within 30 days, I'm going to turn to just having

19  Mr. Slone close up the Estate, close up this case and if you

20  have an Avoidance Action, you can bring it in State Court.

21          MR. KOBESKI:  Understood, Your Honor.  And I believe

22  that timeline would be sufficient based upon Ms. Snyder's

23  intentions.  And certainly she did take action to remove the

24  State Court case to the Bankruptcy Court and we've only been

25  monitoring that from the sidelines.  It was her position that

**Appendix Vol. II, Page 324**

1    the Automatic Stay in her individual case, potentially, applies

2    to any action which -- and that matter is till before Judge

3    Bohm.

4          There's a pending Motion for Relief filed by Ms.

5    Biros which won't be determined for some time -- for several

6    weeks.  But in the meantime, we will discuss with Ms. Snyder

7    the potential for agreeing to release that Lis Pendens, you

8    know, based upon actions she plans to take in terms of filing

9    the Avoidance Action in this case.

10         THE COURT:  Well, let me ask this question.  Is there

11   any objection to granting Ms. Biros Stay Relief in the Shanni

12   Snyder personal case for the purpose of bringing the claim

13   objection in this case?  I mean, there would be no attempt to

14   enforce.  It would not be collection of assets.  It would

15   merely be a determination on the validity of the claim.

16         MR. KOBESKI:  Our only issue with Ms. Biros's filings

17   in the individual action are the fact that she is not a

18   creditor in that case.  She hasn't filed a proof of claim.

19   It's a no asset -- or it was -- it is an asset case.  The

20   claims bar date has passed.  Ms. Biros participated in that

21   action at length but has failed to file a proof of claim.

22         THE COURT:  Okay.  But the question though is she is

23   seeking -- she is seeking Stay Relief in order to file a claim

24   objection in this case, so whether she is a creditor or not in

25   that case wouldn't she be entitled to ask for Stay Relief for

Appendix Vol. II, Page 325

34

1 that purpose? And if not, are you willing to concede that it

2 would not be a Stay violation for her to file a claim objection

3 in this case?

4         MR. KOBESKI: Academically speaking, I mean, it's our

5 position that in this case I think Ms. Biros is entitled to

6 anything she is entitled to under the Code and the Rules of

7 Court. However, there is still the potential issue that that

8 claim, that judgment itself is Estate property in the

9 individual Shanni Snyder case. So, that does, I think,

10 implicate the need for Stay Relief in that regard because that

11 Estate does still have an interest up to 32,500 --

12         THE COURT: Okay. Well, I understand that. But, I

13 mean, Trustee Zebley has delegated authority to pursue the

14 claims of your client, and has made an arrangement under the

15 Stipulation to accept the first 32,000 and change from that.

16 So, there are, you know, obviously in order to effectuate any

17 distribution in this Estate I have to have a claims allowance

18 process. There has been stated intent that there is a desire

19 to object to the claim. So, why are we dealing with procedural

20 hurdles here? Why can't we just get to the merits and have a

21 claim objection?

22         MR. KOBESKI: And eventually I think that would be

23 the end result, so, I mean, in that regard --

24         THE COURT: Well, eventually -- this is what I'm

25 trying to say from the beginning of the case. Let's cut

Appendix Vol. II, Page 326

1 through these things that are wasting time, effort, and causing

2 additional fees.

3          So, what I come back to is why not either consent to

4 Stay Relief or admit that pursuing the claim objection in this

5 case does not violate the Stay in her personal bankruptcy case?

6          MR. KOBESKI:  And I think those are things we could

7 discuss with our client.

8          THE COURT:  Where is the prejudice?  Where is the

9 prejudice?  That's what I want to know.

10          MR. KOBESKI:  We can discuss that with Ms. Snyder and

11 see if she would be in agreement with reaching those agreements

12 with Ms. Biros.  But those are not things we did discuss prior

13 to this morning.

14          THE COURT:  All right.  Well, I'm going to give you

15 time to discuss that, but I am going to want an answer on that

16 before we conclude the hearings today.

17          MR. ZEBLEY:  Your Honor, this is Trustee Zebley in

18 the Snyder case.  If I could weigh in?

19          THE COURT:  Go ahead.

20          MR. ZEBLEY:  I have no objection to the lifting of

21 the Stay.  I think what you observed is we have -- because I'm

22 going to get the -- whatever money that's going to come in,

23 which I'm dubious.  But we can't get any money into the Snyder

24 Estate until Mr. Slone can wrap up his Estate.  And holding

25 that hostage doesn't make any sense whatsoever.  I don't think

36

1  there's anything to talk about, frankly.  Anyway, that's my

2  position.

3          THE COURT:  Thank you.  If you need time to discuss

4  it I will give you time to do that, but let me just circle back

5  on where we are first.  So, as I understand it you have no

6  objection to the Court denying the Motion to Enforce the Sale

7  Order provided that you are given 30 days to bring the

8  Avoidance Action or to have it in jurisdiction in the

9  Bankruptcy Court.

10          You're going to also discuss with your client the

11  consensual withdrawal of the Lis Pendens, and the understanding

12  is that notwithstanding -- and I'm going to come back to Ms.

13  Biros's counsel on this.  But from my viewpoint it would seem

14  that whatever relief Ms. Biros is seeking in the State Court

15  may bar Ms. Snyder as to whatever positions she had against the

16  property before the bankruptcy was filed, but it should not

17  impact any rights that she accrued from U LOCK in the sale or

18  the right to pursue the Avoidance Action per se.  So, I will

19  start with you on that.

20          MR. KOBESKI:  Your Honor, with that description of

21  the position, that certainly does provide some relief to the

22  concerns we had, which was the basis for the Motion, and the

23  time line suggested by Your Honor should be acceptable, and

24  allow Ms. Snyder to proceed, which would -- you know, once that

25  action is filed it -- this whole concern is rendered moot, so I

**Appendix Vol. II, Page 328**

1  think that's a proper way to proceed.

2          THE COURT:  All right.  Thank you.  Mr. Bernstein?

3          MR. BERNSTEIN:  Your Honor, that was a very important

4  point, the time line on what rights Ms. Snyder is asserting and

5  when.  The Lis Pendens is a pre U LOCK petition claim of Ms.

6  Snyder's that has nothing to do with U LOCK.  And it's separate

7  from whatever rights she purchased from the Estate.  So, we

8  appreciate the Court putting some limits on that.

9          In terms of streamlining we also appreciate the

10 Court's suggestion on the Lis Pendens.  I am unclear, and I

11 need to ask with respect to the removal, because the removal is

12 related to the Lis Pendens, which was apparently -- which was

13 the basis for the Quiet Title, which was the basis for the

14 Motion that counsel filed on behalf of Ms. Snyder.  Are they --

15 this may be a professionalism in ethics question.  I don't know

16 if they are counsel for Ms. Snyder in the removal, or just

17 enforcing her rights here in the main case.  It's unclear, and

18 it is a meaningful question for future reference.

19         THE COURT:  Okay.  Well, I think that's a valid

20 point.  Ms. Snyder is here.  So, I indicated I would give

21 counsel an opportunity to consult with her.  So, what I am

22 expecting is that after you consult here I will get an answer

23 that pertains to not only whatever matters you are representing

24 her on as counsel, but also anything that she might be

25 proceeding on pro se.  Is that understood?

Appendix Vol. II, Page 329

1          MR. KOBESKI:  Yes.

2          THE COURT:  Okay.  All right.  How much time do you

3    need to address that?

4          MR. KOBESKI:  Like ten -- I was going to say five,

5    but ten minutes would be safer.  More than five, just to step

6    outside and talk with her.

7          THE COURT:  All right.  Why don't we take a ten

8    minute recess.  We'll come back on the record at five after 11.

9          MR. KOBESKI:  Thank you, Your Honor.

10          THE COURT:  Thank you.  All right.  The Court will

11    stand in recess, and we'll reconvene at 11:05.

12                         (Off the record)

13          ECRO:  All rise.

14          THE COURT:  Thank you.

15                            (Pause)

16          MR. KOBESKI:  Your Honor, could we have a few more

17    minutes, like five?

18          THE COURT:  Yes.  Please.

19                         (Off the record)

20          THE COURT:  All right.  Let's go back on the record

21    on Case Number 22-20823, U LOCK Incorporated.  We had a short

22    recess to allow counsel to discuss with Shanni Snyder some of

23    the comments the Court raised with respect to the Motion to

24    Enforce.

25          I had one other thing that I thought about as I went

1  back into chambers, and that is I also question whether or not

2  in the <u>Shanni Snyder</u> bankruptcy whether there would be a Stay

3  issue implicated given that this is an action where Shanni

4  Snyder is the claimant, and therefore the plaintiff.

5          So, with that said, Mr. Kobeski, have you had an

6  opportunity to review and --

7          MR. KOBESKI:  Yes, Your Honor.  And initially --

8          THE COURT:  -- tell me where you are on this?

9          MR. KOBESKI:  -- thank you for the time to allow us

10  to address these issues with Ms. Snyder.  We discussed the Lis

11  Pendens, which we learned also goes along with th Writ of

12  Summons that was filed in Westmoreland County, which we had not

13  been aware of.  But we are comfortable, and Ms. Snyder is

14  comfortable with agreeing to voluntarily withdraw the Lis

15  Pendens and the Writ of Summons after 30 days, which would

16  coincide with or follow her filing of her intended avoidance

17  claim in this case -- in this Court.

18          And that would then, in our position resolve the

19  pending Quiet Title Action, which has been removed to this

20  case, as well.  So, I don't know if Your Honor would consider

21  staying that pending action for 30 days to allow the time for

22  Ms. Snyder to proceed in bringing those avoidance actions,

23  which would then in essence resolve that pending litigation, in

24  our opinion.

25          And in terms of the Stay Relief that Ms. Biros

40

1  asserts that she needs to pursue or file an objection to Ms.

2  Snyder's claim, we have no problem consenting to relief insofar

3  as that would allow them to proceed in that regard.

4          Currently, there's two matters pending in Judge

5  Bohm's courtroom in the individual case, which is the Motion

6  for Relief and also the Motion to Settle involving Trustee

7  Zebley.  Ms. Snyder would like nothing more than to resolve

8  both of those amicably, and she currently is in the process of

9  potentially retaining counsel in that regard.

10         But if Ms. Biros is also interested in resolving

11 those without the necessity to proceed with litigation, Ms.

12 Snyder is certainly interested in doing that.  So I don't know

13 if there's other outstanding issues that Your Honor --

14         THE COURT:  Well, related to that, I mean, if the Lis

15 Pendens has no basis at this point why are we waiting 30 days

16 for it to be withdrawn?

17         MR. KOBESKI:  Well, Ms. Snyder apparently has filed a

18 Writ of Summons --

19         THE COURT:  Right.

20         MR. KOBESKI:  -- in the context of a Declaratory

21 Judgment Action, concurrent with the Lis Pendens.  So the Lis

22 Pendens --

23         THE COURT:  But the Lis Pendens has --

24         MR. KOBESKI:  -- relates to that --

25         THE COURT:  -- no foundational legal support, from

Appendix Vol. II, Page 332

1  what I gather.  So, how can that support a Writ of Summons?

2         MR. KOBESKI:  The legal basis, Your Honor, just, you

3  know, in a summary, is that there is a judgment lien that was

4  entered in the Western District --

5         THE COURT:  Right.

6         MR. KOBESKI:  -- but also in the State Court in

7  Westmoreland County, and then subsequent to that judgment lien

8  there was a mortgage entered against the property by Ms. Biros,

9  and I believe a life insurance trust, or something along those

10 lines.  So, there is -- there remains a question as to the lien

11 priority regarding that judgment lien --

12        THE COURT:  Okay.  Well, let's just be clear again.

13 Let's not get down a slippery slope.  U LOCK, based on State

14 Court Orders, did not have title to the property when the Lis

15 Pendens was filed.  You have already stipulated in this case

16 that she does not have a secure claim and did not have a lien

17 on the assets.  So why are we even having this argument on the

18 Lis Pendens at this point?

19        MR. KOBESKI:  Your Honor, when the judgment was

20 entered in the Western District title to the property was in U

21 LOCK's name, and the State Court Orders transferred title of

22 that property subject to any liens and subject to any mortgages

23 or judgments.  So, arguably Ms. Snyder's judgment lien remains

24 in place and it's valid.

25        There's also -- I mean, there's also a question of

**Appendix Vol. II, Page 333**

1  there's duplicate deeds that were recorded from the original

2  prior owner.  Some of those deeds remain of record.  The State

3  Court action only struck one set of deeds.  So there's an

4  extraneous set of deeds to U LOCK that remains in place, you

5  know, on the title in Westmoreland County, and the transfer of

6  that property pursuant to the constructive trust by Judge

7  Smail's own Order was subject to liens and encumbrances.  So

8  arguably Ms. Snyder's lien has not been stricken from the

9  property.  At the time it was entered U LOCK was the title

10 record owner of that real estate.

11         MR. BERNSTEIN:  Your Honor, just for the record, we

12 dispute those facts.  With respect to when the judgment was

13 entered the title was not in the name of U LOCK at the time.

14 There was no lien by Ms. Snyder against U LOCK, whether in

15 Federal Court or State Court, and if they are trying to layer

16 on top of this Lis Pendens the whole argument about whether the

17 deeds were valid, I don't know what we're going to get to

18 today.

19         THE COURT:  Yes.  I --

20         MR. BERNSTEIN:  Again, it raises a question of who is

21 representing -- I mean, who is making this argument?  Is it Ms.

22 Snyder?  Is it her counsel?

23         THE COURT:  Okay.  Here is what I am going back to.

24 Two issues.  One is, first, there's an agreement to withdraw

25 the Lis Pendens subject only to the commencement of the

Appendix Vol. II, Page 334

43

1  avoidance action.  I don't know that that changes anything, so

2  why don't we just cut to the chase and you have -- it's a

3  metric that's within your control.  You can file the avoidance

4  action in 30 days.  You can file the avoidance action tomorrow.

5          So, with that said, while I have all the parties

6  here, and while everyone has committed the time and resources,

7  let's just make the determination now on the Lis Pendens and be

8  done with it?  If we start to go down as to the merits of the

9  Lis Pendens I can tell you again I'm going to hold parties to

10 the standards here, and what's already in my record.  The

11 question of whether or not U LOCK had title to the property on

12 the one hand, or alternatively a Stipulation that Ms. Snyder

13 does not have a secured claim in this case, and no lien against

14 U LOCK.  So, those are disconcerting.

15         So, let's not put form over substance here.  Let's

16 just deal with what we're dealing with.  And so, if there is no

17 issue to go forward with the Lis Pendens in 30 days there's no

18 reason to go forward with the Lis Pendens now.  I have already

19 indicated that I am going to protect Ms. Snyder's right to

20 bring the avoidance action if she wishes to do so in that 30-

21 day period, but let's not overreach.

22         MR. KOBESKI:  Your Honor, Ms. Snyder will concede to

23 volunteering to withdraw the Lis Pendens.

24         THE COURT:  Okay.  All right.  Very good.  Then on

25 that basis what I am going to do is a couple of things.  And --

**Appendix Vol. II, Page 335**

44

1    I lost my place with my notes.  But -- so what I understand is

2    we have got consent to 30 days to bring the avoidance actions

3    if you wish to bring them in the Bankruptcy Court, a consent to

4    release of the Lis Pendens, and furthermore consent that, you

5    know, that resolves the Quiet Title Action to the extent that

6    Ms. Snyder was claiming an interest in the property in her own

7    name separate and apart from whatever right she accrued from U

8    LOCK.  Nothing will impact her ability to bring the avoidance

9    action against U LOCK based on this ruling.

10           And third, there is consent to whatever stay relief

11   is necessary to allow an objection to the Shanni Snyder claim

12   to proceed in this U LOCK bankruptcy case.  All right?  Is that

13   the understanding?

14           MR. KOBESKI:  Yes, Your Honor.  And once again, I

15   would just reiterate for the benefit of the Court and Ms.

16   Biros, Ms. Shanni Snyder would be interested in settling all

17   the matters pending in Judge Bohm's courtroom.

18           THE COURT:  Okay.  Well, actually, I'll circle back

19   on that in just a minute.

20           MR. KOBESKI:  Thank you.

21           THE COURT:  But you agree to that?

22           MR. KOBESKI:  Yes, Your Honor.

23           THE COURT:  All right.  Ms. Snyder, you personally

24   agree to that, as well?

25           MS. SNYDER:  Yes.

45

1          THE COURT:  All right.  So, returning to Ms. Biros.

2   So, on the first aspect any issue with what I have set forth

3   there?

4          MR. BERNSTEIN:  No, Your Honor.  That's the 30-day

5   issue?

6          THE COURT:  Well, 30 days to bring the avoidance

7   action if they wish to pursue it in Bankruptcy Court.  It will

8   resolve the removal action by the release of the Lis Pendens,

9   and that there is no further rights that Ms. Snyder has as to

10  the property that accrued to her personally before she acquired

11  the rights from U LOCK.  And third, consent to stay relief to

12  any claim objection that would be necessary in this case.

13         MR. BERNSTEIN:  No objection, Your Honor.  And to

14  clarify, if Ms. Snyder withdraws the Lis Pendens and terminates

15  the Writ of Summons, there is no reason for the Quiet Title

16  Action to exist.

17         THE COURT:  Okay.

18         MR. BERNSTEIN:  And we would --

19         THE COURT:  Then we'll resolve it today.

20         MR. BERNSTEIN:  -- make that disappear.

21         THE COURT:  Okay.  And then the third thing is, I'm

22  now doing Judge Bohm's work for -- as to the Stipulation,

23  because I think that's the only other thing that's pending in

24  her case, is there any issue with the Stipulation being

25  approved in her case subject to the same caveats which I have

46

1  raised here before that it would -- it would be approved

2  notwithstanding any objection that you would have to the merits

3  of the claim?

4        MR. BERNSTEIN:  Well, as happens when you have the

5  lack of clarity as to an individual representing themselves and

6  having counsel, there is another matter pending with Judge

7  Bohm.  Ms. Snyder, on her own apparently, filed a Motion to --

8  Motion for Sanctions against Ms. Biros and Mr. Otto for

9  essentially filing the Quiet Title Action, so there is another

10 pending matter in that Court.

11       As to the Stipulation, my partner, Mr. Burkley, has

12 been working on that matter with Mr. Zebley.  I know that

13 Burkley has told me that he is very confident that there would

14 be an agreement with Mr. Zebley before Judge Bohm's deadline of

15 February 7th.  So, I would say it's likely to be resolved,

16 especially in light of the Court's pronouncements today with

17 respect to the Stipulation.  I just can't commit to it, but I

18 can say it's very likely that that can be resolved.

19       THE COURT:  All right.  I'm not aware of what the

20 Motion for Sanctions is.  It's not something that I have

21 reviewed.  And again, it's not on my docket, so I'm not going

22 to go down that path at this point because I feel like I made a

23 lot of progress at the beginning of the hearing, and I don't

24 want to go off the rails at this point.

25       So, I'm going to take what we've got at this point

**Appendix Vol. II, Page 338**

Case 2:23-cv-...T1163 Doc 306 ... Filed 02/01/23 ... Page: 339 ... Entered Date 02/03/106/34/2029 Desc Main
Document    Page 47 of 101

47

1   and move forward.  So, Mr. Kobeski --

2          MR. KOBESKI:  Your Honor, the only thing I wanted to

3   add regarding your statements regarding Ms. Shanni's -- or Ms.

4   Snyder's interest in that property, and have there been any

5   findings today, or is it your intention to make any findings

6   regarding the underlying Civil Court judgment that is in place

7   both in the Western District, as well --

8          THE COURT:  Well, I think we've cut to the chase on

9   that because Mr. Bernstein has said that if the Lis Pendens is

10  withdrawn and the Writ of Summons is withdrawn, then that

11  resolves the Quiet Title Action, so we're done.  Okay?

12         MR. KOBESKI:  But the -- I mean, obviously Ms.

13  Snyder's position is her judgment remains in place?

14         THE COURT:  The judgment remains in place.  I don't

15  know what it means, or what impact it has at this point.  I've

16  told you my thoughts on it.

17         MR. KOBESKI:  Right.

18         THE COURT:  But beyond that we can take it up at the

19  claims objection.  But I -- again, I want to be -- the parties

20  be mindful of the inconsistencies of any arguments or positions

21  they may take based on where they were before.  Okay?

22         MR. BERNSTEIN:  And speaking of that, Your Honor, we

23  do intend to file the objection quickly.  I just want to make

24  sure that we're not going to get caught in the Court not having

25  -- not feeling that it has the ability to impact that claim

Appendix Vol. II, Page 339

48

1  because it's the subject of a judgment that Judge Coville

2  entered.  And that's actually why we were seeking relief from

3  stay with Judge Bohm, so that we could intervene in the civil

4  action to seek a Rule 60 Motion to avoid -- to eliminate that

5  judgment, which is the basis for the claim.  So we are happy to

6  file it here and have Your Honor deal with it if Your Honor

7  feels that that's appropriate.

8          THE COURT:  I'm fine with having it filed here.  I

9  think it makes the most sense.  But, you know, it -- the

10  judgment will be something that's part of the examination if

11  there's a claims objection.  So I will deal with it at the

12  appropriate time.

13          MR. BERNSTEIN:  Thank you.

14          THE COURT:  All right.  Anything further?

15          MR. KOBESKI:  No.  I mean, just to clarify, Ms.

16  Snyder's judgment has a lien against that real property, or the

17  lien is not being waived, or without prejudice to her to assert

18  that in the event that becomes --

19          THE COURT:  Okay.  Well, I want to be very clear,

20  again.  The Stipulation says she has no --

21          MR. KOBESKI:  Right.  And that's based upon --

22          THE COURT:  -- no lien in the assets being sold.

23          MR. KOBESKI:  Right.  And the assets that were sold

24  were --

25          THE COURT:  And that includes all tangible and

**Appendix Vol. II, Page 340**

1 intangible assets of U LOCK.

2          MR. KOBESKI:  Correct.

3          THE COURT:  And that includes --

4          MR. KOBESKI:  Right.  And the assets that were sold

5 were --

6          THE COURT:  -- all tangible and intangible assets of

7 U LOCK.

8          MR. KOBESKI:  Correct.  And at the time the

9 bankruptcy was filed U LOCK was not the record owner of the

10 real property.  I mean, she acknowledges that, so her --

11          THE COURT:  We're walking in circles, Mr. Kobeski.

12          MR. KOBESKI:  I understand.  But, I mean, we're

13 making determinations regarding a Quiet Title Action that was

14 filed in State Court, you know, sort of on the fly here, so

15 we're just trying to make sure that we're understanding that

16 we're not making any concession regarding the status of her

17 civil judgment that remains in place both in Westmoreland

18 County, as well as --

19          THE COURT:  The judgment remains in place.  Whether

20 or not it's a lien is a different matter at this point.

21          MR. KOBESKI:  That's fine, Your Honor.  We understand

22 --

23          THE COURT:  All right.

24          MR. KOBESKI:  -- I think the clarification that

25 you're making --

50

1          THE COURT:  Well, like I said, I'm going to take what

2   we've done here so far and call it a victory, and move on to

3   the next matter.  So -- wait a minute.  Before I forget --

4          MR. KOBESKI:  So, Your --

5          THE COURT:  Let me see if there's -- okay.  Yes.  So,

6   Christine Biros is the only objecting party to that request.

7   Mr. Kobeski, one final thing?

8          MR. KOBESKI:  I'm sorry, Your Honor.  But final

9   clarification.  Your Honor, you are not making a determination

10  that the judgment is a lien, but Ms. Snyder wouldn't be

11  prejudiced from presenting an argument that might make that

12  argument in the right context in the event --

13          THE COURT:  Again, this is -- this is something that

14  everybody has been doing in this case.  I thought I had been

15  pretty clear on what I viewed as the position, and I thought I

16  stated it clearly, and yet people are hearing what they want to

17  hear.  She has a judgment.  What I don't see at this point is

18  that she has a judgment lien based on the fact that either U

19  LOCK did not have title to the property, or it was stipulated

20  that she does not have a lien against the tangible and

21  intangible assets.

22          Because I can tell you, I mean, the Court would have

23  had some more concerns with the Stipulation because, again,

24  this was a judgment -- let's be mindful, this was a judgment

25  that was obtained on April -- I'm sorry.  When was the --

**Appendix Vol. II, Page 342**

1  sorry, the Lis Pendens was filed in April.  The judgment was

2  filed within the one year look-back period for an insider

3  transaction.

4        And commensurate with that the Trustee ostensibly

5  gave up whatever right he had to avoid that judgment under the

6  avoiding powers pursuant to the Stipulation.  And the way the

7  Court understood it was he was doing so because there was an

8  acknowledgment that there was no lien against U LOCK.  So, if

9  we're trying to argue against our own Stipulation here, I

10  advise you to tread very carefully.  But I really want to move

11  on, so what's the final word on this?

12        MR. KOBESKI:  I mean, I think -- Your Honor, we are

13  in agreement.  I mean, as set forth in Paragraph 30 and 31 of

14  the Stipulation Ms. Snyder acknowledged that the judgment was

15  not a secured lien against the tangible or intangible assets of

16  U LOCK.

17        THE COURT:  Right.

18        MR. KOBESKI:  Which was personal property, which is

19  what she purchased.

20        THE COURT:  No.  It doesn't say personal property.

21  It says tangible and intangible assets.  Generally accepted

22  accounting principles, a tangible asset includes real property.

23        MR. KOBESKI:  And at the time, I mean, U LOCK, and

24  even now U LOCK has no real property.  I mean, it --

25        THE COURT:  Point taken.

1          MR. KOBESKI:  We concede.  We concede.

2          THE COURT:  So, there's no lien.

3          MR. KOBESKI:  Right.  There's no lien against U LOCK

4    is our position.

5          THE COURT:  All right.  Fine.  We're stopping there.

6    But this is the problem that I am having with this.  All right?

7    And it's not -- you know, I'm getting irritable with Mr.

8    Kobeski here, but I have had the same things on this side, too.

9    But it's -- we're trying to circle around and play games with

10   things, and argue cutesy points that just distract us and do

11   not serve any productive purpose other than to try to get some

12   sort of minimal litigation advantage, and it's not reflected as

13   to the facts and records before this Court.

14          So, from that standpoint I am going to deny the

15   Motion to Enforce the Sale Order for the reasons I have stated,

16   and based on the modifications of the record here.  All right?

17          Moving on.  All right.  The next matter I have is a

18   Show Cause Order that was entered against Christine Biros and

19   Attorney Bernstein to show cause why the Court should not

20   impose sanctions against them for filing Christine Biros's

21   Motion for Allowance of Administrative Expense Claim under

22   503(b)(1) in violation of Bankruptcy Rule 9011(b)(1) through

23   (3).

24          By way of background Ms. Biros filed the Motion For

25   an Administrative Expense on December 22nd, 2022, requesting

**Appendix Vol. II, Page 344**

53

1  payment of an administrative expense claim in the amount of

2  $144,000 for the Estate's use and occupancy of the property

3  post-petition.  The Motion prompted objections from the Chapter

4  7 Trustee, Ms. Snyder and Mr. Snyder.  And on January 17th I

5  issued a Memorandum Opinion sua sponte denying the Motion

6  without prejudice after finding that the Motion was patently

7  frivolous.

8          Specifically, the Court found that although Ms. Biros

9  was likely entitled to administrative expense claim for the

10 post-petition use of her property the Motion suffered from

11 three flaws.

12         First, her use of a return on investment metric

13 calculated to her claim was inappropriate under Section

14 503(b)(1)(A) because it ignored the fair market value benefit

15 of the benefit to the Estate, which is the standard under Third

16 Circuit precedent.

17         Second, her calculation lacked a factual basis, and

18 seemingly relied on dubious assumptions, such as a capital

19 investment of $1.9 million, and the current value of the

20 property.

21         And, lastly, at $144,000 Ms. Biros's claim is more

22 than twice the value of the bankruptcy estate, i.e., the sale

23 proceeds.  It grossly exceeds the value of the tangible assets

24 stored on the property, and represents a monthly rental

25 obligation that far exceeds the annual revenue of the Debtor's

**Appendix Vol. II, Page 345**

54

1 | pre-petition business.

2 | Because the Motion appeared unsustainable under fact
3 | and law and was so unreasonable that the Court could not
4 | conceive of a proper purpose, the Court ordered both Ms. Biros
5 | and Attorney Bernstein to show cause. I have reviewed the
6 | joint response filed by Ms. Biros and Attorney Bernstein at
7 | Docket 304, and again, to expedite matters I am going to offer
8 | initial impressions of the response before asking the parties
9 | how they would like to proceed.

10 | Note that although the response insists that the
11 | Motion did not violate Bankruptcy Rule 9011, its reasons are
12 | thin, and offers no real defense to the specific assertion of a
13 | $144,000 claim. In fact, it pays no attention to that number
14 | at all.

15 | The response argues, correctly, that Ms. Biros is
16 | entitled to request administrative expense for the Estate's
17 | usage of he property. The Court has never quibbled with the
18 | propriety of seeking an administrative claim but her conceptual
19 | entitlement does not insulate her specific ask, and by that I
20 | mean the text of the Motion from liability under Bankruptcy
21 | Rule 9011.

22 | The response defends the Motion by suggesting it was
23 | the opening volley to spark negotiations of her claim as
24 | happens in other cases. And in so doing she essentially admits
25 | the Motion was a litigation tactic so the propriety of the

**Appendix Vol. II, Page 346**

1 purpose boils down to the defensibility of the amount requested

2 in the first instance.

3      The response contends that the return on investment

4 as a basis for Ms. Biros's administrative expense claim is

5 supported by law and specifically point to <u>Geltzer v. Helen-May</u>

6 <u>Holdings, LLC (In re Kollel Mateh Efraim, LLC)</u>, which is 2009

7 Westlaw 2929430 at Star 1.  It's a Bankruptcy Court decision

8 from the Southern District of New York dated August 18th, 2009,

9 affirmed at 456 B.R. 185, Decision of the Southern District of

10 New York from 2011, which is an unpublished decision from the

11 Southern District of New York.

12      Initially the Court observes that the <u>Geltzer</u> case

13 was not cited in the Motion for an administrative expense,

14 raising the question of when counsel was aware of this

15 authority.  Upon a full reading, including the subsequent

16 Bankruptcy Court decision and the District Court decision, the

17 case appears inapposite for a number of reasons.  The facts are

18 somewhat convoluted.  You need to pull them from a series of

19 decisions, but it can be distilled as follows.  The Debtor in

20 that case was the assignee of a contract to acquire real

21 property from Helen-May for $1.4 million in 2004.  The property

22 consisted of a resort hotel located on approximately 77 acres.

23 And when closing did not occur promptly the Debtor, Helen-May

24 -- the Debtor and Helen-May entered into extension agreements

25 by which the Debtor was permitted to occupy and operate the

1  resort.  In fact, the Debtor's operations produced net revenue

2  of $1.4 million between 2004 and 2007.  And ultimately a

3  closing never occurred and the bankruptcy petition followed.

4  　　　　Once again, the facts of that case get convoluted,

5  but the point is that the response wants me to focus on is that

6  the Court ordered the Debtor to pay Helen-May adequate

7  protection payments for quote, unquote, use and occupancy based

8  on an uncontested expert testimony that a ten percent ROI on

9  1.4 million plus taxes was a reasonable annual rental value.

10  　　　　And notably in a later decision the Court found that

11  Helen-May failed to prove an administrative expense claim in

12  that amount.  See 2010 Westlaw 3782050, which is from the

13  Bankruptcy Court of the Southern District of New York,

14  September 21st, 2010, affirmed at 456 B.R. 185, Southern

15  District of New York, 2011.

16  　　　　Importantly, Geltzer does not provide any support for

17  Ms. Biros's position.  Starting with the facts, among the

18  reasons the ten percent ROI on the sale price was found to be a

19  reasonable rental value was that it was the equivalent to ten

20  percent of the Debtor's net revenue for the period of its

21  occupancy.  Again, ten percent of the Debtor's net revenue.

22  　　　　In other words, the reasonable rent was not simply an

23  ROI, but ten percent of the Debtor's profits from operating the

24  resort on Helen-May's property.

25  　　　　In the present case Ms. Biro's ROI calculation

1    produces a monthly obligation exceeding U LOCK's annual gross

2    revenues, not to mention any profit.  Next, <u>Geltzer</u> involved an

3    adequate protection payment for a going concern, not an

4    administrative expense under Section 503(b)(1).

5         The response notes that although Helen-May did not

6    prove an administrative expense, the Court did not repudiate

7    ROI as a reasonable monthly rental value.  That dismisses the

8    bigger point.  Although it may have been reasonable monthly

9    rental value, reasonable monthly rental value does not

10   automatically equal an administrative expense.  Ironically, the

11   <u>Geltzer</u> opinion emphasizes what would seem to be a critical

12   flaw in Ms. Biros's calculation.  <u>Geltzer</u> involved the use and

13   occupancy of a profitable resort.  In this sense there was an

14   identity of value and function between both the seller and the

15   Debtor.  Here let's call the property for what it is, a largely

16   undeveloped parcel containing a shed and a single rather

17   dilapidated self-storage facility.  The rest of the property

18   contains piles of junk.

19        The Debtor seemingly operated a self-storage facility

20   on only a portion of the land, yet despite these facts Ms.

21   Biros is seeking to capture an ROI based on a developed, fully-

22   functional retail plaza.

23        In the end the response insists the Court was

24   premature in denying Ms. Biros's claim and argues that Ms.

25   Biros could present evidence in support of her claim given the

**Appendix Vol. II, Page 349**

58

1  opportunity.  Admittedly, the Court is dubious for several

2  reasons, including the question is not whether she can prove

3  her ROI, but whether ROI is an appropriate measure of the

4  Estate's benefit.  And for that to be true Ms. Biros would need

5  to justify how the Estate could receive a benefit far in excess

6  of the property value that was preserved.

7           Frankly, at $18,000 a month it is hard to imagine

8  that it would have been cheaper to move the tangible assets

9  offsite.

10          The Court also finds it telling that neither the

11  Motion nor the response explain even in summary fashion how the

12  Estate benefitted to the tune of $144,000.

13          Finally, and perhaps most damning of all, Biros's

14  administrative expense calculations are undercut by her own

15  proof of claim.  That claim seeks payment of pre-petition rent

16  based on monthly rent of $5,000 a month, roughly 27 percent of

17  her post-petition monthly rent claim.

18          Giving her the benefit of the doubt, the claim

19  suggests the top end rent number could be as high as $10,000,

20  which is still $64,000 less than the aggregate which is claimed

21  in the Motion.

22          I question whether this proof of claim was even

23  reviewed before the Motion was filed.

24          That all said, the Court denied the Motion for an

25  administrative expense without prejudice to the filing of a

**Appendix Vol. II, Page 350**

1  Motion seeking a reasonable request for administrative claim.

2  So, with the benefit of the Court's added perspective on this

3  matter and my thoughts I just relayed, I leave two options on

4  the table for Ms. Biros and Attorney Bernstein.  You can either

5  have seven days leave to file an amended Motion for an

6  administrative expense claim, or if you truly believe the

7  Motion was meritorious on all counts, in essence you want to

8  double down, then I will set it for an evidentiary hearing

9  where you can put on whatever record you wish.  The choice is

10 yours.

11         In any event, I am going to continue the Order to

12 Show Cause to run parallel to the hearing on either the

13 original Motion for the evidentiary hearing or on the amended

14 Motion.  So, Mr. Bernstein?

15         MR. BERNSTEIN:  May I have a moment?

16         THE COURT:  You may.

17         MR. BERNSTEIN:  Your Honor, I was in some sense

18 looking forward to the opportunity today to provide some

19 additional thoughts and reaction to the Memorandum Opinion.  In

20 light of the Court's pronouncements earlier about cutting to

21 the chase and trying to get to the end of things, I am probably

22 not going to say all the things that I was prepared to say.

23 The answer -- we came in today assuming that the Motion was

24 dismissed pursuant to the Order, and considering when to file a

25 renewed Motion, based on the status of the case at any

**Appendix Vol. II, Page 351**

1  particular time.  I will say that before I get to the answer to

2  the Court's question the filing of the Motion was to some

3  extent driven -- the timing of the filing was to some extent

4  driven by the Court's comments at one or more of the sale

5  hearings about ending the case.  And understanding that we

6  needed to get to the end of the administrative claims in order

7  for the Trustee to be able to close the case.

8          We will certainly file an amended Motion.  Well, let

9  me say we are likely to file an amended Motion.  I don't want

10 to foreclose the possibility that based on the facts of the

11 case and the other claims that are out there that Ms. Biros may

12 decide not to spend the time or effort filing a 503 request,

13 but it is likely that we will file one.

14         What we file will be informed significantly by the

15 Court's Memorandum Opinion and by the comments that the Court

16 made today, as well as by the significant research that we have

17 done since the Memorandum Opinion, and our hope is that the

18 Court sees that Motion for what it is a property owner's

19 attempt to get a reasonable claim for the Trustee's having used

20 her property for eight or ten months, whatever the time period

21 is, through today, when the Trustee gave it up.

22         There was nothing more to it than that.  It was not a

23 litigation tactic except to the extent that any request for a

24 claim is a litigation tactic when there are other people in the

25 case fighting for the same pot of money.  We have heard what

Appendix Vol. II, Page 352

1 the Court said.  We've read what the Court wrote.  I hope that

2 I have heard it the way it was intended to be conveyed, and

3 that I listened carefully.  And I know that what I have heard

4 and read will inform further action.  I don't know what the

5 Court intends to do.  It sounded like the Court was just going

6 to continue the Order to Show Cause to a future point related

7 to the new Motion.  Honestly I'd like the Court to discharge

8 the Order to Show Cause and end that sword of Damocles.  It's

9 personally and professionally distressing, and I would prefer

10 that it no longer be there.  If there is a sanction that the

11 Court believes is appropriate the Court should impose that

12 sanction.  I don't think that if the Court is waiting to see

13 whether we file a Motion that the Court doesn't like again,

14 then I guess I have no choice.

15        THE COURT:  Well, I guess where I am is this.  No

16 one, and I have been clear on this in the Opinion, and I was

17 clear on it today in my remarks, and I've been clear on that at

18 the last couple of hearings, that I had no opposition and think

19 that Ms. Biros is certainly entitled to request a reasonable

20 amount of rent for the use of the property during the time that

21 the Estate had possession.  And in fact, the critical issue is

22 what is reasonable?  And as I mentioned in the Opinion, and as

23 I noted and used the exact same phrase in one of the hearings,

24 was that the request needs to be reasonable, and in fact,

25 reasonableness is inherent in the legal standard.  And despite

62

 1 | those admonitions I got this.  So, where I am left with is if

 2 | you are going to, as I said, double down and stay with this

 3 | Motion, then we will have an evidentiary hearing on it.  I will

 4 | consider it to still be a live Motion at that point because

 5 | you've asked for the ability to have the evidentiary hearing.

 6 | And I'll continue the Show Cause to that date.  If you are not

 7 | sure yet whether you will file an amended Motion, then that

 8 | puts me in a quandary of what I do with the Show Cause at this

 9 | point.  So, that's --

10 |        MR. BERNSTEIN:  Likely we will file another Motion,

11 | Your Honor.  I just haven't had time to consider all this, that

12 | Ms. Biros is happy that the Court decided today to terminate

13 | the Stay and that she gets her property back, and is happy with

14 | several of the other things that happened today, and that may

15 | inform the ultimate decision.

16 |        I think -- I mean, to be very frank, I get that the

17 | Court was perturbed, upset with the $144,000 request.  I

18 | understand that.  I've heard that.  It's not at all unusual for

19 | a party seeking a claim, especially when there are other

20 | parties looking for the same pot, to push the limits.  I

21 | understand that the Court thinks we went past the limits in

22 | this case.  I think that the Court's focus on the size of the

23 | Estate is useful but not determinative.  We fight everyday over

24 | small estates, trying to get our clients their share, whatever

25 | share the Court determines.  In this situation I think I hear

**Appendix Vol. II, Page 354**

1 the Court troubled by the use of a metric that came up with a

2 number that the Court just thinks was much too high, outside

3 the range of reasonableness, and I honestly don't -- don't know

4 how to represent Ms. Biros in the prosecution of a claim under

5 503 in light of the animosity and litigation posture of the

6 other parties in the case without proposing a number which is

7 high, because we're going to have a fight with other parties,

8 and I think in our response we suggested that had we even used

9 the $1,500 that the Court mentioned with regard to the bid,

10 that we certainly would have had objections by one or more of

11 the Snyders.  In fact, the Trustee kind of hinted, and it was

12 based on a conversation he and I had, that $1,500 would

13 certainly be okay with him, 5,000 is probably not outside the

14 range for him.

15         So, it was the --

16         THE COURT:  Was that before or after the Motion was

17 filed?

18         MR. BERNSTEIN:  The discussion with the Trustee was

19 after the Motion was filed, before the Trustee filed his

20 response.  And I don't remember exactly, but I think I called

21 him just to talk with him about what his position might be.

22 And I think we had some discussion, and I said, well, we can

23 come to an understanding, but we can't make an agreement

24 because we still have other parties who will be objecting, and

25 so thanks for the information, we'll see what happens at the

Appendix Vol. II, Page 355

64

1    hearing.

2          It was as -- and I don't want the Court to think I'm

3    trying to hide behind, well, everybody does it.  It does happen

4    regularly that Motions seeking -- Motions seeking, let's call

5    them big claims, are filed, expecting there to be responses

6    that may bring new information, negotiations that may bring new

7    information, hearings that might bring new information.  And in

8    the end that's how we bring to the Court either a solution or

9    enough facts and argument to get a reasonable decision.

10          Faced with this question again, not having the

11   benefit of the Court's Memorandum and statements here, facing

12   this question again I am not sure that 99 out of 100 lawyers in

13   this district would not file the same sort of Motion.  It's --

14   when I say it's the beginning I don't want to say that it's --

15   you know, it was an unreasonable demand to spark negotiation.

16   We had to start somewhere.  And --

17          THE COURT:  Okay.  Well, let's just get back to --

18   cut to the chase then.

19          MR. BERNSTEIN:  Yes, sir.

20          THE COURT:  It comes down to a justification of the

21   $144,000.  I have an estate that generated a value of no more

22   than 70,000.  I have a Debtor who, in its best case never

23   generated annual income of more than $13,000.  So, if you want

24   to stand by the one forty-four, then give me your best defense

25   as to why that was a justifiable and reasonable number under

**Appendix Vol. II, Page 356**

1  these sets of circumstances, because I can tell you again, it

2  is so far beyond the pale, it's not just puffing the claim a

3  little bit.  It is way, way off the ledge.  I would not have

4  gone to the trouble of writing a Memorandum Opinion -- and

5  believe me, I don't take lightly issuing a 9011 Order.  I think

6  this is only the second one I've ever done in ten years.  But

7  it's gotten to the point where enough is enough, and so I need

8  to say what I need to say on this.

9          So, if you want to justify the one forty-four, please

10 do so.

11         MR. BERNSTEIN:  Well, I'm not sure that anything I

12 can say today --

13         THE COURT:  I'll give you full range to do whatever

14 you want to do to justify the number and defend the Motion

15 against the show cause.

16         MR. BERNSTEIN:  Well, I would love to have this

17 discussion about justifying that number.  It sounds like my

18 doing that is -- is challenging the Court and is making a

19 decision that --

20         THE COURT:  Well --

21         MR. BERNSTEIN:  -- we can't -- we can't seek a

22 different amount, that we're stuck with this.

23         THE COURT:  What I am trying to do is I'm trying to

24 give you the benefit of my read, the benefit of my view of the

25 case, and the view of the case law, so that you can adjust

1  accordingly in your response to that, and we can have a fully

2  informed and engaged discussion about it, and then at that

3  point I can make a determination.

4      MR. BERNSTEIN:  Excuse me.  The only thing I can say

5  with regard to the one forty-four is that it was our attempt at

6  coming to a calculation that the Court and the parties could

7  then use to be modified by the actual facts to be -- to be

8  developed, what exact percentage of the property the Trustee

9  used, what equipment was on there.  All of those things which

10 modified -- which allow the Court, and which the Court is

11 required to look at to get to a reasonable rent.  That is, in a

12 nutshell, how we justify the one forty-four.  I mean, maybe it

13 cuts against my argument, but nobody expected we would end up

14 with a one forty-four claim.  We expected that the parties

15 would bring their positions to it, the Court would ultimately

16 either approve a consent agreement or make a decision based on

17 all the facts.  That's what I'd say in support of putting a one

18 forty-four number in there.

19      We do not want to proceed with the dismissed Motion.

20 I am not challenging the Court in that regard.  We have now the

21 benefit of this ten days of review of the Memorandum Opinion

22 and the Court's comments, and our research, and I don't think I

23 need to, but I can assure the Court that the next Motion we

24 file, assuming we file one, is going to be significantly

25 different in terms of perhaps number, certainly support within

Appendix Vol. II, Page 358

Case 22-20823-JNP Doc 306 Filed 02/01/23 Entered 02/01/23 10:53:40 Desc Main
Case 22-21183-CLT Doc 306 Filed 02/01/23 Page: 359 Date Filed: 06/14/2029
Document     Page 67 of 101

67

1  the document, and getting -- and following the necessary flow

2  down through a conclusion of what we think is a reasonable

3  number.

4        I know the Court may have mentioned giving us seven

5  days to do that.  I'd rather have more time.  It gives me an

6  opportunity to -- once we get the property back, take another

7  look at it, talk with the Trustee in the light of day about

8  what exactly happened without the worry about the various

9  Motions that were pending, and it just -- I would like more

10 time.  Having said that, I would rather not have the Order to

11 Show Cause outstanding.  It is very uncomfortable for me.

12       With regard to Ms. Biros, the -- I realize that she

13 is there because she is the client, and she authorized the

14 pleading and she authorized and signed the response.  She was

15 listening to our advice.  And I don't -- I mean, I'd give her

16 the opportunity to say anything else.  I don't think there's --

17 she has anything to add to what I've said, Your Honor.

18       THE COURT:  All right.  So how much time are you

19 asking for to file an amended Motion?

20       MR. BERNSTEIN:  Thirty days.

21       THE COURT:  All right.  And, Ms. Biros, you're

22 incorporating the comments of your counsel.  Do you have

23 anything further you want to add?

24       MS. BIROS:  No, Your Honor.

25       MR. BERNSTEIN:  No, you're agreeing with what I am

**Appendix Vol. II, Page 359**

68

1  saying?

2      MS. BIROS:  No.  I was answering his second question.

3  I have no more to add.

4      THE COURT:  She has nothing further to add.

5      MR. BERNSTEIN:  All right.

6      THE COURT:  All right.  Okay.  And -- all right.  Mr.

7  Bernstein, anything further you wish to address on this

8  subject?

9      MR. BERNSTEIN:  No, Your Honor.

10     THE COURT:  All right.  Well, then, I will give you a

11 30-day period to file an amended Motion, but I am not in a

12 position to vacate the Show Cause at this point.  I will

13 continue it over to the hearing on that Motion on the

14 administrative expense if an amended Motion is filed.  It gives

15 you up to 30 days, but you can certainly file it sooner if you

16 wish.

17     MR. BERNSTEIN:  Yes, Your Honor.  One question.  And

18 I am not a litigator, so I don't know quite all the rules.  But

19 I note that in the memorandum there were specifically findings

20 and conclusions, and I have been told that we need to, if we

21 have concerns about those findings and conclusions, we need to

22 file a Motion to amend or request for an extension of time to

23 move to amend.  Could we have the same 30 days --

24     THE COURT:  Yes.

25     MR. BERNSTEIN:  -- for that?  Thank you, Your Honor.

**Appendix Vol. II, Page 360**

 1          THE COURT:  All right.  Does anyone need a break at

 2   this point?

 3          MR. SNYDER:  Yes, please.  Just a quick bathroom

 4   break.

 5          THE COURT:  All right.  Why don't we take a ten-

 6   minute break, a recess, and we will convene on the record at 25

 7   after?  Court will now stand in -- adjourn, and we will

 8   reconvene at 12:25.

 9                      (Recess)

10          ECRO:  All rise.

11          THE COURT:  Be seated.  We are back on the record in

12   Case Number 22-20823, U LOCK, Inc.  We have made some headway

13   through the pending matters, and now, according to my score

14   sheet, the only remaining items that we have at this point are

15   the amended Show Cause Order issued by the Court at Docket

16   Number 278.  That is an Order to Show Cause that this Court

17   issued on December 16th, 2022, directed to George Snyder and

18   Christine Biros, requiring them to appear and show cause as to

19   why the Court should not impose sanctions against them, for

20   exercising control over property of the Estate in violation of

21   the Stay, and also interfering with the Trustee's sale of

22   assets.  The Order was amended on January 6th, 2023, solely for

23   the purpose of establishing a response deadline.  And the show

24   cause arose out of a December 1, 2022 hearing on the Trustee's

25   Motion to sell assets.

Appendix Vol. II, Page 361

70

1    Although the Court was prepared to proceed with the

2 sale Motion these efforts were thwarted by the revelation that

3 many of the Debtor's tangible personal property, including

4 assets specifically listed for sale by the Trustee, had been

5 removed from the Debtor's business premises. The parties then

6 accused the other of surreptitiously moving the assets.

7    As the sale could not proceed until the location and

8 identity of the assets has been secured the Court implemented

9 two measures. First, I required George Snyder, Shanni Snyder

10 and Christine Biros to each file a sworn affidavit under 28

11 U.S.C. Section 1746 identifying, A, any assets they removed

12 from the Debtor's place of business, B, the current location of

13 any removed assets, and C, the authority by which those assets

14 were removed. Second, the Court took the rare step of

15 conducting a site visit on December 2nd, 2022, to visit the

16 three locations where the assets were allegedly situated in an

17 effort to confirm the whereabouts of each item listed in the

18 sale Motion, and that precisely occurred because the parties

19 could not reach any consensus whatsoever as to what assets were

20 located where and who took what.

21    Shanni Snyder filed an affidavit indicating she was

22 not in possession of any assets, while both George Snyder and

23 Christine Biros admitted that they were in possession of Estate

24 assets, and during the site inspection it was allegedly

25 indicated that a gentleman by the name of Glenn Mowry may have

**Appendix Vol. II, Page 362**

1  also removed certain assets listed on the Debtor's bankruptcy

2  schedules and retained possession of them, although at this

3  point he has not entered an appearance in the case, and so the

4  Court deferred any further proceedings against Mr. Mowry to the

5  discretion of the Chapter 7 Trustee.

6        I have responses from both George Snyder and

7  Christine Biros to the pending Show Cause Order.  At this point

8  I have reviewed those responses.  I have had an opportunity to

9  understand what the parties' positions are, and so at this

10 point I am going to offer an opportunity for the parties to

11 supplement the record if there is anything further they want

12 the Court to consider, either in terms of legal argument or

13 evidence they may be prepared to do so.  So, with that said I

14 will begin with Mr. Snyder.  Mr. Snyder, is there anything

15 further you wish to say or present in terms of the Order to

16 Show Cause?

17       MR. SNYDER:  Did you want Mr. Roth to speak first on

18 behalf of U LOCK?  Or me for my personal --

19       THE COURT:  This is a Show Cause Order issued against

20 you.

21       MR. SNYDER:  Okay.

22       THE COURT:  It does not have anything to do with U

23 LOCK itself.

24       MR. SNYDER:  Okay.  Let me ask you one other question

25 you gave in the instructions when you came here.  You said you

Appendix Vol. II, Page 363

72

1  were trying to streamline things, and you said that you don't

2  necessarily want to hear defenses to the accusations, it's just

3  assumed that I am defending certain things?

4          THE COURT:  No.  I want to hear whatever you want to

5  present as your defense to the Show Cause Order.  What I don't

6  want to do is to get into a screaming match between you and the

7  Biros parties as to who did what.  I just want to hear your

8  side of the case and hear what you have to offer at this point.

9          MR. SNYDER:  Okay.  Then I will just keep it really

10 brief because most of it is in my --

11         THE COURT:  Okay.  Because I was going to say this is

12 -- the floor is yours.  You can enter and put in whatever you

13 wish the Court to consider.

14         MR. SNYDER:  Um, I didn't --

15         THE COURT:  And I'll tell you what, while we're doing

16 this, let me also go through this.  I'm going to have whoever

17 is going to be addressing the Court and raising any factual

18 issues to be sworn.  So -- and I'll do the same thing on the

19 Christine Biros side, too.  So, you'll be testifying, anyone

20 else over here?

21         MS. BIROS:  I'm not sure yet.

22         THE COURT:  Ms. Biros?

23         MS. BIROS:  Not sure.

24         THE COURT:  Okay.  So, I would ask that you both

25 please rise and be sworn, and I ask Ms. Smith to please swear

**Appendix Vol. II, Page 364**

1    the witnesses.

2                 GEORGE SNYDER, WITNESS, SWORN

3                 CHRISTINE BIROS, WITNESS SWORN

4       ECRO:  Thank you.

5       THE COURT:  All right, thank you.  All right, Mr.

6    Snyder, you may proceed.

7       MR. SNYDER:  Okay.  Regarding anything I've taken off

8    of there, I was in touch with Mr. Slone the whole time.  I

9    didn't remove any assets -- I'm sorry, I didn't remove anything

10   that was on the schedule.  I did remove the two big white tanks

11   that were assets of the Estate that I believe I would be

12   putting on the amended schedule once we amended it.  But I

13   removed those with Mr. Slone's knowledge.  And also, according

14   to your June 3rd, I believe, Court Order, it said to remove all

15   the tanks from the property by a certain date and all the

16   vehicles on the property by a certain date.  So, I believe I

17   moved that stuff with the authority of the Court and with Mr.

18   Slone's permission and knowledge.  And at all times he was

19   aware of where they were at, they weren't hidden.  You could

20   actually see them right from the red light at the highway.  And

21   as you saw, it's a quarter mile away from the site that they

22   were on.

23       So, the Court Order also said that if they were sold

24   to give that money to the -- you know, parse that money to Mr.

25   Slone.  Those tanks weren't sold, they were just preserved

1  there until the outcome of this.

2          As far as the vehicles go, meaning the abandoned

3  cars, I have -- those were salvaged according to the, I think

4  it was a June 3rd Court Order and I brought money orders with

5  me today.  I believe the Court has them already, though.

6          THE COURT:  Are those the ones that were attached to

7  your response?

8          MR. SNYDER:  Yes.

9          THE COURT:  Okay, I do have those.

10          MR. SNYDER:  One is for $500 and one is for 475.

11  That was the total of any car that was scraped there.  And that

12  was provided to Mr. Slone and he received that money.

13          Then the other items that you saw on the site visit,

14  there was a couple pallets of shelving, there was a red or a

15  yellow tri-axial trailer, real old trailer and some unistrut

16  pallet, those were all my personal items, and also the shipping

17  containers too, I'm sorry, and the shipping containers were my

18  personal items.  So, I didn't remove anything, any other

19  scheduled items.  And the only assets of the Estate were those

20  two white water tanks.  And that's pretty much it.

21          THE COURT:  All right, nothing further?

22          MR. SNYDER:  No.  And, I guess just in the event that

23  you would find I did something wrong, I would just like to say

24  I apologize and just put it on the mercy of the Court to

25  sanction me how you feel it necessary.

**Appendix Vol. II, Page 366**

75

 1                THE COURT:  All right, thank you.  Do we still have

 2     Trustee Slone on the line?

 3                MR. SLONE:  Yes, I'm still here.

 4                THE COURT:  Is you video working?

 5                MR. SLONE:  Apparently not.  Every time I press it,

 6     it says failed to start video camera, please select another

 7     video camera.  I don't have any other video camera.

 8                THE COURT:  All right.  I'm going to ask that you

 9     also be sworn, Mr. Slone.  So, I'm going to accept your

10     representation that you are raising your right hand and you are

11     agreeing to be sworn.

12                MR. SLONE:  I am, sir.

13                THE COURT:  All right, Ms. Smith.

14                     ROBERT SLONE, WITNESS, SWORN

15                ECRO:  Thank you.

16                THE COURT:  All right.  Mr. Slone, anything that you

17     wish to inform the Court with respect to Mr. Snyder's Show

18     Cause about removal of the items that he has mentioned today?

19                MR. SLONE:  Not too much.  A lot of the stuff was

20     removed before I became Trustee.  He did give me the two checks

21     for scrap value of car salvage.  One was for $475 and one was

22     for 500.  I deposited those on July 12th, 2022.

23                The two white water tanks I was aware of, he probably

24     had moved those prior to my being appointed and then I said,

25     just leave them where they are.  I knew they were on his

Appendix Vol. II, Page 367

76

1 property.  And it was difficult in this case to ascertain what

2 property actually was U LOCK'S.  We only had what was on the

3 schedules.  There was no back-up, there were no tax returns

4 filed, it was very difficult to ascertain exactly what.  I took

5 Mr. Mark Ferry down, we went through with George Snyder, he

6 pointed out some other items.  That's about all I can say, Your

7 Honor.

8         THE COURT:  All right, thank you.  Mr. Snyder,

9 anything further that you wish to say in response to what the

10 Trustee has indicated?

11         MR. SNYDER:  No, that was it.  Just, I agree with

12 him, it was a little difficult and I apologize for that, but

13 when we first, I think, when the limited Relief of Stay was I

14 think the first time the Biros were on the property was July

15 12th, I was only on there for a matter of weeks, then I was

16 banned from the property and so, from that point until about a

17 week ago I wasn't on the property, so I was unable to make a

18 complete inventory like I would like to.  So, I discussed that

19 with Mr. Slone, he wanted the complete inventory but couldn't

20 get me on the property so that was what the delay was all

21 about.  That's all.

22         THE COURT:  All right, thank you.  All right, I'm

23 going to consider that Order to Show Cause to be under

24 submission then, and I will take that under advisement.

25         With respect to the portion of the Show Cause Order

Appendix Vol. II, Page 368

Case 22-20823-JAD Doc 306 Filed 02/01/23 Entered 02/01/23 16:34:02 Desc Main
Case 23-21-163 Document 1723 Page: 369 Date Filed 05/30/2025
Document Page 77 of 101

77

1  as to Christine Biros, Mr. Bernstein.

2          MR. BERNSTEIN:  Thank you, Your Honor.  Just

3  preliminarily, I think in our response, Ms. Biros's response,

4  she tried to focus on her actions and, unfortunately, the

5  actions that she took were based on things she saw and things

6  she heard, and so, it bled over into what may have seemed like

7  accusations about other parties.  We do try to focus on the

8  seven items that she moved and I've outlined in the response

9  the bases on which she moved those things, the reason that she

10 thought she was authorized to move those things and by way of

11 other defenses, of course, we've outlined that we don't think

12 that any of the seven were property of the Estate.  We have

13 since developed and Mr. Otto could testify about that since he

14 pulled them together, we've developed evidence from Mr. Mowry

15 as to the ownership of six of the items.  Mr. Otto has, as to

16 the trailer, that was the item discovered on the morning of the

17 -- or during the site visit, Mr. Otto has, by obtaining the

18 vehicle identification number, he's had that traced and it is

19 owned by another party.  We don't have any other evidence of --

20         THE COURT:  Well, let me ask you something there.  I

21 mean, you know, these items were listed on the schedules.  So,

22 irrespective of whether or not you believe the Estate really

23 owned those items, does that give you the ability to move them?

24         MR. BERNSTEIN:  Well, I guess the question is, what

25 is it that Ms. Biros is accused of violating?  And if it is

1  dealing with property of the Estate, then we have to examine

2  whether it was, in fact, property of the Estate.  And I

3  understand that 541, concept of property of the Estate, is

4  pretty broad.  One could argue that U LOCK listing them on the

5  schedules was an assertion that the Estate had an interest in

6  it which might make it property of the Estate, we're suggesting

7  that, in fact, U LOCK did not have an interest in it.  Whether

8  U LOCK said they did or didn't, if the ultimate finding is that

9  it was owned by somebody else, then it never belonged to U

10  LOCK.  And that's one of our defenses.

11      The second, of course, is that in the June 3rd Order

12  Ms. Biros was given leave to clean up the property, to take

13  things off the property.  That, in combination with her concern

14  about items that could have value disappearing, led her to take

15  the action to move them to the McKeesport site.

16      THE COURT:  So, what in the June 3rd Order gave Ms.

17  Biros the belief that there was authority?  I mean, the

18  response mentions the vehicles and trailers provision.

19      MR. BERNSTEIN:  Yes, that section.

20      THE COURT:  But I thought it was pretty clear from

21  the discussion that was had on the record at the hearing that

22  occurred on June 2nd, that what we were talking about at that

23  time were vehicles that were actually titled automobiles not

24  heavy equipment.

25      MR. BERNSTEIN:  I don't think that was Ms. Biros's

1  understanding, that it was more of a wider cleanup provision.

2         In any event, whether that was a legitimate basis for

3  her to believe that she had the right to remove them or not, in

4  fact, the removal of them did protect them.  They became

5  available to be at the sale.  It certainly inconvenienced

6  everybody and the Court to continue that sale hearing and make

7  the site visit.  We know in the end those things really didn't

8  make a difference to the sale price or the sale process, so we

9  don't think there was any actual harm to the Estate.

10         THE COURT:  Well, why was it that when I set the due

11 diligence date or the site inspection date, where people could

12 come onto the property to look at the assets, which I'm trying

13 to remember the date of that.

14         MR. JOYCE:  November 10th, Your Honor, is that --

15         THE COURT:  I think it was actually November 21st.

16         MR. JOYCE:  Oh, the due diligence date was the 21st,

17 the hearing was the 10th.

18         THE COURT:  Okay, thank you.  I had a hearing on

19 November 10th, and I set a due diligence date of November 21st

20 for parties to go to the property and look at the assets.  And

21 my understanding is from the papers, that the assets had

22 already been moved by November 10th.  So, why was nothing ever

23 said at that hearing that the assets had been moved and if we

24 went to the site you weren't going to see everything that was

25 ostensibly property of the Estate?

1          MR. BERNSTEIN:  The only answer I can give is that

2     the process has been so messy because of all of the accusations

3     and moving things and being unclear whose is what, that it

4     just, Ms. Biros just didn't feel that that was a clarification

5     that needed to be made.  I don't -- I'm sure that's not a

6     satisfactory response, she may have a different response to

7     make personally, but that's my understanding in talking to her

8     and Mr. Otto.

9          And she understands that now, what she did caused

10    difficulty and confusion.  Again, in the end we don't think

11    that it made a difference to the quality of the sale and we

12    think the Court found that  --

13         THE COURT:  Well, irrespective of if it affected the

14    outcome of the sale, it definitely delayed the sale hearing

15    because it required me to have an additional sale hearing.

16         MR. BERNSTEIN:  Yes.

17         THE COURT:  It required me to have a site visit, it

18    required me to bring two U.S. Marshals out there, it required

19    all the professionals to be there, spending I don't know how

20    many hours we did that and, furthermore, it delayed when the

21    closing of the sale could occur.  Is there any issue with that

22    outcome or what resulted from the action of moving those

23    assets?

24         MR. BERNSTEIN:  If she was not justified and she was

25    not authorized to take the steps that she did, then certainly

Appendix Vol. II, Page 372

 1 those costs could follow from her actions.  They would, in our

 2 view, be shared to the extent there's responsibility for that

 3 with Mr. Snyder, who was involved in moving things at the same

 4 time and at the same -- we learned of it at the same hearing.

 5 So, that's sort of a mitigation argument.  She knows it

 6 shouldn't have been done.  It should have been done more

 7 cleanly and --

 8         THE COURT:  Well, not only should it not have been

 9 done, I'm also struggling with the fact that there was no

10 candor or admission to it when the opportunity to do so

11 presented itself at the November 10th hearing.  I had to find

12 out about this because of accusations from the other parties.

13 There was never an affirmative representation and I'm willing

14 to hear from Mr. Slone about this, but from my understanding of

15 the transcript and, again, Ms. Biros can correct me if I'm

16 wrong, you can correct me if I'm wrong, and Mr. Slone can

17 correct me if I'm wrong, my understanding was the Trustee

18 thought the assets were being moved within the property.  He

19 did not have an understanding they were being moved off

20 property.

21         MR. BERNSTEIN:  Well, my understanding is different,

22 Your Honor.

23         THE COURT:  Okay.  Well, then here's what I want to

24 know then.  Again, whatever other record you want to establish

25 with respect to this, I'll give you the opportunity to do so,

**Appendix Vol. II, Page 373**

1  you mentioned having Mr. Otto speak to this, I'm not sure if

2  you're going to have Ms. Biros say anything further but

3  whatever you want to have the Court consider in relation to

4  this, this is your opportunity to set that record.

5          MR. BERNSTEIN:  So, I think Mr. Otto would like to

6  give the Court some information and he should probably be

7  sworn.

8          THE COURT:  All right, let's have Mr. Otto sworn,

9  please.

10                WILLIAM OTTO, WITNESS, SWORN

11          ECRO:  Thank you.

12          THE COURT:  You may be seated, Mr. Otto.

13          MR. OTTO:  Your Honor, when this case first started

14  and the Trustee was appointed, I called the Trustee.  I didn't

15  know him, but I talked to Mr. Bernstein and he suggested I call

16  him directly, so I did.  And I strongly urged him to secure the

17  site from the beginning.  And in the period of time from when

18  he was first retained until the November time frame, I met with

19  him among other people at the site six times.  And over those

20  site visits things kept disappearing.  And I told him on a

21  number of occasions that he needed to take better control of

22  the site.  I can't speak to his actions, but I can tell you

23  things kept disappearing.  And at some point in time, Mr. Mowry

24  submitted two affidavits to the Trustee as to equipment he

25  claimed he owned and it's my recollection that at one point a

Appendix Vol. II, Page 374

 1 Trustee told him to go ahead and take his stuff off the site.

 2 I know Mr. Snyder has complained that that was done and that's

 3 my understanding, as well.

 4         I told the Trustee over a number of phone calls and

 5 visits and conversations, that Ms. Biros had moved some of the

 6 equipment.  That the reason that she moved it was because other

 7 things that were on the site had been moved or taken and that

 8 he would be welcomed to either inspect it or we would  return

 9 it if he deemed that was necessary and he never asked either to

10 see it or to have it returned.

11         THE COURT:  All right.  Anything further at this

12 point?

13         MR. OTTO:  The only thing I can say about a failure

14 to disclose it in November when we had that discussion, was

15 that there was a focus on the site and since there was only at

16 the time either Mr. Snyder or Ms. Snyder were going to bid on

17 it and they, obviously, knew that the equipment existed.  Ms.

18 Biros never did anything other than move it to another site to

19 make sure that it would be available for whoever bought it.

20 She didn't sell it, she didn't scrap it, she didn't damage it,

21 she just had it moved.

22         THE COURT:  What about the allegations made in the

23 response that the equipment was damaged when it was moved?

24         MR. OTTO:  That the equipment was damaged?  Your

25 Honor, none of it, it was all scrap.  It wasn't usable.

84

1          THE COURT:  Okay.  But the allegation is that it was

2   originally put on the property, the one piece of machinery, was

3   on its side and then it was made to be upright by the time of

4   the site visit.

5          MR. OTTO:  Your Honor, it's my understanding that

6   this gentleman here is the one who moved it and he can speak to

7   the condition.  I never saw it on the McKeesport site.

8          THE COURT:  Okay.  All right.  Anything further from

9   Ms. Biros's side?

10          MS. BIROS:  Yes.  Your Honor, when I had the property

11  removed, I believe I went through my attorney.

12          THE COURT:  You can be seated, if you wish.  If

13  you're more comfortable.

14          MS. BIROS:  Okay, thank you.  I went through my

15  attorney, Mr. Otto, to speak to Mr. Slone.  It was my

16  understanding he knew I was moving it to another site.  It was

17  the only way I could secure it.  I never scraped it, destroyed

18  it purposely.  If in the move or it was damaged it was still

19  scrap.  He could testify to its scrap.  There was no value.

20  That stuff has been there, on that property before 2015.  Mr.

21  Mowry says he's had it there for years.  He was the person who

22  was supposed to buy the property.  I don't want to get off

23  track.  But, I have all of the paperwork from Mr. Mowry, it was

24  never U LOCK'S possession.  I mean, it might have been in their

25  possession, it was never their ownership of anything I took.

**Appendix Vol. II, Page 376**

85

1  There was also a red trailer there that belonged to a company

2  that we tracked back to Morris Landscaping, a Mary Morris of

3  North Versailles.  She's never claimed the trailer, we've tried

4  to contact her, I even asked the police to try to contact her,

5  to return her items to her.  Nobody could do anything or help.

6          THE COURT:  And when did you get the information from

7  Mr. Mowry that suggests that he is the owner of some of the

8  equipment?

9          MS. BIROS:  The first time I met Mr. Mowry he came to

10 the site with Mr. Slone was there, Nick Jackson was there.

11 There were a few other people and Mr. Mowry stated that he was

12 the owner of a lot of this heavy equipment.

13         THE COURT:  And when was that?

14         MS. BIROS:  What's that, sir?

15         THE COURT:  When was that?

16         MS. BIROS:  You were there.

17         THE COURT:  I'll --

18         MS. BIROS:  It was one of the visits --

19         THE COURT:  Was it prior to November?

20         MS. BIROS:  Oh, yes.

21         THE COURT:  Was it over the summer?

22         MS. BIROS:  We have so many, we have six listings of

23 site visits so I don't want you to pin me down to a date that I

24 can't back up then.  But he came, I forgot what I was saying.

25 But Mr. Mowry came to the site with his attorney, Mr. Bird

86

1  (phonetic), I believe and then he also came to the site visit

2  with you and claimed that.  He told me he spoke with Trustee

3  Slone and Trustee Slone told him he didn't have to be at any of

4  the hearings.  He submitted Trustee Slone his ownership of

5  those things.

6        THE COURT:  And when did that occur, do you know?

7  The exchange of whatever ownership documents?  If it was given

8  directly to Trustee Slone, I'll ask Trustee Slone.

9        MS. BIROS:  I have no idea.

10        THE COURT:  Okay.

11        MS. BIROS:  When we were in Court, I don't know if it

12  was the last time or the time before that, I don't know the

13  opposing counsel's name I'm sorry, Mr. Joyce, stated that  Ms.

14  Snyder would not object to anyone taking their personal

15  property off of the U LOCK and all their personal things.

16  Although Mr. Mowry was not given the same opportunity to take

17  his stuff.  But we were at that site, Mr. Snyder, Your Honor,

18  and Mr. Mowry made a comment he had a piece of equipment there

19  as well and August 4th, he turned in an affidavit of all his

20  stuff,  I'm sorry, Your Honor, of 2022.

21        THE COURT:  All right.  So, I want to be clear.  So,

22  August 4th was not the meeting with Mr. Mowry, or was it?

23        MR. OTTO:  That's correct, Your Honor.

24        MS. BIROS:  That's correct, but he --

25        THE COURT:  Okay, so you met with Mr. Mowry on the

WWW.JJCOURT.COM

**Appendix Vol. II, Page 378**

1 site on August 4th?

2         MS. BIROS: No, no, no.

3         MR. OTTO: No, Your Honor. On August, I believe,

4 18th --

5         MS. BIROS: Well, let me just finish my one thought,

6 Your Honor. The site visit that you attended, we went to Mr.

7 Snyder's and Mr. Mowry expressed interest in a piece of

8 equipment he also had there. He's tried to obtain back since

9 that date and Mr. Snyder will not let him have his stuff.

10         MR. OTTO: We had a site visit on August 18th, with

11 the Trustee.

12         THE COURT: Okay. So, August 18th, was the site

13 visit and that's when Mr. Mowry first appeared?

14         MR. OTTO: To the best of our recollection, yes, Your

15 Honor.

16         THE COURT: Okay. And then when was it the --

17         MR. OTTO: The affidavit that he provided to the

18 Trustee --

19         THE COURT: -- ownership materials provided?

20         MR. OTTO: -- was August 4th.

21         THE COURT: August 4th?

22         MR. OTTO: Yes.

23         THE COURT: So, he provided ownership materials

24 before he actually saw the items?

25         MR. OTTO: I believe he had visited the site prior.

Appendix Vol. II, Page 379

1  And, in fact, he had been on the site for some time.

2          THE COURT:  All right.  Anything further that you

3  wish to add at this point?

4          MR. BERNSTEIN:  Your Honor, Mr. Otto did bring with

5  him documentation matching each of the seven items that were in

6  question, that were moved, two documents from Mr. Mowry and

7  he's prepared to present those.  We have copies for the other

8  parties.  We don't have, these were statements from Mr. Mowry,

9  so we don't have Mr. Mowry here, but Mr. Otto can tell the

10  Court what he's done with them and submit them.  I don't know

11  how you want to proceed with that.

12          THE COURT:  If you wish to proceed by submitting

13  those to the record, you can do so.  So, if you want to hand

14  them up.

15          MR. JOYCE:  I guess I'd note an objection, that's

16  hearsay.

17          THE COURT:  Well, my understanding is that it's being

18  submitted that there was some sort of ownership document

19  presented, it's not as to the truth of the matter whether or

20  not it actually is an ownership interest.  Quite frankly, you

21  know, I'll accept it, but I want to be clear on one thing.  You

22  know, these are assets that were listed on the schedules as

23  property of the Estate.  And in my view that makes it

24  sacrosanct for the purposes of the Stay.  So, whether someone

25  else has claimed an ownership interest in it, it doesn't

**Appendix Vol. II, Page 380**

89

1 necessarily give the right to move the asset absent Court Order

2 or absent some other type of authority.  And so, you know, I

3 will review that but I can tell you as I sit here right now, I

4 don't know that that necessarily carries the day, so I will

5 look at it for what it is and for what Ms. Biros understood to

6 be the competing claim to ownership for Mr. Mowry.  Whether or

7 not that's true or accurate or not is of no difference.  So,

8 I'm going to overrule the objection on that basis.  So, if

9 you'd like to bring that forward.

10          MR. OTTO:  If I may hand these up and then I'll give

11 them to the parties.

12          THE COURT:  So, I'm going to mark this as Exhibit 1,

13 Exhibit 2 --

14          MR. OTTO:  Your Honor, those -- excuse me.  Those

15 exhibit numbers correspond to the exhibit numbers in Ms.

16 Biros's affidavit that she submitted in connection with those

17 originally.

18          THE COURT:  Okay.  We have Exhibits 1, 2, 3, 4, 5, 6

19 and then I've got an Exhibit A, which I'll just call Exhibit 7.

20          MR. BERNSTEIN:  These weren't collated before, Your

21 Honor.

22          THE COURT:  All right, that's fine.  Anyone else wish

23 to be hear with respect to the Court's determination to admit

24 these as exhibits to this Show Cause?

25          MR. JOYCE:  Your Honor, something came to my

1  attention two days ago that I wanted to bring to the Court's

2  attention because I think it's important.  This week we were

3  conferring with our client Ms. Snyder about her removal of the

4  purchased assets that she acquired.  And in that process, she

5  engaged Mr. Nicholas Jackson, who is present in the courtroom

6  here today, to do that, help her with it.

7         And in the course of that and she's never met him

8  before or worked with him before, I should say in any way, but

9  in the course of that process Mr. Jackson said, hey, I didn't

10 get paid for moving the equipment that Christine Biros -- and

11 he could testify to this, I'm just letting the Court know what

12 I understand his testimony would  be, that he was asked by Ms.

13 Biros to move the equipment.

14        And he was told, I believe, that she owned the

15 equipment, that she would pay him and some of the equipment was

16 even moved after the November 10th hearing, I believe on

17 November 11th.  Some was moved by Mr. Jackson November 3rd and

18 5th and then after our hearing here on November 10th, when it

19 wasn't disclosed that it had been moved, he was asked to move

20 equipment on November 11th, down to the McKeesport site.

21        And he will -- you can call him and question him, or

22 I could do so.  He was told that she owned the equipment and

23 she would pay him, she hasn't paid him and I believe in her

24 proffer to the Court, her  affidavit to the Court, she said she

25 incurred costs on the move.  She hasn't paid him at least those

1  costs, and he also was told that, you know, in exchange for

2  payment, she'll just give him the equipment.

3          MR. BERNSTEIN:  Your Honor, can I object to this as

4  hearsay, counsel testifying.  And I'm not sure what interest

5  Ms. Snyder has in this proceeding.

6          MR. JOYCE:  I think we have an interest for our fees

7  being incurred on all these, you know, running around the

8  sites.

9          THE COURT:  Well, I mean, here's the one thing I'm

10 going to say.  You did file a -- well, actually --

11         MR. JOYCE:  I didn't file a response.

12         THE COURT:  -- you didn't file a response.  So, I

13 really don't see you having standing onto this issue.  And so,

14 I'm not going to hear any further on this.

15         MR. BERNSTEIN:  Yeah, he can testify to it.

16         MR. ROTH:  Your Honor, I would like  to call Mr.

17 Jackson as a witness is what I'd like to do.

18         THE COURT:  Okay.  Well, Mr. Roth, I previously ruled

19 that your client does not have standing in this matter and I'm

20 incorporating that ruling from the sale hearing into this as

21 well.  And the third thing I would say is, although Mr. Snyder

22 filed a response, I'm basically finding it's not germane for

23 the other parties to weigh in on a Show Cause Order that was

24 directed to one party.  This is a Court initiated thing.  You

25 know, I'm going to consider my record.  Ms. Biros has mentioned

92

1  having Mr. Nicholas speak to the Court and if that is the case,

2  then he's free to do so in the context of her presentation.

3  But, I'm not going to open this up to have the other parties

4  weigh in.  I did not ask any of the parties to weigh in on the

5  Show Cause Order that was issued against Mr. Snyder and I'm not

6  going to do the same here and certainly not in a case where

7  someone did not even file a pleading or response to it.  So,

8  with that, I'm back to these exhibits.

9        I didn't hear any objection other than the one from

10 Mr. Joyce, so I am considering them part of the record here.

11 Mr. Bernstein, anything further that you wanted to address with

12 respect to these exhibits, or anything else you want to offer

13 for the record at this point?

14        MR. BERNSTEIN:  No, Your Honor.

15        THE COURT:  All right.  And is there any inclination

16 from Ms. Biros to have Mr. -- is it Jackson? -- Mr. Jackson

17 address the Court?

18        MS. BIROS:  No.

19        MR. BERNSTEIN:  No, Your Honor.

20        THE COURT:  All right.  So, I do want to hear from

21 the Trustee on this because there is a discrepancy, I think, in

22 the facts as to whether or not the Trustee did authorize Ms.

23 Biros to move the equipment.  So, Mr. Slone, can you tell me

24 from your perspective of whether or not you authorized or were

25 aware of Ms. Biros's efforts to relocate the equipment from the

Appendix Vol. II, Page 384

1  Debtor's premises?

2          MR. SLONE:  Your Honor, my recollection is I was told

3  that when they were doing their remediation work, she could

4  move equipment on the property only.  I wasn't aware that it

5  went to the McKeesport location until pleadings were filed in

6  the Court.

7          THE COURT:  All right.  And there's also an

8  indication that you received documents from Mr. Mowry with

9  respect to his claim to ownership interests, is that accurate?

10          MR. SLONE:  Yes, it is.  Mr. Mowry and his attorney,

11  Larry Burns (phonetic), came to my office and sat in the

12  conference room and put those papers -- and gave me those

13  papers.

14          THE COURT:  And when did that occur?

15          MR. SLONE:  I don't know exactly, Your Honor.  I

16  think it was August or September.  I don't have my time sheets

17  in front of me or I don't even know if I put that on.  But they

18  came to my office, both of them, and I gave those papers to

19  both parties, to the Biros side and to the Snyder side.

20          THE COURT:  And was there anything further done from

21  the Trustee's perspective on the claims of ownership to those

22  assets?

23          MR. SLONE:  Just telling both parties that Glenn

24  Mowry was claiming ownership in those properties and that's why

25  we listed it in the original sale Motion Your Honor.

Appendix Vol. II, Page 385

94

1          THE COURT:  All right.  Anything further you wish to

2    add, Mr. Slone?

3          MR. SLONE:  No, sir.

4          THE COURT:  All right, Mr. Bernstein anything further

5    from Ms. Biros?

6          MR. BERNSTEIN:  No, Your Honor.

7          THE COURT:  All right.  Well, then I'll consider this

8    mater to be under submission as well and I will take it under

9    advisement and review the record that's been submitted today as

10   well as the record that's been established in these core

11   proceedings.

12          Again, I, obviously, would not have issued a Show

13   Cause Order if I did not take this seriously and view this as a

14   significant breach of potentially what would be a principle

15   duty of parties, which is to observe the propriety of property

16   of the Estate and to not move or relocate property without the

17   knowledge or consent of the Trustee.  And, furthermore, to not

18   do so in the middle of the sale process in which the parties

19   were aware that it was ongoing and recognizing what the down

20   field implications would be of doing so when a due diligence

21   period and site visit was scheduled.  So, I will consider these

22   matters and then issue a ruling in the near future as to how I

23   see the Show Cause Order shaking out.

24          So, with that I think we have addressed all pending

25   items on the agenda at this point, although, I do have one

**Appendix Vol. II, Page 386**

95

1  ancillary item that I do need to address and this is somewhat

2  tangentially related and, again, getting -- running afoul of my

3  own admonition of not moving far afield from the matters at

4  hand, but one thing that was raised that has been also

5  troubling to the Court, is in the pleadings and the papers

6  there was a reference to the involvement of the North

7  Huntington Police Department at some point.

8          And there was a representation made that one of my

9  proceeding memos was given to the police department for the

10  purpose of expanding upon or explaining what was meant by the

11  Court's Order or in view of some sort of interpretation of what

12  that Order was.  And, so, because that involves an allegation

13  against Mr. Otto, I'd like to hear from Mr. Otto with respect

14  to the circumstances there.

15          And by doing so, I want to remind Mr. Otto, to the

16  extent he's not aware, this is available on my website, is that

17  proceeding memos are not to be construed as orders of the

18  Court, they are not even to be construed as transcripts of what

19  happened in the Court, it is merely for the convenience of the

20  parties and the convenience of the Court to have a general

21  sense of what was discussed for the purpose of identifying

22  where documents and things may be worthy of further

23  examination.  But, to the extent that there is a need for a

24  transcript the parties are directed to get the transcript

25  itself.

**Appendix Vol. II, Page 387**

96

1           So, another concern I have is the use of a proceeding

2    memo and the suggestion that somehow that was viewed to be an

3    Order of the Court, or reflected upon the Court's authority of

4    what was and was not permitted.  Can you address that for me?

5           MR. OTTO:  Your Honor, I believe that what you're

6    referring to is a police report that Ms. Biros and I attempted

7    to file against an individual who was removing a video monitor

8    from the property.  This was at a time after which you had

9    given control of the property to Ms. Biros, as well as the

10   Trustee and the Trustee did not give this individual

11   authorization to be on the site.

12          Ms. Biros has been accused throughout this proceeding

13   of either stealing Mr. Snyder's property or destroying it or

14   doing something with it and since this individual did not have

15   permission from either the Trustee, so far as I was able to

16   ascertain or from Ms. Biros, to be on the site.  And we had the

17   license plate of his car, we did not know at that point who it

18   was but we reported it the following Monday to the North

19   Huntington Township Police.  To my knowledge they took no

20   action other than an investigation.  But, there was a question

21   of what authority did we have to control the site and that was

22   what I used your Opinion, or your transcript or the proceeding

23   memo.

24          THE COURT:  So, you gave a copy of the proceeding

25   memo to the police.

**Appendix Vol. II, Page 388**

1          MR. OTTO:  Thank you.  Yes.

2          THE COURT:  Okay.  And for what purpose was it given?

3          MR. OTTO:  Because the North Huntington police

4   questioned why they should get involved in it.  And because

5   they had been told by other people involved in this case that

6   Ms. Biros didn't own the property, didn't have the right to

7   keep people out and what was in that proceeding memo, in

8   essence, asserted that Ms. Biros did have that authority.

9          THE COURT:  Okay.  So, you used the proceeding memo

10  with an officer of the law to suggest that Ms. Biros had a

11  legal right to something.

12         MR. OTTO:  I would say that's correct, yes, Your

13  Honor.

14         THE COURT:  Okay.  All right.

15         MR. OTTO:  Your Honor, and I say this not as an

16  excuse, but I was not aware of the policy of this Court as to

17  proceeding memos.  I will keep that in mind at all times

18  hereafter.

19         THE COURT:  But, you've been represented by local

20  counsel throughout this entire time.

21         MR. OTTO:  I understand that, Your Honor.

22         THE COURT:  And you, when you practice and appear

23  before a Court, you are expected to be mindful of what the

24  rules of the Court are and what the Court's procedures are, are

25  you not?

Appendix Vol. II, Page 389

1          MR. OTTO:  I understand that, Your Honor.

2          THE COURT:  All right, thank you.

3          MS. BIROS:  Your Honor, may I ask you a question?

4    I'm sorry.

5          THE COURT:  Go ahead.

6          MS. BIROS:  The North Huntington Police Department

7    told us they had no authority in anything overseeing this.

8    They told us personally that they spoke to you.

9          THE COURT:  I did not speak with the police

10   department.

11         MS. BIROS:  They spoke to you --

12         THE COURT:  They called my office --

13         MS. BIROS:  Okay.

14         THE COURT:  -- and the response from my office was,

15   as would be standard in any action, is that the Court's Orders

16   speak for themselves.

17         MS. BIROS:  Okay.

18         THE COURT:  But when we say that, we mean the Court's

19   Orders, not proceeding memos.

20         MS. BIROS:  Okay.

21         THE COURT:  And I'm very clear that proceeding memos

22   have no effect and no relevance, whatsoever, to anything and

23   should not be used in any fashion to suggest that they are

24   something beyond which they are, which is the simple notes of

25   the hearing.

99

1          All right.  I think that concludes everything that's

2    set on the Court's agenda for today.  Is there any other

3    matters that the parties want to raise with the Court at this

4    point?

5          All right.  So, based on the following, I have

6    indicated that I will enter the Stipulation between Shanni

7    Snyder and Trustee Zebley and Trustee Slone, with the caveats

8    noted on the record.  I will grant the Stay Relief Motion filed

9    by Christine Biros as indicated on the record.  I will deny the

10   Motion to Enforce the Order confirming the sale of property

11   that is also subject to consent to Stay Relief for the purposes

12   of having a claim objection to the extent Ms. Biros seeks to do

13   one, against the Shanni Snyder claim and that will also

14   otherwise resolve the pending removed action.

15         I have the Order to Show Cause related to the Rule

16   9011 issues.  That is going to be continued to a future date.

17   I've outlined what I think my initial reactions are to the

18   Motion to give the benefit of the Court's insights but I expect

19   that it's incumbent upon Ms. Biros and Mr. Bernstein to justify

20   the number why $144,000 was reasonable and if it is reasonable

21   to tell me why in the context of this case and the proof of

22   claim and, furthermore, why any possible objections that might

23   exist from other parties would be relevant to that discussion,

24   particularly if the Trustee could consent to a number that

25   would otherwise be considered by the Court.  So, that will be

1 set for a future date.

2          And then with respect to the two Show Cause Orders,

3 I'm sorry, one Show Cause Order but it's issued against George

4 Snyder and Christine Biros, I have my record at this point, so

5 I'll take another look at that and issue an Order based on

6 those considerations.

7          So, with that, I appreciate the parties hanging in

8 there for what has been a prolonged day but I think

9 notwithstanding that we have consolidated a number of issues,

10 made some progress which is more than I can say in other

11 instances with this case, but I'm going to end with what I

12 started, which is, I want folks to think twice about what they

13 file, what they do and how they proceed in this matter because

14 I'm not tolerating any more shenanigans and I'm not tolerating

15 any items that go beyond what is permissible in these actions.

16 That has prolonged this case too long and too far and cost too

17 much in expenses and I think from the Show Cause Orders the

18 Court has set the tone at this point that to the extent

19 necessary, I will address these issues vigorously going

20 forward.  So, with that we will consider the matter to be

21 concluded.  The Court will now stand adjourned and we will

22 close the record.  Thank you for your participation again, have

23 a good weekend.

24          ALL:  Thank you, Your Honor.

25                    * * * * *

**Appendix Vol. II, Page 392**

101

# C E R T I F I C A T I O N

WE, ALYCE H. STINE, TAMMY DeRISI and ELAINE HOWELL,
court approved transcribers, certify that the foregoing is a
correct transcript from the official electronic sound recording
of the proceedings in the above-entitled matter and to the best
of our ability.


/s/ Alyce H. Stine          /s/ Tammy DeRisi

ALYCE H. STINE              TAMMY DeRISI


/s/ Elaine Howell

ELAINE HOWELL

J&J COURT TRANSCRIBERS, INC.    DATE:  January 31, 2023

**Appendix Vol. II, Page 393**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Bankruptcy No. 22-20823 |
| U LOCK INC, | Chapter 7 |
| Debtor. | |
| CHRISTINE BIROS, | Related Doc. No.: |
| Movant, | |
| v. | |
| GEORGE SNYDER, | |
| Respondent. | |

**OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER**

Christine Biros, as creditor and party in interest in the above captioned chapter 7

bankruptcy case ("Biros"), by and through the undersigned counsel, files this *Objection to Claim*

*Number 5 Filed by George Snyder* (the "Objection"), and in support thereof states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant

to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are section 502 of the

Bankruptcy Code and Rules 3002 and 3007 of the Federal Rules of Bankruptcy Procedure

("FRBP").

3.      Biros is a creditor and party-in-interest in this case and thus has standing to object

to the claim pursuant to 11 U.S.C. § 502.

**Appendix Vol. II, Page 394**

**BACKGROUND**

4.      U Lock Inc. ("Debtor" or "U Lock")'s case was commenced by the filing of an

involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on April 27,

2022 (the "Petition Date").

5.      The Debtor did not file a response to the involuntary petition.

6.      On June 17, 2022, the Court entered an Order for Relief.

7.      George Snyder ("Snyder") and his brother Kash Snyder ("Kash") are the principals

of the Debtor.

8.      Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the

Debtor and is so acting.

9.      On August 26, 2022, Snyder filed a proof of claim, claim number 5 on the claims

docket, in the amount of $99,000.00 for "wage, fair labor standards" with no supporting

documentation or other description (the "Wage Claim" or "Claim Number 5").

**CLAIM OBJECTION**

10.     11 U.S.C. § 502 provides that a properly filed proof of claim is deemed allowed

unless a party in interest objects.  Various subsections of section 502 set forth the grounds for

disallowing a claim, including section 502(b)(1), which authorizes disallowance because the claim

is unenforceable under any agreement or applicable law.

11.     Pursuant to 11 U.S.C. § 502(b)(1), in relevant part, if an objection to a claim is

made, the court shall determine the amount of such claim as of the date of the filing of the petition,

and shall allow such claim in such amount, except to the extent that such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law for a reason

other than because such claim is contingent or unmatured.

**Appendix Vol. II, Page 395**

12.     The burden of proof for claims filed pursuant to 11 U.S.C.S. § 502(a) is a shifting one and rests on different parties at different times. Under applicable law, the claimant must initially allege sufficient facts to support its claim and, upon meeting this standard of sufficiency, the claim is prima facie valid. Upon objection to the claim, the burden then shifts to the objecting party to produce evidence sufficient to negate the prima facie valid claim. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden then reverts back to the claimant. The claimant must then prove the validity of the claim by a preponderance of the evidence. *Benninger v. First Colony Life Ins. Co. (In re Benninger),* 357 B.R. 337, 340 (Bankr. W.D. Pa. 2006).

13.     Snyder's Wage Claim is based on alleged wages due from the Debtor assumingly pursuant to the Fair Labor Standards Act, 28 U.S.C. §§201 to 209 (the "Fair Labor Act").  The Claim should be disallowed as not enforceable under applicable law against the Debtor for the reasons set forth herein.

14.     Snyder signed Official Form 202 Declaration Under Penalty of Perjury for Non-Individual Debtors indicating that as Director of the Debtor he has examined the information in the schedules and statement of financial affairs filed and believes it to be true and correct (the "Schedules").  *See*, Declaration, Doc. No. 66.

15.     Schedule D and E/F do not list Snyder as a creditor or having any claim, cause of action or otherwise against the Debtor.

16.     Additionally, Schedule G does not list any employment or other executory contract with Snyder.

17.     Nowhere in the Schedules is there any evidence of a debt owed to Snyder.  If Snyder had any such claim for wages from Debtor at the time he signed the Schedules under penalty of

**Appendix Vol. II, Page 396**

perjury, he should and would have made it known.  The fact that he did not disclose it confirms that he did not believe that he had any right to payment from the Debtor.

18.    Moreover, Snyder is judicially estopped from making any such claim now by failure to disclose it in the Schedules and during the course of this case, including at the two 341 meeting of creditors.

19.    Judicial estoppel is a discretionary doctrine recognized by the Third Circuit that prevents injury to the courts and the justice system by dismissing claims — regardless of their merit — when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts. The doctrine is applied only to avoid a miscarriage of justice and only when the party to be estopped (1) took a position during litigation that is irreconcilably inconsistent with his or her present position, (2) the party changed his or her position in bad faith, and (3) no lesser sanction would adequately remedy the damage done by the litigant's misconduct. The Third Circuit and district courts have invoked the doctrine to dismiss claims where plaintiffs who are in bankruptcy (or were in bankruptcy) failed to disclose to creditors pending or potential causes of action as contingent assets in bankruptcy filings. Judicial estoppel remains a fact-specific, equitable doctrine, applied at the courts' discretion. *Coles v. Carlini*, 2013 U.S. Dist. LEXIS 101873, *1

20.    Snyder, as principal of the Debtor, has testified extensively that the Debtor has no employees.

21.    In fact, both Snyder and Kash, the principals of the Debtor testified that the Debtor had no employees when the bankruptcy was filed and never had any. *See*, September 9, 2022 341 Transcript ("September 341 Transcript"), Page 15:3-13); Page 16:1-2; Page 29:5.  A true and correct copy of the September 341 Transcript is attached hereto and incorporated herein as Exhibit "A'.

22.     *See also*, 341 Transcript January 6, 2023 ("January 341 Transcript"), Page 8-9.  A True and correct copy of the January 341 Transcript is attached hereto and included herein as Exhibit "B".

23.     Additionally, on October 1, 2018, U Lock responded to Biros' initial discovery requests in an action filed in Westmoreland County against U Lock (the "Discovery Responses") when asked to identify all current and former employees of Debtor, that "it does not maintain employees and did not maintain employees in the past.  U Lock operates through officers, volunteers, and contractors."  A true and correct copy of the relevant redacted portion of the Discovery Responses are attached hereto and incorporated herein as Exhibit "B".

24.     Additionally, Snyder testified at the September 341 when asked about why his Wage Claim wasn't listed on the Debtor's Schedules as follows: "The $99,000 was what Christine would owe me. We were -- Christine was in charge.  She was the -- she was the silent partner, and things changed along the way and now this lawsuit came and as, as a result, any work I've done there over the past seven years I didn't get paid. So I never got any officer compensation or anything from her, so that those -- those stem from my wages, not -- not others." Exhibit A, Page 22:24-23:11.

25.     This testimony reflects that Snyder did not believe the Debtor owed him any money for employment but rather believed he was owed money (or property) from Biros relating to their ongoing dispute over the real property from which the Debtor operated.  Biros was not an officer or director of the Debtor and had no control over compensation or wages- officer or employee.

26.     Snyder later testified during continued questioning on his Wage Claim at the September 341 that "well either her or U Lock owes me, you know, at least minimum wage, but she controlled the company." Exhibit A, Page 24:9-11.

**Appendix Vol. II, Page 398**

27.     Snyder's testimony to defend his Wage Claim is that he, Kash Snyder and Shanni Snyder all worked for the Debtor but did not receive any pay.  Yet, Kash Snyder has not filed a claim nor was any claim listed for Kash Snyder on the Schedules.  In fact, there are no employee claims listed on the Schedules (excluding Shanni Snyder's claim based on her fraudulent Default Judgment arising from alleged unpaid wages).

28.     Likewise, Snyder signed the attached Declaration to the Trustee under penalty of perjury (the "Declaration") regarding employees and the nonissuance of any W2s or 1099s that there were no salaried employees and no 1099s were filed because any persons who did work did not receive cash compensation in excess of $550.00.  A true and correct copy of the Declaration is attached hereto and incorporated herein as Exhibit "C".

29.     In the Declaration, Snyder testifies as follows: "Our executive employees such as John Biros, Kash Snyder and myself, we did not take money for salary, all hoping to advance the company until Robert Biros interfered and made Christine Biros file suit.  I understand we were due minimum wage for our work because even executives are entitled to that, but we did not pay it because the company had very little revenue." *See*, Exhibit C, ¶7.

30.     However, Snyder is not entitled to minimum wage under the Fair Labor Act, even if Snyder could make a claim to be an employee as it is inapplicable here.

31.     First, as set forth above, Snyder is not an employee of the Debtor as the Debtor had no employees and thus the Fair Labor Act would not apply.

32.     Second, even assuming arguendo, Snyder was somehow able to establish he was an "employee," the Fair Labor Act provides in relevant part in Section 203(2) that any establishment that has as its **only regular employees the owner thereof** or the parent, spouse, child or other members of the immediate family of such owner **shall not be considered to be an**

**enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise**.

33.  To receive minimum wage under the Fair Labor Act, Section 206 requires minimum wage for every employer to pay to his employees who in any workweek is engaged in commerce or in the production of goods for commerce. 29 U.S.C. Section 206.

34.  Accordingly, pursuant to the Fair Labor Act, Snyder would not be eligible to receive minimum wage under the Fair Labor Standards Act as he is the owner of the Debtor and thus the Debtor would not be considered to be an enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise.

35.  Snyder might try to claim that he was a contractor or contract worker for U Lock during the multiple years covered by his Wage Claim.

36.  There is no assertion or evidence in any of the numerous pleadings and other filings under oath by Snyder or U Lock that would support any claim that there was a contract relationship between Snyder and U Lock for the providing of the services that Snyder claims to have provided.

37.  There is no contract under applicable non-bankruptcy law.  There is no bankruptcy law basis for a prepetition claim by Snyder as asserted in Claim Number 5.

38.  Even if Snyder could maintain a claim against U Lock under the Fair Labor Act, the Claim is deficient on its face as there is no applicable time period or calculation provided to provide support for the Wage Claim.  Accordingly, it is likely that the Wage Claim could not cover the time period requested, as the statute of limitations under the Fair Labor Act is two years and arguably this Wage Claim seeks more than seven (7) years of alleged wages in Claim Number 5. 28 U.S.C.S. §255(a).

39.  "Under the Fair Labor Standards Act (FLSA), the applicable statute of limitations

is three years for a willful violation, two years otherwise. 29 U.S.C.S. 255(a). *Copley v. Evolution Well Servs. Operating, LLC,* No. 2:20-CV-1442-CCW, 2022 U.S. Dist. LEXIS 17266, at *1 (W.D. Pa. Jan. 31, 2022)

40.    When an employer's actions are willful, the statute of limitations is extended to three years: "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. " 29 U.S.C. § 255(a). K*elly v. Eckerd Corp*., No. 03-4087, 2004 U.S. Dist. LEXIS 4381, at *4-5 (E.D. Pa. Mar. 10, 2004)

41.    Even if Snyder were to allege the doctrine of equitable tolling, for the doctrine of equitable tolling to apply to the Fair Labor Act, a defendant's misleading conduct must induce a plaintiff to delay filing notice of her intent to sue.  The doctrine is not applied, however, every time a defendant makes an incorrect or even misleading statement to the Plaintiff.   Likewise, the Plaintiff has the burden of proving facts necessary to invoke the equitable tolling doctrine. *See, Kelly v. Eckerd Corp*. 2004 U.S. Dist. LEXIS 4381, at *4-5.

42.    Additionally, as referenced in the Declaration, the Debtor had no money to pay any officer or owner claims.  Snyder is a shareholder, director and officer of the Debtor and under Pennsylvania law, corporate directors owe fiduciary duties to the corporation and its shareholders. When the corporation is insolvent, the directors also owe fiduciary duties to the corporation's creditors. *Bruno v. Beacon Sales Acquisition, Inc. (In re Bruno),* 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016).

43.    Snyder's Wage Claim then would be a breach of his fiduciary duties to the Debtor as he incurred his personal employment claim during a time that the Debtor was insolvent.  Snyder, as a director and officer of the Debtor, would have known that the Debtor was insolvent yet allowed

the Debtor to continue to operate and incur his alleged wages, as well as a default judgment against

the company (of which he was aware and did not defend) by his sister, Shanni Snyder.

44.     Moreover, Claim Number 5 should be disallowed by this Honorable Court pursuant

to 11 U.S.C. § 105.

45.     The United States Supreme Court has recognized that by filing a claim against the

bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims,"

thereby subjecting the creditor to the bankruptcy court's equitable power. *See*, *Langenkamp v.*

*Culp,* 498 US 41, 44-45 (1990).

46.     The bankruptcy court has the power to look behind and reduce claims based on

judgments issued by other courts, both state and federal. *In Margolis v. Nazareth Fair Grounds*,

249 F.2d 221 (2nd Cir. 1957), the Second Circuit held that a bankruptcy court may inquire into the

validity of any claim asserted against the bankrupt and may disallow it if it is found to be without

lawful existence and the mere fact that a claim has been reduced to a judgment does not prevent

such an inquiry. As the merger of a claim into a judgment does not change its nature so far as

provability is concerned so the court may look behind the judgment to determine the essential

nature of the liability for purposes of proof and allowance. *Margolis v. Nazareth Fair Grounds,*

294 F.2d at *223-224 (internal citations omitted).

47.     A claim should be rejected and disallowed when it has no basis in fact or law, is

non-existent or illegal." *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 630 (Bankr. N.D. Fla. 1990)

(citation omitted).

48.     In *Benninger v. First Colony Life Ins. Co. (In re Benninger)*, 357 B.R. 337, 350-

51 (Bankr. W.D. Pa. 2006), Judge Deller applied Supreme Court precedent to disallow claims in

that case as the judgments confessed against the Debtor were unlawful, referencing *Pepper v.*

*Litton*, 308 U.S. 295, 301-303, 60 S. Ct. 238, 84 L. Ed. 281 (1939), where the United States Supreme Court allowed a debtor to challenge a state court judgment in bankruptcy court on the ground that a confessed judgment obtained by fraud was void *ab initio* for procedural reasons.

49.    In *Benninger*, the objection to proofs of claim filed by the creditor were sustained and the claims disallowed for grounds including but not limited to the unclean hands of the creditor.  Judge Deller acknowledged, "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Benninger* at 350.

50.    Additionally, the Court held that it also found "equally troubling" the fact that the underlying basis of the creditor's claims were "dubious at best."  Thus, Judge Deller ruled that even if the claims had some basis, he would nonetheless disallow them under the clean hands doctrine and for public policy reasons. *Benninger* at 360.

51.    It is clear from the face of Claim Number 5, the complete lack of support for the Wage Claim, including even a simple calculation of wages incurred, and the sworn testimony of the officers of the Debtor that they had no employees, the failure to schedule the Wage Claim or otherwise disclose it, despite being the Officer who prepared and signed the Schedules under penalty of perjury, the Wage Claim should also be denied for public policy reasons.

52.    Finally, 11 U.S.C. §502(d) provides in relevant part that a court shall disallow any claim of any entity that is a transferee of a transfer avoidable under 11 U.S.C. §§547 or 548 unless such entity or transferee has paid the amount or turned over any such property.

53.    At the September and January 341 hearings, Snyder testified that he received the proceeds from the sale of a 2021 Kubota. See Exhibit A Page 12:18-13:3; Exhibit B, Page 37:1-

**Appendix Vol. II, Page 403**

13; Page 67:18.69:17.  Snyder testified that the Kubota was sold in November 2021 and he paid himself back for an outstanding loan from the sale.

54.      Biros believes and therefore avers, the Trustee will be filing a Complaint to Avoid and Recover the proceeds Snyder received from the Kubota pursuant to 11 U.S.C. § 547 and accordingly, the claim should also be disallowed pursuant to 11 U.S.C. § 502(d).

WHEREFORE, Christine Biros respectfully requests that this Honorable Court enter an order substantially in the form attached hereto granting this Objection and disallowing the Snyder Claim.

Dated: February 24, 2023                    BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
    Robert S. Bernstein (PA ID No. 34308)
    Lara S. Martin (PA ID No. 307272)
    601 Grant Street, Floor 9
    Pittsburgh, PA 15219
    Telephone: (412) 456-8100
    Facsimile: (412) 456-8135
    rbernstein@bernsteinlaw.com
    lmartin@bernsteinlaw.com

    *Counsel for Christine Biros*

**Appendix Vol. II, Page 404**

Transcript of the Testimony of

# 341 (a) MEETING OF CREDITORS

September 9, 2022

## IN RE: U LOCK, INC.



**412-261-2323**
**depo@akf.com**
**www.akf.com**

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Bankruptcy No. 22-20823-GLT

Chapter 7

In re:                          )
                                )
U LOCK INC.,                    )
                                )
          Debtor.               )
_____/

TRANSCRIPT OF RECORDED PROCEEDINGS:

341(a) MEETING OF CREDITORS

September 9, 2022

2

1                         PRESENT:

2

3

    Robert H. Slone, Esquire, United States Trustee
4
    George Snyder
5
    Sarah Wenrich, Esquire
6
    William Otto, Esquire
7
    Christine Biros
8
    Ms. Shanni Snyder
9
    J. Allen Roth, Esquire
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                    INDEX

2

3

4

5   WITNESS:  GEORGE SNYDER

6   EXAMINATION BY MR. SLONE - PAGE 5

7   EXAMINATION BY MS. WENRICH - PAGE 22

8   EXAMINATION BY MR. OTTO - PAGE 29

9   EXAMINATION BY MS. SHANNI SNYDER - PAGE 95

10

11

12  EXHIBITS INTRODUCED:  (NONE)

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1           MR. SLONE:  Call the Section

2       341(a) Meeting in the case of U Lock Inc.,

3       Case 22-20823-GLT.  This is the time and

4       place for the meeting.  I'm Robert Slone,

5       the interim Trustee.  Allen Roth is present

6       as attorney for U Lock.

7          Mr. Roth, who's present to testify for

8       U Lock today?

9           MR. ROTH:  I have George, excuse

10      me, George Snyder here.

11          MR. SLONE:  Okay.  And what

12      officer is Mr. Snyder?

13          MR. ROTH:  Vice president.

14          MR. SLONE:  Vice president?

15      Okay.

16          MR. ROTH:  Yes.

17          MR. SLONE:  Okay.  Before, let me

18      swear him in.  Mr. Snyder, please raise your

19      right hand.  And do you swear that the

20      testimony you're about to give in this

21      matter to be the truth?

22          MR. GEORGE SNYDER:  Yes, I do.

23          MR. SLONE:  Okay.  Now, we have

24      some creditors present.  I'm going to ask

25      you to state your name for the record.

5

1       Start with Sarah Wenrich.

2                   MS. WENRICH:  Hi, Mr. Slone.

3       Sarah Wenrich here on behalf of Christine

4       Biros, and William Otto is here as well on

5       behalf of Ms. Biros.

6                   MR. SLONE:  Okay.

7                   MS. WENRICH:  My apologies, Ms.

8       Biros is also on the line.

9                   MR. SLONE:  Okay, great.  And

10      Shanni Snyder, are you still present?

11                  MS. SHANNI SNYDER:  Yes, I am.

12                  MR. SLONE:  Okay, and you're here

13      for yourself; right?

14                  MS. SHANNI SNYDER:  Yes.

15                  MR. SLONE:  Okay.

16  EXAMINATION OF GEORGE SNYDER:

17  BY MR. SLONE

18      Q.  Okay, Mr. -- Mr. Snyder, you're

19      testifying as vice president of U Lock.  Did

20      you sign -- well, I'll get to that.  Did you

21      receive a copy of the informational sheet

22      prepared by the Office of the U.S. Trustee?

23      A.  Yes.

24      Q.  And did you read that sheet?

25      A.  Yes.

6

```
 1          Q.  Are you personally familiar with the

 2      information contained in the petitions,

 3      schedules, statements, and related

 4      documents, and do they accurately reflect

 5      all assets and all liabilities of the

 6      company?

 7          A.  Yes.

 8          Q.  And did you sign the petition and

 9      related documents?

10          A.  Yes.

11          Q.  Are there any errors or omissions

12      you wish to bring to my attention at this

13      time?

14          A.  No.

15          Q.  Okay.  Other than in the ordinary

16      course of business, did the company sell,

17      transfer, or give away any assets within the

18      four years prior to filing this case?

19          A.  Nothing outside the ordinary

20      operation of the business.

21          Q.  Yes, no, or will you send me a

22      statement?

23          A.  Oh, I'm sorry.  I said no, nothing

24      outside --

25          Q.  Oh, okay, I'm sorry.
```

7

1          A.  -- business.

2          Q.  Does the company expect to receive

3     anything of value in the next six months?

4          A.  Let me -- let me back up for a

5     minute.  I had mentioned to you, we talked

6     about that Kubota tractor I brought in the

7     -- I brought in the serial number for you.

8     That was sold last year.

9          Q.  Okay.

10         A.  And then the Christine Biros

11    property.

12         Q.  Does the company expect to receive

13    anything of value in the next six months?

14         A.  Just whatever other rents would be

15    collected.

16         Q.  Do you have a claim or cause of

17    action against anyone for any reason or does

18    anyone owe you money?

19         A.  Yeah, everything what's in the

20    schedule there.

21         Q.  Okay.  It says see --

22         A.  And it --

23         Q.  See schedules.  Does the company own

24    any real estate or real estate that has not

25    been listed?

8

1          A.  Yes.

2          Q.  You're saying yes.  Is that the

3      property, the 21 acres?

4          A.  Yes.

5          Q.  And that's subject to the Biros

6      claim; right?

7          A.  Correct.

8          Q.  What was -- this was an involuntary;

9      right?

10         A.  Correct.

11         Q.  But you didn't contest it?

12         A.  That's correct.

13         Q.  So what's the reason for filing this

14     case?

15         A.  The reason that the other person

16     filed the -- filed the lawsuit, you mean, or

17     filed the involuntary bankruptcy?

18         Q.  Yeah, but why didn't you contest it?

19         A.  (Inaudible).

20         Q.  I mean, there's a reason that you're

21     in bankruptcy, or you would have contested

22     it?

23         A.  Well, I was served -- I was served

24     an involuntary bankruptcy and I kind of

25     actually thought (Inaudible).

341 (a) MEETING OF CREDITORS  -  9/9/2022

9

1           MR. SLONE:  Whoever that is,

2      please mute yourself.

3           MS. SHANNI SNYDER:  (Inaudible)

4      playing.

5      A.  We really had, you know, no assets

6      --

7      Q.  Hang on, Mr. Snyder.

8      A.  We have -- okay.

9           MR. SLONE:  Somebody's phone is

10     ringing or something.  Check your phones,

11     everybody.  Thank you.

12     Q.  Okay, Mr. Snyder you can continue.

13     A.  Okay, I said we didn't really have

14     any assets. We owed money, and we didn't

15     really have any defenses for the claims.  So

16     the bankruptcy may have other defenses.

17     Q.  When was U Lock incorporated?

18     Approximately when was it incorporated?

19      Hello?  Anybody there?

20           MS. WENRICH:  I'm here.  I'm

21     still here.

22           MR. OTTO:  I'm here.

23     Q.  Okay.

24           MR. OTTO:  I'm here.

25     Q.  When was the company incorporated?

10

1     Mr. Roth, do you know?

2     George Snyder and Allen Roth, are you guys

3     on the line? Hello?

4           MR. SLONE: Okay, everybody else

5     is on the line; right? Mr. --

6           MS. WENRICH: Yes.

7           MR. SLONE: Sarah and Bill?

8           MR. OTTO: Yes.

9           MS. SHANNI SNYDER: This is

10    Shanni. I'm still on the line.

11          MR. OTTO: This is Bill Otto.

12    I'm still on the line.

13          MR. SLONE: Okay. What happened

14    to Snyder and Roth?

15          MS. SHANNI SNYDER: Seems like it

16    was disconnected.

17          MR. SLONE: Were they at the same

18    place? Oh, Jesus.

19          MS. SHANNI SNYDER: Oh, me? I

20    have no idea.

21          MR. SLONE: Okay. I don't know

22    what to say.

23          MS. SHANNI SNYDER: I think that

24    was just, the music that was playing was

25    from the office.

341 (a) MEETING OF CREDITORS  -  9/9/2022

11

1              MR. SLONE:  Could somebody call

2      Roth?  Maybe I can call him on my cell

3      phone. Okay, we'll call. (Phone dialing.)

4              MR. SLONE:  Hi, Bob Slone

5      calling. We are in a meeting of creditors

6      for U Lock and Allen Roth and George Snyder

7      disappeared.  Are they there?

8              MR. ROTH:  Hi, this is Allen.

9              MR. SLONE:  Allen, you guys

10     disappeared from the --

11             MR. ROTH:  Yeah, I was trying to

12     call back in 'cause I have no idea what

13     happened.  (Inaudible) went blank.

14             MR. SLONE:  Okay, call back in.

15     If not, we'll put you on the -- on, on the

16     cell phone.  But call back in right now.

17             MR. ROTH:  Okay.

18             MR. SLONE:  Thank you.

19             MR. ROTH:  We'll do it right now.

20             MR. SLONE:  Okay, they're calling

21     back in.

22         Okay, Allen Roth?  Hello? (Phone

23     dialing.)

24             UNIDENTIFIED SPEAKER ON PHONE:

25     Allen Roth's office.

**Appendix Vol. II, Page 416**

12

1          MR. SLONE:  Yes, Allen said he's

2      trying to call back in.  We --

3               UNIDENTIFIED SPEAKER ON PHONE:

4      Okay, hold on a second.

5               MR. SLONE:  If not, we'll just

6      put -- we'll just do it on the cell phone.

7               MR. ROTH:  All right, this is

8      Allen. We're back.

9               MR. SLONE:  Okay, great.  So you

10     have your backup music on, Allen.  Okay,

11     I'll turn -- that's on the other line.  I'll

12     turn that off.  Okay, we're back.

13  CONTINUATION OF EXAMINATION OF GEORGE SNYDER:

14  BY MR. SLONE

15          Q.  Okay, Mr. Snyder, the last question,

16     when was this company incorporated?

17          A.  In 2015.

18          Q.  Who are the officers?

19          A.  It was -- okay, I was going to

20     elaborate on the -- on the corporation part

21     'cause that was kind of what brought us

22     here.  Or is that enough for you?

23          Q.  That's enough for right now.  Just

24     who are the officers now, or at the time of

25     the filing?

341 (a) MEETING OF CREDITORS  -  9/9/2022

13

1          A.   My brother, Kash Snyder.

2          Q.   Kash, what was he?

3          A.   President.

4          Q.   And you're vice president, George

5     Snyder?

6          A.   Yes.

7          Q.   Any other officers?

8          A.   No.

9          Q.   Who are the shareholders?

10         A.   There's a company called Accredited

11    Business Consolidators Corp and --

12         Q.   Could you speak up, please?

13         A.   Yes.  There's a company called

14    Accredited Business Consolidators Corp, and

15    there's over a thousand shareholders, so we

16    issued, issued shares.  But I'm the majority

17    shareholder.

18         Q.   How much do you own, what

19    percentage?

20         A.   I think it's 51 percent.

21         Q.   I didn't see that Accredited

22    creditors listed in your schedules.  Is --

23         A.   You know what, when we -- I'm going

24    back to with Biros, I was 51 percent.  With

25    currently I'm 90 percent.

341 (a) MEETING OF CREDITORS  -  9/9/2022

14

1          Q.   You're 90 percent?

2          A.   We can send you a shareholder list.

3          Q.   Yeah, you should do that.  Do they

4     know that this company is in bankruptcy?

5          A.   We provided Otto with a list.

6          Q.   Well, he's -- so what?  Who's John

7     Biros?

8          A.   They -- and they probably don't know

9     the bankruptcy.

10          Q.   It says he owns 25 percent of this

11     company.

12          A.   Who is that?

13          Q.   John, on your statement, Question

14     No. 28, list all the debtors, officers,

15     directors, managing members, general

16     partners, members in control, controlling

17     shareholders, or other people in control of

18     the debtor.  You have one person listed,

19     John Biros, 25 percent.  It says a silent

20     partner from inception.  Your name's not

21     listed.  Kash isn't listed.  No other names

22     are listed here.  So why don't you file an

23     amended schedules so we know --

24          A.   Okay.

25          Q.   -- where we're coming from.

15

1         A.  Silent partner.  Okay, we'll file an

2     amended.

3         Q.  How many employees did the company

4     have when the bankruptcy was filed?

5         A.  None.

6         Q.  None.  When's the last time the

7     company had employees?

8         A.  Up till recently, we had -- there

9     was always someone helping there.  There was

10    always about a half a dozen people helping

11    at different times, you know, throughout the

12    years.  But just the -- just limited, you

13    know, just a few hours a year.

14        Q.  Can you get me the records of that?

15    Were the withholding taxes paid for the

16    taxes for those employees?  Were they issued

17    W-2's?

18        A.  Okay, I'll get you the records for

19    the people that worked.

20        Q.  Give me copies of the W-2's for the

21    last four years.

22        A.  Okay.  But there wouldn't be any

23    records 'cause they were -- they were

24    contractors, not -- not -- you know, we

25    didn't have W-2's.

341 (a) MEETING OF CREDITORS  -  9/9/2022

16

1        Q.  So they weren't employees?

2        A.  No.

3        Q.  Well, get me records of what, what

4    they were paid.

5        A.  Okay.  Past four years?

6        Q.  Yes.

7        A.  Will do.

8        Q.  Okay, your bankruptcy schedules said

9    your gross revenues for 2021 were about

10   $13,000; for 2020 was about $12,000.  Do you

11   --

12       A.  Yes.

13       Q.  Thirteen two for '21.  Do you know

14   what it would have been for 2019?

15       A.  Not right offhand.  My brother would

16   probably know that.

17       Q.  Well, was it in that same range?

18       A.  Probably pretty much about the same.

19   (Inaudible) kind of estimate, so I would

20   guess that 2019 would be about the same.

21       Q.  Okay.  How about years prior to

22   that, has it always been about that much?

23       A.  Yeah.  Yeah, it's always been

24   (Inaudible).

25       Q.  Okay.  Does the company have an

17

1      accountant?

2           A.   No.

3           Q.   When -- did the company file tax

4      returns 2020 or 2021?

5           A.   No, we did not.

6           Q.   Did the company ever file tax

7      returns?

8           A.   No.

9           Q.   Why?

10          A.   That was, in 2015 when we got it,

11     Christine Biros and John Biros were silent

12     partners, and everything was pretty much at

13     their direction this whole time.  And they,

14     you know, they ordered us not to file the

15     tax returns because they were indicted by

16     the Attorney General. They wanted to wait

17     until that was over, so we were just in kind

18     of a holding pattern since the inception.

19     And then at some point this lawsuit came

20     about.

21          Q.   Since the bank -- yeah, since the

22     bankruptcy was filed, have there been any

23     effort to prepare tax returns?

24          A.   Yes, I think we were looking for an

25     accountant and we're just gathering our bank

18

1        statements and receipts, everything we're

2        going to need for, to file tax returns,

3        'cause we anticipate the Judge had mentioned

4        he was concerned and wanted tax returns, so

5        we're preparing for that.

6            Q.  Has there been any payment to any

7        officers or shareholders in the last two

8        years?

9            A.  The -- no.

10           Q.  No?  If I go back to years three and

11       four, has there been any payments to

12       officers or shareholders?

13           A.  No for three and four.  But let me

14       back up. The last question you asked, was

15       that, you asked for the -- what year were

16       you asking as far as the payments to --

17           Q.  Last two years.  Well, let's say

18       '22, '21, or '20.

19           A.  Yes, in 2021 the -- there was that

20       tractor we had mentioned, the Kubota that

21       was sold.  There was money there and that

22       was -- that was used to reimburse me for

23       loans I provided to U Lock over the past

24       six, seven years.

25           Q.  And how much was that?

341 (a) MEETING OF CREDITORS  -  9/9/2022

19

1          A.  The sale of the tractor was $45,000.

2          Q.  And you got the $45,000?

3          A.  Most of it.

4          Q.  And that was --

5          A.  From two thousand --

6          Q.  -- to reimburse you?

7          A.  Yes.

8          Q.  For loans?

9          A.  Yes.

10          Q.  Can you get me the information

11    regarding this sale and when you got that

12    money for the Kubota?

13          A.  Okay.  Allen, could you -- piece of

14    paper?

15          Q.  Anything else?

16          A.  No, I think that's it.  Well, yeah,

17    as far as what I paid back to my sister

18    also, Tammy, I had to pay her back

19    approximately $7,000 for, she had loaned the

20    company money for property taxes one year.

21          Q.  When was that done?

22          A.  (Inaudible) we anticipate getting

23    our taxes done here in the next 90 days.

24          Q.  When was Tammy paid?  Is that Tammy

25    Snyder?

20

1            A.   Yes.  Or Tammy, Tammy McCarl, M-C-

2       C-A-R-L.

3            Q.   So she was paid $7,000 to reimburse

4       her for taxes?

5            A.   Yes.

6            Q.   And when, when was that done?

7            A.   Right after the sale of the Kubota.

8            Q.   Okay.

9            A.   That would have been probably

10      December of 2021 or November maybe of 2021.

11           Q.   Okay, get me the information on

12      both, on that sale and how the money was

13      disbursed at that time then.

14           A.   Okay, great.  Yeah, I'll get that to

15      you.

16           Q.   Your attorney, Mr. Roth, was there

17      any money paid to him for this bankruptcy

18      yet at this time?

19           A.   Not yet.

20           Q.   Okay, there was a lawsuit in Federal

21      Court that Shanni Snyder filed against the

22      company last year, I believe, and a default

23      judgment was taken.  Why didn't the company

24      defend that case?

25           A.   Well, like I said before, we didn't

21

1        -- we didn't really have any defenses for

2        it.  She had -- she had did the work.  At

3        the time we didn't really consider her an

4        employee.  She was just, you know, she was

5        doing the work and we had the agreement was,

6        you know, once we got everything together,

7        she would get something. And, you know, we

8        kind of thought she'd go away.  We didn't

9        think she was going to follow through with

10       it.

11            Q.  Well, if you didn't consider her an

12       employee, why didn't you defend this?

13            A.  Pardon me?

14            Q.  You said you didn't -- you didn't

15       consider her --

16            A.  (Inaudible).

17            Q.  -- as an employee.  Was there any

18       agreement made with her?

19            A.  Just that she would get something

20       when, when we got our, you know, got

21       everything off the ground.  We didn't have

22       money to defend it.  We would have needed

23       $10,000 for an attorney at that point,

24       because it's a corporation.

25            Q.  So you were aware of the lawsuit

22

1        then; right?

2              A.  Yes, I was served.

3                   MR. SLONE:  Okay, I'm going to

4        open up questions to other creditors.  We'll

5        start with Sarah Wenrich.  If you have any

6        questions, this would be a time.  We're

7        going to limit, if we're going to drag this

8        on, we'll -- we'll take a pause and I'll get

9        my other cases and then we'll come back to

10       this.  But I'll give you a few minutes now.

11       Sarah, do you have any questions?

12                  MS. WENRICH:  Okay.  Yes, I do.

13       Thanks, Mr. Slone.

14  EXAMINATION OF GEORGE SNYDER:

15  BY MS. WENRICH

16             Q.  Mr. Snyder, first off, with regard

17       to your statement earlier that you, that U

18       Lock had no employees and just had

19       contractors, and I just want to make sure I

20       heard you right.  You say it was just about

21       a half a dozen people helping throughout the

22       year a couple hours a year; is that right?

23             A.  Yes.

24             Q.  Okay, so where does your $99,000

25       claim against the company come from then,

23

1    and why wasn't it listed in the schedules?

2         A.   The $99,000 was what Christine would

3    owe me. We were -- Christine was in charge.

4    She was the -- she was the silent partner,

5    and things changed along the way and now

6    this lawsuit came and as, as a result, any

7    work I've done there over the past seven

8    years I didn't get paid. So I never got any

9    officer compensation or anything from her,

10   so that those -- those stem from my wages,

11   not -- not others.

12        Q.   And we don't -- we don't agree that

13   she was a silent partner, but even if she

14   was, a silent partner wouldn't have any

15   control over the company; isn't that how a

16   silent partner works? So I'm not sure, can

17   you explain --

18        A.   Well, now she's claiming --

19        Q.   -- how a silent partner would have

20   control?

21        A.   Well, now she's not claiming to be a

22   silent partner; she's claiming to be the

23   owner, that over the past seven years that

24   she was the owner, that that -- that doesn't

25   leave me any compensation for officer salary

24

1        or wages, not even minimum wage for the past

2        seven years.

3                  MR. SLONE:  Well, is she --

4           Q.  I want to clarify, she's not the

5        owner of the company.  She's the owner of

6        the property.  So those are two different,

7        two different issues, no ownership in the

8        company; right?  I mean --

9           A.  Well, either her or U Lock owes me,

10       you know, at least minimum wage, but she

11       controlled the company.

12          Q.  But, Mr. Snyder, you just said that

13       you are not -- there are not employees.

14       And, you know, does it appear on your

15       personal tax returns, the compensation that

16       you're owed or that --

17          A.  Are you saying I'm not an employee?

18          Q.  You said that U Lock has no

19       employees, so I'm not sure how you would be

20       owed that money.  I'm just, I'm trying to

21       close the loop there, and it's not --

22          A.  Well, I could --

23          Q.  Maybe I'm missing something, but

24       it's not making sense.

25          A.  Okay, well, we can file a brief and

25

1        describe the work that I've done and --

2                MR. SLONE:  Why wasn't it listed

3        in your schedules?  I think if I was owed

4        $99,000, I'd mention it somewhere.

5        A.  I could -- I could amend the

6        schedules, but like I said, things changed

7        from us being partners and them controlling

8        the property. Now they're saying they own

9        the property; it's constructive trust and

10       it's under their direction.  I did all this

11       work for the past seven years.  So they're

12       kind of like, you know, for everything I

13       did, I cleaned out lockers; I met with

14       customers.  I, you know, I developed the

15       land.  I cleaned the weeds, cut the grass,

16       plowed the snow, did building maintenance,

17       fixed the electrical service.

18       All this stuff was done, and it's just,

19       there was no compensation whatsoever.  And

20       they just switched the game (Inaudible),

21       switched it up in the middle here and went

22       from being partners to owners, and then that

23       puts me, you know, with, you know, no

24       compensation for (Inaudible).

25       Q.  Mr. Snyder, I'm not -- I'm not

26

1    disagreeing that you're a partner or an

2    owner of U Lock, but again, I think that is

3    a different question. And again, you are

4    testifying today on behalf of U Lock, who

5    you say has no employees, and yet you file a

6    claim as an alleged employee, and they just,

7    they don't --

8         A.  Well, then maybe --

9         Q.  -- match up.

10        A.  Maybe I'm, okay, maybe I'm using the

11   wrong terminology.  Maybe, like I said

12   before, officer compensation.  When I meant

13   no employees, I meant other, there were no

14   employees on the books.  We didn't have a

15   regular staff.  Nobody was paid in that way.

16        Q.  So you said you had contractors, not

17   employees, so do you have 1099's then, if

18   you didn't have W-2's?

19        A.  No, we don't have, no W-2's.

20        Q.  Do you have -- do you have 1099's?

21        A.  Yeah.  There are -- or there's not

22   any 1099's because they -- they weren't

23   enough to -- I think they all made less than

24   five or six hundred dollars like per year.

25   So like I said, they were just help.  They

27

1          came in sometimes when they were needed if

2          there was -- there was no -- nobody was on a

3          40-hour work week.  But just me, like I said

4          --

5              Q.  Okay, so --

6              A.  -- I was entitled to at least

7          minimum wage for the time I worked there or

8          officer compensation.

9              Q.  So you, okay, so Ms. Snyder then,

10         Shanni Snyder, your sister, if everyone made

11         less than five or six hundred dollars a

12         year, if she worked for four years, that

13         would be around $2,000; right?

14             A.  I wasn't talking about her 'cause we

15         never -- she didn't make anything.  We

16         didn't pay her anything.  And like I said,

17         we didn't really even consider her an

18         employee.  She was my sister; she was

19         helping out, and the arrangement was, once

20         we got things together, she would make some

21         money.  So she kept track of her

22         (Inaudible).

23             Q.  So is it your opinion that the

24         default judgment that was obtained in

25         District Court was not truthful and

28

1          fraudulent for $260,000?

2               A.  Well, that's not what I said at all.

3               Q.  No, no, I'm -- I understand that

4          you're saying you didn't consider her an

5          employee, so I'm trying to get what the

6          company's position on, because you had said

7          you didn't fight it because you didn't have

8          the legal, the money to pay the legal fees;

9          but what is your position on that then if

10         you don't consider her a real employee?  And

11         it sounds like people just helped out; their

12         compensation would have been a couple

13         hundred dollars a year.  Why is that

14         different there?

15              A.  I don't really have a position on

16         that.

17              Q.  Okay.  I guess I'll move on to the

18         Kubota tractor.  So who did it sell to?  Who

19         did you last sell the Kubota tractor to?

20              A.  Give me back the things I -- it was

21         a private individual.  I have, give me one

22         second, I have some papers in front of me.

23         Let me see if I can find his name.

24              Q.  Okay.

25              A.  Do you have that?  You know, I

29

1        apologize.  I can get that to you, though.

2        I can give to you the (Inaudible).  Actually

3        he did have a company.  I can't remember the

4        name of his company or his name.  But I --

5        but I have all that information that I can

6        get to you.

7            Q.  Okay.  Yeah, that would be helpful I

8        think and, you know, copy the Trustee on it

9        as well.  And would, so 45,000 --

10           A.  (Inaudible).

11           Q.  -- was what the tractor was sold

12       for.  How much did the company originally

13       purchase it for and when?

14           A.  I don't know the exact amount, but I

15       think it was around $65,000.  That was

16       purchased in 2016.  And Mr. Slone wants me

17       to get everything around that sale to him,

18       so I'll get all that information, the

19       purchase date, the sale date, the person's

20       name.  I'll get all that to him.

21               MS. WENRICH:  Okay, all right.

22       Mr. Otto, do you have any, any questions?

23               MR. OTTO:  Yes, I do.

24   EXAMINATION OF GEORGE SNYDER:

25   BY MR. OTTO

30

1          Q.  Mr. Snyder, who, who are the

2      secretary and treasurer of U Lock?  You're

3      required under Pennsylvania law to have.

4      Can you tell me who they are?

5          A.  Who the secretary and treasurer are?

6          Q.  That's correct.

7          A.  We just have two officers, me and

8      Kash.  I guess the treasurer and the

9      secretary had to be (Inaudible) vice

10     president and treasurer.  So just between

11     us, we fulfill all the roles of office.

12         Q.  Just one moment.

13          That one.  It's right up there.

14          Sorry for the interruption.

15         A.  Okay.

16         Q.  Mr. Snyder, do you have any proof

17     that either John or Christine Biros had

18     anything to do with U Lock or the control of

19     U Lock?  Do you have any written evidence?

20         A.  As far as like a -- as far as a

21     partnership agreement, you mean, or

22     something like that?

23         Q.  Anything.  You never issued shares,

24     so, or share certificates?

25         A.  Yeah, there -- we had weekly

31

```
1     meetings.  Every single Wednesday we went
2     to, they owned a bar named Caesar's, and me
3     and my brother went down there every single
4     Wednesday to meet Christine for our
5     meetings.  And then also, John we met almost
6     every single day.  And so I'm sure there's
7     some type of evidence, but there's -- we
8     don't have a written agreement as far as the
9     -- them directing the company.
10         Q.  Well, if you -- if you met at a bar,
11    is there -- is there any -- I mean, did you
12    ever keep written minutes?
13         A.  We have some documentation and we
14    also have, you know, some photographs at
15    times we met.  So there is some types of
16    evidence if we had to provide some type of
17    evidence.  I do think they claimed in the
18    beginning of the lawsuit that they didn't
19    even know who we were.  In fact, they had
20    served the lawsuit by advertising in the Law
21    Journal, so I think John and -- John and
22    Christine both denied our existence in the
23    beginning.
24    So we do have some proof that we were --
25    they knew very well who we were, and they
```

32

1          were trying to be silent partners or secret

2          partners, I guess, they always told me

3          because of the -- because of their

4          indictment for whatever that was

5          (Inaudible).  We could get evidence and we

6          could also do a deposition of John and also

7          do a deposition of Christine. And their

8          father was there as well, Bob Biros.

9              Q.  Well, I'm not going to get into the

10         -- to the details, but as you already know,

11         because we've been through this issue in

12         State Court, my client denies everything

13         that you've said.  And you certainly have

14         the right as an individual to walk into any

15         bar, and if Christine or John happened to be

16         there, then you can call that a meeting, but

17         that doesn't mean that's what it was.  Let

18         me move on.

19             A.  (Inaudible).

20             Q.  Excuse me, excuse me, Mr. Snyder,

21         let -- let me move on.

22             A.  (Inaudible).

23             Q.  You claim you made a property tax

24         payment. When did you make that and how much

25         was it and what years did it cover?

33

1          A.  I think that was, it was -- I think

2     it was close to 7,000.  I don't have the

3     exact number in front of me.  And that was,

4     I actually can't even remember the -- what

5     year it covered.  But that would just be for

6     one year.  The property taxes are roughly

7     7,000 a year.

8          Q.  Do you know when you made that

9     payment?

10          A.  No, it was -- my sister made it,

11     Tammy.  She made it by check.  So we would

12     have a record of that check we could

13     provide.

14          Q.  Okay.  In the -- in the corporate

15     action you filed to petition for a

16     reorganization, you stated that you had held

17     a shareholders agreement, or I'm sorry, a

18     shareholders meeting.  Did you inform any of

19     your 800-plus shareholders of that meeting?

20          A.  No, it was a -- it was a -- let me

21     take a drink here for a second.  It was just

22     me.  It was just the majority shareholders

23     present. (Inaudible) majority shareholders.

24          Q.  Now, I don't -- I don't remember

25     what the percentages were, but you listed

34

1        Kash Snyder as a shareholder of a

2        substantial number of shares, much greater

3        than, than the 10 percent that you're

4        asserting that he might own if you own 90

5        percent of the company.  When did you --

6        when did Mr. Snyder -- when did Kash Snyder

7        transfer his shares to you?  Or is -- or is

8        your 90 percent assertion incorrect?

9            A.  Well, there's -- there's -- there's

10       over 400 million shares, and I think Kash

11       has about 4 million.

12           Q.  That's not the number you listed in

13       your -- in your minutes, in your minutes of

14       the shareholders meeting.

15           A.  I gave you a list of the

16       shareholders, didn't I?

17           Q.  You know what, that's -- whether you

18       did or not is irrelevant in this, in this

19       bankruptcy.

20           A.  Okay.

21           Q.  But the point is, and I'm only

22       talking about Kash Snyder at this point, so

23       my question is, when did --

24           A.  He testified (Inaudible).

25           Q.  -- when did he transfer his shares

35

1        to you?  Or is the 90 percent that you claim

2        you own incorrect?

3            A.  No, Kash (Inaudible).

4                UNIDENTIFIED SPEAKER:  And the

5        (Inaudible).

6            A.  I could read you the -- I could read

7        you -- yeah, I can --

8                MR. SLONE:  Who else is speaking

9        here?

10           Q.  Who is speaking in the background?

11           A.  Nobody here.  I think there's

12       someone -- someone else's end is on the

13       phone here.  Just me and Allen sitting here.

14               UNIDENTIFIED SPEAKER:  I think

15       they should, you know.

16               MS. SHANNI SNYDER:  Not me.

17               UNIDENTIFIED SPEAKER:  I think

18       they should.

19               MS. SHANNI SNYDER:  It's not me,

20       Shanni.  Mine's on mute.

21               MR. SLONE:  If this is going to

22       go on, I'm going to ask that we resume later

23       this afternoon and go through the rest of

24       the questioning.  I have 14 other cases to

25       be heard this morning, so --

36

```
 1              MR. OTTO:  What time would you
 2        like to do that?
 3              MR. SLONE:  How about 2:30?  Call
 4        back in at 2:30.
 5              MS. WENRICH:  That's, yeah,
 6        that's fine.
 7              MR. OTTO:  That works for me.
 8              MR. SLONE:  Okay?  I'll keep
 9        everything here.  Call back at 2:30 and be
10        -- get on at 2:30 p.m. today, okay?
11              MS. WENRICH:  Thank you.
12              MR. OTTO:  All right, very good.
13              MR. SLONE:  Thank you.
14              * * * * * * * (The proceedings
15        were recessed.)
16              * * * * * * *
17              MR. SLONE:  Okay, we're back on
18        the record in the U Lock case, 22-20823-
19        GLT.  This is the continuation of the 341(a)
20        meeting which was started this morning.
21        It's now 2:30 p.m. on September 9.
22            When we left, Mr. Otto was asking
23        questions.  Mr. Otto, you can resume.
24  CONTINUATION OF EXAMINATION OF GEORGE SNYDER:
25  BY MR. OTTO
```

37

1          Q.   Okay.  First, Mr. Snyder, can you

2     confirm the sale date of the Kubota

3     equipment?  I think you said it was December

4     of 2021; is that correct?

5          A.   I actually think it was, I'm pretty

6     sure it was November 15 of 2021.

7          Q.   November 15?

8          A.   Yes.

9          Q.   Okay.

10         A.   Correct.

11         Q.   Okay, okay.  And you said you

12    received $45,000 for that?

13         A.   That's correct.

14         Q.   Okay.  In your statement of assets

15    and liabilities, among other things, you

16    said that you had not been involved in any

17    environmental, or that U Lock had not been

18    involved in any judicial or administrative

19    proceedings, and you had not been notified

20    by any governmental unit otherwise that you

21    may have -- that the debtor might be liable,

22    and you had never notified any governmental

23    unit of any release of hazardous material.

24    That's in Document 65, Pages 9 and 10 of

25    19.  And there's a couple of questions about

**Appendix Vol. II, Page 442**

38

1    that.  First of all, U Lock was cited at

2    least twice by North Huntingdon Township for

3    sanitation and accumulation of rubbish and

4    garbage, but you did not report that.  Why

5    didn't you report it?

6         A.   Well, it was my understanding

7    Christine Biros went to the code enforcement

8    officer of North Huntingdon and said, write,

9    write my property up for as many violations

10   as you can.  So I think she was trying to

11   get, you know, some, some strategy there she

12   had.  I went to the Township and he said he

13   was not going to write me up; that he was

14   just going to give me a verbal because --

15        Q.   Mr. Snyder, excuse me one minute.

16   Mr. Snyder, you were cited on or U Lock was

17   cited on September 5, 2019, and June 21,

18   2021, and that was well before a final

19   determination had been made in the Biros v.

20   U Lock case.

21        A.   Okay, I was talking about --

22        Q.   And whether -- and whether, whether

23   Christine Biros initiated that or not, you

24   were cited; U Lock was cited by North

25   Huntingdon Township. And when this comment

39

1       or the statement to the Bankruptcy Court was

2       filed, you did not report this.  So my

3       question is, why didn't you report it?

4       Regardless of who instigated it, the

5       Township issued this.

6           A.   Okay, yeah, my previous answer was

7       talking about the most recent.  You were

8       talking about September 5 and what other

9       date?

10          Q.   September 5, 2019, and June 21,

11      2021.

12          A.   Okay.  So on those, my -- to the

13      best of my recollection, I believe they --

14      that was just some garbage needed cleaned

15      up.  We cleaned it up.  There was no

16      environmental issue there. There was no

17      hazardous material or anything like that.

18      It was just a little bit of garbage, and

19      that was resolved.  And I think it was just

20      a warning, not a citation.  There was no

21      fine that I was aware of.

22          Q.   But the -- but the question in the

23      bankruptcy statement is not are you

24      currently under citation; it's have you

25      ever.  So I go back to my question, which

40

1      you haven't answered yet, why didn't you

2      disclose this?

3           A.  Well, what I -- what I said was, I

4      think I didn't consider it a citation.  It

5      was just a warning to clean up some garbage.

6       And we did that and they were -- the

7      Township was satisfied.  So I didn't think

8      it was a citation.  There was no fine or

9      anything like that.

10          Q.  Did you discuss this with your

11     attorney, Mr. Roth?

12          A.  I discussed pretty much everything

13     with him over the years, so --

14          Q.  And he told you that you didn't have

15     to file this, report this?

16          A.  If there's a mistake on that, we can

17     -- we can certainly (Inaudible) clarify that

18     on there or whatever Mr. Slone would like me

19     to do.  But that's my (Inaudible).

20          Q.  Well, let me take this one step

21     further.  The next question on that section,

22     has the debtor notified any governmental

23     unit of any release of hazardous materials?

24     Now, this was filed in July of 2022, this

25     year, about a month, maybe six weeks after

41

1      the disclosure of PCB's on the site; and yet

2      you say that you never notified any

3      governmental unit of any release, but you

4      testified in court that you had in fact

5      notified the fire department.  So what's the

6      truth here?

7           A.  I think, I don't -- I don't know

8      what you mean by the truth, but I just think

9      you misunderstood something.  I never

10     contacted the fire department.  In fact, I

11     think you guys testified that someone else

12     was the initial person to see that fire.  I

13     was driving past on the highway and I saw

14     the fire in the parking lot and I pulled in.

15     The fire department was already there.

16     The police department was there.  There was

17     at least a dozen personnel from the two

18     outfits. So maybe you misunderstood

19     something, or unless I misspoke in trial,

20     but I don't recall saying that 'cause I

21     never -- I didn't call the fire department.

22     They were there.

23           Q.  So, so let me just make sure I

24     understand, Mr. Snyder.  At no time

25     whatsoever did you go to North Huntingdon

42

1      Township to talk to either the police or the

2      fire department about this event?

3          A.   When I was -- I think the next day,

4      I believe, I went to the property and

5      Christine Biros was there with the

6      Commissioner of the Township, and they were

7      talking about the event and they were

8      standing over the -- over the -- over the --

9      the (Inaudible).

10         Q.   Did you -- did you ever -- did you

11     ever go to the North Huntingdon Township

12     Building to report anything to the police or

13     to the fire department about this event

14     within the couple of days after it occurred?

15         A.   Well, I didn't finish answering what

16     you asked me before.  I did speak with the

17     Commissioner. She was there with, you know,

18     with (Inaudible).

19         Q.   No, I'm not asking you about what

20     happened -- I'm not asking about what

21     happened at the site.

22         A.   (Inaudible) the Township Building.

23         Q.   I'm asking if you -- if you ever

24     went to the Township Building to report to

25     the police and the fire department about

43

1      this event?

2          A.  I don't -- no, I did not go there to

3      report anything because it was already

4      reported; they already got there.  I may

5      have went there to ask for a police report

6      or something of that nature or, but that was

7      -- that was already reported.  There was no

8      need for me to report anything.  And --

9          Q.  But at the end of the day, the

10     answer to the 20, to this question, have you

11     ever notified any governmental unit of any

12     release of hazardous material, your answer

13     to that was no, and that's incorrect, is it

14     not?

15         A.  I'm not recalling what that -- no,

16     that's not.

17         Q.  Well, let me move on.  Have you ever

18     paid anything to Mr. Roth for his

19     representation of you in the State Court

20     action Biros versus U Lock?

21              MR. ROTH:  Objection.

22         A.  Hold on.

23              MR. ROTH:  I object to that

24     question.  That's irrelevant and it's none

25     of his business anyway.

44

1          Q.  Well, in -- in a way it is relevant

2     because you have -- Mr. Roth has not filed a

3     claim in this case and he hasn't filed any

4     request for payment of fees.  It's been

5     stated both in the State Court action and

6     this action that you had not paid him

7     because you were going to pay him something

8     of value when, when U Lock got turned

9     around.  So my question is, do you owe, does

10    U Lock owe anything to Mr. Roth for legal

11    services?

12         A.  He's never billed me to this point

13    as far as this bankruptcy goes.

14         Q.  Do you think you are going to owe

15    him anything?

16         A.  I don't really want to answer that

17    because I --

18              MR. SLONE:  I think the question

19    is, maybe I'm wrong, but -- this is Bob

20    Slone -- I think the question is, does U

21    Lock owe Mr. Roth anything, any money for

22    legal services rendered at any time?

23         A.  No, not right now.

24              MR. SLONE:  So the answer is no?

25         A.  No, just for the post bankruptcy.

45

1         Q.   Okay.

2         A.   But till then, no.

3         Q.   Okay, now, so, so let me -- let me

4    go a little bit further on this in this way.

5     You said earlier today that when Shanni

6    Snyder's case against U Lock was filed, you

7    did not defend it because you would have had

8    to pay an attorney $10,000 to represent U

9    Lock.  And yet, at that point in time, U

10   Lock was represented by Mr. Roth, and all

11   you would have had to do was ask him to go

12   into court to represent you.  If you could

13   -- Mr. Roth represented you from 2017 to

14   2021, and if you never paid him anything for

15   that matter, why would you worry about

16   having to pay him for, for going into court

17   for your sister?

18        A.   We -- that's our -- I think that's

19   work product also.

20             MR. SLONE:  Well, no, it's a

21   question, is, 'cause we're trying to find

22   out if there's a creditor, if U Lock has

23   another creditor.  But you're saying U Lock

24   doesn't owe him any money?

25        A.   Well, to clarify it, I said post

46

1      bankruptcy. So I --

2                   MR. SLONE:  No, I'm asking --

3                   MR. ROTH:  He asked --

4                   MR. SLONE:  -- for prior

5      services. In other words, you know, does U

6      Lock owe Mr. Roth any money; does he have a

7      claim here?

8           A.  No, I don't think.  But to answer

9      his, I think the way, what he's kind of

10     asking is, if Allen's representing me

11     without charging at one point, then that

12     means he'll always just represent me for

13     free across the board on anything, is what

14     I'm getting from --

15                  MR. SLONE:  Well, you can answer

16     that yes or no.

17          A.  -- his office.

18                  MR. SLONE:  If you know.

19          A.  Pardon me?

20                  MR. SLONE:  You can answer that

21     if you know.

22          A.  Okay, yeah, I didn't think -- I

23     didn't think that I could just walk in to

24     him and have, say, come represent me in this

25     for free.  Plus, I didn't think the -- the

47

1    other part of that question, I said we

2    didn't really think that lawsuit

3    (Inaudible), and I had no idea that we'd

4    bankruptcy at this point.

5        Q.   (BY MR. OTTO)  Well, let me -- let

6    me continue with your sister's case for a

7    moment.  You said earlier that the reason

8    that you didn't, among other things, the

9    reason that you did not bother to go in and

10   defend against this, this judgment was

11   because you had no defenses. Well, the easy

12   defense would have been for you to testify

13   that she was not an employee, but you didn't

14   bother to do that.

15   But you and your brother have both given,

16   submitted sworn evidence, number one, that

17   U Lock had no employees throughout that

18   period of time that Shanni Snyder claims she

19   worked for you, and second, that you did not

20   owe anybody any money for employment.  So

21   why wouldn't you go in and at least simply

22   state that?  Even if you lost, you would at

23   least have put up a bona fide defense

24   against her case?

25       A.   I didn't consider -- we didn't

48

1          consider her a current employee at the time,

2          and I still --

3              Q.  I understand that, but if --

4              A.  (Inaudible).

5              Q.  But if you don't consider her an

6          employee, you have to assert that defense.

7          You can understand why, under the

8          circumstances, this does not sound like a

9          case of two arm's length parties arguing

10         about an employment situation. This sounds

11         more like a brother and sister deciding that

12         they need to get a judgment in order to file

13         a lien against real estate in another

14         county.

15             A.  Yeah, that, that's absolutely not

16         the case.  I mean, this whole thing is not

17         an arm's length. Biros, Christine and John

18         --

19             Q.  But you allowed your sister --

20             A.  (Inaudible).

21             Q.  You allowed your sister to get a

22         default judgment against your company.  And

23         it wasn't, you know, a default judgment of

24         $100.  It was 130,000.  Why wouldn't you

25         even go into court to at least put up a --

49

1          A.  Like I said, we figured she'd go
2      away.
3          Q.  Why would she go away?  She got a
4      default judgment.  That's your sister.
5          A.  (Inaudible).
6          Q.  Do you talk to your sister?
7          A.  (Inaudible).  Pardon me?
8          Q.  Never mind, that's a (Inaudible)
9      question.
10         A.  Biros and I have known each other
11     since I was a child.  We've known each other
12     for 45 years. So, and my sister, we've known
13     each other since we were a child, child.
14     I'm not here today to say nothing was --
15     everything was arm's length. That's not the
16     truth.  I was close with my sister.  I was
17     close with Biros.  I was close with the
18     mother, Liz Biros, Bob Biros.
19         Q.  Let -- let me -- let me move on
20     because I don't want you to perjure yourself
21     about the relationship you may have had with
22     the Biros.
23         A.  (Inaudible).
24         Q.  The -- there -- when the -- when
25     title was transferred to you or to U Lock by

50

1          the deeds from the Schur estates, there were

2          a number of trailers and containers on the

3          site.  You have in the last couple months,

4          or maybe more than a couple months,

5          transferred a number of those containers and

6          trailers off the site.  Why did you transfer

7          them or move them and where are they?

8              A.  I believe Mr. Slone said to start

9          moving some of my things out of there, so

10         that would explain the containers.  What

11         about the -- what trailers are you referring

12         to?  'Cause I don't recall moving trailers

13         out of there.

14             Q.  Well, there were a number -- let me

15         put it this way.  Are you saying that, that

16         you own all of those containers that used to

17         be on the U Lock site?

18             A.  Are you referring to the ten

19         shipping containers?

20             Q.  Yes.  Are you -- are you saying that

21         you personally, George Snyder, owns those?

22             A.  Yes.

23             Q.  When was title transferred to them?

24             A.  There is no title.  Those are

25         shipping containers.  They're just a metal

341 (a) MEETING OF CREDITORS  -  9/9/2022

51

1          storage box. I don't believe they have any

2          VIN numbers or titles or anything like that.

3           But I believe I purchased those about 20

4          years ago.

5               Q.  Well, I don't think that's correct

6          because those were all sitting on the

7          property when the property was owned by the

8          Schur estate, and those items were assigned

9          to you by the Schur estate in conjunction

10         with the transfer of title by the Schur

11         estate.  So those containers appear to be

12         owned by U Lock, not George Snyder?

13              A.  Yeah, that's incorrect.  I saw that

14         in one of the (Inaudible).

15              Q.  And you've already testified in

16         court on the first hearing that those

17         containers are worth $6,000 apiece?

18              A.  No, I was talking about the -- the

19         white water tank.  They're 10,000-gallon

20         tanks.  They're white poly tanks.  That's

21         what I was referring to, not the shipping.

22              Q.  No, we were -- no, you were

23         specifically talking about, about

24         containers, the shipping containers.

25              A.  When was that?

52

1          Q.  At the first hearing.

2          A.  Okay.  If someone asked me the

3     value, I don't know what that -- the value

4     the changes over time with those, but the

5     (Inaudible).

6          Q.  Well, the question is, do you have

7     any proof that title of those containers and

8     trailers was transferred to you, as opposed

9     to being still owned by U Lock?

10         A.  Yeah, they were -- well, there's no

11    proof as far as the title goes or whatever,

12    but I had -- I was a tenant at U Lock when

13    the -- the old man who owned it, his name

14    was Nick Schur, and I've been a tenant there

15    for I believe 22 years.  So when you -- I

16    saw that aerial picture you showed with tops

17    of tractor-trailers and tanks and containers

18    and things. Just because there was an aerial

19    photo doesn't mean -- like most, a lot of

20    that stuff belonged to tenants.  And so that

21    was --

22         Q.  Do you have any proof that they were

23    -- that they belonged to you before the

24    property was purchased from the Schur

25    estates?

53

1        A.  I'm not sure.  I'd have to look.  I

2    mean, that's going back 22 years.  But I

3    could see if I have any records of it.  But

4    a lot of that big heavy equipment there was

5    mine.  And as you know, a lot of the big

6    heavy equipment that Glenn Mowry is claiming

7    himself, there was a guy named Vince and

8    there was all kind of other tenants there,

9    and there's another tractor-trailer I think

10    just left today out of there that belonged

11    to someone from Maryland.  So that aerial

12    photo isn't really proof that or that's not

13    really showing ownership of anything.  In

14    fact, it's very misleading.  It's very

15    (Inaudible).

16        Q.  Let me -- let me jump into that

17    since you brought it up.  Let me ask you

18    about the orange trailer.  Who was the

19    renter who had that stored on your site?

20        A.  I believe the company's name is

21    Schapiro Whitehouse.

22        Q.  No, because they -- we've -- we've

23    spoken to them and they had told us that

24    they rented to someone else.  And so the

25    question is not -- it's not Whitehouse &

54

1        Schapiro.  They own the trailer, but they

2        rented it to somebody else who then stored

3        it on your site.  So the question is, who

4        was renting space on your site to store that

5        trailer?

6              A.   They -- they were the contact.  They

7        were the ones who made the arrangements.

8        But they did tell me now recently, you know,

9        this past couple days or this month, that

10       there was some thirty or some third party

11       involved.  But that's -- they said that's

12       between them, not on our end.  So they --

13       they were the ones who (Inaudible).

14             Q.   Well, it's my understanding -- it's

15       my understanding that Whitehouse & Schapiro

16       now is claiming that they shouldn't have to

17       have paid the rent because they rented the

18       trailer to somebody else who stored it on

19       your site.  Did you ever have any direct

20       contact with Whitehouse & Schapiro when that

21       trailer was originally put on your site?

22             A.   That was my only contact.  And she

23       just told me the other day she didn't want

24       to pay 'cause she said the Biros family

25       damaged the trailer and they made it

55

1          inaccessible.  She said she had to pay a

2          thousand dollars for a truck to come out to

3          not be able to pick, get her -- get her

4          trailer.  So she said she (Inaudible), that

5          they had to pay, someone's going to have to

6          pay for that.

7          But she never told me that she didn't want

8          to pay it because it wasn't hers.  In fact,

9          she said it's their trailer, they want it

10         back, and they want -- they want to pay and

11         square up, and she did immediately.  And

12         then it got -- Biros damaged it.  And we

13         have video footage (Inaudible).

14              Q.  How long -- how long was -- how long

15         was that trailer on the site?

16              A.  I believe two years, maybe two years

17         and two months.

18              Q.  So that, that trailer showed up on

19         the site in 2020?

20              A.  I believe it was November of 2020 if

21         my memory serves me right.

22              Q.  And you don't know who entered into

23         a rental agreement with you to (Inaudible) a

24         trailer there?

25              A.  (Inaudible).

56

1    Q.  Because you apparently never

2    collected any rent for it?

3    A.  Pardon me?

4    Q.  Well, Whitehouse & Schapiro paid the

5    Trustee for a couple of years of rent.  So

6    if they had paid you, then they would

7    certainly object to paying the Trustee and

8    they would -- they would have claimed that

9    they had paid you.  But apparently they

10   didn't pay you, and apparently whoever

11   entered into the agreement with you didn't

12   pay you either, unless you accepted cash for

13   it?

14   A.  No, they -- they --

15   Q.  But you still haven't -- who, who is

16   -- who is the person, who is the individual

17   who, who negotiated with you to store that

18   trailer on the site?

19   A.  It was a girl from Whitehouse &

20   Schapiro.

21   Q.  Okay.

22   A.  I believe her (Inaudible).

23   Q.  So when we call Whitehouse &

24   Schapiro and ask them if they negotiated for

25   that truck to be there, they're going to say

57

1          yep, we talked to George?

2               A.   I don't know what they're going to

3          say.

4               Q.   'Cause you know we are going to ask

5          them.  We are going to ask them that

6          question.

7               A.   But I could clarify that if you'll

8          let me.  I spoke with a girl Loretta at

9          Whitehouse --

10              Q.   Oh, please do.

11              A.   Pardon me?

12              Q.   I said please clarify 'cause we're

13         all confused.

14              A.   Well, I answered you already, but

15         I'll say it, you know, more clearly

16         hopefully.  The only person I dealt with was

17         Whitehouse & Schapiro. I believe a woman

18         named Loretta called and made all the

19         arrangements.  Never met her in person.

20         They're from out of state.  She did all this

21         over the phone.  A couple days later

22         (Inaudible).

23              Q.   And this was in 2020?

24              A.   Yes.

25              Q.   Okay.

58

1          A.   The trailer showed up on the lot.  I
2      never collected any rent from them ever in
3      the two years.  Then when I spoke with
4      Whitehouse & Schapiro most recently, a woman
5      named Doll (Phonetic spelling) is who I
6      spoke with.  She said Loretta no longer
7      works for them, she said, but it is their
8      trailer and they want to square up and
9      they'll send out a check immediately, which
10     they did, and they sent it to Mr. Slone.
11         That was it.  I don't know -- I didn't
12     talk to or meet or know this third party
13     that they talked about.  Supposedly they
14     told me that it's their trailer.  Sometimes
15     they rent their trailers and third parties
16     do business out of their trailers.  But I
17     never met that guy, never seen him.  Never
18     seen him, never talked to him on the phone.
19     And that was it. That's all the knowledge I
20     have on that.
21         Q.   During, during the Biros versus U
22     Lock state case, did you disclose that you
23     were the president and Kash Snyder I believe
24     was secretary?  You now tell us that Kash
25     Snyder is president and you're vice

59

1        president, and you don't have a secretary or

2        a treasurer; is that correct?

3            A.  No, I -- I said I was the -- I said

4        we fill all the roles, me and my brother.

5        There's no other members other than my

6        brother.  And I think I said I was president

7        and that Kash was vice president.

8            Q.  I didn't understand that answer.

9        Can you repeat it?

10           A.  I think you just had it flip-

11       flopped.  You said Kash was president, I was

12       the vice president. I think I'm the

13       president and Kash is the vice president.

14       That's (Inaudible).

15           Q.  Okay, so, so your testimony now is

16       that you are president of -- president of U

17       Lock; is that correct?

18           A.  Pardon me?

19           Q.  You -- you are currently the

20       president of U Lock; is that correct?

21           A.  Yes.  Now I am because my brother

22       Kash is in a medical facility and he won't

23       be out for, you know, maybe the end of the

24       month.

25           Q.  And you do not have a secretary or

60

1      treasurer?

2           A.  No, we -- we're also -- we hold all

3      the positions, so I'm everything.

4           Q.  So you're both -- you are -- you are

5      the secretary and treasurer?

6           A.  Yes.

7           Q.  Is that right?  Okay.

8           A.  Yes.

9           Q.  This morning you told us that you

10     own 90 percent of U Lock; right?

11          A.  Yeah, I think you were asking -- no,

12     I'm not -- I wasn't really sure of the

13     percentages.  I know more the -- you were

14     talking about something very specific, and

15     we were -- I had a meeting with Kash over

16     the phone because he hasn't been available.

17     You were talking about the motion to

18     convert.  So I had a meeting with him, and

19     we, you know, we both agreed to the motion

20     to convert, so --

21          Q.  Well, you -- you have --

22          A.  (Inaudible).

23          Q.  You have a corporate resolution of U

24     Lock.  It says that a meeting of

25     shareholders on June 30, 2022, among other

61

1        things, George Snyder owns 345 million

2        shares, Kash Snyder owns 75 million shares,

3        and you had 98.82 percent of the

4        shareholders -- or I'm sorry -- 1.18 percent

5        of the shareholders were not present.

6        That's the 5 million shares that you sold to

7        ABC; is that correct?

8            A.   That's correct.

9            Q.   Okay.  Have you ever communicated

10       anything to those shareholders?

11           A.   No.

12           Q.   So in fact, if you made a ton of

13       money, then those shareholders could have

14       some tax liability for which they are

15       completely unaware; is that correct?

16           A.   That would be a different scenario.

17       If we did, if we made a ton of money, that

18       would be a different scenario.  That doesn't

19       mean --

20           Q.   I'm sorry, your response was a

21       little garbled. Could you repeat that,

22       please?

23           A.   I'm sorry.  That would be a

24       different situation.  And so if they were

25       paid dividends, they would owe taxes on the

62

1        dividends, but we didn't issue any dividends

2        because there was no profit.

3            Q.  But you had them listed as

4        shareholders but never informed them that

5        they were shareholders; is that correct?

6            A.  No, they're aware they're

7        shareholders.  We just didn't notify them of

8        the --

9            Q.  Really?

10           A.  -- the motion to convert because it

11       was a unanimous vote anyways that we had 98

12       percent approval, so --

13           Q.  Well, I can tell you that I have

14       spoken to one of your shareholders, and his

15       first question when I asked him if he was an

16       owner of U Lock shares was, who is U Lock?

17       And I can assure you that he knows -- he

18       knew nothing when I asked him in 2019, and

19       he knew -- he knew nothing when I asked him

20       two months ago.  So if you have any evidence

21       that you've informed all your shareholders,

22       you might want to gather it up, because

23       these people don't know.

24           A.  So we didn't notify them, so

25       (Inaudible).

341 (a) MEETING OF CREDITORS - 9/9/2022

63

1          Q.  Let me move on to my next -- my next

2     area. You've told us that in the last four

3     years you have not had any employees; is

4     that correct? That was your testimony this

5     morning?

6          A.  Yes.

7          Q.  Okay.  So I come back to your

8     sister.  If you had no employees in that

9     four-year period, how does she have a claim

10    to maintain?

11         A.  Well, I guess the answer to that

12    question --

13         Q.  Why didn't you defend it?

14         A.  -- is we have no -- we had no

15    employees on the payroll.  So maybe that was

16    a better answer. Maybe I, you know, should

17    have said it that way.

18         Q.  Well, does that mean you have

19    employees who are not on the payroll?

20         A.  I explained my sister's situation,

21    yes.

22         Q.  Well, let me ask the question again.

23     Does that mean that you had employees who

24    were not on your payroll?

25         A.  We had workers.  They were people

64

1    that worked there that weren't employees;

2    they weren't on the payroll, but they were

3    people that worked.

4        Q.  Well, let -- let me -- let me ask it

5    this way. I concede that you had independent

6    contractors for whom you paid some amount

7    for small jobs and periodically, okay?

8        A.  Yeah.

9        Q.  But Shanni Snyder claims that she,

10   she worked for you for an extended period of

11   time on a continuous four-year basis.  And

12   you're now telling us that you didn't have

13   any employees on the payroll.  So my

14   question is, did you have employees who were

15   not on the payroll?

16       A.  Yes, me, Kash, and Shanni all

17   worked.

18       Q.  And you were not on a payroll?  Did

19   you report taxes to the IRS, payroll taxes?

20       A.  We, no, never received any pay.  We

21   just worked.  Shanni, you know, we didn't --

22   she worked for U Lock, but we didn't really

23   consider her an employee.  She's my sister,

24   and I thought it was more of a favor and the

25   understanding was when we developed the

65

1     property, she would get something.  As I

2     said in court, you know, I think my brother

3     might have said that he thought it was

4     sisterly love. But anyhow, she was doing the

5     camera stuff and she was driving through,

6     you know, ten times a week (Inaudible).

7          Q.  Well, you said in discovery that was

8     provided as a result of a request from me to

9     your counsel, Mr. Roth, you signed, you

10    personally, George Snyder, signed a document

11    that said you had no employees; U Lock has

12    no employees?

13         A.  Yeah, at that time (Inaudible).

14         Q.  What's that?

15         A.  Yes, and at that time that was the

16    (Inaudible).

17         Q.  Well --

18         A.  I didn't hear anything about this

19    lawsuit (Inaudible).

20         Q.  Well, Shanni Snyder, your sister

21    claims that she worked for you continuously

22    from 2016 to 2020, and that covers the

23    period of time that I asked the question.

24    And in court I asked your brother if she had

25    any connection to U Lock and he said no.

66

1          That sounds pretty clear to me that she

2          didn't have a position as an employee or --

3          or in any fashion.

4          But you're now telling us that in fact she

5          was an employee and that she is entitled to

6          a salary of 130,000, which has now been

7          doubled by the Federal Court to $260,000,

8          which you did not defend on U Lock's behalf?

9               A.   I think if I recall (Inaudible).

10               Q.   Even though, even though your

11          testimony is that she was not an employee?

12               A.   Well, I think, I think, like I said,

13          it's been a couple years, but if I remember

14          correctly, I think you asked this, these

15          same questions of me and my brother Kash,

16          and I think we did tell you that she worked

17          there, and you said why, and I think someone

18          said sisterly love and helping us out or

19          whatever.  And that's what we thought at the

20          time.  She wasn't (Inaudible).

21               Q.   No, that's -- that's incorrect.  I

22          asked the question whether she helped on the

23          legal pleadings, and then I asked whether

24          she had anything to do with U Lock.  And the

25          answer to the second question, which is

67

1          whether she had anything to do with U Lock,

2          and the answer to that question is no.

3              A.   (Inaudible).

4              Q.   There were two parts to that

5          question.  One was her involvement in the

6          pleadings and the legal filing, and the

7          second was whether she had any involvement

8          with U Lock, and the answer to whether she

9          had anything to do with U Lock was no.  And

10         your statement --

11             A.   I don't recall.

12             Q.   -- in discovery was you had no -- U

13         Lock had no employees?

14             A.   Yeah, employees get wages, and she

15         wasn't getting any wages.  She got nothing.

16         So that's probably why, if that's how I

17         answered it, if it is (Inaudible).

18             Q.   Okay.  It still begs the question

19         why you didn't defend it in court, but let's

20         move on. You claim that, that you had an

21         outstanding loan from U Lock or to U Lock,

22         that you loaned U Lock some amount of money

23         for which you repaid yourself when you sold

24         the Kubota tractor and you got $38,000; is

25         that right? That's what you testified this

**Appendix Vol. II, Page 472**

68

1      morning?

2           Are you there?  Hello?  Anybody there?

3                MS. SHANNI SNYDER:  I'm here.

4                MR. SLONE:  Allen, Allen, are you

5      there, Allen and George?

6                MR. OTTO:  Mr. Slone, that's

7      twice in two days, or in one day.

8                MS. SHANNI SNYDER:  Do you have

9      to call them?

10                MR. SLONE:  We'll have to call

11     Allen's office again.  Shoot, where's his

12     number?  Here it is. (Phone dialing.)

13                UNIDENTIFIED SPEAKER ON PHONE:

14     Get disconnected again?

15                MR. SLONE:  Yes, we did.

16                UNIDENTIFIED SPEAKER ON PHONE:

17     Hold on.  Hang up.

18                MR. ROTH:  Yeah, hello.

19                UNIDENTIFIED SPEAKER ON PHONE:

20     No, hang up.

21                MR. SLONE:  Allen, are you back?

22                MR. GEORGE SNYDER:  Yeah, we're

23     back.  Can you hear me?  We're good.

24                MR. SLONE:  Yes, we can hear you.

25     Go ahead.

341 (a) MEETING OF CREDITORS  -  9/9/2022

69

1              MR. GEORGE SNYDER:  Okay, we must

2         have got disconnected.

3    CONTINUATION OF EXAMINATION OF GEORGE SNYDER:

4    BY MR. OTTO

5         Q.  Mr. Snyder, my last question was,

6         you paid -- you paid yourself back in, after

7         you got payment for the Kubota; is that

8         correct?

9         A.  But not -- not for wages.  I didn't

10        pay anything for wages.

11        Q.  No, I'm just -- but you said you had

12        a loan outstanding --

13        A.  Yes, a loan.

14        Q.  -- that you had made to U Lock, and

15        that, and you repaid yourself back for that;

16        is that correct?

17        A.  Correct.

18        Q.  Okay.  Were there -- did anybody

19        else loan money to the company?

20        A.  Yeah, my sister Tammy.

21        Q.  Was that the money for the taxes?

22        A.  Yes, the --

23        Q.  Okay.

24        A.  I believe it was 7,000.

25        Q.  Anybody else?

70

1          A.  I believe my brother Kash did.

2     Biros did.

3          Q.  How much did you brother loan?

4          A.  I'm not really sure.

5          Q.  Okay.  Let's see.  In your

6     statement, there's a question of whether the

7     -- whether U Lock has any accounts

8     receivable, and you answered no; and yet you

9     have this list of tenants, many of which

10    have never made rental payments.  Don't you

11    keep any records of who pays you?

12         A.  Well --

13         Q.  And who hasn't paid you?

14         A.  Yeah, there are some records.  I was

15    kind of playing catch-up 'cause my brother

16    was, you know, my brother was, you know, he

17    wasn't around.  So we provided the Trustee

18    with everything we had, and then I discussed

19    it personally with Mr. Slone, a couple

20    things, like when that truck came up and,

21    you know, we contacted them and --

22         Q.  So there are a lot of renters that,

23    that have not paid money, so you never made

24    any, took any effort to collect from them or

25    to get rid of their property; is that

71

1      correct?

2          A.  Well, we're attempting that now.  A

3      lot of -- a lot of the tenants are --

4          Q.  Well, why did -- why did it --

5          A.  (Inaudible).

6          Q.  Why did it take bankruptcy to get

7      you to start taking action?

8          A.  I'm sorry, I couldn't hear anything.

9       I was talking.

10             MR. SLONE:  Let's one talk, one

11      person at a time here.

12          Q.  Why did it take --

13             MR. SLONE:  Go ahead.

14          Q.  Why, why did it take the bankruptcy

15      for you to start trying to collect past

16      rents?

17          A.  Well, because Christine didn't want

18      her name on anything, so she told us not to

19      sue anybody and she didn't want any, you

20      know, anything coming up in court or

21      anything like that until after, so we just

22      didn't do anything.

23          Q.  You understand that Christine is

24      going to tell you that that's not true?

25      And, and whether it's true or not --

72

1          A.  (Inaudible).

2          Q.  -- you're supposed to be president

3     -- you're supposed to be president of this

4     corporation, and you're responsible for

5     trying to make it work, and it apparently

6     has not?

7          A.  Well, like I said, most of those

8     people are willing to pay.  Anybody, in my

9     experience, anybody that has stuff stored

10    there is more than willing to pay.  Even a

11    great example is the lady who just paid

12    $3,000 because they want their stuff.  But

13    it's very difficult 'cause Bob Biros and

14    Christine and their family and Andy and

15    everybody is down there destroying all the

16    tenants' things, blocking access to their

17    stuff.  And I'm getting all kind of threats

18    now that they're not going to pay and

19    they're going to sue and they're making some

20    (Inaudible).

21         Q.  Have you ever -- have you referred

22    all these communications to the Trustee?

23         A.  I let the Trustee know what I've

24    been going through, yeah.

25         Q.  So you've been receiving threats

73

1         because of damage?  Who, who specifically

2         has threatened you?

3              A.  I don't know, there's several

4         tenants.  Every time I pull down there and

5         there's a different tenant, they complain

6         that they can't get their stuff, they can't

7         get access.  There's people running around

8         with dozers.

9              Q.  Well, who --

10             A.  (Inaudible) and other tractors.

11             Q.  Who are they?  Who are these people?

12             A.  They're tenants.

13             Q.  I understand they're tenants.  What

14        are their names?

15             A.  You know what, I don't know every

16        single person there by, by name or face.

17        When I -- when I come in and I see them, I

18        wave and I say hi. That's about it.  My

19        brother dealt with most of the, you know, a

20        lot of those people, so, but --

21             Q.  It's beginning to sound like your

22        brother is the one we should have had in the

23        341 meeting?

24             A.  Well, he wasn't available.  He's

25        been in a facility for several months, so

74

1          he, he's going to be discharged I think

2          later this month.  So we -- we didn't even

3          have money to collect or to sue people.  And

4          Christine didn't want -- you know, she's the

5          one that had the money, but she didn't

6          provide any for us to go after these people

7          (Inaudible).

8               Q.  So the long and the short of it is,

9          this is not a viable company unless you get

10         Christine Biros to jump in and pay for

11         everything?

12              A.  No.

13              Q.  Is that what you're telling us?

14              A.  There -- no, not at all.  There's

15         plenty of people with money that would love

16         to be involved.  But Christine got involved

17         saying she'd take the money or, you know,

18         she was going to give us the money, and then

19         she tried to take over the whole property by

20         saying what she said in court and switching

21         this whole thing around.

22              So she -- we tried to pay her back the

23         money we owed her.  Ever since the beginning

24         she will not take the money back.  We

25         offered her interest, everything to make her

75

1    whole, and they just keep saying they want

2    the -- they want the property, they want the

3    property. They said it's a loan but we don't

4    want paid back; we just want the property.

5    So that instead of just foreclosing on the

6    loan, which would have enabled us to pay

7    them off, she did this, this crazy whole

8    thing saying she didn't know who we were.

9    We went to court. They got a default

10   judgment on us. Then we had to open the

11   judgment. Then we end up in court and they

12   just, they weren't truthful on almost

13   anything they've said on the stand, so --

14        Q.  Mr. Snyder, your recollection of

15   this legal case is, is not the same as

16   either mine or Ms. Biros. And I think

17   before you continue to misstate the actions

18   involved, you might want to go back and look

19   at things like the docket and talk to your

20   counsel who was also there.

21        A.  Well, this is true (Inaudible).

22        Q.  Who maintains all -- who maintains

23   all of your -- who maintains all of your

24   books and records; is it you?

25        A.  No, Kash does more of that than me.

76

1    I have some access.  I have access now to

2    some records, but I haven't been able to,

3    you know, really see him in person because

4    he's at a medical facility.  But when --

5         Q.  One of the questions --

6         A.  (Inaudible).

7         Q.  One of the questions here is, list

8    all firms or individuals who were in

9    possession of the debtor's books of account

10   and records when this case was filed, and

11   your answer was none.  And you gave no

12   explanation of why they were unavailable.

13        A.  (Inaudible.)

14        Q.  Is it -- is it -- is it your

15   testimony -- is it your testimony that Kash

16   Snyder has all this stuff and you just can't

17   get to it 'cause he's in an institution?

18        A.  I have some stuff, but if there's

19   anything missing, then he would be the -- he

20   would be the one to have that.

21        Q.  Okay.  In your statement there's a

22   question of, within one year before filing

23   this case, did the debtor provide an insider

24   with the value in any form, including

25   salary, other compensation, draws, bonuses,

77

```
 1        loans, credits on loans, stock redemptions
 2        and options exercised, and you say no; is
 3        that correct?
 4             A.  Are you looking at the schedule?
 5             Q.  I am.
 6             A.  What page is that?  I was trying to
 7        follow along with you.
 8             Q.  That is Page, hold on, Page 13 of
 9        19, Document No. 65, Question 30.
10             A.  This is Page 13?
11             Q.  That's correct.
12             A.  And what is your question?
13                  MR. SLONE:  Question No. 30.
14             Q.  I'm -- you just -- I'm just asking
15        you if your answer to No. 30 is correct?
16             A.  I'm sorry, trying to find Page 13.
17             Q.  Yep, down at the bottom.  Question
18        30.
19             A.  I didn't get a salary and I had --
20        you know, everything, I received repayments
21        on the loans, but no compensation, no
22        salary.
23             Q.  So, so this --
24             A.  (Inaudible).
25             Q.  This question, your answer to this
```

78

1      question is not correct?

2           A.  Yeah, the way I read it, the way I

3      read it, I thought it meant salary, and I

4      didn't receive any salary or any payments,

5      no dividends.

6           Q.  Let me move on.  What, what

7      utilities are at the property at 14140?

8           A.  I believe electric service.  I think

9      there are sewage and water taps there, but I

10     don't believe U Lock gets a bill for those.

11          Q.  How about cable?

12          A.  I don't -- no, no cable.

13          Q.  Okay.  Do you have a camera system

14     at the -- at the property?

15          A.  Yes.

16          Q.  Where are the cameras located?

17          A.  We kind of have cameras there to,

18     you know, because the Biros are still

19     (Inaudible) for a lot of things.  I don't

20     know, do I have to tell you the exact

21     locations as to those cameras since your

22     client are the perpetrator?

23               MR. SLONE:  Just say how many

24     cameras are there.

25          A.  I believe there's -- I believe

79

1        there's about ten cameras there.  And they

2        face --

3             Q.  Well, let me ask you this, Mr. --

4             A.  (Inaudible).

5             Q.  Mr. Snyder.

6             A.  (Inaudible).

7             Q.  How -- how does information from

8        those cameras get to some other location if

9        you don't have cable?

10            A.  Well, there's -- I believe there's

11       WiFi at the property, but I think it's the

12       motel's WiFi or someone else's and --

13            Q.  Oh, so you -- you --

14            A.  (Inaudible).

15            Q.  You tap into the -- you tap into

16       somebody else's WiFi?  Did -- did they give

17       you consent to do that?

18            A.  No, I don't -- no, I don't control

19       that camera system, so the one I --

20            Q.  Who does?

21            A.  The one I control is closed circuit

22       and it's not -- it does not go over WiFi.

23            Q.  So it's not remotely available?

24            A.  The one that I --

25            Q.  Is that correct?

80

1          A.  That's correct.

2          Q.  Okay.  So how could Shanni Snyder

3     monitor your camera system, if it's closed-

4     circuit and not remotely available, how

5     could she do that for four years?

6          A.  Well, she had the -- no, I, the one

7     I control is closed-circuit and not -- I

8     don't do it, you know, 'cause my sister

9     does, I believe.

10          Q.  Well, where -- but it's -- but it's

11     U Lock's system; right?  So you're telling

12     me she owns the cameras that monitor U Lock?

13          A.  I believe so.

14          Q.  So she owns the camera system at the

15     U Lock property; is that correct?

16          A.  Some of their -- there's multiple

17     camera systems there, because some of the

18     tenants even have their own systems, I

19     believe.  But, yes, she owns her own system,

20     and then the one I have access to is

21     (Inaudible).

22          Q.  How, how is her -- how is her system

23     accessible remotely?  Where is the WiFi

24     system that, that allows that to happen?

25          A.  I'm not sure.  I know we don't have

81

1        WiFi at the time, but, you know, since -- I

2        don't think we've had it (Inaudible).

3            Q.  Well, that was a four-year period

4        where, where she had -- she claims she had

5        access to cameras.  You're telling me that

6        you only have a closed-circuit camera, so

7        that couldn't have been -- that couldn't

8        have been what she was using.  So she's got

9        her own camera system; is that, is that what

10       you're telling us?

11           A.  Yes, she has her own.  I think she

12       has a -- I think it's called a Dropcam

13       system.  She's a little more technological

14       savvy than me. Mine's kind of like old-

15       school camera, I mean, but it's -- hers has

16       I think (Inaudible).

17           Q.  So if we get into the details of

18       this camera system with her when her claim

19       is, is heard by the District Court, which

20       she's appealed, then she'll understand

21       perfectly how this camera system works?

22           A.  Well, I know she understands better

23       than me. I'm not -- I'm not real -- like I

24       said, mine's the old-fashioned kind.  It's

25       not old-fashioned; it's a high-resolution, I

82

1          mean, but it's just not -- I don't -- I

2          don't look at my camera systems on like my

3          cell phone.  She does all that.  She has all

4          the cellular service and she does that sort

5          of thing.

6               Q.  Okay.

7               A.  I don't know the (Inaudible) on

8          that.

9               Q.  There is currently located on the

10         property a red car?

11              A.  Yes.

12              Q.  Pretty hard to miss if you drive on

13         -- who owns that?

14              A.  The Honda, are you referring to the

15         Honda, the red Honda?

16              Q.  I'm only -- I don't remember what

17         brand it was. I'm only aware of one red car

18         on that site at this point.

19              A.  Yeah, right in front of the

20         building?  That would be --

21              Q.  Yeah, who owns that?

22              A.  My brother Kash.  That's his car.

23              Q.  That's Kash's car?  Why is his car

24         still there? It's obviously not operable?

25              A.  Yeah, I'm not sure.  Like, like I

341 (a) MEETING OF CREDITORS  -  9/9/2022

83

```
 1        told you before, I don't want to keep

 2        repeating.  I mean, I feel bad having to

 3        keep repeat it, but, you know, there's so

 4        much contention there. Biros come down

 5        there, kicked me off the property, kicked

 6        people off the property.  They blocked his

 7        car in.  You can't get a -- I don't even

 8        know if you can get a tow truck back to his

 9        car at this point.

10        They covered almost all the roads except

11        for one, and so it's very difficult for

12        anybody to get anything down there.  The

13        whole family shows up, Bob Biros, Christine

14        Biros, her son Scotty Biros, Andy Biros,

15        John Biros.  They're like a swarm of bees

16        down there and they're harassing everybody,

17        and they're moving stuff around with dozers

18        and backhoes and taking people's property

19        and damaging it.  They're pushing everything

20        into a pile.  One minute they say it's

21        garbage (Inaudible).

22           Q.  You're prepared -- you're prepared

23        to back up these statements in court, I

24        assume, with evidence?

25           A.  Pardon me?
```

84

1          Q.   But the mean -- but in the meantime

2     --

3          A.   (Inaudible).

4          Q.   -- the Trustee has, Mr. Snyder, the

5     Trustee has allowed you pretty much

6     unlimited access to the site, and you've --

7     and you've moved a lot of stuff off this

8     site without interference from the Biros.

9     So the question is --

10         A.   That's not true.  I (Inaudible).

11         Q.   -- why is Kash Snyder's broken --

12    excuse me, let me finish my question,

13    please.

14         A.   (Inaudible).

15         Q.   Why is Mr. -- your brother's red car

16    still on the site?  It's clearly not

17    operable and it could be moved just as the

18    other cars were?

19         A.   Well, I -- it -- that probably --

20    I'm guessing it wasn't moved by Kash because

21    he's been in a facility since I believe June

22    or July.  I could probably get, you know,

23    permission from Kash and work with Mr. Slone

24    to get that car out of there, but it's very

25    difficult to do anything. And I disagree

85

```
 1        with you saying I got a lot of stuff out of
 2        there.  I don't think I got a couple percent
 3        of stuff out of there.  We took one
 4        truckload of pallets (Inaudible).
 5             Q.  All of those -- all of those
 6        shipping containers are gone and most of the
 7        trailers are gone?
 8             A.  Yeah, I don't --
 9             Q.  So --
10             A.  I don't agree with you.  I don't
11        think there was -- I think there was only
12        one trailer that I know of that left the
13        site.  And the shipping containers were
14        moved months ago.  I'm not in agreement with
15        you on your, you know, what you're --
16             Q.  Who paid -- who paid the insurance
17        premium for the insurance on the site?
18             A.  I paid that personally.
19             Q.  Okay.  Who is the principal of USAAG
20        that you've been dealing with?
21             A.  Well, I was talking to Mike Lavinsky
22        (Phonetic spelling).
23             Q.  Do you have contact information for
24        him?
25             A.  Not in front of me.
```

86

1          Q.  What -- what state was USAAG

2     incorporated in, do you know?

3          A.  No, I don't.

4          Q.  Is there anybody -- is there anybody

5     else associated with USAAG that you're aware

6     of?

7          A.  Yeah, I talked to someone else, but

8     (Inaudible).  There's several people.

9     They're slipping my mind right now.  There

10    was Mike Lavinsky.

11         Q.  How -- how do you know this Mr. Mike

12    Lavesky (Phonetic spelling)?

13         A.  You know what, several years ago, he

14    had -- he had called.  I don't know if you

15    saw the number on the sideline or whatever.

16    He called and he came and he wanted to meet,

17    and we came out and we looked at the

18    properties.  And he's come back a couple

19    times since.

20         Q.  Okay.  Why have you never applied

21    for an occupancy permit for U Lock on that

22    site?

23         A.  I'm not sure.  Like I said, Kash, my

24    brother Kash handled most of that stuff.

25    And then I think we were kind of

87

```
 1        grandfathered in with, you know, the storage

 2        facility, is kind of what the Township told

 3        us there, so --

 4            Q.  I can -- I can assure you that

 5        according to North Huntingdon Township, that

 6        you are not grandfathered in.

 7            A.  (Inaudible).

 8            Q.  Do you pay business privilege tax to

 9        North Huntingdon Township?

10            A.  Pardon me?

11            Q.  Do you pay business privilege tax to

12        North Huntingdon Township?

13            A.  I don't think so, but --

14            Q.  Any reason why not?

15            A.  No, just like we said before, we

16        haven't paid anything.  We didn't have the

17        money, so we didn't pay any of the taxes

18        yet.  But we don't (Inaudible).  We're going

19        to file them.

20            Q.  Now, when you had the Kubota

21        machinery, you -- you borrowed -- you

22        entered into a loan agreement, U Lock

23        entered into a loan agreement to purchase

24        that equipment; is that correct?

25            A.  In 2016 you mean?
```

88

1      Q.  Yes.

2      A.  Yes.

3      Q.  Okay.  And I assume that U Lock made

4    payments to keep the loan current; is that

5    correct?

6      A.  Yes.

7      Q.  Okay.  And you then sold the Kubota

8    property or equipment and received $45,000

9    for it, so you must have paid at least

10   $45,000 from U Lock to Kubota; is that

11   correct?

12     A.  Well, a lot of times if U Lock

13   didn't make enough money sometimes to cover

14   it, and I always -- I always put the money

15   in to cover the payments, so I put quite a

16   bit of money towards the payments.

17     Q.  Is it -- is it correct that you

18   rented that equipment out periodically?

19     A.  I don't know that we ever -- I don't

20   know that we ever rented it out.  We put a

21   sign there that, for rent, but we didn't

22   rent that machine out.  That stayed on the

23   property.  But we have another machine like

24   that, so when someone would call and say,

25   hey, can I rent an excavator, yeah, we did

89

1      do that a couple times, but only a handful

2      of times.

3          Q.  When you say we had another piece of

4      equipment, who is the we you're talking

5      about, U Lock?

6          A.  No, no, I'm sorry, no.  Personally I

7      had another piece of equipment that was

8      almost identical to that, that one.  And

9      this is going back years.  I mean, I think

10     that was, if it was in like 2016 or

11     something.  We put that there and we

12     (Inaudible) for rent, but what we rented was

13     a machine that was almost identical to that

14     one.  But I don't -- I think -- I can't even

15     remember the charge.  We rented, I think it

16     was rented to a friend just a couple times.

17     But as far as I know, I don't think that

18     particular machine owned by U Lock was

19     rented out ever.

20         Q.  What is -- what is the involvement

21     of Eric Martin in U Lock?

22         A.  None.  He had -- I think he loaned

23     -- he loaned the down money for U Lock in

24     the beginning, but he was --

25         Q.  And in fact, he was repaid by the --

90

1         by the -- at the closing, or he was repaid

2         with money out of I believe Henry Moore's

3         escrow.  So what, what did you pay Mr.

4         Martin; what did you pay Mr. Martin to loan

5         you the down payment for this property?

6              A.  I don't -- I don't think anything.

7              Q.  So he -- he did it as a -- as a

8         friendship?

9              A.  Yes.

10             Q.  Out of friendship?

11             A.  Yeah.

12             Q.  Okay.  Let's see.  Have you given a

13        complete list of all of the renters on that

14        property to the Trustee?

15             A.  At the time I gave him all, you

16        know, when we filed the schedules, we gave

17        -- I gave him everything I knew about.  And

18        as things came up, like, I believe the

19        tractor-trailer we were talking about

20        earlier was not on the schedule, but I

21        updated him on that.  If anything did come

22        to light after the fact, we'd let him know.

23             Q.  Well, you've controlled -- you've

24        controlled that property from 2015 up until

25        at least when the bankruptcy petition was

91

```
1        filed, so it would seem logical that you
2        would have a list of tenants for all your --
3        all your lockers and there wouldn't be
4        people who had stuff stored there that you
5        wouldn't know about, even if you didn't know
6        them personally, so --
7            A.   Yeah.
8            Q.   So are you telling us that there are
9        tenants or renters that you don't know
10       about?
11           A.   Well, there were -- I wasn't the one
12       -- when you're saying I was in control of
13       the property, I didn't do every task there
14       at the property, nor was I in control of
15       every aspect of it, so my brother kind of --
16           Q.   Well, U Lock was, and you're the
17       president of U Lock, so it's your
18       responsibility?
19           A.   Yeah, so like I said, Kash was the
20       (Inaudible) with the tenants and myself.
21           Q.   Oh, so you're telling me Kash was in
22       charge of all the renters and had a complete
23       list of the tenants, of the renters?
24           A.   I don't know exactly what he has.  I
25       think you asked him that question before on
```

92

1    the stand.  I can't remember what he

2    answered, but I -- yeah, he did that way

3    more than I did.  I just, like I said, I've

4    been trying to play catch-up here in the

5    past few months and, you know, like I said,

6    I didn't do every single task on that

7    property.  So, yeah, he would -- he would

8    have more of a complete list than I have.

9    But I think we're -- we're pretty, pretty

10   much, I'd have to say 90, 98 percent or

11   something, you know, accurate when we give

12   Mr. Slone the statements, would be my guess.

13    But like I said --

14            MR. OTTO:  Mr. Slone, we've had a

15   number of questions which in my view are

16   fairly important that Mr. Snyder has said he

17   can't answer because his brother Kash has

18   the information.

19            MR. SLONE:  Well, we can take --

20   you can schedule a 2004 Examination of Kash

21   Snyder. Maybe that's what should be done.

22            MR. OTTO:  I -- I was going to

23   ask, I'm not sure what the mechanism would

24   be, to do that or to continue the 341

25   meeting until Mr. Snyder, Mr. Kash Snyder is

93

1     available.

2               MR. SLONE:  Well, I won't close

3     --

4               MR. OTTO:  I'll leave that to

5     your discretion.

6               MR. SLONE:  I won't close -- I

7     will not close the meeting today.  So we can

8     reschedule a continuation of it when we get

9     a date for Mr. Kash, or you can take a 2004

10    Examination, either way.

11              MR. OTTO:  Okay.  Let me -- let

12    me talk to Sarah Wenrich separately and --

13    and --

14              MR. SLONE:  Yeah, I will not

15    close this.

16              MR. OTTO:  Either I will --

17              MR. SLONE:  I will not close the

18    meeting today.  The meeting will be held

19    open.

20              MR. OTTO:  That's all the

21    questions I have for now, but --

22              MR. SLONE:  Okay.

23              MR. OTTO:  -- I don't know if

24    Sarah or Christine have any.

25              MR. SLONE:  Any other questions?

94

1          MS. BIROS:  I have one, Bill.

2     Bill I had one.

3          MR. OTTO:  Yes, go ahead.

4          MS. BIROS:  Is Biros on the

5     checking account for U Lock?

6          MR. OTTO:  Mr. Snyder, did you

7     hear that question?

8          MR. GEORGE SNYDER:  No, I'm

9     sorry.

10          MR. OTTO:  Who, who has the --

11     who is authorized to sign, with Citizens

12     Bank to sign checks for U Lock?

13          MR. GEORGE SNYDER:  Kash Snyder,

14     my brother.

15          MR. OTTO:  Only Kash, not you?

16          MR. GEORGE SNYDER:  Not me;

17     correct.

18          MR. OTTO:  Only Kash, okay.

19          MR. GEORGE SNYDER:  Yes.

20          MR. OTTO:  Sarah, do you have any

21     questions?

22          MS. WENRICH:  I do not have any

23     further questions at this time.  Thank you.

24          MR. SLONE:  Okay, what I'm going

25     to do, if there's no further questions, I

95

1      will keep the meeting open and then --

2                  MS. SHANNI SNYDER:  I -- excuse

3      me, this is Shanni.

4                  MR. SLONE:  Yes.

5                  MS. SHANNI SNYDER:  I have

6      questions.

7                  MR. SLONE:  Okay, I'm giving --

8                  MS. SHANNI SNYDER:  (Inaudible).

9                  MR. SLONE:  Okay.  Is it going to

10     be lengthy or within the next ten minutes?

11                 MS. SHANNI SNYDER:  No.  Yes, we

12     should be good.

13                 MR. SLONE:  Okay, go.

14     EXAMINATION OF GEORGE SNYDER:

15     BY MS. SHANNI SNYDER

16          Q.  Okay.  George, you were the primary

17     officer of U Lock; isn't that right?

18          A.  Yes.

19          Q.  Did you answer?

20          A.  Yes.

21                 MR. SLONE:  He said yes.

22          Q.  Hello?

23          A.  Correct.

24          Q.  Okay.  You were the primary

25     shareholder of U Lock; isn't that right?

96

1          A.  Yes, majority shareholder.

2          Q.  When you started U Lock, did it have

3     any money?

4          A.  No.  We were (Inaudible).

5          Q.  When you formed U Lock, did you

6     discuss the name with Christine and John

7     Biros?

8          A.  I didn't finish answering your other

9     question when you said we didn't have any

10    money.  We were supposed to, was promised

11    money by Biros to keep U Lock, you know, to,

12    to develop U Lock, so, but when they didn't

13    put up the money, then, no, we didn't have

14    any.  So I'm sorry, what's your next

15    question?

16         Q.  Okay.  When you -- when you formed U

17    Lock, did you discuss the name with

18    Christine and John Biros?

19         A.  Yes, we discussed everything

20    together.  We met almost daily, but at the

21    very least weekly.

22         Q.  Okay, when did U Lock open its bank

23    account?

24         A.  I'm not sure exactly.  I think we

25    purchased it in like 5/2015, something like

97

1        that.  It was sometime after that.

2                MR. OTTO:  I'm sorry, I didn't

3        hear that date.

4            Q.  (Inaudible).

5            A.  I believe, I think just right after

6        we -- we purchased it.  So I think probably,

7        if we bought it in July, I would say we had

8        the bank account by September.  That's --

9            Q.  The whole idea of U Lock was to get

10       this property and develop it; isn't that

11       right?

12           A.  Correct.

13           Q.  Christine Biros promised to put up

14       the money to help you with that; isn't that

15       right?

16           A.  Yes.

17           Q.  Did you have silent partners from

18       2015 to 2018?

19           A.  Yeah, Christine Biros and John

20       Biros.

21           Q.  And how often did you have meetings

22       with John and Christine Biros from 2015

23       through 2018 then?

24           A.  I would -- 2015 to '18?  I would say

25       with John, I would say almost every day.

**Appendix Vol. II, Page 502**

98

1       And then he was -- he relayed whatever

2       Christine would say to me.  And then

3       Christine, and I wanted to clarify a

4       question I didn't get to finish answering

5       before.  When I met Christine, it was every

6       Wednesday, and she would ask me to come down

7       to meet with her at her place of business,

8       which happened to be a bar or a tavern.  And

9       I didn't drink; we don't drink.  We didn't

10      sit at the bar.  We'd sit in the office and

11      talk.  And so it wasn't that just we just

12      ran into each other at some bar somewhere.

13      It was, she was the owner of this business.

14      We were meeting at her request there.

15          Q.  Did you discuss the U Lock and its

16      plans at these meetings?

17          A.  Yes, we always, we sat there for

18      hours.  That's all we talked about.

19          Q.  And you're saying it was a bar.

20      What was the name of the bar?

21          A.  Caesar's Tavern.  Well, we didn't

22      always meet at a bar.  There -- we met

23      different places, wherever they requested.

24      You know, there were different places we

25      met, but a lot of it was at that -- at her

99

1      place of business, Caesar's Tavern.

2         Q.  Okay, so you discussed the U Lock

3      and its plans with them at those meetings,

4      and when did the meetings stop?

5         A.  I'm not really sure.  As far as the

6      -- as far as with Christine, it kind of

7      stopped a little earlier, like maybe in

8      2018.  John I talked to a little bit less,

9      less, but I've met up with John just as

10     recently as last year (Inaudible). Maybe

11     even this year.

12        Q.  And did you have progress updates

13     and meetings even after Christine Biros sued

14     you?

15        A.  Yes.  Yeah, we always did.  Even I

16     think at one point they even, you know,

17     paused the lawsuit so we could talk about

18     moving forward.

19        Q.  When you had these meetings during

20     the lawsuit, was Ms. Biros' attorney, was

21     Ms. Biros' attorney present with you?

22        A.  No.

23        Q.  Did you consider Ms. Biros the

24     control person of U Lock?

25        A.  Yes.

100

1             MR. SLONE:  At what point?

2        Q.  Even after the lawsuit, even after

3   the lawsuit, did you feel that Ms. Biros was

4   -- Ms. Biros was making the shots, calling

5   the shots in U Lock, making the decisions?

6        A.  Yes.  The whole time.

7        Q.  U Lock had a company car it used; is

8   that correct?

9        A.  Yes, truck, pickup truck.

10       Q.  Who owned the company car?

11       A.  I believe it's the Biros family.

12   I'm not exactly sure who it's titled to, but

13   I'm -- I believe someone in the Biros

14   family, Bob or John or I'm not sure.

15       Q.  When did U Lock return it?

16       A.  Just in recent years.  We used it

17   from, I believe, I think 2015 maybe from the

18   beginning till I think '20, sometime in

19   2020.  '21, '22. Yeah, so not the past two

20   years.  Somewhere in 2020 they (Inaudible)

21   take it back.

22       Q.  Okay, so from 2015 to 2020 the

23   company car belonged to the Biros family?

24       A.  Yes.

25       Q.  Can you hear me?

**Appendix Vol. II, Page 505**

341 (a) MEETING OF CREDITORS  -  9/9/2022

101

1          A.  Yeah, I can hear you.

2          Q.  (Inaudible).

3          A.  I'm sorry.  Did I miss a question?
4     Go ahead.

5          Q.  So from 2015 through the beginning
6     of 2020, the company car belonged to the
7     Biros family?

8          A.  Oh, yeah, I thought I answered that.
9      Yes, yeah, we knew -- there was -- there
10    was a truck that was used on the facility,
11    and it belonged, to them and we used it
12    quite a bit.  And then when it would need
13    any maintenance or anything, John would pick
14    up the truck, take it to the -- to get
15    inspected or whatever needed done, brakes
16    done or something, and he would bring it
17    back to the property.

18         Q.  And did the Biros family place
19    trailers onto the property at U Lock?

20         A.  Yes, two (Inaudible) like maybe 70-
21    foot mobile homes.

22         Q.  Did you ask them to do that?

23         A.  No.

24         Q.  So the whole time, even after the
25    lawsuit, you considered Ms. Biros to be part

102

1      of U Lock?

2           A.  Yeah.  And I believe they put those

3      trailers there after the lawsuit.  They

4      just, yeah, she was always in control.

5           Q.  And when Christine Biros sued U

6      Lock, did she ask the Court to order

7      repayment or payment to her for rent?

8           A.  Oh, you mean this most recent thing

9      where they're asking for me, George Snyder,

10     to pay U Lock rent?  Or U Lock to pay her

11     rent?

12          Q.  No, I said when Christine Biros sued

13     U Lock, did she ask the Court to order

14     payment to her for rent?

15          A.  No.  She never mentioned that.

16          Q.  Did Christine Biros ever send you a

17     bill for rent?

18          A.  No, she did not.

19          Q.  Did Christine Biros ever ask you to

20     pay her rent?

21          A.  No, there was no mention of

22     (Inaudible).

23          Q.  When U Lock purchased --

24          A.  The other court (Inaudible).

25          Q.  When U Lock purchased the property,

**Appendix Vol. II, Page 507**

103

1        did it have tires on it?

2            A.  Yes, there were a lot of tires

3        there.

4            Q.  What did U Lock do to improve this

5        property from 2015 to 2020?

6            A.  I apologize, can you repeat that

7        question?

8            Q.  What did U Lock do to improve the

9        property from 2015 to 2020?

10           A.  No.

11               MR. SLONE:  Where are we -- where

12       are we going with this?  Just give me a

13       heads-up.

14               MS. SHANNI SNYDER:  I only -- I

15       only have -- I only have a few more

16       questions, but I'm trying to determine

17       whether Christine Biros and the Biros

18       insurance trust are co-debtors or insiders

19       of U Lock.

20               MR. SLONE:  Okay, you can ask a

21       few more questions.

22               MS. BIROS:  I think that's

23       already been determined, so --

24           A.  I'll answer pretty quickly.  We did

25       everything there, from changing light bulbs

341 (a) MEETING OF CREDITORS  -  9/9/2022

104

1        to electrical service to guide wires, over a

2        couple hundred tons of substrate for the

3        parking lot.  We fixed garage doors.  We had

4        garage door openers installed.  We met with

5        tenants.  Developed roads to go down below,

6        a road going up to the highway.  We did --

7        we did all, you know, all kind of stuff.  We

8        removed a lot of the garbage from there,

9        cleaned up tires, recycled things.

10            There was dozens and dozens of TV's and

11       different things there.  So the list is

12       quite extensive, but I'll keep it brief

13       since we want to move on here.  So, but,

14       yeah, anything that was entailed down there,

15       we did the work.  I did a lot of work

16       personally.

17            Q.  Okay, I only have a few more

18       questions.  U Lock had me watching its

19       Dropcamera; isn't that correct?

20            A.  Yes.

21            Q.  U Lock never paid me anything; isn't

22       that correct?

23            A.  That's correct.

24            Q.  Did Christine Biros know I was

25       helping?

341 (a) MEETING OF CREDITORS  -  9/9/2022

105

1          A.  Yes, she knew every step of the way,

2     every --

3          Q.  Did you tell her during your weekly

4     meetings?

5          A.  Yes.  I went over everything.

6          Q.  And you considered my work to be a

7     favor; isn't that right?

8          A.  Yes, at the time.

9          Q.  You called it sisterly love; isn't

10    that right?

11         A.  Oh, something like that.  I think

12    Kash used those words.

13         Q.  And Christine Biros didn't object to

14    me doing this work, did she?  When I sued

15    you, someone handed you the summons; isn't

16    that right?

17         A.  That's correct.

18         Q.  You knew about the lawsuit, but you

19    didn't answer it; right?

20         A.  Yes.

21         Q.  Did I discuss the lawsuit with you?

22         A.  No.

23         Q.  Did I ask you not to hire an

24    attorney?

25              MR. OTTO:  I'm sorry, I didn't

106

1        hear the answer.  I'm sorry, what?

2              A.   I'm sorry.

3              Q.   Did I discuss the lawsuit --

4                   MR. OTTO:   What was the answer to

5        your first question?  Did you discuss the

6        lawsuit --

7              A.   No, I did not.

8                   MR. OTTO:   -- with Ms. Snyder?

9              A.   I did not discuss the lawsuit.  I

10       did not discuss the lawsuit with her.

11                  MR. OTTO:   Okay.

12             Q.   Did I ask you not to hire an

13       attorney?

14             A.   No.

15             Q.   Did I tell you to default?

16             A.   No.

17                  MS. SHANNI SNYDER:   That's all my

18       questions.

19                  MR. SLONE:   Okay, thank you.

20       Okay.

21                  MS. SHANNI SNYDER:   You're

22       welcome.

23                  MR. SLONE:   I will hold the

24       meeting open for the possible questions for

25       Kash Snyder, or if you want to schedule a

107

1      2004 Examination, let me know.  And let me

2      know when Mr. Snyder, Kash Snyder would be

3      available, and then we'll get something

4      scheduled.  Any other questions?

5              MR. GEORGE SNYDER:  Okay, Mr. --

6      and also, Mr. Slone, if there's some of

7      those things, I could probably get some

8      answers for some things either maybe by

9      phone with Kash or I could, you know, look,

10     look for some answers for some of the things

11     (Inaudible) might be -- might have been

12     omitted today.

13             MR. SLONE:  Well, get, all the

14     things that have been asked for, get that

15     information either filed or sent to me and

16     then, then we'll see what we're going to do

17     with -- when we're going to schedule Kash

18     Snyder.

19             MR. GEORGE SNYDER:  Okay, sounds

20     --

21             MR. SLONE:  Okay.

22             MS. BIROS:  Mr. Slone, Christine

23     Biros here.  I have a question.

24             MR. SLONE:  Yes.

25             MS. BIROS:  I just want -- I just

108

```
 1        want it on the record that most of this that

 2        I just heard is not correct and I knew

 3        nothing about (Inaudible).

 4                MR. SLONE:  Okay, well, we're --

 5        this is only to ask questions of the

 6        representative of U Lock.

 7                MS. BIROS:  Okay.

 8                MR. SLONE:  We're not -- we're

 9        not trying the case here.

10                MS. BIROS:  Okay.

11                MR. SLONE:  But your comments are

12        received.  So we're -- I'm going to -- I'm

13        going to close the -- I'm going to stop the

14        recording now and we'll reschedule later.

15        Thank you. (End of recording.)

16

17

18

19

20

21

22

23

24

25
```

109

```
 1

 2

 3                  C E R T I F I C A T E

 4

 5       I, Mary J. Carney, a Court Reporter and Notary

 6  Public in and for the Commonwealth of Pennsylvania,

 7  do hereby certify that the foregoing is a true and

 8  correct transcription of the recorded proceedings of

 9  the 341(a) Meeting and constitutes a true record.

10

11  This 27th day of January, 2023.

12

13

14  _____
                 Notary Public
15

16

17

18

19

20

21

22

23

24

25
```

Case 22-20823-GLT Doc 337 Filed 02/24/2025 Entered 02/24/2025 Desc
Exhibit A    Page 111 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 110

**A**

**ABC** 61:7
**able** 55:3 76:2
**absolutely** 48:15
**accepted** 56:12
**access** 72:16 73:7
  76:1,1 80:20
  81:5 84:6
**accessible** 80:23
**account** 76:9 94:5
  96:23 97:8
**accountant** 17:1
  17:25
**accounts** 70:7
**Accredited** 13:10
  13:14,21
**accumulation**
  38:3
**accurate** 92:11
**accurately** 6:4
**acres** 8:3
**action** 7:17 33:15
  43:20 44:5,6
  71:7
**actions** 75:17
**administrative**
  37:18
**advertising** 31:20
**aerial** 52:16,18
  53:11
**afternoon** 35:23
**ago** 51:4 62:20
  85:14 86:13
**agree** 23:12 85:10
**agreed** 60:19
**agreement** 21:5
  21:18 30:21
  31:8 33:17
  55:23 56:11
  85:14 87:22,23
**ahead** 68:25
  71:13 94:3
  101:4
**alleged** 26:6
**Allen** 2:9 4:5 10:2

11:6,8,9,22,25
  12:1,8,10 19:13
  35:13 68:4,4,5
  68:21
**Allen's** 46:10
  68:11
**allowed** 48:19,21
  84:5
**allows** 80:24
**amend** 25:5
**amended** 14:23
  15:2
**amount** 29:14
  64:6 67:22
**Andy** 72:14 83:14
**answer** 39:6
  43:10,12 44:16
  44:24 46:8,15
  46:20 59:8
  63:11,16 66:25
  67:2,8 76:11
  77:15,25 92:17
  95:19 103:24
  105:19 106:1,4
**answered** 40:1
  57:14 67:17
  70:8 92:2 101:8
**answering** 42:15
  96:8 98:4
**answers** 107:8,10
**anticipate** 18:3
  19:22
**anybody** 9:19
  47:20 68:2
  69:18,25 71:19
  72:8,9 83:12
  86:4,4
**anyway** 43:25
**anyways** 62:11
**apiece** 51:17
**apologies** 5:7
**apologize** 29:1
  103:6
**apparently** 56:1
  56:9,10 72:5

**appealed** 81:20
**appear** 24:14
  51:11
**applied** 86:20
**approval** 62:12
**approximately**
  9:18 19:19
**area** 63:2
**arguing** 48:9
**arm's** 48:9,17
  49:15
**arrangement**
  27:19
**arrangements**
  54:7 57:19
**asked** 18:14,15
  42:16 46:3 52:2
  62:15,18,19
  65:23,24 66:14
  66:22,23 91:25
  107:14
**asking** 18:16
  36:22 42:19,20
  42:23 46:2,10
  60:11 77:14
  102:9
**aspect** 91:15
**assert** 48:6
**asserting** 34:4
**assertion** 34:8
**assets** 6:5,17 9:5
  9:14 37:14
**assigned** 51:8
**associated** 86:5
**assume** 83:24
  88:3
**assure** 62:17 87:4
**attempting** 71:2
**attention** 6:12
**attorney** 4:6
  17:16 20:16
  21:23 40:11
  45:8 99:20,21
  105:24 106:13
**authorized** 94:11

**available** 60:16
  73:24 79:23
  80:4 93:1 107:3
**aware** 21:25
  39:21 62:6
  82:17 86:5

**B**

**back** 7:4 11:12,14
  11:16,21 12:2,8
  12:12 13:24
  18:10,14 19:17
  19:18 22:9
  28:20 36:4,9,17
  39:25 53:2
  55:10 63:7
  68:21,23 69:6
  69:15 74:22,24
  75:4,18 83:8,23
  86:18 89:9
  100:21 101:17
**background**
  35:10
**backhoes** 83:18
**backup** 12:10
**bad** 83:2
**bank** 17:21,25
  94:12 96:22
  97:8
**bankruptcy** 1:1,2
  8:17,21,24 9:16
  14:4,9 15:4
  16:8 17:22
  20:17 34:19
  39:1,23 44:13
  44:25 46:1 47:4
  71:6,14 90:25
**bar** 31:2,10 32:15
  98:8,10,12,19
  98:20,22
**basis** 64:11
**bees** 83:15
**beginning** 31:18
  31:23 73:21
  74:23 89:24

100:18 101:5
**begs** 67:18
**behalf** 5:3,5 26:4
  66:8
**believe** 20:22
  39:13 42:4 50:8
  51:1,3 52:15
  53:20 55:16,20
  56:22 57:17
  58:23 69:24
  70:1 78:8,10,25
  78:25 79:10
  80:9,13,19
  84:21 90:2,18
  97:5 100:11,13
  100:17 102:2
**belonged** 52:20
  52:23 53:10
  100:23 101:6,11
**best** 39:13
**better** 63:16
  81:22
**big** 53:4,5
**bill** 10:7,11 78:10
  94:1,2 102:17
**billed** 44:12
**Biros** 2:7 5:4,5,8
  7:10 8:5 13:24
  14:7,19 17:11
  17:11 30:17
  32:8 38:7,19,23
  42:5 43:20
  48:17 49:10,17
  49:18,18,22
  54:24 55:12
  58:21 70:2
  72:13 74:10
  75:16 78:18
  83:4,13,14,14
  83:14,15 84:8
  94:1,4,4 96:7,11
  96:18 97:13,19
  97:20,22 99:13
  99:23 100:3,4
  100:11,13,23

341 (a) MEETING OF CREDITORS  -  9/9/2022

101:7,18,25
102:5,12,16,19
103:17,17,22
104:24 105:13
107:22,23,25
108:7,10
**Biros'** 99:20,21
**bit** 39:18 45:4
88:16 99:8
101:12
**blank** 11:13
**blocked** 83:6
**blocking** 72:16
**board** 46:13
**Bob** 11:4 32:8
44:19 49:18
72:13 83:13
100:14
**bona** 47:23
**bonuses** 76:25
**books** 26:14
75:24 76:9
**borrowed** 87:21
**bother** 47:9,14
**bottom** 77:17
**bought** 97:7
**box** 51:1
**brakes** 101:15
**brand** 82:17
**brief** 24:25
104:12
**bring** 6:12 101:16
**broken** 84:11
**brother** 13:1
16:15 31:3
47:15 48:11
59:4,6,21 65:2
65:24 66:15
70:1,3,15,16
73:19,22 82:22
86:24 91:15
92:17 94:14
**brother's** 84:15
**brought** 7:6,7
12:21 53:17

**building** 25:16
42:12,22,24
82:20
**bulbs** 103:25
**business** 6:16,20
7:1 13:11,14
43:25 58:16
87:8,11 98:7,13
99:1

**C**

**C** 109:3,3
**C-A-R-L** 20:2
**cable** 78:11,12
79:9
**Caesar's** 31:2
98:21 99:1
**call** 4:1 11:1,2,3
11:12,14,16
12:2 32:16 36:3
36:9 41:21
56:23 68:9,10
88:24
**called** 13:10,13
57:18 81:12
86:14,16 105:9
**calling** 11:5,20
100:4
**camera** 65:5
78:13 79:19
80:3,14,17 81:6
81:9,15,18,21
82:2
**cameras** 78:16,17
78:21,24 79:1,8
80:12 81:5
**car** 82:10,17,22
82:23,23 83:7,9
84:15,24 100:7
100:10,23 101:6
**Carney** 109:5
**cars** 84:18
**case** 4:2,3 6:18
8:14 20:24
36:18 38:20

44:3 45:6 47:6
47:24 48:9,16
58:22 75:15
76:10,23 108:9
**cases** 22:9 35:24
**cash** 56:12
**catch-up** 70:15
92:4
**cause** 7:16 11:12
12:21 15:23
18:3 27:14
41:20 45:21
50:12 54:24
57:4,12 70:15
72:13 76:17
80:8
**cell** 11:2,16 12:6
82:3
**cellular** 82:4
**certainly** 32:13
40:17 56:7
**certificates** 30:24
**certify** 109:7
**changed** 23:5
25:6
**changes** 52:4
**changing** 103:25
**Chapter** 1:3
89:15 91:22
**charge** 23:3
**charging** 46:11
**check** 9:10 33:11
33:12 58:9
**checking** 94:5
**checks** 94:12
**child** 49:11,13,13
**Christine** 2:7 5:3
7:10 17:11 23:2
23:3 30:17 31:4
31:22 32:7,15
38:7,23 42:5
48:17 71:17,23
72:14 74:4,10
74:16 83:13
93:24 96:6,18

97:13,19,22
98:2,3,5 99:6,13
102:5,12,16,19
103:17 104:24
105:13 107:22
**circuit** 79:21 80:4
**circumstances**
48:8
**citation** 39:20,24
40:4,8
**cited** 38:1,16,17
38:24,24
**Citizens** 94:11
**claim** 7:16 8:6
22:25 26:6
32:23 35:1 44:3
46:7 63:9 67:20
81:18
**claimed** 31:17
56:8
**claiming** 23:18
23:21,22 53:6
54:16
**claims** 9:15 47:18
64:9 65:21 81:4
**clarify** 24:4 40:17
45:25 57:7,12
98:3
**clean** 40:5
**cleaned** 25:13,15
39:14,15 104:9
**clear** 66:1
**clearly** 57:15
84:16
**client** 32:12 78:22
**close** 24:21 33:2
49:16,17,17
93:2,6,7,15,17
108:13
**closed** 79:21
**closed-** 80:3
**closed-circuit**
80:7 81:6
**closing** 90:1
**co-debtors**

103:18
**code** 38:7
**collect** 70:24
71:15 74:3
**collected** 7:15
56:2 58:2
**come** 22:9,25
46:24 55:2 63:7
73:17 83:4
86:18 90:21
98:6
**coming** 14:25
71:20
**comment** 38:25
**comments** 108:11
**Commissioner**
42:6,17
**Commonwealth**
109:6
**communicated**
61:9
**communications**
72:22
**company** 6:6,16
7:2,12,23 9:25
12:16 13:10,13
14:4,11 15:3,7
16:25 17:3,6
19:20 20:22,23
22:25 23:15
24:5,8,11 29:3,4
29:12 31:9 34:5
48:22 69:19
74:9 100:7,10
100:23 101:6
**company's** 28:6
53:20
**compensation**
23:9,25 24:15
25:19,24 26:12
27:8 28:12
76:25 77:21
**complain** 73:5
**complete** 90:13
91:22 92:8

Case 22-20823-GLT Doc 337 Filed 02/24/23 Entered 02/24/23 09:42:45 Desc
Exhibit A    Page 113 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 112

completely 61:15
concede 64:5
concerned 18:4
confirm 37:2
confused 57:13
conjunction 51:9
connection 65:25
consent 79:17
consider 21:3,11
  21:15 27:17
  28:4,10 40:4
  47:25 48:1,5
  64:23 99:23
considered
  101:25 105:6
Consolidators
  13:11,14
constitutes 109:9
constructive 25:9
contact 54:6,20
  54:22 85:23
contacted 41:10
  70:21
contained 6:2
containers 50:2,5
  50:10,16,19,25
  51:11,17,24,24
  52:7,17 85:6,13
contention 83:4
contest 8:11,18
contested 8:21
continuation
  12:13 36:19,24
  69:3 93:8
continue 9:12
  47:6 75:17
  92:24
continuous 64:11
continuously
  65:21
contractors 15:24
  22:19 26:16
  64:6
control 14:16,17
  23:15,20 30:18

79:18,21 80:7
  91:12,14 99:24
  102:4
controlled 24:11
  90:23,24
controlling 14:16
  25:7
convert 60:18,20
  62:10
copies 15:20
copy 5:21 29:8
Corp 13:11,14
corporate 33:14
  60:23
corporation
  12:20 21:24
  72:4
correct 8:7,10,12
  30:6 37:4,10,13
  51:5 59:2,17,20
  61:7,8,15 62:5
  63:4 69:8,16,17
  71:1 77:3,11,15
  78:1 79:25 80:1
  80:15 87:24
  88:5,11,17
  94:17 95:23
  97:12 100:8
  104:19,22,23
  105:17 108:2
  109:8
correctly 66:14
counsel 65:9
  75:20
county 48:14
couple 22:22
  28:12 37:25
  42:14 50:3,4
  54:9 56:5 57:21
  66:13 70:19
  85:2 86:18 89:1
  89:16 104:2
course 6:16
court 1:1 20:21
  27:25 32:12

39:1 41:4 43:19
  44:5 45:12,16
  48:25 51:16
  65:2,24 66:7
  67:19 71:20
  74:20 75:9,11
  81:19 83:23
  102:6,13,24
  109:5
cover 32:25 88:13
  88:15
covered 33:5
  83:10
covers 65:22
crazy 75:7
creditor 45:22,23
creditors 1:13
  4:24 11:5 13:22
  22:4
credits 77:1
current 48:1 88:4
currently 13:25
  39:24 59:19
  82:9
customers 25:14
cut 25:15

**D**
daily 96:20
damage 73:1
damaged 54:25
  55:12
damaging 83:19
date 29:19,19
  37:2 39:9 93:9
  97:3
day 31:6 42:3
  43:9 54:23 68:7
  97:25 109:11
days 19:23 42:14
  54:9 57:21 68:7
dealing 85:20
dealt 57:16 73:19
debtor 1:8 14:18
  37:21 40:22

76:23
debtor's 76:9
debtors 14:14
December 20:10
  37:3
deciding 48:11
decisions 100:5
deeds 50:1
default 20:22
  27:24 48:22,23
  49:4 75:9
  106:15
defend 20:24
  21:12,22 45:7
  47:10 63:13
  66:8 67:19
defense 47:12,23
  48:6
defenses 9:15,16
  21:1 47:11
denied 31:22
denies 32:12
department 41:5
  41:10,15,16,21
  42:2,13,25
deposition 32:6,7
describe 25:1
destroying 72:15
details 32:10
  81:17
determination
  38:19
determine 103:16
determined
  103:23
develop 96:12
  97:10
developed 25:14
  64:25 104:5
dialing 11:3,23
  68:12
different 15:11
  24:6,7 26:3
  28:14 61:16,18
  61:24 73:5

98:23,24 104:11
difficult 72:13
  83:11 84:25
direct 54:19
directing 31:9
direction 17:13
  25:10
directors 14:15
disagree 84:25
disagreeing 26:1
disappeared 11:7
  11:10
disbursed 20:13
discharged 74:1
disclose 40:2
  58:22
disclosure 41:1
disconnected
  10:16 68:14
  69:2
discovery 65:7
  67:12
discretion 93:5
discuss 40:10
  96:6,17 98:15
  105:21 106:3,5
  106:9,10
discussed 40:12
  70:18 96:19
  99:2
District 1:1 27:25
  81:19
dividends 61:25
  62:1,1 78:5
docket 75:19
document 37:24
  65:10 77:9
documentation
  31:13
documents 6:4,9
  105:14
doing 21:5 65:4
  105:14
Doll 58:5
dollars 26:24
  27:11 28:13

55:2
**door** 104:4
**doors** 104:3
**doubled** 66:7
**dozen** 15:10
22:21 41:17
**dozens** 104:10,10
**dozers** 73:8 83:17
**drag** 22:7
**draws** 76:25
**drink** 33:21 98:9
98:9
**drive** 82:12
**driving** 41:13
65:5
**Dropcam** 81:12
**Dropcamera**
104:19

**E**

**E** 109:3,3
**earlier** 22:17 45:5
47:7 90:20 99:7
**easy** 47:11
**effort** 17:23 70:24
**either** 24:9 30:17
42:1 56:12
75:16 93:10,16
107:8,15
**elaborate** 12:20
**electric** 78:8
**electrical** 25:17
104:1
**else's** 35:12 79:12
79:16
**employee** 21:4,12
21:17 24:17
26:6 27:18 28:5
28:10 47:13
48:1,6 64:23
66:2,5,11
**employees** 15:3,7
15:16 16:1
22:18 24:13,19
26:5,13,14,17

47:17 63:3,8,15
63:19,23 64:1
64:13,14 65:11
65:12 67:13,14
**employment**
47:20 48:10
**enabled** 75:6
**enforcement** 38:7
**entailed** 104:14
**entered** 55:22
56:11 87:22,23
**entitled** 27:6 66:5
**environmental**
37:17 39:16
**equipment** 37:3
53:4,6 87:24
88:8,18 89:4,7
**Eric** 89:21
**errors** 6:11
**escrow** 90:3
**Esquire** 2:3,5,6,9
**estate** 7:24,24
48:13 51:8,9,11
**estates** 50:1 52:25
**estimate** 16:19
**event** 42:2,7,13
43:1
**everybody** 9:11
10:4 72:15
83:16
**evidence** 30:19
31:7,16,17 32:5
47:16 62:20
83:24
**exact** 29:14 33:3
78:20
**exactly** 91:24
96:24 100:12
**Examination** 3:6
3:7,8,9 5:16
12:13 22:14
29:24 36:24
69:3 92:20
93:10 95:14
107:1

**example** 72:11
**excavator** 88:25
**excuse** 4:9 32:20
32:20 38:15
84:12 95:2
**exercised** 77:2
**EXHIBITS** 3:12
**existence** 31:22
**expect** 7:2,12
**experience** 72:9
**explain** 23:17
50:10
**explained** 63:20
**explanation**
76:12
**extended** 64:10
**extensive** 104:12

**F**

**F** 109:3
**face** 73:16 79:2
**facility** 59:22
73:25 76:4
84:21 87:2
101:10
**fact** 31:19 41:4
41:10 53:14
55:8 61:12 66:4
89:25 90:22
**fairly** 92:16
**familiar** 6:1
**family** 54:24
72:14 83:13
100:11,14,23
101:7,18
**far** 18:16 19:17
30:20,20 31:8
44:13 52:11
89:17 99:5,6
**fashion** 66:3
**father** 32:8
**favor** 64:24 105:7
**Federal** 20:20
66:7
**feel** 83:2 100:3

**fees** 28:8 44:4
**fide** 47:23
**fight** 28:7
**figured** 49:1
**file** 14:22 15:1
17:3,6,14 18:2
24:25 26:5
40:15 48:12
87:19
**filed** 8:16,16,17
15:4 17:22
20:21 33:15
39:2 40:24 44:2
44:3 45:6 76:10
90:16 91:1
107:15
**filing** 6:18 8:13
12:25 67:6
76:22
**fill** 59:4
**final** 38:18
**find** 28:23 45:21
77:16
**fine** 36:6 39:21
40:8
**finish** 42:15
84:12 96:8 98:4
**fire** 41:5,10,12,14
41:15,21 42:2
42:13,25
**firms** 76:8
**first** 22:16 37:1
38:1 51:16 52:1
62:15 106:5
**five** 26:24 27:11
**fixed** 25:17 104:3
**flip-** 59:10
**flopped** 59:11
**follow** 21:9 77:7
**foot** 101:21
**footage** 55:13
**foreclosing** 75:5
**foregoing** 109:7
**form** 76:24
**formed** 96:5,16

**forward** 99:18
**four** 6:18 15:21
16:5 18:11,13
27:12 63:2 80:5
**four-year** 63:9
64:11 81:3
**fraudulent** 28:1
**free** 46:13,25
**friend** 89:16
**friendship** 90:8
90:10
**front** 28:22 33:3
82:19 85:25
**fulfill** 30:11
**further** 40:21
45:4 94:23,25

**G**

**game** 25:20
**garage** 104:3,4
**garbage** 38:4
39:14,18 40:5
83:21 104:8
**garbled** 61:21
**gather** 62:22
**gathering** 17:25
**general** 14:15
17:16
**George** 2:4 3:5
4:9,10,22 5:16
10:2 11:6 12:13
13:4 22:14
29:24 36:24
50:21 51:12
57:1 61:1 65:10
68:5,22 69:1,3
94:8,13,16,19
95:14,16 102:9
107:5,19
**getting** 19:22
46:14 67:15
72:17
**girl** 56:19 57:8
**give** 4:20 6:17
15:20 22:10

Case 2:20-bk-24234-GLT Doc 337 Filed 02/24/2025 Entered 02/24/2025 Desc
Exhibit A    Page 115 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 114

28:20,21 29:2
38:14 74:18
79:16 92:11
103:12
**given** 47:15 90:12
**giving** 95:7
**Glenn** 53:6
**GLT** 36:19
**go** 18:10 21:8
35:22,23 39:25
41:25 42:11
43:2 45:4,11
47:9,21 48:25
49:1,3 68:25
71:13 74:6
75:18 79:22
94:3 95:13
101:4 104:5
**goes** 44:13 52:11
**going** 4:24 12:19
13:23 18:2 21:9
22:3,7,7 32:9
35:21,22 38:13
38:14 44:7,14
45:16 53:2 55:5
56:25 57:2,4,5
71:24 72:18,19
72:24 74:1,18
87:18 89:9
92:22 94:24
95:9 103:12
104:6 107:16,17
108:12,13,13
95:12
**good** 36:12 68:23
95:12
**governmental**
37:20,22 40:22
41:3 43:11
**grandfathered**
87:1,6
**grass** 25:15
**great** 5:9 12:9
20:14 72:11
**greater** 34:2
**gross** 16:9

**ground** 21:21
**guess** 16:20 28:17
30:8 32:2 63:11
92:12
**guessing** 84:20
**guide** 104:1
**guy** 53:7 58:17
**guys** 10:2 11:9
41:11

**H**

**H** 2:3
**half** 15:10 22:21
**hand** 4:19
**handed** 105:15
**handful** 89:1
**handled** 86:24
**hang** 9:7 68:17
68:20
**happen** 80:24
**happened** 10:13
11:13 32:15
42:20,21 98:8
**harassing** 83:16
**hard** 82:12
**hazardous** 37:23
39:17 40:23
43:12
**he'll** 46:12
**heads-up** 103:13
**hear** 65:18 68:23
68:24 71:8 94:7
97:3 100:25
101:1 106:1
**heard** 22:20
35:25 81:19
108:2
**hearing** 51:16
52:1
**heavy** 53:4,6
**held** 33:16 93:18
**hello** 9:19 10:3
11:22 68:2,18
95:22
**help** 26:25 97:14

**helped** 28:11
66:22
**helpful** 29:7
**helping** 15:9,10
22:21 27:19
66:18 104:25
**Henry** 90:2
**hey** 88:25
**hi** 5:2 11:4,8
73:18
**high-resolution**
81:25
**highway** 41:13
104:6
**hire** 105:23
106:12
**hold** 12:4 43:22
60:2 68:17 77:8
106:23
**holding** 17:18
**homes** 101:21
**Honda** 82:14,15
82:15
**hopefully** 57:16
**hours** 15:13
22:22 98:18
**hundred** 26:24
27:11 28:13
104:2
**Huntingdon** 38:2
38:8,25 41:25
42:11 87:5,9,12

**I**

**idea** 10:20 11:12
47:3 97:9
**identical** 89:8,13
**immediately**
55:11 58:9
**important** 92:16
**improve** 103:4,8
**inaccessible** 55:1
**Inaudible** 8:19,25
9:3 11:13 16:19
16:24 19:22

21:16 25:20,24
27:22 29:2,10
30:9 32:5,19,22
33:23 34:24
35:3,5 40:17,19
42:9,18,22 47:3
48:4,20 49:5,7,8
49:23 51:14
52:5 53:15
54:13 55:4,13
55:23,25 56:22
57:22 59:14
60:22 62:25
65:6,13,16,19
66:9,20 67:3,17
71:5 72:1,20
73:10 74:7
75:21 76:6,13
77:24 78:19
79:4,6,14 80:21
81:2,16 82:7
83:21 84:3,10
84:14 85:4 86:8
87:7,18 89:12
91:20 95:8 96:4
97:4 99:10
100:20 101:2,20
102:22,24
107:11 108:3
**inception** 14:20
17:18
**including** 76:24
**incorporated**
9:17,18,25
12:16 86:2
**incorrect** 34:8
35:2 43:13
51:13 66:21
**independent** 64:5
**INDEX** 3:1
**indicted** 17:15
**indictment** 32:4
**individual** 28:21
32:14 56:16
**individuals** 76:8

**inform** 33:18
**information** 6:2
19:10 20:11
29:5,18 79:7
85:23 92:18
107:15
**informational**
5:21
**informed** 62:4,21
**initial** 41:12
**initiated** 38:23
**insider** 76:23
**insiders** 103:18
**inspected** 101:15
**installed** 104:4
**instigated** 39:4
**institution** 76:17
**insurance** 85:16
85:17 103:18
**interest** 74:25
**interference** 84:8
**interim** 4:5
**interruption**
30:14
**INTRODUCED**
3:12
**involuntary** 8:8
8:17,24
**involved** 37:16,18
54:11 74:16,16
75:18
**involvement** 67:5
67:7 89:20
**irrelevant** 34:18
43:24
**IRS** 64:19
**issue** 32:11 39:16
62:1
**issued** 13:16,16
15:16 30:23
39:5
**issues** 24:7
**items** 51:8

**J**

Case 22-20034-GLT Doc 337 Filed 02/24/2025 Entered 02/24/2025 Desc
Exhibit A    Page 116 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 115

**J** 2:9 109:5
**January** 109:11
**Jesus** 10:18
**jobs** 64:7
**John** 14:6,13,19
  17:11 30:17
  31:5,21,21 32:6
  32:15 48:17
  83:15 96:6,18
  97:19,22,25
  99:8,9 100:14
  101:13
**Journal** 31:21
**Judge** 18:3
**judgment** 20:23
  27:24 47:10
  48:12,22,23
  49:4 75:10,11
**judicial** 37:18
**July** 40:24 84:22
  97:7
**jump** 53:16 74:10
**June** 38:17 39:10
  60:25 84:21

**K**

**Kash** 13:1,2
  14:21 30:8 34:1
  34:6,10,22 35:3
  58:23,24 59:7
  59:11,13,22
  60:15 61:2
  64:16 66:15
  70:1 75:25
  76:15 82:22
  84:11,20,23
  86:23,24 91:19
  91:21 92:17,20
  92:25 93:9
  94:13,15,18
  105:12 106:25
  107:2,9,17
**Kash's** 82:23
**keep** 31:12 36:8
  70:11 75:1 83:1

83:3 88:4 95:1
  96:11 104:12
**kept** 27:21
**kicked** 83:5,5
**kind** 8:24 12:21
  16:19 17:17
  21:8 25:12 46:9
  53:8 70:15
  72:17 78:17
  81:14,24 86:25
  87:2 91:15 99:6
  104:7
**knew** 31:25 62:18
  62:19,19 90:17
  101:9 105:1,18
  108:2
**know** 9:5 10:1,21
  13:23 14:4,8,23
  15:11,13,24
  16:13,16 17:14
  21:4,6,7,20
  24:10,14 25:12
  25:14,23,23
  28:25 29:8,14
  31:14,19 32:10
  33:8 34:17
  35:15 38:11
  41:7 42:17 46:5
  46:18,21 48:23
  52:3 53:5 54:8
  55:22 57:2,4,15
  58:11,12 59:23
  60:13,19 62:23
  63:16 64:21
  65:2,6 70:16,16
  70:21 71:20
  72:23 73:3,15
  73:15,19 74:4
  74:17 75:8 76:3
  77:20 78:18,20
  80:8,25 81:1,22
  82:7 83:3,8
  84:22 85:12,15
  86:2,11,13,14
  87:1 88:19,20

89:17 90:16,22
  91:5,5,9,24 92:5
  92:11 93:23
  96:11 98:24
  99:16 104:7,24
  107:1,2,9
**knowledge** 58:19
**known** 49:10,11
  49:12
**knows** 62:17
**Kubota** 7:6 18:20
  19:12 20:7
  28:18,19 37:2
  67:24 69:7
  87:20 88:7,10

**L**

**lady** 72:11
**land** 25:15
**Lavesky** 86:12
**Lavinsky** 85:21
  86:10
**law** 30:3 31:20
**lawsuit** 8:16
  17:19 20:20
  21:25 23:6
  31:18,20 47:2
  65:19 99:17,20
  100:2,3 101:25
  102:3 105:18,21
  106:3,6,9,10
**leave** 23:25 93:4
**left** 36:22 53:10
  85:12
**legal** 28:8,8 44:10
  44:22 66:23
  67:6 75:15
**length** 48:9,17
  49:15
**lengthy** 95:10
**let's** 18:17 67:19
  70:5 71:10
  90:12
**liabilities** 6:5
  37:15

**liability** 61:14
**liable** 37:21
**lien** 48:13
**light** 90:22
  103:25
**limit** 22:7
**limited** 15:12
**line** 5:8 10:3,5,10
  10:12 12:11
**list** 14:2,5,14
  34:15 70:9 76:7
  90:13 91:2,23
  92:8 104:11
**listed** 7:25 13:22
  14:18,21,21,22
  23:1 25:2 33:25
  34:12 62:3
**little** 39:18 45:4
  61:21 81:13
  99:7,8
**Liz** 49:18
**loan** 67:21 69:12
  69:13,19 70:3
  75:3,6 87:22,23
  88:4 90:4
**loaned** 19:19
  67:22 89:22,23
**loans** 18:23 19:8
  77:1,1,21
**located** 78:16
  82:9
**location** 79:8
**locations** 78:21
**Lock** 1:7 4:2,6,8
  5:19 9:17 11:6
  18:23 22:18
  24:9,18 26:2,4
  30:2,18,19
  36:18 37:17
  38:1,16,20,24
  43:20 44:8,10
  44:21 45:6,9,10
  45:22,23 46:6
  47:17 49:25
  50:17 51:12

52:9,12 58:22
  59:17,20 60:10
  60:24 62:16,16
  64:22 65:11,25
  66:24 67:1,8,9
  67:13,21,21,22
  69:14 70:7
  78:10 80:12,15
  86:21 87:22
  88:3,10,12 89:5
  89:18,21,23
  91:16,17 94:5
  94:12 95:17,25
  96:2,5,11,12,17
  96:22 97:9
  98:15 99:2,24
  100:5,7,15
  101:19 102:1,6
  102:10,10,13,23
  102:25 103:4,8
  103:19 104:18
  104:21 108:6
**Lock's** 66:8 80:11
**lockers** 25:13
  91:3
**logical** 91:1
**long** 55:14,14,14
  74:8
**longer** 58:6
**look** 53:1 75:18
  82:2 107:9,10
**looked** 86:17
**looking** 17:24
  77:4
**loop** 24:21
**Loretta** 57:8,18
  58:6
**lost** 47:22
**lot** 41:14 52:19
  53:4,5 58:1
  70:22 71:3,3
  73:20 78:19
  84:7 85:1 88:12
  98:25 103:2
  104:3,8,15

341 (a) MEETING OF CREDITORS  -  9/9/2022

**love** 65:4 66:18
74:15 105:9

## M

**M-C-** 20:1
**machine** 88:22,23
89:13,18
**machinery** 87:21
**maintain** 63:10
**maintains** 75:22
75:22,23
**maintenance**
25:16 101:13
**majority** 13:16
33:22,23 96:1
**making** 24:24
72:19 100:4,5
**man** 52:13
**managing** 14:15
**Martin** 89:21
90:4,4
**Mary** 109:5
**Maryland** 53:11
**match** 26:9
**material** 37:23
39:17 43:12
**materials** 40:23
**matter** 4:21
45:15
**McCarl** 20:1
**mean** 8:16,20
24:8 30:21
31:11 32:17
41:8 48:16
52:19 53:2
61:19 63:18,23
81:15 82:1 83:2
84:1 87:25 89:9
102:8
**means** 46:12
**meant** 26:12,13
78:3
**mechanism** 92:23
**medical** 59:22
76:4

**meet** 31:4 58:12
86:16 98:7,22
**meeting** 1:13 4:2
4:4 11:5 32:16
33:18,19 34:14
36:20 60:15,18
60:24 73:23
92:25 93:7,18
93:18 95:1
98:14 106:24
109:9
**meetings** 31:1,5
97:21 98:16
99:3,4,13,19
105:4
**members** 14:15
14:16 59:5
**memory** 55:21
**mention** 25:4
102:21
**mentioned** 7:5
18:3,20 102:15
**met** 25:13 31:5
31:10,15 57:19
58:17 96:20
98:5,22,25 99:9
104:4
**metal** 50:25
**middle** 25:21
**Mike** 85:21 86:10
86:11
**million** 34:10,11
61:1,2,6
**mind** 49:8 86:9
**mine** 53:5 75:16
**mine's** 35:20
81:14,24
**minimum** 24:1
24:10 27:7
**minute** 7:5 38:15
83:20
**minutes** 22:10
31:12 34:13,13
95:10
**misleading** 53:14

**missing** 24:23
76:19
**misspoke** 41:19
**misstate** 75:17
**mistake** 40:16
**misunderstood**
41:9,18
**mobile** 101:21
**moment** 30:12
47:7
**money** 7:18 9:14
18:21 19:12,20
20:12,17 21:22
24:20 27:21
28:8 44:21
45:24 46:6
47:20 61:13,17
67:22 69:19,21
70:23 74:3,5,15
74:17,18,23,24
87:17 88:13,14
88:16 89:23
90:2 96:3,10,11
96:13 97:14
**monitor** 80:3,12
**month** 40:25 54:9
59:24 74:2
**months** 7:3,13
50:3,4 55:17
62:20 73:25
85:14 92:5
**Moore's** 90:2
**morning** 35:25
36:20 60:9 63:5
68:1
**motel's** 79:12
**mother** 49:18
**motion** 60:17,19
62:10
**move** 28:17 32:18
32:21 43:17
49:19 50:7 63:1
67:20 78:6
104:13
**moved** 84:7,17,20

85:14
**moving** 50:9,12
83:17 99:18
**Mowry** 53:6
**multiple** 80:16
**music** 10:24
12:10
**mute** 9:2 35:20

## N

**name** 4:25 28:23
29:4,4,20 52:13
53:20 71:18
73:16 96:6,17
98:20
**name's** 14:20
**named** 31:2 53:7
57:18 58:5
**names** 14:21
73:14
**nature** 43:6
**need** 18:2 43:8
48:12 101:12
**needed** 21:22
27:1 39:14
101:15
**negotiated** 56:17
56:24
**never** 23:8 27:15
30:23 37:22
41:2,9,21 44:12
45:14 49:8 55:7
56:1 57:19 58:2
58:17,17,17,18
62:4 64:20
70:10,23 86:20
102:15 104:21
**Nick** 52:14
**North** 38:2,8,24
41:25 42:11
87:5,9,12
**Notary** 109:5,14
**notified** 37:19,22
40:22 41:2,5
43:11

85:14
**notify** 62:7,24
**November** 20:10
37:6,7 55:20
**number** 7:7 33:3
34:2,12 47:16
50:2,5,14 68:12
86:15 92:15
**numbers** 51:2

## O

**object** 43:23 56:7
105:13
**Objection** 43:21
**obtained** 27:24
**obviously** 82:24
**occupancy** 86:21
**occurred** 42:14
**offered** 74:25
**offhand** 16:15
**office** 5:22 10:25
11:25 30:11
46:17 68:11
98:10
**officer** 4:12 23:9
23:25 26:12
27:8 38:8 95:17
**officers** 12:18,24
13:7 14:14 18:7
18:12 30:7
**Oh** 6:23,25 10:18
10:19 57:10
79:13 91:21
101:8 102:8
105:11
**okay** 4:11,15,17
4:23 5:6,9,12,15
5:18 6:15,25
7:9,21 9:8,12,13
9:23 10:4,13,21
11:3,14,17,20
11:22 12:4,9,10
12:12,15,19
14:24 15:1,18
15:22 16:5,8,21
16:25 19:13

Case 22-20263-GLT Doc 337 Filed 02/24/2023 Entered 02/24/2023 Desc
Case 22-20263-GLT Doc 337 Filed 02/24/2023 Page 118 of 124 Desc
Exhibit A    Page 118 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 117

20:8,11,14,20
22:3,12,24
24:25 26:10
27:5,9 28:17,24
29:7,21 30:15
33:14 34:20
36:8,10,17 37:1
37:9,11,11,14
38:21 39:6,12
45:1,3 46:22
52:2 56:21
57:25 59:15
60:7 61:9 63:7
64:7 67:18 69:1
69:18,23 70:5
76:21 78:13
80:2 82:6 85:19
86:20 88:3,7
90:12 93:11,22
94:18,24 95:7,9
95:13,16,24
96:16,22 99:2
100:22 103:20
104:17 106:11
106:19,20 107:5
107:19,21 108:4
108:7,10
**old** 52:13
**old-** 81:14
**old-fashioned**
81:24,25
**omissions** 6:11
**omitted** 107:12
**once** 21:6 27:19
**ones** 54:7,13
**open** 22:4 75:10
93:19 95:1
96:22 106:24
**openers** 104:4
**operable** 82:24
84:17
**operation** 6:20
**opinion** 27:23
**opposed** 52:8
**options** 77:2

**orange** 53:18
**order** 48:12 102:6
102:13
**ordered** 17:14
**ordinary** 6:15,19
**originally** 29:12
54:21
**Otto** 2:6 3:8 5:4
9:22,24 10:8,11
10:11 14:5
29:22,23,25
36:1,7,12,22,23
36:25 47:5 68:6
69:4 92:14,22
93:4,11,16,20
93:23 94:3,6,10
94:15,18,20
97:2 105:25
106:4,8,11
**outfits** 41:18
**outside** 6:19,24
**outstanding**
67:21 69:12
**owe** 7:18 23:3
44:9,10,14,21
45:24 46:6
47:20 61:25
**owed** 9:14 24:16
24:20 25:3
74:23
**owes** 24:9
**owned** 31:2 51:7
51:12 52:9,13
89:18 100:10
**owner** 23:23,24
24:5,5 26:2
62:16 98:13
**owners** 25:22
**ownership** 24:7
53:13
**owns** 14:10 50:21
61:1,2 80:12,14
80:19 82:13,21

─────── **P** ───────

**p.m** 36:10,21
**page** 3:6,7,8,9
77:6,8,8,10,16
**Pages** 37:24
**paid** 15:15 16:4
19:17,24 20:3
20:17 23:8
26:15 43:18
44:6 45:14
54:17 56:4,6,9
61:25 64:6 69:6
69:6 70:13,23
72:11 75:4
85:16,16,18
87:16 88:9
104:21
**pallets** 85:4
**paper** 19:14
**papers** 28:22
**Pardon** 21:13
46:19 49:7 56:3
57:11 59:18
83:25 87:10
**parking** 41:14
104:3
**part** 12:20 47:1
101:25
**particular** 89:18
**parties** 48:9
58:15
**partner** 14:20
15:1 23:4,13,14
23:16,19,22
26:1
**partners** 14:16
17:12 25:7,22
32:1,2 97:17
**partnership**
30:21
**parts** 67:4
**party** 54:10 58:12
**pattern** 17:18
**pause** 22:8
**paused** 99:17
**pay** 19:18 27:16

28:8 44:7 45:8
45:16 54:24
55:1,5,6,8,10
56:10,12 64:20
69:10 72:8,10
72:18 74:10,22
75:6 87:8,11,17
90:3,4 102:10
102:10,20
**paying** 56:7
**payment** 18:6
32:24 33:9 44:4
69:7 90:5 102:7
102:14
**payments** 18:11
18:16 70:10
78:4 88:4,15,16
**payroll** 63:15,19
63:24 64:2,13
64:15,18,19
**pays** 70:11
**PCB's** 41:1
**Pennsylvania** 1:1
30:3 109:6
**people** 14:17
15:10,19 22:21
28:11 62:23
63:25 64:3 72:8
73:7,11,20 74:3
74:6,15 83:6
86:8 91:4
**people's** 83:18
**percent** 13:20,24
13:25 14:1,10
14:19 34:3,5,8
35:1 60:10 61:3
61:4 62:12 85:2
92:10
**percentage** 13:19
**percentages**
33:25 60:13
**perfectly** 81:21
**period** 47:18 63:9
64:10 65:23
81:3

**periodically** 64:7
88:18
**perjure** 49:20
**permission** 84:23
**permit** 86:21
**perpetrator**
78:22
**person** 8:15
14:18 41:12
56:16 57:16,19
71:11 73:16
76:3 99:24
**person's** 29:19
**personal** 24:15
**personally** 6:1
50:21 65:10
70:19 85:18
89:6 91:6
104:16
**personnel** 41:17
**petition** 6:8 33:15
90:25
**petitions** 6:2
**phone** 9:9 11:3,3
11:16,22,24
12:3,6 35:13
57:21 58:18
60:16 68:12,13
68:16,19 82:3
107:9
**phones** 9:10
**Phonetic** 58:5
85:22 86:12
**photo** 52:19
53:12
**photographs**
31:14
**pick** 55:3 101:13
**pickup** 100:9
**picture** 52:16
**piece** 19:13 89:3
89:7
**pile** 83:20
**place** 4:4 10:18
98:7 99:1

341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 118

101:18
**places** 98:23,24
**plans** 98:16 99:3
**play** 92:4
**playing** 9:4 10:24
70:15
**pleadings** 66:23
67:6
**please** 4:18 9:2
13:12 57:10,12
61:22 84:13
**plenty** 74:15
**plowed** 25:16
**Plus** 46:25
**point** 17:19 21:23
34:21,22 44:12
45:9 46:11 47:4
82:18 83:9
99:16 100:1
**police** 41:16 42:1
42:12,25 43:5
**poly** 51:20
**position** 28:6,9
28:15 66:2
**positions** 60:3
**possession** 76:9
**possible** 106:24
**post** 44:25 45:25
**premium** 85:17
**prepare** 17:23
**prepared** 5:22
83:22,22
**preparing** 18:5
**present** 2:1 4:5,7
4:24 5:10 33:23
61:5 99:21
**president** 4:13,14
5:19 13:3,4
30:10 58:23,25
59:1,6,7,11,12
59:13,13,16,16
59:20 72:2,3
91:17
**pretty** 16:18
17:12 37:5

40:12 66:1
82:12 84:5 92:9
92:9 103:24
**previous** 39:6
**primary** 95:16,24
**principal** 85:19
**prior** 6:18 16:21
46:4
**private** 28:21
**privilege** 87:8,11
**probably** 14:8
16:16,18 20:9
67:16 84:19,22
97:6 107:7
**proceedings** 1:12
36:14 37:19
109:8
**product** 45:19
**profit** 62:2
**progress** 99:12
**promised** 96:10
97:13
**proof** 30:16 31:24
52:7,11,22
53:12
**properties** 86:18
**property** 7:11 8:3
19:20 24:6 25:8
25:9 32:23 33:6
38:9 42:4 51:7
51:7 52:24 65:1
70:25 74:19
75:2,3,4 78:7,14
79:11 80:15
82:10 83:5,6,18
88:8,23 90:5,14
90:24 91:13,14
92:7 97:10
101:17,19
102:25 103:5,9
**provide** 31:16
33:13 74:6
76:23
**provided** 14:5
18:23 65:8

70:17
**Public** 109:6,14
**pull** 73:4
**pulled** 41:14
**purchase** 29:13
29:19 87:23
**purchased** 29:16
51:3 52:24
96:25 97:6
102:23,25
**pushing** 83:19
**put** 11:15 12:6
47:23 48:25
50:15 54:21
88:14,15,20
89:11 96:13
97:13 102:2
**puts** 25:23

**Q**

**question** 12:15
14:13 18:14
26:3 34:23 39:3
39:22,25 40:21
43:10,24 44:9
44:18,20 45:21
47:1 49:9 52:6
53:25 54:3 57:6
62:15 63:12,22
64:14 65:23
66:22,25 67:2,5
67:18 69:5 70:6
76:22 77:9,12
77:13,17,25
78:1 84:9,12
91:25 94:7 96:9
96:15 98:4
101:3 103:7
106:5 107:23
**questioning**
35:24
**questions** 22:4,6
22:11 29:22
36:23 37:25
66:15 76:5,7

92:15 93:21,25
94:21,23,25
95:6 103:16,21
104:18 106:18
106:24 107:4
108:5
**quickly** 103:24
**quite** 88:15
101:12 104:12

**R**

**R** 109:3
**raise** 4:18
**ran** 98:12
**range** 16:17
**read** 5:24 35:6,6
78:2,3
**real** 7:24,24
28:10 48:13
81:23
**really** 9:5,13,15
21:1,3 27:17
28:15 44:16
47:2 53:12,13
60:12 62:9
64:22 70:4 76:3
99:5
**reason** 7:17 8:13
8:15,20 47:7,9
87:14
**recall** 41:20 50:12
66:9 67:11
**recalling** 43:15
**receipts** 18:1
**receivable** 70:8
**receive** 5:21 7:2
7:12 78:4
**received** 37:12
64:20 77:20
88:8 108:12
**receiving** 72:25
**recessed** 36:15
**recollection** 39:13
75:14
**record** 4:25 33:12

36:18 108:1
109:9
**recorded** 1:12
109:8
**recording** 108:14
108:15
**records** 15:14,18
15:23 16:3 53:3
70:11,14 75:24
76:2,10
**recycled** 104:9
**red** 82:10,15,17
84:15
**redemptions** 77:1
**referred** 72:21
**referring** 50:11
50:18 51:21
82:14
**reflect** 6:4
**regard** 22:16
**regarding** 19:11
**Regardless** 39:4
**regular** 26:15
**reimburse** 18:22
19:6 20:3
**related** 6:3,9
**relationship**
49:21
**relayed** 98:1
**release** 37:23
40:23 41:3
43:12
**relevant** 44:1
**remember** 29:3
33:4,24 66:13
82:16 89:15
92:1
**remotely** 79:23
80:4,23
**removed** 104:8
**rendered** 44:22
**rent** 54:17 56:2,5
58:2,15 88:21
88:22,25 89:12
102:7,10,11,14

341 (a) MEETING OF CREDITORS - 9/9/2022

102:17,20
**rental** 55:23
70:10
**rented** 53:24 54:2
54:17 88:18,20
89:12,15,16,19
**renter** 53:19
**renters** 70:22
90:13 91:9,22
91:23
**renting** 54:4
**rents** 7:14 71:16
**reorganization**
33:16
**repaid** 67:23
69:15 89:25
90:1
**repayment** 102:7
**repayments**
77:20
**repeat** 59:9 61:21
83:1 103:6
**repeating** 83:2
**report** 38:4,5
39:2,3 40:15
42:12,24 43:3,5
43:8 64:19
**reported** 43:4,7
**Reporter** 109:5
**represent** 45:8,12
46:12,24
**representation**
43:19
**representative**
108:6
**represented**
45:10,13
**representing**
46:10
**request** 44:4 65:8
98:14
**requested** 98:23
**required** 30:3
**reschedule** 93:8
108:14

**resolution** 60:23
**resolved** 39:19
**response** 61:20
**responsibility**
91:18
**responsible** 72:4
**rest** 35:23
**result** 23:6 65:8
**resume** 35:22
36:23
**return** 100:15
**returns** 17:4,7,15
17:23 18:2,4
24:15
**revenues** 16:9
**rid** 70:25
**right** 4:19 5:13
8:6,9 10:5
11:16,19 12:7
12:23 16:15
20:7 22:1,20,22
24:8 27:13
29:21 30:13
32:14 36:12
44:23 55:21
60:7,10 67:25
80:11 82:19
86:9 95:17,25
97:5,11,15
105:7,10,16,19
**ringing** 9:10
**road** 104:6
**roads** 83:10
104:5
**Robert** 2:3 4:4
**roles** 30:11 59:4
**Roth** 2:9 4:5,7,9
4:13,16 10:1,2
10:14 11:2,6,8
11:11,17,19,22
12:7 20:16
40:11 43:18,21
43:23 44:2,10
44:21 45:10,13
46:3,6 65:9

68:18
**Roth's** 11:25
**roughly** 33:6
**rubbish** 38:3
**running** 73:7

**S**

**salary** 23:25 66:6
76:25 77:19,22
78:3,4
**sale** 19:1,11 20:7
20:12 29:17,19
37:2
**sanitation** 38:3
**Sarah** 2:5 5:1,3
10:7 22:5,11
93:12,24 94:20
**sat** 98:17
**satisfied** 40:7
**savvy** 81:14
**saw** 41:13 51:13
52:16 86:15
**saying** 8:2 24:17
25:8 28:4 41:20
45:23 50:15,20
74:17,20 75:1,8
85:1 91:12
98:19
**says** 7:21 14:10
14:19 60:24
**scenario** 61:16,18
**Schapiro** 53:21
54:1,15,20 56:4
56:20,24 57:17
58:4
**schedule** 7:20
77:4 90:20
92:20 106:25
107:17
**scheduled** 107:4
**schedules** 6:3
7:23 13:22
14:23 16:8 23:1
25:3,6 90:16
**school** 81:15

**Schur** 50:1 51:8,9
51:10 52:14,24
**Scotty** 83:14
**second** 12:4
28:22 33:21
47:19 66:25
67:7
**secret** 32:1
**secretary** 30:2,5
30:9 58:24 59:1
59:25 60:5
**section** 4:1 40:21
**see** 7:21,23 13:21
28:23 41:12
53:3 70:5 73:17
76:3 90:12
107:16
**seen** 58:17,18
**sell** 6:16 28:18,19
**send** 6:21 14:2
58:9 102:16
**sense** 24:24
**sent** 58:10 107:15
**separately** 93:12
**September** 1:14
36:21 38:17
39:8,10 97:8
**serial** 7:7
**served** 8:23,23
22:2 31:20
**serves** 55:21
**service** 25:17
78:8 82:4 104:1
**services** 44:11,22
46:5
**seven** 18:24 23:7
23:23 24:2
25:11
**sewage** 78:9
**Shanni** 2:8 3:9
5:10,11,14 9:3
10:9,10,15,19
10:23 20:21
27:10 35:16,19
35:20 45:5

47:18 64:9,16
64:21 65:20
68:3,8 80:2
95:2,3,5,8,11,15
103:14 106:17
106:21
**share** 30:24
**shareholder**
13:17 14:2 34:1
95:25 96:1
**shareholders**
13:9,15 14:17
18:7,12 33:17
33:18,19,22,23
34:14,16 60:25
61:4,5,10,13
62:4,5,7,14,21
**shares** 13:16
30:23 34:2,7,10
34:25 61:2,2,6
62:16
**she'd** 21:8 49:1
74:17
**she'll** 81:20
**sheet** 5:21,24
**shipping** 50:19
50:25 51:21,24
85:6,13
**Shoot** 68:11
**short** 74:8
**shots** 100:4,5
**showed** 52:16
55:18 58:1
**showing** 53:13
**shows** 83:13
**sideline** 86:15
**sign** 5:20 6:8
88:21 94:11,12
**signed** 65:9,10
**silent** 14:19 15:1
17:11 23:4,13
23:14,16,19,22
32:1 97:17
**simply** 47:21
**single** 31:1,3,6

**Appendix Vol. II, Page 524**

Case 2:20-cv-00234-GLT63 Doc 337 Filed 02/24/25 Entered 02/24/2060/09/42/2045 Desc
Exhibit A    Page 121 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 120

73:16 92:6
**sister** 19:17 27:10
  27:18 33:10
  45:17 48:11,19
  48:21 49:4,6,12
  49:16 63:8
  64:23 65:20
  69:20 80:8
**sister's** 47:6
  63:20
**sisterly** 65:4
  66:18 105:9
**sit** 98:10,10
**site** 41:1 42:21
  50:3,6,17 53:19
  54:3,4,19,21
  55:15,19 56:18
  82:18 84:6,8,16
  85:13,17 86:22
**sitting** 35:13 51:6
**situation** 48:10
  61:24 63:20
**six** 7:3,13 18:24
  26:24 27:11
  40:25
**slipping** 86:9
**Slone** 2:3 3:6 4:1
  4:4,11,14,17,23
  5:2,6,9,12,15,17
  9:1,9 10:4,7,13
  10:17,21 11:1,4
  11:4,9,14,18,20
  12:1,5,9,14 22:3
  22:13 24:3 25:2
  29:16 35:8,21
  36:3,8,13,17
  40:18 44:18,20
  44:24 45:20
  46:2,4,15,18,20
  50:8 58:10 68:4
  68:6,10,15,21
  68:24 70:19
  71:10,13 77:13
  78:23 84:23
  92:12,14,19

93:2,6,14,17,22
  93:25 94:24
  95:4,7,9,13,21
  100:1 103:11,20
  106:19,23 107:6
  107:13,21,22,24
  108:4,8,11
**small** 64:7
**snow** 25:16
**Snyder** 2:4,8 3:5
  3:9 4:10,12,18
  4:22 5:10,11,14
  5:16,18 9:3,7,12
  10:2,9,14,15,19
  10:23 11:6
  12:13,15 13:1,5
  19:25 20:21
  22:14,16 24:12
  25:25 27:9,10
  29:24 30:1,16
  32:20 34:1,6,6
  34:22 35:16,19
  36:24 37:1
  38:15,16 41:24
  47:18 50:21
  51:12 58:23,25
  61:1,2 64:9
  65:10,20 68:3,8
  68:22 69:1,3,5
  75:14 76:16
  79:5 80:2 84:4
  92:16,21,25,25
  94:6,8,13,13,16
  94:19 95:2,5,8
  95:11,14,15
  102:9 103:14
  106:8,17,21,25
  107:2,2,5,18,19
**Snyder's** 45:6
  84:11
**sold** 7:8 18:21
  29:11 61:6
  67:23 88:7
**somebody** 11:1
  54:2,18 79:16

**Somebody's** 9:9
**someone's** 55:5
**son** 83:14
**sorry** 6:23,25
  30:14 33:17
  61:4,20,23 71:8
  77:16 89:6 94:9
  96:14 97:2
  101:3 105:25
  106:1,2
**sort** 82:4
**sound** 48:8 73:21
**sounds** 28:11
  48:10 66:1
  107:19
**space** 54:4
**speak** 13:12
  42:16
**SPEAKER** 11:24
  12:3 35:4,14,17
  68:13,16,19
**speaking** 35:8,10
**specific** 60:14
**specifically** 51:23
  73:1
**spelling** 58:5
  85:22 86:12
**spoke** 57:8 58:3,6
**spoken** 53:23
  62:14
**square** 55:11
  58:8
**staff** 26:15
**stand** 75:13 92:1
**standing** 42:8
**start** 5:1 22:5
  50:8 71:7,15
**started** 36:20
  96:2
**state** 4:25 32:12
  43:19 44:5
  47:22 57:20
  58:22 86:1
**stated** 33:16 44:5
**statement** 6:22

14:13 22:17
  37:14 39:1,23
  67:10 70:6
  76:21
**statements** 6:3
  18:1 83:23
  92:12
**States** 1:1 2:3
**stayed** 88:22
**stem** 23:10
**step** 40:20 105:1
**stock** 77:1
**stop** 99:4 108:13
**stopped** 99:7
**storage** 51:1 87:1
**store** 54:4 56:17
**stored** 53:19 54:2
  54:18 72:9 91:4
**strategy** 38:11
**stuff** 25:18 52:20
  65:5 72:9,12,17
  73:6 76:16,18
  83:17 84:7 85:1
  85:3 86:24 91:4
  104:7
**subject** 8:5
**submitted** 47:16
**substantial** 34:2
**substrate** 104:2
**sue** 71:19 72:19
  74:3
**sued** 99:13 102:5
  102:12 105:14
**summons** 105:15
**supposed** 72:2,3
  96:10
**Supposedly** 58:13
**sure** 22:19 23:16
  24:19 31:6 37:6
  41:23 53:1
  60:12 70:4
  80:25 82:25
  86:23 92:23
  96:24 99:5
  100:12,14

**swarm** 83:15
**swear** 4:18,19
**switched** 25:20
  25:21
**switching** 74:20
**sworn** 47:16
**system** 78:13
  79:19 80:3,11
  80:14,19,22,24
  81:9,13,18,21
**systems** 80:17,18
  82:2

---

**T**

**T** 109:3,3
**take** 22:8 33:21
  40:20 71:6,12
  71:14 74:17,19
  74:24 92:19
  93:9 100:21
  101:14
**taken** 20:23
**talk** 42:1 49:6
  58:12 71:10
  75:19 93:12
  98:11 99:17
**talked** 7:5 57:1
  58:13,18 86:7
  98:18 99:8
**talking** 27:14
  34:22 38:21
  39:7,8 42:7
  51:18,23 60:14
  60:17 71:9
  85:21 89:4
  90:19
**Tammy** 19:18,24
  19:24 20:1,1
  33:11 69:20
**tank** 51:19
**tanks** 51:20,20
  52:17
**tap** 79:15,15
**taps** 78:9
**task** 91:13 92:6

Case 22-20634-GLT63 Doc 337 Filed 02/24/25 Entered 02/24/25 09:42:45 Desc
Exhibit A    Page 122 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 121

**tavern** 98:8,21
99:1
**tax** 17:3,6,15,23
18:2,4 24:15
32:23 61:14
87:8,11
**taxes** 15:15,16
19:20,23 20:4
33:6 61:25
64:19,19 69:21
87:17
**technological**
81:13
**tell** 30:4 54:8
58:24 62:13
66:16 71:24
78:20 105:3
106:15
**telling** 64:12 66:4
74:13 80:11
81:5,10 91:8,21
**ten** 50:18 65:6
79:1 95:10
**tenant** 52:12,14
73:5
**tenants** 52:20
53:8 70:9 71:3
73:4,12,13
80:18 91:2,9,20
91:23 104:5
**tenants'** 72:16
**terminology**
26:11
**testified** 34:24
41:4,11 51:15
67:25
**testify** 4:7 47:12
**testifying** 5:19
26:4
**testimony** 4:20
59:15 63:4
66:11 76:15,15
**thank** 9:11 11:18
36:11,13 94:23
106:19 108:15

**Thanks** 22:13
**thing** 48:16 74:21
75:8 82:5 102:8
**things** 23:5 25:6
27:20 28:20
37:15 47:8 50:9
52:18 61:1
70:20 72:16
75:19 78:19
90:18 104:9,11
107:7,8,10,14
**think** 10:23 13:20
17:24 19:16
21:9 25:3 26:2
26:23 29:8,15
31:17,21 33:1,1
34:10 35:11,14
35:17 37:3,5
38:10 39:19
40:4,7 41:7,8,11
42:3 44:14,18
44:20 45:18
46:8,9,22,23,25
47:2 51:5 53:9
59:6,10,12
60:11 65:2 66:9
66:12,12,14,16
66:17 74:1
75:16 78:8
79:11 81:2,11
81:12,16 85:2
85:11,11 86:25
87:13 89:9,14
89:15,17,22
90:6 91:25 92:9
96:24 97:5,6
99:16 100:17,18
103:22 105:11
**third** 54:10 58:12
58:15
**Thirteen** 16:13
**thirty** 54:10
**thought** 8:25
21:8 64:24 65:3
66:19 78:3

101:8
**thousand** 13:15
19:5 55:2
**threatened** 73:2
**threats** 72:17,25
**three** 18:10,13
**till** 15:8 45:2
100:18
**time** 4:3 6:13
12:24 15:6
17:13 20:13,18
21:3 22:6 27:7
36:1 41:24
44:22 45:9
47:18 48:1 52:4
64:11 65:13,15
65:23 66:20
71:11 73:4 81:1
90:15 94:23
100:6 101:24
105:8
**times** 15:11 31:15
65:6 86:19
88:12 89:1,2,16
**tires** 103:1,2
104:9
**title** 49:25 50:23
50:24 51:10
52:7,11
**titled** 100:12
**titles** 51:2
**today** 4:8 26:4
36:10 45:5
49:14 53:10
93:7,18 107:12
**told** 32:2 40:14
53:23 54:23
55:7 58:14 60:9
63:2 71:18 83:1
87:2
**ton** 61:12,17
**tons** 104:2
**tops** 52:16
**tow** 83:8
**Township** 38:2

38:12,25 39:5
40:7 42:1,6,11
42:22,24 87:2,5
87:9,12
**track** 27:21
**tractor** 7:6 18:20
19:1 28:18,19
29:11 67:24
**tractor-trailer**
53:9 90:19
**tractor-trailers**
52:17
**tractors** 73:10
**trailer** 53:18 54:1
54:5,18,21,25
55:4,9,15,18,24
56:18 58:1,8,14
85:12
**trailers** 50:2,6,11
50:12 52:8
58:15,16 85:7
101:19 102:3
**TRANSCRIPT**
1:12
**transcription**
109:8
**transfer** 6:17
34:7,25 50:6
51:10
**transferred** 49:25
50:5,23 52:8
**treasurer** 30:2,5
30:8,10 59:2
60:1,5
**trial** 41:19
**tried** 74:19,22
**truck** 55:2 56:25
70:20 83:8
100:9,9 101:10
101:14
**truckload** 85:4
**true** 71:24,25
75:21 84:10
109:7,9
**trust** 25:9 103:18

**Trustee** 2:3 4:5
5:22 29:8 56:5
56:7 70:17
72:22,23 84:4,5
90:14
**truth** 4:21 41:6,8
49:16
**truthful** 27:25
75:12
**trying** 11:11 12:2
24:20 28:5 32:1
38:10 45:21
71:15 72:5 77:6
77:16 92:4
103:16 108:9
**turn** 12:11,12
**turned** 44:8
**TV's** 104:10
**twice** 38:2 68:7
**two** 16:13 18:7,17
19:5 24:6,7
30:7 41:17 48:9
55:16,16,17
58:3 62:20 67:4
68:7 100:19
101:20
**type** 31:7,16
**types** 31:15

|  U  |
| --- |
| **U** 1:7 4:2,6,8 5:19
9:17 11:6 18:23
22:17 24:9,18
26:2,4 30:2,18
30:19 36:18
37:17 38:1,16
38:20,24 43:20
44:8,10,20 45:6
45:8,9,22,23
46:5 47:17
49:25 50:17
51:12 52:9,12
58:21 59:16,20
60:10,23 62:16
62:16 64:22 |

Case 22-20641-GLT63 Doc 337 Filed 02/24/25 Entered 02/24/25 09:42:45   Desc
Exhibit A   Page 123 of 124
341 (a) MEETING OF CREDITORS  -  9/9/2022

Page 122

65:11,25 66:8
66:24 67:1,8,9
67:12,21,21,22
69:14 70:7
78:10 80:11,12
80:15 86:21
87:22 88:3,10
88:12 89:5,18
89:21,23 91:16
91:17 94:5,12
95:17,25 96:2,5
96:11,12,16,22
97:9 98:15 99:2
99:24 100:5,7
100:15 101:19
102:1,5,10,10
102:13,23,25
103:4,8,19
104:18,21 108:6
**U.S** 5:22
**unanimous** 62:11
**unavailable**
76:12
**unaware** 61:15
**understand** 28:3
41:24 48:3,7
59:8 71:23
73:13 81:20
**understanding**
38:6 54:14,15
64:25
**understands**
81:22
**UNIDENTIFIED**
11:24 12:3 35:4
35:14,17 68:13
68:16,19
**unit** 37:20,23
40:23 41:3
43:11
**United** 1:1 2:3
**unlimited** 84:6
**updated** 90:21
**updates** 99:12
**USAAG** 85:19

86:1,5
**utilities** 78:7
_____
**V**
**v** 38:19
**value** 7:3,13 44:8
52:3,3 76:24
**verbal** 38:14
**versus** 43:20
58:21
**viable** 74:9
**vice** 4:13,14 5:19
13:4 30:9 58:25
59:7,12,13
**video** 55:13
**view** 92:15
**VIN** 51:2
**Vince** 53:7
**violations** 38:9
**vote** 62:11
_____
**W**
**W-2's** 15:17,20
15:25 26:18,19
**wage** 24:1,10
27:7
**wages** 23:10 24:1
67:14,15 69:9
69:10
**wait** 17:16
**walk** 32:14 46:23
**want** 22:19 24:4
44:16 49:20
54:23 55:7,9,10
55:10 58:8
62:22 71:17,19
72:12 74:4 75:1
75:2,2,4,4,18
83:1 104:13
106:25 107:25
108:1
**wanted** 17:16
18:4 86:16 98:3
**wants** 29:16
**warning** 39:20

40:5
**wasn't** 23:1 25:2
27:14 48:23
55:8 60:12
66:20 67:15
70:17 73:24
84:20 91:11
98:11
**watching** 104:18
**water** 51:19 78:9
**wave** 73:18
**way** 23:5 26:15
44:1 45:4 46:9
50:15 63:17
64:5 78:2,2
92:2 93:10
105:1
**we'll** 11:3,15,19
12:5,6 15:1
22:4,8,8,9 68:10
107:3,16 108:14
**we're** 12:8,12
14:25 17:25
18:1,5 22:6,7
36:17 45:21
57:12 60:2
68:22,23 71:2
87:18 92:9,9
107:16,17 108:4
108:8,8,12
**we've** 32:11
49:11,12 53:22
53:22 81:2
92:14
**Wednesday** 31:1
31:4 98:6
**weeds** 25:15
**week** 27:3 65:6
**weekly** 30:25
96:21 105:3
**weeks** 40:25
**welcome** 106:22
**Wenrich** 2:5 3:7
5:1,2,3,7 9:20
10:6 22:5,12,15

29:21 36:5,11
93:12 94:22
**went** 11:13 25:21
31:1,3 38:7,12
42:4,24 43:5
75:9 105:5
**weren't** 16:1
26:22 64:1,2
75:12
**WESTERN** 1:1
**whatsoever** 25:19
41:25
**When's** 15:6
**white** 51:19,20
**Whitehouse**
53:21,25 54:15
54:20 56:4,19
56:23 57:9,17
58:4
**WiFi** 79:11,12,16
79:22 80:23
81:1
**William** 2:6 5:4
**willing** 72:8,10
**wires** 104:1
**wish** 6:12
**withholding**
15:15
**WITNESS** 3:5
**woman** 57:17
58:4
**words** 46:5
105:12
**work** 21:2,5 23:7
25:1,11 27:3
45:19 72:5
84:23 104:15,15
105:6,14
**worked** 15:19
27:7,12 47:19
64:1,3,10,17,21
64:22 65:21
66:16
**workers** 63:25
**works** 23:16 36:7

58:7 81:21
**worry** 45:15
**worth** 51:17
**wouldn't** 15:22
23:14 47:21
48:24 91:3,5
**write** 38:8,9,13
**written** 30:19
31:8,12
**wrong** 26:11
44:19
_____
**X**
_____
**Y**
**yeah** 7:19 8:18
11:11 14:3
16:23,23 17:21
19:16 20:14
26:21 29:7
30:25 35:7 36:5
39:6 46:22
48:15 51:13
52:10 60:11
64:8 65:13
67:14 68:18,22
69:20 70:14
72:24 78:2
82:19,21,25
85:8 86:7 88:25
90:11 91:7,19
92:2,7 93:14
97:19 99:15
100:19 101:1,8
101:9 102:2,4
104:14
**year** 7:8 15:13
18:15 19:20
20:22 22:22,22
26:24 27:12
28:13 33:5,6,7
40:25 76:22
99:10,11
**years** 6:18 15:12
15:21 16:5,21

341 (a) MEETING OF CREDITORS  -  9/9/2022

18:8,10,17,24
23:8,23 24:2
25:11 27:12
32:25 40:13
49:12 51:4
52:15 53:2
55:16,16 56:5
58:3 63:3 66:13
80:5 86:13 89:9
100:16,20
**yep** 57:1 77:17

---
**Z**
---
**0**
---
**1**

**1.18** 61:4
**10** 34:3 37:24
**10,000** 21:23 45:8
**10,000-gallon**
  51:19
**100** 48:24
**1099's** 26:17,20
  26:22
**12,000** 16:10
**13** 77:8,10,16
**13,000** 16:10
**130,000** 48:24
  66:6
**14** 35:24
**14140** 78:7
**15** 37:6,7
**18** 97:24
**19** 37:25 77:9

---
**2**

**2,000** 27:13
**2:30** 36:3,4,9,10
  36:21
**20** 18:18 43:10
  51:3 100:18
**2004** 92:20 93:9
  107:1
**2015** 12:17 17:10
  90:24 97:18,22

97:24 100:17,22
  101:5 103:5,9
**2016** 29:16 65:22
  87:25 89:10
**2017** 45:13
**2018** 97:18,23
  99:8
**2019** 16:14,20
  38:17 39:10
  62:18
**2020** 16:10 17:4
  55:19,20 57:23
  65:22 100:19,20
  100:22 101:6
  103:5,9
**2021** 16:9 17:4
  18:19 20:10,10
  37:4,6 38:18
  39:11 45:14
**2022** 1:14 40:24
  60:25
**2023** 109:11
**21** 8:3 16:13
  18:18 38:17
  39:10 100:19
**22** 3:7 18:18
  52:15 53:2
  100:19
**22-20823-** 36:18
**22-20823-GLT**
  1:2 4:3
**25** 14:10,19
**260,000** 28:1 66:7
**27th** 109:11
**28** 14:14
**29** 3:8

---
**3**

**3,000** 72:12
**30** 60:25 77:9,13
  77:15,18
**341** 73:23 92:24
**341(a)** 1:13 4:2
  36:19 109:9
**345** 61:1

**38,000** 67:24

---
**4**

**4** 34:11
**40-hour** 27:3
**400** 34:10
**45** 49:12
**45,000** 19:1,2
  29:9 37:12 88:8
  88:10

---
**5**

**5** 3:6 38:17 39:8
  39:10 61:6
**5/2015** 96:25
**51** 13:20,24

---
**6**

**6,000** 51:17
**65** 37:24 77:9
**65,000** 29:15

---
**7**

**7** 1:3
**7,000** 19:19 20:3
  33:2,7 69:24
**70-** 101:20
**75** 61:2

---
**8**

**800-plus** 33:19

---
**9**

**9** 1:14 36:21
  37:24
**90** 13:25 14:1
  19:23 34:4,8
  35:1 60:10
  92:10
**95** 3:9
**98** 62:11 92:10
**98.82** 61:3
**99,000** 22:24 23:2
  25:4

---

Transcript of the Testimony of

# CONT 341 MEETING OF CREDITORS

January 17, 2023

## IN RE: U LOCK, INC.



**412-261-2323**
**depo@akf.com**
**www.akf.com**

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Bankruptcy No. 22-20823-GLT

Chapter 7


In re:                          )
                                )
U LOCK INC.,                    )
                                )
        Debtor.                 )
_____/



TRANSCRIPT OF RECORDED PROCEEDINGS:

CONTINUED 341 MEETING OF CREDITORS

January 6, 2023

2

1                          PRESENT:

2


3

    Robert H. Slone, Esquire, United States Trustee
4
    Charles O. Zebley, Jr., Esquire, Trustee for
5          Shanni Snyder

6   Kash Snyder

7   George Snyder

8   Kirk B. Burkley, Esquire

9   Sarah Wenrich, Esquire

10  William Otto, Esquire

11  Christine Biros

12  John B. Joyce, Esquire

13  Beth L. Slaby, Esquire

14  Jeremy J. Kobeski, Esquire

15  J. Allen Roth, Esquire

16

17

18

19

20

21

22

23

24

25

CONT 341 MEETING OF CREDITORS - 1/17/2023

```
                                                              3
 1                         INDEX

 2

 3

 4   EXAMINATION OF KASH SNYDER BY MR. SLONE - PAGE 5

 5   EXAMINATION OF KASH SNYDER BY MR. BURKLEY - PAGE 16

 6   EXAMINATION OF KASH SNYDER BY MR. ZEBLEY - PAGE 25

 7   EXAMINATION OF GEORGE SNYDER BY MR. ZEBLEY - PAGE 27

 8

 9

10   EXHIBITS INTRODUCED:  (NONE)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1          MR. SLONE:  I'll call the -- this

2     will be a meeting of creditors in the case of

3     U Lock Inc., Case 22-20823-GLT.  This is the

4     time of a continued meeting of creditors in the

5     U Lock case.  The original meeting of creditors

6     was held September 9, 2022.  I am Robert Slone,

7     the interim Trustee.

8          We specifically scheduled this for the

9     testimony of Kash Snyder.  Is Kash Snyder

10     present?

11          MR. KASH SNYDER:  Here, present.

12          MR. SLONE:  Okay.  You've got to

13     speak up so we can all hear you.  There's a

14     bunch of creditors present.  I'm going to ask

15     you to put your name on for the record,

16     starting with Mr. Zebley.  Mr. Zebley?

17          MR. ZEBLEY:  Yes, this is Charles

18     Zebley.  I am the Chapter 7 Trustee for Shanni

19     Snyder.

20          MR. SLONE:  Okay.  Next Beth and

21     Jeremy?

22          MS. SLABY:  Yes, Beth Slaby and

23     Jeremy Kobeski for Shanni Snyder.

24          MR. SLONE:  Okay.  Mr. Burkley?

25          MR. BURKLEY:  Yes, Kirk Burkley,

5

1      Sarah Wenrich, and William Otto for

2      Christine Biros.

3                  MR. SLONE:  And Christine Biros

4      is also present?

5                  MS. BIROS:  Yes.

6                  MR. BURKLEY:  That's correct.

7                  MR. SLONE:  And George Snyder,

8      you're present also?

9                  MR. GEORGE SNYDER:  Yes, present.

10                  MR. SLONE:  Okay.  And attorney

11      for U Lock?

12                  MR. ROTH:  Allen Roth here.

13                  MR. SLONE:  Okay.  And Kash

14      Snyder, Mr. Snyder, please raise your right

15      hand.  Do you swear that the testimony

16      you're about to give in this matter to be

17      the truth?

18                  MR. KASH SNYDER:  I do.

19                  MR. SLONE:  Mr. Snyder, you've

20      got to speak up so we can all hear you,

21      okay?

22                  MR. KASH SNYDER:  All right.  I

23      -- I do.

24                  MR. SLONE:  Good, you're --

25      you're coming in strong and clear now.

6

1              MR. KASH SNYDER:  Okay.

2    EXAMINATION OF KASH SNYDER:

3    BY MR. SLONE

4         Q.  Okay, Mr. Snyder, when -- what

5         relationship do you have with U Lock Inc.?

6         A.  I worked there and I was a corporate

7         officer there since the beginning.

8         Q.  Okay.  And when -- when did the

9         company start?

10        A.  That would be 2015, July I believe.

11        Q.  Okay.  And who are the other

12        officers beside yourself?

13        A.  To the best of my recollection, and

14        this, this is -- this could be wrong, but I

15        don't remember ever writing down.  My

16        brother George, Christine Biros, John Biros,

17        and myself were officers or owners or -- I

18        mean, when I wrote things that I, to my

19        recollection, I started a bank account, I

20        think I wrote myself as the director.  And

21        the truth is, the only thing I ever remember

22        writing when I attached my name to something

23        was director.

24             So we were going to do an official

25        corporate structure or something like that,

Case 22-20823-GLT Doc 337 Filed 02/24/23 Entered 02/24/23 09:43:25 Desc
Exhibit B   Page 8 of 46
CONT 341 MEETING OF CREDITORS  -  1/17/2023

7

```
1          but it was, you know, sort of treading water
2          for a few years, really at Christine's
3          direction, which was fine with me; and in
4          the end I think we were all four just going
5          to split that, you know, split the officer
6          roles or whatever.
7               Q.  Okay.
8               A.  I don't know where I ever ended up.
9          Vice president I believe I had been named as
10         being before.  But like I said, that, that,
11         I remember, I mean, I thought Christine
12         maybe was vice at one time also.  So that's
13         really unclear to me.  But I know that I
14         signed off personally on things as director.
15              Q.  What -- who are the shareholders of
16         the corporation?
17              A.  That would be myself, that would be
18         John, that would be Christine, that would be
19         George.  Then there is like minor
20         shareholders to my knowledge, and that's, I
21         don't know a whole lot about that end of it.
22          I -- I don't know about even the majority
23         shareholder end it very, very much, but I
24         know, like I said, the four of us were
25         always, you know, a big part of it.
```

CONT 341 MEETING OF CREDITORS  -  1/17/2023

8

1          Q.  Did the corporation have employees?

2          A.  No, we never had employees.  We

3     always had people helping us, but never

4     anything official or long-term or anything

5     like that.

6          Q.  Did you have 1099 workers, people

7     that you gave 1099 forms to?

8          A.  No, we never did that.

9          Q.  Never did?

10          A.  No, sir.

11          Q.  Now, you said you had people help

12     out, but they weren't paid then; is that

13     correct?

14          A.  Yeah, everyone, anyone who helped --

15     well, there was always -- Christine said to

16     pay people less than 600.  She said her

17     employees I guess for her machine business,

18     you know, that would -- that would help, you

19     know, they would -- I don't know what the

20     reason was.  I guess it was for, to keep

21     things simple.  But so it was limited hours

22     on people where, you know, I think the

23     number was, well, I'm almost positive the

24     number was $600 per year, everyone had to be

25     below that.

9

1          Q.  Okay, so you never issued any W-2's

2      or 1099's; is that correct?

3          A.  That's correct.

4          Q.  Did the corporation have an

5      accountant?

6          A.  No, we didn't.  We talked to one one

7      time, and it just, I think at the time I

8      think we were ahead of ourselves.  I didn't

9      get the go-ahead, well, U Lock didn't get

10      the go-ahead from Christine to go ahead and

11      file and put names on things.  And what we

12      were told at the time was that of course we

13      should file, but there's no harm because we

14      were operating at a loss, but we have to do

15      it.  That's what, I mean, that's what he

16      told us.

17      So we, you know, we didn't hire him, but

18      we just thought that the penalty on zero

19      dollars that we made would be zero, so we

20      were just relying on Christine to pull the

21      trigger on it, which we had to wait till,

22      they had a lawsuit going on or something

23      that we had to wait for.  So it was sort of

24      like --

25          Q.  Okay, the question was, did you have

10

1        an accountant; you answered no?

2             A.  I don't know.

3             Q.  Did the corporation ever file any

4        tax returns?

5             A.  No.

6             Q.  What would be the gross, on your

7        bankruptcy schedules for 2021 and 2020, I

8        believe the gross revenue for one year was

9        13,000, approximately 13,000, and for 2020

10       approximately 12,000.  Are those numbers

11       accurate?

12            A.  That's, I think that's very

13       accurate.  Anytime, it always seemed like a

14       thousand a month, is estimations.

15            Q.  Would that be consistent over the

16       life of the corporation?

17            A.  It was.

18            Q.  So the corporation you're saying

19       operated at a loss; is that correct?

20            A.  Yes.

21            Q.  Were the officers and insiders, that

22       would be the shareholders, given payments of

23       salary or anything else?

24            A.  No.  I would -- I would think more

25       I'm owed some money, but I don't know if

11

```
 1        that's the time, the time and place for

 2        that.

 3            Q.  Did any of the officers or insiders

 4        make loans to U Lock, give U Lock money?

 5            A.  Yes.

 6            Q.  Okay.

 7            A.  That would be myself, that would be

 8        George, John, Chris.  All of us put in money

 9        through the years.

10            Q.  And did the corporation pay, pay

11        back any of these people that gave loans?

12            A.  Yes, U Lock did, and I don't know

13        the exact figures on that.  I know I got

14        repaid a decent amount last year.  Or no,

15        no, I'm sorry, two years ago.  But, you

16        know, the exact things, I would think maybe

17        send those questions towards George.  I can

18        hand him the phone if --

19            Q.  We're taking your testimony right

20        now.  I'm going to ask, now I had given a

21        list of items to George Snyder to, to bring

22        to me, and we'll add this:  Any money that

23        was paid to any of the insiders over the

24        last four years, I want something to show

25        that.
```

CONT 341 MEETING OF CREDITORS  -  1/17/2023

12

1          A.   Okay.   There is several -- there are

2          several documents Allen's paralegal just

3          emailed you before the meeting.

4          Q.   Yeah, I didn't get a chance to look

5          at that.

6          A.   Okay.

7          Q.   I have it in front of me here, and

8          it shows some.   But just give me, you know,

9          I'll -- this will be good, but get me the

10         other stuff, too.

11         A.   We will.

12         Q.   That's the information that was

13         requested at the 9/19, or I mean the meeting

14         of creditors, and the list was given to

15         George Snyder and also sent to Allen Roth.

16         So I need that information.   Start bringing

17         that together.

18         There was a 2021 Kubota that was sold, or

19         in 2021 the Kubota was sold for $45,000.

20         Now, that Kubota was owned by the

21         corporation; is that correct?

22         A.   That's correct.

23         Q.   Okay, now where did that money go?

24         A.   Back into U Lock, to my knowledge

25         was most of it.   Some went to myself, which

**Appendix Vol. II, Page 541**

13

1         unfortunately went back to U Lock.  But

2         specifics on that, they're included in what

3         was just emailed to you.

4              Q.  Okay, I'll need -- I'll need that

5         information. And then there was a question

6         about some of that money was used to pay

7         real estate taxes. I need something to show

8         what real estate taxes were paid.

9              A.  Okay.  That will be in an email that

10        you -- that was sent to you.

11             Q.  You mean the stuff that was sent to

12        me this morning?

13             A.  Correct.

14             Q.  Okay.  It just says it's a

15        promissory note signed by George Snyder, but

16        I need the receipt from the tax claimed,

17        from the tax.  There, look, there was

18        something here that didn't come out.  Maybe

19        that's the receipt that I'm looking for.  So

20        I need the receipt to show the payment of

21        the real estate taxes.

22             A.  Okay, I believe it is in there, and

23        if it's fuzzy, it will be re-sent.  George

24        will get you that.  Anything, anything that

25        there's a gap in, we'll send.

CONT 341 MEETING OF CREDITORS  -  1/17/2023

14

1          Q.   Okay.  Very good.  Were there any

2     other sales of assets other than the --

3     other than in the ordinary course of

4     business that were made?

5          A.   Nothing to my knowledge.  John took

6     the company car back.  That wasn't sold.  He

7     already owned that.  There was that tractor.

8      I don't think any, any -- nothing else

9     comes to mind.  I think it's no.  I think

10     the answer would be a no.

11          Q.   Okay.  Did U Lock make any payments

12     to Mr. Roth for this bankruptcy?

13          A.   No.

14          Q.   Did anybody pay Mr. Roth for work on

15     this bankruptcy case?

16          A.   No.

17          Q.   Shanni Snyder filed a lawsuit in

18     Federal Court for, I guess it was for wages.

19      Are you familiar with that case?

20          A.   I know that it was filed, but I'm

21     not familiar.

22          Q.   Who made the decision on behalf of U

23     Lock not to participate in that case?

24          A.   I don't know.  I -- I felt like we

25     were all in the same situation; nobody was

**Appendix Vol. II, Page 543**

15

1    going to get paid -- developed and making

2    money.  And to my knowledge everybody, I

3    mean, it seems like Biroses were happy that

4    she was doing that work.  George was -- I

5    mean, I was fine with it; George was fine

6    with it.  It was really not, you know, you

7    know, if -- if Christine was okay with

8    things, we were okay with things.

9        Q.  Well, why didn't you just agree to

10   make a payment to her?  She filed a lawsuit.

11    If you all agreed, why didn't you just make

12   arrangements to pay her or do something?

13       A.  I had no money.  Christine cut off

14   the money. And I've -- I've been less hands-

15   on the last couple years because, just, you

16   know, because of that.  So as far as, as far

17   as Shanni goes, it just, I mean, I didn't

18   even think she was -- I don't -- I don't

19   know.  I don't know that -- nothing

20   happened, so she wasn't going to be -- you

21   know, she was volunteering and then, you

22   know, money never came.  So I thought that

23   was understood.  But that was -- that's

24   between George; that's between Christine.

25       Q.  George filed a, in this, in the

CONT 341 MEETING OF CREDITORS  -  1/17/2023

16

1   bankruptcy, filed a wage claim for $99,000.

2   Are you familiar with that?

3       A.  No.  Well, we may have -- I did see

4   that on the schedule, but I'm not familiar

5   with details on that.

6       Q.  There was an order of Court entered

7   in the U Lock case dated 12/20/22 for the

8   sale of tangible and intangible assets.

9   Now, an appeal was taken the other day

10  appealing that order. Who authorized that

11  appeal being filed?

12      A.  I -- I'm not familiar.  That would

13  most likely be George.

14      Q.  Would you know what the basis of the

15  appeal is?

16      A.  Say that again, please?

17      Q.  Do you know what the basis of that

18  appeal is?

19      A.  No, I'm not -- I'm not familiar.

20      Q.  Do you know who would -- who paid

21  the filing fee for the appeal?

22      A.  I do not know.

23          MR. SLONE:  Okay, I'm going to

24  let the other, other parties ask you

25  questions at this point.  Who wants to go

CONT 341 MEETING OF CREDITORS  -  1/17/2023

17

1       next?

2                    MR. BURKLEY:  I will go.  This is

3       Kirk Burkley.

4                    MR. SLONE:  Okay, Mr. Burkley, go

5       ahead.

6                    MR. BURKLEY:  Thank you.

7  EXAMINATION OF KASH SNYDER:

8  BY MR. BURKLEY

9            Q.  Mr. Snyder, I only have a few

10      questions for you here today.  But my first

11      question is, have you personally ever seen

12      written bylaws for U Lock?

13           A.  Not to my recollection.

14           Q.  Do you believe that any exist?

15           A.  I have to be honest, I'm iffy on

16      that because I just don't, I don't know.

17           Q.  Have you personally ever seen a

18      shareholder agreement for U Lock?

19           A.  I have not.

20           Q.  All right.  Same question, do you

21      believe that one exists?

22           A.  I do.

23           Q.  All right.  Why do you believe that?

24           A.  Because there were four of us in

25      there and we talked about percentages and

18

1    shares and things. But I could be wrong on

2    it, but I just, what I thought.

3         Q.  If one existed, who would be in

4    possession of it?

5         A.  That's a good question.  I don't

6    know. Maybe -- I don't know.  I'd just be

7    speculating.

8         Q.  All right, you testified previously

9    that you are in fact a shareholder of U

10   Lock; correct?

11        A.  I believe I am, yes, that is

12   correct.  That is what I testified.

13        Q.  And how many shares do you own?

14        A.  Oh, I believe it's in the millions,

15   like 4 million, but I think there's 100

16   million shares, so it amounts to not a lot.

17        Q.  Have you ever received a share, a

18   certificate for your shares?

19        A.  No, I have not.

20        Q.  Do you know if other shareholders

21   received certificates evidencing their

22   ownership?

23        A.  I don't know.

24        Q.  Who made the decision to issue 100

25   million shares for this corporation?

19

1          A.  I would think that would be, well,
2     George, Christine, John.  I don't know.
3     Between the three of them.  I'd say maybe
4     George or Christine would have to be who I
5     would think.
6          Q.  Do you know if George or Christine,
7     do you know if either one of them or
8     yourself received any advice from outside
9     individuals to issue the 100 million shares?
10         A.  I don't know.
11         Q.  Did you ever talk to anybody other
12    than Christine, John, or George about the
13    number of shares to be issued for U Lock?
14         A.  I did not.
15         Q.  You testified that you've been an
16    officer since the beginning, and I believe
17    you said that you were the vice president;
18    is that correct?
19         A.  My testimony was sort of that that's
20    ambiguous to me.  But I know I've signed
21    things as director, and that's the best I
22    could do with that.  I apologize.
23         Q.  Is George also a director?
24         A.  I have seen him do that before, so I
25    guess so. I've seen him sign the same way.

20

1           Q.  What were George's duties as an

2      officer and director?

3           A.  Well, I don't know the official

4      capacity, but we just always all worked.  I

5      mean, he lined up -- he sort of seemed like

6      he quarterbacked the work to cleaning up the

7      property, the getting rid of garbage,

8      getting rid of, you know, things that we

9      would recycle.  He would, you know, fix

10     things that needed fixed.  He would pay

11     workers.  Between him and John they would

12     pay workers.  And then sometimes he dealt

13     with tenants.  Not much when I was around a

14     lot.  The less I've been around, the more he

15     does that.

16          Q.  Did George have check-signing

17     authority?

18          A.  I don't think so.  I think that was

19     just me.

20          Q.  That was just you?  Okay.

21          A.  As far as the bank, it was only me,

22     but I would do online stuff.  Let me think.

23     George sort of, with, as far as the working

24     end of things go, he would -- he would meet

25     with Christine. I was there probably 90

21

1    percent of the time, but he was 100 percent

2    as far as meeting with her weekly.  With

3    John, that was almost daily. I'm sorry, I'm

4    like --

5        Q.  Where did the company bank?  Oh, go

6    ahead, sorry.

7        A.  Oh, that's okay.  Citizens.  I was

8    -- I was still going over George's duties.

9    Are we finished with that or, 'cause there

10   was, you know, the grass cutting, the

11   regular stuff that needs regular

12   maintenance.  But he did, you know, he

13   installed the roads and did the asphalt on

14   the property, a huge portion of the

15   property.  I mean, it might be almost half

16   the property.  But did electric work.

17       Q.  And how did --

18       A.  There was -- there were years of

19   work.

20       Q.  How did George's -- how did -- how

21   did his, if in fact they were different, how

22   did George's responsibilities and duties

23   differ from yours?

24       A.  Well, I'd say he was -- he was more

25   hands-on in maintenance and probably like a

CONT 341 MEETING OF CREDITORS  -  1/17/2023

22

```
 1        better skill set than me as far as that
 2        goes.  As far as dealing with John and
 3        Christine, George really found the deal and
 4        included them.  So, you know, once Christine
 5        invested, I mean, she was, fair is fair, she
 6        was the boss.  They sort of jumped whenever
 7        she said something, even if we had to leave
 8        U Lock to go to her house and, you know, she
 9        had him do excavating at her house and we
10        just, I mean, he jumped, took machines in
11        there and we (Inaudible) there.  That's
12        just, you know, so he was with -- him and
13        her were -- I'd say it was like, say it was
14        me and George and her and John.  I'd say she
15        was the boss of her and John, that he was
16        the boss of me and him, but that's -- that's
17        nothing official, but I -- just that's the
18        way it went.
19            Q.  Did you ever have Board of Directors
20        meetings?
21            A.  Yeah, the -- the Wednesdays that we
22        would meet at their -- at their business,
23        that was -- that was U Lock-related every
24        time, so that was every Wednesday.  And John
25        and George saw each other daily.  They
```

**Appendix Vol. II, Page 551**

23

1     typically would go to Arby's and they'd,

2     same thing, it was, you know -- I don't -- I

3     don't know if that was more fluff than

4     anything, but at the -- at the weekly

5     meetings, Caesar's Bar down in Turtle Creek

6     was the -- that's where we talked about U

7     Lock. And that was without exception every

8     Wednesday. And like I said, if I -- I might

9     have missed one or two in the years that we

10    did it.  And the only time I quit going was

11    when they filed a lawsuit, which was, I

12    think we found out about it like a day after

13    we met with them and we were like --

14         Q.  Mr. Snyder.

15         A.  They didn't say anything.

16         Q.  Mr. Snyder, if we -- if we can stay

17    on, on the questions.

18         A.  Yeah, sorry.

19         Q.  Did you consider -- did you consider

20    those to be Board of Directors meetings?

21         A.  Yeah, I could -- I could label them

22    that.

23         Q.  All right.  Did you keep minutes

24    from those meetings?  Did the company keep

25    minutes from those Board of Directors

24

1      meetings?

2           A.  No, but she would keep notes and --

3           Q.  Who is she?

4           A.  Oh, I'm sorry.  Christine Biros at

5      times would keep notes, and once in a while

6      we would, but it wasn't -- it wasn't like

7      your typical meeting.  I know John did

8      things on napkins at different restaurants

9      and things like that, but at the weekly

10     meetings at Caesar's --

11          Q.  Are --

12          A.  Anything, anything I have would be

13     maybe with my things that are still at U

14     Lock.

15          Q.  Okay, so I was just going to ask

16     you, are you in possession of any minutes

17     that were sent out after any Board of

18     Directors meeting?

19          A.  Yes.  But I'm not calling -- I mean,

20     minutes, but they're -- you're calling them

21     minutes, and I understand like it's, you

22     could sort of like label them that way, but

23     they're basically just notes or like a to-

24     do list.

25          Q.  Did you -- did you ever attend or

CONT 341 MEETING OF CREDITORS  -  1/17/2023

25

1    were notices ever sent out notifying

2    directors that there would be a Board of

3    Directors meeting, written notices?

4         A.  No.  It was -- it was sort of hush-

5    hush and it was, you know, Christine was

6    under investigation.  I think maybe the

7    whole family was; I'm not sure.  But there

8    was just, we sort of kept things just quiet,

9    but it was, I mean, it was -- what was going

10   on was just sort of day to day running the

11   business waiting to develop this property,

12   so --

13        Q.  Did you ever attend an annual

14   meeting of the shareholders?

15        A.  Nothing labeled that way.

16        Q.  Do you know if a notice was ever

17   sent out to all shareholders notifying them

18   of an annual meeting?

19        A.  I know that I never received one.  I

20   would have to assume no --

21        Q.  Okay.

22        A.  -- to the rest.

23        Q.  Have you ever seen or are you in

24   possession of minutes from a shareholders

25   meeting?

26

1      A.  No.

2      Q.  Did the company ever make

3   distributions to its shareholders or any

4   shareholder?

5      A.  There was no money to distribute.  I

6   know I personally never did.

7      Q.  Who all had -- you mentioned that

8   the bank account, that you would do most

9   things online. Who all had credentials to

10  sign on online to that bank account?  Or was

11  it just you?

12     A.  To my recollection, just me.

13     Q.  Mr. Slone asked you a question about

14  your counsel, Mr. Roth, and whether or not

15  you had paid him for this bankruptcy, and I

16  believe your answer was no, and he asked if

17  anyone had paid him and I believe your

18  answer is no.  So is it your understanding

19  as an officer of U Lock that Mr. Roth is

20  handling this matter for free?

21     A.  I never thought about it.  I would

22  think -- I don't -- I don't know how that

23  goes.  I really don't know.  I apologize.

24     Q.  Do you have any understanding of

25  whether or not he would be paid in the

**Appendix Vol. II, Page 555**

27

1        future by U Lock or anyone else?

2            A.   I don't have any understanding of

3        that either.

4                MR. BURKLEY:  Okay, I don't have

5        any further questions.

6                MR. KASH SNYDER:  Thank you.

7                MR. SLONE:  Who, who else would

8        wish to ask some questions at this time?

9                MR. ZEBLEY:  Mr. Slone, this is

10       Zebley.  Can I -- I was getting back on from

11       the mute.  Could I ask a couple questions?

12               MR. SLONE:  Yes, sir.

13   EXAMINATION OF KASH SNYDER:

14   BY MR. ZEBLEY

15           Q.   Okay.  Mr. Snyder, I just want, this

16       is really kind of a follow-up or a different

17       variation of the questions you've just been

18       asked; but who is getting paid to give legal

19       advice in connection with the U Lock

20       bankruptcy?

21           A.   To my knowledge nobody has received

22       payment.

23           Q.   Who is going to get paid for giving

24       legal advice in connection with the U Lock

25       bankruptcy?

28

1          A.  From what I know, Attorney Roth will

2      get paid if it's approved by the Court.

3          Q.  If what is approved by the Court?

4          A.  The payment to him.

5              MR. ZEBLEY:  What, Attorney Roth,

6      can you shed light on that?

7              MR. ROTH:  Well, look, I believe

8      it's their intention to pay me at some

9      point, and so that's where we are; but I

10     have not been paid anything to this point.

11         Q.  (BY MR. ZEBLEY)  Back to you, Mr.

12     Snyder.  Is there an agreement with Attorney

13     Roth regarding payment?

14         A.  None that I know of.

15         Q.  And this approval again is by the

16     Court approving payment from U Lock assets?

17         A.  That's something I don't know.  I

18     think there's an hourly fee that is being

19     requested from the Court or, you know, to be

20     approved by the Court or something, and so I

21     don't know about that.

22         Q.  Well, who does know about this?

23         A.  I don't know, but I know I can't pay

24     and so --

25         Q.  That wasn't my question.  Who knows

**Appendix Vol. II, Page 557**

29

1          about the arrangement with Mr. Roth?

2              A.   (Inaudible) knows about the

3          arrangement.   The Bankruptcy Court.

4              Q.   Pardon?

5              A.   The Bankruptcy Court would know.

6              Q.   Well, Mr. Roth just isn't doing this

7          on his own, is he?

8              A.   I believe he is.   He's stuck in it,

9          from what I gather.

10             Q.   And why is Mr. Roth stuck in this?

11             A.   It was because he was their

12         attorney.   That's something I don't know.

13             Q.   Who knows?

14             A.   I could give the phone to George

15         Snyder.   Maybe he does.

16                  MR. ZEBLEY:   That's -- Mr. Slone,

17         is that okay with you?

18                  MR. SLONE:   Yeah, we'll swear,

19         Mr. -- Mr. Snyder, George Snyder, you were

20         sworn in on 9/9/22 at the 341 Meeting.

21         You're still under oath.   Go ahead.

22                  MR. GEORGE SNYDER:   Okay.   I'm

23         not sure --

24    EXAMINATION OF GEORGE SNYDER:

25    BY MR. ZEBLEY

30

1        Q.  Mr. Snyder, have you heard my
2     questioning of -- this is Zebley -- have you
3     heard my questions directed to Mr. Kash
4     Snyder?
5        A.  Yes.
6        Q.  Who was authorized --
7        A.  Yes, I heard your question.  Pardon
8     me?
9        Q.  Okay, you heard those questions.
10    Can you shed some light on what --
11       A.  I'm not sure how much more light I
12    could shed on it.  But I believe Mr. Roth
13    filed notice with the Court, like his hourly
14    fee.  And we haven't paid him anything, and
15    I just, it's my understanding that if he --
16    if the Court -- that we're not allowed to
17    pay him anything. Everything has to go
18    through the Bankruptcy Court.  So it was my
19    understanding that he would, if the Court
20    approved it, then that's the only way he
21    would get paid for these services during
22    bankruptcy.
23       Q.  Is there an agreement with Mr. Roth?
24       A.  Well, I don't think we have a signed
25    agreement. I think it's just what the notice

31

1    at Court maybe he filed.

2        Q.  Well, who's authorizing Mr. Roth to

3    proceed?

4        A.  Well, I am.  We don't have any other

5    attorney and he's -- he's willing to do it.

6    I don't know that he's stuck doing it like

7    Kash said, but he -- he, you know, he filed

8    his appearance in this case and he's our

9    attorney, and so I authorized him to do

10    whatever he's doing.

11        Q.  So your testimony is, Mr. Snyder,

12    that any steps taken in this U Lock

13    bankruptcy or the Shanni Snyder bankruptcy,

14    you have authorized Mr. Roth to take?

15        A.  I didn't hear what you said about

16    Shanni.

17        Q.  Well, do you (Inaudible) Shanni

18    Snyder bankruptcy --

19            MR. JOYCE:  John, John Joyce.  I

20    just got here.  I was at a conference, so

21    I've jumped in for Beth Slaby.  Yeah, your

22    last question brought up Ms. Snyder's

23    bankruptcy, and there was no foundation or

24    anything about Roth, I mean, unless Roth has

25    filed something for U Lock in that case --

32

1          Q.  All right.

2               MR. JOYCE:  -- he's not involved.

3          Q.  Then drop Shanni Snyder from the

4      question.

5          A.  Okay, I authorized what Mr. -- Mr.

6      Roth has done up and to this point, and he

7      has to seek the money from the Court.

8          Q.  Everything that Mr. Roth has done?

9          A.  Yes.

10         Q.  And there is no writing that exists

11     that memorializes an agreement between you

12     and Mr. Roth, between U Lock and Mr. Roth?

13         A.  Yes, that he filed with the Court.

14     It's on the docket, I believe.

15         Q.  Okay.  And you'll get that docket

16     number to everybody; correct?

17         A.  Yeah, I'll make a note of that if

18     you'd like that.

19         Q.  Is there any other person that is

20     giving legal advice in connection with this

21     case to U --

22         A.  No.

23         Q.  -- to the U Lock shareholders?

24         A.  No.  Just me.

25         Q.  Just Mr. Roth?

33

1          A.  Yes.  I'm not sure if Christine or

2      any of the other shareholders are, but just,

3      I just know about me.  I don't know about

4      Christine or Mr. Otto.

5          Q.  And was the -- when Shanni Snyder

6      filed her lawsuit, was that referred to

7      anybody for legal advice?

8          A.  Well, I spoke with Mr. -- I spoke

9      with Mr. Roth about it, and it was, at that

10      time I think he said it would be a $10,000

11      case to defend.  So I -- I didn't want to

12      pay for that.

13          Q.  Mr. Roth wanted $10,000 up front to

14      defend it?

15          A.  I don't even think we got that far.

16      We -- I discussed it and he says it would be

17      a $10,000 case.  And he didn't -- he didn't

18      necessarily say up front.

19          Q.  All right.  The last question, and

20      this may -- I may be repeating it a little

21      bit and I apologize.

22          A.  Okay.

23          Q.  Under what circumstances will Mr.

24      Roth get paid in connection with this case,

25      this bankruptcy?

34

1          A.  It's my understanding that if the

2     Court approves his hourly legal fee that is

3     in the docket that I'll be sending you, if

4     the Court approves it and if there's money,

5     if U Lock has money, then I guess he could

6     have to, you know, he'd have to ask the

7     Court to pay him.  If they don't, then I

8     guess he would not get paid.

9          Q.  Where does your understanding come

10    from?

11         A.  What do you mean?

12         Q.  Well, you say you have an

13    understanding. You're not a lawyer.  I'm

14    just curious as to how you would --

15         A.  Right, I mean --

16         Q.  -- come to that conclusion?

17         A.  Yeah, you're asking me like for

18    legal advice, and I'm not a lawyer, so I'm

19    really not sure, but that's my

20    understanding.  I just know --

21         Q.  Why do you have that understanding?

22         A.  I just thought I knew he couldn't

23    get paid without the Court approval, 'cause

24    I was told by Mr. Slone and by the Judge

25    that like I'm not -- you know, that sort of

35

1      Mr. Slone's in charge of everything.  I

2      can't take the money from U Lock and pay who

3      I choose to pay.  So it would be up to the

4      Court, is what I thought.

5          Q.  Well, wouldn't Mr. -- wouldn't Mr.

6      Roth be the appropriate person to tell you?

7          A.  Yeah, we -- we've talked about it,

8      that's what I -- that's what I said earlier.

9       I'm not sure if maybe I wasn't clear.  But

10     that, that's what me and Mr. Roth discussed.

11         Q.  Okay, and he has said that he will

12     get paid out of the assets of U Lock?

13         A.  I'm not sure if this is -- Allen's

14     here.  You might want to ask him.  I'm not

15     sure if this is privileged between me and my

16     attorney to tell you what we discussed and

17     (Inaudible).

18         Q.  Well, actually this is U Lock.  The

19     privilege belongs to the Chapter 7 Trustee.

20     So I don't think that's an appropriate

21     objection.

22         A.  Okay, I mean, I think, I believe at

23     one point Mr. Roth told me that he'd have to

24     ask the Court for the -- for the money, and

25     he said if the Court approves it, then, you

36

```
1        know, they get to decide all payments, and

2        if they approve it, then he'll get paid.  If

3        they do not approve it, he won't get paid.

4        So I don't really have any other research

5        into that or knowledge of that other than

6        kind of what Mr. Roth and I talked about or

7        what I heard in court with the Judge.

8             Q.  Well, when did you and Mr. Roth talk

9        about this?

10            A.  Over the past several months.

11            Q.  Before or after U Lock's bankruptcy

12       started?

13            A.  Well, it would have been after.  I

14       would have had no knowledge of this.  I

15       would have had no knowledge of this

16       bankruptcy until it came, so it would have

17       been after.

18            Q.  And up till that point Mr. Roth was

19       working for free?

20            A.  Well, the bankruptcy --

21            Q.  No.

22            A.  The bankruptcy was involuntary, so

23       --

24            Q.  You've been doing work before the

25       bankruptcy?
```

37

1           A.  Oh, before the bankruptcy?

2           Q.  Yes, sir.

3           A.  Yeah, we -- we didn't pay him

4      anything pre-bankruptcy.

5           Q.  Because he had agreed to work for

6      free?

7           A.  No, it wasn't all free.  I think he

8      got paid during the -- in the beginning of

9      the Biros litigation.  I think that was

10     prior to -- I don't know if that was 2017.

11     2000 -- I think it was around 2017.  But

12     then after that --

13          Q.  What did --

14          A.  -- yeah, he didn't receive any

15     payments.

16          Q.  What did you pay him in 2000 -- what

17     did you pay him in 2017?

18          A.  I'm sorry?

19          Q.  What did you pay him in 2017?

20          A.  I think it was around $5,000.  I'd

21     have to check.

22          Q.  And is there a writing memorializing

23     the payment arrangement with Mr. Roth for

24     the work he had done pre-bankruptcy?

25          A.  No.

38

1          MR. ZEBLEY:  All right, Mr.

2     Slone, that's all the questions I have.

3          MR. SLONE:  Thank you.  Who

4     wishes to go next?

5          MR. GEORGE SNYDER:  Should I --

6     I'll hand the phone back to Kash.

7          MR. SLONE:  Okay.  Anyone else

8     wish to ask questions?  Mr. Joyce, Mr.

9     Kobeski?

10          MR. JOYCE:  No, Mr. Slone, we're

11     -- we don't have any questions.

12          MR. SLONE:  Okay.  If no one else

13     has a question, we can close the meeting at

14     this time.  Thanks, everybody, for

15     participating.

16          MR. KASH SNYDER:  Thank you all

17     as well.

18          MR. SLONE:  Thank you, bye. (341

19     Meeting concluded.)

20

21

22

23

24

25

39

```
1

2

3                   C E R T I F I C A T E

4

5        I, Mary J. Carney, a Court Reporter and Notary

6   Public in and for the Commonwealth of Pennsylvania,

7   do hereby certify that the foregoing is a true and

8   correct transcription of the recorded proceedings of

9   the January 6, 2023, Continued 341 Meeting of

10  Creditors and constitutes a true record.

11

12  This 17th day of January, 2023.

13

14

15  _____
              Notary Public
16

17

18

19

20

21

22

23

24

25
```

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a         )
U-LOCK INC.               )     Bankruptcy 22-20823-GLT
                        )
        Debtor.     )     Chapter 7
                        )
—------------------------------------------------- )

## DECLARATION OF GEORGE SNYDER

    I, George Snyder, declare and state under the penalty for perjury that the

following is true and correct (28 USC 1746):

1. My name is George Snyder.  I am an officer of U Lock Inc.
2. I am making this declaration in response to Trustee Robert Slone's request for 1099 or W-2 records of employees and independent contractors.
3. U Lock had persons that did do work for the Company since 2015 through 2022.
4. No 1099s were filed because they did not receive cash compensation in excess of $550.  John Biros told us the way he handled pay for people who helped with his machines was to keep cash payments under the reporting requirements and that he'd like to keep it similar to that.  Christine Biros stated the same thing similar, but it was primarily John insisting to be careful about having to file things.  The cash payments under $550 per year were people who helped with the landscape, construction, maintenance, painting, electrical, errands.  I do not know if, whether it was formally calculated, what they actually received from U Lock amounts to minimum wage.  Hopefully it was near minimum wage, but I cannot be certain.  I had some notes and books, flashdrives, in the trailer at U Lock in file box, but I could not access due to the lockout by Christine Biros. When I finally obtained access to that trailer in January 2023, before it was demolished, the file box was not there.  Therefore, I can only go by memory.  I recall some of the workers from 2015 to 2022 were Nicole Delancey, Ray Weishorn, Amber Leddon, Ray Weishorn, Angelica Weishorn, Tristan Weishorn, Kyle Wishorn, Kathy Gribshaw, Karley Gribshaw, Gina Gribshaw, none earning more than $550 per year but the exact amounts are in the records which disappeared from the trailer.  There may be some other people whose names I cannot present recall.
5. At first we would provide workers with food, often from the pizza shop in White Oak controlled by the Biros family.  Sometimes food would be given from Sheetz or McDonalds, etc.  We did not consider the food compensation where we issued a 1099 for giving them that.  Sometimes John Biros paid, sometimes we used U Lock rent money, or I loaned money for the food.
6. To the extent these workers did not receive minimum wage, I am unclear on what is required, but they never stated they were owed more so I did not list them as creditors. I still do not fully understand what is required under the

**Appendix Vol. II, Page 569**

Labor Laws, who is an employee, and how to determine that since they were paid so little.

7. Our executive employees such as John Biros, Kash Snyder, and myself, we did not take money for salary, all hoping to advance the company until Robert Biros interfered and made Christine Biros file suit. I understand we were due minimum wage for our work because even executives are entitled to that, but we did not pay it because the company had very little revenue. I would not consider Christine Biros an employee since she just participated in Board meetings at her bar on a weekly basis. She was more like a Director or officer, but not actually working on site. Per the instruction of Christine Biros and John Biros, at the weekly meetings from 2015 through 2018, salary to cover the work would come once we rented to tenants. John Biros had almost daily meetings from 2015 to 2018, he worked on site sometimes, he brought some of his personal effects and stored them there, and he was an executive, and Kash Snyder worked for the company, along with me. Kash worked on site and offsite, but he did not receive income for the same reasons.

8. John Biros provided the Company pickup truck until 2020 when he said he needed it. John and I would obtain supplies, shelving, and things in the truck. I did not list the truck on the schedules because I think he might have kept the title in his name.

9. People who helped out, and whatnot, and people like Shanni Snyder who helped with security and cameras, were not salaried employees receiving cash. Because they received no cash or compensation, we did not issue a W-2. If we eventually have to pay them, or if we can pay them, we would issue a 1099 at that time. But we cannot issue a 1099 because we can't pay.

10. For these reasons, I cannot provide 1099s or W-2s.
Dated this 12th day of February 2023.

/s/ George Snyder

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>       Debtor. | Bankruptcy No. 22-20823<br><br>Chapter 7 |
| CHRISTINE BIROS,<br><br>       Movant,<br><br>       v.<br><br>GEORGE SNYDER,<br><br>       Respondent. | Related Doc. No.: |

**NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING OBJECTION TO
CLAIM NUMBER 5 FILED BY GEORGE SNYDER**

TO THE RESPONDENT(S):

You are hereby notified that the Movant seeks an order affecting your rights or property.

You are further instructed to file with the Clerk and serve upon the undersigned attorney for Movant a response to the Motion by no later than March 27, 2023 (*i.e.*, thirty (30) days after the date of service below), in accordance with the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and the general procedures of the presiding judge as found on the Court's webpage at www.pawb.uscourts.gov. If you fail to timely file and serve a written response, an order granting the relief requested in the Motion may be entered and the hearing may not be held. Please refer to the calendar posted on the Court's webpage to verify if a default order was signed or if the hearing will go forward as scheduled.

You should take this Notice and the Motion to a lawyer at once.

An in-person hearing will be held on April 13, 2023,, at 10:30 a.m. before Judge Gregory L. Taddonio in Courtroom A, 54th Floor U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA, 15219. In accordance with Judge Taddonio's procedures, parties may appear for non-evidentiary matters remotely by utilizing the Zoom video conference platform. Parties seeking to appear remotely must register for the hearing by submitting a registration form

**Appendix Vol. II, Page 571**

via the link published on Judge Taddonio's website (which can be found at
http://www.pawb.uscourts.gov/judge-taddonios-video-conference-hearing-information) by no
later than **4 p.m. on the business day** prior to the scheduled hearing. All parties participating
remotely shall comply with Judge Taddonio's *General Procedures*, (which can be found at
http://www.pawb.uscourts.gov/sites/default/files/pdfs/glt-proc.pdf).

**Parties who fail to timely register for remote participation will be expected
to attend the hearing in person.**

Only a limited time of ten (10) minutes is being provided on the calendar. No
witnesses will be heard. If there is an issue of fact, an evidentiary hearing will be scheduled by
the Court for a later date.

Date of Service: February 24, 2023

BERNSTEIN-BURKLEY, P.C.

By: */s/ Robert S. Bernstein*
    Robert S. Bernstein (PA ID No. 34308)
    Lara S. Martin (PA ID No. 307272)
    601 Grant Street, Floor 9
    Pittsburgh, PA 15219
    Telephone: (412) 456-8100
    Facsimile: (412) 456-8135
    rbernstein@bernsteinlaw.com
    lmartin@bernsteinlaw.com

    *Counsel for Christine Biros*

**Appendix Vol. II, Page 572**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

FILED
3/2/23 3:35 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

|  |  |  |
|---|---|---|
| In re: | : | Case No.  22-20823-GLT |
|  | : |  |
| **U LOCK INC,** | : | Chapter 7 |
|  | : |  |
| *Debtor.* | : | Related Dkt. Nos. 337, 340 , 344, 345 and 294 |
|  | : |  |

## **ORDER**

To efficiently hear the matters before the Court at the same time, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.     The *Objection to Claim of George Snyder at Claim Number 5* [Dkt. No. 337] scheduled for April 13, 2023 at 10:30 a.m. is **RESCHEDULED** to 1:30 p.m. on April 13, 2023;

2.     The *Objection to Claim of Shanni Snyder at Claim Number 1* [Dkt. No. 340] scheduled for April 13, 2023 at 10:30 a.m. is **RESCHEDULED** to 1:30 p.m. on April 13, 2023;

3.     The *Consent Motion to Approve Compromise* [Dkt. No. 345] scheduled for April 13, 2023 at 10:30 a.m. is **RESCHEDULED** to 1:30 p.m. on April 13, 2023;

4.     The *Order to Show Cause* [Dkt. No. 294] is continued to April 13, 2023 at  1:30 p.m.

5.     The *Amended Application for Administrative Expenses* [Dkt. No. 344] is scheduled for April 13, 2023 at 1:30 p.m.

6.     All hearings will be held Courtroom A 54th Floor U.S. Steel Tower, 600 Grant St., Pittsburgh, PA. With the exception of the Order to Show Cause where parties are required to attend in person, parties may appear via Zoom Video Conference in compliance with Judge Taddonio's Procedures.

Dated:  March 2, 2023

_____
**GREGORY L. TADDONIO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

**Appendix Vol. II, Page 573**

FILED
3/28/2023 12:03 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In re:  U LOCK INC. a/k/a          )
U-LOCK INC.                        )          Case. 22-20823-GLT
                                   )
                    Debtor.        )
                                   )          RE Motion at 337

### GEORGE SNYDER'S RESPONSE OPPOSING THE OBJECTION TO MY CLAIM

I am an officer of the debtor U Lock.  I file this response to the objection in my personal capacity as a creditor who filed the proof of claim.

Biros attaches one declaration I provided, but forgot to attach the Declaration I gave to the Trustee on or around September 7 2022.  I have attached it hereto.  The trustee emailed asking for more information about my claim so I provided the Declaration.  The Trustee gives Ms. Biros everything I give him, so I am not sure why they forgot it. The Trustee didn't ask for more.  The Declaration about the employees was about the request for W2s and 1099s that don't exist, explaining why, which I gave to the Trustee at his request and he gave it to Biros.


Anyway as this Court knows, I worked for U Lock, or I guess Christine Biros if she is right that she owned the business at all times, since 2015 and received nothing to compensate myself.  It is true I didn't list myself as an employee when I did the schedules for U Lock. From the company's perspective, I was an officer. But I also performed actual labor there, maintenance, cleanup, supervising contractors, administering, customer service, everything, meeting with John Biros practically every day from 2015 to 2018, meeting with Christine Biros weekly to give status updates, all of that is work.

From my personal perspective, I filed a proof of claim by the claim's deadline giving everyone notice of my claim.  I thought that was the procedure.  I didn't know I had to amend and amend every time a claim was filed.  I can file amended schedules for U Lock and list all

**Appendix Vol. II, Page 574**

these claims that were lodged including the Biros claims of the specious environmental damage,the shanni claim, and my claim. Certainly the IRS I think I listed them on the original schedules.

   I filed this claim for wage after researching this Shanni Snyder claims and how vast and broad the FLSA was, I believe it covers me even though I was an officer and owner. There were over 1000 shareholders I didn't list them all on the schedules because this court didn't convert the case to Chapter 11. I understand I don't have to give a shareholder list in a Chapter 7. I can upload one. Also John Biros was partner, he had daily meetings with me form 2015 to 2018, then even after that meetings up until 2019. Christine Biros had weekly meetings with me, even after she filed her lawsuit, still had meetings about the plan moving forward. So it's just not the shareholders here that were on paper, this was supposed to be a partnership.

   Regardless I think my claim should be sustained, I think I am entitled to at least minimum wage or the minimum executive compensation. I did a lot of work. I incorporate my declaration attached and the declaration that Biros did file.

   I declare under penalty for perjury that the above is true and correct.

   This March 26, 2023.

*George Snyder*

George Snyder
PO Box 15
Irwin PA  15642
412-979-9999

DECLARATION OF GEORGE SNYDER

FILED
3/28/2023 12:03 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

I, George Snyder, declare and state under the penalty of perjury that the following is true and correct:

1.  My name is George Snyder.

2.  From July 2015 to the present, I acted as executive of U Lock Inc. and/or, pursuant to Christine Biros' theory, her constructive trust. I believe that U Lock Inc. owes the minimum wage and, if Christine Biros is correct in her legal theories that U Lock is a constructive trust for her, then she jointly owes the wage.

3.  I did not perform only executive duties at U Lock, I also performed labor. Specifically, my duties entailed: Management of the enterprise, weekly meetings with the Biros family (John and Christine) through June 2018, renting units, collection of rents, check mail daily, cut grass and whack weeds weekly, spray round up monthly, remove trees and overgrowth, remove snow, plow snow, salt roads, graded parking area, put down millings, graded access road in back to upper level, cleaned up tires and scrap that had been dumped, met routinely with customers, cleaned out units when a person left, fixed and secured electrical service (guide wire for mast), fixed leaks in roof, lubricated and adjusted doors, met with and administered highways projects, moved around heavy machinery, cleanup, replaced rotting wood framing, put gravel down in both aisles, general management, monitor trespass incidents, deal with lawsuit issues, prepare documents, and many other tasks.

4.  I filed a proof of claim alleging that U Lock owed me $99,999 for wage. This is because I did not receive compensation from U Lock or Christine Biros in any way.

5.  The Fair Labor Standards Act requires that most employees in the United States be paid at least the federal minimum wage for all hours worked and overtime wage at not less than time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

6.  However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees. Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees. These exemptions are often called the "white-collar" or "EAP" exemptions.

**Appendix Vol. II, Page 576**

7. To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $684 per week. Job titles do not determine exempt status. In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

8. I did not receive a salary of at least $684 per week. In fact, due to U Lock's insolvency since its inception, I received no salary whatsoever.

9. I worked approximately 5 days per week. From July 10, 2015, until April 26, 2022, when the bankruptcy was filed, there were 2,481 days. I worked approximately 5 days per week. Excluding weekends, there were 1,771 days, totalling approximated 7,084 hours of unpaid work.

10. The calculations I used are as follows;

---

**July 2015**

16 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     | 1   | 2   | 3   | 4   |
| 5   | 6   | 7   | 8   | 9   | 10  | 11  |
| 12  | 13  | 14  | 15  | 16  | 17  | 18  |
| 19  | 20  | 21  | 22  | 23  | 24  | 25  |
| 26  | 27  | 28  | 29  | 30  | 31  |     |

11.

**August 2015**

21 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|

---

**September 2015–March 2022**

September 2015–December 2015: 88 days included

Year 2016: 261 days included

Year 2017: 260 days included

Year 2018: 261 days included

Year 2019: 261 days included

Year 2020: 262 days included

Year 2021: 261 days included

January 2022–March 2022: 64 days included

**April 2022**

16 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | | | | | | |

12. While I did not *per se* "take off" weekends, I used this calendar for calculation purposes because there were some days I did not work.

13. I worked approximately 4 to 5 hours average per day or more dealing with U Lock Inc. or under Christine Biros' theory, her trust including monitoring and maintaining the property, cutting the grass, providing customer service, dealing with the legal proceedings, paying its bills, collecting from tenants, etc.Excluding weekends, there were 1,771 days, totalling approximately 7,084 hours of unpaid work.  At minimum wage, that would entitle me to $51,359.compensation from U Lock (or Christine Biros under her theory).

14. Moreover, under the FLSA, apparently I would be owed liquidated damages of the same amount because U Lock and, under Christine Biros' theory, the her trust, so I doubled the amount in my proof of claim.

15. These are extremely low estimates of the time and hours I put in.

16. Alternatively, if it is found that I am a salaried executive, I would be entitled to $684 per week, which well exceeds the $99,999 claim I submitted.

George Snyder

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                    .      Case No. 22-20823-GLT
                          .
                          .
U LOCK INC,               .      5414 U.S. Steel Tower
                          .      600 Grant Street
                          .      Pittsburgh, PA 15219
          Debtor.         .
                          .      April 13, 2023
. . . . . . . . . . . . ..       1:30 p.m.

    TRANSCRIPT OF #294 CONTINUED ORDER TO SHOW CAUSE SIGNED
   ON 1/17/2023. (RE: RELATED DOCUMENT(S): 258 APPLICATION
  FOR ADMINISTRATIVE EXPENSES; #278 CONTINUED AMENDED ORDER
 TO SHOW CAUSE SIGNED ON 1/6/2023. (RE: RELATED DOCUMENTS(S):
   249 ORDER SCHEDULING HEARING); #345 CONSENT MOTION TO
 APPROVE COMPROMISE UNDER RULE 9019; #340 OBJECTION TO CLAIM
  OF SHANNI SNYDER; AT CLAIM NUMBER 1; #337 OBJECTION TO CLAIM
   OF GEORGE SNYDER; AT CLAIM NUMBER 5; #344 AMENDED
      APPLICATION FOR ADMINISTRATIVE EXPENSES PURSUANT TO
 11 U.S.C. 503(b)(1) AND/OR FOR PAYMENT OF ADEQUATE PROTECTION

             BEFORE HONORABLE GREGORY L. TADDONIO
             UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Law Office of J. Allen Roth
                         By:  J. ALLEN ROTH, ESQ.
                         805 S. Alexandria Street
                         Latrobe, PA 15650

For George Snyder:       By: GEORGE SNYDER, PRO SE
                         Box 15
                         Irwin, PA 15642


ECRO:                    Hayley Smith


 Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For Christine Biros:          Bernstein-Burkley, P.C.
                             By:  ROBERT S. BERNSTEIN, ESQ.
                                  MARK LINDSAY, ESQ.
                             601 Grant Street, 9th Floor
                             Pittsburgh, PA 15219

For Christine Biros,         The Law Firm of William E. Otto
Lead Counsel in the          By:  WILLIAM E. OTTO, ESQ.
State Court Action:          4027 Old William Penn Highway
                             P.O. Box 701
                             Murrysville, PA 15668

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:           Mahady & Mahady
                             By:  ROBERT H. SLONE, ESQ.
                             223 South Maple Avenue
                             Greensburg, PA 15601

For Shanni Snyder:           The Lynch Law Group LLC
                             By:  JOHN PATRICK LACHER, ESQ.
                             501 Smith Drive, Suite 3
                             Cranberry Twp, PA 16066

- - -

**Appendix Vol. II, Page 581**

1          ECRO:  Court may now come to order.  The Honorable

2    Gregory L. Taddonio presiding.

3          THE COURT:  All right.  Good afternoon, everyone.

4    This is the United States Bankruptcy Court for the Western

5    District of Pennsylvania and this is the Court's docket of

6    Chapter 7 and Chapter 11 matters on this Thursday, April 13,

7    2023.  The matter under consideration at this time is Case

8    Number 22-20823, U LOCK INC.  I'll begin by taking appearances

9    first here in the courtroom and I'll start over here.  Mr.

10   Roth?

11         MR. ROTH:  Alan Roth on behalf of U LOCK.

12         THE COURT:  All right, good afternoon.

13         MR. SNYDER:  George Snyder.

14         THE COURT:  All right, good afternoon.  Want to come

15   over here?

16         MR. BERNSTEIN:  Your Honor, on behalf of Christine

17   Biros, Robert Bernstein, Bernstein-Burkley.

18         THE COURT:  Okay.

19         MR. BERNSTEIN:  William Otto sitting next to me.

20         THE COURT:  All right, good afternoon.

21         MR. BERNSTEIN:  Ms. Biros is in the courtroom next to

22   him and my colleague Mark Lindsay.

23         MR. LINDSAY:  Good afternoon.

24         THE COURT:  All right, good afternoon, everyone.  All

4

1 right, that satisfies the appearances here in the courtroom and

2 then I'll take appearances on the Zoom call.  I'll start first

3 with the Chapter 7 Trustee.

4          MR. SLONE:  Yes.  Robert Slone, Chapter 7 Trustee,

5 Your Honor.

6          THE COURT:  All right, good afternoon.  And, I'll

7 take an appearance for Shanni Snyder?

8          MR. LACHER:  Good afternoon, Your Honor.  John Lacher

9 on behalf of Shanni Snyder, and Shanni Snyder is in the room

10 with me, Your Honor.

11          THE COURT:  Okay, good afternoon.  All right, and is

12 there anyone else who wishes to enter an appearance in this

13 case?

14                    (No audible response)

15          THE COURT:  All right.  This is a hearing set on

16 several pending matters and I have -- the Claims Objections

17 filed by Christine Biros to the claims of George Snyder and

18 Shanni Snyder.  I have an Amended Application for Payment of

19 Administrative Expenses, including Post-Petition Rent,

20 relatedly a Consent Motion to Approve Compromise under Rule

21 9019, and then two continuations of hearings related to Orders

22 to Show Cause that were issued by the Court at Docket Numbers

23 278 and 294.  Unless there's any housekeeping matters that I

24 need to be aware of, I am just going forward in starting with

25 the claims objections, so any preliminary comments from the

1 parties that we need to address?

2                    (No audible response)

3          THE COURT:  All right, hearing none.  I'd like to

4 begin with the Christine Biros' objection to the claim of

5 George Snyder, which is Claim Number 5, and since this seemed

6 to help us with some efficiencies in the hearing, I'm going to

7 just go through some of my observations of what the parties

8 have argued at this point and just ask if there's additional

9 clarification or other remarks that anyone wants to add?

10          So, I have Claim Number 5-1 that was filed by George

11 Snyder in the amount of $99,000 as an unsecured claim or,

12 quote, wage, Fair Labor Standards, end quote.  There was no

13 supporting documentation attached to the claim, but it was

14 timely filed.  Ms. Biros has filed an objection indicating that

15 Mr. Snyder signed the schedules without listing a wage claim

16 and should be judicially estopped from doing so now, and at the

17 341 meeting, Mr. Snyder allegedly testified that, quote, the

18 $99,000 is what Biros would owe me, end quote, because he never

19 received officer compensation for the last seven years.

20          Ms. Biros asserts that the Fair Labor Standards Act

21 does not apply to these claims because, one, Snyder is not an

22 employee of the Debtor and testified the Debtor has no

23 employees.  The FLSA carves out establishments whose only

24 regular employees are the owner and immediate family members,

25 so Snyder is not entitled to a minimum wage.

1        In addition there is no evidence that Snyder was a

2   contractor for U LOCK, and even if he could assert a claim, the

3   statute of limitations is two years, not seven.  Mr. Snyder has

4   filed a response, indicating that he worked for Biros, and if

5   she is correct and owned the business at all times since 2015,

6   he filed the claim after researching Shanni's FLSA claim.  He

7   also cites to Section 13(a)(1) and 13(a)(17) of the FLSA, which

8   provides exemptions from Section 206 regarding minimum wage

9   requirements for employees in a bona fide executive,

10  administrative, or professional capacity, and certain skilled

11  computer workers, and the declaration provides as calculation,

12  assuming he worked four to five hours a day five days a week.

13  Mr. Snyder also asserts he doubled the amount of his actual

14  claim as liquidated damages.

15        So, that's the context of how I understand the claim

16  objection and I'll ask the parties if there's anything in

17  addition that they wish to add separate and apart from what's

18  already in the papers.  Mr. Bernstein?

19        MR. BERNSTEIN:  Assuming that Your Honor was

20  highlighting what was in the papers and not making an

21  exhaustive recitation, we have nothing else to add to what was

22  in our objection.

23        THE COURT:  All right.  Thank you.  Mr. Snyder,

24  anything else you want to add?

25        MR. SNYDER:  Not much.  You covered mostly

7

1  everything.  I just wanted to add the one thing that Mr. Slone
2  --

3        MR. BERNSTEIN:  Your Honor, I'm sorry.  Could we --
4  because Mr. Snyder is representing himself, is it possible that
5  he be sworn for these assertions so that we have a clear
6  record?

7        THE COURT:  I don't have any issue with that.  Mr.
8  Snyder, you understand what we're going to do is we're going to
9  put you under oath and so any statements that you give are
10 going to be your sworn testimony in this matter?

11       MR. SNYDER:  Yes, I do.

12       THE COURT:  Okay.  If you can please rise and raise
13 your right hand and I'll ask the court reporter to please swear
14 you in.

15              GEORGE SNYDER, WITNESS, SWORN

16       ECRO:  Thank you, and if you can please speak clearly
17 into the microphone.  Thank you.

18       MR. SNYDER:  Okay, yeah.  I noticed I did that.  Kay.

19       The only other thing I wanted to add throughout this
20 whole process, right after we handed in the schedules, I was
21 also going to -- Mr. Slone and I were talking about amending
22 the schedules, so I could have amended that part as well.  I
23 just thought I'd mention that.

24       THE COURT:  Okay.  But, nothing further at this
25 point?

**WWW.JJCOURT.COM**

**Appendix Vol. II, Page 586**

8

1          MR. SNYDER:  No.

2          THE COURT:  All right.  Well, upon review of the

3   papers and review of the claim, I'm going to make the following

4   findings.  Number one, as noted before, the claim is just a

5   bare bones claim.  It does not have any supporting

6   documentation substantiating the amounts claimed, or breakdown

7   of the time periods, or the time frames by which the wages were

8   accrued, and so under the <u>Allegheny International</u> line of cases

9   that followed from the Third Circuit decision there, I find

10  that it's not entitled to prima facie validity.  And in

11  addition to that, I do think that there are valid points that

12  have been raised by Christine Biros with respect to

13  deficiencies in the claim.

14          First off, under applicable law, 29 U.S.C.A. Section

15  203(s)(2), provides, quote, any establishment that has as its

16  only regular employees, the owner thereof, or the parent,

17  spouse, child, or other member of the immediate family of such

18  owner, shall not be considered to be an enterprise engaged in

19  commerce, or in the production of goods for commerce, or a part

20  of such an enterprise, end quote.

21          Relatedly, Section 29 U.S.C.A., Section 206 provides,

22  quote, every employer shall pay to each of his employees, who

23  in any work week is engaged in commerce, or in the production

24  of goods for commerce, or is employed in an enterprise engaged

25  in commerce, or in the production of goods for commerce, wages,

1 at the following rates, end quote.

2          Here, the Court is finding that this did not

3 constitute -- U LOCK did not constitute an entity or an

4 enterprise engaged in commerce, since he was -- George Snyder

5 was the owner, U LOCK had no other employees, and consequently

6 George does not appear to be an employee as qualified under the

7 FLSA.

8          I also note that the statute does provide under 29

9 U.S.C., Section 255(a), that there is a two year statute of

10 limitations except that an action arising from a willful

11 violation may be commenced within three years.  Here, the

12 allegation is that some of these claims may reach as far back

13 from 2015 to at least 2019 and, therefore, would seemingly be

14 time barred.

15          I also note that the response that was given does

16 seem to have some inconsistencies.  I'm not sure exactly why

17 Mr. Snyder is claiming exemptions under the FLSA, because the

18 exemptions would not be helpful to him and, in fact, would

19 exclude U LOCK or his status from coverage for wages.

20          It also appears to me that Claim 5-1 appears to be an

21 attempt to recoup lost sweat equity or capital contributions

22 that were provided through his labor and efforts, rather than a

23 wage.

24          And, finally, and also compelling, is that the claim

25 does conflict with sworn statements that were given elsewhere

10

1 in this case, particularly with respect to the schedules and

2 testimony at the 341 meeting and in other sworn declarations.

3 So, for all those reasons, I find that the objection is well-

4 founded and I will sustain the objection and deny Mr. Snyder's

5 claim.

6 So, that brings us forward to the next claim

7 objection which is the objection to Claim Number 1 filed by

8 Shanni Snyder.  This was a claim filed in the amount of

9 $263,100, originally as a secured judgment.  Ms. Biros has

10 filed an objection, asserting that Shanni was not an employee

11 of U LOCK, and as is supported by Shanni's schedules, and given

12 her failure to properly schedule a wage claim, Shanni should be

13 judicially estopped from asserting one now.

14 Both George and Kash Snyder have testified

15 extensively that U LOCK had no employees and did not consider

16 Shanni Snyder to be an employee.  She also notes that there is

17 no evidence that Shanni was a contractor of U LOCK and further

18 observes that Shanni does not qualify as an employee under the

19 FLSA because U LOCK was an immediately -- or an immediate

20 family-owned business.  And, even if she had such a claim under

21 the FLSA, the statute of limitations is two years.

22 Biros' also asserts that the claimant Shanni worked

23 for ten hours a night, every night, for four years, is on its

24 face incredible, and given that the security setup at the site

25 did not have wifi or other connectivity, it is unclear how

1 Shanni could have monitored the cameras as alleged in her

2 claim.

3        Ms. Snyder filed a response arguing that Biros is

4 seeking to collaterally attack her judgment and she asserts

5 that judicial estoppel cannot apply because she later amended

6 her schedules and only part of the claim belonged to her

7 estate, and finally suggests that if an evidentiary hearing is

8 necessary to address the validity of the judgment, the

9 reference should be withdrawn to permit the District Court to

10 do so.

11        So, again, those are my initial observations of what

12 had been contended by each of the parties with respect to that

13 pending claim objection.  Is there anything further that Ms.

14 Biros wishes to raise with respect to that claim objection?

15        MR. BERNSTEIN:  Nothing further at this point, Your

16 Honor.  Thank you.

17        THE COURT:  All right, thank you.  All right, Mr.

18 Lacher, how about on your behalf for Ms. Snyder?

19        MR. LACHER:  Yes, thank you, Your Honor.  Again, as

20 noted, we're dealing here with a final judgment and I would

21 also point out that Ms. Biros has commenced a RICO action in

22 the District Court, which includes the same attacks on the

23 judgment that they raise here before Your Honor.  So, you have

24 them asking the District Court to pass on the facts and they

25 have Your Honor asking to pass on the facts, and based on Your

12

1  Honor's findings in regard to the last objection, I'd also

2  point out, they rely largely on a case issued by Judge Deller,

3  kind of stating that this Court can always get behind a

4  judgment in a claims objection situation.  I don't think that

5  case says that at all.  That was a case that dealt with

6  confessed judgments that, on the face of the record, were not

7  lawful, the process was not followed.  In this instance, Ms.

8  Snyder filed her complaint.  Went to court.  Attended a hearing

9  in front of Judge Colville.  Judge Colville took evidence.

10 Judge -- including testimony from Ms. Snyder.  He rendered a

11 final judgment.  That judgment is a year and a half old.

12 Nobody has attacked it, and I do believe this Court can't get

13 behind it, and I also believe that if it is going to be

14 challenged, it should go back to the District Court, as Your

15 Honor mentioned.

16        THE COURT:  Okay.  Anything in response, Mr.

17 Bernstein?

18        MR. BERNSTEIN:  Nothing that we haven't already set

19 forth, Your Honor.  Thank you.

20        THE COURT:  All right, thank you.  All right.  I'll

21 address the points as follows.  I do think that Shanni's

22 judgment was entered by default.  It's clearly indicated as

23 such and, therefore, I reach the finding that it is not

24 entitled to preclusive effect, and in support of that, I do

25 rely on the In re Chatkin case, 465 B.R. 54, at Page 65, which

1  is a decision of the Bankruptcy Court of the Western District

2  of Pennsylvania from 2012, which provided, quote, as a general

3  rule under federal law, any issue raised in a case where a

4  default judgment was entered is not actually litigated for

5  purposes of collateral estoppel, and therefore does not bar

6  litigation of the issue in the Second Federal Court, end quote.

7           There is no exception where the defendant never

8  appeared and participated.  I think Biros is correct that the

9  statute of limitations for the FLSA claim is two years, with

10 the possibility of three years for a wilful violation.  It's

11 under 29 U.S.C., Section 255(a), and to the extent that Shanni

12 reopened her bankruptcy case and amended her schedules and

13 entered into a settlement with the Trustee, I do find that

14 judicial estoppel would appear to be moot and is no longer at

15 play here.

16          But, even though Shanni is the sister of Kash and

17 George, it is unclear whether adult siblings under the

18 circumstances would be considered, quote, immediate family

19 under the FLSA, and I think there are some factual issues that

20 are raised here, but nevertheless, the fact that there is a

21 judgment, does require at this point for the Court to schedule

22 an evidentiary hearing on the merits of the claim itself.  And,

23 so I am prepared to do that and we'll issue a suitable pretrial

24 order.  My expectation though is that this should not be a long

25 or involved process.  I am contemplating an evidentiary hearing

14

1 of no more than two hours and I think the primary witness would

2 be Ms. Snyder herself.  If there is cause to be shown that

3 there are needs for other witnesses, we can address that, but

4 I'm not envisioning that as we sit here today.

5          To the extent the parties need a discovery period,

6 I'm prepared to provide a brief 60-day discovery period for

7 that.  But, in short, I'm moving forward with quantifying the

8 claims of this estate, and the only way to do so is to have an

9 evidentiary hearing on the merits of that claim objection.  To

10 the extent that Ms. Snyder wants to seek a withdraw of the

11 reference, that's her prerogative.  She can file an appropriate

12 motion with the District Court.  The District Court can act

13 with it as it deems necessary, but my expectation would be that

14 liquidating and determining the allowance of claims is

15 something that is normally done within the Bankruptcy Court and

16 unless there's some other basis to seek a withdraw of the

17 reference, I would not be betting money that the District Court

18 would grant that.

19          But, nevertheless, I'm prepared to be surprised on

20 that, but in the meantime, I'm not going to wait for the

21 District Court to rule on that.  This is an estate that needs

22 to be properly addressed, and so I will move forward with the

23 evidentiary hearing under the schedule that I've just outlined.

24          I would also note though that, and this is for Mr.

25 Lacher's benefit because he is new to the party, so to speak,

1  is that, on its face and given the circumstances of which

2  unfolded, and again mind you, I'm not making any final

3  determinations, but the veracity and validity of the Shanni

4  Snyder claim is certainly somewhat dubious.  I made no mistake

5  about that and some of the things I've written in my orders

6  before, and so I want to make sure that we're all clear on what

7  the expectations are going forward, and that is the Court has

8  already put all of the parties in this room and on the Zoom

9  call on notice that I'm not tolerating any more games or

10 crossing any lines.  Rule 11 is in play and, to the extent that

11 there were sworn statements given in this proceeding, penalty

12 of perjury also applies here.

13        So, as we move forward with an evidentiary hearing, I

14 want folks to be mindful of that so that we can be all clear on

15 what the expectation is and that there is no funny business or

16 games that are being played as we move forward with the goal of

17 including the administration of this estate and determining

18 what the claims are and allowing the Trustee to take what

19 limited resources he has and make distributions to creditors.

20 So with that, any questions or further clarifications that the

21 parties need at this stage?

22        MR. BERNSTEIN:  No, Your Honor.

23        MR. LACHER:  No, Your Honor.

24        THE COURT:  So, while we're at it, I'm going to just

25 set a date.  If I use 60 days from today for discovery, I have

16

1  the window of July 14th in the afternoon, which is a Friday,

2  for an evidentiary hearing.  How does that work for the

3  parties?

4          MR. BERNSTEIN:  Fine with us, Your Honor.

5          MR. LACHER:  Fine with me, Your Honor.

6          THE COURT:  All right.  Then, I'll set that for July

7  14th at 1:30 p.m.

8          MR. OTTO:  Unless you're home for Bastille Day.

9          THE COURT:  All right.  That brings us forward to the

10  next pending item, which I will take as the consent motion to

11  approve the compromise under Rule 9019 and this is somewhat

12  related to the amended application for administrative expenses

13  that was filed by Christine Biros, which has drawn an objection

14  from George Snyder.  The motion to compromise has drawn

15  objections from both George Snyder and Shanni Snyder and a

16  consent response from the Chapter 7 Trustee.

17          Okay.  So, again, where I view the papers at this

18  stage is as follows.  Christine Biros and the Trustee have

19  entered into a settlement of her claims.  The settlement would

20  provide for an allowance of an administrative expense claim of

21  $18,000 for use and occupancy of the subject property during

22  the pendency of the bankruptcy.  That equates to $2,000 a month

23  for a period of nine months.  It would also allow amended Claim

24  Number 2 in the amount of $27,701.59 as a priority claim under

25  Section 507(a)(8) for pre and post-petition real estate taxes

17

incurred on the real property.  Biros will reduce this claim to
the extent the taxes are paid by the estate.  It will also
allow Claim Number 3 in the amount of $162,000 as a general
unsecured claim for the pre-petition use and occupancy of the
property.  That is based on a rental figure of $7,000 a month
for 81 months, dating back to approximately July of 2015.

And, Claim Number 4, which is $200,000 as an allowed
general unsecured claim for environmental remediation costs.
And, Ms. Biros asserts that this is the middle range of the
remediation estimates she received.  I have objections from
Shanni Snyder indicating that Biros' claims are premature,
because they are based on Biros' alleged ownership, which
Shanni has challenged in an avoidance action that is pending
before this Court, and even if Shanni is not successful, she
alleges that the rent claims are excessive in relation to the
fair market value.  She also contends that rent would
constitute unjust enrichment, because after obtaining title to
the property, she would effectively be recovering a second time
for the same pre-petition period.  And, Shanni also contends
the environmental claim is unilateral estimate of damages and
does not address the availability of insurance coverage for the
garbage truck fire.

George has filed an objection indicating that he
thinks that $1500 a month for administrative expense rent is
the more appropriate number.  He objects to Biros seeking rent

**Appendix Vol. II, Page 596**

1 and real estate taxes and objects to the real estate taxes

2 being paid to her, as they are owed to the taxing authorities,

3 and objects to the pre-petition rent on the basis that the

4 State Court did not grant retroactive relief.

5        I will hear from the parties in just a minute, but I

6 do have some additional questions for the Trustee with respect

7 to this, and so -- well, let me go around the room first.

8 Anything further from Ms. Biros' team with respect to this

9 motion?

10        MR. BERNSTEIN:  The only thing I'd point out and I

11 don't know where the Court is inclined to go, at this point,

12 Mr. Snyder is not a creditor and on his own I don't think would

13 have standing to object or --

14        THE COURT:  I think that's correct, but that's just

15 an order I issued today, so I think for the purposes of today,

16 I'll still allow him to be heard with the expectation of I've

17 ruled that he is not a creditor any further at this point.

18        MR. BERNSTEIN:  Thank you.  That's all, Your Honor.

19        THE COURT:  All right.  So, anything further, Mr.

20 Snyder?  I'm going to come back after I hear from the Trustee,

21 but any preliminary comments?

22        MR. SNYDER:  Just preliminarily, the State Court, you

23 know, kind of looked at it as if we owed this -- the State

24 Court looked at is as, you know, part of the basis of their

25 judgment, was to say that we owed the taxes, so in lieu of

1 taxes, they gave them the property, so they get the property,

2 and now they're going to come back and try to get the money for

3 the taxes.  So, that was one of my -- I just don't think the --

4 the settlement, I think it lacks good faith and it's not a good

5 business decision for that reason and several others --

6          THE COURT:  Okay.  And --

7          MR. SNYDER:  -- others.

8          THE COURT:  -- Mr. Lacher, anything else from you

9 preliminarily?

10          MR. LACHER:  Yes, Your Honor.  I would just say that

11 there is a claims process under the bankruptcy code.  Parties

12 in interest have an opportunity to object.  There's no real

13 deadline on that in the Chapter 7 case.  Obviously, if Your

14 Honor wants these objections filed, you can order it and we

15 would most certainly obey, but to be bound to have our right to

16 object taken away because the Trustee and Ms. Biros agree to

17 the treatment of the claims vis-a-vis the Trustee, I think,

18 would be improper.

19          So, I would say at the very least we should be given

20 an opportunity to object.  But, again, as set forth in my

21 response, I think that's pretty wasteful and maybe needlessly

22 costly and time consuming if the avoidance action is going to

23 make all these claims subject to change, so I would just put

24 that --

25          THE COURT:  Okay, but why wasn't there an objection

**Appendix Vol. II, Page 598**

1 raised prior to this?  I mean, these claims have been out there

2 for a while.  It looks like Ms. Biros filed her claims back in

3 August and, you know, I've now looking to conclude the estate.

4 I've had the Trustee liquidate some of the proceeds or some of

5 the assets into proceeds.  You've got your adversary claim.  I

6 mean, this is the time to quantify claims, so I don't know why

7 it's incumbent upon the Court to actually set a deadline for

8 claims objections at this point.  The creditors were free to

9 file objections at any point.

10       MR. LACHER:  Well, I agree, Your Honor, but -- and I

11 do agree.  But, I would also say that we're not passed a

12 deadline to file objections.  You know, and again, Ms. Biros

13 just filed her claim to Ms. Snyder's and Mr. Snyder's

14 objection.  Those claims sat there for a long time, as well.

15 In this case, you have an avoidance action intervening.  It can

16 really change the validity or mootness of those claims.  That

17 said, if Your Honor wants objections, we'll absolutely file

18 them right away.

19       THE COURT:  Well, I'm just saying.  I mean, the

20 motion to compromise was filed -- when was this filed?

21       MR. BERNSTEIN:  March 1st, Your Honor.

22       THE COURT:  March 1st.  So, we're a month in.

23 There's been no claim objection.  This was an effort to

24 compromise the claim.  I'm thinking if there was a time to

25 object to the claim, it's now or never, and so I'm not too

1  receptive to parties that want to sit on their rights and then

2  claim somehow that there's a need for a further delay when the

3  issue has been teed up.  The Trustee has had a discussion with

4  Biros about compromising the claims.  The Trustee obviously

5  must have had some reason to object in his own right to some of

6  the claims and that's why the parties have come forward with a

7  compromise to resolve their dispute.  So, this is the time to

8  do it.  All right, well, let me turn to the Trustee.

9  Relatedly, Mr. Slone, is it correct for me to understand that

10 you've investigated these claims and you've looked into them?

11        MR. SLONE:  I have, Your Honor.  Before we get too

12 far, the claim for the real estate taxes had to be paid

13 directly to the Tax Claim Bureau of Westmoreland County.  I

14 think that was part of the agreement.  It doesn't have to go to

15 Mrs. Biros.  It can be paid there.  So, I'm holding a little

16 over $70,000 in my account.  If the administrative claim is

17 between 15 and $18,000 and the tax claim is $27,000, that's

18 over $40,000 right there.  I have a lot of time in this case.

19 My bookkeeper pointed out I have 155 hours already in the case.

20 Even if half of that is legal time we're eating up most of the

21 $70,000 with administrative costs in the tax claims, Your

22 Honor.  We're fighting over -- we'd be fighting over just a

23 little bit of money on unsecureds at this point.  I don't think

24 we're going to get too many -- too much money left for the

25 unsecured creditors, Your Honor.

1          THE COURT:  Well, that's kind of my thought, as well,

2    but you've investigated the claims, you've looked at the

3    assertions that Ms. Biros has made in terms of what she's

4    alleging in each one of these components that you're seeking to

5    compromise?

6          MR. SLONE:  I am, Your Honor.  Rather than me file

7    objections in all four claims, I thought this was the best way

8    to handle this.

9          THE COURT:  All right, and there's a reference to

10   this appraisal report or the estimate of the fair rental value

11   and the valuation of the property.  Have you seen those

12   reports?

13         MR. SLONE:  I got the -- not the entire reports.  I

14   got the summary from Mr. Lindsay and Mr. Bernstein when we were

15   trying to put this thing together, Your Honor.  I disregarded

16   most of it.  I didn't feel that it was worth anywhere near

17   $7,000 a month for rent.  I thought 2,000 was more of a figure

18   that I would be more comfortable with, Your Honor.

19         THE COURT:  All right.  And, what -- have you run

20   down the issue on the garbage fire insurance?

21         MR. SLONE:  I have not, Your Honor.  Although, the U

22   LOCK would be, under the law, would be responsible even if it

23   wasn't there -- or could be responsible.  And, again, it would

24   only be if an unsecured creditor for the amount of money we are

25   dealing with would be de minimis.

1          THE COURT:  All right.  All right, let me go around

2   the room one more time.  Then, based on where we are at this

3   point, anything further from Christine Biros?

4          MR. BERNSTEIN:  I'm just going to point out with

5   respect to what the Trustee said, there were more than one

6   environmental problem on the property.  The truck fire was only

7   the most recent one.  And, the compromise amount obviously is

8   significantly less than the fair rental value under this

9   broker's report, this real estate appraisal report that we

10  received.  We'd certainly make that available if necessary.

11  There's no attempt to hide it.  There was no --

12          MR. SLONE:  Your Honor, may I ask Mr. Bernstein to

13  speak into the microphone?

14          THE COURT:  Okay.

15          MR. BERNSTEIN:  I'm sorry.

16          THE COURT:  Is --

17          MR. BERNSTEIN:  I was just saying that there was more

18  than one environmental problem.  It wasn't just the truck.

19  And, with respect to the $7,000 opinion by the appraiser, the

20  comprise is -- the compromise agreement with the Trustee is for

21  significantly less than that.  And, I believe we may have

22  provided the summary pages to Mr. Slone.  It is a bonafide

23  report.  There is no attempt to hide it and we'll produce it as

24  requested.

25          THE COURT:  Okay, and you will produce that?  All

24

1  right.  All right, anything further, Mr. Snyder?

2          MR. SNYDER:  Yeah.  In response to that, they said

3  there was no attempt to hide it.  In fact, the person who did

4  the environmental report did in fact hide.  He parked his car

5  down the street, walked over, and did what he did.  There were

6  no other environmental issues.  The DEP had came out several

7  times from Harrisburg and said there was no issue and nothing

8  the buyers were required to remediate, so that's a fabricated

9  number, in my opinion.

10          Also, there weren't other environmental issues that

11  were new to the property.  When the property was acquired,

12  there were some tires there.  Some junk vehicles and things

13  like that.  In January, myself and a couple people cleaned up

14  everything that really wasn't our responsibility to clean up,

15  and I believe the purchaser, or my sister purchasing the

16  assets, cleaned the property even further, so everything was

17  cleaned up, which really they weren't entitled to that cleanup.

18  So, I don't see where there would be one dollar required to

19  clean up anything let alone a couple hundred thousand, so I

20  don't think that's a good compromise.

21          THE COURT:  Well, I mean, do you have anything to

22  back that up in terms of additional evidence or an

23  environmental expert that would counter the American

24  Geosciences report?

25          MR. SNYDER:  As far as the garbage truck fire?

1          THE COURT:  Well, just the environmental claim

2  generally?

3          MR. SNYDER:  Well, I don't have -- I don't have

4  anything to refute that, other than the fact that they don't

5  have a report from the DEP saying it's required to clean up,

6  because they did investigate it and came from Harrisburg

7  several times and I haven't seen anything in any of the filings

8  that said there was environmental damage because of this truck

9  and anything had to be cleaned up.  In fact, she told me in

10 person that nothing needed to be cleaned up.

11         THE COURT:  Well, is there a reason that the DEP has

12 to be a prerequisite to having an allowed environmental claim?

13         MR. SNYDER:  Pardon me?

14         THE COURT:  Is there somewhere that you can point to

15 that a determination of the DEP is a prerequisite to having an

16 environmental claim?

17         MR. SNYDER:  Well, just that they are saying there's

18 multiple environmental issues, and I'm just saying that it's

19 not really substantiated.  And, then in the report, I don't

20 know if it was -- I can't remember when this was done.  This

21 was -- they had a report from an environmental company that

22 said cars need to be removed, tires need to be removed.  There

23 was a lot of issues and they've all been addressed and resolved

24 that I'm aware of.

25         THE COURT:  Okay.  Thank you.  Mr. Lacher, anything

1 further from you?

2      MR. LACHER:  Yes, thank you, Your Honor.  Again, I
3 would point out, there was not an attempt to sit on our rights
4 here.  I did raise some substantive objections in my response,
5 I pointed out to the Court but I thought it might be wasteful
6 in light of the avoidance action to do these things now.  I
7 will point out that neither U LOCK, nor Biros, nor anyone else,
8 has gone after the garbage truck owner that caused the problem,
9 and I think there's grounds to object if the Court thinks it's
10 necessary to object at this point, and I would ask that they be
11 allowed to do so.

12      THE COURT:  All right.  Thank you.  So, I do have one
13 additional question for Ms. Biros and that is, so the
14 contention is that the pre-petition rent is a double recovery.
15 Why is that not accurate, because I mean it's unclear to me
16 that the State Court order was meant to be entirely retroactive
17 and it would seem to me that if the State Court was issuing an
18 order saying, "well, because you lent the money, it would be
19 unjust enrichment for U LOCK to have title with no ability to
20 pay back that money, a constructive trust was imposed."  But,
21 why does that entitle Ms. Biros to pre-petition rent on top of
22 that?

23      MR. BERNSTEIN:  So, obviously, Your Honor, the
24 initial position is that the purpose of this compromise is to
25 avoid litigating these issues which may be in dispute.  If Ms.

1  Biros was the beneficial owner of this property since 2015 and

2  did not have the use of the property, we believe that she has a

3  claim against the party who held the property for the fair

4  rental value of that property.  The so-called unjust

5  enrichment, and I know we're using unjust enrichment twice in

6  this situation, but that's advisedly.

7          So, her property, she had a right to this property.

8  She had the equity interest in this property that was worth

9  something, and it was kept from her.  She couldn't use it.

10  She's entitled to some -- compensation for that.  And, even

11  though she has the property today, or as of the end of January,

12  she had that whole pre-petition period where she did not have

13  the property.

14          THE COURT:  Okay.  So, let me stop you there.  Where

15  in the State Court order, either Trial Court or Superior Court

16  does it reach back to 2015 or does it give her title

17  retroactively?  I mean, it just seemed that it imposed a

18  constructive trust, declared the 2015 deeds void ab initio, but

19  that doesn't necessarily equate to giving title to Ms. Biros as

20  of 2015.  At least that's my initial review.  So, if you want

21  to direct me somewhere else, I'm happy to do that, because,

22  again, she was deemed by the State Court to be a lender here

23  and the constructive trust was imposed as an equitable remedy,

24  so she normally would not be the titleholder, and so this was

25  extraordinary relief that was given, and so, as such, I need to

1  have an understanding of how she can reach back to 2015 for

2  that rent.

3      MR. BERNSTEIN:  I don't know that we have all of

4  those documents here, Your Honor.  And, Mr. Otto, who is more

5  conversant with this, is going to see if he can point to that.

6      THE COURT:  Okay.  Well, I know Mr. Snyder included

7  the copies of the State Court and Superior Court orders to his

8  responses, so that's one area where the copy is.

9      MR. BERNSTEIN:  Here -- look through there.  While

10  Mr. Otto is looking, Your Honor, just briefly in response to

11  what Mr. Lacher said.  Purpose of the compromise is to avoid

12  the fight.  The Court certainly has the power to allow the

13  claims, and allowing the claims ends the ability of other

14  parties to object.  Ms. Snyder, as the Court said, has been

15  here since the beginning.  Has -- these claims have been here

16  since almost the beginning of this case.  We were here three or

17  four months ago when the Court admonished both Ms. Snyder and

18  Ms. Biros to bring their actions and let's get this going.  If

19  you wanted us to bring the objections to the claims, to their

20  claims.  You wanted her to bring the avoidance action.  All of

21  that is now in play.  It simply doesn't make sense to us to

22  allow some further period for them to object, to have us

23  litigate these claims that we're trying to compromise.  Now,

24  that will change the whole deal with the Trustee.

25      THE COURT:  All right.  Well, let me tell you where

29

1  I'm at, at this point, while you search for that.  This is a

2  settlement and compromise, so I'm not looking for perfection

3  and I'm not looking for, you know, crossing every T and dotting

4  every I.  I do find that what's been proposed is the allowed

5  administrative expense for use and occupancy post petition wise

6  at $18,000, is reasonable under the circumstances.  It's not

7  far off from what the Court had originally estimated during the

8  sale process, and I acknowledged that that's a significant

9  change from the position that Ms. Biros was at several months

10  earlier.

11          As to the taxes, I don't know that there's

12  necessarily a dispute as to that from what I heard from Mr.

13  Snyder.  I mean, there's an acknowledgment that real estate

14  taxes are due and owing.  If it's due and owing from U LOCK,

15  and I don't think particularly that there's an issue with that,

16  then that would be paid from the U LOCK estate.  If it's not

17  paid from the U LOCK estate, Ms. Biros, as the current title

18  holder, is alleging that she's entitled to reimbursement from

19  the estate for that.  So, I do find that that aspect of the

20  compromise is not a really compromise.  It's just commonsense

21  at this point.

22          As to Claim Number 4 and the environmental claim.

23  It's $200,000.  I acknowledged that I have a report from

24  American Geosciences in 2020 that was attached suggesting that

25  the remediation was about $414,000.  Ms. Biros has also alleged

30

1  that there's estimates between 125 to $314,000 for the cleanup

2  work.  And, this is a significant compromise down to $200,000,

3  so Biros asserts that that's the middle range of the

4  remediation estimates.

5         As I noted during the exchange with the parties, I

6  don't have anything from anybody else challenging those numbers

7  from any degree of certainty or expertise.  It's just

8  conjecture.  And, at this point, I just need more than just

9  bare lay opinion.  I need some sort of data points to look at

10  and I've got the Trustee relaying to me that he has

11  investigated these things.  He has taken the time to drill down

12  and represents the $200,000 allowance for that claim is

13  reasonable.

14        Where I do have the problem and where I think the

15  Snyders have made a compelling argument to me, is with respect

16  to this general unsecured claim for their pre-petition use and

17  occupancy of the premises.  $7,000 a month for 81 months.  In

18  my review, I'm not convinced that the State Court has

19  retroactively granted her relief for that period and it would

20  seem to be a double recovery, and so I'm not inclined to allow

21  or accept that portion of the settlement.  If that blows things

22  up, then be that as it may, but I'm inclined to otherwise rule

23  in that direction.  I do find that the Martin factors otherwise

24  are satisfied.  I think there's a probability of success on the

25  merits, weighs to the fact that there is a likelihood that Ms.

1  Biros can prevail on her claims as showing entitlement to

2  post-petition rent and reimbursement of taxes for the reasons

3  I've stated, as well as proof that environmental remediation

4  cost exist, and those costs existed before the garbage truck

5  fire and are separate and distinct from that whole fiasco.

6         The difficulty of collection, you know, is one of the

7  estate having limited assets and, furthermore, there is a

8  complexity of the matter that would require unnecessary time

9  and expense and delay to go through and litigate these matters.

10  One thing that's been apparent to me throughout this case and

11  I've remarked on it on several occasions, is the parties have

12  no problems litigating minute or small dollar amount issues to

13  the hilt in a way that is totally out of proportion of what the

14  value of the claim is, so that's to me probably the most

15  compelling thing here is that this would preserve what little

16  is left in the estate for the distribution of creditors.  And,

17  so from that standpoint, it's in the paramount interest of

18  creditors to allow the estate to proceed to quantify these

19  claims and get closer to a distribution that the Chapter 7

20  Trustee can make to creditors.

21         Having said all that, I am mindful of one thing that

22  Mr. Lacher has said, which is he's got his pending avoidance

23  action out there and I think that could change the perspective

24  here.  So, as a result, I'm prepared, based on what I've said

25  on the record, I'll give Ms. Biros' team one last chance to

1 respond on this pre-petition rent thing, but that the allowance

2 is on an interim basis, but the payment of any claim would be

3 held in abeyance pending the conclusion of the avoidance

4 action.  And, from that standpoint, that would allow me to

5 ensure that there is no money going out the door prematurely

6 until we have a full handle on the what the estate is and what

7 the respective rights of the parties are.

8        Having said that, and I understand that this is not

9 teed up for today, but if nothing, I always try to be candid

10 with you all so you know exactly where I sit on these things.

11 I've had a chance to look at the avoidance action and, right

12 now, I have to tell you, I'm not real impressed with it.  You

13 know, I question whether it could be dismissed as implausible

14 under Twombly and, specifically, the complaint seems to be more

15 mechanical and simply assumes that the constructive trust is an

16 avoidable transfer without giving any more depth or background

17 to that.  So, again, that's not a final determination.  That's

18 just an initial off-the-cuff reaction of what I've seen on the

19 pleadings, but it does color, in an extent, to me, the

20 scheduling of where we are and the need to move forward and

21 what the expectations are for what I think the time frames need

22 to be to bring this matter to a close.  If I thought there was

23 more there, then I think we would be inclined to have a more

24 robust time frame for this to occur.  It's not to say we're not

25 going to do that here.  It's just that I'm starting to question

33

1 whether or not this is something that can be resolved on a Rule

2 12 stage at this point, but we'll see what the coming weeks are

3 at this point.

4       Again, just food for thought for the parties so that

5 there are no surprises, and the parties can come into the

6 courtroom on the appropriate date adequately prepared to

7 address what I see as some concerns at this stage.  So with

8 that, let me come back, anything further on the pre-petition

9 rent?

10       MR. BERNSTEIN:  Yes, Your Honor, just a couple of

11 things addressing, maybe in reverse order, what the Court said.

12 If the Court -- we understand the concern about the avoidance

13 action might have some affect on payment of these claims and we

14 don't expect -- we don't expect payment now other than perhaps

15 the tax claim should be paid and we would be happy to work with

16 the Trustee.  The Trustee may want to file a claim on behalf of

17 the Tax Claim Bureau.  I believe the Trustee is entitled to do

18 that.  And, if that's allowed, because Ms. Biros isn't looking

19 for a duplicate claim, so we can -- we'd like to put that one

20 to bed.  We'd like to put the fight over Ms. Biros' claims to

21 bed now, even if payment is not made until ultimately later in

22 the case or at the end of the case.

23       With respect to the 2015 issue, I think the -- Mr.

24 Otto, who litigated that, can speak more to it, but in looking

25 at the August 2019 order, perhaps the particular section, I'm

34

1  sorry paragraph, is that, one, it says "plaintiff, Christine

2  Biros, is the equitable owner of the subject property."  It

3  does not indicate in that paragraph, that 2015, that it's

4  retroactive to them.  Even -- and I think Mr. Otto can explain

5  why that is and perhaps satisfy the Court that it is

6  retroactive.  Even if it isn't, it would be effective as of

7  that date, which is August of 2019, and if we count August of

8  2019 to the petition date, I think I count 45 months.  45

9  months at our asserted fair rental value of $7,000 a month is

10  more than the 162,000 that we've compromised.  45 months, even

11  at the $2,000 that we've been using in the admin claim is

12  $90,000, and I would need a few seconds to speak with Ms. Biros

13  about whether that would be a number that would satisfy her if

14  that would eliminate that retroactivity issue from the Court's

15  concerns.  If I may have just a --

16      THE COURT:  Well, yes, I mean, my initial reaction to

17  that though is that even though that was the decision in 2019,

18  that the deeds were still not delivered until later and, you

19  know, it's -- I don't want to get back into asking the State

20  Court to have to clarify that order because it's just not time

21  intensive.  And the other aspect of this, which I think is

22  another point that's been raised by several parties is, at the

23  end of the day, is this going to really matter when the Trustee

24  is holding no more than $70,000 plus whatever could be salvaged

25  from the avoidance claim?  I've already told you that I've got

1 some concerns about the avoidance claims, so if I go with the

2 supposition that there's only $70,000, arguing over an

3 additional hundred and --

4          MR. BERNSTEIN:  Sixty-two.

5          THE COURT:  -- sixty-two thousand when I've already

6 said I'm going to allow the 200,000 plus the 27,000 for taxes

7 and the 18,000 for the administrative claim, I just think it's

8 a fool's errand.

9          MR. BERNSTEIN:  Your Honor, you're right, and if the

10 Shanni Snyder claim was disallowed also and Ms. Biros knew that

11 her $200,000 general unsecured claim was the only one, then it

12 would be -- that would be an easy resolution.  We're still in a

13 little bit of shifting sands, but we know there's very little,

14 and I'd love to figure out a way so that this compromise could

15 resolve all of those things.  That's what we were trying to do

16 with the Trustee.  Perhaps Mr. Otto can just give you a couple

17 of minutes on the State Court, that background to see if --

18          THE COURT:  All right.  I'll allow it very briefly.

19          MR. BERNSTEIN:  Thank you.

20          MR. OTTO:  Your Honor, the Trial Court actually

21 issued three post-trial orders.  The first was the judgment and

22 that was on the August 2019 date.  The second was an order in

23 response to post-trial motions.  The third order was issued in

24 mid-2022 in response to appeals by U LOCK, Shanni Snyder, and

25 Mark Mycka, when he issued a 1925 order.  The appeals from U

1 LOCK, Mark Mycka, and Shanni Snyder, were all filed post

2 petition, and he was -- the judge was required by Superior

3 Court to issue a 1925 opinion, which he did.  And, in the

4 course of those three orders -- and I apologize, we don't have

5 those three orders in front of us, we only have the Trial Court

6 or the trial decision.  In at least one of those, the judge

7 specifically states that she had equitable title dating back to

8 2015.

9          I would also point out something that Mr. Bernstein

10 probably wasn't thinking about.  The way this trial went, there

11 were deeds that were issued by the estates in May of 2019.

12 After the final decision by the Pennsylvania Supreme Court,

13 then we recorded the deeds that we received from the Trial

14 Court.  Those deeds were dated in May of 2019, which in essence

15 predate the Trial Court's trial judgment.  So, if the question

16 is how far back do we go, theoretically, we could go back to

17 legal title in May of 2019.

18          THE COURT:  Okay.

19          MR. OTTO:  But, I -- if Your Honor wants or asks for,

20 I would be happy to provide the portions of the Trial Court's

21 orders that state that she had equitable title dating back to

22 2015.  I do agree with Mr. Bernstein that you get to the point

23 where it doesn't make a big difference because there's not

24 enough money to cover everything anyway.

25          THE COURT:  Yes.

1          MR. BERNSTEIN:  Let me see if I can help here, Judge.

2          THE COURT:  Well, I mean, yes, all right, if you have

3  a suggestion.

4          MR. BERNSTEIN:  I do have a suggestion.  Using August

5  of 2019 when the order occurred, or using -- when was the deed

6  dated."

7          MR. OTTO:  May.

8          MR. BERNSTEIN:  -- May when the deeds were dated, we

9  would offer the Trustee a unilateral amendment to our

10  settlement to reduce Claim 3 to $90,000.  We think that's fair.

11  The cost of litigating this, it's not worth it to anybody.  We

12  really, in this settlement, tried to protect the Trustee so

13  that at this point the reasonable expectation is the Trustee is

14  going to get paid for what he did and what his counsel did and

15  we're not in his pocket.  The more we litigate this, the more

16  that is not clear.  You know, so I'll bid against myself twice.

17  If the Court were to allow the administrative claim, allow the

18  tax payment either to us or to the Tax Claim Bureau, allow

19  Claim 4 of the general unsecured claim, and allow the Claim 3

20  in any amount from 0 to $162,000, we would be satisfied.

21          THE COURT:  I'm sorry.  Say that last part again?

22          MR. BERNSTEIN:  The last part is, we'll give up on

23  Claim 3 --

24          THE COURT:  Okay.

25          MR. BERNSTEIN:  -- if we can't convince the Court

1   that there is some value to that.  It's just not worth it to

2   stand here and argue over it.

3          THE COURT:  All right.  Thank you.  Well, that's

4   where I was ending up on this, is that I am prepared to enter

5   an interim order approving the settlement on the grounds that I

6   said, which is to allow the administrative expense, the tax

7   claim, and the environmental claim, to preclude the

8   pre-petition rent claim on the basis that I've said, and

9   payment would be deferred pending the resolution of the

10  avoidance action and we'll take it back up again when that's

11  concluded, at which time I would enter a final order

12  authorizing the settlement at that point, because I just don't

13  see a utility in having a full blown evidentiary hearing on

14  this.  That's the whole point of a settlement is to avoid

15  unnecessary litigation when the costs exceed the benefits.

16         So having said all of that, I'm going to issue an

17  order to that effect and then we'll take up the rest of it once

18  the --

19         MR. BERNSTEIN:  Your Honor, if I may just ask for

20  clarification to --

21         THE COURT:  -- avoidance action is resolved, with the

22  exception of the tax claim though.  I mean, if the Trustee --

23         MR. BERNSTEIN:  If I heard correctly, the allowance

24  will not be final until the avoidance action is resolved?

25         THE COURT:  What I will do is, I will withhold the

1  payments and the distributions until the avoidance action is

2  resolved.

3          MR. BERNSTEIN:  That's fine.  I just don't want to

4  have to come back and fight over the claims again.  Thank you.

5          THE COURT:  But --

6          MR. LACHER:  Well, Your Honor -- I'm sorry.

7          THE COURT:  Well, let me make this clear though.  I'm

8  saying the distributions would be withheld, with the exception

9  that if the Trustee wishes to proceed with paying the tax claim

10  to the Tax Claim Bureau he is free to do that because that's

11  something that would be independent of the settlement here.

12  Mr. Lacher?

13          MR. LACHER:  Yes, Your Honor.  The one I'm focused on

14  is the environmental claim and this kind of mirrors Mr.

15  Bernstein's question for clarification.  If we were successful

16  in the avoidance action, am I to understand Ms. Biros would

17  have an allowed claim from the environmental clean up even

18  though she's not the owner of the property?

19          THE COURT:  Well, she would not receive a

20  distribution on that claim if she is not the owner of that

21  property.  That's how I would rectify that.

22          MR. LACHER:  I appreciate that, Your Honor, and

23  that's why, again, I wanted to know the effect of the

24  allowance, let's say.

25          THE COURT:  Yes.

1           MR. LACHER:  Thank you, Your Honor.

2           THE COURT:  Okay.  All right, any other

3 clarifications or questions that we have with respect to that?

4           MR. BERNSTEIN:  I'm sorry, Your Honor, I have to do

5 this, because the landscape just changed again.  If the

6 avoidance action is successful, that will put more money in the

7 estate.  If the unsecured claim of Ms. Biros is disallowed

8 because the avoidance action is successful, then she will have

9 given up her claim to the pre-petition rent argument as part of

10 the settlement and be left with nothing out of the unsecured

11 portion.  We're just trying to fix the rights now and if the

12 avoidance action is successful, she's likely -- she will have

13 lost a significant value.

14           THE COURT:  Well, no, I don't know.  I mean, if she

15 loses the avoidance action, that would deem that she is not the

16 owner of the property.  She would not be subject to the

17 environmental obligations at that point because she has no duty

18 to do that as not being the owner, so --

19           MR. BERNSTEIN:  We can't say that for sure.  She's a

20 -- if she's a potentially responsible person, party, now, we

21 don't know whether the environmental claim will follow her

22 because she was the owner of that property during the time that

23 it occurred.  She may have some liability and there's no --

24 there's nobody indemnifying her.  I know it creates a

25 complication, but that's part of why we did this, this way,

1  with the Trustee, because otherwise she can come out -- I know

2  that we don't expect her to lose the avoidance action, but

3  lightening strikes.  If she lost the avoidance action,

4  therefore, loses her environmental claim, doesn't get any

5  distribution as an unsecured creditor, but is a target of

6  somebody, perhaps the new owner of the property, Ms. Snyder,

7  who decides to go after people who were in control of the

8  property when the environmental situation happened.  It just

9  opens up a whole can of worms.

10         THE COURT:  All right.  Well, if that's the case,

11 then what I'm doing is, I'm just deferring any determination on

12 the settlement motion until after the avoidance action is

13 concluded because --

14         MR. BERNSTEIN:  I guess you have to do that, Judge.

15 I can't -- we're -- I'm sorry -- yeah, other than perhaps the

16 taxes, but the rest of it --

17         THE COURT:  Well, the taxes, but I mean, again, you

18 raise a point about her being in a chain of title as being a

19 responsible party for the environmental, but I'm still not

20 hearing how she would have any claim to pre-petition rent if

21 she was not the owner having lost the avoidance action.  But,

22 be that as it may, you know, this is starting to dilute the

23 efficacy of having a compromise, so --

24         MR. BERNSTEIN:  Yeah.

25         THE COURT:  -- at this stage, I'm inclined to just

1 defer it until after the avoidance action and then I'll take it

2 up at that point and see what the landscape is at that stage.

3 But I think that, as I indicated, my views on the

4 administrative expense claim are such that I think that would

5 be a satisfactory resolution of the administrative expense

6 motion, but if we're not going to approve that today then I'm

7 going to just --

8          MR. BERNSTEIN:  Your Honor, one moment please.

9 Sorry.

10                    (Pause)

11          MR. BERNSTEIN:  What we're discussing, Your Honor, is

12 whether it's worth upsetting this settlement and then allowing

13 the other parties to file objections to the claims or taking

14 the beating that we're taking today and having you allow the

15 claims, which will prevent another set of objections to the

16 claims in the litigation that would follow there.  I think

17 we'll take what the Court offered before I raised the

18 environmental responsibility issue.  I just think that that is

19 -- that we're better off taking that and eliminating the

20 ongoing fight objection from the Snyders as to these claims and

21 beating them to death.

22          THE COURT:  Well, again, I think if the avoidance

23 action is successful, it changes the landscape of rights.  It

24 changes Ms. Biros from being an owner, back to being a lender,

25 and what that entails.  You know, you've got potentially

43

1  another $300,000 worth of claims that she would have at that

2  point so, but, again, I had viewed this as a way of trying to

3  narrow the issues, but if it's going to create more, then I'm

4  just going to defer it and then we'll see what happens with the

5  avoidance action and make that determination at that time.

6        MR. BERNSTEIN:  Is the Court willing to determine

7  that the process to date and the opportunity to object to this

8  settlement was a sufficient time for the other parties in the

9  case to --

10        THE COURT:  I definitely think that the settlement

11  was appropriately noticed and there was adequate time to be

12  heard with respect to the merits of the settlement.

13        MR. BERNSTEIN:  However Your Honor wants to handle it

14  at this point.  I will just add that the avoidance action being

15  successful does not automatically undo Ms. Biros' rights that

16  occurred during the time that she was an owner or a

17  constructive owner, just as if Ms. Biros had received a

18  monetary transfer, if it -- if that monetary transfer or that

19  preference were avoided, but she had used that money to create

20  some investment that she made a million dollars on, the

21  estate's claim for the avoidance would not be the profits on

22  the avoidance, it would just be the value at the time that it

23  was transferred.  So, she's still going to have her claims as a

24  constructive owner and as a real owner, regardless of whether

25  the transfer was avoided.  She was an owner during the time she

44

1 was an owner.  So, I just don't think it's automatic that if

2 they win the avoidance action that her claims disappear.  With

3 that, I'll sit down and Your Honor decide --

4        THE COURT:  Well, I didn't say they'd disappear.  I

5 just -- I think they get recharacterized into different types

6 of claims, but --

7        MR. BERNSTEIN:  Perhaps.

8        THE COURT:  You know, all right.  And, since we've

9 had a long exchange there, anything further, Mr. Lacher, that

10 you wanted to add at this point?

11        MR. LACHER:  No thank you, Your Honor.

12        THE COURT:  George?

13        MR. SNYDER:  Yes.  If I can clarify two things.  On

14 the environmental claim, they had mentioned something about the

15 things that had happened while Christine was the owner.  For

16 clarification, the only thing environmental would have been

17 that fire truck -- or garbage truck that caught on fire.  All

18 the other stuff, the property was purchased in a condition with

19 the tires, and cars, and different things.  None of that was U

20 LOCK bringing any environmental issues to the table.  So, I

21 wanted to clarify that.

22        THE COURT:  Okay.

23        MR. SNYDER:  And, the thing with the rent, I had just

24 wanted to mention.  I spoke with Mr. Slone and officially they

25 were given -- the Biros were given sole control, possession of

1  the property in October, because I was -- because they put a

2  cable up. Locked me out, the tenants out.  In fact, there were

3  tenants that they knew.  They met them before, exchanged

4  numbers and information and called the police on them, and I

5  think Mr. Otto actually went to the police station the next day

6  to try to get them arrested.  So, but prior to that, and I

7  believe early on, you know, it was like the Biros took over

8  full trustee powers from Mr. Slone and he appeared to be in the

9  backseat.  And, when I spoke to Mr. Slone about it, he had said

10 that he was threatened by them, so I'm not sure --

11         MR. BERNSTEIN:  Your Honor, I'll object to that,

12 hearsay.

13         MR. SNYDER:  Here, he could maybe speak to that.

14         THE COURT:  All right.  Well, it's not relevant to

15 the issue that I'm hearing, other then that you're contending

16 that Ms. Biros had full control of the property, which I

17 understand you've made before, and I have discussed that in my

18 opinion before that it's not as if she was deprived of all

19 access to the property during the time period.  But, what this

20 comes down to is, what is a reasonable value of what the

21 estate's interest was for having possession of the property,

22 and bottom line is, irrespective of whether Ms. Biros had

23 control of 80 percent of the property or none of the property,

24 the fact of the matter is, the estate had assets on the

25 property at that time.  The use of the property was beneficial

1 to the estate and, as such, Ms. Biros, as the title holder, is

2 entitled to some sort of compensation for the reasonable value,

3 and you know we've discussed that ad nauseam at the prior

4 hearings.  But, you know, again, I come back to where we are

5 now, $2,000 a month.  You, yourself, said 1500 was reasonable.

6 This is just slightly above that, so I'm not really quibbling

7 with that amount at this stage.

8          MR. SNYDER:  Okay, and that -- that's the part I was

9 getting at.  That's what I was discussing with Mr. Slone,

10 because I said about the 1500, which could have been a

11 reasonable amount, but I was telling him, that wasn't even

12 necessarily fair because I didn't have access to doing

13 anything.  You couldn't do anything.  And, Mr. Slone seemed to,

14 you know, he said I had a good point.  But, yeah, I'm not

15 arguing about --

16          THE COURT:  Okay.

17          MR. SNYDER:  -- you know, the particulars there,

18 other than they weren't really entitled to anywhere near this.

19          THE COURT:  Okay.  Thank you.

20          MR. SNYDER:  Thank you.

21          THE COURT:  All right.  Well, I'm going to take this

22 under advisement and consider whether what kind of order I do,

23 if I do an order with respect to the settlement motion, but

24 we've had an extensive discussion on this so you know where the

25 Court has preliminary comments has been and what my inclination

1  was initially.  I'll ponder some more what was discussed and

2  see if that changes my thought process at all.

3        Relatedly, is the Christine Biros' amended motion for

4  allowance of payment of the administrative expense.  I did have

5  the objections from George Snyder and I think we've covered

6  that, so to the extent that I approve the settlement, that will

7  render the administrative claim motion moot.  To the extent

8  that I deny or defer approval of the settlement, that will keep

9  that objection live and I'll issue a scheduling order on that

10 further, to the extent that that remains an active issue.

11       MR. BERNSTEIN:  On that scheduling, Your Honor, we're

12 happy to have it ride along if the Court decides to defer the

13 settlement.  We're happy to have that admin motion ride along

14 without it.

15       THE COURT:  That's what I would intend to do, so

16 thank you.

17       MR. BERNSTEIN:  Thank you.

18       THE COURT:  Okay.  So, then the next item is the

19 order to show cause that was issued on January 17, 2023.  This

20 relates to the administrative expenses.  At the last hearing, I

21 explained in detail why I found the filing of Christine Biros'

22 motion for allowance of the administrative expense claim,

23 pursuant to 11 U.S.C., Section 503(b)(1), was in violation of

24 Rule 9011(b)(1) through (3) and why I found the response to be

25 unpersuasive.

1        Most notably, the response offered no defense to the

2   assertion of the $144,000 administrative expense, other than

3   suggesting that Ms. Biros could have proven its reasonableness

4   had she been afforded an opportunity to submit a detailed

5   record.  The Court continued the order to show cause to allow

6   Ms. Biros and Attorney Bernstein to -- time to consider the

7   Court's comments and potentially seek reconsideration of the

8   Court's memorandum.  I note that no motion for reconsideration

9   was filed, nor was there any further response.  And, as noted,

10  Ms. Biros did file her amended motion for administrative

11  expense seeking $63,000, which was less than half of the

12  original request, and then she then proposed to settle the

13  claim for $18,000, which is roughly 12.5 percent of the

14  original request.  So, as indicated in the Court's order dated

15  January 30, 2023, at Docket Number 314, this was their last

16  change to appear in opposition to the order to show case.  So,

17  anything further that the parties wish to raise or address at

18  this point on that account?

19        MR. BERNSTEIN:  The Court can resolve this obviously

20  however it wants to.

21        THE COURT:  Okay.

22        MR. BERNSTEIN:  I think we've shown why what was

23  requested in the original admin motion was not completely

24  unreasonable, or impossible, or so out of line.  We've

25  attempted to provide the estate with a way to resolve the admin

49

1  claim at a reasonable number.  We have heard and taken to heart

2  the Court's comments about the way it proceeded.  Although, and

3  the fact that we did not file a motion for reconsideration or a

4  further response, frankly, we thought the filing -- we thought

5  our choices included filing an amended motion and that it

6  wasn't necessary to file a new response or a motion for

7  reconsideration and that it was open.  And, we have -- we've

8  previously apologized to the Court for taking an approach which

9  the Court found unreasonable, and we did what we thought was an

10  appropriate thing to do for our client under the circumstances.

11        As I said at the last hearing on this, Ms. Biros, on

12  this matter, followed our recommendations and did not have an

13  independent decision to file the motion the way it was filed.

14  We told her what we thought the appropriate thing to do is.

15  So, to the extent there is a sanction to be applied, it should

16  be us and not her.  And, frankly, we think that we've suffered

17  as a result of being in a position to receive that kind of

18  order from the Court and I think that's all I have to say, Your

19  Honor.

20        THE COURT:  Okay.

21        MR. BERNSTEIN:  Thank you.

22        THE COURT:  So, I mean, what I want to address though

23  is there's no effort at this point to establish any further

24  record, or offer anything else to suggest the reasonableness of

25  the $144,000?

50

1        MR. BERNSTEIN:  Other than the assertions in our

2   amended motion that explain the various values and methods of

3   computation, I have nothing -- nothing further to add today.

4        THE COURT:  Okay.  Thank you.  All right, well, I'm

5   not finding anything that dissuades me from the original

6   finding that there was a Rule 9011 issue with respect to the

7   original motion and that the $144,000 was unreasonable.

8   Certainly, appreciate the efforts to try to resolve this

9   through the amended motion.  I thought that was certainly well

10  crafted and well thought out and it doesn't go unnoticed from

11  the Court, the time and effort that went into that.  But, it

12  still leaves me with the factor that the original claim of

13  $144,000 was settled for 12.5 percent of that, which seems to

14  indicate again to me that the original amount was patently

15  unreasonably.

16       In terms of where we go from here, I am considerate

17  of the fact that Mr. Bernstein has indicated that Ms. Biros

18  followed the advice of counsel and, as a result, with taking

19  that advice, she is not blame worthy at this point with respect

20  to sanctions.  And, with respect to counsel, I do find that

21  this is a first offense and that the prior memorandum opinion

22  is a sufficient admonishment with respect to where we are with

23  respect to this matter, so I will conclude it there with that.

24       MR. BERNSTEIN:  Thank you, Your Honor.

25       THE COURT:  Going forward, we have the order to show

1 cause that was issued with respect to the stay violations.  I

2 had just continued this as a placeholder in the event that

3 there was anything else that had any bearing on those motions.

4 They were submitted, but to the extent that there was

5 additional discussion that had an impact on the Court's

6 findings or conclusions, I wanted to have the option open.

7       I'm not hearing anything today that would suggest

8 that I need to add new considerations to the mix, but before I

9 do close the door on that, I open it up one last time to the

10 parties if there's anything else they wish to address on any

11 other matters here?

12       MR. BERNSTEIN:  Nothing further from Ms. Biros, Your

13 Honor.

14       THE COURT:  All right, thank you.  Mr. Snyder?

15       MR. SNYDER:  Nothing further, Your Honor.

16       THE COURT:  All right.  Mr. Lacher?

17       MR. LACHER:  Nothing further, Your Honor.  Thank you.

18       THE COURT:  All right, thank you.  All right.  Well,

19 then that concludes the matters that are presently set before

20 the Court at this time.  I will enter an order just to recap

21 sustaining the objection to the claim of George Snyder.  I will

22 issue a scheduling order on the claim of Shanni Snyder.  I will

23 consider what I do with respect to the 9019 motion, and if it's

24 granted, the application for administrative expenses at 344

25 will be denied as moot.  If it's continued, then that motion at

52

1 344 will be continued and heard at the same time, and I have

2 addressed the show cause orders in the latter two with respect

3 to the stay motions are under advisement with the other show

4 cause having been resolved on the record for the reasons stated

5 here today.  And, with that, we will call it a day.

6          MR. BERNSTEIN:  Thank you, Your --

7          THE COURT:  The Court will now stand adjourned and we

8 will close the record.  Thank you, everyone.

9          MR. BERNSTEIN:  Thank you, Your Honor.

10          UNIDENTIFIED ATTORNEY:  Thank you.

11          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

12          UNIDENTIFIED ATTORNEY:  Thanks, Your Honor.

13                    *  *  *  *  *

14              **C E R T I F I C A T I O N**

15          I, WENDY ANTOSIEWICZ, court approved transcriber,

16 certify that the foregoing is a correct transcript from the

17 official electronic sound recording of the proceedings in the

18 above-entitled matter and to the best of my ability.

19

20 /s/ Wendy Antosiewicz

21 WENDY ANTOSIEIWICZ

22 J&J COURT TRANSCRIBERS, INC.    DATE:  April 24, 2023

23

24

25

**Appendix Vol. II, Page 631**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **BANKRUPTCY NO. 22-20823-GLT** |
| | ) | |
| **U LOCK INC.** | ) | **CHAPTER 7** |
| **DEBTOR** | ) | |
| | ) | **RE: DOCUMENT NOS. 340, 345, 352,** |
| | ) | **355-357, 451** |

**STATUS REPORT**

AND NOW, comes the Chapter 7 Trustee, by and through his attorneys, Mahady & Mahady—Robert H. Slone, Esquire, and files this Status Report as per the Order of July 7, 2023 filed at Docket No. 451, stating as follows:

1. The fees incurred by the Chapter 7 Trustee's Counsel as of June 26, 2023 is $31,620.00.  The Chapter 7 Trustee has filed an application seeking an allowance of interim compensation for the Counsel to the Chapter 7 Trustee on July 13, 2023 at Docket No. 475.

   The Trustee time of 83.9 hours and Chapter 7 Trustee's Counsel's time of 74.4 hours is set forth in the detailed billing statement attached hereto and made a part hereof as Exhibit "A", on which Chapter 7 Trustee's Counsel's time is notated as A.

2. The estimated Chapter 7 commission based on Section 326 of the Bankruptcy Code is $7,028.00. The Chapter 7 Trustee points out that he has approximately 83.9 hours of Trustee time invested in this case as of June 26, 2023.

3. The amount of estate funds on hand as of July 11, 2023 is $44,567.84.

4. Claims that exist that might result in a recovery for the estate are recited in paragraph 3a, 3b, and 3c on Page 6 of the Order Confirming Sale of Tangible And Intangible Personal Property of the Estate Under 11 U.S.C. § 363(f) Free And Clear Of All Liens, Claims, and Encumbrances ("Order Confirming Sale) filed on December 20, 2022 at Docket No. 254 . A copy of said page 6 of the Order Confirming Sale is attached hereto and made a part hereof as Exhibit "B". These recoveries are contingent on either the avoidance action filed in this case or by other recoveries made by the purchaser of the assets. The estimated value of these claims cannot be determined at this time.

Respectfully submitted,

Dated: July 13, 2023

/s/ ROBERT H. SLONE
Robert H. Slone, Esquire
PA I.D. No. 19963
Mahady & Mahady
223 South Maple Avenue
Greensburg, PA  15601
(724) 834-2990; robertslone223@gmail.com

**Appendix Vol. II, Page 632**

FILED
8/4/23 1:20 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE: )
)  **BANKRUPTCY NO. 22-20823-GLT**
U LOCK, INC. )
)  **CHAPTER 7**
DEBTOR )
_____ )  **DOCUMENT NO.** 475
ROBERT H. SLONE, TRUSTEE )
)
MOVANT )
)
vs. )
)
NO RESPONDENTS )

**ORDER OF COURT APPROVING INTERIM COMPENSATION**
**FOR COUNSEL TO THE CHAPTER 7 TRUSTEE AND SCHEDULING STATUS CONFERENCE**

Upon consideration of the Application for Allowance of Interim Compensation filed by Robert H. Slone, Esquire, attorney for the Chapter 7 Trustee in the above-captioned bankruptcy case, it appearing that the Applicant's employment has been approved by this Court, that the Applicant has no interest adverse to the interest of the Estate, and that the Applicant has rendered valuable services to the Estate, it is hereby

ORDERED that the Application for Allowance of Interim Compensation of Robert H. Slone, Esquire, attorney for the Chapter 7 Trustee, is approved in the amount of $31,620.00 as interim compensation.

It is FURTHER ORDERED that a Status Conference is scheduled for August 17, 2023 at 11 a.m. in Courtroom A 54th Floor U.S. Steel Tower 600 Grant St., Pittsburgh, PA.

Parties that wish to participate in the Status Conference via Zoom video conference may do so in compliance with Judge Taddonio's Procedures.
        DEFAULT ENTRY

Dated: 8/4/23

_____
GREGORY L. TADDONIO          hct
CHIEF U.S. BANKRUPTCY JUDGE

cm:
George Snyder
Debtor

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

FILED
1/10/24 9:03 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN RE:                        .   Case No. 22-20823-GLT
                              .
U LOCK INC,                   .   5414 U.S. Steel Tower
                              .   600 Grant Street
                              .   Pittsburgh, PA 15219
          Debtor.            .
                              .   January 4, 2024
. . . . . . . . . . . . . .   .   10:05 a.m.

TRANSCRIPT OF #501 MOTION TO CONTINUE/RESCHEDULE HEARING
ON THE CONSENT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(DOC. NO. 345)
BEFORE THE HONORABLE GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Christine Biros:          Bernstein-Burkley, P.C.
                              By:  ROBERT S. BERNSTEIN, ESQ.
                              601 Grant Street, Ste 9th Floor
                              Pittsburgh, PA 15219

TELEPHONIC APPEARANCES:

For the Chapter 7             Office of the U.S. Trustee
Trustee:                      By:  ROBERT H. SLONE, ESQ.
                              223 South Maple Avenue
                              Greensburg, PA 15601

For Shanni Snyder:            The Lynch Law Group LLC
                              By:  JOHN PATRICK LACHER, ESQ.
                              501 Smith Drive, Suite 3
                              Cranberry Twp, PA 16066

For George Snyder:            By:  GEORGE SNYDER - Pro se
                              PO Box 15
                              Irwin, PA 15642

ECRO:                         Hayley Smith

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609) 586-2311      Fax No. (609) 587-3599

2

1          THE COURT:  All right.  The next matter is Case
2    Number 22-20823, U LOCK INCORPORATED.

3          I'll start by taking appearances here in the
4    courtroom, please.

5          MR. BERNSTEIN:  Good morning, Your Honor.  Robert
6    Bernstein, Bernstein-Burkley, on behalf of Christine Biros, who
7    is also here at counsel table with me.

8          THE COURT:  Good morning.

9          MS. BIROS:  Morning.

10         THE COURT:  And do I have any appearances by Zoom by
11   the Chapter 7 Trustee?

12         MR. SLONE:  Yes.  Chapter 7 Trustee, Robert Slone.

13         THE COURT:  All right.  Good morning.  And do I have
14   an appearance for Shanni Snyder?

15         MR. LACHER:  Good morning, Your Honor.  John Lacher
16   on behalf of Creditor and Party-in-Interest Shanni Snyder.

17         THE COURT:  All right.  Good morning.  And do I have
18   an appearance for Mr. Snyder?  You might be on mute, Mr.
19   Snyder.

20         MR. SNYDER:  Yes.  George Snyder, Your Honor.

21         THE COURT:  All right.  Good morning.

22         MR. SNYDER:  Good morning.

23         THE COURT:  All right.  Is there anyone else who
24   wishes to enter an appearance in this case?

25         Okay.  This is the Motion to Continue or Reschedule a

3

1 Hearing on the Consent Motion to Approve the Settlement

2 Agreement between Christine Biros and the Trustee involving

3 several Claims and I have Responses that have been filed to

4 that Motion by Shanni Snyder and George Snyder.

5          Before I get into the heart of the issues here, I

6 just wanted to get some brief explanatory information from the

7 Trustee.  And this is I think taken from the Status Report and

8 the prior Hearing we had last August or so in this.

9          My understanding is that Trustee has paid some of the

10 real estate taxes on this parcel and I wanted to verify with

11 Mr. Slone what the amounts of those payments were and what

12 periods those covered.

13          MR. SLONE:  Yes, Your Honor.  The Tax Claim Bureau

14 was paid I believe it was May of 2023.  The amount was

15 $28,028.75.

16          THE COURT:  Okay.  So, you paid $28,028.75?

17          MR. SLONE:  75 cents.

18          THE COURT:  I'm sorry.  You're cutting out a little

19 bit.  So, what was the cents?

20          MR. SLONE:  I'm sorry.  $28,028.75.

21          THE COURT:  Okay.  And, again, confirm for me the

22 period that that applied to.

23          MR. SLONE:  That was -- I'll get that out, hold on.

24 That was the periods from 2019 to 2022.

25          THE COURT:  Okay.  And that's the extent of what's

**Appendix Vol. II, Page 636**

4

1 been paid?

2          MR. SLONE:  Yes.

3          THE COURT:  Has there been any other disbursements

4 from the Estate other than that?

5          MR. SLONE:  Yes.  I paid myself a part of the

6 Attorney's fee, which was approved by the Court, Your Honor.

7          THE COURT:  Is that with the sale?  I don't recall

8 when that --

9          MR. SLONE:  Yes.  I was paid $18,972.

10          THE COURT:  Okay.  And what was the basis for paying

11 the real estate taxes?

12          MR. SLONE:  That was part of the Agreement and at the

13 Hearing on 4/13/23 on Page 39 it says, "I'm saying that the

14 distribution would be withheld with the exception that if the

15 Trustee wishes to proceed with paying the Tax Claim to the Tax

16 Claim Bureau, he is free to do that."

17          Also prior to paying those taxes I contacted the

18 party, Mr. Lacher I talked to in the Bernstein office, and I

19 believe William Otto, to pay those taxes, and then sent a

20 receipt of the payment afterwards, Your Honor.

21          THE COURT:  Okay.  All right.  So, thank you, Mr.

22 Slone.

23          This is the Motion to bring forward again the Court's

24 consideration of the Settlement Motion and in the Motion it's

25 been represented that some of these items may have been

1  resolved through themselves and then other items, Christine

2  Biros is asking the Court to consider again and approve.

3           So, let me hear from the parties at this point and

4  then we'll proceed from there.  Mr. Bernstein.

5           MR. BERNSTEIN:  Thank you, Your Honor.  So we, just

6  to be clear, we are not seeking any action with regard to the

7  property taxes, the real estate taxes.  Our understanding was

8  after the April 13th Hearing it made sense for the Trustee to

9  pay them.  This was what was included in Ms. Biros' Claim

10  Number 2 and we're not seeking to go forward on that.

11           Likewise, Ms. Biros has Claims Number 3 and 4 that

12  are pre-petition Unsecured Claims, one for rent for a

13  pre-petition period, and the other for environmental

14  remediation, both of which we are clear from the Status

15  Conference in August and what's happened since then, they're

16  out of the money.  The Unsecured Creditors are not receiving

17  anything here.

18           So, that was the subject, that's really what led up

19  to our Motion.  We have the Administrative Claim.  The April 13

20  Hearing almost resolved the 9019 Motion.  I think the Court was

21  very close to approving some or all of the settlements.  The

22  avoidance action that was pending created sufficient

23  uncertainty that the Court continued the Motion.  During that

24  Hearing the Court suggested the Trustee could pay the real

25  estate taxes and he subsequently did, as he said.  And the

1  Motion on for today, we're seeking only the Administrative

2  Claim approval.  The others are either moot or irrelevant.

3       In the past the Court has expressed concerns about

4  the level of animosity and litigation over what was a very

5  small Estate and has turned out to be very small.  Ms. Biros

6  has tried to explain that much of her activity has resulted

7  from the practices of the Snyders to litigate everything,

8  everywhere, as many times as they can.  And, of course, that's

9  the basis for her action, RICO action in the District Court.

10      Today we see evidence of that strategy from the

11 Snyders again.  We filed what we thought was a simple innocuous

12 request for a hearing on the $18,000 Administrative Right

13 Claim, and the Snyders both filed lengthy Objections to all of

14 the Claims and lengthy Objections to the Motion, referring to

15 all the Claims.

16      While George Snyder holds an Administrative Claim

17 which might give him standing to object to the Unsecured

18 Claims, Shanni Snyder doesn't have a Claim.  We don't think she

19 has standing.  In any event, we'll deal with Mr. Snyder's

20 Objections when they are heard.

21      I'm sorry, I wasn't clear.  He not only filed an

22 Objection to the Motion, but he filed yesterday Objections to

23 the Claim 3 and Claim 4, which doesn't make any sense to us,

24 but we'll deal with it when we deal with it.

25      For today we're seeking an opportunity to argue the

7

1  9019 Settlement Agreement with the Trustee on the

2  administrative rent.  If this is the Hearing to do that, we're

3  prepared to go forward.  If this is a Hearing to set a Hearing,

4  we're prepared to deal with that.  We just, we want to help

5  move the case forward.  We're trying to end this.

6       With regard to the substance of the 9019, we'd say

7  that we incorporate the arguments made on April 13th.  The

8  Settlement of the Administrative Rent Claim is well within the

9  range of reasonableness and meets the Martin factors, as

10  outlined on the 13th.  Ms. Biros is the owner of the Real

11  Property.  The Debtor and the Trustee had possession of some or

12  all of that Real Property for approximately nine months

13  post-petition.  $2,000 per month is a reasonable compromise of

14  the Rental Value for that possession.

15       The Court was ready to approve the Claim on April

16  13th, but heard arguments from the Snyders that a possible

17  favorable result on the Adversary might somehow allow an unjust

18  result, if the Settlements had been approved at that time.

19  This seems no longer even remotely likely.  We would ask the

20  Court to approve the Settlement for the reasons heard on April

21  13th.

22       I'd just like to add at that Status Conference in

23  August, when we were discussing the administrative insolvency

24  of this Chapter 7 case, we expressed concern that the Court

25  might find the need to moot our Objection to Shanni Snyder's

8

1 Claim.

2          We encourage the Court to continue to make the

3 Decision since it had been fully briefed and argued, and the

4 Court indicated that it would.

5          Since that time, the District Court has affirmed this

6 Court's Decision on the Dismissal in the Adversary.  We hope

7 the Court is near to releasing a Decision on the Shanni Snyder

8 Claim Objection so that we can begin to deal with the appeal

9 process which we have no doubt will ensue.

10          So, we would ask the Court to approve today the

11 $18,000 Settlement of the Admin Claim so that the Trustee can

12 have clarity on what the Administrative Expenses are that have

13 to be prorated.

14          Thank you, Your Honor.

15          THE COURT:  Thank you.  All right.  Well I -- to

16 answer your first question, I am prepared to move forward on

17 the merits of this today for two reasons.  One is, I previously

18 had a full hearing on the Settlement Motion before, and took it

19 under advisement at the time and figured that it was ready for

20 consideration pending the Court's consideration of other

21 factors.

22          Related to that though you mentioned just now that

23 the District Court affirmed my Dismissal of the Adversary

24 Proceeding.  I wasn't aware of that.  Is that -- I mean, I was

25 aware that the --

**Appendix Vol. II, Page 641**

1          MR. BERNSTEIN:  I'm pretty sure I saw that Decision

2  last week, Your Honor, from --

3          THE COURT:  I think that was my Decision on George

4  Snyder's Claim.

5          MS. BIROS:  Yes.

6          MR. BERNSTEIN:  I may have misspoken.

7          THE COURT:  Okay.  Because I --

8          MR. BERNSTEIN:  I apologize, Your Honor.

9          THE COURT:  I just wanted to make sure I didn't miss

10  something because that would be something that I, you know,

11  certainly would want to take into consideration.

12          MR. BERNSTEIN:  We're fully expecting it to be

13  affirmed.

14          THE COURT:  Okay.

15          MR. BERNSTEIN:  Sorry, I may have jumped the gun.

16          THE COURT:  No, that's fine.  And then, secondly, I

17  think I've given the parties ample time to be heard.  You know

18  this was scheduled for a Hearing.  This Motion was filed in

19  early December and now here we are a month later and the

20  parties have had time to be heard on this and have voiced full

21  throated Responses and Objections.  So, I think there has been

22  adequate due process afforded here.

23          So, let me ask you specifically the type of relief

24  that you are asking for.  You are asking that basically I would

25  approve the Settlement to the extent it applies to the

10

 1 Administrative Rent Claim and then do nothing further on the

 2 other two Claims or what --

 3        MR. BERNSTEIN:  Correct, Your Honor.  We'd like the

 4 $18,000 Administrative Claim to be allowed, to be paid on final

 5 distribution.  And the Motion could be dismissed as to the

 6 other three Claims, the 9019 Motion.

 7        THE COURT:  Okay.  Thank you.  All right.  Let me

 8 hear from Shanni Snyder.  And at this point, you know, I've not

 9 issued a Ruling yet on the Claim Objection, so she still has a

10 Claim at this point, so I think has an ability to be heard.

11 So, Mr. Lacher?

12        MR. LACHER:  Thank you, Your Honor.  Good morning.  I

13 would just point out that at the time we received the Motion, I

14 think there's been, you know, a lot of clarification today in

15 regards to the relief being sought.

16        The Motion itself was fashioned as a Motion to Reset

17 a Hearing.  So, was it a request to set a Hearing, or was it a

18 request for the relief?  Your Honor has made that clear.  And

19 I assumed all along that this would be the Hearing on the

20 relief.

21        But there were other pieces of confusion in the

22 Motion just to explain why we're here.  The Motion seeked (sic)

23 an approval of the Settlement Agreement with the Trustee which

24 not only included the Administrative Rent Claim, but it

25 included a pre-petition Rent Claim, a Real Estate Tax Claim,

**Appendix Vol. II, Page 643**

1 and an environmental cleanup.  So, the Motion itself, as I read

2 it, was not limited to an Environmental Cleanup Claim.

3        And further still, the proposed Order with the Motion

4 included provisions to schedule a Hearing on the matter, but

5 could be read in a way with a contradictory provision just

6 simply approving the full Settlement.

7        So, the Objection, the first and foremost, was Ms.

8 Snyder wanted clarification of what exact relief was being

9 sought.  And I've heard today that it's limited to the

10 post-petition Administrative Rent Claim.

11       The continuance to my Objection here would be that

12 Ms. Snyder opposes an allowance until the appeal process plays

13 out in regard to who the actual owner of the property is.  I

14 believe we need a final determination of ownership and a final

15 accounting of the purpose of payments made by the Trustee.

16       And I'll just point out some examples.  If Biros

17 turns out not to be the property owner, why is she entitled to

18 rent?  If Biros is not the property owner, why does she have

19 any connection on an Environmental Cleanup Claim.

20       If Biros is the property owner, why would U LOCK pay

21 real estate taxes in regard to property owned by Biros?

22       If Biros became an owner later in the process but not

23 from the inception, as this Court has ruled, then she owned the

24 property but she's getting rent for periods where she didn't --

25 the rent may not -- if the property was granted to repay her

1  loan, then the rent she seeks would result in a windfall.

2          I will agree -- by the way, I want to make this very

3  clear.  Mr. Slone is a terrific Trustee.  Mr. Slone absolutely

4  contacted me about the payment of real estate taxes.  This is

5  in no way, shape, or form an attack on Mr. Slone.

6          I will say though that we have confusing matters.

7  Certainly Mr. Slone did and should have paid any real estate

8  taxes owed by the Estate.  But it's unclear, and again, because

9  who is the owner of the property?  When did each party become

10 owner of the property or not become owner of the property?  You

11 know, what taxes were paid?

12         U LOCK should not be paying real estate taxes for

13 property owed, owned, pardon me, by Ms. Biros, or if they

14 should, I don't really understand why.

15         So, again, Your Honor, I am simply asking the Court

16 to maybe take a wait and see position until things are fully

17 clarified and then we can deal with these Claims.

18         And you know, again, I acknowledge there's not a lot

19 of money on hand, but these issues, as far as I'm concerned,

20 are up in the air.

21         THE COURT:  Well but that seems to be what --

22         MR. LACHER:  So we would just ask Your Honor to --

23         THE COURT:  -- Attorney Bernstein is proposing though

24 is to allow the Administrative Claim and then take a wait and

25 see on the other two.  If the other two or three Claims are out

1 of the money, then it's not really relevant at this point.

2          But I have said before and it still appears to me

3 that there would be an entitlement to administrative rent for

4 the Estate's use of the property during the post-petition

5 period until stay relief is granted.  And so is there anything

6 further you wanted to say on that count?

7          MR. LACHER:  No, Your Honor, I think I've just

8 pointed out that knowing who the owner was and when they became

9 the owner --

10          THE COURT:  All right.

11          MR. LACHER:  -- might be relevant to calculating

12 those figures.

13          THE COURT:  Okay.

14          MR. LACHER:  But, otherwise, Your Honor was loud and

15 clear at the last hearing.  And I did want to explain I as a

16 lawyer was genuinely confused reading the Motion as to what we

17 were seeking here today.  So, that is my request of the Court.

18 I would ask that you put it all on hold, but that's all I have

19 to say, Your Honor.

20          THE COURT:  Okay.

21          MR. LACHER:  Thank you.

22          THE COURT:  All right.  Mr. Snyder, anything else you

23 wish to offer?  I mean I do hope you -- I read your Pleading

24 and saw that you were having some health issues, so I wish you

25 well with respect to those.  But anything that you wanted to

1  address with the Court today?

2          MR. SNYDER:  I appreciate that, Your Honor.  For the

3  most part I agree with the position of Shanni Snyder in her

4  Response.  And I would just like to add my position is the same

5  thing.  I sort of think it's premature until the process is

6  over.

7          But also that the Claim I feel should be reduced by

8  the rent and the property taxes, or the rent should be reduced

9  by the property taxes.

10         And the reason we keep, you know, I keep feeling, you

11 know, not to want to litigate every thing, but I'm compelled to

12 because everything is misstated in court.  Just even as recent

13 as today he said most or all the property use was used by U

14 LOCK.  We really used a very small percentage of the property

15 and I had included that in a diagram of one of my filings.

16         And also I was kicked off.  U LOCK wasn't even

17 allowed on the property for so many months and, you know.  So,

18 to state today that I had use of most of the property, U LOCK

19 had most use of the property is not, I don't think, correct.

20         A lot of tenants lost valuable things, and U LOCK was

21 really on the hook for everything.  They sort of bulldozed over

22 down there, so, that was all.

23         And if you do set a hearing in the future then, like

24 I said, I have to get my aorta replaced and reconstructed so

25 that's going to be a couple month process, or maybe about a

**Appendix Vol. II, Page 647**

1  month -- a week in the hospital, maybe a month in a recovery,

2  and then -- so I would -- I have a doctor's appointment today,

3  and then the process will start.  So, somewhere in mid-March

4  would probably be great, or after.

5       THE COURT:  Well, you're also welcome to continue to

6  participate via Zoom if that's more convenient, but you know --

7       MR. SNYDER:  Okay.

8       THE COURT:  Otherwise, you know, I'm going to proceed

9  on what we have in front of us and I appreciate your comments.

10      Having heard all the parties I do find as a

11 supplement to what I've previously stated on the record on the

12 initial Hearing on the Settlement Motion, that there is

13 sufficient grounds to grant the Settlement on a limited basis.

14      I do think that Christine Biros and the Trustee have

15 shown that the Martin standards are satisfied with respect to

16 the Administrative Rent Claim.

17      I do appreciate the compromise that was made there

18 and the compromise indeed is within the Court's expectation of

19 what a reasonable rent would be for the property and for the

20 use that the Debtor had or the Estate had of that property

21 during the time that it occupied the premises.

22      So, I am prepared to approve the Settlement as it

23 pertains to the Administrative Rent Claim.

24      I'll deny the remainder of the Settlement without

25 prejudice and we can determine later on whether or not it's

16

1  worth going down the road of evaluating the merits of the other

2  Claims given that the Estate does not appear to be growing and

3  is what it is and there may not be enough money to pay all the

4  Administrative Claims at this point.

5          Having said that, I do find it necessary to, and

6  perhaps helpful, to give some preliminary comments to the

7  parties, again, just some ideas that I have from looking at

8  this and it's a bit of a continuation from what I had observed

9  before.

10          But with respect to the pre-petition Rent Claim I

11  think there is some questions and concerns that the Court would

12  have in terms of the entitlement there in light of the fact

13  that this was a Constructive Trust and the property was awarded

14  to Ms. Biros because U LOCK was unable to pay the Loan.

15          And so, from that standpoint Ms. Biros was a Lender

16  and instead of getting repayment was given the Deed to the

17  property.  I'm not entirely convinced at this point that that

18  would entitle her to pre-petition rent on top of that.  So,

19  that's a hill that will need to be overcome, in my view, if we

20  ever get to the merits of that Claim.  Again, you know, it may

21  not reach that point based on where the Estate is, but that's

22  something I want to at least tell you where I'm at right now.

23          And then as far as the Environmental Claim is

24  concerned, I do think that it's been a showing, at least at

25  this point, that there are some environmental concerns there on

1  the property.

2          The question I would have at this point is, what

3  proof is there that U LOCK caused those environmental issues or

4  is ultimately liable for any environmental remediation that

5  would be necessary?  So, that's something else that would need

6  to be addressed if the day and time comes that we would go into

7  the merits of that Claim in full.

8          But, otherwise, as to the matter at hand, I do find

9  that there is a sufficient basis to grant the relief on a

10 limited basis, and so I'll enter an Order to that effect later

11 today.

12         MR. BERNSTEIN:  Thank you, Your Honor.  May I raise

13 one brief point?

14         THE COURT:  Sure.

15         MR. BERNSTEIN:  Unrelated to this Motion.  Maybe get

16 some guidance.  Earlier in the case in November of '22 the

17 Court approved a Stipulation between George Snyder and the

18 Trustee that provided that George Snyder would be responsible

19 for preparing and filing tax returns.

20         There was, I believe, one tax return filed during the

21 case and it was for 2016 and it contained, among other improper

22 assertions, it contained the assertions that Ms. Biros was an

23 owner of U LOCK, and so it disclosed her Social Security

24 Number.  It made some other what we think are improper

25 allegations.

1        We think at this point it's clear that the Court can

2  no longer rely on Mr. Snyder to file the tax returns and we'd

3  like the Trustee to file tax returns, including an Amendment of

4  2016 to correct those errors.

5        And we realize that we can't unring the bell as far

6  as it being on a piece of paper filed with the IRS somewhere,

7  but we can correct the record by the Trustee filing proper tax

8  returns, even if many of the numbers are unknown because the

9  records don't exist.

10        So, I don't know, we have an existing Order that says

11  Mr. Snyder will assist the Trustee.  We could file another

12  Motion to require the Trustee to file the tax returns.  Can we

13  get some guidance from the Court on this?

14        THE COURT:  I think it would be best to do a Motion

15  with respect to that so we have notice and opportunity to be

16  heard.  And then, you know, has there been a preliminary

17  discussion with Trustee Slone on this?

18        MR. BERNSTEIN:  Not yet.

19        THE COURT:  Okay.  Well, I think that would be

20  advisable as well and that might help shape the discussion and

21  if there is consent that can be gained on that one issue, then

22  that would seem to be appropriate.  So, I think that's the best

23  way to proceed.

24        MR. BERNSTEIN:  Thank you, Your Honor.

25        THE COURT:  Okay.  All right.  Anything else from the

1 parties at this point?

2           MR. SNYDER:  No, Your Honor.

3           THE COURT:  Very good.  Then I will enter an Order on

4 the pending matter at this point and then we'll wait to see

5 where we are.  And as I indicated before, I do have a couple

6 things that are still under advisement and the Court will be

7 getting those out as quickly as possible.

8           MR. BERNSTEIN:  Thank you, Your Honor.

9           THE COURT:  So, thank you very much, everyone.

10          MR. BERNSTEIN:  Have a good day.

11          THE COURT:  You, too.

12          MR. SLONE:  Thank you, Your Honor.

13          MR. LACHER:  Thank you, Your Honor.

14          MR. SNYDER:  Thank you, Your Honor.

15

16                 **C E R T I F I C A T I O N**

17          I, JANET D. PERSONS, court approved transcriber,

18 certify that the foregoing is a correct transcript from the

19 official electronic sound recording of the proceedings in the

20 above-entitled matter and to the best of my ability.

21

22 /s/ Janet D. Persons

23 JANET D. PERSONS

24 J&J COURT TRANSCRIBERS, INC.    DATE:  January 9, 2024

25