# No.  24-1163

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

In re:  U LOCK INC.,

Debtor.

CHRISTINE BIROS,

Movant-Appellee,

v.

GEORGE SNYDER,

Respondent-Appellant

---

Appeal from Judgment of the United States District Court for the Western District of Pennsylvania, 23-civil-691 (Hon. Cathy Bissoon, U.S.Dist. Judge), affirming the Order of the United States Bankruptcy Court for the Western District of Pennsylvania at 22-bk-20823 (Hon. Gregory Taddonio, Chief U.S.Bk. Judge)

---

GEORGE SNYDER'S INFORMAL BRIEF WITH THE APPENDIX VOLUME I

---

GEORGE SNYDER
PO BOX 15
IRWIN PA  15642
(412) 979-9999
georgecsnyder@pm.me

APPELLANT

## **CONTENTS**

Contents……………………………………………………………………..  02

Citations…………………………………………………………………..  03

Jurisdiction……………………………………………………………………07

Issues Presented for Review………………………………………………..08

Statement of Related Cases and Proceedings…………………………………08

Statement of the Facts and the Case……………………………………… 11

Standard of Review…………………………………………………………… 24

Argument ……………………………………………………………………..25

Conclusion …………………………………………………………………..  47

Combined Certifications……………………………………………………… 48


Appendix Volume I:


Notice of Appeal to Third Circuit (filed 1/17/24)..........................................49     Appx  I  p.  1

Notice of Appeal from Bankruptcy to District Court (filed 4/24/23)...........50     Appx  I  p.  2

District Court Memorandum and Order (filed 12/19/23)...........................52     Appx  I  p.  4

District Court Judgment Order (filed 12/19/23)..........................................  57     Appx  I  p.  9

Order Denying Bankruptcy Claim (filed 4/14/23)......................................58     Appx. I p. 10

## CITATIONS

**LAWS:**

11 USC 303(b) …………………………………………………………… throughout

11 USC 502……………………………………………………………………..throughout

11 USC 704……………………………………………………………………30

18 USC 1503……………………………………………………………………10

28 USC 158(a)...............................................................................................08

28 USC 158(d)...............................................................................................08

28 USC 1291……………………………………………………………………08

29 USC 203, et seq. (Fair Labor Standards Act)................................................ throughout

29 USC 203(s)(2) ……………………………………………………………20

29 USC 206……………………………………………………………………    21

29 USC 255(a)................................................................................................  20

Wage Payment and Collection Law, 43 P.S. §260.1, et seq., 260.9a………   40, 41

**RULES AND COMMENTARY:**

WDPA Local Bankruptcy Rule 9013-5……………………………………….. 19, 32

1983 commentary to Bankruptcy Rule 3007……………………………………29

Fed. R. Bankr. P. 3001(f)...............................................................................36

**DECISIONS:**

***Arnold v. Ben Kanowsky, Inc.,*** 361 U.S. 388 (1960)...................................... 44

***Aronson v. Commercial Financial Services, Inc.***,
    1997 WL 1038818, at *3 (W.D. Pa. 1997)................................................ 42

***Bender v. Williamsport Area School Dist.***, 475 US 534, 546-47( 1986)......07

***Biros v. Snyder***, 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024)....................... Throughout

***Biros v. Snyder,*** 23-cv-00297 (W.D.Pa. )............................................................8,9,10, 26

*Biros v. Snyder*, 2:24-cv-00478 (WDPA)............................................................. 10

*Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)............................................. 33

*Brock v. Mr. W. Fireworks Inc.,* 814 F.2d 1042 (5th Cir. 1987)...................... 43,44,46

*Dunlop v. Indus. Am. Corp.,* 516 F.2d 498, 501 (5th Cir.1975)...................... 45

*Ehsanuddin v. Wolpoff & Abramson*,
    2007 WL 543052, at *4, n.1 (W.D. Pa. 2007)........................................... 42

*Fred Reuping Leather Co. v. Fort Greene National Bank,*
    102 F.2d 372, 373 (3d Cir. 1939).................................................................. 30

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). ………………………. 24

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159, 163 (3d Cir. 2010)................................................................. 24

*In re BDC 56 LLC,* 330 F.3d 111, 118 (2d Cir. 2003)........................................ 8, 12, 31

*In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011)........................................... 24

*In re: Dionisio*, 80 Fed. Appx. 285 (3rd Cir. 2003)......................................... 07

*In re Dove-Nation,* 318 B.R. 147, 152 (8th Cir. BAP 2004)........................... 34, 37

*In re Global Indus. Tech., Inc.,* 645 F.3d 201, 210 (3d Cir. 2011). …………26

*In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005).................................................. 35

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625, 633 (3d Cir. 2017)................................................................. 28

*In re IT Group*, 448 F.3d 661, 667 (3d Cir. 2006)............................................. 47

*In re Kirkland*, 379 B.R. 341, 344 (10th Cir. BAP 2007)................................. 37

*In re: LTL Management LLC*, 364 F4th 84, 99 (3d Cir. 2023)....................... 25

*In re New Mexico Props., Inc.,* 18 B.R. 936, 939-40 (Bankr. D.N.M. 1982).. 31

*In re Paczesny,* 283 B.R. 715, 718 (Bankr. N.D. Ill. 2002)……………………31

*In re Sinclair's Suncoast Seafood, Inc.,*
     140 B.R. 588, 592   (Bank. M.D. Fla. 1992)............................................. 26

*In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir. 1993)................................................34

*In re Toms,* 229 B.R. 646, 650 n. 3 (Bankr. E.D. Pa. 1999)............................. 26

*In re Trump Ent. Resorts,* 810 F.3d 161, 166–67 (3d Cir. 2016)....................25

*In re Weaver,* 632 F.2d 461, 462 n. 6 (5th Cir. 1980)........................................24

*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)....................................28

**Majestic Star Casino, LLC v. Barden Dev., Inc.(In re Majestic Star),**
     716 F.3d 736, 748 (3d Cir. 2013)....................................................................29

*Midland Funding v. Johnson,* 581 US 224, 228 (2017) ……………………**42**

*Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, (1992),.................. 43

*New Jersey Bankers Association v. Attorney General New Jersey,*
     49 F.4th 849, 855 (3d Cir. 2022)......................................................................28

*Nuveen Municipal Trust v. Withumsmith Brown,*
     692 F3d 283, 293 (3d Cir. 2012)......................................................................24

*Ohio v. Kovacs,* 469 U.S. 274, 279 (1985) ………………………………… 38

*Potter v. Cozen & O'Connor,*
     46 F.4th 148, 154 (3d Cir. 2022).............................................................. 28, 29

*Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 22 (2000)........................ 37

*Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947)....................43

*Snyder v. Biros..2:24-cv-00135 (WDPA)............................................................ 10

*Snyder as Trustee v. Biros,* No. 24-1202 (3d Cir.)......................................... 10, 23

*St. Elien v. All County Environmental Servs.,*
     991 F.3d 1197 ( 11th Cir. 2021).......................................................................45

*Town of Chester v. Laroe Estates, Inc.,*
     581 U.S. 433, 438 (2017). ……………………………………………………28

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,*
    549 U.S. 443, 452 (2007). …………………………………………… 36

*U Lock v. Biros*, No. 23-2293 (3rd Cir.)............................................................... 10

***United States v. Rosenwasser,*** 323 U.S. 360, 363 n. 3 (1945). …………… 43

*Warth v. Seldin,* 422 U.S. 490, 498 (1975)........................................................ 29

## **JURISDICTION**

The bankruptcy court maintained no subject matter jurisdiction to adjudicate the objection to the unsecured general proof of claim because no money exists in the estate to pay unsecured creditors.    Thus, this Court should remand with instructions to vacate the advisory Order as to the proof of claim and dismiss the objection without prejudice unless magically unsecured creditors will somehow be paid. Standing may be raised anytime even in the appellate court. *In re Dionisio*, 80 Fed. Appx. 285 (3rd Cir. 2003)); *Bender v. Williamsport Area School Dist.* 475 U.S. 534, 546-47 (1986).

As to the whole underlying bankruptcy, most recent decisions from the Bankruptcy Court confirmed there never existed subject matter jurisdiction. There was a petition under 11 USC 303(b)(2) by a creditor who claimed to have $10,000 in debt.  That's what gave the bankruptcy court subject matter jurisdiction.  But the bankruptcy court declared the claim not valid and worth nothing.  *See Biros v. Snyder,* 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024)(finding petitioning creditors claim disallowed).  If that's correct and affirmed on appeal, then there was never subject matter jurisdiction under 11 USC 303(b)(2) and no authority of the bankruptcy court to do anything, to take the property, to take U Lock's assets, to sell them, to appoint a trustee, to adjudicate all these things.  *See  In re BDC 56 LLC,* 330 F.3d 111, 118 (2d

Cir. 2003)(303(b) defect eliminates subject matter jurisdiction).

If the bankruptcy court did have jurisdiction, it exceeded it by going beyond the exclusive authority found in 11 USC 502 to kill my claim.

As to the district court jurisdiction, on April 24, 2023, I filed a timely notice of appeal from the Bankruptcy Court.  See  Appendix Vol. I, page 002-003. This was from the bankruptcy court's Order on April 14, 2023.  See *Id*, page 010.   Therefore, it was timely and  the district court had jurisdiction over my appeal pursuant to 28 USC 158(a).  Note that I had to do this even though there is no money in the estate because the adjudication may prevent me from raising claims in other lawsuits or defending myself in Christine Biros' RICO suit she filed against me at 23-cv-00297 (WDPA).

