## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

No. 24-1163

---

IN RE:  U LOCK, INC,
*Debtor.*

GEORGE SNYDER,
*Appellant,*

v.

CHRISTINE BIROS,
*Appellee.*

---

## BRIEF OF APPELLEE, CHRISTINE BIROS

---

On Appeal from the December 19, 2023 Order of the United States
District Court for the Western District of Pennsylvania at Case No.
2:23-cv-691-CB Affirming the April 14, 2023 Decision of the U.S.
Bankruptcy Court for the Western District of Pennsylvania at Case No.
22-20823-GLT Disallowing and Expunging the Claim of George Snyder

---

Stuart C. Gaul, Jr., Esq.
Pa. I.D. No. 74529
BERNSTEIN-BURKLEY, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES PRESENTED .......................................3

STATEMENT OF RELATED CASES AND PROCEEDINGS................4

CONCISE STATEMENT OF THE CASE ...............................................7

  A. The U Lock Bankruptcy Case...........................................................7

  B. Mr. Snyder's Claim and Ms. Biros's Objections ...........................10

  C. The Hearing and the Bankruptcy Court's Decision.......................12

  D. Appeal to and Affirmance by the District Court ............................14

  E. Events Subsequent to the District Court's Affirmance..................16

SUMMARY OF ARGUMENT .................................................................19

ARGUMENT ............................................................................................21

  A. Mr. Snyder's Jurisdictional Argument Is Frivolous. ....................21

    1. Standard of Review ...................................................................21

    2. Ms. Biros Had Standing to Object to Mr. Snyder's Claim. .........21

    3. This Court Should Determine Whether This Appeal Is Moot. ...26

    4. This Court Should Leave Any Question of the Bankruptcy
       Court's Continuing Jurisdiction over the U Lock Bankruptcy
       Case to the Bankruptcy Court in the First Instance. .................30

  B. The Bankruptcy Court Correctly Disallowed Mr. Snyder's Claim.
    .......................................................................................................33

    1. Standard of Review ...................................................................34

    2. The Bankruptcy Court Made No Error in Applying the Law to
       Mr. Snyder's Claims.................................................................34

CONCLUSION ........................................................................................42

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

## Cases

*AI International Holdings (BVI), Ltd. v. MUFG Union Bank, N.A. (In re Weinstein Co. Holdings)*, 595 B.R. 455 (Bankr. D. Del. 2018) ............22

*Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745 (3d Cir. 2004) .......34

*Biros v. U Lock, Inc.*, 255 A.3d 489 (Pa. Super. Ct. 2021)...............6, 27

*Boyle v. PMA Med. Specialists, LLC*, 754 Fed. App'x 93(3d Cir. 2019).35

*Compare Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147 (8th Cir. B.A.P. 2004) ....................................................37

*Cruz v. Chesapeake Shipping, Inc.* , 932 F.2d 218 (3d Cir. 1991)..........38

*Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008)........................23

*Doe v. Hesketh*, 828 F.3d 159 (3d Cir. 2016) .........................................32

*Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ...........................................................................................24

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ...........................................................................................31

*Garza v. Citigroup Inc.*, 881 F.3d 277 (3d Cir. 2018) ............................38

*Gen. Elect. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992) ......................26

*Gen'l Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184 (3d Cir. 1993) ....................................................................................25

*George v. Rushmore Serv. Ctr, LLC*, No. 23-2189, 2024 U.S. App. LEXIS 20303 (3d Cir. Aug. 13, 2024)..................................................23

*Havens v. Mobex Network Servs.*, LLC, 820 F.3d 80 (3d Cir. 2016) .....34

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992).............. 12, 34, 35

*In re Allen*, 768 F.3d 274 (3d Cir. 2014) ..................................................34

*In re Ben Franklin Hotel Assocs.*, 186 F.3d 301 (3d Cir. 1999) .............35

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) .........25

*In re Fondiller*, 707 F.2d 441(9th Cir. 1983) ..........................................25

*In re Hechinger Inv. Co. of Del.*, 298 F.3d 219 (3d Cir. 2002)...............34

*In re Motors Liquidation Co.*, 957 F.3d 357 (2d Cir. 2020) ...................29

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ..........................25

*In re U Lock*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484 (Bankr. W.D. Pa. Feb. 29, 2024) ............................................................. passim

*Invista S.à.r.l. v. Rhodia, SA*, 625 F.3d 75 (3d Cir. 2010) ......................27

*Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, (2d Cir. 2003) ......................................................................................32

*Lampe v. Lampe*, 665 F.3d 506 (3d Cir. 2011)........................................34

*Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657 (3d Cir. 2017) ..........34

*Lujan v. Defenders of Wildlife*, 504 U. S. 555 (1992) ............................23

iii

*Lutter v. JNESO*, 86 F.4th 111 (3d Cir. 2023)........................................23

*Mitchell v. Lublin, McGraughy & Assoc's*, 358 U.S. 207 (1959) ...........38

*Ohio v. Kovacs, 469 U.S. 274 (1985)* .....................................................35

*Peace Church Risk Retention Grp. v. Johnson Controls Fire Protection LP*, 49 F.4th 866 (3d Cir. 2022) .............................................................1

*Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289 (3d Cir. 2001)...27

*Snyder v. Biros*, Civil Action No. 23-691, 2023 U.S. Dist. LEXIS 225406 (W.D. Pa. Dec. 19, 2023)…………………………………………………7

*Snyder v. Biros (In re U Lock, Inc.)*, 652 B.R. 456 (Bankr. W.D. Pa. 2023).............................................................................................5

*Snyder v. U Lock Inc., No. 23cv1410, 2024 U.S. Dist. LEXIS 2872 (W.D. Pa. Jan. 5, 2024)* ................................................................................5

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017)...............21

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................32

*United States v. Bedrosian*, 42 F.4th 174 (3d Cir. 2022) .......................29

*United States v. Texas*, 599 U.S. 670 (2023) ..........................................23

*Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.)*, 592 B.R. 798 (Bankr. M.D. Pa. 2018).....................................................................22

## Constitution

U.S. Const. art III…………………………………………………...………….3

## Statutes

11 U.S.C. § 158 ............................................................................... 26

11 U.S.C. § 303 ............................................................................ 7, 32

11 U.S.C. § 341 ................................................................................. 9

11 U.S.C. § 349 ............................................................................... 31

11 U.S.C. § 362 ................................................................................. 4

11 U.S.C. § 502 .......................................................................... 11, 22

11 U.S.C. §§ 701 *et seq.* ................................................................... 7

11 U.S.C. §§ 1101 *et seq.* ................................................................. 9

28 U.S.C. § 157 ............................................................................. 2, 5

28 U.S.C. § 158 ................................................................................. 1

29 U.S.C. §§ 201 *et seq.* ................................................................... 3

29 U.S.C. § 203 ....................................................................... passim

29 U.S.C. § 206 ............................................................................... 38

29 U.S.C. § 255 ............................................................................... 13

49 P.S. §§ 260.1 *et seq.* ................................................................ 38

## Rules

Fed. R. App. P. 42 ....................................................................... 26, 28