This court maintains jurisdiction over this appeal pursuant to 28 USC 158(d) and 1291 because I filed a timely notice of appeal on January 17, 2024, Appendix Volume I, page 1, from the district court's judgment on December 19, 2023, Appendix Volume I, pages 009, based on Volume I, pages 004-008 .

## ISSUES PRESENTED FOR REVIEW

**I.   Whether the bankruptcy court lacked jurisdiction and the objection is moot and there is no standing to challenge it because no general unsecured claims will be paid from the bankruptcy estate as judicially admitted by the appellee after the hearing and subsequent decisions by the bankruptcy court eliminated subject matter jurisdiction over the entire bankruptcy proceeding?**

**II.  Whether the bankruptcy court erred in its legal analysis and in finding, at a non-evidentiary hearing without due process in contravention of local rules, that Snyder was the owner of a family business, the enterprise did not engage in commerce, the enterprise had no employees as defined under the Fair Labor Standards Act because it had no employees on salary in the general sense, that the debt was extinguished by the statute of limitations, and that the claim constituted a "sweat equity" investor claim rather than a claim for work?**

**III. Whether the bankruptcy court erred in its legal analysis and in finding, at a non-evidentiary hearing without due process in contravention of local rules, that Snyder was the owner of a family business, the enterprise did not engage in commerce, the enterprise had no employees as defined under the Fair Labor Standards Act because it had no employees on salary in the general sense, that the debt was extinguished by the statute of limitations, and that the claim constituted a "sweat equity" investor claim rather than a claim for work?**

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Lots of related cases, not sure why they go in front of different judges down there in the Western District when they are all related. Christine Biros filed a Racketeer Influenced and Corrupt Organizations lawsuit against me and the attorney for U Lock and Shanni Snyder. In it, she cites every time I testify

as an attempt to corrupt the proceedings in violation of 18 U.S.C. § 1503. She complains about every appeal filed in her ever-growing Amended RICO Complaint. This is before Judge Colville at **Biros v. Snyder**, 23-cv-00297 (WDPA).

The Bankruptcy Court recently found that Shanni Snyder had no claim against U Lock for her wages, *Biros v. Snyder,* 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024), but that means the Bankruptcy Court didn't have any jurisdiction to create the U Lock estate. That Order is on appeal before judge Fischer at 2:24-cv-00478 (WDPA). If affirmed there is no subject matter jurisdiction for any of these cases.

There's a bankruptcy appeal where I objected to Christine Biros' administrative claim for rent. Unlikely my unsecured claim which can't be paid due to an insolvent estate, her claim will be partially paid. The objection is because she gets rent but the Trustee also paid her property tax. This is before District Judge Bissoon at 2:24-cv-00135 (WDPA).

Before this Court are the related cases where U Lock sued Biros for violations of the automatic stay in violation of 11 USC 362(k). That's case 23-2293. There's a case where Shanni Snyder is suing as the Trustee in U Lock Bankruptcy to reverse the funky taking of our property. That's at 24-1202.

## STATEMENT OF THE FACTS AND THE CASE

### a. COMMENCEMENT OF THE INVOLUNTARY BANKRUPTCY

On May 9, 2022, Shanni Snyder commenced an involuntary bankruptcy case against U Lock supposedly giving the Bankruptcy Court subject matter jurisdiction pursuant to 11 USC 303(b)(2).  See Appendix Vol. II, Pages 074-076.

### b. BIROS APPEARS AND OBJECTS BUT BANKRUPTCY COURT PUTS U LOCK INTO BANKRUPTCY ANYWAY

On May 20, 2022, Christine Biros appeared in the action and moved to dismiss it.  See docket sheet, Appendix II, page 010, entries 14 through 16.

On June 17, 2022, the Bankruptcy Court granted Shanni Snyder's petition and issued an Order for Relief, meaning she had at least a $10,000 claim against the company conclusively determined.  *Id,* Page 077.  On August 25, 2022, the Bankruptcy Court verbally denied Biros' Motion to Dismiss, "Okay. Well, on the motion as it stands, I'm finding, as I indicated, there is no basis to dismiss the case, as the trustee has conjured up value here based on the two sale -- or the proposed sales that he intends to bring within the next week, so I'm going to deny that portion of the motion as it pertains to the request for dismissal."  *Id*, Page 217.

Parenthetically, it is noted that on the Bankruptcy Court recently

cancelled its own subject matter jurisdiction pursuant to *In re BDC 56 LLC,* 330 F.3d 111, 118 (2d Cir. 2003) because it ultimately found, based on Christine Biros' objection, that Shanni Snyder had no money due her from U Lock, not even $10,000!!!  *Biros v. Snyder,* 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024).  With no money due to Shanni Snyder, no possible bankruptcy jurisdiction!

### c. I FILED A PROOF OF CLAIM

In August 2022, I filed a Proof of Claim.  Appx. II, Page 071-073.  The claim was for $99,000 based on  "wage, fair labor standards."  Appx. II, Page 072.  I did not limit it to the Federal *Fair Labor Standards Act,* but generally wage.  There's also state law, common law compensation, etc.

### d. U LOCK WAS A CORPORATION WITH BIROS FAMILY AS PARTNER AND MANY SHAREHOLDERS, NOT JUST ME

Now U Lock is no "family business," but is a Corporation.  The addendum to the bankruptcy schedules show, *Id* p. 117, show "The formation of U Lock Inc. occurred as a result of a plan between George Snyder, Kash Snyder, Christine Biros, and John Biros to purchase an extremely undervalued piece of real estate on Route 30.  They intended to work with Colony Holdings, a retail shopping center developer, to create a shopping plaza."  Christine Biros and John Biros did not want their names on corporate papers under a

[criminal gambling] investigation was complete.  *Id.*

U Lock had over 1,000 small shareholders including a public company,

Accredited Business Consolidators f/k/a the Italian Oven Inc.  This was

explained at the creditors meeting on September 9, 2022.  *See* Appx Vol. I,

pages 418-419:

> Q. Who are the shareholders?
> A. There's a company called Accredited Business Consolidators Corp
>    and –
> Q.  Could you speak up, please?
> A.   Yes. There's a company called Accredited Business Consolidators
>      Corp, and there's over a thousand shareholders, so we issued,
>      issued  shares. But I'm the majority shareholder.
> Q. How much do you own, what percentage?
> A.  I think it's 51 percent.
> Q. I didn't see that Accredited creditors listed in your schedules. Is –
> A. You know what, when we -- I'm going back to with Biros, I was 51
>    percent. With currently I'm 90 percent.
>  Q. You're 90 percent?
>  A. We can send you a shareholder list.
>  Q. Yeah, you should do that. Do they know that this company is in
>     bankruptcy?
> A. We provided Otto [Biros' Attorney] with a list.
> Q. Well, he's -- so what? Who's John Biros?
> A. They -- and they probably don't know the bankruptcy.
> Q. It says he owns 25 percent of this company.
> A. Who is that?
> Q. John, on your statement, Question No. 28, list all the debtors,
>    officers, directors, managing members, general partners, members
>    in control, controlling shareholders, or other people in control of  the
>    debtor. You have one person listed,John Biros, 25 percent. It says a
>    silent partner from inception. Your name's not listed. Kash isn't listed.
>    No other names are listed here. So why don't you file an amended
>    schedules so we know –
> A. Okay.
> Q. -- where we're coming from.

A. Silent partner. Okay, we'll file an amended.

On January 17, 2023, a second meeting of creditors was held and Kash

Snyder testified with Biros asking questions.  Appx Vol II, Page 536-537:

Q. What -- who are the shareholders of the corporation?

A. That would be myself, that would be John, that would be Christine,
that would be George. Then there is like minor shareholders to my
knowledge, and that's, I don't know a whole lot about that end of it. I --
I don't know about even the majority shareholder end it very, very
much, but I know, like I said, the four of us were always, you know, a
big part of it.

So that is what was on file on the record about ownership, certainly if

relevant, a factual hearing would have been needed, not a "non factual,

non-evidentiary" hearing where facts were determined without a fact-based

hearing.

    **e.**  <u>**U LOCK DIDN'T HAVE SALARIED EMPLOYEES BUT IT HAD
WORKERS; I DID MANUAL LABOR FOR THE
BIROS-CONTROLLED ENTERPRISE**</u>

Now time and time again, the court and the creditor Biros keeps using

the term employee in a conflicting manner, on the one hand saying I keep

saying there are no employees  There exists no "employees" meaning people

who received pay checks and stuff.  But there were workers, paid with food,

paid under $500, or not paid at all.  This is clear from the shareholders

meeting, Appendix Vol. II, page 420:

> Q.  How many employees did the company have when the bankruptcy was filed?
>
> A. None.
>
> Q. None. When's the last time the company had employees?
>
> A. Up till recently, we had -- there was always someone helping there. There was always about a half a dozen people helping at different times, you know,  throughout the years. But just the -- just limited, you know, just a few hours a year.
>
> Q. Can you get me the records of that? Were the withholding taxes paid for the taxes for those employees? Were they issued W-2's?
>
> A. Okay, I'll get you the records for the people that worked.
>
> Q. Give me copies of the W-2's for the last four years.
>
> A. Okay. But there wouldn't be any records 'cause they were -- they were contractors, not -- not -- you know, we didn't have W-2's.