Fed. R. Bankr. P. 1011 ...................................................................... 32

Fed. R. Bankr. P. 1013 ...................................................................... 33

Fed. R. Bankr. P. 3001 ...................................................................... 10

Fed. R. Bankr. P. 3006 .................................................................28

Fed. R. Bankr. P. 9019 .................................................................16

W. PA.LBR 9013-5…………………………………….………..36

## Treatises

4 *Collier on Bankruptcy* ¶ 502.02[d] (16th ed.) ........................22

## STATEMENT OF JURISDICTION

This Court has jurisdiction to consider this appeal under 28 U.S.C. § 158(d). On December 19, 2023, the United Stated District Court for the Western District of Pennsylvania (the "District Court") entered its memorandum order and judgment order from which Appellant George Snyder takes this appeal. Mr. Snyder filed his notice of appeal to this Court in the District Court on January 17, 2024. In addition, this Court has jurisdiction to determine its jurisdiction. *See Peace Church Risk Retention Grp. v. Johnson Controls Fire Protection LP*, 49 F.4th 866, 869 (3d Cir. 2022).

The District Court had jurisdiction under 28 U.S.C. § 158(a) to consider Mr. Snyder's appeal from the decision of U.S. Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") to disallow his claim against the estate of the Debtor, U Lock, Inc. The Bankruptcy Court entered its order disallowing that claim on April 14, 2023, and Mr. Snyder filed his notice of appeal to the District Court on April 24, 2023.

The Bankruptcy Court had jurisdiction under 28 U.S.C. 157(b)(2)(B) to consider Appellee Christine Biros's objection to Mr. Snyder's claim against the U Lock estate.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the doctrine of standing under Article III of the U.S. Constitution applies here to give the appellant an unchallengeable claim against an estate in bankruptcy.

2. Whether the Bankruptcy Court correctly disallowed the claim that the Appellant asserted against the debtor under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, when the Appellant, as majority shareholder, control person, and an officer of the debtor, completed and never amended schedules that did not identify himself as a creditor, testified that the debtor had no employees, and described activities that amounted to capital contributions rather than employment.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Mr. Snyder is also the appellant in the District Court at Case

2:24-cv-00135-CB.  He takes that appeal from the decision of the

Bankruptcy Court in *In re U Lock Inc.*, Case No. 22-20823 (the "U Lock

Bankruptcy Case") to approve a settlement agreement between

U Lock's Chapter 7 trustee (the "Trustee") and Ms. Biros.  That

settlement resolved some of Ms. Biros's claims in the U Lock

Bankruptcy Case.

Several other pending matters either are rooted in appeals from

decisions of the Bankruptcy Court in the U Lock Bankruptcy Case or

relate to Mr. Snyder's and his family's dispute with Ms. Biros:

- U Lock itself – not the Trustee – is the appellant in this Court
  at No. 23-2293.  That appeal is from the Bankruptcy Court's
  *sua sponte* dismissal of U Lock's efforts to bring an adversary
  proceeding against Ms. Biros.  U Lock attempted to allege
  violations of the automatic stay of 11 U.S.C. § 362.  That appeal
  is fully briefed.

- By order of February 5, 2024, this Court consolidated U Lock's
  appeal "for purposes of disposition only" with the appeal of

4

Shanni Snyder, a sister of Mr. Snyder's, pending at No. 24-
1202.  Shanni Snyder appeals from the Bankruptcy Court's
dismissal of her adversary proceeding in which she had
attempted to allege preference and fraudulent conveyance
claims against Ms. Biros.  The decision of the Bankruptcy
Court is reported at 652 B.R. 456, and the decision of the
District Court is reported at 2024 U.S. Dist. LEXIS 2872 and
2024 WL 69628.  That appeal is also fully briefed.

- Shanni Snyder is also the appellant in this Court at No. 24-
1282.  She took that appeal from the District Court's denial of
her motion pursuant to 28 U.S.C. § 157(d) to withdraw the
reference in the U Lock Bankruptcy Case of proceedings on Ms.
Biros's objections to her claim.  Ms. Biros has moved to dismiss
that appeal.  That motion is awaiting decision.

- In the District Court, Shanni Snyder is the appellant at Case
2:22-cv-00478-NBF from the decision of the Bankruptcy Court
to disallow her claim in the U Lock Bankruptcy Case.  *See In re
U Lock*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 484
(Bankr. W.D. Pa. Feb. 29, 2024).

- In the Superior Court of Pennsylvania, Shanni Snyder is the appellant in *Biros v. U Lock, Inc.*, which is pending at 113 WDA 2024. *See also Biros v. U Lock, Inc.*, 255 A.3d 489 (Pa. Super. Ct. 2021) (affirming trial court verdict & judgment in favor of Ms. Biros), *rev. denied*, 271 A.3d 875 (Pa. 2022).

Ms. Biros is an appellee in every one of these appeals.

The U Lock Bankruptcy Case remains pending in the Bankruptcy Court.

Mr. Snyder is among the defendants in *Biros v. Snyder*, which is pending before the District Court at Case No. 2:23-cv-297-RJC.

## CONCISE STATEMENT OF THE CASE

This appeal is from the December 19, 2023 decision of the Honorable Cathy Bissoon of the District Court at Case No. 2:23-cv-691-CB.  Judge Bissoon affirmed the April 14, 2023 Order of the Honorable Gregory L. Taddonio, Chief Judge of the Bankruptcy Court, to disallow Mr. Snyder's claim in the U Lock Bankruptcy Case.  Judge Bissoon's decision is reported at 2023 U.S. Dist. LEXIS 225406 and 2023 WL 8781152.

### A. The U Lock Bankruptcy Case

Shanni Snyder commenced the U Lock Bankruptcy Case on April 27, 2022 by filing an involuntary petition in the Bankruptcy Court pursuant to Section 303 and Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 303 & 701 *et seq.  A9 at #1.*[1]  In filing her petition, she relied on a default judgment she had obtained against U Lock in the District Court, purportedly pursuant to the FLSA.

---

[1] References to "*A___*" are to the corresponding page of *Volume II* of the Appendix that Mr. Snyder filed with this Court on June 14, 2024 at Document 18.

On May 9, 2022, Shanni Snyder amended her petition and identified Mr. Snyder and his brother Kash Snyder as "managing control persons" of U Lock. *A74*.

The Bankruptcy Court entered an order on May 10, 2022 that identified both Mr. Snyder and Kash Snyder as "Principal Operating Officer or Managing General Partner" of U Lock. *A9 at #9*.