Then at Appendix Vol. II, page 427-428, Biros examined me:

> Q. Mr. Snyder, first off, with regard to your statement earlier that you, that U   Lock had no employees and just had contractors, and I just want to make sure I heard you right. You say it was just about a half a dozen people  helping throughout the year a couple hours a year; is that right?
>
> A. Yes.
>
> Q. Okay, so where does your $99,000 claim against the company come from then, right?
>
> A. The $99,000 was what Christine would owe me. We were -- Christine was in charge. She was the -- she was the silent partner, and things changed along the way and now this

lawsuit

> came and as, as a result, any work I've done there over the past seven years I didn't get paid. So I never got any officer compensation or anything from her, so that those -- those stem from my wages, not -- not others.

At Appendix Vol II, page 429, I explained that the $99,000 was, "Well,

either her or U Lock owes me, you know, at least minimum wage, but she

controlled the company."

At *Id,* p. 430, I testified and explained, "I, you know, I developed the land.

I cleaned the weeds, cut the grass, plowed the snow, did building

maintenance, fixed the electrical service. All this stuff was done, and it's just,

there was no compensation whatsoever."

Now at 431-433, Biros clarified about my work and the work of others by asking me questions. I made it clear that there were people who did work, but nobody who got a paycheck:

Q. And again, you are testifying today on behalf of U Lock, who you say has no employees, and yet you file a claim as an alleged employee, and they just, they don't

A. Well, then maybe –

Q. -- match up.

A. Maybe I'm, okay, maybe I'm using the wrong terminology. Maybe, like I said before, officer compensation. When I meant no employees, I meant other, there were no employees on the books. We didn't have a regular staff. Nobody was paid in that way.

Q. So you said you had contractors, not employees, so do you have 1099's then, if you didn't have W-2's?

A. No, we don't have, no W-2's.

Q. Do you have -- do you have 1099's?

A. Yeah. There are -- or there's not any 1099's because they -- they weren't  enough to -- I think they all made less than five or six hundred dollars like per year. So like I said, they were just help. They came in sometimes when they were needed  if there was -- there was no -- nobody was on a 40-hour work week. But just me, like I said –

Q. Okay, so –

A. -- I was entitled to at least minimum wage for the time I worked there or officer compensation.

Q. So you, okay, so Ms. Snyder then, Shanni Snyder, your sister, if everyone made less than five or six hundred dollars a year, if she

worked for four years, that would be around $2,000; right?

A. I wasn't talking about her 'cause we never -- she didn't make anything. We didn't pay her anything. And like I said, we didn't really even consider her an employee. She was my sister; she was helping out, and the arrangement was, once we got things together, she would make some money. So she kept track of her (Inaudible).

Q. So is it your opinion that the default judgment that was obtained in District Court was not truthful and fraudulent for $260,000?

A. Well, that's not what I said at all.

Q. No, no, I'm -- I understand that you're saying you didn't consider her an employee, so I'm trying to get what the company's position on, because you had said you didn't fight it because you didn't have the legal, the money to pay the legal fees; but what is your position on that then if you don't consider her a real employee? And it sounds like people just helped out; their compensation would have been a couple hundred dollars a year. Why is that different there?

A. I don't really have a position on that.

Kash Snyder also testified in January 2023 about the employees. He revealed that the payments were kept under $600 to appease Christine Biros. He testified (Appx. II, pages 537-538):

Q. Did the corporation have employees?

A. No, we never had employees. We always had people helping us, but never anything official or long-term or anything like that.

Q. Did you have 1099 workers, people that you gave 1099 forms to?

A. No, we never did that.

Q. Never did?

A. No, sir.

Q. Now, you said you had people help out, but they weren't paid then; is that correct?

A. Yeah, everyone, anyone who helped -- well, there was always -- Christine said to pay people less than 600. She said her employees I guess for her machine business, you know, that would -- that would help, you know, they would -- I don't know what the reason was. I guess it was for, to keep things simple. But so it was limited hours on people where, you know, I think the number was, well, I'm almost positive the number was $600 per year, everyone had to be below that.

Q. Okay, so you never issued any W-2's or 1099's; is that correct?

A. That's correct.

### f. <u>U LOCK OPERATED IN INTERSTATE COMMERCE</u>

U Lock performed storage operations and provided leases to out of state and in state customers to temporary keep their stuff with us.   Schedule G unexpired leases shows our customers were from both Pennsylvania, out of state, and even Costa Rica.  Appendix Vol. II, pages 095-098.

At page 096, it was listed that we held property for Canadian, California clients.  At page 097, U Lock listed Connecticut, Washington, and Canada client.  At page 098, U Lock listed Massachusetts and Costa Rica clients.

Clearly, the clients stored their property from out of the state making U Lock an enterprise engaging in Interstate Commerce at least, as explained below, the broad definitions under the broad Fair Labor Standards Act definitions.

### g. <u>CHRISTINE BIROS OBJECTS AND TELLS ME THE HEARING WOULD NOT HAVE FACTS DETERMINED.  I REVIEW THE LOCAL RULES AND THEY SAY THAT A SECOND HEARING WOULD HAVE TO BE DETERMINED IF FACTS WERE TO BE DETERMINED</u>

Biros objected to my proof of claim.  In doing so she sent me a hearing notice which was very, very clear:  ""NO WITNESSES WILL BE HEARD.  If there is an issue of fact, an evidentiary hearing will be scheduled by the Court for a later date,"  See Appendix II, page  572.

I wanted to make sure, so I reviewed the Western District of Pennsylvania Bankruptcy Rule on the website of the court.  It said:  9013-5(c) Initial hearings on motions shall be brief, not more than ten (10) minutes in any case. <u>No testimony will be heard. If there is an issue of fact, a discovery schedule, if appropriate, and an evidentiary hearing will be fixed by the Court at the initial hearing.</u> If there is no issue of fact, the Court may dispose of the matter at such hearing, or on briefs, or as the Court may determine. "

I guess I got done the dirty falling for that trick.

### h. I *PER SE* AMEND MY CLAIM

On March 28, 2023, I *per se* filed an Amendment to my Proof of Claim through a Declaration.  Appx. II, pages 576-580.  In it, I declared that I performed management functions for Christine Biros and U Lock including collecting rents, checking mail, cutting grass, spraying Round Up weed killer, removing trees and overgrowth, removing snow, plowing now, cleaning up tires, salting roads, grading the entire parking area, working with electrical service, performing door adjustments, moved heavy machinery, replaced rotting wood, and helped respond to litigation.  Appx. II, Page 576.

I explained that I did not fall within the executive exemptions because I did not receive a salary of at least $684 per week.  *Id* at 577.

I worked approximately five days per week.  I calculated at least 7,084

hours of unpaid labor.  *Id*, at 577.

I explained that the hours I calculated were an underestimate.  *Id* at 579.

Based on this amendment, I am not sure how it can be said that the

burden shifted to me because I filed a bare claim.

### i.  <u>AT THE NON-FACTUAL, NON-EVIDENTIARY HEARING, THE BANKRUPTCY COURT DETERMINED FACTS DESPITE MY BEING PROMISED IT WOULDN'T AND DENIES MY CLAIM</u>

On April 13, 2024, the Bankruptcy Court denied the claim orally starting

at Appx. Vol. II, Page 587:

> Number one, as noted before, the claim is just a bare bones claim. It does not have any supporting documentation substantiating the amounts claimed, or breakdown of the time periods, or the time frames by which the wages were accrued, and so under the Allegheny International line of cases that followed from the Third Circuit decision there, I find that it's not entitled to prima facie validity. And in addition to that, I do think that there are valid points that have been raised by Christine Biros with respect to deficiencies in the claim.
> First off, under applicable law, 29 U.S.C.A. Section 203(s)(2), provides, quote, any establishment that has as its only regular employees, the owner thereof, or the parent, spouse, child, or other member of the immediate family of such owner, shall not be considered to be an enterprise engaged in commerce, or in the production of goods for commerce, or a part of such an enterprise, end quote. Relatedly, Section 29 U.S.C.A., Section 206 provides, quote, every employer shall pay to each of his employees, who in any work week is engaged in commerce, or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, or in the production of goods for commerce, wages,at the following rates, end quote. Here, the Court is finding that this did not constitute -- U LOCK did not constitute an entity or an enterprise engaged in commerce, since he was -- George Snyder was the owner, U LOCK had no other employees, and consequently George does not appear to be an employee as qualified under the FLSA.

I also note that the statute does provide under 29 U.S.C., Section 255(a), that there is a two year statute of limitations except that an action arising from a willful violation may be commenced within three years. Here, the allegation is that some of these claims may reach as far back from 2015 to at least 2019 and, therefore, would seemingly be time barred. I also note that the response that was given does seem to have some inconsistencies. I'm not sure exactly why Mr. Snyder is claiming exemptions under the FLSA, because the exemptions would not be helpful to him and, in fact, would exclude U LOCK or his status from coverage for wages. It also appears to me that Claim 5-1 appears to be an attempt to recoup lost sweat equity or capital contributions that were provided through his labor and efforts, rather than a wage. And, finally, and also compelling, is that the claim does conflict with sworn statements that were given elsewhere in this case, particularly with respect to the schedules and testimony at the 341 meeting and in other sworn declarations. So, for all those reasons, I find that the objection is well founded and I will sustain the objection and deny Mr. Snyder's claim.