On June 17, 2022, the Bankruptcy Court entered an order for relief. *A13 at #42, A77*. U Lock had not responded to Shanni Snyder's involuntary petition. *A9 to A13*. In entering this order the Bankruptcy Court noted that U Lock had both appeared before it and participated in a discussion of the response date but had not responded to the petition. *A77*.

U Lock filed its Schedule E/F, listing known creditors with unsecured claims, with the Bankruptcy Court on July 6, 2022. *A15 at #62*. U Lock identified both Ms. Biros and Shanni Snyder as unsecured creditors. *A92*. However, it did not identify Mr. Snyder as a creditor, either unsecured or secured. *A90 to A94*. Mr. Snyder verified under penalty of perjury that he was a director of U Lock and that this information was true and correct. *A120*.

8

In August 2022, Mr. Snyder identified himself to the Bankruptcy
Court as the owner of approximately 81.17 percent of the shares of
U Lock.  Attempting to convert the U Lock Bankruptcy Case to a matter
under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.,*
U Lock provided a June 30, 2022 corporate resolution that identified
Mr. Snyder as the owner of 345 million U Lock shares, identified Kash
Snyder as the owner of 75 million U Lock shares, and asserted that
their combined 420 million shares were "98.82% of shareholders."  Mr.
Snyder signed this resolution as U Lock's "Majority shareholder."  *A136*.

On August 25 and 26, 2022, Ms. Biros submitted unsecured claims
for payment of pre-petition rent on real property she owns and U Lock
had occupied, payment of real estate taxes on that property, and
environmental remediation of that property.  Bankruptcy Claims ##2-4.

At a September 9, 2022 meeting of creditors convened under 11
U.S.C. § 341(a), Mr. Snyder testified that U Lock had never had any
employee for more than "just a few hours a year."  *A420*.  Kash Snyder
testified similarly in January 2023.  *A537*.

Ms. Biros filed a claim for administrative expense on December
22, 2022 and amended that claim on March 1, 2023.  That claim related

to post-petition rent for U Lock's continued occupancy of her real property.  Bankruptcy Court Docs. 258, 344.  *See also A595-A596*.

B. <u>Mr. Snyder's Claim and Ms. Biros's Objections</u>

On August 26, 2022, Mr. Snyder filed his claim in the Bankruptcy Court against the U Lock estate.  He submitted his claim on Official Form 410, which is for a Proof of Claim.  *A71 to A73*.  That form cautioned Mr. Snyder to read its instructions.  *A71*.  It also advised him that he needed to support his claim:

> Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. . . .  If the documents are not available, explain in an attachment.

*A71*.  Separately, the form instructed Mr. Snyder to "Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c)."  *A72*.

Mr. Snyder acknowledged on the form that he was not amending a prior claim.  *A71*.  He set the amount of his claim at $99,000.00.  His response to the inquiry, "What is the basis of the claim?" read, in its entirety, "wage, fair labor standards."  *A72*.  He offered no additional information and attached no documentation.  *A71 to A74*.

10

Mr. Snyder never amended his claim.

Citing 11 U.S.C. § 502(b)(1), Ms. Biros objected to Mr. Snyder's claim on February 24, 2023. *A394 to A404*. Among other bases, she pointed to U Lock's failure to identify any claim of Mr. Snyder in its schedules, which Mr. Snyder had verified himself, *A396 to A397*; Mr. Snyder's and Kash Snyder's sworn testimony that U Lock had not had employees, *A397 to A398*; Mr. Snyder's statements under oath that his claim was really against Ms. Biros, *A-398*; and any potential claim's falling outside of the scope of the FLSA, *A399 to A401*.

On filing those objections, Ms. Biros self-scheduled a hearing with the Bankruptcy Court for April 13, 2023. She scheduled the hearing with the 25-day advance notice that Chief Judge Taddonio has long required in his procedures and gave notice to Mr. Snyder and others using Chief Judge Taddonio's prescribed form. *A571 to A572*. *See* www.pawb.uscourts.gov/procedures-2 (retrieved 8/6/2024). Per those procedures, Ms. Biros's notice advised of the potential for a future hearing "[i]f there is an issue of fact." *A572*.

Mr. Snyder filed his response to Ms. Biros's objections, accompanied by his own "Declaration." *A574 to A579*. He claimed that

he was unaware that he might have a claim under the FLSA until Shanni Snyder had filed her own claim under that statute. *A575.* In both documents, Mr. Snyder referred extensively to the FLSA but did not mention any other statute or common-law cause of action. *A574 to A579.*

### C. The Hearing and the Bankruptcy Court's Decision

The Bankruptcy Court held its hearing on Ms. Biros's objections as noticed on April 13, 2023. *A580 to A589.* That court began by summarizing both Ms. Biros's objections and Mr. Snyder's response. *A584 to A585.* It then asked Ms. Biros's counsel and Mr. Snyder if either of them wanted to add anything to the summary. *A585.* Mr. Snyder responded, "You covered mostly everything." *A585 to A586.* Under oath, he added that he had held discussions with the Trustee about amending U Lock's schedules, could have amended those schedules, and had not amended those schedules. *A586.* Mr. Snyder then responded "No" to that court's question about whether he had anything further to offer at that point. *A586 to A587.*

The Bankruptcy Court stated that, under this Court's decision in *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992), Mr. Snyder's

claim lacked prima facie validity. It noted that the claim did not "have any supporting documentation substantiating the amounts claimed, or breakdown of the time periods, or the time frames by which the wages were accrued." *A587.*

It also noted that several of Ms. Biros's arguments in her objections were sufficient to defeat Mr. Snyder's claim:

- Under 29 U.S.C. § 203)(s)(2), a corporation was not an "enterprise engaged in commerce – and therefore subject to the FLSA – if its only employees were the owner and members of his or her immediate family.

- The two-year statute of limitations in 29 U.S.C. § 255(a) precluded much or all of Mr. Snyder's claim.

- The exemptions to which Mr. Snyder pointed actually took his claim outside the coverage of the FLSA, rather than establishing that the statute applied to him.

- Mr. Snyder, who had admittedly never paid himself a wage from U Lock, was investing sweat equity into the business rather than working with an expectation of being paid wages.

- Mr. Snyder's claim was contradicted by sworn statements in both testimony and the bankruptcy schedules.