Obviously, even though the Bankruptcy Judge reviewed the declaration, he did not consider my explanation as to how I calculated it including a calendar showing the dates.

### j.  I FILE MY TIMELY NOTICE OF APPEAL TO THE DISTRICT COURT

After the Bankruptcy Court denied my claim based on factual findings and affirmative defenses invoking facts, despite promising me there'd be no facts found at the hearing, I filed my timely notice of appeal on April 24, 2023, I filed a timely notice of appeal.  See  Appendix Vol. I, page 002-003.  This was timely because it was within 14 days from the bankruptcy court's Order on April 14, 2023.  See *Id*, page 010.

### k. **BIROS ADMITS AFTER THAT THE UNSECURED CREDITORS WON'T BE PAID**

On January 4, 2024, Biros recognized that unsecured creditors are not being paid.  She stated to the Judge:

> "Likewise, Ms. Biros has Claims Number 3 and 4 that are pre-petition Unsecured Claims, one for rent for a  pre-petition period, and the other for environmental remediation, both of which we are clear from the Status Conference in August and what's happened since then, they're out of the money. The Unsecured Creditors are not receiving anything here."  *See* Volume II, page 638

> "In the past the Court has expressed concerns about the level of animosity and litigation over what was a very small Estate and has turned out to be very small."  Volume II, p 609.  "I'd just like to add at that Status Conference in August,[1] when we were discussing the administrative insolvency of this Chapter 7 case, we expressed concern that the Court might find the need to moot our Objection to Shanni Snyder's Claim."  *See* Volume II, p. 640-641.

Biros even encouraged the Bankruptcy Court to render a moot advisory in the other creditor's claim because it was already briefed.  *Id* at 641 ("We encourage the Court to continue to make the Decision since it had been fully briefed and argued, and the Court indicated that it would).

This is very true, the Trustee reported to the court that administrative claims exceed the money.  Appx. Vol. II, page 632.  It showed $44,567.84 in the estate with $7,028 owed to the Trustee, Trustee Counsel Fees $31,620.

---

[1] Biros was referring to a status conference in August 2023.  While I don't have that transcript copy, it shows they knew that the estate was unable to pay unsecured claims going back.

More fees have been incurred since then, and the only recovery possible is if Shanni Snyder, as assignee for the Trustee, prevails on her appeal pending at 24-1202 (3rd Cir.).

## I.  THE DISTRICT COURT AFFIRMS

The district court affirmed on December 19, 2023, moreless saying that the non-factual hearing was a factual hearing because they made me take an oath, and then kinda sorta parroting the Bankruptcy Court with not a lot of analysis of the standards at 11 USC 502(b) and mistakenly calling me the owner and not correlating the "facts" that weren't supposed to be determined at the non-factual hearing with the record.   *See* Appendix Volume I, pages 009, based on opinion at Volume I, pages 004-008 .

## m.  I FILED A TIMELY APPEAL TO THIS COURT APPEAL

So, again, even though there's no money to be paid in the case for unsecured creditors, because the determinations will affect actions against those in privity with U Lock, I had to file an appeal and I did file my timely notice on January 17, 2024.  See Appx Vol. I, page 1.  So here we are, appealing this divergence from normal procedure, wrong standards, and clearly erroneous factual findings made at the non-evidential non-factual finding hearing.

### n. **THE BANKRUPTCY COURT MAKES POST-APPEAL FINDINGS THAT COMPLETELY ELIMINATE THE 11 USC 303(b)(2) SUBJECT MATTER JURISDICTION**

Now perplexingly, the whole case was premised on the Bankruptcy Court's issuing an Order for Relief placing U Lock in bankruptcy under 11 USC 303(b)(2) at Shanni Snyder's request. This required a finding that Shanni was owed $10,000 not reasonably in dispute. Well, strangely, on February 29, 2024, the Bankruptcy Court decided that Shanni Snyder's claim was valued at zero, invalid, in dispute, and worthless. *Biros v. Snyder,* 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024). So I'm not sure how we got here with two years of the bankruptcy court selling U Lock's stuff, auctioning off its property, deciding who can go where and when.

### <u>STANDARD OF REVIEW</u>

"Whether subject matter jurisdiction exists is a question of law requiring de novo review." ***Nuveen Municipal Trust v. Withumsmith Brown, P.C***., 692 F.3d 283, 293 (3d Cir. 2012) (citing ***W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)***, 591 F.3d 164, 170 n.7 (3d Cir. 2009)). "This is the case even where . . . a district court 'exercis[es its] jurisdiction' and dismisses a cause of action for some other reason." ***In re Caterbone***, 640 F.3d 108, 111 (3d Cir. 2011). (quoting ***Great W. Mining & Mineral Co. v. Fox Rothschild LLP***, 615 F.3d 159, 163 (3d Cir. 2010)). The issue of standing may be raised

*sua sponte.* **In re Weaver**, 632 F.2d 461, 462 n. 6 (5th Cir. 1980); **FW/PBS, Inc. v. City of Dallas**, 493 U.S. 215 (1990).

As to the issues, this Court reviews This Court reviews questions of law decided by the Bankruptcy Court de novo. **In re Trump Ent. Resorts,** 810 F.3d 161, 166–67 (3d Cir. 2016).  With respect to facts, it was supposed to be a non-evidentiary non-fact finding hearing and if there were facts to be found it was supposed to be a second hearing.  That would be reviewed for abuse of discretion which "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to Fact."  **In re:  LTL Management LLC***, 364 F4th 84, 99 (3d Cir. 2023)*.  You guys gotta give a fresh (i.e., plenary or de novo) review to a conclusion of law and review for clear error findings of fact leading to the decision. Id.

## ARGUMENT

I. **The bankruptcy court lacked jurisdiction and the objection is moot and there is no standing to challenge it because no general unsecured claims will be paid from the bankruptcy estate as judicially admitted by the appellee after the hearing and subsequent decisions by the bankruptcy court eliminated subject matter jurisdiction over the entire bankruptcy proceeding.**

    a. <u>BECAUSE NO UNSECURED GENERAL CREDITORS ARE GOING TO BE PAID, BIROS SUFFERED NO INJURY WARRANTING THE INVOCATION OF THE CLAIM OBJECTION PROCESS.</u>

Here's the problem and why this entire objection to my claim is just some

weird form of an advisory opinion:  My claim in the bankruptcy court was a

general unsecured claim, but there exists no money in the estate to pay the

unsecured creditors.  The objecting creditor must establish that if the objection

to the proof of claim were sustained, there would be some benefit to the

estate. *See **In re Sinclair's Suncoast Seafood, Inc.,*** 140 B.R. 588, 592

(Bank. M.D. Fla. 1992)(If the creditor "successfully contested the [...] claim and

obtained the relief he is seeking here, there would be no benefit to the estate

and no money would go to general creditors).

An objection to a proof of claim is pointless in a no-asset case since

there would be no distribution to creditors. *I**n re Toms,* 229 B.R. 646, 650 n. 3

(Bankr. E.D. Pa. 1999).**

Biros knows there's no money in the cookie jar to pay the unsecured

claims.[2] The only reason she's objecting to my claim is to help her prosecute

here RICO lawsuit at 23-cv-297 (WDPA).  This is not proper.  This Court

explained that in bankruptcy litigation,  a "party-in-interest" to bankruptcy

litigation includes a person or entity that alleges a "specific, 'identifiable trifle' of

injury" or a person or entity that has a "personal stake in the outcome of [the]

litigation[.]" ***In re Global Indus. Tech., Inc.,*** 645 F.3d 201, 210 (3d Cir. 2011).

---

[2] Because there's no money in the estate, I would never be paid on my unsecured claim.  However, I am being forced to appeal because the denial can be claimed in other proceedings to be some sort of claim or issue preclusion.  This will prevent me from suing successors in interest, which is another reason Biros objected to my claim despite knowing that I wouldn't be paid one way or another.

What is the "identifiable trifle" with my claim when it won't be paid anyway through the bankruptcy.  The RICO claim doesn't give her an "identifiable trifle of injury" to pursue this silly objection.

Here's where Biros makes the judicial admission that no unsecured general creditor claims will be paid:

> "Likewise, Ms. Biros has Claims Number 3 and 4 that are pre-petition Unsecured Claims, one for rent for a  pre-petition period, and the other for environmental remediation, both of which we are clear from the Status Conference in August and what's happened since then, they're out of the money. The Unsecured Creditors are not receiving anything here."   Volume II, page 638.

> "In the past the Court has expressed concerns about the level of animosity and litigation over what was a very small Estate and has turned out to be very small."  Volume II, p 609.  "I'd just like to add at that Status Conference in August,[3] when we were discussing the administrative insolvency of this Chapter 7 case, we expressed concern that the Court might find the need to moot our Objection to Shanni Snyder's Claim."  Volume II, p. 640-641.

While they were worried primarily about their objection to Shanni Snyder's claim being moot due to no money in the estate because they simply wanted move their RICO case forward– the same mootness problem equally applies to my claim which was never going to be paid due to no money for unsecured claims.