*A587 to A589.*

The Bankruptcy Court stated that Ms. Biros's objection was "well-founded" and that it would sustain that objection. *A589.*

The Bankruptcy Court entered an order the following day directing that Mr. Snyder's claim was disallowed and expunged. *Snyder Brief at p.58.*[2]

### D. Appeal to and Affirmance by the District Court

Mr. Snyder took a timely appeal to the District Court on April 24, 2023. *Snyder Brief at pp.50-51 (notice of appeal to District Court).*  On July 31, 2023, he filed his Informal Brief, in which he mentioned the FLSA nineteen times but did not cite to any other statutory or common-law cause of action. *See generally* Snyder District Court Brief [District

---

[2] References to "Snyder Brief at ____" are to the pages of Volume I of Mr. Snyder's appendix *as paginated in that brief.*  That volume of the appendix appropriately includes the opinions and orders from which Mr. Snyder appeals and is attached to Mr. Snyder's brief. *See* Document 19.  Because both volumes of the appendix are numbered from Page 1, Ms. Biros adopts this styling in the hope of avoiding confusion.

Court Doc. 8].  Ms. Biros filed a responsive brief, *A6 at #11*, and Mr. Snyder did not file a reply.  *A6.*

Judge Bissoon of the District Court affirmed the Bankruptcy Court's order in a five-page Memorandum Order of December 19, 2023. *Snyder Brief at pp. 52-57 (District Court opinion)*.  She began by noting that the burden of persuasion rested with Mr. Snyder, as he had not offered any support for his claim beyond his "bare bones" statement of its amount.  *Snyder Brief at p.52 (same)*.

Judge Bissoon then affirmed the Bankruptcy Court's finding that U Lock did not qualify as an "enterprise engaged in commerce."  She held that the exception to that definition in 29 U.S.C. § 203(s)(2) did not, as Mr. Snyder claimed, apply only to farms.  She noted that the statutory language did not include that limitation and that Mr. Snyder had failed to point to any authority that supported his assertion. *Snyder Brief at pp. 52-53 (District Court opinion)*.

Judge Bissoon also noted that Mr. Snyder's prior testimony that the Bankruptcy Court had cited as contradicting Mr. Snyder's claim did, in fact, contradict his claim.  *Snyder Brief at pp. 53-54(District Court opinion)*.  She agreed that the FLSA's two-year statute of limitations

barred at least some of Mr. Snyder's claims and disagreed with Mr. Snyder's assertion that Pennsylvania law prevented the FLSA statute of limitations from precluding his recovery under the FLSA. *Snyder Brief at pp. 53-54 (same)*.

Finally, Judge Bissoon noted that the Bankruptcy Court had given Mr. Snyder an opportunity to testify in support of his claims and that Mr. Snyder had not demonstrated the existence of any evidence that he had been precluded from offering to the Bankruptcy Court. *Snyder Brief at p.55 (District Court opinion)*.

Also on December 19, 2023, the District Court entered Judge Bissoon's Judgment Order confirming her ruling. *Snyder Brief at p.57 (District Court order)*.

### E. Events Subsequent to the District Court's Affirmance

On January 4, 2024,[3] the Bankruptcy Court conducted a hearing on Ms. Biros's motion for approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure of her agreement with the Trustee to

---

[3] While most of the events described in this section occurred after the District Court's decision, Biros identifies them here because Mr. Snyder points to them (or to some version of them) in his standing-related argument.

resolve certain of her claims.  At that hearing, Ms. Biros, through

counsel, expressed skepticism that the U Lock estate would have

sufficient resources to make distributions to unsecured creditors.  *A638.*

As the Bankruptcy Court recognized, Ms. Biros advocated taking a

"wait and see" approach to her unsecured claims and any other valid

unsecured claims.  *A645.*

Although the Trustee spoke at the hearing, he said nothing about

the potential for payments to unsecured creditors.  *A636-A637, A652.*[4]

The Bankruptcy Court agreed that it did not need to determine

the merits of Ms. Biros's unsecured claims at that time but might

revisit them later:

> I'll deny the remainder of the Settlement without
> prejudice and we can determine later on whether or not
> it's worth going down the road of evaluating the merits of
> the other Claims given that the Estate does not appear to

---

[4] As to the Trustee, Mr. Snyder points to the "Status Report" that the Trustee filed with the Bankruptcy Court on July 13, 2023.  Snyder Brief at p.22.  That Status Report stated that payment of certain claims might be contingent on the collection of additional assets for the U Lock estate, including through "the avoidance action filed in this case."  *A632.*  The "avoidance action" to which the Trustee pointed appears to have been Shanni Snyder's adversary proceeding against Christine Biros.  As noted above, Shanni Snyder's appeal from the dismissal of that proceeding remains pending before this Court at No. 24-1202.

be growing and is what it is and there may not be enough
money to pay all the Administrative Claims at this point.

*A648-A649*.  That court then offered its preliminary thoughts on those

claims.  *A649-A650*.

Ms. Biros moved to withdraw her unsecured claims without

prejudice on January 22, 2024.  *A64 at #530*.  No one, including Mr.

Snyder, responded to that motion.  *A66 at #550*.  The Bankruptcy Court

granted that motion on February 9, 2024, expressly noting that the

withdrawals were without prejudice.  *A66 at #552*.

As discussed above, the Bankruptcy Court disallowed Shanni

Snyder's claim on February 29, 2024.  *See In re U Lock*, 2024 Bankr.

LEXIS 484, at *1-*2.  In reaching that conclusion, that court found that

Shanni Snyder had committed fraud both on the District Court in

obtaining the judgment, purportedly under the FLSA, on which Shanni

Snyder had based her claim  and on the Bankruptcy Court, in

commencing the U Lock Bankruptcy Case.  *Id*. at *1-*2.

As also noted above, the U Lock Bankruptcy Case remains

pending before the Bankruptcy Court.  Mr. Snyder has not moved to

dismiss any of (a) the U Lock Bankruptcy Case, (b) his pending appeal

to the District Court at Case No. 2:24-cv-00135-CB, or (c) this appeal.

## SUMMARY OF ARGUMENT

Ms. Biros had standing in the Bankruptcy Court to pursue her objection to Mr. Snyder's claim. The Bankruptcy Code authorized her to file that objection as a "party in interest." Ms. Biros was a competing claimholder, and any amount that the U Lock estate might have paid to Mr. Snyder on his unsecured claim would necessarily have reduced the amounts that Ms. Biros would have received on her unsecured claims.

Once the Bankruptcy Court ruled on Ms. Biros's objections and disallowed Mr. Snyder's claim, any further examination of standing shifted to Mr. Snyder's standing to appeal. In fact, at least at the District Court, Mr. Snyder was complaining of the diminishment of his rights in the manner required to show standing for a bankruptcy appeal.

The U Lock Bankruptcy Case is not moot. Some work remains to be done below, including the payment of allowed claims and the Bankruptcy Court's determination of whether and how to sanction Mr. Snyder's sister for her fraud. While the question of whether *this appeal* is moot may be closer, Mr. Snyder could still benefit from the restoration of his claim. The U Lock estate has recently acquired assets

and may acquire more, certain matters remain on appeal, and other persons may compete with Mr. Snyder for any distribution to unsecured creditors.