Worse, a review of Biros' objection to my claim does not include any

---

[3] Biros was referring to a status conference in August 2023.  While I don't have that transcript copy, it shows they knew that the estate was unable to pay unsecured claims going back.

harm to them and boldly states she has standing because "Biros is a creditor and party-in-interest in this case and thus has standing to object to the claim pursuant to 11 U.S.C. § 502." Appendix II, p. 412, par. 3. What a mess the bankruptcy courts would be if every creditor started objecting to claims of other creditors even when there is no chance that unsecured creditors would be paid at all? What purpose does that serve?

A plaintiff's standing to make a claim is a requirement for subject-matter jurisdiction. ***New Jersey Bankers Association v. Attorney General New Jersey***, 49 F.4th 849, 855 (3d Cir. 2022); ***Town of Chester v. Laroe Estates, Inc.,*** 581 U.S. 433, 438 (2017). The standing to make a claim requires both standing under Article III of the U.S. Constitution and prudential standing. ***Potter v. Cozen & O'Connor,*** 46 F.4th 148, 154 (3d Cir. 2022). The requirements for Article III standing are familiar: To invoke the jurisdiction of a federal court, a plaintiff must meet the "irreducible constitutional minimum" of Article III standing by establishing three elements: that she has suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent"; that the injury is "fairly traceable to the challenged action of the defendant"; and that it is likely "that the injury will be redressed by a favorable decision." ***Potter***, 46 F.4th at 154 (quoting ***Lujan v. Defs. of Wildlife***, 504 U.S. 555, 560-61 (1992)). This Court has explained that prudential standing "demands

28

that 'the plaintiff generally . . . assert his own legal rights and interests, and

[]not rest his claim to relief on the legal rights or interests of third parties.'"

***Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino,***

***LLC),*** 716 F.3d 736, 748 (3d Cir. 2013) (quoting ***Warth v. Seldin,*** 422 U.S.

490, 498 (1975)).  This Court has directed that whether a plaintiff has

prudential standing to bring its claims should be addressed as a question of

whether a complaint states a claim on which relief can be granted rather than

as a question of subject matter jurisdiction. ***Potter,*** 46 F.4th at 154-55.

As to standing generally, this Court "consider[s] whether the complaint

'contain[s] sufficient factual matter that would establish standing if accepted as

true.'" ***Potter***, 46 F.4th at 153 (quoting ***In re Horizon Healthcare Servs. Inc.***

***Data Breach Litig.***, 846 F.3d 625, 633 (3d Cir. 2017)).

### b. <u>BIROS' FILING OBJECTIONS WITHOUT BEING HARMED USURPED THE TRUSTEE'S ROLE OF ONLY OBJECTING TO CLAIMS WHEN THERE EXISTED A PURPOSE</u>

As to my claim, the Chapter 7 Trustee did not object.  He did not join

Biros' objection.  He didn't care because, as explained above, "The Unsecured

Creditors are not receiving anything here."   Appendix II, page 638.

"To allow any creditor [...] to institute proceedings to reject the claims of

other creditors, will not [...] 'subserve any necessary purpose, and opens the

door to grave abuse. It enables one creditor at his own pleasure to subject any

29

one of the other creditors, or all the other creditors, to the inconvenience and expense of unnecessary litigation, and to unduly protract the settlement of the estate." *Fred Reuping Leather Co. v. Fort Greene National Bank,* **102 F.2d 372, 373 (3d Cir. 1939).** Explained by the 1983 *Commentary to Bankruptcy Rule 3007*, Objection to Claims, "While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to §502(a) of the Code, however, any party in interest may object to a claim. But under §704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims."

### c.  <u>THE ENTIRE BANKRUPTCY CASE LACKED JURISDICTION UNDER 11 USC 303(b)</u>

Another huge problem that was recently created is the entire premises of the bankruptcy court's jurisdiction was that it took control of the case by entering an Order for Relief that established Shanni Snyder was a creditor who was owed at least $10,000 by the debtor.  11 USC 303(b)(2).  That Order was entered at a time when Biros appeared in the action and moved to dismiss the bankruptcy.  After the Order for Relief, the Bankruptcy Court denied without prejudice Biros' motion to dismiss the bankruptcy.

Nevertheless, the same court that took jurisdiction based on Shanni Snyder's claim of a debt over $10,000, completely liquidating U Lock, selling its assets and equipment, tangible and intangible assets, and controlling every aspect of the debtor now says that Shanni Snyder's claim does not have value, let alone $10,000 of value, completely eliminating the Bankruptcy Court's subject matter jurisdiction.  The case is found here:  ***Biros v. Snyder,*** 2024 WL 878464 (Bk. W. Pa. Feb. 29, 2024).

In Order to have subject matter jurisdiction under 11 USC 303(b)(2) to liquidate U Lock, process the claims, sell U Lock's stuff, deal with the objections to claims, it needed to have a petitioning creditor with a debt of $10,000 undisputed.  Yet the recent decision, unless overturned, makes it clear that there never existed subject matter jurisdiction.  ***In re BDC 56 LLC,*** 330 F.3d 111, 118 (2d Cir. 2003)(11 USC 303(b) defect eliminates subject matter jurisdiction); ***In re Paczesny***, 283 B.R. 715, 718 (Bankr. N.D. Ill. 2002) ("The absence of a bona fide dispute [as required by § 303(b)] is a jurisdictional prerequisite."); ***In re New Mexico Props., Inc.***, 18 B.R. 936, 939-40 (Bankr. D.N.M. 1982) (describing § 303(b) as a "[jurisdictional] hurdle for petitioning creditors to overcome).

This case thus should be remanded to unwind the liquidation of U Lock and vacate the Order for Relief.

**II.  The bankruptcy court denied due process and abused its discretion by denying the claim based on perceived facts at a non-evidentiary hearing where *pro se* creditor was advised prior to the hearing, "Only a limited time of ten (10) minutes is being provided on the calendar. No witnesses will be heard. *If there is an issue of fact, an evidentiary hearing will be scheduled by the Court for a later date."***

I am a *pro se* litigant and my claim was being dealt with by myself and not through an attorney.  I can somewhat understand English and Biros' attorney  sent me a crystal clear notice of hearing that states, "NO WITNESSES WILL BE HEARD.  If there is an issue of fact, an evidentiary hearing will be scheduled by the Court for a later date,"  See Appendix II, page 572.  It was fair for me to assume that the hearing was to either discuss the legal standard and deny the objection on its face or to schedule an evidentiary hearing.

The district court said that because I was put under oath just to say that I had authority and still could amend the schedules (which was a legal argument), that it became a fact-based evidentiary hearing.  This position is not fair and violates due process.  I was entitled to notice of the hearing and full right to be heard including fact witnesses.

Now let us look at the local rules, LOCAL WESTERN DISTRICT OF PENNSYLVANIA BANKRUPTCY RULE 9013-5(c) explains:

(c) Initial hearings on motions shall be brief, not more than ten (10) minutes in any case. No testimony will be heard. If there is an issue of fact, a discovery schedule, if appropriate, and an evidentiary hearing will be fixed by the Court at the initial hearing. If there is no issue of fact, the

Court may dispose of the matter at such hearing, or on briefs, or as the Court may determine.

I, being limited in my legal education, thought that meant the judge would see if the objection was legally sufficient to have an evidentiary hearing, and if there were facts to be determined, he would schedule a hearing.

The district judge made various excuses for the bankruptcy court like that the judge reviewed the record, or that he put me under oath for a limited purpose and he asked me if I had anything else to add.  This is not a game where trickery should be used.  What was I supposed to do, jump and down and argue with the Bankruptcy Judge?  I was completely taken off guard because both the local rule and the notice to me said there would be no factual hearing, that it was a short non-evidentiary hearing.

Procedural due process requires notice and an opportunity to be heard. ***Boddie v. Connecticut,*** 401 U.S. 371, 379 (1971).  Here, my incorrect notice told me not to bring evidence, call witnesses, or present facts as that would be for a different day.

As shown below the "findings of fact" that occurred by the judge at the non-evidentiary hearing were erroneous.  This adds to the prejudice.

### III.  The bankruptcy court and district court applied the wrong standards of review to the claim, objection, and validity.

Objections to claims aren't supposed to be a whim wham whack a mole

process.  There are specific legal standards that must be applied.  The

bankruptcy court's summarily denying my claim did not comply with the proper

standards.

### a.  The bankruptcy court should have directed an amended claim, not shifted the burden of proof

The bankruptcy court at the "non-evidentiary" hearing shifted the burden

of proof to me because I did not attach documents to my proof of claim.  This

is not proper.  Based on 11 USC 502(b), courts have held that the failure to

attach sufficient documents to the proof of claim warranted the courts directing

an amended claim, not dismissal or some other modification.  Here the

Bankruptcy Court did not dismiss the claim, but shifted the burden of proof but

then did not allow an evidentiary hearing.  It should have directed an Amended

Proof of Claim.  *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir. 1993); *In re*

*Dove-Nation,* 318 B.R. 147, 152 (8th Cir. BAP 2004)(no denial of claim for

failure to attach document; "the claims are still allowed claims under Section

502 of the Bankruptcy Code unless the [objector] establishes an exception

under Section 502(b)").