As to the substance here, the Bankruptcy Court was completely correct that Mr. Snyder has no claim under the FLSA. He filed a three-page claim with no documentation and no explanation, and he never amended it. He was an 81% shareholder of U Lock who never considered whether his company should pay him a wage until after the period in which he claims to have performed services. When he completed U Lock's bankruptcy schedules, he identified the putative (albeit fraudulent) wage claims of others but did not identify himself as a creditor. Moreover, he contradicted his claim in his own sworn testimony in the U Lock Bankruptcy Case.

The Bankruptcy Court was completely correct to disallow Mr. Snyder's claim. This Court should affirm that decision.

## ARGUMENT

### A. Mr. Snyder's Jurisdictional Argument Is Frivolous.

Mr. Snyder's motivation in asking this Court to vacate all of the decisions that led to this appeal and dismiss the U Lock Bankruptcy Case is clear:  The Bankruptcy Court has found that Shanni Snyder defrauded both it and the District Court, *In re U Lock*, 2024 Bankr. LEXIS 484 at *1-*2, and that court suggested but did not find that Mr. Snyder was complicit in his sister's fraud.  *Id.* at *45-*46.  However, Mr. Snyder is wrong on the question of whether the Bankruptcy Court and the District Court had jurisdiction to disallow his claim, and any demand for dismissal of the U Lock Bankruptcy Case should be directed to the Bankruptcy Court.

#### 1. *Standard of Review*

This Court conducts plenary review of questions of subject matter jurisdiction, including questions of standing.  *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017).

#### 2. *Ms. Biros Had Standing to Object to Mr. Snyder's Claim.*

In arguing that Ms. Biros has always lacked standing to object to his claims, Mr. Snyder is wrong both about *whose* standing matters and

about whether Ms. Biros had standing *when* her standing was an issue for the appropriate court.

Section 502(a) of the Bankruptcy Code, 11 U.S.C. § 502(a), gave Ms. Biros authority to object to Mr. Snyder's claim. That section allows a "party in interest" to make an objection. *Id.* The leading bankruptcy treatise, looking to decisional law within this Circuit, notes, "[T]he right of a creditor to object to the allowance of another creditor's claim should be undisputed." 4 *Collier on Bankruptcy* ¶ 502.02[d] (16th ed.) (citing *AI International Holdings (BVI), Ltd. v. MUFG Union Bank, N.A. (In re Weinstein Co. Holdings)*, 595 B.R. 455 (Bankr. D. Del. 2018); *Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.)*, 592 B.R. 798 (Bankr. M.D. Pa. 2018)).

Ms. Biros was therefore authorized to file her objection. When she did so in February 2023, she alleged that she was a creditor of the U Lock estate. A394 at ¶ 3. Her allegation was true, as she then had four pending claims – one administrative and three unsecured. *Bankruptcy Court Docs. 258, 344, Claims ## 2-4. See also* A595-A596.

Because of this requirement that only a "party in interest" may file an objection, separate consideration of Ms. Biros's standing to object

is effectively superfluous.  Standing is jurisdictional; a federal court may not consider a claim asserted by a person who lacks the standing to bring it.  *United States v. Texas*, 599 U.S. 670, 675 (2023).  To establish standing in an Article III court, "a plaintiff must show an injury in fact caused by the defendant and redressable by a court order."  *Id.* at 676 (citing *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-61 (1992)).

Perhaps most importantly here, standing is determined as of the time that the person commences the proceeding:

> As far as timing, the general rule is that a plaintiff in federal court must have Article III standing on the date the lawsuit was commenced.  *See Davis*, 554 U.S. at 734 ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.").

*Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).  *See also George v. Rushmore Serv. Ctr., LLC*, --- F.4th ---, No. 23-2189, 2024 U.S. App. LEXIS 20303, at *21 (3d Cir. Aug. 13, 2024) (same).

Regardless of whether a separate showing of standing is necessary for a claim objection, Ms. Biros had standing to object to Mr. Snyder's claim.  As of February 2023, both she and Mr. Snyder had pending claims, including unsecured claims, against the U Lock estate.  The

23

pendency of Mr. Snyder's claim had the potential to reduce Ms. Biros's proportion of any distributions to unsecured creditors. It also created the potential for Mr. Snyder to complicate the administration of the U Lock estate by, for instance, objecting to settlement agreements between Ms. Biros and the Trustee. Ms. Biros sought relief that (a) the Bankruptcy Court was authorized by statute to give and (b) would, if granted to her, correct the problem about which she complained.

For the later steps that led to this appeal, Ms. Biros's standing is irrelevant to questions about jurisdiction. Mr. Snyder – not Ms. Biros – took both the appeal to the District Court and, after he failed in that forum, this appeal.[5]

It is almost certain that Mr. Snyder had appellate standing to take these appeals. This Court has explained that appellate standing in the bankruptcy context is more limited than for other appeals:

---

[5] While a defendant-turned-appellant may certainly challenge whether a plaintiff had standing to bring his or her original claims, *see, e.g., Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 377-78 (2024), and a party to an action may not generally take an appeal from it against a person who was not a party, Ms. Biros has not been able to identify any requirement that an appellee who was a party to the original proceeding have some separate form of standing before an appellant can prosecute his appeal.

> Standing to appeal in a bankruptcy case is limited to
> "persons aggrieved" by an order of the bankruptcy court.
> *Gen'l Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10
> F.3d 184, 187 (3d Cir. 1993).  Originally set forth in the
> Bankruptcy Act of 1898, the "persons aggrieved" test now
> exists as a prudential standing requirement that limits
> bankruptcy appeals to persons "whose rights or interests
> are 'directly and adversely affected pecuniarily' by an
> order or decree of the bankruptcy court." *In re Dykes*, 10
> F.3d at 187 (citing *In re Fondiller*, 707 F.2d 441, 443 (9th
> Cir. 1983)).  "Person[s] aggrieved" must show the order of
> the bankruptcy court "diminishes their property,
> increases their burdens, or impairs their rights." *In re
> PWS Holding Corp.*, 228 F.3d [224,] 249 [(3d Cir. 2000)]
> (citing *In re Dykes*, 10 F.3d at 187).

*In re Combustion Engineering, Inc.*, 391 F.3d 190, 214-15 (3d Cir. 2004)

(footnotes omitted).

Unsurprisingly, Mr. Snyder does not challenge his own standing. Even now, it is possible that U Lock's unsecured creditors may be paid something on their claims.  When Mr. Snyder took his appeal to the District Court in April 2023, the Bankruptcy Court's decision had impaired his rights.  None of the events to which he now points had occurred.  The Bankruptcy Court had not yet dismissed Shanni Snyder's adversary proceeding against Ms. Biros.  *See A59 at #487* (7/25/23 note of disposition of 2:22-ap-2052).  Although the Bankruptcy Court had expressed great skepticism about the validity of Shanni

25

Snyder's claim, it had not disallowed that claim but had instead set it for an evidentiary hearing. *A589-A595.* The Trustee had not yet submitted the status report on which Mr. Snyder attempts to rely. *A632.* The Bankruptcy Court's January 2024 hearing was still almost eight months away. While Mr. Snyder was wrong on the merits, he maintained his right to take an appeal. *See* 11 U.S.C. 158(a).