Even if some documentation was required to be attached, I cured it by

attaching a clear summary of the hours I worked and the type of physical,

manual labor I endured.  Appx. II, Pages 576-579.

### b. The Bankruptcy Court erred in applying a standard that leaving the Proof of Claim off the schedules defeated the claim for wage

Both the Bankruptcy Court and the District Court found that, despite my filing my proof of claim on May 9, 2022,within the deadline, because I did not list the wage, officer compensation, or work on the schedules defeated the claim.  I argued to the Bankruptcy Court that I could amend the schedules at any time and add the debt, but it was clear I performed physical labor.  At the so-called non-evidentiary hearing where no facts were to be determined, the Bankruptcy Court found and the District Court agreed that my stating that I could amend the schedules didn't overcome the fact that it wasn't on the schedules.

This is again error.  The test is 11 USC 502(b), not the schedules.  This is similarly what occurred in *In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005).  In that case, the Bankruptcy Court went by the schedules and reduced the claim to the admitted amounts.  However, the appeals panel , noted that "amendments to bankruptcy schedules are permitted as a matter of course any time before a case is closed." Instead, the appeals panel held that § 502(b) sets forth the exclusive grounds for claims objections.

Therefore, both the Bankruptcy Court and the District Court erred in looking at the schedules instead of the claim.

**c. The bankruptcy court needed to apply 11 USC 502(b) to the claim objection, not just boldly decide that the claim was for sweat equity**

A proof of claim is deemed "allowed," and therefore valid, "unless objected to." 11 U.S.C. 502(a); Fed. R. Bankr. P. 3001(f) ("prima facie evidence of the validity and amount of the claim"). Thus "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." ***Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.***, 549 U.S. 443, 452 (2007). The bankruptcy court then "shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than be-cause such claim is contingent or unsecured." 11 U.S.C. 502(b)(1). Section 502(b)(1) means that "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." ***Travelers***, 549 U.S. at 450. For example, if the claim is not valid under state law, it will be disallowed, because Section 502(b)(1) "requires bankruptcy courts to consult state law in determining the validity of most claims." Ibid. In the remainder of Section 502(b), Congress enacted eight federal statutory grounds for disallowing a claim, none of which is applicable to petitioner's claim. E.g., 11 U.S.C. 502(b)(2) ("unmatured interest"), 502(b)(4) ("for services of an insider * * * [that] exceeds the reasonable value of such services"), 502(b)(6) ("damages resulting from the termination of a lease of

real property" in excess of certain periods of rent), 502(b)(7) ("damages resulting from termination of an employment contract" in excess of one year of compensation). ***Raleigh v. Illinois Dep't of Revenue***, 530 U.S. 15, 22 (2000); ***Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)***, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004)(The nine exceptions found in § 502(b) are "the sole grounds for objecting to a claim and [§ 502(b)] directs the court to allow the claim unless one of the exceptions applies"); ***In re Kirkland,*** 379 B.R. 341, 344 (10th Cir. BAP 2007)(502(b) lists the exclusive reasons to deny a claim).

Raleigh reasoned that because there was no statute specifically altering the state law burden of proof, state law provided the rule of decision and "[b]ankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides." Id. at 24-25.

Raleigh also questioned the equity in applying a different burden of proof; the Court concluded that "equal treatment of comparable creditors in and out of bankruptcy" was itself a compelling equitable justification for the bankruptcy court to follow state law. *Id.* at 25.

The bankruptcy court's understanding of the Fair Labor Standards Act.

### d. The bankruptcy court should have looked at my claim broadly, not narrowly.

Section 101 of the Bankruptcy Code broadly defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The legislative history of section 101 emphasizes that the drafters contemplated the broadest possible definition of a "claim."   The legislative history of the section states:

> The definition of paragraph (4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters. . . . By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court. H.R. REP. No. 595, 95th Cong., Ist Sess. 309 (1977), reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 5963, 6266; see also S. REP. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 5807-08 (identical language defining "claim") that the drafters contemplated the broadest possible definition of a "claim."

Lest there be any doubt, the Supreme Court has pronounced, on more than one occasion, that "it is apparent that Congress desired a broad definition of a 'claim.' ***Ohio v. Kovac***s, 469 U.S. 274, 279 (1985) (citing legislative" history).

This expansive definition of "claim" significantly departs from the law predating the enactment of the Code. H.R. REP. No. 595, 95th Cong., Ist'Sess.

309 (1978) reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS 5963,

6266.The legislative history explains that the current Code abolished the

concept of "provability" because such a test would prevent certain creditors

from participating in the distribution of the estate. Such a result would

contravene the principal goal of the current law, which is to resolve all claims

within the context of the bankruptcy proceeding. H.R. REP. No. 595, 95th

Cong., 1st Sess. 180 (1977), reprinted in 1978 U.S. CODE CONG.& ADMIN.

NEWS 5963, 6141.

The Bankruptcy Court obviously applied a narrow view to my claim and

found reasons to disallow it.  It seems he used the old "provable" standard.

**e. The bankruptcy court should have determined whether any money was owed for work and labor for the enterprise regardless of whether it fell into the Fair Labor Standards Act, state law, or just executive compensation.**

The bankruptcy court only looked at my claim from the perspective of the

Fair Labor Standards Act, but my claim did not focus exclusively on that.  It

stated I was owed for "wage, fair labor standards."  This was not exclusively

under the federal Fair Labor Standards Act.  The state law is the Wage

Payment and Collection Law, 43 P.S. §260.9a, provides an ability to collect for

the work.

In addition, there's just plain officer compensation for actual work

performed.  You do not need a law for it, its common sense.  I did service such as cutting the grass, installing roads, maintaining roads, removing snow, building things.  I was an insider.  Therefore, the proper test was to determine if my claims were excessive.  11 USC 502(b)(4).  I limited it to minimum wage, that's certainly not excessive when construction and maintenance work is paying in the multiples of minimum wage.  So what the Bankruptcy Court needed to do was to determine reasonable value, not disallow it in its entirety because I had stock in the company.

**III.   The bankruptcy court erred in its legal analysis and in finding, at a non-evidentiary hearing without due process in contravention of local rules, that Snyder was the owner of a family business, the enterprise did not engage in commerce, the enterprise had no employees as defined under the Fair Labor Standards Act because it had no employees on salary in the general sense, that the debt was extinguished by the statute of limitations, and that the claim constituted a "sweat equity" investor claim rather than a claim for work?**

**a. The Statute of Limitations Issue Was Not Fully Litigated; Was Erroneously Based Only on the Fair Labor Standards Act; Would Only Warrant Reducing the Claim, Not Denial; and Creditors in Pennsylvania Have a Right to Payment Even After the Statute of Limitations**

Again, as explained above, the hearing was not supposed to be based on any facts.  If facts were to be determined, it should have been an evidentiary hearing where we could go over the statute of limitations and the periods of work.

The first error is that the judge applying only the Fair Labor Standards

Act.  My claim was for compensation for work provided whether under the FLSA, state law, or general contract law for executive compensation. Pennsylvania state law for wage claims under the Wage Payment and Collection Law is three years from the date wages are due and payable. 43 P.S. §260.9a(g).  If it was a general contract or implied contract, it would either be two or four years.

An evidentiary hearing would have been necessary to calculate the extent the statute of limitations applied.

As explained above, the Bankruptcy Court's duty was to determine the enforceable amount of the claim, not to eliminate it entirely because there were some statute of limitations issues when the entire amount certainly couldn't be extinguished because of it.

Importantly, if the statute of limitation did constitute a defense, the judge was to reduce the claim under 11 USC 502(a) to the proper amount, not just deny it.  Certainly, if the limitations period was two or three years before the bankruptcy, then it should have been calculated for the valid time period.

But for the purposes of bankruptcy, the statute of limitations is an inappropriate defense by a third party on the issue of my claim because the expiration of the limitations period does not eliminate the debt. the Supreme Court said in ***Midland Funding v. Johnson***, 581 US 224, 228 (2017) that "the

law of many States provides that a creditor has the right to payment of a debt even after the limitations period has expired." Pennsylvania the debt is not cancelled by the expiration. See ***Ehsanuddin v. Wolpoff & Abramson***, 2007 WL 543052, at *4, n.1 (W.D. Pa. 2007) ("[I]t should be noted here that the fact that the limitations period during which a lawsuit may be brought has lapsed, does not mean that the debt itself has been extinguished or that a debt collector is precluded from using means, other than judicial means, to collect the debt."); ***Aronson v. Commercial Financial Services, Inc.***, 1997 WL 1038818, at *3 (W.D. Pa. 1997) ("The statute of limitations foreclosed judicial remedies rather than eliminat[ed] the underlying rights.").

### b.  The Finding of No Employees Was Clearly Erroneous

I repeatedly explained to the Court, in declarations and in testimony including the creditors meeting, that we had people working at U Lock at all times, but we did not pay them more than $600 a year to avoid 1099s, and that we did not pay them as salaried employees.  The Court stated this meant there were no employees under the Fair Labor Standards Act.

The case of ***Brock v. Mr. W. Fireworks Inc.,*** 814 F.2d 1042 (5th Cir. 1987) is on point.  In that case, the workers only worked a couple days per year, were paid as contractors, and some even invested their own money, yet the Fifth Circuit found that under the FLSA they constituted employees.