Mr. Snyder is, again, always free to move to dismiss this appeal, even if his making that motion seems unlikely and Ms. Biros reserves the right to respond about the conditions on which this Court might grant it. *See* Fed. R. App. P. 42(b). However, the doctrine of standing does not prevent this Court from proceeding to the merits.

### 3. This Court Should Determine Whether This Appeal Is Moot.

In arguing incorrectly that Ms. Biros has lacked the necessary standing here, Mr. Snyder has necessarily raised the question of whether this appeal is moot.

Certainly, this Court cannot decide a moot appeal:

> "[A]n appeal will be dismissed as moot when events occur during [its] pendency . . . which prevent the appellate court from granting any effective relief." *Gen. Elect. Co. v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992) (citation omitted). Dismissal is necessary in those circumstances because appellate courts "do not have jurisdiction to hear

> a case that cannot affect the rights the appellant wishes
> to assert." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246
> F.3d 289, 296 (3d Cir. 2001).

*Invista S.à.r.l. v. Rhodia, SA*, 625 F.3d 75, 85-86 (3d Cir. 2010).

Ms. Biros is generally indifferent as to whether this Court dismisses this appeal on a jurisdictional basis or affirms the decisions below on the merits.  By commencing the U Lock Bankruptcy Case, Mr. Snyder's sister embroiled Ms. Biros in two years of intensive litigation in the Bankruptcy Court.  Within the seventy-eight days preceding Ms. Biros's filing this appellee's brief, Ms. Biros has filed two other appellee's briefs in this Court and two appellee's briefs in the District Court.  Ms. Biros still faces Shanni Snyder's continuing appeals in the Pennsylvania-state-court case in which Ms. Biros prevailed at trial – in which Shanni Snyder was *not* a party –in 2019.  *See Biros*, 255 A.3d at 492 Mr. Snyder and his family have not always appeared to act in good faith.[6]  Ms. Biros is eager to bring these proceedings to a close and pursue her available remedies.

---

[6] In addition to the Bankruptcy Court's observations about Shanni Snyder's actions in commencing the U Lock Bankruptcy Case, it is worth noting that Mr. Snyder's brief here – filed and purportedly prepared pro se – identifies its author as "Farhadian Weinstein."  Ms. Biros has no reason to believe that claim of provenance.

However, Ms. Biros encourages this Court to consider the following facts of record in determining whether this appeal is moot:

- Mr. Snyder has not moved to dismiss this appeal, *see* Fed. R. App. P. 42(b)(2), or sought leave in the Bankruptcy Court to withdraw his claim, *see* Fed. R. Bankr. P. 3006.

- Neither the Bankruptcy Court nor the Trustee has foreclosed the possibility that the U Lock estate will make distributions to unsecured creditors.  The Bankruptcy Court specifically reserved that question in January 2024 when it decided to take its wait-and-see approach to the merits of Ms. Biros's unsecured claims.  *A648-A649.*

- The Trustee, writing in July 2023, noted the potential for additional assets to flow into the U Lock Estate.  *A632.*

- The January 2024 statement of Ms. Biros's counsel to which Mr. Snyder points, *see* Snyder Brief at p.27, is not a "judicial admission" of mootness.  Even apart from any question of whether Ms. Biros's statement in a proceeding about her own claims could bind her in proceedings concerning Mr. Snyder's claim, a statement is a judicial admission only if it is

unequivocal, "or as other Circuits have said, 'intentional, clear, and unambiguous.'" *United States v. Bedrosian*, 42 F.4th 174, 184 (3d Cir. 2022) (quoting *In re Motors Liquidation Co.*, 957 F.3d 357, 361 (2d Cir. 2020)).  As the Bankruptcy Court expressly recognized, Ms. Biros advocated for a wait-and-see approach to any unsecured claims.  *A645*.

- The potential for the U Lock estate to obtain additional assets is real.  The Bankruptcy Court has already instituted sanctions proceedings against Shanni Snyder arising from her fraud.  *In re U Lock*, 2024 Bankr. LEXIS 484 at *2, *47-*48.  That Court has independently directed payment of funds into the U Lock Estate.  *In re U Lock, Inc.*, Case No. 22-20823-GLT, 2024 Bankr. LEXIS 1484 (Bankr. W.D. Pa. June 24, 2024).

- The Trustee looked to Shanni Snyder's preference and fraudulent conveyance claims in raising the possibility that funds would be available for other creditors.  A632.  Although Shanni Snyder is highly unlikely to succeed in her appeal to this Court at No. 24-1202 asking that this Court reinstate her adversary proceeding, that appeal remains pending.

Accordingly, if Mr. Snyder were to prevail on the merits here, these facts suggest that he might be entitled to some distribution on his claim.[7]  If so, then this appeal is not moot.

### 4. *This Court Should Leave Any Question of the Bankruptcy Court's Continuing Jurisdiction over the U Lock Bankruptcy Case to the Bankruptcy Court in the First Instance.*

The Bankruptcy Court continues to exercise jurisdiction over the U Lock Bankruptcy Case.  Activity in that case is not limited to the question of whether Mr. Snyder will be paid on his unsecured claim.  For instance, the Trustee remains in place and is entitled to compensation for the work he continues to perform.  No funds have yet been distributed to Ms. Biros on her administrative claim.  Shanni Snyder remains subject to that court's show-cause order issued in connection with her claim.  Ms. Biros is not foreclosed from reinstating her unsecured claims and may well do so.

---

[7] Mr. Snyder would have competition for those assets.  Shanni Snyder's appeal from the Bankruptcy Court's disallowance of her claim remains pending in the District Court.  More realistically, the Bankruptcy Court dismissed Ms. Biros's unsecured claims without prejudice, *A66 at #552*, and acknowledged on the record that Ms. Biros might pursue those claims if the financial condition of the U Lock estate were to change. *A648-A649*.

The mootness of this appeal – if, in fact, this appeal is moot – would not automatically stop the Bankruptcy Court from proceeding further with these activities. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189-93 (2000) (discussing differences between standing and mootness, potential effects of mootness on underlying action). Mootness here also would not protect Mr. Snyder or his family from the Bankruptcy Court's past orders concerning their actions. Even if a bankruptcy case is dismissed, the bankruptcy court retains discretion to preserve its prior orders and determinations. *See* 11 U.S.C. § 349(b).