The Bankruptcy Court provided no analysis and simply matter of factly held without an evidentiary hearing that U Lock did not consider its workers employees, so they were not employees.  This analysis does not comport with the FLSA's more wide definition of employee.

The FLSA defines employer "expansively," ***Nationwide Mut. Ins. Co. v. Darden***, 503 U.S. 318, 326, (1992), and with "striking breadth." ***Rutherford Food Corp. v. McComb***, 331 U.S. 722, 730 (1947). The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act." ***United States v. Rosenwasser,*** 323 U.S. 360, 363 n. 3 (1945).

### c. The Finding of U Lock Being a Family Business Owned by the Debtor at the Non-Factual Non-Evidentiary Hearing is Clearly Erroneous

As explained above in the Statement of the Facts and the Case, the business consisted of a corporation with the Biros family as silent partners, myself, my brother, a public company Accredited Business Consolidators Corp. f/k/a The Italian Oven, and over 1,000 small shareholders.

Yet, despite the many hands of various people, the courts keep stating it was a family business completely exempt from the FLSA.  The well-settled rule that courts should construe exemptions to the FLSA narrowly, and that the employer has the burden of proof to show that it is entitled to the exemption.

***Arnold v. Ben Kanowsky, Inc.,*** 361 U.S. 388 (1960).

As explained in ***Mr. W. Fireworks***, 814 F.2d 1042 (5th Cir. 1987), the

FLSA applies even to a family owned business where most of the vendors –

who only work a few days per year and invest their own money – are subject to

the expansive definition of an employee.

### d. **U Lock Engaged in Interstate Commerce**

At the non-evidentiary, non-fact hearing, the Bankruptcy Court found that

the FLSA did not apply because U Lock did not engage in interstate

commerce. This seems to be a complex fact based decision to make at a

non-evidentiary non-fact based hearing, especially considering that U Lock

made it clear in the schedules that it stored materials for out of state and

foreign clients. U Lock performed storage operations and provided leases to

out of state and in state customers to temporary keep their stuff with us.

Schedule G unexpired leases shows our customers were from both

Pennsylvania, out of state, and even Costa Rica. Appendix Vol. II, pages

095-098. At page 096, it was listed that we held property for Canadian,

California clients. At page 097, U Lock listed Connecticut, Washington, and

Canada client. At page 098, U Lock listed Massachusetts and Costa Rica

clients.

This issue was extremely fact-intensive for not having an evidentiary

hearing and ruling off the cuff.  For instance, a few telephone calls a week to out of state numbers is enough to find interstate commerce.  ***St. Elien v. All County Environmental Servs.,*** 991 F.3d 1197 ( 11th Cir. 2021)**.**

Under the FLSA, an employer will be considered to be an "enterprise engaged in commerce" if it has employees "handling, selling, or otherwise working on goods that have been moved in or produced for commerce...." 29 U.S.C. § 203(s).  This makes a local business handling out of state goods subject to the FLSA.  ***Dunlop v. Indus. Am. Corp.,*** 516 F.2d 498, 501 (5th Cir.1975).

I am not sure what information the Bankruptcy Court used to determine that U Lock's enterprise did not deal with interstate goods considering that nearly 25% of customers were from outside of Pennsylvania and U Lock stored their goods.  Perhaps this is because the Bankruptcy Court chose to have a non-evidentiary hearing to consider evidentiary and factual matters.

### e.  The Determination that "Sweat Equity" Equated to "Equity" Lacks a Basis in Law or Fact

In my Declaration at Appx. Vol II, pages 576-579 in support of my claim, I outlined the time spent at the facility doing physical, manual labor under the direction of John Biros and Christine Biros.  I did not earn equity in the enterprise for this.  Like any corporation, even as an officer, I would be entitled

to fair wage or compensation for work.  The test is the fair market value under 11 USC 502(b)(4), not simply the slough it off with the fact that I had equity and, thus, any service constituted more equity.

As explained in ***Brock v. Mr. W. Fireworks Inc.***, 814 F.2d 1042 (5th Cir. 1987), under the FLSA an employee includes people who invest their own money, receive part of the profits, etc.

Regardless, the FLSA never needed to have anything to do with it.  On my claim I did not specifically list the FLSA.  I just filed a general, unsecured claim for the work I did.  If there is no segregated trust, this type of executive compensation is just a general unsecured claim.  ***In re IT Group***, 448 F.3d 661, 667 (3d Cir. 2006).

The test the bankruptcy court should have taken under 11 USC 502(a) and (b) is whether my work would have created a debt against the corporation at a fair market value, not really nitpicking as to whether specific statutes applied.  Looking at the claim liberally and completely, it could have been under federal, state, or just common law services.

Again this could have been cleared up at a full evidentiary hearing, not the summary non-evidentiary non-factual hearing the court had.

**CONCLUSION**

Because the Bankruptcy Court's recent decision on February 29, 2024, finding Shanni Snyder's claim of debt against U Lock was invalid, there never existed subject matter jurisdiction under 11 USC 303(b). so this Court must vacate all Orders of the Bankruptcy Court and remand the matter to dismiss the case without prejudice.  Alternatively, because no money existed to pay my unsecured general claim, there exists no basis to issue an advisory opinion and this Court needs to remand the matter to the bankruptcy court to vacate the Order and to dismiss the objection of Christine Biros without prejudice. Alternatively, this Court should reverse the decision of the bankruptcy court and remand for a full and fair hearing on the claim applying the proper standards and legal standards.

Respectfully submitted,

*/s/ George Snyder*
George Snyder
PO Box 15
Irwin PA  15642
georgecsnyder@pm.me
(412) 979-9999


APPELLANT

## COMBINED CERTIFICATIONS

I, George Snyder, hereby certify as follows:

1. Bar Membership. I certify that I ain't an attorney, but I shoveled snow for U Lock as nominee for Christine Biros.

2. Word Count and Typeface. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9703 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using OpenOffice 14-point, Arial.

3. Service. I certify that on the 16th day of June 2024, I filed this brief with the Clerk of United States Court of Appeals for the Third District via the Court's CM/ECF system, which will cause service on all counsel and parties of record, who are registered as CM/ECF users.

4. Identical Compliance of Brief. The text of the electronically filed brief and the text of the paper copies are identical.

5. Virus Check. A virus check has been performed on the PDF file containing the brief. The virus check was completed using AVG Free Antivirus 2024 and no viruses were found.

*/s/ George Snyder*
George Snyder
PO Box 15
Irwin PA  15642
georgecsnyder@pm.me
(412) 979-9999

APPELLANT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                        )
                             )
    U LOCK INC,           )
                             )    Case 23-cv-00691-CB
       Debtor.         )
—————————————————————— )
GEORGE SNYDER,       )
                           )
        Appellant,     )
                           )
    v.                    )
                           )
CHRISTINE BIROS,     )
                           )
        Appellee.     )

**<u>NOTICE OF APPEAL</u>**

I, George Snyder, appeal from the judgment entered December 19, 2023,

to the United States Third Circuit Court of Appeals.

Respectfully submitted,

<u>/s/ George Snyder</u>
George Snyder
PO Box 15
Irwin PA 15642


Appellant

Appendix I, Page 001

FILED

CLERK

U.S. BANKRUPTCY

COURT - WDPA

Official Form 417A (12/18)

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:  U LOCK INC.,
                        Debtor,
CHRISTINE BIROS, Movant
v.
GEORGE SNYDER, Respondent

**Case 22-20823 GLT**

*[Caption as in Form 416A, 416B, or 416D, as appropriate]*

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):  **GEORGE SNYDER**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.

- ❏ Plaintiff
- ❏ Defendant
- ❏ Other (describe) _____

For appeals in a bankruptcy case and not in an adversary proceeding.

- ❏ Debtor
- ☒ Creditor
- ❏ Trustee
- ❏ Other (describe) _____

### Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: _April 14 2023 Entry 366_____

2. State the date on which the judgment, order, or decree was entered: __April 14 2023_____

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: ___George Snyder__   By:        __George Snyder__
                                                          ___PO Box 15_____
                                                          _____Irwin  PA   15642_____
                                                          _____

2. Party: __Christine Biros_   Attorney: __Robert S. Bernstein, Esq_____
                                                            __601 Grant Street, Floor 9___
                                                            ____Pittsburgh  PA    15219   ___
                                                            ____412-456-8100_____

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ XXX Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_____
*g/ George Snyder*

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Date: ___April 24, 2023_____

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

George Snyder
PO Box 15
Irwin PA  15642

(412) 829-9999

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:**  If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE SNYDER,          )
                                  )
              Appellant,    )       Civil Action No. 23-691
                                  )
    v.                        )       Judge Cathy Bissoon
                                  )
CHRISTINE BIROS,       )
                                  )
              Appellee.     )

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

For the reasons that follow, the Order of Judge Gregory L. Taddonio, dated April 14, 2023, will be affirmed.

In his appeal, Appellant George Snyder argues that the Bankruptcy Court erred in sustaining Biros's objection to his claim for alleged wages against his company and debtor, U Lock, Inc., pursuant to the Fair Labor Standards Act, 28 U.S.C. § 201 *et seq*., and should have held an evidentiary hearing prior to such finding.