In a last gasp, Mr. Snyder argues that the Bankruptcy Court should undo all of its work because Shanni Snyder never really was a petitioning "creditor." Mr. Snyder is right that his sister procured the Bankruptcy Court's order for relief through fraud. However, even apart from the pendency of her appeal, that fact hardly means that the U Lock Bankruptcy Case has not happened.

Moreover, the time for Mr. Snyder to make this argument was two years ago – *i.e.*, before the Bankruptcy Court, this Court, the District Court, the Trustee, and Ms. Biros, among others, expended time and

capital on it.[8]  The Bankruptcy Court's June 2022 order for relief, *A77*, binds Mr. Snyder.  A non-party may be precluded by an order or judgment when, among other circumstances, there is a pre-existing substantive legal relationship between the party and a non-party or the non-party had assumed control over the litigation.  *Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (recognizing non-party applications for res judicata); *Doe v. Hesketh*, 828 F.3d 159, 172 (3d Cir. 2016) (recognizing same for collateral estoppel).

Although the proceedings on Shanni Snyder's involuntary petition were between Shanni Snyder and U Lock,[9] Mr. Snyder is squarely within these exceptions.  When Shanni Snyder filed her involuntary petition, Mr. Snyder was the managing partner of U Lock, a director of the corporation, and the owner of more than 81 percent of the corporation's shares.  *A9 at #9, A74, A136.*  In entering the June 2022 order for relief, the Bankruptcy Court noted that U Lock had already

---

[8] Tellingly, *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 116-17 (2d Cir. 2003), to which Mr. Snyder points, arose from a bankruptcy court's dismissal of an involuntary petition, rather than from any effort to undo a previously-entered order for relief.

[9] *See* 11 U.S.C. § 303(d); Fed. R. Bankr. P. 1011(a).

appeared before it but had not responded to Shanni Snyder's involuntary petition. *A77. See also* Fed. R. Bankr. P. 1013(b) (mandating entry of order for relief where debtor fails to respond to involuntary petition). Less than a week later, Mr. Snyder authorized U Lock to attempt to convert the U Lock Bankruptcy Case from a proceeding under Chapter 7 of the Bankruptcy Code to a proceeding under Chapter 11. *A136.*

Accordingly, the U Lock Bankruptcy Case should go forward, and, unless this appeal is moot, this Court should proceed to the merits here.

## B. The Bankruptcy Court Correctly Disallowed Mr. Snyder's Claim.

Mr. Snyder was U Lock's managing partner and its 81-percent shareholder. By his own admission, he never expected to be paid for the any of the services he claims to have performed for the company while he was performing them. He also testified under oath that U Lock never had employees. His filed claim in the Bankruptcy Court was nothing more than the official form with a four-word description and no documentation or further explanation. *A71-A73.* That court was correct to disallow his claim.

### 1. *Standard of Review*

This Court has explained its standard of review on an appeal from

a district court's review of the decision of a bankruptcy court:

> "Our review of the District Court's decision effectively
> amounts to review of the [B]ankruptcy [C]ourt's opinion
> in the first instance." *In re Allen*, 768 F.3d 274, 278-79 (3d
> Cir. 2014) (quoting *In re Hechinger Inv. Co. of Del.*, 298
> F.3d 219, 224 (3d Cir. 2002)).  We review the Bankruptcy
> Court's factual findings for clear error and its conclusions
> of law de novo.  *Payne v. Lampe (In re Lampe)*, 665 F.3d
> 506, 513 (3d Cir. 2011).  "A finding of fact is clearly
> erroneous only if it is 'completely devoid of minimum
> evidentiary support displaying some hue of credibility or
> bears no rational relationship to the supportive
> evidentiary data.'" *Havens v. Mobex Network Servs.*,
> LLC, 820 F.3d 80, 92 (3d Cir. 2016) (quoting *Berg Chilling
> Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)).

*Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657, 663-64 (3d Cir. 2017).

### 2. *The Bankruptcy Court Made No Error in Applying the Law to Mr. Snyder's Claims.*

In a contested proceeding on a claim, the claimant always bears

the burden of persuasion.  *Lampe v. Lampe*, 665 F.3d 506, 514 (3d Cir.

2011).  Initially, the claimant must "allege facts sufficient to support the

claim."  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992);

*accord, Lampe*, 665 F.3d at 514.  In determining whether the claimant

has met this burden, the bankruptcy court looks to "the averments in

his filed claim." *Allegheny Int'l*, 954 F.2d at 173.  This review does not require a bankruptcy court to make any determinations of fact.

If, but only if, the claimant meets this burden, the claim is prima facie valid, and the objector must produce evidence sufficient to negate the validity of the claim.  If the objector meets that burden, the claimant must prove his claim by a preponderance of the evidence. *Allegheny Int'l*, 954 F.2d at 173.

The Bankruptcy Court examined Mr. Snyder's claim and correctly concluded that it failed to allege sufficient facts to allow Mr. Snyder to proceed.  Mr. Snyder's claim offers a number ($99,000.00), a four-word explanation ("wage, fair labor standards"), and nothing more.  *A71-A73*. Mr. Snyder's claim could not have been more "bare-bones."[10]

---

[10] Mr. Snyder's argument that the Bankruptcy Court "should have looked at my claim broadly, not narrowly," Snyder Brief at p.38, misses the point.  Both the 1978 legislative history and the 1985 Supreme Court case to which Mr. Snyder points are directed to whether a particular claim should be considered a claim against an estate that can be discharged if not pursued through the bankruptcy process. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 304-05 (3d Cir. 1999) (citing *Ohio v. Kovacs*, 469 U.S.274 (1985)).  *See also Boyle v. PMA Med. Specialists, LLC*, 754 Fed. App'x 93, 95-96 & n.4 (3d Cir. 2019) (looking to *Kovacs* in holding that plaintiff's claim had been discharged).  There is no dispute here that Mr. Snyder's claim, if valid, would have been a "claim" against the U Lock estate.

Despite the direction on Official Form 410 to provide documentation or at least an explanation, *A71, A72*, Mr. Snyder provided neither documentation nor explanation.  He added no other support for his claim.  He did not provide allegations about how many hours he claimed to have worked, when he claimed those hours had occurred, how he calculated his proffered claim amount, or what he claimed to have done.  *A71-A73*.

Given this insufficiency, the Bankruptcy Court had no occasion to take testimony or hold a hearing.  It did not violate either its own W.Pa.LBR 9013-5 or any terms of the court-mandated notice that Ms. Biros served on Mr. Snyder with her objections.  *A572*.  That court put Mr. Snyder under oath, but only at the behest of Ms. Biros's counsel after the court offered Mr. Snyder an opportunity to speak in opposition.  *A586*.  That court heard Mr. Snyder out.  *A585-A586*.  Mr. Snyder admitted that he could have amended the U Lock bankruptcy schedules but had not done so.  *A586*.  When that court asked Mr. Snyder whether he had anything further that he wanted to say, he responded "No."  *A586-A587*.