The Bankruptcy Court correctly held that Appellant's claim was "just a bare bones claim" that was not entitled to *prima facie* validity pursuant to Allegheny International Inc., 954 F.2d 167 (3d Cir. 1992).  Apr. 2023 Tr. (Doc. 3) at 8:8-10.  This is unsurprising as Appellant failed to "have any supporting documentation substantiating the amounts claimed, or breakdown of the time periods, or the time frames by which the wages were accrued."  *Id*. at 8:4-8.

Appellant takes issue with the Bankruptcy Court's determination that U Lock was not an "enterprise engaged in commerce" and, therefore, was not subject to the FLSA.  Snyder Br. at pp. 4-5.  Specifically, Appellant argues that Section 203(s)(2) "applies to FARMS, not

Appendix I, Page 004

CORPORATIONS with many shareholders." Snyder Br. (Doc. 8) at pp. 4-5. Yet, Snyder failed

to cite to any case law, documents or other evidence in the Bankruptcy record to support his

contention. In fact, contrary to this contention, nowhere in Section 203(s)(2)'s text or related

case law is it suggested that this exemption only applies to farms. The statute provides:

> Any establishment that has as its only regular employees the owner thereof or the
> parent, spouse, child, or other member of the immediate family of such owner
> *shall not be considered to be an enterprise engaged in commerce* or in the
> production of goods for commerce or a part of such an enterprise.

(emphasis added). In light of this, the Bankruptcy Court correctly held that U Lock was not an

"enterprise engaged in commerce" given that "Snyder was the owner, U Lock had no other

employees, and consequently [Snyder did] not appear to be an employee as qualified under the

FLSA." Apr. 2023 Tr. at 9:2-7. Accordingly, Appellant has failed to demonstrate that the

Bankruptcy Court's finding was clearly erroneous. *See* In re Orton, 687 F.3d 612, 615-16 (3d

Cir. 2012) (on appeal, "clearly erroneous" standard applies to bankruptcy court's findings of

fact) (citation omitted).

Appellant also argues that the Bankruptcy Court "incorrectly found that [his] explanation

that the company did not have 'employees' contradicted with [his] claims for wage [sic]"

because of the FLSA's expansive definition of an employer. Snyder Br. at p. 4. Although

Appellant correctly observes the FLSA's broad definition of "employer," he has not

demonstrated that he is an employee. Indeed, he has repeatedly identified himself as U Lock's

officer and owner, *see* Snyder Bankr. Resp.(Doc. 12) at p. 2 (I filed this claim for wage [sic] . . .

I believe it covers me even though I was an officer and owner."), and does not refute the

Bankruptcy Judge's finding that Snyder's wage claim "conflict[ed] with [his] sworn statements"

that U Lock did not have any employees, *id.* at 9:24-10:2; *see, e.g.*, Ex. A, Sept. 9, 2022 341 Tr.

(Doc. 12) at 15:3-16:2; Ex. E, Snyder's Discovery Resps. (Doc. 12) at ¶ 3; *see also* Ex. A, Jan.

17, 2023 341 Tr. (Doc. 12) at 8:1-9:3 (testifying U Lock had no employees by Kash Snyder).[1]

Instead, Appellant now argues – for the first time on appeal – that he was a shareholder of U

Lock rather than its owner, which allegedly makes Snyder an employee under the FLSA. *See*

Snyder Br. at p. 2. However, the Court finds Appellee's reliance on <u>Eisert v. Urick Foundry Co.</u>,

150 F. Supp. 280, 286 (W.D. Pa. 1957), persuasive on this issue and holds that Snyder cannot be

an "employee" who is entitled to FLSA protections. *See* Appellee Br. at pp. 9-10. Therefore,

Appellant has failed to demonstrate clear error, and his arguments before this Court are

unavailing.

Appellant next challenges the Bankruptcy Court's finding that his claim was barred by

the statute of limitations because "SOME but not ALL" of his claim was barred and that "the

expiration of the limitations period does not eliminate the debt." Snyder Br. at pp. 4-5.

However, Appellant once again fails to cite any evidence refuting the Bankruptcy Court's

determination that because Snyder's alleged claim was from 2015 to 2019, the claims were time-

barred pursuant to the two-year statute of limitations under 29 U.S.C. § 255(a). Apr. 2023 Tr. at

9:8-14. Additionally, Appellant's argument that a debt is not eliminated at the expiration of the

---

[1] This confusion is exacerbated by Appellant's contradictory arguments regarding "sweat equity." Appellant first argues in a conclusory fashion that the Bankruptcy Court "incorrectly found [Snyder's claim] was a claim for 'sweat equity' rather than wage or services." Snyder Br. at p. 4. Then insists that "it is undisputed that 'sweat equity' occurred" and cites to Sections 13(a)(1) and (a)(17) of the FLSA for the proposition that "bona fide executives" are exempt from both minimum wage and overtime pay." *Id*. at p. 6. As best the Court can discern, Appellant's arguments only underscore the Bankruptcy Court's impression that Snyder's claim "appears to be an attempt to recoup lost sweat equity or capital contributions that were provided through his labor and efforts, rather than a wage," Apr. 2023 Tr. at 9:20-23, meaning Appellant is left without recourse for his claim for wages under the FLSA. Moreover, as the Bankruptcy Judge noted, it is unclear why Appellant is claiming exemptions under Sections 13(a)(1) and (a)(17) "because the exemptions would not be helpful to him and, in fact, would exclude U Lock or his status from coverage for wages." *Id*. at 6:6-14, 9:15-19. To the extent that the Bankruptcy Court held Snyder's claim was a claim for sweat equity, if at all, the Court agrees and finds Appellant has failed to demonstrate clear error with respect to his "sweat equity" argument.

limitations period assumes too much given that U Lock's schedules, which were completed by Snyder, did not include Snyder's claim for unpaid wages that U Lock allegedly owed to him.[2]

Finally, although Appellant complains that the Bankruptcy Judge should have held an evidentiary hearing prior to sustaining Appellee's objection, Appellant has failed to demonstrate that the Bankruptcy Court abused its discretion, particularly given that Appellant has still, even on appeal, failed to demonstrate that there is any evidence that would have changed the Bankruptcy Court's determination. Moreover, at the April 2023 hearing, the Bankruptcy Judge indicated that he reviewed all the papers submitted by the parties and Appellant's claim, summarized the arguments of Appellant and Appellee regarding the claim objection, and provided the parties an opportunity to correct the Bankruptcy Judge's understanding of the case. *See* Apr. 2023 Tr. 3:1-7:23. Snyder was then sworn in to "mention" that he "could have amended" the schedules. *Id*. The Bankruptcy Court asked Snyder once again whether he wanted to add anything else, to which Snyder replied, "No." *Id*. at 7:24-8:1. The Bankruptcy Judge then went on to make his factual findings based on his thorough and careful review of the record. *Id*. at 8:2-10:5. This Court finds no reason to disturb the Bankruptcy Judge's ruling.

---

[2] Appellant noted at the April 2023 hearing that he "[was] talking about amending the schedules" and "could have amended" the schedules to include his alleged wages. Apr. 2023 Tr. 7:18-24. This only reveals to the Court that Appellant was aware that he could have included his wage claim but declined to do so. Moreover, this decision was sensible because, as Appellee notes, "Snyder has continuously asserted that the Debtor had no employees," the previously filed schedules filed by Appellant "under penalty of perjury assert[ed] that he had no claim against the Debtor" and he failed to include "any corroborating evidence" to support his wage claim. Appellee Br. at p. 9.

Appendix I, Page 007

## II.  ORDER

IT IS HEREBY ORDERED that the Bankruptcy Court's decision, dated April 14, 2023, and the Order entered contemporaneously therewith, are **AFFIRMED**.  This case will be marked closed.

IT IS SO ORDERED.


December 19, 2023                                    s/Cathy Bissoon
                                                    Cathy Bissoon
                                                    United States District Judge

cc (via First-Class U.S. Mail):

George Snyder
PO Box 15
Irwin, PA 15642


cc (via ECF email notification):

All Counsel of Record

Appendix I, Page 008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE SNYDER,           )
                                   )
                 Appellant,      )      Civil Action No. 23-691
                                   )
      v.                       )      Judge Cathy Bissoon
                                   )
CHRISTINE BIROS,        )
                                   )
                                   )
               Appellee.       )

## JUDGMENT ORDER

FINAL JUDGMENT hereby is entered pursuant to Rule 58 of the Federal Rules of Civil

Procedure.  This case has been marked closed.

IT IS SO ORDERED.


December 19, 2023                           s/Cathy Bissoon
                                           Cathy Bissoon
                                           United States District Judge

cc (via First-Class U.S. Mail):

George Snyder
PO Box 15
Irwin, PA 15642

      Appendix I, Page 009

FILED
4/14/23 2:16 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Bankruptcy No. 22-20823 |
| U LOCK INC, | Chapter 7 |
| Debtor. | |
| CHRISTINE BIROS, | Related Doc. No.: 337 |
| Movant, | |
| v. | |
| GEORGE SNYDER, | |
| Respondent. | |

### ORDER OF COURT

AND NOW, this _____14th_____ day of _____April_____, 2023, upon consideration

of the foregoing *OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER* (the

"Objection"), it is hereby ORDERED that the Claim is DISALLOWED and EXPUNGED.

Dated: 4/14/23

_____
Hon. Gregory L. Taddonio    **hct**
United States Chief Bankruptcy Judge

58                    Appendix I, Page 010