Mr. Snyder never attempted to amend his claim. *Compare Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 149 (8th Cir. B.A.P. 2004) (holding that bankruptcy court could look to amended claim in considering objections). Even after Ms. Biros objected to Mr. Snyder's lack of any detail, *A403*, Mr. Snyder's claim remained the same three-page document. After the Bankruptcy Court ruled that Mr. Snyder's claim was insufficient on its fact, Mr. Snyder never attempted to amend the claim or ask for reconsideration. *A46-A47*.

While Mr. Snyder did file a response and a declaration with the Bankruptcy Court, his declaration still did not detail a valid claim. *A576-A579*. His proffered documentation was three pre-printed calendar pages and a list of months. *A577-A579*.

Mr. Snyder's response and declaration led the Bankruptcy Court to identify reasons why Mr. Snyder had still failed the test of prima facie validity. All of those reasons are valid, and they identify several independently sufficient bases for the decision to disallow Mr. Snyder's claim.

The Bankruptcy Court was correct that Snyder never established that the FLSA applied to any work he performed.[11] That statute applies only to "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).   Mr. Snyder foreclosed the former option by describing work activities that, at best, "affected" commerce rather than involved being "engaged in commerce." *See Mitchell v. Lublin, McGraughy & Assoc's* , 358 U.S. 207, 211 (1959); *Cruz v. Chesapeake Shipping, Inc.* , 932 F.2d 218, 225 (3d Cir. 1991) (announcing opinion of court) (citing *Mitchell*, 358 U.S. at 211).

---

[11] Mr. Snyder's effort in his brief to invoke other sources of law, notably the Pennsylvania Wage Payment and Collection Law, 49 P.S. §§ 260.1 *et seq.*, comes far too late to help him.  Arguments not raised in the courts below are waived in this court. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018).  As noted above, Mr. Snyder's brief to the District Court invokes the FLSA nineteen times but never mentions the Wage Payment and Collection Law or any other statutory or common-law right of action. *See generally* Snyder District Court Brief [Doc. 8]. Mr. Snyder's declaration filed in the Bankruptcy Court similarly looks only to the FLSA, *A576-A579*, and Mr. Snyder never mentioned any other basis for his claim when speaking to the Bankruptcy Court about it. *A585-A587.*  Moreover, even in his brief to this Court, Snyder never explains why he might, substantively, have a claim under any of his new alternate theories that he lacks under the FLSA.

On the latter possibility, Mr. Snyder offered no allegation that U Lock had the "annual gross volume of sales base or business done" of $500,000.00 or more needed to qualify it as an "enterprise engaged in commerce." *See* 29 U.S.C. § 203(s)(1)(A).

Even if Mr. Snyder had offered that allegation of business volume, U Lock still fell outside of this definition because, if U Lock had any employees, it had "as its only regular employees the owner thereof or the parent, spouse, child, or other member of the immediate family of such owner." 29 U.S.C. §203(s)(2). Regardless of whether Mr. Snyder has alleged that he was a U Lock employee, he has not alleged that U Lock had any employees other than himself. As for ownership, despite his protestations here, Mr. Snyder advised the Bankruptcy Court in 2022 that he owned more than 81 percent of U Lock's shares, *A136* (signing as "Majority shareholder"). He also never challenged Shanni Snyder's assertion that he was one of U Lock's two "managing control persons," *A74*, or the Bankruptcy Court's order that designated him as a principal operating officer or managing general partner. *A9 at #9.*

The Bankruptcy Court was also correct in its determination that Mr. Snyder had not been working for wages but had instead made capital contributions to U Lock in the form of his own services. Mr. Snyder was, again by his own admission, the owner of the vast majority of U Lock's shares and the company's manager. He claims to have performed services for seven years. *A576-A579*. During that time, he never caused his company to pay him, filed any sort of lawsuit or claim, or created a shred of contemporaneous documentation that he could use in some future claim for wages. When he filed U Lock's bankruptcy schedules under penalty of perjury, *A120*, he identified his sister Shanni Snyder as creditor in the amount of her FLSA default judgment, *A92*, but he never identified himself at all. *A90-A94.* He admitted in his response to Ms. Biros's objections that he did not perform services with any expectation of payment but developed his theory of unpaid wages only after reading his sister's claim. *A575.* The Bankruptcy Court properly identified Mr. Snyder's claim for its true nature and disallowed it.

The Bankruptcy Court was also struck by the flat inconsistencies between Mr. Snyder's claims about his alleged work and his pre-

objection statements under penalty of law. *A558-A589.* As noted above, Mr. Snyder did not list himself as a creditor on U Lock's July 2022 bankruptcy schedules. *A90-A94.* As he admits, he had the power to amend the U Lock schedules to reflect his alleged claim but never did so. A586. He testified under oath in September 2022 that U Lock had no employees. *A420.* His brother, fellow shareholder, and fellow principal-operating-officer-or-managing-general-partner Kash Snyder testified similarly in January 2023. *A537.* Like the other bases that the Bankruptcy Court identified, the apparent lies in Mr. Snyder's post hoc claim were independently and jointly more than enough reason for the Bankruptcy Court to disallow that claim.

## CONCLUSION

For all of the reasons stated above, Ms. Biros requests that, if this Court does not dismiss this appeal as moot, it affirm the decisions of the District Court and the Bankruptcy Court.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

Dated: August 14, 2024

By: */s/ Stuart C. Gaul, Jr.*
Stuart C. Gaul, Jr., Esq.
Pa. I.D. No. 74529
BERNSTEIN-BURKLEY, P.C.
601 Grant Street
9th Floor
Pittsburgh, PA 15219
(412) 456-8100  Telephone
(412) 456-8135  Facsimile
sgaul@bernsteinlaw.com

*Counsel for Appellee,*
*Christine Biros*

## COMBINED CERTIFICATIONS

I, Stuart C. Gaul, Jr., hereby certify as follows:

1.    **Bar Membership.**  I certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

2.    **Word Count and Typeface.**  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,957 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, ver. 16.83 in 14-point, Century.

3.    **Service.**  I certify that on the 14th day of August 2024, I am filing this brief with the Clerk of United States Court of Appeals for the Third District via the Court's CM/ECF system, which will cause service on all counsel and parties of record, who are registered as CM/ECF users.

4.    **Identical Compliance of Brief.**  The text of the electronically filed brief and the text of the paper copies are identical.

5.    **Virus Check.**  A virus check has been performed on the PDF file containing the brief.   The virus check was completed using SentinelOne, and no viruses were found.


Dated: August 14, 2024                    */s/ Stuart C. Gaul, Jr.*